# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

|  |  |
|---|---|
| *In Re James River Group Holdings, Ltd. Securities Litigation* | Case No. 3:21-cv-00444-DJN <br><br> <u>CLASS ACTION</u> |

**DECLARATION OF LAURAH J. SAMUELS**

I, Laura J. Samuels, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am an attorney employed by the law firm of Debevoise & Plimpton LLP, counsel to Defendants James River Group Holdings, Ltd., Robert P. Myron, J. Adam Abram, Frank N. D'Orazio, and Sarah C. Doran (collectively, "Defendants"). I represent Defendants in the above-captioned action brought by Lead Plaintiffs Employees' Retirement Fund of the City of Fort Worth d/b/a Fort Worth Employees' Retirement Fund ("Fort Worth") and The City of Miami General Employees' & Sanitation Employees' Retirement Trust ("Miami") (collectively "Lead Plaintiffs"). I submit this declaration in support of the Joint Motion for Extension of Time to Complete Discovery (the "Joint Motion"). I have personal knowledge of the facts set forth herein and, if called as a witness, could testify thereto.

**Scale of Overall Document Collection, Production, and Review**

2. On August 28, 2023, the Court denied Defendants' Motion to Dismiss the Second Amended Complaint. On September 8, 2023, the Court issued a Scheduling and Pretrial Order.

3. On September 11, 2023, Debevoise & Plimpton LLP and Defendants engaged e-discovery vendor Complete Discovery Source ("CDS") to collect, process, host, review, and produce discovery in connection with the captioned matter ("Litigation").

4. On September 12, 2023, Lead Plaintiffs served its First Set of Requests for Production, which consisted of 43 requests, including numerous requests for materials related to individual insurance claims arising from accidents between Uber drivers and third-party individuals. Defendants promptly began collecting and reviewing responsive documents.

5. As of the date of this declaration, Defendants have collected 2.4 terabytes of data from 27 custodians, along with thousands of non-custodial documents in response to Plaintiffs' discovery requests. After de-duplication, the resulting collection universe, which is still growing, contains 7,054,060 documents. These documents include e-mail communications and electronic documents as well as data from iPhones, laptops, and external drives. Collection from four custodians remains ongoing, therefore the document counts described herein are approximate, and likely to increase once collection is fully complete.

6. The parties are still negotiating final search terms and custodians. Based on the parties' latest proposals, the final review universe is expected to contain at least 1.1 million individual documents.

7. Despite open disputes regarding Plaintiffs' discovery requests, custodians, and search terms, Defendants began reviewing documents on September 29, 2023. Defendants

began productions on October 6, 2023 and have continued to produce documents on a rolling basis.

8. As of the date of this declaration, Defendants have reviewed more than 580,000 documents. Defendants have also made five productions totaling 61,489 documents and 562,757 pages. A sixth production is currently being processed and will include an additional 58,439 documents and 340,261 pages.

9. These productions contain emails and electronic documents from 11 custodians, as well as six categories of segregable non-custodial documents: (1) spreadsheets of employment histories from the James River Claims, and Actuarial Departments for the relevant time period; (2) documents concerning insurance policies that demonstrate coverage of the Defendants for all or part of any potential liability arising from the claims asserted in this litigation; (3) reserve committee materials; (4) actuarial team materials; (5) data underlying financial reporting; and (6) personnel files and employee agreements.

10. Defendants have been able to achieve this pace only by deploying approximately 175 discovery attorneys. And, in order to meet even the revised discovery deadlines proposed in the parties' Joint Motion, Defendants have begun onboarding an additional 50 discovery attorneys.

**Challenges Associated with the Review**

11. Based on tentative agreements reached between the parties on October 23, 2023 with respect to search terms and custodians, Defendants currently estimate the overall review universe will contain between 1,100,000 and 1,200,000 documents.

12. In order to review the requested documents by the substantial completion deadline Defendants have been targeting—but, due to the complexity of the documents, have not

3

yet been able to achieve—an average first level review pace of approximately 40 documents per hour, per reviewer.  At this pace, it will require at least 27,500 attorney hours just to complete a first level of document review.

