**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| IN RE JAMES RIVER GROUP HOLDINGS, LTD. SECURITIES LITIGATION | Case: 3:21-cv-00444-DJN<br><br>CLASS ACTION |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ............................................................................................... 1

II.   HISTORY OF THE LITIGATION ................................................................. 3

III.  THE TERMS OF THE SETTLEMENT.......................................................... 7

IV.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL .............. 7

      A.   Standards Governing Preliminary Approval Of A Class Action Settlement.......... 7

      B.   The Proposed Settlement Is Fair And Reasonable..................................... 9

           1.   The Settlement Was Reached After Extensive Litigation ......................... 9

           2.   The Settlement Is The Product Of Good-Faith, Arm's-Length
                Negotiations Among Experienced Counsel And A Mediator.................. 11

      C.   The Proposed Settlement Is Adequate .................................................. 13

           1.   The Strength Of Plaintiffs' Case And The Difficulties Of Proof
                And Defenses Plaintiffs Would Encounter At Trial Support
                Settlement ............................................................................ 13

           2.   The Costs And Delays Of Continued Litigation..................................... 16

           3.   The Proposed Settlement Falls Well Within The Range Of
                Approval ............................................................................... 17

      D.   Additional Factors Supporting Preliminary Approval Of The Settlement ........... 18

V.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED............................. 21

      A.   The Settlement Class Is So Numerous that Joinder Is Impracticable .................. 21

      B.   There Are Common Questions Of Law And Fact ............................................... 22

      C.   Lead Plaintiffs' Claims Are Typical Of Those Of The Settlement Class............. 23

      D.   Lead Plaintiffs Will Adequately Represent The Settlement Class ...................... 23

      E.   The Settlement Class Satisfies Rule 23(b)(3) ...................................................... 24

VI.   THE PROPOSED NOTICE SHOULD BE APPROVED ............................... 25

VII.  PROPOSED SETTLEMENT SCHEDULE ................................................... 26

VIII. CONCLUSION.............................................................................................. 28

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ........................................................................ 16

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
  603 F.2d 263 (2d Cir. 1979)............................................................................ 16

*Brown v. Transurban USA, Inc.*,
  318 F.R.D. 560 (E.D. Va. 2016) ................................................................ 9, 10

*Cheng Jiangchen v. Rentech, Inc.*,
  2019 WL 5173771 (C.D. Cal. Oct. 10, 2019).............................................. 21

*Chrismon v. Pizza*,
  2020 WL 3790866 (E.D.N.C. July 7, 2020) ................................................ 16

*Christine Asia Co., Ltd. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .............................................. 15

*D&M Farms v. Birdsong Corp.*,
  2021 WL 1256905 (E.D. Va. Apr. 5, 2021) .................................................. 8

*Deem v. Ames True Temper, Inc.*,
  2013 WL 2285972 (S.D.W. Va. May 23, 2013)........................................... 11

*Droste v. Vert Capital Corp.*,
  2015 WL 1526432 (E.D. Va. Apr. 2, 2015) ................................................. 25

*Fosbre v. Las Vegas Sands Corp.*,
  2017 WL 55878 (D. Nev. Jan. 3, 2017)........................................................ 14

*Funkhouser v. City of Portsmouth*,
  2014 WL 12597159 (E.D. Va. Oct. 16, 2014)............................................. 22

*In re Allergan PLC Sec. Litig.*,
  2022 WL 17584155 (S.D.N.Y. Dec. 12, 2022) ........................................... 14

*In re BearingPoint, Inc. Sec. Litig.*,
  232 F.R.D. 534 (E.D. Va. 2006) ................................................................... 25

*In re Celebrex Antitrust Litig.*,
  2018 WL 2382091 (E.D. Va. Apr. 18, 2018) .............................................. 20

ii

*In re Computer Sci. Corp. Sec. Litig.,*
  288 F.R.D. 112 (E.D. Va. 2012) ...................................................................... 22

*In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices
  and Antitrust Litig.,*
  2020 WL 6044085 (D. Kan. Oct. 13, 2020) .......................................................... 19

*In re Genworth Financial Sec. Litig.,*
  210 F. Supp. 3d 837 (E.D. Va. 2016) ................................................................ *passim*

*In re Jeld-Wen Holding, Inc. Sec. Litig.,*
  2021 WL 1186326 (E.D. Va. Mar. 29, 2021) ................................................... 23, 24

*In re Jiffy Lube Securities Litigation,*
  927 F.2d 155 (4th Cir. 1991) ........................................................................ 9, 13

*In re Mills Corp. Sec. Litig.,*
  257 F.R.D. 101 (E.D. Va. 2009) ...................................................................... 22

*In re NII Holdings, Inc. Sec. Litig.,*
  311 F.R.D. 401 (E.D. Va. 2015) ...................................................................... 23

*In re PPDAI Grp. Inc. Sec. Litig.,*
  2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ...................................................... 17, 18

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.,*
  2012 WL 3589610 (D. Conn. Aug. 20, 2012) ....................................................... 10

*In re The Mills Corp. Sec. Litig.,*
  265 F.R.D. 246 (E.D. Va. 2009) ...................................................................... 12

*In re Valeant Pharms. Int'l, Inc. Third-Party Payor Litig.,*
  2022 WL 525807 (D.N.J. Feb. 22, 2022) ........................................................... 11

*Kirven v. Cent. States Health & Life Co. of Omaha,*
  2014 WL 12734325 (D.S.C. Dec. 12, 2014) ......................................................... 17

*Lea v. Tal Educ. Grp.,*
  2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ........................................................ 15

*Martin v. Altisource Residential Corp.,*
  2019 WL 5386468 (D.V.I. Oct. 21, 2019) ............................................................ 20

*Phillips v. Triad Guar. Inc.,*
  2016 WL 1175152 (M.D.N.C. Mar. 23, 2016) .................................................... 11, 26

*Plymouth Cnty. Ret. Sys. v. GTT Commc'ns, Inc., et al.,*
  2021 WL 1659848 (E.D. Va. April 23, 2021) ............................................... 12, 20, 26

*Plymouth Cnty. Ret. Sys. v. Patterson Cos. Inc.*,
   2020 WL 5757695 (D. Minn. Sept. 28, 2020) ............................................................... 12

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ................................................................................... 16

*Robinson v. Carolina First Bank NA*,
   2019 WL 2591153 (D.S.C. June 21, 2019)................................................................... 16

*Robinson v. Carolina First Bank NA*,
   2019 WL 719031 (D.S.C. Feb. 14, 2019) ...................................................................... 7

*Schwartz v. Urban Outfitters, Inc.*,
   2016 WL 7626720 (E.D. Pa. Oct. 31, 2016)................................................................. 11

*Scott v. Family Dollar Stores, Inc.*,
   2018 WL 1321048 (W.D.N.C. Mar. 14, 2018)............................................................... 8

*Seaman v. Duke Univ.*,
   2017 WL 11502696 (M.N.D.C. Sept. 29, 2017)........................................................... 25

*Seaman v. Duke Univ.*,
   2019 WL 4674758 (M.D.N.C. Sept. 25, 2019)............................................................. 20

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
   2021 WL 1540996 (N.D. Cal. Apr. 20, 2021) .............................................................. 24

*Sims v. BB&T Corp.*,
   2019 WL 1995314 (M.D.N.C. May 6, 2019) ................................................................. 8

*Skochin v. Genworth Financial, Inc.*,
   2020 WL 6697418 (E.D. Va. Nov. 12, 2020)................................................................. 9

