**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| IN RE JAMES RIVER GROUP HOLDINGS, LTD. SECURITIES LITIGATION | Case: 3:21-cv-00444-DJN<br><br>CLASS ACTION |

**LEAD PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW**
**CONCERNING PROPOSED METHOD OF PROVIDING**
**NOTICE OF SETTLEMENT TO MEMBERS OF THE SETTLEMENT CLASS**

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ........................................................................................................... 1

II.   THE PROPOSED METHOD OF PROVIDING NOTICE TO THE
      SETTLEMENT CLASS IS HIGHLY EFFECTIVE AND CUSTOMARILY
      USED IN SECURITIES CLASS ACTIONS .................................................................. 4

      A.   The Mail Program Will Send Notice Packets to Both Record Shareholders
           and Beneficial Owners of James River Common Stock ........................................ 4

           1.   A.B. Data Will Mail Notice Packets to Record Shareholders, Who
                Have Already Been Identified by James River ........................................... 4

           2.   The Large Majority of Notice Packets Will Be Mailed to Other
                Beneficial Owners of James River Common Stock Whose Shares
                Are Held in "Street Name" By Nominee Owners ...................................... 7

      B.   A.B. Data Will Also Publish Notice via the DTC's Legal Notice System,
           the Settlement Website, Lead Counsel's Respective Websites, and in *The
           Wall Street Journal* and *PR Newswire* ...................................................... 11

      C.   The Proposed Method of Providing Notice Is Highly Effective and
           Routinely Approved by Courts ............................................................................ 12

III.  NEXT STEPS ............................................................................................................... 15

IV.   CONCLUSION ............................................................................................................ 16

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Appraisal of Dell Inc.*,
2015 WL 4313206 (Del. Ch. July 13, 2015)........................................................................6, 8

*California v. IntelliGender, LLC*,
771 F.3d 1169 (9th Cir. 2014) ...............................................................................................12

*DeJulius v. New England Health Care Emps. Pension Fund*,
429 F.3d 935 (10th Cir. 2005) ..................................................................................................8

*Fidel v. Farley*,
534 F.3d 508 (6th Cir. 2008) ....................................................................................................8

*In re Forefront Data Breach Litig.*,
2023 WL 6215366 (E.D. Wis. Mar. 22, 2023) .........................................................................12

*In re Genworth Fin., Inc. Sec. Litig.*,
2016 WL 7177515 (E.D. Va. Apr. 18, 2016) ...........................................................................13

*In re Luckin Coffee Inc. Sec. Litig.*,
Case No. 1:20-CV-01293-JPC-JLC, (S.D.N.Y. Oct. 8, 2021), ECF No. 309 ...........................6

*In re Lumber Liquidators Holdings, Inc. Sec. Litig.*,
2016 WL 9176562 (E.D. Va. Nov. 17, 2016) ...........................................................................13

*Martinek v. AmTrust Fin. Servs., Inc.*,
2020 WL 4735189 (S.D.N.Y. Aug. 14, 2020)...........................................................................8

*In re NeuStar, Inc. Sec. Litig.*,
2015 WL 5674798 (E.D. Va. Sept. 23, 2015) ...........................................................................13

*In re NII Holdings, Inc. Sec. Litig.*,
2016 WL 7045624 (E.D. Va. May 16, 2016) ...........................................................................13

*Nykredit Portefølje Admin. A/S v. ProPetro Holding Corp.*,
No. 7:19-CV-217-DC, (W.D. Tex. March 7, 2023), ECF No. 172-7 .......................................6

*Plymouth Cnty. Ret. Sys. v. Evolent Health, Inc.*,
Case No. 1:19-cv-01031-MSN-WEF (E.D. Va. Aug. 9, 2022), ECF No. 247 .......................13

*Plymouth Cnty. Ret. Sys. v. GTT Commc'ns, Inc.*,
2021 WL 1659848 (E.D. Va. Apr. 23, 2021) ...........................................................................13

*Police Ret. Sys. of St. Louis v. Granite Construction Inc.*,
Case No. 3:19-cv-04744-WHA, (N.D. Cal. Dec. 1, 2022), ECF No. 317..............................15

*In re RH, Inc. Sec. Litig.*,
   Case No. 4:17-00554-YGR, (N.D. Cal. Aug. 25, 2023), ECF No. 451....................................15

*Rodriguez v. CPI Aerostructures, Inc.*,
   2023 WL 2184496 (E.D.N.Y. Feb. 16, 2023)...........................................................................9

