UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

RICHMOND DIVISION

```
* * * * * * * * * * * * * * *
IN RE JAMES RIVER GROUP      *
HOLDINGS, LIMITED,           *
SECURITIES LITIGATION,       * CIVIL ACTION 3:21-CV-00444
                             * JANUARY 26, 2024   11:04 A.M.
                             * PRELIMINARY APPROVAL HEARING
                             * VOLUME I OF I
                             *
                             * Before:
                             * HONORABLE DAVID J. NOVAK
                             * UNITED STATES DISTRICT JUDGE
* * * * * * * * * * * * * * * EASTERN DISTRICT OF VIRGINIA
```

APPEARANCES:

For the Plaintiffs:        REBECCA E. BOON, ESQUIRE
                           Bernstein Litowitz Berger &
                           Grossmann, LLP
                           1251 Avenue of the America
                           44th Floor
                           New York, NY 10020

                           JOSEPH E. WHITE, III
                           Saxena White, P.A.
                           7777 Glades Road
                           Suite 300
                           Boca Raton, FL 33434

                           STEVEN J. TOLL, ESQUIRE
                           Cohen Milstein Sellers & Toll, PLLC
                           1100 New York Avenue, N.W.
                           Suite 500, West Tower
                           Washington, D.C. 20005-3965

Court Reporter:            Melissa H. Custis, RPR
                           701 East Broad Street
                           Richmond, Virginia 23219
                           (804)916-2278

        Proceedings recorded by mechanical stenography.
Transcript produced by computer.

APPEARANCES (Continued):

For the Defendants:        SUSAN R. GITTES, ESQUIRE
                           Debevoise & Plimpton, LLP
                           66 Hudson Boulevard
                           New York, NY 10001

                           BRYAN A. FRATKIN, ESQUIRE
                           McGuireWoods, LLP
                           Gateway Plaza
                           800 East Canal Street
                           Richmond, VA 23219

                           BRIAN E. PUMPHREY, ESQUIRE
                           McGuireWoods, LLP
                           2812 Emerywood Parkway
                           Suite 220
                           Richmond, VA 23294

(Court convened at 11:04 a.m.)

THE CLERK:  Civil action 3:21-CV-444, *In Re James River Group Holdings, Limited Securities Litigation.*

Representing the plaintiffs are Rebecca E. Boon, Joseph E. White, III, and Steven J. Toll.

On behalf of the defendants is Susan R. Gittes, Bryan A. Fratkin, and Brian E. Pumphrey.

Counsel, are we ready to proceed?

MS. BOON:  Yes, we are.  Thank you.

THE COURT:  All right.  Since you're representing the plaintiff, do you want to come on up here?

MS. BOON:  Thank you, Your Honor.  Rebecca Boon for the lead plaintiffs in the proposed settlement class.

THE COURT:  I'm sorry; I didn't hear what you said.

MS. BOON:  I said thank you, Your Honor.  Rebecca Boon for the lead plaintiffs in the proposed settlement class.

THE COURT:  Okay.  So, look, I've obviously read the papers, but do you just want to go over the highlights?  I particularly just want to reiterate the notice provisions.  I had you supplement that not because I questioned it, but that's something I really look at at this stage.  It seems to me to be appropriate, but I want you to just put that on the record for us.

MS. BOON:  Thank you, Your Honor.  I'll briefly summarize the procedures here.

So in order to provide notice to the class, we work with A.B. Data.  A.B. Data is a nationally recognized claims administration firm that conducts the notice process and processes the claims that we receive.  The notice program provides notice in, essentially, three ways.

First, A.B. Data mails notice to the record shareholders identified by James River.  These are the individuals or entities who purchased James River common stock during the --

THE COURT:  Why don't you slow down a little bit.

MS. BOON:  Of course.

THE COURT:  My court reporter is going to get really mad at me pretty soon.

MS. BOON:  I apologize, Your Honor.  I will absolutely slow down.

THE COURT:  Okay.  You're going to win, so don't be nervous.

MS. BOON:  I appreciate that guidance as well, Your Honor.

