**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

|  |  |
|---|---|
| IN RE JAMES RIVER GROUP HOLDINGS, LTD. SECURITIES LITIGATION | Case: 3:21-cv-00444-DJN <br><br> <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S**
**<u>MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES</u>**

## **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION............................ 4

III.  LEAD COUNSEL'S FEE AND EXPENSE REQUESTS ARE REASONABLE............. 5

       A.    "Percentage-of-the-Fund" Fee Is Appropriate Where The Settlement
            Creates a Common Fund.................................................................................. 5

       B.    Lead Counsel's Fee Request is Reasonable.................................................... 6

            1.    The Results Obtained for the Class Strongly Support the Fee
                   Award............................................................................................... 7

            2.    The Reaction of the Settlement Class Supports the Fee Award ................. 9

            3.    The Skill, Experience, and Reputation of the Attorneys Involved
                   Strongly Supports the Fee Award ................................................... 10

            4.    The Complexity and Duration of the Action and Litigation Efforts
                   Strongly Supports the Fee Award ................................................... 12

            5.    The Contingent Nature of the Fee and Risk of Nonpayment
                   Strongly Supports the Fee Award ................................................... 15

            6.    The Amount of Time Devoted to the Case by Plaintiffs' Counsel
                   Strongly Supports the Fee Award ................................................... 16

            7.    A 25% Fee is Significantly *Less* Than the Customary 30% to 33%
                   Awarded in Similar Cases in this District and the Fourth Circuit ............ 17

            8.    A Cross-Check of Plaintiffs' Counsel's Lodestar Confirms the Fee
                   Request Is Reasonable .................................................................... 18

       C.    Lead Counsel's Litigation Expenses and Lead Plaintiffs' PSLRA Awards
            Are Reasonable and Should Be Granted.......................................................... 20

IV.  CONCLUSION............................................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) ................................................................................................. 5

*Blum v. Stenson*,
465 U.S. 886 (1984) ................................................................................................. 6

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ................................................................................................. 5

*Brundle v. Wilmington Trust, N.A.*,
919 F.3d 763 (4th Cir. 2019) .................................................................................... 5

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .......................................................... 21

*Clark v. Duke University*,
2019 WL 2579201 (M.D.N.C. June 24, 2019) ......................................................... 20

*Cosby v. KPMG, LLP*,
2022 WL 4129703 (E.D. Tenn. July 12, 2022) ........................................................ 18

*Davis v. Yelp, Inc.*,
2023 WL 3063823 (N.D. Cal. Jan. 27, 2023) ........................................................... 21

*Farrar v. Workhorse Group Inc.*,
2023 WL 5505981 (C.D. Cal. July 24, 2023) ........................................................... 7

*Fleming v. Impax Laboratories, Inc.*,
2022 WL 2789496 (N.D. Cal. July 15, 2022) ........................................................... 5

*Fulton Cnty. Employees' Ret. Sys. v. Blankfein*,
2023 WL 350888 (S.D.N.Y. Jan. 20, 2023) ............................................................. 20

*Galloway v. Williams*,
2020 WL 7482191 (E.D. Va. Dec. 18, 2020) ........................................................... 6

*Grae v. Corrections Corp. of America*,
2021 WL 5234966 (M.D. Tenn. Nov. 8, 2021) ........................................................ 18

*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ......................................................... 18

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ................................................................................................. 7

*In re Abrams & Abrams, P.A.*,
   605 F.3d 238 (4th Cir. 2010) ................................................................................ 6

*In re Banc of California Sec. Litig.*,
   2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) ...................................................... 18

*In re Biolase, Inc. Sec. Litig.*,
   2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) ...................................................... 8

*In re Celebrex (Celecoxib) Antitrust Litig.*,
   2018 WL 2382091 (E.D. Va. Apr. 18, 2018) .............................................. 15, 18, 19

*In re Constellation Energy Grp., Inc. Sec. Litig.*,
   2013 WL 12461134 (D. Md. Nov. 4, 2013) ............................................................ 8

*In re Deutsche Bank AG Sec. Litig.*,
   2020 WL 3162980 (S.D.N.Y. June 11, 2020) ...................................................... 18

*In re Flowers Foods, Inc. Sec. Litig.*,
   2019 WL 6771749 (M.D. Ga. Dec. 11 ................................................................. 18

*In re Genworth Fin. Sec. Litig.*,
   210 F. Supp. 3d 837 (E.D. Va. 2016) .............................................................. *passim*

*In re Hi-Crush Partners L.P. Sec. Litig.*,
   2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ...................................................... 11

*In re Interior Molded Doors Indirect Purchaser Antitrust Litig.*,
   2021 WL 5195089 (E.D. Va. July 27, 2021) ........................................................ 18

*In re N. Dynasty Mins. Ltd. Sec. Litig.*,
   2024 WL 308242 (E.D.N.Y. Jan. 26, 2024) ......................................................... 21

*In re Peanut Farmers Antitrust Litig.*,
   2021 WL 9494033 (E.D. Va. Aug. 10, 2021) ..................................................... 6, 15

*In re Perrigo Company PLC Sec. Litig.*,
   2022 WL 500913 (S.D.N.Y. Feb. 18, 2022) ........................................................ 18

*In re PPDAI Grp. Inc. Sec. Litig.*,
   2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) .......................................................... 8

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2020 WL 4196468 (S.D.N.Y. July 21, 2020) ................................................. 10, 18

*In re Snap Inc. Sec. Litig.*,
   2021 WL 667590 (C.D. Cal. Feb. 18, 2021) ......................................................... 8

*In re Star Scientific, Inc. Sec. Litig.*,
  2015 WL 13821326 (E.D. Va. June 26, 2015) .......................................................... 17

*In re Synchrony Fin. Sec. Litig.*,
  2023 WL 4992933 (D. Conn. Aug. 4, 2023) ............................................................. 21

*In re The Mills Corp. Sec. Litig.*,
  265 F.R.D. 246 (E.D. Va. 2009) ..................................................................... 6, 7, 21

*Knurr v. Orbital ATK, Inc.*,
  2019 WL 3317976 (E.D. Va. June 7, 2019) ..................................................... *passim*

*Kruger v. Novant Health, Inc.*,
  2016 WL 6769066 (M.D.N.C. Sept. 29, 2016).......................................................... 20

*Nolte v. Cap. One Fin. Corp.*,
  390 F.3d 311 (4th Cir. 2004) ................................................................................... 12

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015).................................................................................................. 13

*Phillips v. Triad Guar. Inc.*,
  2016 WL 2636289 (M.D.N.C. May 9, 2016) ................................................... 7, 8, 15