13. As described above, Defendants have already deployed approximately 175 discovery attorneys and are in the process of deploying an additional 50 reviewers with the goal of reviewing at least 40,000 documents per day at the first level.

14. The 27,500 attorney hours described above in paragraph 12 do not include the additional time required to conduct additional privilege review or to redact Personally Identifiable Information ("PII") or privileged information.  Due to the nature of the claims at issue in the Litigation and the topics covered by Plaintiffs' discovery requests, there is a particularly high amount of both attorney-client privileged information and PII in the documents under review.

15. In addition, the overall pace of document production is currently limited by the technical processing time required to prepare responsive documents for production.  Defendants are reviewing and identifying responsive documents faster than they can be produced by CDS.

Production Pace

16. While the pace of review has been maximized to the greatest extent possible, the pace of production is limited by the e-discovery vendor's ability to process responsive documents and prepare them for production.

17. Based on my personal experience with document productions, conversations with our e-discovery vendor, and the production rate to date, we anticipate that we have the technological capacity to produce, on average 10,000-15,000 documents per day.

18. Defendants are currently identifying more than 15,000 documents per day that are potentially responsive and ready for production (that is, they do not require further review or redaction of privileged information or PII).  As a result, even though Defendants are in the process of adding an additional 50 review attorneys, that will impact only the pace of review and redaction and not the current pace of production.

19. The cap on production rate is a result of the technical limitations associated with processing and imaging large numbers of documents, and is driven in particular by the number of pages Defendants are producing—longer documents require more time to process.  Defendants have already undertaken meaningful efforts to expedite this process, including by producing via external hard drive (delivered to Plaintiffs' Counsel via courier and overnight mail) rather than via electronic file transfer.

20. Defendants are continuing to work with our e-discovery vendor to increase the production rate.

Personally Identifiable Information

21. Common PII encountered in this review includes names, dates of birth, Social Security numbers, and confidential health information of both claimants and third parties, including descriptions of medical conditions and photographs of injuries.  As of the date of this declaration, more than 60,000 potentially responsive documents—or 10.4% of all documents reviewed to date—contain PII that should be redacted.

22. Assuming the percentage of potentially responsive documents containing PII observed in the review to date remains relatively consistent, Defendants estimate that more than 100,000 documents will contain sensitive PII requiring redaction before they can be produced.  Due to the complexity of the documents and the pervasiveness of PII,

5

redactions may take 30 minutes per document or more.  Even conservatively estimating that it requires, on average, eight minutes to redact each document, it will take more than two weeks for a team of 100 dedicated attorneys, working 60 hours per week, to complete PII redactions.

Privilege Review

23. Common categories of privileged information found in the documents include attorney-client communications, large loss reports which often include privileged information about large claims, and trial summaries.  As of the date of this declaration, more than 118,000 potentially responsive documents—or  20.3% of all documents reviewed to date—contain privileged or potentially privileged information.  Because documents are reviewed on a family basis (e.g., an email and attachments together), this means that more than 175,000 of the documents already reviewed will require a second level of review for privilege.

24. Assuming the percentage of potentially responsive documents containing privileged information observed in the review to date remains relatively constant, I estimate that more than 200,000 documents will contain privileged or potentially privileged information, requiring a second level review for privilege of more than 300,000 documents in total.

25. Our attorneys are able to review approximately 30 documents per hour, in conducting a privilege review.  I therefore estimate that privilege review will require approximately 10,000 additional attorney hours.

26. However, this does not include redactions.  Based on review to date, I estimate that approximately 63,000 documents will require redaction of privileged information.  Like

6

PII redactions, due to the complexity of the documents and the pervasiveness of privileged information, redactions may take 30 minutes per document or more. Even conservatively estimating that it will require, on average, eight minutes to redact each document, privilege redactions will require at least 8,000 additional attorney hours.

27. In total, I expect that it will take more than a month for a team of 60 dedicated attorneys, working 60 hours a week, to complete privilege review and redactions.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on October 27, 2023 in New York, NY.

By:    /s/ Laura J. Samuels
        Laura J. Samuels