*Smith v. Res-Care, Inc.*,
   2015 WL 6479658 (S.D.W. Va. Oct. 27, 2015) ........................................................ 9, 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)..................................................................................................... 25

*Utah Ret. Sys. v. Healthcare Servs. Grp., Inc.*,
   2022 WL 118104 (E.D. Pa. Jan. 12, 2022).................................................................. 18

**RULES**

Fed. R. Civ. P. 23 ...........................................................................................................*passim*

Lead Plaintiffs Employees' Retirement Fund of the City of Fort Worth d/b/a Fort Worth Employees' Retirement Fund ("Fort Worth") and The City of Miami General Employees' & Sanitation Employees' Retirement Trust ("Miami") (collectively "Lead Plaintiffs") respectfully submit this memorandum of law in support of their unopposed motion for entry of the Parties' agreed-upon proposed Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement ("Preliminary Approval Order").[1]

## I.    INTRODUCTION

Lead Plaintiffs present to the Court for preliminary approval, a proposed Settlement, which in exchange for $30,000,000 in cash, resolves all claims against the Defendants in this securities class action.  The proposed Settlement is the result of two and a half years of litigation and extensive negotiation, including two days of formal mediation facilitated by an experienced mediator, Jed Melnick, Esq., of JAMS.  The terms of the Settlement are set forth in the detailed Stipulation.  By any measure, the $30 million recovery here represents an excellent result, as it secures for Settlement Class Members between 13% and 25% of their potential recoverable damages—representing a recovery of approximately *three* to *six times* the typical securities class action recovery in similarly-sized cases.

This recovery was possible only after Lead Plaintiffs and Lead Counsel engaged in extensive litigation efforts, including: (i) conducting a thorough investigation of the claims, which included interviews of numerous former employees, at least fifteen of whom provided Lead Plaintiffs with detailed, substantive information that was critical to Lead Plaintiffs' allegations and included in the Complaint, and review of documentary and testimonial evidence from a bad faith litigation against

---

[1] All capitalized terms used herein that are not otherwise defined shall have the meanings provided in the Stipulation and Agreement of Settlement dated December 22, 2023 (the "Stipulation" or "Settlement Agreement"), which is attached as Exhibit 1 to the Motion.

1

James River, which the Court repeatedly cited in denying in its entirety Defendants' motion to dismiss the Complaint; (ii) filing two highly detailed amended complaints and fully briefing motions to dismiss each of these complaints; (iii) surviving Defendants' motions to dismiss under the exacting pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Federal Rule of Civil Procedure 9(b); (iv) consulting with various experts, including financial experts, accounting experts, and multiple insurance industry experts; (v) engaging in comprehensive discovery efforts, including reviewing hundreds of thousands of pages of documents produced by Defendants, subpoenaing several non-parties and reviewing documents produced therefrom; (vi) working on numerous expert reports that were due to be served within weeks, including on merits issues and class certification/market efficiency; (vii) submitting detailed mediation statements before Mr. Jed Melnick, a highly-experienced private mediator and special master in complex litigation, setting forth Lead Plaintiffs' positions on highly disputed issues in the case based on discovery documents, sworn witness testimony, and applicable law; and (viii) engaging in two formal mediation sessions before Mr. Melnick, and continued mediation discussions under Mr. Melnick's oversight before the Parties accepted his mediator's recommendation.

Lead Plaintiffs respectfully request the Court take the first step in the approval process by granting preliminary approval of the proposed Settlement and preliminarily certifying the proposed Settlement Class for the purposes of Settlement, to which Defendants have stipulated and agreed. As set forth below, approval of a proposed class action settlement is a two-step process. The first step—preliminary approval—simply involves the Court's determination of whether the proposed settlement is within the range of possible judicial approval, endorsement of the means of notice to

2

settlement class members, and scheduling the final fairness hearing.[2]  As the Settlement here satisfies each of the factors relevant to this preliminary approval evaluation, Lead Plaintiffs respectfully request that the Court take the first step in this process and enter the Preliminary Approval Order attached as Exhibit 2 to the Motion, which will, among other things:

1) preliminarily approve the Settlement pursuant to the Stipulation;

2) preliminarily certify the proposed Settlement Class for settlement purposes;

3) approve the form and content of the Notice and Summary Notice attached as Exhibits A-1 and A-3 to the proposed Preliminary Approval Order;

4) find that the proposed procedures for distribution of the Notice and publication of the Summary Notice constitute the best notice practicable under the circumstances, and comply with due process, Rule 23 of the Federal Rules of Civil Procedure, and the PSLRA; and

5) set a schedule and procedures for: (1) disseminating the Notice and publishing the Summary Notice; (2) submitting a Claim; (3) requesting exclusion from the Settlement Class; (4) objecting to the Settlement, the Plan of Allocation, and/or the motion for attorneys' fees and reimbursement of Litigation Expenses; (5) submitting papers supporting final approval of the Settlement; and (6) the Settlement Hearing.

For the reasons set forth herein, Lead Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order so that notice may be sent to the Settlement Class and a final approval hearing can be scheduled.

## II.    HISTORY OF THE LITIGATION

This is a securities class action for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") against James River Group Holdings, Ltd. ("James River" or "Company"), Robert P. Myron, J. Adam Abram, Frank N. D'Orazio, and Sarah C. Doran

---

[2] At the Settlement Hearing, the Court will have before it more extensive papers in support of the Settlement, and it will be asked to determine whether the Settlement is fair, reasonable, and adequate under Fourth Circuit law.  Following the Settlement Hearing, the Court will make a final determination as to whether the Settlement is fair, reasonable, and adequate.

3

(collectively, "Defendants").  Between February 22, 2019 and October 25, 2021, inclusive (the "Class Period") Defendants allegedly made misrepresentations and omitted material information concerning Defendants' efforts to suppress James River's financial reserves for insurance claims, specifically with regard to reserves for the Company's largest client, Uber Technologies Inc. ("Uber").  Lead Plaintiffs alleged that when the truth emerged over the course of four corrective disclosures, the price of James River common stock fell precipitously.

On July 9, 2021, Fort Worth initiated this Action.  ECF No. 1.  On September 22, 2021, the Court appointed Fort Worth and Miami as Lead Plaintiffs, Saxena White P.A. ("Saxena White") and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Lead Counsel, and Cohen Milstein Sellers & Toll PLLC as Liaison Counsel.  ECF No. 20.   On November 19, 2021, Lead Plaintiffs filed their Amended Class Action Complaint for Violations of Federal Securities Laws (the "AC"). ECF No. 41.   Thereafter, the Parties fully briefed Defendants' motion to dismiss the AC.  ECF Nos. 53-55, 57-58, 60.

Prior to the Court's ruling on the motion to dismiss, Lead Plaintiffs moved on August 25, 2022, for leave to file a Second Amended Class Action Complaint for Violations of the Federal Securities Laws (the "SAC" or "Complaint") to incorporate new evidence and testimony which came to light through an insurance bad faith action against Defendant James River's specialty insurance operating subsidiary.  ECF Nos. 64-66.  On September 9, 2022, the Court granted this motion, and the SAC was made effective.  *See* ECF Nos. 68, 69.  Thereafter, the Parties fully briefed Defendants' motion to dismiss the SAC.  ECF Nos. 71-73, 74, 75.[3]  On August 28, 2023, the Court issued an Order and accompanying 59-page Memorandum Opinion fully denying

---

[3] On June 23, 2023, the case was reassigned to the Honorable David J. Novak. ECF No. 80.