*SEB Invest. Mgmt. AB v. Symantec Corp.*,
   Case No. 3:18-cv-02902-WHA ...............................................................................................15

*In re Spectrum Brands Sec. Litig.*,
   No. 19-cv-347-jdp, (W.D. Wis. Mar. 4, 2022), ECF No. 113 ...................................................15

*In re Venator Materials PLC Sec. Litig.*,
   No. 4:19-cv-03464, (S.D. Tex. Aug. 5, 2022), ECF No. 122-5...................................................6

*In re Willis Towers Watson PLC Proxy Litig.*,
   No. 1:17:cv-01338-AJT-JFA, (E.D. Va. Jan. 21, 2021), ECF No. 333 ....................................13

**STATUTES**

Class Action Fairness Act of 2005,
   28 U.S.C. 1715(b) ..................................................................................................................12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23...............................................................................................................1, 8, 13

Lead Plaintiffs Employees' Retirement Fund of the City of Fort Worth d/b/a Fort Worth Employees' Retirement Fund ("Fort Worth") and The City of Miami General Employees' & Sanitation Employees' Retirement Trust ("Miami") (together, "Lead Plaintiffs") respectfully submit this supplemental memorandum of law in further support of their unopposed motion for preliminary approval of the proposed Settlement under Fed. R. Civ. P. 23(e)(1) and for entry of the Parties' agreed-upon proposed Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement (ECF No. 114-2) ("Preliminary Approval Order").

Lead Plaintiffs submit this supplemental memorandum in response to the Court's January 5, 2024 Order (ECF No. 117) (a) scheduling a hearing concerning "the sufficiency of the notice that Lead Plaintiffs propose to send to potential class members, particularly the sufficiency of the records that Defendant James River Group Holdings, Ltd. . . . has maintained regarding its shareholders" and (b) requesting briefing from Lead Plaintiffs concerning "the quality and adequacy of the recordkeeping regarding potential class members and the likelihood that notice of the settlement will reach as many class members as possible." January 5, 2024 Order, at 1.[1]

## I.    INTRODUCTION

Lead Plaintiffs' proposed method of providing notice of the Settlement to potential Settlement Class Members in this Action is highly effective and is the standard method approved by courts for years in securities class actions. Utilizing James River's records and those of its nominees and brokers, the proposed notice program will deliver individual notice of the Settlement to virtually all potential Settlement Class Members. Any remaining Settlement Class Members will likely receive publication notice through multiple channels (including the internet, print, and

---

[1] All capitalized terms used herein that are not otherwise defined shall have the meanings provided in the Stipulation and Agreement of Settlement dated December 22, 2023 (ECF No. 114-1) (the "Stipulation").

digital media) that are also commonly approved by courts in securities class actions. Lead Counsel will work directly with A.B. Data, Ltd. ("A.B. Data") an independent settlement and claims administrator with extensive experience handling the administration of securities class actions, to carry out the notice plan and ensure that all potential Settlement Class Members that can be identified receive notice. Lead Counsel will provide notice in three ways, summarized below.

*First*, Lead Counsel will notify record shareholders identified by James River. James River has already provided Lead Counsel with a list of the names and addresses of its "shareholders of record" during the Class Period as maintained by the Company or its transfer agent, and A.B. Data will directly mail copies of the Notice and Claim Form (the "Notice Packet") to the shareholders identified in that list.

*Second,* Lead Counsel will notify beneficial owners of James River securities. For a publicly traded company like James River, the "shareholders of record" for which the Company and its transfer agent have information, represent only a small fraction of a company's total shareholders. This is because the vast majority of shares are held by investors in "street name"—that is the shares are purchased in the name of a nominee purchaser (typically a broker or bank) for the beneficial interest of the investor—rather than the investor holding an illiquid physical share certificate. In such cases, the nominee purchaser (often a major broker like Merrill Lynch or TD Ameritrade) will be listed as the registered owner of the shares with the Company or its transfer agent, but the nominee will have records on the beneficial owners of the shares.

For this reason, notice efforts here will extend to all beneficial owners who purchased their James River shares through brokers and nominees. As is customarily done in securities cases involving public issuers, AB Data will mail copies of the Notice Packet to all of the largest and most commonly used brokers and nominee owners—nearly five thousand in total—who purchase

2

and hold securities on behalf of beneficial owners. These brokers and nominees will be required under the Court's Preliminary Approval Order to either (i) provide A.B. Data with the names and addresses of potential Settlement Class Members, in which case A.B. Data will then mail Notice Packets to those persons, or (ii) request from A.B. Data sufficient copies of the Notice Packet, in which case the broker or nominee will be required to forward the Notice Packets to those Settlement Class Members. The brokers and nominees routinely follow the above-described process in comparable securities class action settlements, and they are reimbursed their expenses in fulfilling these obligations.