Your Honor, the record shareholders -- the notification of the record shareholders is the first step in the process.  At our request, James River has already provided us with the list of record shareholders, so we're ready to go with that.  There are nine names on the list and this reflects the reality that the vast majority of James River shares are

held in street name.

In order to notify those shareholders, we move to the second step of the notice process where we notify the brokerage firms who hold the securities in street name on the investors' behalf.  And there A.B. Data maintains a database of 5,000 brokerage firms, which are the largest and most common nominees and include local and regional offices, including in Virginia and in Richmond, specifically.  A.B. Data mails a copy of the notice packet to all of the entities on its broker list with instructions.  The instructions require the brokers, within seven days of receiving the notice from A.B. Data, to either provide A.B. Data with the names and addresses of the beneficial owners or to request notice packets from A.B. Data and then for those notice packets on to the beneficial owners themselves.

The brokers are required to comply with this part of the notice program.  Under this Court's proposed preliminary approval order and as detailed in the declaration that we submitted from our claims administrator, we do know that they comply with it in a couple of different ways.  A.B. Data estimates that a total of approximately 30,000 notice packets will be mailed using this method.

The third step of the notice program is, essentially, a catchall, and there we publicly disseminate notice in three additional ways.  A.B. Data sends the DTC and notice and claim

form to post on the DTC system.  The notice is also posted on a settlement website specifically devoted to this case.  It will be called JamesRiverSecuritiesLitigation.com, and it's also posted on the websites of lead counsel, my firm Bernstein, Litowitz, as well as our lead counsel Saxena White.

And then third, A.B. Data causes a copy of the summary notice to be published in the national edition of the *Wall Street Journal* and to be transmitted in a press release over *PR Newswire*.  We respectfully submit that this form of notice program is highly effective because it mails, essentially, all of the brokerage firms.  We've provided various data points confirming this in our papers to the Court.

I also wanted to note that this is the same process that James River uses when it notifies shareholders about its annual meeting and James River uses the same firm, Broadridge, that the brokers typically use to implement this process to all of the beneficial owners.

My last point, I would just note that this type of notice program is regularly approved by federal district courts in securities class actions.  It's, essentially, the standard way to do this, and we've provided some examples of cases approving this program at page 15 of our supplemental submission to the Court.

THE COURT:  Okay.  And as I understand it, the

proposed settlement is going to be for $30 million and I gather you would have the same administrator in terms of disbursing that.  Is it 30 million -- you don't want any attorneys' fees, do you?

MS. BOON:  We will be submitting an application for attorneys' fees at the next step of the process.

THE COURT:  Is that going to come out of the 30 million?

MS. BOON:  That will come out of the 30 million, Your Honor.  We'll be requesting 25 percent and in our fee application, we'll be providing all of the underlying details supporting that request.

THE COURT:  All right.  Just make sure you give me what you think is the lodestar so I can do an analysis.  I know you do it by percentage.  I have generally approved around 30 percent, but it depends on the case.  I had a problem with the Altria case.

Mr. Pumphrey, were you involved in the Altria case?

MR. PUMPHREY:  Yes, Your Honor.

THE COURT:  I cut that one to 17 percent, but that's not you.  He could tell you why I did that, right?  So just make sure I can look at the lodestar when we get to that point, assuming there's no objections, okay?

MS. BOON:  Absolutely, Your Honor.

THE COURT:  All right.  Is there anything else you

wanted to tell me?

MS. BOON:  Nothing else for today, Your Honor.  The only additional request we have is for the Court to enter the schedule, which includes the final settlement hearing date, which triggers a series of other deadlines in the papers.

THE COURT:  Okay.  So you're from New York.  That's the reason why you talk so fast.  That's basically what the deal is, right?

MS. BOON:  I am.  Unfortunately, I am from New York, Your Honor.  I apologize.

THE COURT:  No, that's all right.  I just to make sure there's no New Yorkers on the defense side who's going to speak, otherwise, I'll just get Mr. Pumphrey because I know he's slow.

MS. BOON:  I appreciate that.

THE COURT:  Thank you.