*Plymouth Cnty. Ret. Sys. v. Patterson Cos., Inc.*,
  2022 WL 2093054 (D. Minn. June 10, 2022).................................................... 18, 20

*Plymouth Co. Ret. Sys. v. GTT Commc'ns, Inc.*,
  2021 WL 1659848 (E.D. Va. Apr. 23, 2021) ................................................... *passim*

*Robinson v. Carolina First Bank NA*,
  2019 WL 2591153 (D.S.C. June 21, 2019).......................................................... 6, 16

*Seaman v. Duke Univ.*,
  2019 WL 4674758 (M.D.N.C. Sept. 25, 2019)...................................................... 6, 19

*Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corp.*,
  600 F. Supp. 3d 1189 (N.D. Ala. 2021).................................................................... 13

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
  417 F. Supp. 3d 379 (S.D.N.Y. 2019)....................................................................... 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).................................................................................................... 5

*Thorpe v. Walter Inv. Mgmt. Corp.*,
  2016 WL 10518902 (S.D. Fla. Oct. 17, 2016)............................................... 7, 12, 18

*Vataj v. Johnson*,
2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) .............................................................................. 8

*Woolgar v. Kingstone Cos., Inc.*,
477 F. Supp. 3d 193 (S.D.N.Y. 2020)....................................................................................... 13

**SECONDARY SOURCES**

H.R. Conf. Rep. No. 104-369 (1995)............................................................................................. 9

Pursuant to Federal Rule of Civil Procedure 23(h), Court-appointed Lead Counsel Saxena White P.A. ("Saxena White") and Bernstein Litowitz Berger & Grossmann LLP ("BLB&G," and together with Saxena White, "Lead Counsel")[1] respectfully submit this memorandum of law in support of their motion for an Order: (1) awarding attorneys' fees of 25% of the Settlement Fund, net of Litigation Expenses awarded, including interest earned at the same rate as the Settlement Amount; (2) awarding $603,965.20 in payment of Plaintiffs' Counsel's litigation expenses; and (3) awarding Lead Plaintiffs[2] $17,754.55 in the aggregate, pursuant to 15 U.S.C. § 78u-4(a)(4), in connection with their representation of the Settlement Class as authorized by the PSLRA.

## I.   **INTRODUCTION**

Following two-and-a-half years of litigation and extensive negotiation, including two days of formal mediation, the $30 million cash Settlement in this securities class action represents an excellent achievement for the Settlement Class.  Plaintiffs' Counsel undertook this difficult and costly litigation on a fully contingent basis, persevering despite many challenges to establishing both liability and damages, and secured a recovery for the Settlement Class that far eclipses the typical recovery in securities class actions.

The claims asserted in this action—concerning the truthfulness of Defendants' statements regarding James River's reserve estimates and reserve-setting processes for its largest insured, Uber—are among the most difficult claims to plead and prove in federal securities litigation. Moreover, Defendants were represented by highly experienced attorneys from two of the top defense

---

[1] All capitalized terms used and not otherwise defined in this Memorandum have the meanings ascribed to them in the Stipulation and Agreement of Settlement (the "Stipulation" or "Settlement Agreement") previously filed with the Court (ECF No. 114-1).  Unless otherwise noted, all emphasis is added, and all internal marks and citations are omitted.

[2] "Lead Plaintiffs" are Employees' Retirement Fund of the City of Fort Worth d/b/a Fort Worth Employees' Retirement Fund ("Fort Worth") and The City of Miami General Employees' & Sanitation Employees' Retirement Trust ("Miami").

firms in the country.  Despite the substantial risk presented by the claims and the skilled defense mounted by Defendants, as a direct result of Lead Counsel's skill, experience, and vigorous advocacy, Settlement Class Members are poised to recover between 13% and 25% of their potential recoverable damages.

As detailed in the accompanying Joint Declaration,[3] this recovery was possible only after Plaintiffs' Counsel and Lead Plaintiffs engaged in comprehensive pre-suit and ongoing investigations, and, after the statutory discovery stay was lifted, directed extensive litigation efforts under an accelerated case schedule that was expedited even under "Rocket Docket" standards. Initially, Plaintiffs' Counsel's investigation included contacting more than 250 potential witnesses and speaking with more than 100 former employees of James River, at least 15 of whom recounted detailed, substantive information that was critical to Lead Plaintiffs' allegations.  ¶ 24.  Plaintiffs' Counsel then supplemented these accounts by identifying, closely tracking, and analyzing documentary and testimonial evidence from a related bad faith litigation against James River, which the Court repeatedly cited in denying in its entirety Defendants' motion to dismiss the Complaint. ¶¶ 29, 36.  Through Lead Counsel's attentive and vigorous advocacy, the securities fraud claims in this case survived two full rounds of motion to dismiss briefing under the exacting pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Federal Rule of Civil Procedure 9(b), which then led to the comprehensive discovery of Defendants and multiple non-parties.

---

[3] The "Joint Declaration" or "Joint Decl." is defined as the Declaration of Rebecca E. Boon and David R. Kaplan in Support of (I) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses. Unless otherwise noted, citations to "¶" in this memorandum refer to paragraphs in the Joint Declaration.  All exhibits referenced below are attached to the Joint Declaration.

Once the case proceeded to formal discovery, Lead Counsel obtained millions of pages of documents produced by Defendants, and thousands of pages of documents produced by non-parties, including Uber. ¶¶ 5, 53-54. These documents were highly relevant to Lead Plaintiffs' claims and critical in reaching the Settlement. Lead Plaintiffs also engaged numerous experts to assist them in crafting discovery and follow-up discovery requests, understanding documents produced in discovery (including technical documents regarding claims handling, actuarial science, and accounting), and in working on merits experts reports which were due within a month of the date the Settlement was reached. These experts spanned multiple disciplines, including the financial, accounting and insurance industries, and, together with Lead Counsel's extensive pre-suit investigation and extensive formal discovery, were critical in reaching the Settlement. ¶¶ 5, 65-69.

Reaching the Settlement was an intense process. Lead Counsel submitted detailed mediation statements and rebuttal points before Mr. Jed Melnick, Esq., a highly experienced private mediator and special master in complex litigation. The mediation submissions set forth Lead Plaintiffs' positions on highly disputed issues in the case, and were supported by discovery documents, sworn witness testimony, and applicable law. Lead Counsel also engaged in two formal mediation sessions before Mr. Melnick, and continued mediation discussions under Mr. Melnick's oversight before the Parties accepted his mediator's recommendation. ¶¶ 5, 70-74; Ex. 1 (Melnick Decl.) ¶¶ 6-13.