Defendants' motion to dismiss the SAC and sustaining all alleged misstatements and corrective disclosures in the Complaint in their entirety.  ECF Nos. 81, 82.

With the SAC sustained and the automatic stay of discovery pursuant to the PSLRA lifted, Lead Plaintiffs promptly drafted a proposed Stipulated Protective Order for discovery materials and a stipulation regarding the production of electronically stored information, which the Parties finalized after several weeks of negotiation.  *See* ECF No. 107.

After an Initial Pre-trial Conference held on September 7, 2023, the Court issued a scheduling order on September 8, 2023, which, among other things, provided for the close of fact and expert discovery on January 5, 2024, and set a trial date for April 23, 2024.  ECF No. 95. Consistent with this expedited case schedule, Lead Plaintiffs promptly commenced discovery by serving document requests and interrogatories on the Company and the Individual Defendants; serving subpoenas pursuant to Fed. R. Civ. P. 45 on multiple third parties, including Uber, Willis Towers Watson, and Ernst & Young; and noticing depositions of Defendants and several key witnesses.

After the Parties engaged in extensive discovery efforts, including near daily negotiations regarding the proper scope of discovery in this matter and specific deadlines for Defendants' rolling document production (including interim deadlines for certain "priority" documents and custodians), Defendants informed Lead Plaintiffs that it was "practically impossible to substantially complete" their production of documents under the operative case schedule, notwithstanding Defendants' deployment of over 170 attorneys to conduct privilege, confidentiality, and responsiveness reviews.  Accordingly, on October 27, 2023, the Parties filed a Joint Motion for Extension of Time to Complete Discovery. ECF Nos. 109-110.  The Court entered an Order (Modifying Discovery Deadlines) on October 31, 2023, which, among other

5

things, provided for the close of fact and expert discovery on February 2, 2024, and set that same date as the deadline for dispositive and *Daubert* motions.  ECF No. 111.  The Court did not change the trial date.

Between October 6, 2023 and November 15, 2023, Defendants made eleven rolling productions of documents—nearly two productions a week—producing a total of 247,408 documents and 1,670,306 pages.  Lead Plaintiffs conducted targeted reviews of the documents as they were produced, provided relevant documents to their experts to conduct their analyses, and, in consultation with their experts, analyzed the relevant evidence and drafted additional necessary discovery requests.  Lead Plaintiffs also regularly consulted with the experts as the experts prepared their substantive reports.  Throughout this time, Lead Plaintiffs also negotiated with multiple third parties regarding the scope and pace of their productions, and ultimately obtained and reviewed over 6,700 pages from third parties, including key documents from Uber.  Furthermore, Lead Plaintiffs objected and otherwise responded to requests for production propounded by Defendants and produced over 6,300 pages of documents to Defendants.

On November 3, 2023, after the Parties had already exchanged hundreds of thousands of documents, totaling more than 1.6 million pages, the Parties held an in-person, one-day mediation session before Mr. Jed Melnick, Esq., a renowned mediator affiliated with JAMS with extensive experience mediating securities class actions and other forms of complex shareholder litigation. In advance of this mediation session, the Parties submitted detailed mediation statements with numerous exhibits of evidentiary support in support of their respective positions.  After a full-day session held in New York, the mediation concluded without a resolution of the Action.  On November 15, 2023, the Parties remotely participated in a second formal mediation session before

Mr. Melnick, with the Parties again submitting written statements and exhibits in support of their respective positions.  While the session was productive, it did not result in a resolution of the Action.

With the aid of Mr. Melnick, the Parties continued their discussions over the following days.  The Parties subsequently accepted Mr. Melnick's mediator's recommendation and agreed in principle to settle this Action for $30 million, and then negotiated and agreed to a term sheet setting forth the key terms of the settlement, which they executed on December 7, 2023. Thereafter, the Parties negotiated the full settlement terms and entered into the Stipulation setting forth the terms and conditions of the Settlement.

## III.    THE TERMS OF THE SETTLEMENT

The proposed Settlement, which would resolve this Action in its entirety, provides that Defendants will pay or cause to be paid $30,000,000 into an Escrow Account for the benefit of the Settlement Class in exchange for a release of claims.  The proposed Settlement is an all-cash, non-reversionary settlement: once the Court's approval of the Settlement becomes final, Defendants will have no right to a return of the Settlement Fund for any reason.[4]  The full terms and conditions of the Settlement are set forth in the Stipulation.

## IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.    Standards Governing Preliminary Approval Of A Class Action Settlement

Courts in the Fourth Circuit have long recognized a strong public policy and presumption favoring settlements.  *See, e.g., Robinson v. Carolina First Bank NA*, 2019 WL 719031, at *8 (D.S.C. Feb. 14, 2019) ("There is a strong judicial policy in favor of settlement to conserve scarce resources that would otherwise be devoted to protracted litigation").  Indeed, "[i]t has long been

---

[4] *See* Stipulation ¶ 15 ("The Settlement is not a claims-made settlement.  Upon the occurrence of the Effective Date, no Defendant, Defendants' Releasee, or any other person or entity who or which paid any portion of the Settlement Amount . . . shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever . . .").

clear that the law favors settlement" and "[t]his is particularly true in class actions." *Sims v. BB&T Corp.*, 2019 WL 1995314, at \*3 (M.D.N.C. May 6, 2019).

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, resolution of a federal class action via settlement occurs in two stages.[5] First, district courts perform a preliminary review to determine whether a settlement class should be certified, and if notice of the proposed settlement should be sent to the settlement class. *See* Fed. R. Civ. P. 23(e)(1). Second, assuming that the court grants preliminary approval and notice is sent to the class, the court conducts a fairness hearing, at which all interested parties are afforded an opportunity to be heard on the proposed settlement. *See* Fed. R. Civ. P. 23(e)(2). A court should grant preliminary approval upon a finding that it "will likely be able" to finally approve the settlement under Rule 23(e)(2) and certify the proposed class for purposes of the settlement. Fed. R. Civ. P. 23(e)(1)(B). As courts in this Circuit explain, this preliminary review requires only showing "whether the proposed settlement is within the range of possible approval." *Scott v. Family Dollar Stores, Inc.,* 2018 WL 1321048, at \*3 (W.D.N.C. Mar. 14, 2018). In assessing the fairness and adequacy of a settlement, "there is a strong initial presumption that the compromise is fair and reasonable." *D&M Farms*, 2021 WL 1256905, at \*2. As summarized below, and as will be detailed further in a motion for final approval of the Settlement, all factors are met.

---

[5] Rule 23(e)(1) was amended to, among other things, specify that the crux of a court's preliminary review is whether notice should be provided given the likelihood that the court will be able to finally approve the settlement and certify a settlement class. The amendment requires consideration of whether: (A) plaintiffs and counsel have adequately represented the class; (B) the settlement was negotiated at arm's length; (C) the relief for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed fee award, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Courts may also consider the Fourth Circuit's long-standing approval factors, "because our factors for assessing class-action settlements almost completely overlap with the new Rule 23(e)(2) factors, the outcome[s] [are] the same under both our factors and the Rule's factors." *D&M Farms v. Birdsong Corp.*, 2021 WL 1256905, at \*3 (E.D. Va. Apr. 5, 2021).