*Third*, Lead Counsel will provide notice in a major financial publication, over a business newswire, and over the Internet. While A.B. Data expects to be able to reach virtually all potential Settlement Class Members through individual mailed notice, based on its experience in hundreds of other cases, it anticipates there may be a few individuals for whom brokers no longer have a valid address and for whom A.B. Data is unable to find a valid current address. To reach these few potential Settlement Class Members who may not receive direct notice via mail, Lead Plaintiffs will provide comprehensive publication notice via a dedicated *James River Securities Litigation* settlement website maintained by Lead Plaintiffs and A.B. Data (the "Settlement Website"), in the mainstream news and financial media, and via the Depository Trust Company's ("DTC") Legal Notice System.

A declaration from A.B. Data providing further details regarding the proposed method of providing notice to Settlement Class Members in this Action is attached hereto as Exhibit 1. *See* Declaration of Adam D. Walter Concerning Proposed Plan for Providing Notice of the Settlement to the Settlement Class, attached hereto as Exhibit 1 ("Walter Declaration" or "Walter Decl.").

As discussed below, the proposed method of providing notice to beneficial owners of securities through mailing to record shareholders identified by the Company, plus dissemination to street-name holders though brokers and nominees, and supplemented by publication and internet notice, has been widely approved in class actions brought under the federal securities laws and typically results in timely claims filed by the substantial majority of damaged shares.

## II.   THE PROPOSED METHOD OF PROVIDING NOTICE TO THE SETTLEMENT CLASS IS HIGHLY EFFECTIVE AND CUSTOMARILY USED IN SECURITIES CLASS ACTIONS

The proposed procedures for providing notice to members of the Settlement Class as set forth in the Preliminary Approval Order (¶¶ 7-10) and described in more detail in the Walter Declaration is the customary method used with success in thousands of securities class action settlements.  The comprehensive notice program includes (i) mailing to all shareholders of record identified by James River; (ii) dissemination of the Notice Packet through thousands of brokers and nominees to the vast majority of shareholders who hold shares in street-name; and (iii) further notice efforts including Notice Packets available for download on a dedicated Settlement Website, publication of a Summary Notice in *The Wall Street Journal* and over *PR Newswire*, and supplemental online digital posting through the DTC's Legal Notice System.

### A.   The Mail Program Will Send Notice Packets to Both Record Shareholders and Beneficial Owners of James River Common Stock

#### 1.   A.B. Data Will Mail Notice Packets to Record Shareholders, Who Have Already Been Identified by James River

Under the terms of the Stipulation and the proposed Preliminary Approval Order, James River agreed to provide to Lead Counsel or A.B. Data in an electronically searchable form, its security lists (consisting of names, mailing addresses, and, if available, email addresses) of the purchasers of James River common stock during the Class Period (the "Record Shareholder List"). *See* Stipulation ¶ 21; Preliminary Approval Order ¶ 7(a).  As is typical, James River (and its

4

transfer agent) only possess the names and addresses of the registered holders or record holders of James River shares—those shareholders who purchased their shares directly from the Company or requested to have their names and addresses recorded in the Company's share registry. By no later than 20 business days after entry of the Preliminary Approval Order, A.B. Data will mail copies of the Notice Packet by first class mail to all shareholders identified by James River in the Record Shareholder List. Preliminary Approval Order ¶ 7(b).

James River is not required under the terms of the Settlement Agreement to provide the Record Shareholder List until after Preliminary Approval Order is entered. However, in light of the Court's request for a submission on this subject, Defendants agreed to Lead Plaintiffs' request and provided the list to Lead Plaintiffs on January 12, 2024. *See* Walter Decl. ¶ 5. Lead Plaintiffs provided the Record Shareholder List to AB Data that same day. *Id.* Thus, A.B. Data is already in possession of the names and contact information of all James River shareholders of record.

As is common for U.S. publicly traded securities, the Record Shareholder List includes only a small percentage of the overall number of Settlement Class Members. As one court explained, in order to increase the efficiency of our public capital markets and address a "paperwork burden" reaching "crisis proportions," since the early 1970s:

> The vast majority of publicly traded shares in the United States are registered on the companies' books not in the name of beneficial owners—*i.e.*, those investors who paid for, and have the right to vote and dispose of, the shares—but rather in the name of "Cede & Co.," the name used by The Depository Trust Company ("DTC"). Shares registered in this manner are commonly referred to as being held in "street name." . . . DTC holds the shares on behalf of banks and brokers, which in turn hold on behalf of their clients (who are the underlying beneficial owners or other intermediaries).