MS. BOON:  Thank you, Your Honor.

THE COURT:  Appreciate it.

Who's speaking?  Is it Ms. Johnson?  Who are you?

MS. GITTES:  Susan Gittes, Your Honor, from Debevoise & Plimpton, also from New York.

THE COURT:  Oh, geez.

MS. GITTES:  I'll say that right up front.

THE COURT:  Well, it's good that this is going to be short and to the point, then.

I gather you're in agreement on everything since this is a joint motion?

MS. GITTES:  Yes, Your Honor.

THE COURT:  And as to the notice issues that I flagged here, just because I wanted to be clear about what was going on because I had this issue in another case, you're comfortable that we are to reach as many of the shareholders here as possible; is that right?

MS. GITTES:  Yes, Your Honor.  We've worked in coordination with Ms. Boon and her colleagues to make sure that we can do everything we can to facilitate the process. And as she said, the process that they use for notice in this case is the same process we use to notify stockholders for annual meetings.  And so we are likewise confident that it's a robust process and we're here to assist collaboratively with plaintiffs' counsel to the extent there's anything else we can do.

THE COURT:  Okay.  Is there anything else you wanted to tell me?

MS. GITTES:  No, Your Honor.

THE COURT:  All right.  That's fine.  Thank you.  You can have a seat, then.

So I'm going to conditionally certify the class for settlement purposes as that has been defined in the papers in the proposed order.  Essentially, the class is defined to

In re James River Group - 1/26/2024

include all persons or entities who purchased or otherwise acquired publicly traded James River common stock from February 22nd of 2019 through October 25th of 2021.  The parties estimate that the class consists of thousands of retail investors and over 200 institutional investors.

I find that this class meets the Rule 23(a) requirements certainly at this stage of numerosity, commonality, typicality, and adequacy.

I also find that the settlement class meets the demands of Rule 23(b)(3) in that questions of law or fact common to the class members predominate over questions affecting individual members.

Also, the class action is the superior method for fairly and efficiently adjudicating this controversy.

Now, as to the settlement that's proposed, I'm going to preliminarily approve that as well, the $30 million.  I think that's more than sufficient.  I'm going to find that it's fair, reasonable and adequate certainly at this stage using the factors delineated in Rule 23 and the *In re Jiffy Lube Securities Litigation* case.

I'll go through those -- each of those factors briefly.  I'll have a more robust discussion when we get to the final approval, assuming that we get there.

One, plaintiffs and lead counsel have adequately represented the class.  We have -- lead counsel here took, in

terms of on the plaintiffs' side, undertook a thorough investigation of the claims.  They overcame a motion to dismiss from the defendant that involved complicated questions of law and fact under the Securities Exchange Act.  They've engaged in extensive discovery into the alleged misrepresentations at issue.  That was clear to me at the motions stage.

I'll also note that I think the recovery here is substantial.  $30 million is a significant amount of money.  Particularly, there is inherent risk in these type of cases, significant risk as I've learned from my years of doing these cases.

Two, the settlement is the product of good faith, informed and arm's-length negotiation by experience counsel.

I'll first note that on both sides here we have very well-respected counsel who are not normally in a position of just rolling over and playing dead when it comes to litigation, so I know that we have people that have fought through this.  They have engaged in settlement conferences, as well as related calls with a well-respected private mediator, Mr. Melnick, who regularly handles complex civil litigation.  He's mediated many other similar type of cases.

The posture of this case also supports preliminary approval, as the parties reached an agreement in this case after they obtained a ruling on the motion to dismiss.  That

also suggests there is no collusion, which is what the Court really has to be concerned about at this stage.

The settlement provides adequate relief to the class in light of the counterbalancing factors.

As I note, the return is $30 million here.  In the papers, I recall that there was somewhere between 13 and 25 percent of the potential recovery at issue here, which in these type of cases I think is significant.

We've had a pretty significant discussion about notice.  I did that just to make sure that we were reaching as many folks as possible.

I find that the form and the manner of the proposed notice is going -- is more than reasonably calculated to apprise the members of the class of the pendency of this action, the proposed settlement and their right to opt out of the settlement or to object.