Lead Counsel respectfully submit that in light of their extensive efforts and vigorous advocacy on behalf of the Settlement Class, and the extraordinary recovery achieved for the Settlement Class, Lead Counsel's request for a 25% fee, on behalf of all Plaintiffs' Counsel, is eminently reasonable.[4] Not only is the requested fee below customary Fourth Circuit standards for

---

[4] "Plaintiffs' Counsel" means Lead Counsel Saxena White and BLB&G, Liaison Counsel Cohen Milstein Sellers & Toll PLLC, and additional counsel for Lead Plaintiff Miami, Klausner Kaufman Jensen & Levinson LLP.

3

complex securities class action settlements, here, it is also below the value of Plaintiffs' Counsel's time, resulting in a slightly *negative* lodestar.  Specifically, Plaintiffs' Counsel collectively worked more than 11,300 hours, representing a total lodestar of $7,423,241.25 over the course of two-and-a-half years to achieve the Settlement—all on a contingent basis with no assurance of ever being paid—resulting in a "negative" lodestar multiplier of 0.99.  Joint Decl. ¶¶ 133, 138-140.

Lead Counsel also respectfully request that this Court approve the requested litigation expenses of $603,965.20—a reasonable amount that is well in-line with what is typically expended in similar cases and justified under the particular facts of this case.  In addition, no Settlement Class Member to date has objected to the fee and expense requests and Lead Plaintiffs support the requests as fair and reasonable.  *See* Ex. 2, at ¶¶ 12-15; Ex. 3, at ¶¶ 7; Ex. 5, at ¶ 17.

Finally, Lead Plaintiffs respectfully request that the Court approve the requested awards of $15,879.55 and $1,875.00, to Fort Worth and Miami, respectively, pursuant to 15 U.S.C. § 78u-4(a)(4), for costs and expenses incurred in connection with their representation of the Settlement Class.  Lead Plaintiffs support their applications with declarations setting forth the basis for the awards.  *See* Ex. 2, at ¶¶ 16-18; Ex. 3, at ¶¶ 4.  Lead Plaintiffs' representative reimbursements are fair and reasonable, expressly contemplated by the PSLRA, and consistent with those routinely awarded by federal courts to lead plaintiffs in securities class actions nationwide.

## II.    FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION

The Joint Declaration is an integral part of this submission.  For the sake of brevity in this memorandum, the Court is referred to it for a detailed description of, *inter alia*, the factual and procedural history of the Action (¶¶ 5, 15-79); the nature of the claims asserted (¶¶ 15-18); the negotiations leading to the Settlement (¶¶ 5, 7, 70-76); the risks and uncertainties of continued

litigation (¶¶ 80-107); and the services Lead Counsel provided for the benefit of the Settlement Class (¶¶ 134-135).

## III.    LEAD COUNSEL'S FEE AND EXPENSE REQUESTS ARE REASONABLE

For their efforts in creating a common fund for the benefit of the Settlement Class, Lead Counsel seek a reasonable percentage of the fund recovered as attorneys' fees.  The percentage method of awarding fees has become the prevailing method for awarding fees in common fund cases in this Circuit and throughout the nation.

### A.  "Percentage-of-the-Fund" Fee Is Appropriate Where The Settlement Creates a Common Fund

The Supreme Court has long recognized that attorneys who obtain a recovery for a class in the form of a common fund are entitled to an award of fees and expenses from that fund.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[5]  The purpose of the common fund doctrine is to adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with the litigation.  *See, e.g., Brundle v. Wilmington Trust, N.A.*, 919 F.3d 763, 785 (4th Cir. 2019) (explaining that the common fund derives from equitable principles); *Fleming v. Impax Laboratories, Inc.*, 2022 WL 2789496, at *7 (N.D. Cal. July 15, 2022) ("those who benefit from the creation of the fund [should] share the wealth with the lawyers whose skill and effort helped create it").  The common fund doctrine is routinely applied in securities class action litigation.  *See Knurr v. Orbital ATK, Inc.*, 2019 WL 3317976, at *2 (E.D. Va.

---

[5] The Supreme Court has also recognized that securities class actions such as this one are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the U.S. Securities and Exchange Commission ("SEC"). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities class actions provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action").  Notably, here, Plaintiffs advanced their case and achieved a substantial recovery for the Settlement Class without any parallel investigation or enforcement action by the SEC.

June 7, 2019) (Ellis, III, J.) ("[P]ublic policy concerns favor the award of reasonable attorneys' fees and expenses in securities class action litigation.").

In *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court recognized that under the common fund doctrine a reasonable fee may be based "on a percentage of the fund bestowed on the class." *Id*. at 900, n.16. While courts have discretion to employ either a percentage-of-recovery or lodestar method in determining an attorneys' fee award (*see Galloway v. Williams* 2020 WL 7482191, at *4 (E.D. Va. Dec. 18, 2020) (Payne, J.)),[6] "[d]istrict courts in the Fourth Circuit 'overwhelmingly' prefer the percentage method in common-fund cases." *In re Peanut Farmers Antitrust Litig.*, 2021 WL 9494033, at *1 (E.D. Va. Aug. 10, 2021) (Jackson, J.); *Seaman v. Duke Univ.*, 2019 WL 4674758, at *2 (M.D.N.C. Sept. 25, 2019). Indeed, the Fourth Circuit has held that fee awards based on the percentage method "align the interests of lawyer and client" because they "reward[] exceptional success, and penalize[] failure." *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 246 (4th Cir. 2010). Thus, the percentage method properly applies here. *See Galloway*, 2020 WL 7482191, at *5 (noting that "in the Fourth Circuit and across the country[,] the favored method for calculating attorneys' fees in common fund cases is the percentage of the fund method.").

## B. Lead Counsel's Fee Request is Reasonable

In determining the reasonableness of the requested fee under the percentage method, courts in this District and elsewhere in the Fourth Circuit typically apply the following factors:

> (1) the results obtained for the class; (2) the presence or absence of substantial objections by members of the class to the fees counsel requested; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time plaintiffs' counsel devoted to the case; and (7) awards in similar cases.

---

[6] "Reasonableness can be determined using either the lodestar method or the percentage of recovery method." *Robinson v. Carolina First Bank NA*, 2019 WL 2591153, at *13 (D.S.C. June 21, 2019) (citing *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 260 (E.D. Va. 2009) (O'Grady, J.)).