**B.      The Proposed Settlement Is Fair And Reasonable**

In the Fourth Circuit, the fairness of a proposed settlement is determined by application of the four factors set forth in *In re Jiffy Lube Securities Litigation*, 927 F.2d 155 (4th Cir. 1991), which are: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery conducted, (3) the circumstances surrounding settlement negotiations, and (4) the experience of counsel in the area of law." *In re Genworth Financial Sec. Litig.*, 210 F. Supp. 3d 837, 839-40 (E.D. Va. 2016) (citing *Jiffy Lube*, 927 F.2d at 159). These factors largely overlap with the factors provided by Rule 23(e). *See, e.g., Skochin v. Genworth Financial, Inc.*, 2020 WL 6697418, at *2 (E.D. Va. Nov. 12, 2020) ("In the Fourth Circuit, the Rule 23(e)(2) analysis has been condensed into the two-step *Jiffy Lube* test which examines the fairness and adequacy of the settlement.").

### 1.      The Settlement Was Reached After Extensive Litigation

The first and second fairness factors evaluate how far the case has come from inception to ensure that the "parties did not settle prematurely" and that all parties were apprised of the "strengths and weaknesses of their own and their adversaries' claims and defenses." *Smith v. Res-Care, Inc.*, 2015 WL 6479658, at *5-6 (S.D.W. Va. Oct. 27, 2015). These factors are easily satisfied here as the Parties determined to settle this Action only after extensive discovery had taken place, and the Action would soon be ready for trial. *See e.g.*, *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 572 (E.D. Va. 2016) ("plaintiffs have conducted sufficient [] discovery and investigation to . . . evaluate [fairly] the merits of Defendants' positions during settlement negotiations").

Indeed, prior to agreeing in principle to settle this Action, (i) the Parties had litigated this Action for nearly two-and-a-half years and fully briefed motions to dismiss two different amended complaints; (ii) Lead Plaintiffs had conducted an extensive investigation, including interviews

with numerous former employees, fifteen of whom provided information contained in the operative SAC, and review of the evidentiary record from *Mark St. Amand v. James River Insurance Company, et al.*, Case No. 2:20-cv-01666 (D. Nev.), which included discovery documents and sworn witness testimony provided by multiple former James River employees; (iii) Lead Plaintiffs had issued and responded to numerous, voluminous discovery requests and produced, examined, and/or received over 247,000 documents spanning more than 1.6 million pages; noticed and began preparations to take seven depositions of fact witnesses; and were preparing to take and defend additional expert depositions, including in the areas of finance, accounting, actuarial science, and insurance claims handling, customs and practices, and bad faith; and (iv) Lead Plaintiffs had worked with these experts to prepare reports in advance of the fast-approaching December 22, 2023 deadline for Lead Plaintiffs to serve expert reports, which opined on all core elements relevant to Lead Plaintiffs' claims as well as issues relating to class certification (market efficiency) and damages.

Thus, the litigation had progressed materially from its inception, and the merits of the Parties' claims and defenses had been thoroughly vetted through the discovery process, supporting the fairness of the proposed Settlement. *See Brown*, 318 F.R.D. at 572 (finding that "a rigorous investigation of the claims before filing the Complaint and Amended Complaint" is sufficient to show fairness of a proposed settlement); *In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, 2012 WL 3589610, at *5 (D. Conn. Aug. 20, 2012) (approving settlement where, as here, "Lead Counsel conducted an extensive factual investigation and analysis" that "reviewed publicly available documents, interviewed former [company] employees, consulted with economic experts who provided advice and assistance on complicated issues such as damages, causation and materiality," and "reviewed 400 documents produced by Defendants").

### 2.    The Settlement Is The Product Of Good-Faith, Arm's-Length Negotiations Among Experienced Counsel And A Mediator

Courts also consider the nature of the settlement negotiations in evaluating a settlement, and "[a]bsent evidence to the contrary, the Court should presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." *Deem v. Ames True Temper, Inc.*, 2013 WL 2285972, at *2 (S.D.W. Va. May 23, 2013). Here, the Settlement was achieved only after arm's-length negotiations overseen by a highly respected neutral, Mr. Melnick, who has mediated over one thousand disputes with aggregate value in the billions of dollars. *See, e.g., In re Valeant Pharms. Int'l, Inc. Third-Party Payor Litig.*, 2022 WL 525807, at *2 (D.N.J. Feb. 22, 2022) (settlement approved where "Plaintiffs and [Defendant] ultimately agreed to mediate their claims before Jed Melnick of JAMS, a 'nationally recognized alternative dispute resolution firm'"); *Schwartz v. Urban Outfitters, Inc.,* 2016 WL 7626720, at *3 (E.D. Pa. Oct. 31, 2016) (approving settlement given "intensive, arms-length negotiations, including mediation managed by Jed Melnick"); *see also* Mr. Melnick's biography, available at https://www.jamsadr.com/melnick/. Moreover, after the November 3, 2023 in-person mediation session, the Parties continued their close dialog with the mediator by telephone and email, and subsequently held a second mediation session on November 15, 2023. Thereafter, the Parties finally were able to reach an agreement in principle to settle this Action after accepting Mr. Melnick's mediator's recommendation. Such "continuing efforts before an experienced mediator [] demonstrate that the Settlement is fair and reasonable." *In re Genworth*, 210 F. Supp. 3d at 840-41.

Additionally, Courts give considerable weight to the opinion of experienced and informed counsel. Indeed, "concerns of collusion" are minimized where counsel for both sides are "nationally recognized members of the securities litigation bar." *Phillips v. Triad Guar. Inc.*, 2016

11

WL 1175152, at *3 (M.D.N.C. Mar. 23, 2016). Here, both Lead Counsel are highly experienced and well-respected in the field of securities class action litigation and have extensive track records in numerous large cash recoveries on behalf of classes they have represented, including within this District. *See, e.g.,* ECF No. 18-5 (Saxena White firm resume); ECF No. 18-6 (Bernstein Litowitz firm resume); *see also Plymouth Cnty. Ret. Sys. v. GTT Commc'ns, Inc., et al.*, 2021 WL 1659848, at *5 (E.D. Va. April 23, 2021) (finding in $25 million PSLRA settlement, that Saxena White "conducted the litigation and achieved the [s]ettlement with skill, perseverance and diligent advocacy, and with considerable challenges from formidable opposition"); *Plymouth Cnty. Ret. Sys. v. Patterson Cos. Inc.*, 2020 WL 5757695, at *8 (D. Minn. Sept. 28, 2020) (finding Saxena White "highly qualified" and "experienced in leading large securities class actions … hav[ing] obtained substantial recoveries for plaintiffs" in PSLRA actions, resulting in $63 million recovery); *In re Genworth Fin.l, Inc. Sec. Litig.,* No. 3:14-cv-00682-JAG (E.D. Va. 2016) (approving $219 million settlement—the largest recovery ever obtained in a securities class action in Virginia—in which Bernstein Litowitz was co-lead counsel); *In re The Mills Corp. Sec. Litig.,* 265 F.R.D. 246 (E.D. Va. 2009) (approving $202.75 million settlement—the second largest recovery ever obtained in a securities class action in Virginia—in which Bernstein Litowitz was co-lead counsel).

Furthermore, Debevoise & Plimpton LLP is a preeminent international defense firm, with over 900 lawyers and a robust securities litigation defense practice.[6] Defendants' local counsel, McGuire Woods LLP, is also a large and prominent international law firm, with approximately 250 lawyers at its largest office in Richmond.[7] Notwithstanding this experienced and formidable

---

[6] *See* https://www.debevoise.com/aboutus/overview;
www.debevoise.com/capabilities/practice-areas/commercial-litigation/securities-litigation.