*In re Appraisal of Dell Inc.*, 2015 WL 4313206, at \*4 (Del. Ch. July 13, 2015), as revised (July 30, 2015).[2]

Here, the Record Shareholder List contained the names and addresses of nine (9) shareholders of record, including Cede & Co., the nominee name of the DTC and the entity through which brokers and nominees hold shares on behalf of the ultimate investor and beneficial owner. This number is consistent with the number of record shareholders in other securities class action settlements involving public issuers. *See, e.g.*, *Nykredit Portefølje Admin. A/S v. ProPetro Holding Corp.*, No. 7:19-CV-217-DC, Decl. of Luiggy Segura at ¶¶ 4, 10 (W.D. Tex. March 7, 2023), ECF No. 172-7 (company's list of shareholders of record included just 24 names, as compared to total class mailing of over 72,000); *In re Venator Materials PLC Sec. Litig.*, No. 4:19-cv-03464, Decl. of Luiggy Segura at ¶¶ 3, 9 (S.D. Tex. Aug. 5, 2022), ECF No. 122-5 (company's list of shareholders of record included just two names, as compared to total class mailing of 24,827); *In re Luckin Coffee Inc. Sec. Litig.*, Case No. 1:20-CV-01293-JPC-JLC, Decl. of Alexander P. Villanova at ¶¶ 8, 10 (S.D.N.Y. Oct. 8, 2021), ECF No. 309 (company's list of shareholders of record included just 10 names, as compared to total class mailing of over 455,000).

Accordingly, Lead Plaintiffs' proposed notice program is not limited to shareholders identified in James River's Record Shareholder List. As discussed further below, Lead Plaintiffs will employ a well-established process in which brokers and nominees will be required by the Preliminary Approval Order to either identify potential Settlement Class Members—specifically,

---

[2] *See also* https://www.dtcc.com/settlement-and-asset-services/issuer-services/how-issuers-work-with-dtc ("When an investor holds shares [in "street name"], the investor's name is listed on its brokerage firm's books as the beneficial owner of the shares. The brokerage firm's name is listed in DTC's ownership records. DTC's nominee name (Cede & Co.) is listed as the registered owner on the records of the issuer maintained by its transfer agent. DTC holds legal title to the securities and the ultimate investor is the beneficial owner.").

beneficial owners of James River stock on whose behalf they purchased James River common stock during the Class Period—or forward the Notice Packet to these beneficial owners. Accordingly, beneficial owners who purchased James River common stock during the Class Period and meet the class definition will receive the Notice Packet whether or not they appear on the Record Shareholder List.

### 2. The Large Majority of Notice Packets Will Be Mailed to Other Beneficial Owners of James River Common Stock Whose Shares Are Held in "Street Name" By Nominee Owners

As noted above, here, as in most securities cases involving publicly-traded companies, the vast majority of shares are not held by record shareholders, but in "street name" – that is the shares are purchased in the name of a nominee purchaser (typically a broker or bank) for the beneficial interest of the investor. The investor is the beneficial owner of the shares and may be part of the Settlement Class, but those shares are registered in the name of the nominee purchaser through Cede & Co., not the investor. The nominee purchaser (*i.e.*, the broker or bank) maintains records of which investors beneficially own the shares and can thus identify those potential Settlement Class Members.[3]

Indeed, according to the SEC, "approximately 85% of exchange-traded securities are held by securities intermediaries, such as broker-dealers and banks, on behalf of themselves or their customers."[4] Courts similarly recognize that most beneficial owners of stock hold their shares in

---

[3] *See* https://www.dtcc.com/settlement-and-asset-services/issuer-services/how-issuers-work-with-dtc (explaining that the DTC provides settlement services for virtually all equity trades in the United States, wherein investors can hold securities in street name – where "the investor's name is listed on its brokerage firm's books as the beneficial owner of the shares" and "[t]he brokerage firm's name is listed in DTC's ownership records – as well as via direct electronic registration with the DTC or via physical certificates).