I'm not going to reiterate everything that Ms. Boon did, but I find that that is more than sufficient.  I have confidence in the class administrator that they have selected to carry that out, A.B. Data, Limited, so I'm going to approve them as well.

I find that these procedures that were just summarized constitute the best notice practicable under the circumstances and comply with due process Rule 23 and the Private Securities Litigation Reform Act of 1995.

I'm also going to adopt the parties' motion and their timeline -- I'm sorry; their timeline in their motion and proposed order.

Now, here's what I was going to suggest to you-all: I'm looking at Friday, April the 12th for the final approval hearing.  Does that work for you-all?  If that's a problem, you have to let me know.

MS. BOON:  May I address that, Your Honor?

THE COURT:  Yes.  That's why I'm asking you.  Tell me.

MS. BOON:  I appreciate that.  Your Honor, unfortunately, we would submit that April is not going to be fast enough.  We'd like to provide for 60 days from when we mail notice for claimants to decide whether they want to exclude themselves from the class.  And we feel strongly that that's the appropriate amount of time because they receive the mailing, they need to evaluate whether they're in the class, gather the necessary paperwork, fix any discrepancies, and then make a decision.

So we were looking at a settlement hearing date of May 15th, which would be 110 days after today, and we would respectfully submit that's the tightest --

THE COURT:  Hold on a second.  What day of the week is that, first of all?

Ms. Garner, do you know?

THE CLERK:  Yes, Your Honor.  May 15th is a Wednesday.

THE COURT:  We're not starting yet the Dixie case, right?

THE CLERK:  No.  We have a jury trial set, ViaPath jury trial.

THE COURT:  Oh, that's in Alexandria, right?

THE CLERK:  Yes, sir.

THE COURT:  How about the Friday before Memorial Day?

THE CLERK:  When's Memorial Day?

THE COURT:  Well, it's -- you know, when Dixie, when we do the jury selection Wednesday and Thursday, how about the Friday?

I start like, essentially, a two-month murder case that -- and it's like a major issue around here.  That's what I'm working around here and I've now picked up a docket in Alexandria too, so I'm in two places.

THE CLERK:  That works.  The 24th is open.

THE COURT:  The 24th.  Are you okay with flying down here on the 24th --

MS. BOON:  I would be happy to, Your Honor.

THE COURT:  -- or taking a train or whatever you want to do?

MS. BOON:  We would be happy to.  Thank you.

THE COURT:  You know, you could also just have local

people that speak slower come instead.

MS. BOON:  I'll take that under advisement, Your Honor.  Thank you.

THE COURT:  Are you guys good on the 24th, Friday, the 24th?

MS. GITTES:  Yes, sir.

THE COURT:  What time do you want to do it?

What time do you want?  What's easiest for you, because you're going to fly in and fly out, right?

MS. BOON:  We'll be coming the night before, Your Honor, so whatever time is convenient for the Court works.

THE COURT:  Do you want to do it at 11:00 o'clock?

MS. BOON:  That's fine, Your Honor.

THE COURT:  That way we can get you out of here.

Are you guys good with that?

MS. GITTES:  (Nods head up and down.)

THE COURT:  We'll do it at 11:00 a.m. on the 24th, then, okay?

I think we have your proposed order.  Did you send it to us in Word version?

MS. BOON:  I believe we did, Your Honor, yes.

THE COURT:  Do you have that?

THE LAW CLERK:  Yes.

THE COURT:  Okay.  Good.  Is there anything else, then, from the plaintiffs?

In re James River Group - 1/26/2024

MS. BOON:  Nothing, Your Honor.  Thank you very much.

THE COURT:  Anything else from the defense?

MS. GITTES:  (Shakes head side to side.)

THE COURT:  No?  I look forward to seeing you-all in May.

(Court adjourned at 11:19 a.m.)

CERTIFICATE

I, Melissa H. Custis, certify that the foregoing is

a correct transcript from the record of proceedings

in the above-entitled matter.


/s/  Melissa H. Custis, RPR          Date:  4/17/2024