*See In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 843 (E.D. Va. 2016) (Gibney, Jr., J.) (citing *In re Mills*, 265 F.R.D. at 261). In addition, to prevent an excessive award, courts in this District "utilize a 'lodestar' cross-check by multiplying the number of hours worked by the plaintiffs' counsel by a reasonable hourly rate and comparing that figure against the attorneys' fees award to develop a 'multiplier' for the amount awarded." *Genworth*, 210 F. Supp 3d at 843.[7]

### 1. The Results Obtained for the Class Strongly Support the Fee Award

Courts have consistently recognized that, in evaluating a fee award, "the most critical factor is the degree of success obtained." *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Phillips v. Triad Guar. Inc.*, 2016 WL 2636289, at *4 (M.D.N.C. May 9, 2016) (noting "the Fourth Circuit considers [the degree of success obtained] particularly important."). Here, the creation of a settlement fund in the amount of $30,000,000 is an excellent result for the Settlement Class that will provide Settlement Class members with a cash recovery that was achieved despite many complexities and risks, while avoiding the substantial expense, delay, risk, and uncertainty of continued discovery, motion practice, summary judgment, trial, and appeal.

The Settlement represents a recovery of between 13% to 25% of the Settlement Class's realistic damages, which is substantially higher than the typical recovery in similar cases. Indeed, courts have noted that recoveries in securities fraud litigation as low as 5.5% represent an "excellent" result. *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *3 (S.D. Fla. Oct. 17, 2016) (approving settlement representing 5.5% of the maximum damages and noting that the settlement is "an excellent recovery, returning more than triple the average settlement in cases of this size"); *see also Farrar v. Workhorse Group Inc.*, 2023 WL 5505981, at *7 (C.D. Cal. July 24, 2023) ("Indeed,

---

[7] The factors considered in assessing the reasonableness of the lodestar multiplier largely overlap with those considered in assessing the reasonableness of percentage method. *Genworth*, 210 F. Supp 3d at 843.

a 3% recovery is within the range of the percentages of recovery approved in other securities class action settlements") (collecting cases and authorities); *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at **12-13 (E.D.N.Y. Jan. 21, 2022) (approving securities class action settlement representing "6.4% of the maximum estimated aggregate damages [of] $140,000,000, assuming Plaintiffs can prove all their relevant causation arguments" as "within the range of reasonableness."); *Vataj v. Johnson*, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (approving settlement recovering "slightly more than 2% of [] estimated damages" as consistent with the "average recovery that the parties identified in other securities class action settlements"); *In re Snap Inc. Sec. Litig.*, 2021 WL 667590, at *1 (C.D. Cal. Feb. 18, 2021) (approving settlement "represent[ing] approximately 7.8% of the class's maximum potential aggregate damages" and noting that it was "similar to the percent recovered in other court-approved securities settlements"); *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (settlement recovery of 8% of estimated damages "equals or surpasses the recovery in many other securities class actions").

The 13% low-end of the range is based on Lead Plaintiffs' expert's calculation that *maximum* damages in this Action—assuming that Lead Plaintiffs fully prevailed at class certification, summary judgment, and trial on *all* of their loss causation and damages arguments—was $238 million. The 25% high-end of the range is based on a Lead Plaintiffs' expert's calculation where the Court or jury were to accept certain of Defendants' most credible arguments regarding loss causation and damages, which would have reduced the total potential damages to just $120 million.

Importantly, the Settlement will also provide immediate and certain compensation to the Settlement Class and avoids the substantial risks from continued litigation. *See Phillips*, 2016 WL 2636289, at *6 (finding that a one-third fee was reasonable in light of the recovery obtained, time and effort involved, and the substantial risks of continued litigation); *In re Constellation Energy*

8

*Grp., Inc. Sec. Litig.*, 2013 WL 12461134, at *1 (D. Md. Nov. 4, 2013) (awarding one-third fee "given the substantial risks of non-recovery, the time and effort involved, and the result obtained for the Class").

### 2. The Reaction of the Settlement Class Supports the Fee Award

Here, the Notice advised Settlement Class Members that Lead Counsel would be requesting an award of attorneys' fees not to exceed 25% of the Settlement Fund and Litigation Expenses not to exceed $800,000. While the deadline has not yet passed, as of this filing, not a single objection to the award or expense request has been received, which supports the fee request. *Genworth*, 210 F. Supp. 3d at 844.[8]

In addition, Lead Plaintiffs' endorsement also heavily supports the requested fee, as they are precisely the type of sophisticated institutional investors that Congress envisioned would "participate in the litigation and exercise control over" Lead Counsel. *See* H.R. Conf. Rep. No. 104-369, at *32 (1995), reprinted in 1995 U.S.C.C.A.N. 730-731; *Orbital*, 2019 WL 3317976, at *2 ("the requested attorneys' fees and litigation expenses have been reviewed and approved by Lead Plaintiff and Named Plaintiff, sophisticated institutional investors who were involved with and oversaw the Action"); *Plymouth Co. Ret. Sys. v. GTT Commc'ns, Inc.*, 2021 WL 1659848, at *5 (E.D. Va. Apr. 23, 2021) (Hilton, J.) ("[t]he fee sought has been reviewed and approved by Lead Plaintiff, a sophisticated institutional investor that oversaw the Action and has a substantial interest in ensuring that any attorneys' fees paid are duly earned and not excessive"). Moreover, the requested fee is based on retainer agreements that Lead Counsel entered into with Lead Plaintiffs at the outset of the litigation, which "supports approval of the fee" and is viewed by courts as "presumptively reasonable in light of Congress's intent to empower lead plaintiffs under the PSLRA to select and supervise

---

[8] Should any objections be received, they will be addressed in the reply papers.

9

attorneys on behalf of the class." *In re Signet Jewelers Ltd. Sec. Litig.,* 2020 WL 4196468, at *17 (S.D.N.Y. July 21, 2020); *see* Ex. 2 at ¶ 13; Ex. 3 at ¶ 6.

### 3. The Skill, Experience, and Reputation of the Attorneys Involved Strongly Supports the Fee Award

"The skill required in complex securities cases such as this involving massive discovery efforts and complicated issues of fact and law also weighs in favor of supporting the substantial attorneys' fees award in this case." *Genworth*, 210 F. Supp. 3d at 844. Here, Lead Counsel are preeminent practitioners in the field of securities class actions and complex shareholder litigation who have repeatedly been recognized for their skilled representation of investor classes by federal courts nationwide. *See* Ex. 7B-3 (Saxena White firm resume), Ex. 7A-4 (BLB&G firm resume). Moreover, the record shows that this litigation is highly complex, involving challenging and often unresolved legal issues and a difficult subject matter. Among the many issues on which the parties do not agree are: (i) whether Defendants violated the securities laws in issuing their statements regarding the adequacy of James River's reserves and reserve-setting practices; (ii) whether Defendants acted with scienter in disseminating such statements; (iii) the method for determining whether the price of James River common stock was artificially inflated; (iv) the amount (if any) of such inflation; (v) the date when any such inflation dissipated from the common stock; and (vi) the amount of damages (if any) that could be recovered at trial.