[7] *See* https://www.mcguirewoods.com/; https://www.mcguirewoods.com/locations/richmond/.

opposition, Lead Plaintiffs and Lead Counsel were able to develop their case to resolve the litigation on terms highly favorable to the Settlement Class, demonstrating that the Settlement is fair and reasonable, and should be approved. *In re Genworth,* 210 F. Supp. 3d at 841.

Thus, the Settlement meets the fairness requirements of this Circuit and of Rule 23(e).

## C.  The Proposed Settlement Is Adequate

In determining whether a proposed settlement is adequate, courts in this Circuit consider:

> (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant[] and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement.

*In re Genworth*, 210 F. Supp. 3d at 841 (citing *Jiffy Lube*, 927 F.2d at 159); *see also* Fed. R. Civ. P. 23(e)(2). In applying these factors, the Court should "weigh the likelihood of the plaintiffs['] recovery on the merits against the amount offered in the settlement." *In re Genworth*, 210 F. Supp. 3d at 841.  An analysis of these factors clearly shows that the proposed Settlement is adequate.

### 1.  The Strength Of Plaintiffs' Case And The Difficulties Of Proof And Defenses Plaintiffs Would Encounter At Trial Support Settlement

Complex securities fraud class actions such as this one present a myriad of risks that a plaintiff must overcome to ultimately secure a recovery. *See, e.g., In re Genworth*, 210 F. Supp. 3d at 844 ("[S]ecurities fraud cases require significant showings of fact in order to prevail before a jury, and elements such as scienter, reliance, and materiality of misrepresentation are notoriously difficult to establish").  While Lead Plaintiffs remain confident in their ability to ultimately prove the alleged claims, further litigation—including a trial—is always a risky proposition.

13

Lead Plaintiffs would be required to prove all elements of their claims, while Defendants need only succeed on one defense to potentially defeat the entire Action.[8]  Defendants have continuously and vehemently denied all of Lead Plaintiffs' allegations, and have presented challenging arguments regarding falsity, scienter, and loss causation.  At summary judgment or at trial, Defendants likely would have argued that documentary evidence and testimony showed that their statements about the reserves for the Uber account were not false or misleading when made because they were projections and statements of opinion based on reasonable calculations and assumptions made by the Company's actuaries.  Even though Lead Plaintiffs believe they had credible counterarguments, it is uncertain that Lead Plaintiffs could convince the Court or a jury, particularly considering the complexity of the underlying calculations.  *See In re Genworth*, 210 F. Supp. 3d at 841-42 ("plaintiffs at trial would bear the burden of conveying complex information to a jury using financial records, complicated accounting principles, and expert testimony. The plaintiffs would also need to prove that the statements made were in fact false, as opposed to mere projections not subject to liability…The high risk faced by taking the case to a jury verdict demonstrates the adequacy of this [] settlement").

With respect to scienter, even if Plaintiffs produced sufficient evidence to show a genuine issue of material fact and the Action proceeded to trial, Defendants likely would have argued that the Individual Defendants lacked the requisite scienter for securities fraud because the Company had a formal process for estimating reserves, employed external actuarial consultant Willis Towers Watson, and the Company's financial statements and actuarial conclusions were audited by Ernst

---

[8] *See e.g., In re Allergan PLC Sec. Litig.*, 2022 WL 17584155, at *7 (S.D.N.Y. Dec. 12, 2022) (granting summary judgment in a securities class action where "Plaintiff has not produced sufficient evidence to show that a genuine issue of material fact remains on the elements of (i) a misrepresentation or omission (falsity); (ii) materiality; and (iii) loss causation"); *Fosbre v. Las Vegas Sands Corp.*, 2017 WL 55878, at *28 (D. Nev. Jan. 3, 2017) (granting summary judgment in a securities action due to, *inter alia*, lack of falsity and scienter).

14

& Young, a "Big Four" accounting firm. Therefore, Defendants would argue they had a reasonable basis on which to make the statements. *See In re Genworth*, 210 F. Supp. 3d at 841-42 (noting "the defendants employed a nationally-recognized auditor, KPMG, who found no violations of Generally Accepted Accounting Principles ('GAAP') in Genworth's financial statements," and "[e]ven with a strong case, the plaintiffs nonetheless face a large risk before a jury").

Further, even if Lead Plaintiffs ultimately prevailed in proving materiality, falsity and scienter, this Action would have involved significant risks to establishing loss causation and damages. Defendants would have argued, among other things, that the final corrective disclosure (which caused James River's stock price to decline by over $6 per share) did not reveal any new information about the alleged reserving problems for the Uber account. Indeed, Defendants would have argued that the information about the loss portfolio transfer relating to the Uber claims discussed in the Company's October 26, 2021 press release, was already known to the market because the Company previously announced the loss portfolio transfer and its financial ramifications on September 30, 2021. *See, e.g., Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *13 (S.D.N.Y. Oct. 16, 2019) ("While Plaintiffs proceeded as though they had the better arguments, the risk remained that Defendants could have defeated loss causation, or significantly diminished damages").[9]

Thus, while Lead Plaintiffs believe they had credible counterarguments on each of these essential elements, there is no guarantee that the Court or a jury would have credited Lead

---

[9] Defendants could have raised this argument as early as the class certification stage and would not have needed to wait until summary judgment or trial. If Defendants were successful, this argument would have significantly narrowed both the size of the class and the extent of recoverable damages in the case. *See, e.g., Lea v. Tal Educ. Grp*., 2021 WL 5578665, at *10 (S.D.N.Y. Nov. 30, 2021) ("[c]ourts generally acknowledge that a [pending] contested motion to certify a class" supports settlement because of a "risk that class certification might be denied").

Plaintiffs' counterarguments, and the substantial Settlement avoids such significant risk.  *See e.g., Chrismon v. Pizza*, 2020 WL 3790866, at *5 (E.D.N.C. July 7, 2020) ("[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome").[10]

### 2.    The Costs And Delays Of Continued Litigation

"[I]n a case such as this, a fully contested class action lawsuit would be expected to take significant time to resolve at the District Court level and additional time would result from any appeals."  *Robinson v. Carolina First Bank NA*, 2019 WL 2591153, at *10 (D.S.C. June 21, 2019). Here, continued prosecution of this Action would incur significant litigation costs, drastically reducing the proceeds remaining in Defendants' rapidly eroding D&O insurance tower.

Indeed, if not for this Settlement, the Action would have continued to be fiercely contested. The rapid pace, voluminous discovery, and mounting expenses of additional litigation would be significant.  When the Settlement was reached, the Parties were poised to commence depositions. In addition to the five named Defendants and two Lead Plaintiffs, the Parties were each entitled to five additional depositions, for a total of seventeen depositions within the span of a few months. Furthermore, in light of the numerous expert reports that the Parties were preparing to file, class certification, summary judgment, and anticipated motions to exclude expert testimony, the remaining case schedule and trial were likely to be especially costly, as complex expert testimony and advice would continue to figure prominently throughout.  Thus, preliminary approval is warranted as it is clear that the Parties would incur a large amount of further expenses had they not reached this Settlement Agreement, which would have substantially reduced any potential

---

[10] There would also be a risk a favorable verdict could be disturbed or overturned even years later. *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).

16

class-wide recovery. *See Smith,* 2015 WL 6479658, at *6 (finding Plaintiffs understandably abided by the aphorism that "a bird in [the] hand is worth two in the bush" by settling and foregoing costly, and uncertain relief in exchange for a substantial, guaranteed, and immediate result).