[4] *See* https://www.sec.gov/spotlight/proxyprocess/proxyvotingbrief.htm. Brokers and nominees often utilize the services of third parties to assist in distributing notices of securities class

street name with brokers, banks, and other nominees.  *See Dell*, 2015 WL 4313206, at \*4; *see also, e.g.*, *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 939-40 (10th Cir. 2005) (providing background on the difference between record holders and "nominee" or "street name" holders); *Martinek v. AmTrust Fin. Servs., Inc.*, 2020 WL 4735189, at \*14 n.6 (S.D.N.Y. Aug. 14, 2020) ("the majority of investors are not the actual record holders of the stock they beneficially own—most investors own the stock in street name through financial institutions").

Because the identities of the beneficial owners who hold securities in street name cannot be determined from James River's records and are not publicly available, the established method for disseminating notices to beneficial owners who meet the class definition in securities actions is to require the nominee owners (*i.e.,* brokers) who purchase and hold the shares on their behalf to either forward the notice to the beneficial owners or identify those beneficial owners to the claims administrator so that the claims administrator can forward the notice to them.  *See, e.g.*, *Fidel v. Farley*, 534 F.3d 508, 515 (6th Cir. 2008) ("the brokerage houses were asked to, within ten days, either provide a list of beneficial owners to the claims administrator or forward the notice to the beneficial owners themselves . . . the notice scheme in this case was 'reasonably calculated to reach interested parties,' . . . [and] comported with the requirements of both due process and Rule 23(c)(2)(B)"); *DeJulius*, 429 F.3d at 940 (approving same procedure).

This well-established and effective use of brokers and nominees in providing notice to potential class members in securities class actions is also the proposed method adopted here. Specifically, the proposed Preliminary Approval Order provides that "Brokers and other nominees

---

action settlements.  For example, A.B. Data expects that Broadridge Financial Solutions, a public financial services company acting on behalf of numerous brokers and nominees, will request and forward Notice Packets for 75% to 80% of all potential Settlement Class Members on behalf of the numerous brokers and nominees (including Merrill Lynch and Morgan Stanley) for which it provides fulfillment services.  *See* Walter Decl. ¶ 13.

who purchased or otherwise acquired James River common stock during the Class Period for the benefit of another person or entity shall: (a) within seven (7) calendar days of receipt of the Notice, request from the Claims Administrator sufficient copies of the Notice Packet to forward to all such beneficial owners, and within seven (7) calendar days of receipt of those Notice Packets forward them to all such beneficial owners; or (b) within seven (7) calendar days of receipt of the Notice, send a list of the names, mailing addresses, and, if available, email addresses, of all such beneficial owners to the Claims Administrator in which event the Claims Administrator shall promptly mail or email the Notice Packet to such beneficial owners." Preliminary Approval Order ¶ 9. Upon full compliance with the Order, nominees may seek payment of their reasonable expenses incurred in complying with the Order by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought. *Id. See also Rodriguez v. CPI Aerostructures, Inc.*, 2023 WL 2184496, at *3 (E.D.N.Y. Feb. 16, 2023) (approving notice and noting that "because the majority of potential Class Members likely are beneficial owners of the securities held in 'street name,' the Claims Administrator also sent Notice Packets to the largest and most common banks, brokers and other nominees . . . . The Notice Packet directed the brokers and nominees who purchased CPI stock during the Class Period to provide A.B. Data with a list of persons who purchased CPI stock or to send a copy of the Notice and Claim Form to those persons by First Class mail").

A.B. Data maintains a list of nearly 5,000 of the largest and most commonly used brokers and nominee owners of publicly traded securities in the United States. Walter Decl. ¶ 6. Consistent with the Preliminary Approval Order, by no later than 20 business days after entry of the Preliminary Approval Order, A.B. Data will mail a copy of the Notice Packet to all members on its broker list with instructions, consistent with the Preliminary Approval Order, for brokers to

9

either provide A.B. Data with the names and addresses of potential Settlement Class Members or request adequate copies of the Notice Packet, and then forward those Notice Packets to the beneficial owners they identify.  Walter Decl. ¶ 7.

Following the initial mailing to brokers and nominees, A.B. Data will send follow-up emails, and, if necessary, phone calls, if any brokers or nominees do not respond to the initial mailing.  Walter Decl. ¶ 8.  The emails will advise the nominees of their obligation to facilitate notice of the Settlement to their clients who purchased or otherwise acquired the shares of James River common stock during the Settlement Class Period.  *Id*.  A.B. Data will also ask that, if the broker or nominee did not purchase any shares of James River common stock during the Class Period for the benefit of others, that the broker or nominee confirm that fact.  *Id*.  In Lead Counsel's and A.B. Data's experience, the brokers and nominees overwhelmingly participate in this process and are expected to provide names and addresses (or request Notice Packets for forwarding) if any of their customers purchased James River common stock during the Class Period.[5]  *See id.* ¶ 13.