From the outset of this case, Lead Counsel sought to obtain the maximum recovery for the class. Lead Counsel devoted substantial amounts of attorney and staff time, as well as its own money and other considerable resources in the vigorous prosecution of this matter. *See* ¶¶ 132-135, 145-152.

Notably, Lead Counsel developed the factual allegations and legal theories in the absence of any pending regulatory actions, such as an investigation by the SEC, insurance regulator, or other

10

governmental agency, upon which Plaintiffs could "piggy back" to develop their allegations.  *See, e.g., In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014). It was Lead Counsel's comprehensive case investigation—including speaking to more than 100 former employees of James River to understand the critical flaws in the Company's reserving and claims handling processes and procedures; consultation with financial and insurance industry experts, and review and analysis of James River's public SEC filings, conference call transcripts, and media reports—that provided the strong allegations of the First Amended Complaint.  ¶¶ 5, 24-26.  But Lead Counsel did not stop there.  During the pendency of Defendants' first motion to dismiss, Lead Counsel identified, obtained, and exhaustively analyzed claims files, sworn testimony, and other evidence from a related insurance bad faith action against James River's relevant operating subsidiary that fully corroborated Lead Counsel's comprehensive investigation and provided strong evidence supporting the claims in this case.  *See* ¶ 29.   Indeed, the evidentiary record in the *St. Amand* bad faith litigation provided essential context behind Defendants' misstatements, and corrective disclosures, and powerful evidence of Defendants' knowing misconduct.  Based on the new evidence uncovered from *St. Amand*, Lead Counsel proactively moved for leave to file a Second Amended Class Action Complaint for Violations of the Federal Securities Laws (the "SAC" or "Complaint").  ECF Nos. 64-66.

As a result of Lead Counsel's work, the Settlement Class was able to leverage an extremely particularized pleading to successfully defeat Defendants' motions to dismiss despite the PSLRA's and Rule 9's stringent pleading requirements.  The Settlement Class also benefitted from Lead Counsel's extensive work with experts and consultants to marshal the evidence in support of the securities fraud claims, and present strong counterarguments to Defendants' positions on falsity, loss causation, and damages.  Further, Lead Counsel's reputation in the field as attorneys committed to

prosecuting a meritorious case through summary judgment and beyond enabled them to negotiate the outstanding recovery for the benefit of the Settlement Class.

Additionally, the fact that Debevoise & Plimpton, LLP, one of the country's most experienced defense firms with over 900 attorneys, and McGuire Woods LLP, another leading defense firm with over 1,100 attorneys—including approximately 250 lawyers at its largest office in Richmond—served as Defendants' lead counsel and local counsel in the Action provides further support for Lead Counsel's requested fee award. *See GTT,* 2021 WL 1659848, at *5 (one-third fee awarded where there were "considerable challenges from formidable opposition"); *Thorpe*, 2016 WL 10518902, at *9 (that "Defense counsel have reputations for vigorous advocacy in the defense of complex civil cases such as this" favored approval of one-third fee award).

### 4.   The Complexity and Duration of the Action and Litigation Efforts Strongly Supports the Fee Award

"[S]ecurities fraud cases require significant showings of fact in order to prevail before a jury, and elements such as scienter, reliance, and materiality of misrepresentation are notoriously difficult to establish." *Genworth*, 210 F. Supp. 3d at 844; *GTT*, 2021 WL 1659848, at * 6 (approving 33⅓% fee award in securities fraud class action while noting the "[a]ction involve[d] complex factual and legal issues"); *see also Thorpe*, 2016 WL 10518902 at *3 ("[a] securities case, by its very nature, is a complex animal").

This Action was no exception.  Investigating and drafting detailed complaints sufficient to survive serial motions to dismiss required considerable litigation efforts.  Of particular relevance here, the combination of securities law's heightened pleading standards on a motion to dismiss, coupled with a plethora of adverse case law involving securities fraud claims based on statements about insurance reserves, presented a particularly high obstacle to Lead Plaintiffs.  *See, e.g., Nolte v. Cap. One Fin. Corp.*, 390 F.3d 311, 315-16 (4th Cir. 2004) (affirming dismissal of case for

12

failure to allege knowledge of falsity of statements concerning insufficiency of loss reserves); *Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corp*., 600 F. Supp. 3d 1189, 1224 (N.D. Ala. 2021) (dismissing claims based on statements regarding loss reserves for failing to allege scienter); *Woolgar v. Kingstone Cos., Inc*., 477 F. Supp. 3d 193, 231-32 (S.D.N.Y. 2020) (finding that statements concerning loss reserves were inactionable statements of opinion for which plaintiffs failed to show falsity). Indeed, courts have noted that pleading securities fraud claims based on allegedly misleading statements about reserves is "'no small task for an investor.'" *Sjunde AP-Fonden v. Gen. Elec. Co.*, 417 F. Supp. 3d 379, 395-97 (S.D.N.Y. 2019) (quoting *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 194 (2015)).

Accordingly, in addition to the regular complexity involved in securities cases, Lead Counsel spent substantial hours researching and analyzing the details of, *inter alia*: reserves methodology; reserves setting processes (or lack thereof); actuarial analyses; claims handling practices; and reserves and claims audits. This knowledge was crucial in pleading Defendants' alleged fraud with the requisite particularity and in effectively undertaking fact and expert discovery, and required frequent consultation with several experts in insurance, underwriting, accounting, and claims handling customs and practices. ¶¶ 25-26, 65-69.

The complexity of the case did not ease after the Action advanced past the pleading stage. Lead Counsel reviewed voluminous document productions by Defendants. For example, between October 6, 2023 and November 15, 2023, Defendants made eleven rolling productions of documents—nearly two productions a week—producing a total of nearly 250,000 documents comprising over 1.6 million pages. ¶ 54. The magnitude and pace of the productions was so overwhelming that Defendants ultimately engaged a dedicated team of approximately 225 attorneys to review and produce documents responsive to Lead Plaintiffs' document requests, in compliance

13

with the expedited case schedule. ¶ 50.  Lead Counsel, in turn, engaged their own review teams who, together with their litigating attorneys, conducted targeted reviews of the documents as they were produced, provided relevant documents to Lead Plaintiffs' experts to conduct their analyses, and, in consultation with their experts, analyzed the relevant evidence and drafted additional discovery requests to Defendants and relevant non-parties. ¶¶ 55-59, 65.  Lead Counsel also regularly consulted with the experts as these experts began preparing their substantive reports, including on class and merits issues.  Throughout this time, Lead Counsel heavily negotiated with multiple third parties regarding the scope and pace of their productions, and ultimately obtained and reviewed over 6,700 pages of documents from third parties, including key documents from Uber, which supported Plaintiffs' claims. ¶ 53.