### 3.    The Proposed Settlement Falls Well Within The Range Of Approval

"When a proposed settlement appears to fall within the range of 'possible approval,' it is appropriate to issue preliminary approval and direct notice to members of the settlement class." *Kirven v. Cent. States Health & Life Co. of Omaha,* 2014 WL 12734325, at *8 (D.S.C. Dec. 12, 2014). The proposed $30 million Settlement is an excellent recovery for the Settlement Class and falls well within the range of what is fair, reasonable, and adequate.

Indeed, the Settlement Amount represents *at least* 13% of the Settlement Class's *maximum* realistic recoverable damages of $238 million—which Lead Plaintiffs' expert calculated under a standard trading model accepted by courts in securities cases—and assumes that Lead Plaintiffs would fully prevail at class certification, summary judgment, and trial on *all* of their loss causation and damages arguments. *See, e.g.*, *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *12 (E.D.N.Y. Jan. 21, 2022) (approving securities class action settlement representing "6.4% of the maximum estimated aggregate damages [of] $140,000,000, assuming Plaintiffs can prove all their relevant causation arguments" as "within the range of reasonableness."). Moreover, Lead Plaintiffs' damages expert calculated that, assuming Defendants prevailed on their anticipated loss causation and damages arguments, damages could be reduced to as little as $120 million, if any at all. Accordingly, the Settlement represents a recovery of 13% to 25% of realistic damages—as much as *six* times the median securities class action recovery as a percentage of damages, which, between 2012 and 2021 was just 4% of damages for similarly-sized cases.[11] *See, e.g., Utah Ret.*

---

[11] *See* Cornerstone Research, *Securities Class Action Settlements 2022 Review and Analysis*, 6

*Sys. v. Healthcare Servs. Grp., Inc.*, 2022 WL 118104, at \*10 (E.D. Pa. Jan. 12, 2022) (approving $16.8 million settlement "represent[ing] approximately 6.4% of the estimated total alleged damages, which is in line with the median reported by Cornerstone Research").

Considering the benefits created by the Settlement, the risks of continued litigation and the time and expense that would be incurred to prosecute the Action through trial and likely appeals, the $30 million Settlement is an outstanding recovery that is in the Settlement Class's best interests.[12]

**D.  Additional Factors Supporting Preliminary Approval Of The Settlement**

Under Rule 23(e)(2), in granting approval, courts also consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorney's fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  Each of these factors supports approval.

*First*, the proposed Settlement is adequate because it provides a proposed Plan of

---

(Mar. 8, 2023), https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf.  Median recovery as a percentage of Cornerstone's "simplified tiered damages" between 2013-2022 was 4.3% for cases ranging from $150-249 million in damages. *Id*.

[12] Although, to Lead Plaintiffs' knowledge, James River faces no immediate insolvency risk, it is worth noting that the Company's stock price traded above $50 for portions of the Class Period, but currently trades below $10 a share.  Furthermore, A.M. Best credit rating agency downgraded the Company's credit rating after the May 7, 2021 corrective disclosure alleged in the Complaint. Moreover, in November 2023, the Company announced that it was selling its reinsurance subsidiary, JRG Reinsurance Company Ltd. for 0.75x of its book value, and the Company's board of directors "initiated an exploration of strategic alternatives," including a potential sale of the entire Company. *See* https://investors.jrvrgroup.com/news-releases/news-release-details/james-river-announces-agreement-sell-casualty-reinsurance; https://investors.jrvrgroup.com/news-releases/news-release-details/james-river-board-directors-announces-exploration-strategic; *see also In re Genworth*, 210 F. Supp. 3d at 842 (given defendant company's precipitous share price decline, credit downgrades, and billions of dollars of debt, the settlement "protects the plaintiffs from non-recovery in the chance of a large jury verdict rendering [the company] insolvent").

Allocation—which was developed in consultation with Lead Plaintiffs' damages expert and treats all Settlement Class Members equitably—containing a fair and reasonable method for distributing the proceeds of the Net Settlement Fund to Authorized Claimants on a *pro rata* basis based upon their recognized claim compared to the total recognized claims of all Authorized Claimants. *See* Notice (Ex. A-1 to the Stipulation), at ¶¶ 77-97. Furthermore, Lead Plaintiffs' proposed Plan of Allocation "accounts for when claimants purchased their securities and for how long they held the stock, considerations that have been approved by courts in this district." *In re Genworth*, 210 F. Supp. 3d at 843 (approving plan of allocation based on these same considerations) (collecting cases).

Additionally, the proposed Settlement provides well-established, effective procedures for processing the claims of the Settlement Class and seeks to appoint A.B. Data, Ltd., an experienced and well-respected claims administrator, as the Claims Administrator for the Settlement.[13] As set forth in the Stipulation, A.B. Data will process claims under Lead Counsel's guidance, allow Claimants an opportunity to cure any deficiencies in their claims or ask the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court-approval. *See* Stipulation ¶¶ 23-30. This method of claims processing is standard in securities class action settlements and has long been found to be effective. *See, e.g., Martin v. Altisource Residential Corp.*, 2019 WL 5386468, at *3-4 (D.V.I. Oct. 21, 2019) (appointing A.B. Data as the claims administrator and approving similar

---

[13] Lead Plaintiffs hereby request that the Court approve retention of A.B. Data as the Claims Administrator for the Settlement. *See e.g. In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.*, 2020 WL 6044085, at *3 (D. Kan. Oct. 13, 2020) ("A.B. Data is experienced and well-qualified in the field of notice administration in class actions"). Moreover, A.B. Data is currently acting as claims administrator in a number of notable securities class action settlements, including, *In re BioMarin Pharm. Inc. Sec. Litig.*, No. 3:20-cv-06719-WHO (N.D. Cal.) and *In re Splunk Inc Sec. Litig.*, No. 4:20-cv-08600-JST (N.D. Cal.).

claims processing methods).

*Second*, as disclosed in the Notice, Lead Counsel will be applying for a percentage of the common fund in an amount not to exceed 25% to compensate Plaintiffs' Counsel for their services rendered on behalf of the Settlement Class.  A proposed attorneys' fee award of up to 25% is reasonable in light of the work performed and the results obtained, and would be similar to Lead Plaintiffs' Counsel's total lodestar in this case, based on their preliminary estimates.  Moreover, a 25% fee award is well within the range of percentage fees that are regularly awarded in securities class actions and other class actions in this Circuit and nationwide.  *See e.g., Klein v. Altria Group Inc.*, Case No. 3:20-cv-00075-DJN, ECF No. 321 at *17-18 (E.D. Va. March 31, 2022) (TRANSCRIPT) (Novak, J.) (awarding a requested fee award of 30% of the settlement fund and noting the request was "actually a lower percentage than a norm in these cases" as in the district "it is more common to be in 33 to 40 percent range"); *GTT Commc'ns*, 2021 WL 1659848, at **5-6 ("one-third of the [s]ettlement [f]und in fees" in $25 million securities class action settlement is "fair and reasonable and consistent with awards in similar cases in this District, the Fourth Circuit and nationwide"); *In re Celebrex Antitrust Litig.,* 2018 WL 2382091, at *5 (E.D. Va. Apr. 18, 2018) (awarding attorneys one-third fee on $94 million settlement); *Seaman v. Duke Univ*., 2019 WL 4674758, at *3 (M.D.N.C. Sept. 25, 2019) (awarding one-third fee in a $54.5 million recovery, noting that awards of one-third are "common" in the Fourth Circuit); *In re Star Scientific, Inc. Sec. Litig*., Case No. 3:13-cv-00183-JAG-DJN, ECF No. 143 at 1 (E.D. Va. June 26, 2015) (Novak, M.J.) ("The Court hereby approves the request for attorneys' fees in the amount of $1,966,666.67 which is 33 1/3% of the Settlement Amount").