If any of the Notice Packets mailed by A.B. Data or the Nominees are returned as undeliverable, A.B. Data will research to see if it can find updated addresses for the recipients by searching the U.S. Postal Service change-of-address database and other commercial change-of-address databases.  Walter Decl. ¶ 16.  Where an updated address can be found, A.B. Data will re-mail the Notice Packet to the updated address.  *Id*.  In A.B. Data's experience in comparable cases, typically only approximately 0.3% to 3% of notices mailed are returned as undeliverable.  *Id*.

---

[5] Indeed, brokers and nominees are very familiar with and routinely follow this process.  In 2022 alone, there were 105 securities class action settlements, the great majority of which would have followed the same process described above.  *See* https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf.

According, virtually all members of the Settlement Class are likely to be successfully notified via direct mail.

**B.      A.B. Data Will Also Publish Notice via the DTC's Legal Notice System, the Settlement Website, Lead Counsel's Respective Websites, and in *The Wall Street Journal* and *PR Newswire***

To reach any residual members of the Settlement Class who may not receive direct notice through the comprehensive and established procedures described above, Lead Plaintiffs' plan for disseminating notice requires A.B. Data to supplement the direct notice procedures through multiple additional channels.

*First*, A.B. Data will send the DTC a Notice and Claim Form for the DTC to publish on its Legal Notice System ("LENS").  *See* Walter Decl. ¶ 9.  LENS provides DTC participants the ability to search and download legal notices as well as receive email alerts based on particular notices or particular security identifiers (known as CUSIPs) once a legal notice is posted.  *Id.*[6]

*Second*, at the same time that the Notice Packet is initially mailed to record holders and brokers, the Settlement Website, JamesRiverSecuritiesLitigation.com, will be established, and copies of the Notice and Claim Form and other relevant documents will be posted to the website. *See* Preliminary Approval Order ¶ 7(c); Walter Decl. ¶ 10.  Lead Counsel will also post copies of the Notice and Claim Form to their respective firm websites, blbglaw.com and saxenawhite.com.

*Third*, no later than ten business days after the Notice Date, A.B. Data will cause a copy of the Summary Notice (ECF No. 114-2, at 52-54) to be published in the national edition of *The Wall Street Journal* and to be transmitted over the *PRNewswire*.  *See* Preliminary Approval Order

---

[6] *See also* https://www.dtcc.com/settlement-and-asset-services/issuer-services/legal-notice-system (detailing how the LENS "service offers access to a comprehensive online library of notices concerning DTC-eligible securities that are published and furnished by third-party agents, courts and security issuers," including legal notices concerning class actions).

¶ 7(d); Walter Decl. ¶ 11.  A.B. Data will also disseminate the Notice Packet to any persons and entities requesting them.

In addition, Defendants have already provided notice of the Settlement to certain federal and state government officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) ("CAFA").  *See* Stipulation ¶ 22; Preliminary Approval Order ¶ 10.  CAFA requires Defendants to provide notice of a proposed class action settlement to relevant federal and state government officials—in this case, the U.S. Attorney General and the 50 state attorneys general—within ten days after the proposed settlement is filed with the court.  *See* 28 U.S.C. 1715(b).  Under CAFA, the government officials are provided with, among other things, a copy of the complaint in the action, any materials filed with the complaint and any amended complaints; notice of any scheduled judicial hearing in the class action; the proposed notice to class members concerning the settlement; the settlement agreement; and any agreements contemporaneously made between class counsel and counsel for the defendants.  *Id.*  Consistent with CAFA's purpose, this provides government officials the opportunity to review and comment upon or object to the approval of class action settlements, if they believe the settlement terms are inadequate.[7]

### C.   The Proposed Method of Providing Notice Is Highly Effective and Routinely Approved by Courts

This method of providing notice to beneficial owners of securities through mailing to record shareholders identified by the issuer, plus dissemination to street-name holders though

---

[7] *See California v. IntelliGender, LLC*, 771 F.3d 1169, 1172 (9th Cir. 2014) ("CAFA expressly provides that the defendant in a class action must provide notice to the appropriate state official of any proposed settlement, presumably so that the state may comment upon or object to the settlement's approval, if the State believes the terms inadequately protect state citizens."); *In re Forefront Data Breach Litig.*, 2023 WL 6215366, at *4 (E.D. Wis. Mar. 22, 2023)  ("the purpose of providing [CAFA] notice to this official is to ensure that a state agency with specialized expertise in the subject matter of the litigation may apply that expertise to the proposed settlement and notify the court if it deems the settlement inadequate").