Furthermore, as the Parties prepared for their November 3, 2023 mediation session before Mr. Jed Melnick, Esq.—a renowned mediator affiliated with JAMS with extensive experience mediating securities class actions and other forms of complex shareholder litigation— Lead Counsel marshaled the evidence produced by Defendants and Uber to prepare a detailed mediation statement with reams of exhibits in support of Lead Plaintiffs' positions on all the contested issues in the case. ¶ 71.  Lead Counsel also reviewed additional materials when responding to Defendants' equally detailed submission.  After a full-day mediation session concluded without a resolution of the Action, Lead Counsel continued to review and evaluate the evidence identified in discovery and prepared a follow-up written mediation submission—including more exhibits of documents adduced in discovery—before the Parties' second mediation session held on November 15, 2023. ¶ 72.

Lead Counsel clearly "undertook significant efforts in this case through every stage of the litigation, including discovery concerning [the PSLRA] elements, consultation with necessary experts, briefing several issues before the Court, and preparing for trial." *Genworth*, 210 F. Supp.

14

3d at 844. Given Lead Counsel's ability to successfully navigate the complex legal and factual obstacles presented by this case, the reasonableness of the requested fee award is fully supported.

### 5. The Contingent Nature of the Fee and Risk of Nonpayment Strongly Supports the Fee Award

From inception, Lead Counsel "undertook this case on a wholly contingent basis and ran a substantial risk of no recovery whatsoever." *Peanut Farmers*, 2021 WL 9494033, at *4; *In re Celebrex (Celecoxib) Antitrust Litig.*, 2018 WL 2382091, at *4 (E.D. Va. Apr. 18, 2018) (Wright Allen, J.) (recognizing counsel "undertook numerous and significant risks of nonpayment in connection with the prosecution of this action"); *GTT*, 2021 WL 1659848, at *6 (awarding requested fee where "Lead Counsel initiated and pursued the Action on a contingent basis, having received no compensation during the Action"). The risk of non-payment was amplified here because, as courts in this Circuit recognize, "prosecuting a securities fraud action is not only complex, but is also fraught with risk." *Phillips*, 2016 WL 2636289, at *8.[9]

Lead Counsel had to contend with the heavy burden of the PSLRA's heightened pleading standard and Defendants' defenses to liability and damages, in order to secure a meaningful recovery for the Class. Lead Counsel also took on a risky, complex, and lengthy litigation requiring the expenditure of extensive resources against formidable opposition with no guarantee of success, which further supports the requested fee. *See Klein v. Altria Group Inc.,* Case No. 3:20-cv-00075-DJN, ECF No. 321, Transcript of Final Fairness Hearing on March 31, 2022, at 6:4-18, 17:22-18:3 (E.D. Va.) (Novak, J.) (explaining the requested fee award of 30% of the settlement fund was "actually a lower percentage than the norm in these cases" where "it is more common to be in 33 to

---

[9] By the end of 2023, 36% of securities class actions filed in 2021 (like this one) had been dismissed, more than twice the number of cases that had settled. *See* CORNERSTONE RESEARCH, SECURITIES CLASS ACTION FILINGS: 2023 YEAR IN REVIEW (2024), attached hereto as Exhibit 4, at 19.

40 percent range" to reflect the "risk/reward" that Lead Counsel must devote to the case not only in terms of expenses over a lengthy amount of time, but in terms of manpower and securities expertise.).

The additional risks presented by complex securities litigation were further amplified by the expedited case schedule entered in this action—which was roughly *half* the length of the initial schedule set in *Altria*, and a fraction of the length of case schedules common in other Districts. *See Altria*, No. 3:20-cv-00075-DJN, ECF Nos. 173, 194. Indeed, Lead Counsel in this Action prepared the Settlement Class's case under a schedule that provided only four months for completion of both fact and expert discovery, and trial in under a year. ECF No. 95. The expedited case schedule only heightened the risks posed to Lead Counsel under the contingent nature of its representation, and presented the very real possibility that Lead Counsel would not receive any compensation for its extensive efforts on behalf of the Settlement Class.

To date, Lead Counsel have received no compensation for their prosecution of this case. Since the extensive commitment of time and resources devoted here necessarily entailed the preclusion of other projects, the primary focus of the risk-of-nonpayment factor is to acknowledge this incongruence by permitting a commensurate recovery to compensate for the risk of recovering nothing. *See Robinson*, 2019 WL 2591153, at *16 ("Contingency fee arrangements . . . are usually one-third or higher" because "payment [is] entirely depend[e]nt upon achieving a good result for Plaintiff[s] and the Class, and Counsel face[] significant risk of nonpayment").

### 6. The Amount of Time Devoted to the Case by Plaintiffs' Counsel Strongly Supports the Fee Award

The time and labor expended by Plaintiffs' Counsel in prosecuting this Action firmly supports the requested 25% fee. Lead Counsel and other Plaintiffs' Counsel "fiercely litigated this case on behalf of their clients." *Genworth*, 210 F. Supp. 3d at 845. As stated above and in the Joint Declaration, Plaintiffs' Counsel's efforts involved drafting two complaints, briefing two rounds of

16

motions to dismiss, analyzing over a million pages of documents produced by Defendants and multiple non-parties, engaging and consulting with more than four experts, and preparing detailed submissions in connection with the mediation addressing every major point of contention in the Action. In total, prosecuting this Action necessitated Plaintiffs' Counsel to expend more than 11,300 hours, equivalent to more than $7.4 million in attorney and staff time, over the course of two-and-a-half years.[10]   As noted, Lead Counsel's significant work in the case yields a slightly ***negative*** lodestar.

Accordingly, Lead Counsel's extensive litigation efforts were reasonable and necessary to secure the Settlement, and fully support the requested fee award.  *See Orbital*, 2019 WL 3317976, at *2 (29,000 hours reasonable).

### 7.  A 25% Fee is Significantly *Less* Than the Customary 30% to 33% Awarded in Similar Cases in this District and the Fourth Circuit

Lead Counsel's 25% fee request is also eminently reasonable when considering the customary awards of 30% to 33% in similar cases in this District and the Fourth Circuit.  As this Court has recognized, courts in the Fourth Circuit have consistently awarded 30% or higher fees in similar complex class actions, making Lead Counsel's 25% requested fee in this case "a lower percentage than [the] norm."  *See Altria*, No. 3:20-cv-00075-DJN, ECF No. 321, Transcript of Final Fairness Hearing on March 31, 2022, at 17:22-18:3 (granting 30% award and noting the request was "actually a lower percentage than a norm in these cases" as in this District "it is more common to be in the 33 to 40 percent range"); *see also In re Star Scientific, Inc. Sec. Litig.*, 2015 WL 13821326, at *1 (E.D. Va. June 26, 2015) (Gibney, Jr., J.) (awarding 33⅓ percent of the $5.9 million settlement

---

[10] Lead Counsel will continue to expend additional time and out-of-pocket expenses in connection with the settlement administration process, the Settlement Hearing, and, if the Settlement is approved, assisting with implementation of the Settlement.  Lead Counsel will not seek compensation for this time.