*Third*, with respect to Rule 23(e)(2)(C)(iv), the Parties entered into a Supplemental Agreement pursuant to which Defendants may terminate the Settlement if requests for exclusion

from the Settlement Class reach a certain threshold—generally called a "blow provision." *See* Stipulation ¶ 38. Such an agreement is standard in securities class action settlements; is kept confidential to prevent objectors from threatening to trigger the blow provision to obtain self-interested payments at the expense of the Settlement Class; and has no negative impact on fairness. *See, e.g., Cheng Jiangchen v. Rentech, Inc.,* 2019 WL 5173771, at *7 (C.D. Cal. Oct. 10, 2019).

## V.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, Lead Plaintiffs also request certification of the proposed Settlement Class, which has been stipulated to by the Parties, consisting of all persons or entities who purchased or otherwise acquired publicly traded James River common stock from February 22, 2019 through October 25, 2021, inclusive, and were damaged thereby. *See* Stipulation ¶¶ 1(ss), 2.[14] At the preliminary approval stage, the Court need only determine whether it "will likely be able to" grant certification to the Settlement Class at final approval. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii). As demonstrated below, the proposed Settlement Class readily satisfies all the applicable requirements of Rules 23(a) and 23(b)(3).

### A.    The Settlement Class Is So Numerous that Joinder Is Impracticable

Rule 23(a)(1) requires the class to be "so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). The "numerosity requirement is seldom disputed in securities fraud cases." *In re Mills Corp. Sec. Litig.*, 257 F.R.D. 101, 104 (E.D. Va. 2009). Here, numerosity is readily established. James River common stock is traded on the NASDAQ

---

[14] Excluded from the Settlement Class are "(i) Defendants; (ii) the Immediate Family Members of any Individual Defendant; (iii) any person who was an Officer or director of James River during or after the Class Period and any their Immediate Family Members; (iv) Defendants' liability insurance carriers, and any affiliates or subsidiaries; (v) any entity in which any Defendant or any of their Immediate Family Members has or had a controlling interest; and (vi) the legal representatives, heirs, agents, affiliates, successors, or assigns of any such excluded persons and entities. Stipulation ¶ 1(ss). Also excluded from the Settlement Class any persons who exclude themselves by submitting a request for exclusion that is accepted by the Court. *Id.*

exchange, with between 30 million and 38 million shares outstanding during the Class Period, which shares Plaintiffs conservatively estimate were held by thousands of retail investors and over 200 institutional investors. Indeed, after consulting with their expert financial consultant, Lead Plaintiffs conservatively estimate there are thousands of potential Settlement Class members. Federal courts routinely hold that there is "no doubt" that a class of shareholders of a publicly traded company are "so numerous that joinder of all members would be impracticable." *In re Computer Sci. Corp. Sec. Litig.,* 288 F.R.D. 112, 117 (E.D. Va. 2012) (numerosity established where company traded on New York Stock Exchange); *Mills*, 257 F.R.D. at 105 (holding that defendant company with "millions of shares outstanding during the Class Period" satisfied numerosity and certifying class). Thus, numerosity is met.

### B.    There Are Common Questions Of Law And Fact

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality only "requires that there be at least one question of law or fact common to the members of the class." *Funkhouser v. City of Portsmouth*, 2014 WL 12597159, at *3 (E.D. Va. Oct. 16, 2014). The common questions of fact and law here include: (1) whether Defendants violated the federal securities laws; (2) whether Defendants misrepresented or omitted material facts; (3) whether Defendants acted with scienter; (4) whether the Individual Defendants controlled James River and its alleged violations of the federal securities laws; (5) whether Defendants' alleged misrepresentations and omissions caused Settlement Class Members to suffer a compensable loss; and (6) whether Settlement Class Members have sustained damages, and the proper measure of damages. These are the exact types of issues that regularly satisfy the commonality requirement in federal securities cases. *See, e.g.*, *In re Jeld-Wen Holding, Inc. Sec.*

*Litig.*, 2021 WL 1186326, at *3 (E.D. Va. Mar. 29, 2021); *In re NII Holdings, Inc. Sec. Litig.*, 311 F.R.D. 401, 406 (E.D. Va. 2015).

### C.    Lead Plaintiffs' Claims Are Typical Of Those Of The Settlement Class

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims and defenses of the class." Fed. R. Civ. P. 23(a)(3).  The typicality element is satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *NII Holdings*, 311 F.R.D. at 406.  In other words, so long as Lead Plaintiffs "seek to recover damages for losses caused by the same allegedly materially false and misleading statements and omissions," the typicality requirement is met. *Id*. at 407.  Here, Lead Plaintiffs' claims are typical of the Settlement Class's claims because they all allege that they purchased James River common stock at artificially inflated prices due to Defendants' alleged material misstatements and omissions, and are subject to the same proof as the rest of the Settlement Class.  Further, Lead Plaintiffs are not subject to any unique defenses that would make them atypical.  Thus, typicality is satisfied.

### D.    Lead Plaintiffs Will Adequately Represent The Settlement Class

The adequacy factor requires a finding that the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a)(4).  Lead Plaintiffs and Lead Counsel have adequately represented the Settlement Class during both the litigation of this Action and its resolution.  Furthermore, the interests of Lead Plaintiffs and the other Settlement Class Members are not antagonistic; rather, Lead Plaintiffs' interest in obtaining the largest-possible recovery in this Action is firmly aligned with all Settlement Class Members.  Lead Plaintiffs have also set forth a robust record demonstrating their adequacy by, among other things, filing this Action and actively seeking appointment as Lead Plaintiffs whereas no other party sought appointment, conducting an extensive investigation of their claims, filing two highly detailed

23

amended complaints, surviving Defendants' motions to dismiss, and actively pursuing discovery and responding to Defendants' discovery requests. *See Jeld-Wen*, 2021 WL 1186326, at *4 (adequacy established where plaintiffs "vigorously and competently represented the interests of the proposed class members throughout this litigation").

Lead Plaintiffs also retained Lead Counsel, which, as set forth above, are highly experienced in litigating complex federal securities class actions and have long, successful track records. As Court-appointed Lead Counsel, Saxena White and Bernstein Litowitz also have demonstrated their willingness to commit substantial time and resources to representing the Settlement Class. [15]

### E. The Settlement Class Satisfies Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members." As the above analysis demonstrates, there are numerous common questions of law and fact, including whether Defendants' statements were false or misleading, whether Defendants acted with scienter, and whether, and to what extent, Settlement Class Members suffered damages caused by the revelation of Defendants' alleged fraud.