brokers and nominees, supplemented by publication and internet notice, has been widely approved by courts in this District and found to satisfy all requirements of Rule 23 and due process. *See, e.g.*, *Plymouth Cnty. Ret. Sys. v. Evolent Health, Inc.*, Case No. 1:19-cv-01031-MSN-WEF, Preliminary Approval Order at ¶¶ 7-9 (E.D. Va. Aug. 9, 2022), ECF No. 247 (Nachmanoff, J.) (approving same method of notice); *Plymouth Cnty. Ret. Sys. v. GTT Commc'ns, Inc.*, 2021 WL 1659848, at *3 (E.D. Va. Apr. 23, 2021) (Hilton, J.) (approving same method of notice as satisfying all requirements of Rule 23 and due process); *In re Willis Towers Watson PLC Proxy Litig.*, No. 1:17:cv-01338-AJT-JFA, Preliminary Approval Order at ¶¶ 5-8 (E.D. Va. Jan. 21, 2021), ECF No. 333 (Trenga, J.) (approving same method of notice); *In re Lumber Liquidators Holdings, Inc. Sec. Litig.*, 2016 WL 9176562, at *1 (E.D. Va. Nov. 17, 2016) (Allen, J,) (similar notice "met the requirements of Rule[] 23 . .  of the Federal Rules of Civil Procedure, . . . constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto"); *In re Genworth Fin., Inc. Sec. Litig.*, 2016 WL 7177515, at *2-3 (E.D. Va. Apr. 18, 2016) (Gibney, J.) (approving similar plan of notice involving mailing to both record shareholders and to beneficial owners identified by nominee owners); *In re NII Holdings, Inc. Sec. Litig.*, 2016 WL 7045624, at *2 (E.D. Va. May 16, 2016) (Brinkema, J.) (approving of similar notice program in securities class action); *In re NeuStar, Inc. Sec. Litig.*, 2015 WL 5674798, at *12 (E.D. Va. Sept. 23, 2015) (Cacheris, J.) (approving notice plan that involved mailing to "all potential class members reasonably identifiable from [the company's] electronically searchable transfer records" as well as those identified "through nominee purchasers, such as brokerage firms").

Although a precise list of potential Settlement Class Members cannot be generated by either Lead Plaintiffs or Defendants at this time, because all major brokers and nominees

participate in the process described above and either identify eligible class members or request sufficient copies of the Notice Packet to forward to their customers, as numerous courts have held and in the experience of Lead Counsel and A.B. Data, virtually all potential Settlement Class Members will likely be identified and reached through the proposed process described herein. *See* Walter Decl. ¶ 15.

Indeed, Lead Counsel and A.B. Data expect the notice efforts to be reasonably *overinclusive*. Walter Decl. ¶ 14. For example, based on counsel's and A.B. Data's experience, it is likely that certain brokers may identify as potential Settlement Class Members individuals and entities who only held, but did not purchase, James River common stock during the Class Period, or who purchased James River common stock during the Class Period, but did not hold those shares until the initial corrective disclosure date (and thus were not "damaged"). *Id*.

The only class members, if any, who will not be reached are the small number of individuals for whom a broker or nominee no longer has a currently valid address on file and for whom A.B. Data is unable to obtain an updated address through the U.S.P.S. or other commercial change-of-address databases. *See id*. ¶¶ 15-16. Typically, only about 0.3% to 3% of Notice Packets mailed in similar cases may be returned as undeliverable due to "stale address" issues as described above. *See id*. ¶ 16. Accordingly, Lead Counsel and A.B. Data expect the mailed notice of the Settlement to effectively reach approximately 97% to 99.7% of potential Settlement Class Members. Moreover, as discussed above, the mailed notice will be further supplemented by publication notice, including a press release, publication in *The Wall Street Journal*, and via the internet, so that any individuals who fall within the small percentage of class members who fail to receive direct notice may still learn of the proposed Settlement through these other means—and

14

will then be able to obtain a copy of the Notice Packet from the Settlement Website or request that one be mailed to them.