17

amount as fair and reasonable); *Plymouth Cnty. Ret. Sys. v. Evolent Health, Inc*., Case No. 1:19-cv-01031-MSN-WEF, ECF No. 257 at 2 (E.D. Va. Nov. 18, 2022) (Nachmanoff, J.) (awarding one-third of the $23.5 million settlement amount); *GTT*, 2021 WL 1659848, at *5 (awarding one-third of $25 million settlement amount); *Celebrex*, 2018 WL 2382091, at *5 ("Fee awards of one-third of the settlement amount are commonly awarded in cases analogous to this one").[11]

As discussed above, the request for a 25% award is particularly appropriate here because the proposed fee is based on retainer agreements that Lead Counsel entered into with Lead Plaintiffs at the outset of the litigation, which "supports approval of the fee" and is viewed by courts as "presumptively reasonable."  *See Signet Jewelers*, 2020 WL 4196468, at *17.

### 8. A Cross-Check of Plaintiffs' Counsel's Lodestar Confirms the Fee Request Is Reasonable

A lodestar "cross-check" reinforces the reasonableness of the requested fee.  Here, Plaintiffs' Counsel's total lodestar is $7,423,241.25, and the requested 25% fee equates to a slightly **negative** multiplier of 0.99.  This means that a 25% fee would represent less than the total value of the attorney and staff hours invested by Plaintiffs' Counsel in this Action.  "Courts routinely grant attorneys' fees of 30% or more of the settlement amount where the lodestar crosscheck reveals that the cumulative lodestar is greater than the fee award."  *In re Interior Molded Doors Indirect Purchaser Antitrust Litig.*, 2021 WL 5195089, at *3 (E.D. Va. July 27, 2021) (Gibney, Jr., J.); *see also Guevoura Fund*

---

[11] The requested fee award is also reasonable compared to nationwide securities class action recoveries. *See, e.g., Grae v. Corrections Corp. of America*, 2021 WL 5234966, at *1 (M.D. Tenn. Nov. 8, 2021) (awarding one-third fee on $56 million recovery); *Plymouth Cnty. Ret. Sys. v. Patterson Cos., Inc.*, 2022 WL 2093054, at *1 (D. Minn. June 10, 2022) (one-third fee on $63 million recovery); *Cosby v. KPMG, LLP*, 2022 WL 4129703, at **1-2 (E.D. Tenn. July 12, 2022) (one-third fee on $35 million recovery); *In re Perrigo Company PLC Sec. Litig.*, 2022 WL 500913, at *1 (S.D.N.Y. Feb. 18, 2022) (one-third fee on $31.9 million recovery); *Thorpe*, 2016 WL 10518902, at *11 (one-third fee on $24 million recovery); *In re Flowers Foods, Inc. Sec. Litig.*, 2019 WL 6771749, at *1 (M.D. Ga. Dec. 11, 2019) (one-third fee on $21 million recovery); *In re Banc of California Sec. Litig.*, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (33% fee on $19.75 million recovery); *In re Deutsche Bank AG Sec. Litig.*, 2020 WL 3162980, at *1 (S.D.N.Y. June 11, 2020) (one-third fee on $18.5 million recovery).

*Ltd. v. Sillerman*, 2019 WL 6889901, at *18 (S.D.N.Y. Dec. 18, 2019) ("When the lodestar cross-check shows that the percentage fee is lower than the fee the lawyers have accrued on a time-and-service basis, it is relatively easy to support a percentage-based fee").

Furthermore, the ***negative*** "multiplier" here is substantially below the typical range of ***positive*** multipliers routinely approved by courts in this District, the Fourth Circuit, and across the country.  *See e.g., Genworth*, 210 F. Supp. 3d at 845 (awarding multiplier of 1.97 while noting "District courts within the Fourth Circuit have regularly approved attorneys' fees awards with 2–3 times lodestar multipliers"); *Seaman*, 2019 WL 4674758, at *6 ("lodestar multipliers on large and complicated class actions have ranged from at least 2.26 to 4.5"); *Celebrex*, 2018 WL 2382091, at *5 (1.94 multiplier "is a reasonable multiplier in this Circuit"); *GTT*, 2021 WL 1659848, at *6 (approving one-third fee representing 1.54 lodestar multiplier).

Further reinforcing the reasonableness of the requested fee under the lodestar method, Lead Counsel's hourly rates—ranging from $465 to $1,350 for attorneys and partners, and $325 to $425 for paralegals—are less than, or comparable to, hourly rates routinely approved by courts in this District.[12]  *See, e.g., GTT*, 2021 WL 1659848, at *5-6; ECF No. 93-4, at 7-8 (approving Saxena White's 2021 rates); *Evolent*, Case No. 19-cv-01032, ECF No. 257 (approving Saxena White's 2022 rates); *Seaman*, 2019 WL 4674758, at *5 (approving hourly rates of between $590 and $900 for partners, between $395 and $510 for attorneys, and between $280 and $390 for paralegals and other support staff, because "[t]hese rates are in line with hourly rates used for Class Counsel in other cases"); *Orbital*, 2019 WL 3317976, at *2 and ECF No. 453 at 9-10 (E.D. Va. Apr. 26, 2019) (Ellis, III, J.) (approving rates of $780-$1,250 for partners, $360-$600 for attorneys, and $220-$375 for

---

[12] The accompanying declarations of counsel include descriptions of the legal background and experience of the firms that worked on this case, which support the hourly rates submitted.

19

litigation support in a securities class action). Notably, Defense counsel's hourly rates are significantly higher than Lead Counsel's hourly rates in comparison.

Finally, courts in this Circuit have recognized that while a "reasonable rate is usually calculated by looking at the local market, [] a national market rate is appropriate for matters involving complex issues requiring specialized expertise[.]" *Clark v. Duke University*, 2019 WL 2579201, at *2 (M.D.N.C. June 24, 2019); *see also Kruger v. Novant Health, Inc*., 2016 WL 6769066, at *4 (M.D.N.C. Sept. 29, 2016) (finding in complex class action, "the relevant market rate for cases such as the present case [is] a nationwide market rate"). Numerous courts throughout the country have awarded Lead Counsel's fee requests. *See In re Merit Medical Sys., Inc., Sec. Litig.*, Case No. 8:19-cv-02326, ECF No. 118 at 1-2 (C.D. Cal. April 15, 2022) (awarding one-third fee request by Saxena White and BLB&G); *Fulton Cnty. Employees' Ret. Sys. v. Blankfein*, 2023 WL 350888, at *4 (S.D.N.Y. Jan. 20, 2023) (awarding 25% fee request by Saxena White); *Patterson*, 2022 WL 2093054, at *2 (awarding 33⅓ % fee request by Saxena White and co-counsel).