---

[15] Attached to the Motion as Exhibit 3 is a true and correct copy of an order issued in April 2021 in an unrelated action where Bernstein Litowitz served as lead counsel for a different lead plaintiff, SEB Investment Management AB, and as class counsel for a certified class. *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 2021 WL 1540996 (N.D. Cal. Apr. 20, 2021). As reflected in the Order, counsel for a competing lead plaintiff movant (that was not appointed) raised questions about the firm's hiring of a former employee of the lead plaintiff in that case. Following discovery and extensive briefing, the court found that the evidence did not establish a *quid pro quo*, and allowed Bernstein Litowitz to continue as class counsel. *See id.* at *1-2. The *Symantec* action was subsequently resolved with a $70 million settlement, and the settlement was approved by the court. The court nevertheless ordered Bernstein Litowitz to bring the Order to the attention of any court in which Bernstein Litowitz seeks appointment as class counsel. *See id.* at *2. Accordingly, because Bernstein Litowitz seeks appointment as one of the class counsel for the Settlement Class, Bernstein Litowitz is submitting the Order to the Court's attention.

24

Further, "class actions are a particularly appropriate and desirable means to resolve claims based on alleged violations of the securities laws." *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 545 (E.D. Va. 2006); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) ("This Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission"). The geographically dispersed nature of the Settlement Class, the inefficiency of multiple lawsuits, and the size of individual recoveries in comparison to the cost of litigation, strongly support a finding of superiority here. The Settlement Class thus satisfies all the requirements of Rules 23(a) and 23(b).[16]

## VI.    THE PROPOSED NOTICE SHOULD BE APPROVED

Under Federal Rule of Civil Procedure 23(e), "notice must be provided in a reasonable manner to all class members who be bound by the [proposed settlement]" and such notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings." *Seaman v. Duke Univ.,* 2017 WL 11502696, at *5 (M.N.D.C. Sept. 29, 2017) (citing Fed. R. Civ. P. 23(e)(1)).

Here, the proposed Notice advises Settlement Class Members of: (i) the pendency of the Action as a class action; (ii) the essential terms of the Settlement; (iii) the proposed Plan of Allocation; and (iv) information regarding the motion for an award of attorneys' fees and reimbursement of Litigation Expenses. The proposed Notice also provides specifics on the Final

---

[16] Any implicit requirement of ascertainability is also met, because the proposed class "is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Droste v. Vert Capital Corp.*, 2015 WL 1526432, at *4 (E.D. Va. Apr. 2, 2015).

Approval Hearing and sets forth the procedures and deadlines for submitting a Claim Form, opting out of the Settlement Class, for objecting to the Settlement, the proposed Plan of Allocation, and/or the motion for attorneys' fees and reimbursement of Litigation Expenses.  The Notice and Claim Form will also be available on the Settlement website established by the Claims Administrator. Finally, the proposed Preliminary Approval Order also requires the Summary Notice to be published in *The Wall Street Journal* and over *PR Newswire*.

Thus, the form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7).  *See Triad Guar.*, 2016 WL 1175152, at *1, *5 (publication of summary notice in *Investor's Business Daily* and via *PR Newswire*, establishment of website, and mailing notice to thousands of potential class members constituted sufficient notice); *GTT Commc'ns*, 2021 WL 1659848, at *3 (approving similar notice program in securities class action).

## VII.    PROPOSED SETTLEMENT SCHEDULE

The Parties respectfully propose the following schedule for the Court's consideration, which is set forth in the proposed Preliminary Approval:

| Event | Deadline | Example Date[17] |
|---|---|---|
| Hearing on Preliminary Approval Motion | The Parties have agreed to waive oral argument on the Preliminary Approval Motion, as set forth in the waiver of oral argument filed concurrently herewith.  However, should the Court wish to conduct a hearing, the Parties are available at the Court's convenience. | N/A |

---

[17] The example dates provided are based on the assumptions that the Court enters the Preliminary Approval Order on December 29, 2023, and schedules the Settlement Hearing for April 8, 2024

26

| Event | Deadline | Example Date[17] |
|---|---|---|
| Deadline for initial mailing of the Notice Packet to Settlement Class Members and posting the Notice and Claim Form on the Settlement website (the "Notice Date") (*see* Preliminary Approval Order, ¶ 7(b)) | No later than 20 business days after entry of the Preliminary Approval Order | January 30, 2024 |
| Deadline to publish the Summary Notice (*see* Preliminary Approval Order, ¶(d)) | 10 business days after the Notice Date | February 13, 2024 |
| Deadline to file papers in support of final approval of the Settlement, the Plan of Allocation and motion for an award of attorneys' fees and expenses (*see* Preliminary Approval Order, ¶ 28) | 35 calendar days prior to the Settlement Hearing | March 13, 2024 |
| Deadline for receipt of exclusion requests or objections (*see* Preliminary Approval Order, ¶¶ 14, 18) | 21 calendar days prior to the Settlement Hearing | March 27, 2024 |
| Deadline for filing reply papers (*see* Preliminary Approval Order, ¶ 28) | 7 calendar days prior to the Settlement Hearing | April 10, 2024 |
| Deadline for submitting proof of the mailing of the Notice to Settlement Class Members and publication of the Summary Notice (*see* Preliminary Approval Order ¶ 7(e)) | 7 calendar days prior to the Settlement Hearing | April 10, 2024 |
| Settlement Hearing (*see* Preliminary Approval Order, ¶ 5) | At least 110 calendar days after the filing of the Preliminary Approval Motion, or at the Court's earliest convenience thereafter | April 17, 2024 |

27

| Event | Deadline | Example Date[17] |
|---|---|---|
| Deadline for submitting Claim Forms (*see* Preliminary Approval Order, ¶ 11) | Postmarked or submitted online no later than 120 calendar days after the Notice Date | May 29, 2024 |

## VIII. CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and enter the accompanying Preliminary Approval Order.

Dated: December 22, 2023

Respectfully submitted,

By: */s/ Steven J. Toll*
Steven J. Toll (Va. Bar No. 15300)
Daniel S. Sommers
S. Douglas Bunch
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue, Suite 500
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
dsommers@cohenmilstein.com
dbunch@cohenmilstein.com

*Liaison Counsel for Lead Plaintiffs and the Settlement Class*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Salvatore J. Graziano (*pro hac vice*)
Rebecca E. Boon (*pro hac vice*)
Jeremy P. Robinson (*pro hac vice*)
Emily A. Tu (*pro hac vice*)
Chloe Jasper (*pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
salvatore@blbglaw.com
rebecca.boon@blbglaw.com
jeremy@blbglaw.com
emily.tu@blbglaw.com

28

chloe.jasper@blbglaw.com

*Attorneys for Lead Plaintiff Miami and
Lead Counsel for the Settlement Class*

**SAXENA WHITE P.A.**
David R. Kaplan (*pro hac vice*)
Emily R. Bishop (*pro hac vice*)
505 Lomas Santa Fe Dr.
Suite #180
San Diego, CA 92075
Telephone: (858) 997-0860
Facsimile: (858) 369-0096
dkaplan@saxenawhite.com
ebishop@saxenawhite.com

Maya Saxena
Joseph E. White, III (*pro hac vice*)
Jonathan Lamet (*pro hac vice*)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
jlamet@saxenawhite.com

Steven B. Singer (*pro hac vice*)
10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone: (914) 437-8551
Facsimile: (888) 631-3611
ssinger@saxenawhite.com

*Attorneys for Lead Plaintiff Fort Worth and
Lead Counsel for the Settlement Class*

**KLAUSNER KAUFMAN JENSEN
& LEVINSON LLP**
Robert D. Klausner
Stuart A. Kaufman
7080 Northwest 4th Street
Plantation, Florida 33317
Telephone: (954) 916-1202
Facsimile: (954) 916-1232
bob@robertdklausner.com

29

stu@robertdklausner.com

*Additional Counsel for Lead Plaintiff Miami*