Finally, the effectiveness of the proposed method of providing notice is further demonstrated by the high level of claim-filing rates typically seen in securities class actions where the same notice method was utilized. In recent years, in comparable securities class actions involving purchasers of publicly-traded common stock, Lead Counsel have found that the claims received usually represent over 70% of the total number of damaged shares as estimated by plaintiffs' experts based on their modeling of the trading in the company's stock—and often exceed 85% to 95% of the total damaged shares. *See, e.g.*, *Police Ret. Sys. of St. Louis v. Granite Construction Inc.*, Case No. 3:19-cv-04744-WHA, Declaration of Javier Bleichmar at ¶ 5 (N.D. Cal. Dec. 1, 2022), ECF No. 317 (claims received represented 98% of estimated damages and 87% of estimated damaged shares); *SEB Invest. Mgmt. AB v. Symantec Corp.*, Case No. 3:18-cv-02902-WHA, Post-Distribution Accounting at 1 (N.D. Cal. Aug. 25, 2023), ECF No. 451 (claims received represented 96% of estimated damaged shares); *In re Spectrum Brands Sec. Litig.*, No. 19-cv-347-jdp, Reply Memo at 6 (W.D. Wis. Mar. 4, 2022), ECF No. 113 (claims received represented 90% of estimated damaged shares); *In re RH, Inc. Sec. Litig.*, Case No. 4:17-00554-YGR, Post-Distribution Accounting at 1 (N.D. Cal. Apr. 7, 2020), ECF No. 160 (claims received represented 94% of estimated damaged shares). This high level of participation by damaged shares further demonstrates the effectiveness of the proposed notice program.

## III.    NEXT STEPS

As discussed above, if the Court enters the Preliminary Approval Order, A.B. Data will commence mailing the Court-approved Notice Packet to the persons and entities named on James River's Record Shareholder List and A.B. Data's list of nearly 5,000 brokers and nominees, and will establish the Settlement Website, within 20 business days. *See* Preliminary Approval Order

15

¶¶ 7(b), 7(c).  Brokers and nominees will then begin the process of providing A.B. Data with the names and addresses of potential Settlement Class Members or requesting Notice Packets for forwarding to potential Settlement Class Members.  *Id.* ¶ 9.

The Preliminary Approval Order also provides for the Court to set a date for a hearing on final approval of the Settlement, which Lead Plaintiffs request be at least 110 days after entry of the Preliminary Approval Order.  *Id.* ¶ 5.  This will allow ample time for dissemination of the Notice Packet through the broker process described above.

## IV.   CONCLUSION

As set forth above, the proposed method of providing notice of the Settlement is expected to reach all or virtually all potential Settlement Class Members.  Accordingly, Lead Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and enter the proposed Preliminary Approval Order.

Dated: January 16, 2024                              Respectfully submitted,

By: */s/ Steven J. Toll*
Steven J. Toll (Va. Bar No. 15300)
Daniel S. Sommers
S. Douglas Bunch
**COHEN MILSTEIN SELLERS
& TOLL PLLC**
1100 New York Avenue, Suite 500
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
dsommers@cohenmilstein.com
dbunch@cohenmilstein.com

*Liaison Counsel for Lead Plaintiffs and the Settlement Class*

16

**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**
Salvatore J. Graziano (*pro hac vice*)
Rebecca E. Boon (*pro hac vice*)
Jeremy P. Robinson (*pro hac vice*)
Emily A. Tu (*pro hac vice*)
Chloe Jasper (*pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
salvatore@blbglaw.com
rebecca.boon@blbglaw.com
jeremy@blbglaw.com
emily.tu@blbglaw.com
chloe.jasper@blbglaw.com

*Attorneys for Lead Plaintiff Miami and
Lead Counsel for the Settlement Class*

**SAXENA WHITE P.A.**
David R. Kaplan (*pro hac vice*)
Emily R. Bishop (*pro hac vice*)
505 Lomas Santa Fe Dr.
Suite #180
San Diego, CA 92075
Telephone: (858) 997-0860
Facsimile: (858) 369-0096
dkaplan@saxenawhite.com
ebishop@saxenawhite.com

Maya Saxena
Joseph E. White, III (*pro hac vice*)
Jonathan Lamet (*pro hac vice*)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
jlamet@saxenawhite.com

Steven B. Singer (*pro hac vice*)
10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone: (914) 437-8551

17

Facsimile: (888) 631-3611
ssinger@saxenawhite.com

*Attorneys for Lead Plaintiff Fort Worth and
Lead Counsel for the Settlement Class*

**KLAUSNER KAUFMAN JENSEN
& LEVINSON LLP**
Robert D. Klausner
Stuart A. Kaufman
7080 Northwest 4th Street
Plantation, Florida 33317
Telephone: (954) 916-1202
Facsimile: (954) 916-1232
bob@robertdklausner.com
stu@robertdklausner.com

*Additional Counsel for Lead Plaintiff Miami*

18