### C. Lead Counsel's Litigation Expenses and Lead Plaintiffs' PSLRA Awards Are Reasonable and Should Be Granted

Lead Counsel also seek reimbursement of $603,965.20 in litigation expenses reasonably incurred in litigating the Action, which expenses are routinely awarded in similar actions. *See, e.g., Genworth*, 210 F. Supp. 3d at 846 (reimbursing lead counsel $3.8 million in costs in securities class action involving insurance reserves); *Orbital*, 2019 WL 3317976, at *1 (approving over $1.1 million in expenses in securities class action). Here, Lead Counsel's advanced expenses include expert fees, mediation expenses, discovery-related costs, legal and factual research costs, case related travel, and filing fees, all of which are customarily incurred in cases of this nature, were necessary to the successful prosecution of the case, and directly contributed to the Settlement. *See, e.g., Altria, ,* No. 3:20-cv-00075-DJN, ECF No. 310 at 29 and ECF No. 320 at 10-11 (granting expense

20

reimbursement of over $1.5 million for expert costs, e-discovery costs, travel, photocopying, overnight mail, deposition services, transcripts, and online research); *Evolent*, No. 1:19-cv-01031-MSN-WEF, ECF No. 251 at 36-37 and ECF No. 257 at 2 (granting expense reimbursement of over $900,000 for expert fees, mediation expenses, discovery-related costs and investigation expenses). The Joint Declaration contains a full breakdown of the litigation expenses. *See* Exs. 7, 7A-2, 7B-2, and 7C-2. Notably, the requested expenses are less than the $800,000 amount set forth in the Notice, and no objections have been lodged thereto. ¶ 154.

Lastly, Lead Plaintiffs also seek $15,879.55 and $1,875.00 as an "award of reasonable costs and expenses directly relating to the representation of the class"—awards that are specifically envisioned in the PSLRA and routinely awarded by courts nationwide. *See* 15 U.S.C. §78u-4(a)(4). As detailed in the Joint Declaration and the declarations from each Lead Plaintiff, Lead Plaintiffs expended substantial time and effort in representing the best interests of the Class in this Action, including the review of all pleadings and significant filings in this action, regular communications with Lead Counsel concerning the developments therein, substantial participation in discovery, including the collection and production of documents, and supervision of and participation in the settlement process. *See* Exs. 2 and 3 (detailing each Lead Plaintiff's approximate time spent in the Action). Courts in this Circuit and around the country have granted similar awards to lead plaintiffs and class representatives. *See, e.g.*, *In re Mills*, 265 F.R.D. at 265 (awarding approximately $42,000 to two lead plaintiffs); *In re N. Dynasty Mins. Ltd. Sec. Litig.*, 2024 WL 308242, at *17 (E.D.N.Y. Jan. 26, 2024) (awarding $20,000 to lead plaintiff); *Davis v. Yelp, Inc.*, 2023 WL 3063823, at *2 (N.D. Cal. Jan. 27, 2023) (awarding $15,000 to lead plaintiff); *In re Synchrony Fin. Sec. Litig.*, 2023 WL 4992933, at *13 (D. Conn. Aug. 4, 2023) (awarding $48,700 to two lead plaintiffs); *Christine*

21

*Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at \*20 (S.D.N.Y. Oct. 16, 2019) (awarding $12,500

for each of the five representative plaintiffs).

## IV.    CONCLUSION

For the reasons detailed herein, Lead Counsel respectfully request that the Court enter an

Order: (1) awarding Plaintiffs' Counsel 25% of the Settlement Fund, net of Litigation Expenses, as

attorneys' fees, including accrued interest; (2) awarding Plaintiffs' Counsel litigation expenses in

the amount of $603,965.20; and (3) awarding $15,879.55 to Fort Worth, and $1,875.00 to Miami,

pursuant to 15 U.S.C. § 78u-4(a)(4), in connection with their representation of the Settlement Class

as authorized by the PSLRA.

DATED: April 19, 2024                         Respectfully submitted,

By: */s/ Steven J. Toll*
Steven J. Toll (Va. Bar No. 15300)
Daniel S. Sommers
S. Douglas Bunch
**COHEN MILSTEIN SELLERS
& TOLL PLLC**
1100 New York Avenue, Suite 500
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
dsommers@cohenmilstein.com
dbunch@cohenmilstein.com

*Liaison Counsel for Lead Plaintiffs and the
Settlement Class*

**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**
Salvatore J. Graziano (*pro hac vice*)
Rebecca E. Boon (*pro hac vice*)
Jeremy P. Robinson (*pro hac vice*)
Emily A. Tu (*pro hac vice*)
Chloe Jasper (*pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020

22

Telephone: (212) 554-1400
salvatore@blbglaw.com
rebecca.boon@blbglaw.com
jeremy@blbglaw.com
emily.tu@blbglaw.com
chloe.jasper@blbglaw.com

*Attorneys for Lead Plaintiff Miami and
Lead Counsel for the Settlement Class*

**SAXENA WHITE P.A.**
David R. Kaplan (*pro hac vice*)
Emily R. Bishop (*pro hac vice*)
505 Lomas Santa Fe Dr.
Suite #180
San Diego, CA 92075
Telephone: (858) 997-0860
Facsimile: (858) 369-0096
dkaplan@saxenawhite.com
ebishop@saxenawhite.com

Maya Saxena
Joseph E. White, III (*pro hac vice*)
Jonathan Lamet (*pro hac vice*)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
jlamet@saxenawhite.com

Steven B. Singer (*pro hac vice*)
10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone: (914) 437-8551
Facsimile: (888) 631-3611
ssinger@saxenawhite.com

*Attorneys for Lead Plaintiff Fort Worth and
Lead Counsel for the Settlement Class*

**KLAUSNER KAUFMAN JENSEN
& LEVINSON LLP**
Robert D. Klausner
Stuart A. Kaufman

23

7080 Northwest 4th Street
Plantation, Florida 33317
Telephone: (954) 916-1202
Facsimile: (954) 916-1232
bob@robertdklausner.com
stu@robertdklausner.com

*Additional Counsel for Lead Plaintiff Miami*

24