# EXHIBIT 9

## EXHIBIT 9

*In re James River Group Holdings, Ltd. Securities Litigation*
Case No. 3:21-cv-00444-DJN (E.D. Va.)

## INDEX TO COMPENDIUM OF UNPUBLISHED OPINIONS AND AUTHORITY

Ex. 9A:    *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, Case No. 1:09-cv-03701-JPO-JCF, ECF No. 381 (S.D.N.Y. Dec. 4, 2015)

Ex. 9B:    *Fulton Cnty. Employees' Ret. Sys. v. Blankfein*, Case No. 1:19-cv-01562-VSB, ECF No. 106 (S.D.N.Y. Jan. 20, 2023)

Ex. 9C:    *Hayden v. Portola Pharmaceuticals, Inc*., Case No. 3:20-cv-00367-VC, ECF No. 259 (N.D. Cal. Mar. 6, 2023)

Ex. 9D:    *In re BioMarin Pharmaceutical Inc. Sec. Litig.*, Case No. 3:20-cv-06719-WHO, ECF No. 155 (N.D. Cal. Nov. 14, 2023)

Ex. 9E:    *In re Genworth Financial Sec. Litig.*, Case No. 3:14-cv-00682-JAG-RCY, ECF No. 214 (E.D. Va. Sept. 26, 2016) (Gibney, Jr., J.)

Ex. 9F:    *In re HD Supply Holdings, Inc. Sec. Litig.*, Case No. 1:17-cv-02587-ELR, ECF NO. 102 (N.D. Ga. July 21, 2020)

Ex. 9G:    *In re Henry Schein , Inc. Sec. Litig.*, Case No. 1:18-cv-01428-MKB-VMS, ECF No. 89 (E.D.N.Y. Sept. 16, 2020)

Ex. 9H:    *In re Impinj, Inc. Sec. Litig.*, Case No. 3:18-cv-05704-RSL, ECF No. 106 (W.D. Wa. Nov. 20, 2020)

Ex. 9I:    *In re Kraft Heinz Sec. Litig.*, Case No. 1:19-cv-01339, ECF No. 493 (N.D. Ill. Sept. 19, 2023)

Ex. 9J:    *In re Merit Medical Sys., Inc. Sec. Litig.*, Case No. 8:19-cv-02326-DOC-ADS, ECF No. 118 (C.D. Cal. Apr. 15, 2022)

Ex. 9K:    *In re Novo Nordisk Sec. Litig.*, Case No. 3:17-cv-00209-ZNQ-LHG, ECF No. 361 (D.N.J. July 13, 2022)

Ex. 9L:    *In re Perrigo Co. plc Sec. Litig.*, Case No. 1:19-cv-00070-DLC, ECF No. 331 (S.D.N.Y. Feb. 18, 2022)

Ex. 9M:    *In re SolarWinds Corp. Sec. Litig.*, Case No. 1:21-cv-00138-RP, ECF No. 111 (W.D. Tex. July 28, 2023)

1

Ex. 9N:  *In re: Venator Materials PLC Sec. Litig.*, Case No. 4:19-cv-03464, ECF No. 127 (S.D. Tex. Sept. 15, 2022)

Ex. 9O:  *In re: Venator Materials PLC Sec. Litig.*, Case No. 4:19-cv-03464, ECF No. 128 (S.D. Tex. Sept. 15, 2022)

Ex. 9P:  *In Wells Fargo & Co. Sec. Litig.*, Case No. 1:20-cv-04494-JLR-SN, ECF No. 206 (S.D.N.Y. Sept. 8, 2023)

Ex. 9Q:  *In re Willis Towers Watson plc Proxy Litig.*, Case No. 1:17-cv-01338-AJT-JFA, ECF No. 345 (E.D. Va. May 21, 2021) (Trenga, J.)

Ex. 9R:  *In re Willis Towers Watson plc Proxy Litig.*, Case No. 1:17-cv-01338-AJT-JFA, ECF No. 347 (E.D. Va. May 21, 2021) (Trenga, J.)

Ex. 9S:  *Keippel v. Health Ins. Innovations, Inc.*, Case No. 8:19-cv-00421-WFJ-CPT, ECF No. 112 (M.D. Fla. Mar. 23, 2021)

Ex. 9T:  *Klein v. Altria Group, Inc.*, Case No. 3:20-cv-00075-DJN, ECF No. 173 (E.D. Va. Apr. 14, 2021) (Novak, J.)

Ex. 9U:  *Klein v. Altria Group, Inc.*, Case No. 3:20-cv-00075-DJN, ECF No. 194 (E.D. Va. May 5, 2021) (Novak, J.)

Ex. 9V:  *Klein v. Altria Group, Inc.*, Case No. 3:20-cv-00075-DJN, ECF No. 310 (E.D. Va. Feb. 24, 2022)

Ex. 9W:  *Klein v. Altria Group, Inc.*, Case No. 3:20-cv-00075-DJN, ECF No. 320 (E.D. Va. Mar. 31, 2022) (Novak, J.)

Ex. 9X:  *Klein v. Altria Group, Inc.*, Case No. 3:20-cv-00075-DJN, ECF No. 321 (E.D. Va. May 5, 2021) (Novak, J.)

Ex. 9Y:  *Knurr v. Orbital ATK, Inc.*, Case No. 1:16-cv-01031-TSE-MSN, ECF No. 453 (E.D. Va. Apr. 26, 2019)

Ex. 9Z:  *Milbeck v. TrueCar, Inc.*, Case No. 2:18-cv-02612-SVW-AGR, ECF No. 185 (C.D. Cal. Jan. 27, 2020)

Ex. 9AA:  *Nykredit Portefølje Administration A/S v. ProPetro Holding Corp.*, Case No. 7:19-cv-00217-DC, ECF No. 178 (W.D. Tex. May 11, 2023)

Ex. 9BB:  *Peace Officers' Annuity and Benefit Fund of Georgia v. DaVita, Inc.*, Case No. 1:17-cv-00304-WJM-NRN, ECF No. 122 (D. Colo. July 15, 2021)

Ex. 9CC:   *Plymouth Cnty. Ret. Sys. v. Evolent Health, Inc*., Case No. 1:19-cv-01031-MSN-WEF, ECF No. 251 (E.D. Va. Oct. 14, 2022)

Ex. 9DD:   *Plymouth Cnty. Ret. Sys. v. Evolent Health, Inc*., Case No. 1:19-cv-01031-MSN-WEF, ECF No. 256 (E.D. Va. Nov. 18, 2022) (Nachmanoff, J.)

Ex. 9EE:   *Plymouth Cnty. Ret. Sys. v. Evolent Health, Inc*., Case No. 1:19-cv-01031-MSN-WEF, ECF No. 257 (E.D. Va. Nov. 18, 2022) (Nachmanoff, J.)

Ex. 9FF:   *Plymouth Cnty. Ret. Sys. v. GTT Communications, Inc*., Case No. 1:19-cv-CMH-MSN, ECF No. 93-4 (E.D. Va. Mar. 19, 2021)

Ex. 9GG:   *Plymouth Cnty. Ret. Sys. v. GTT Communications, Inc*., Case No. 1:19-cv-CMH-MSN, ECF No. 97 (E.D. Va. Apr. 23, 2021) (Hilton, J.)

Ex. 9HH:   *Plymouth Cnty. Ret. Sys. v. Patterson Cos., Inc*., Case No. 0:18-cv-00871-MJD-HB, ECF No. 267 (D. Minn. June 10, 2022)

Ex. 9II:   *Pub. Empls. Ret. Sys. of Miss. v. Mohawk Indus., Inc*., Case No. 4:20-cv-00005-VMC, ECF No. 138 (N.D. Ga. May 31, 2023)

Ex. 9JJ:   *Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corp*., Case No. 2:20-cv-00856-RDP, ECF No. 171 (N.D. Ala. Jan. 17, 2024)

Ex. 9KK:   *Teamsters Local 456 Pension Fund v. Universal Health Services., Inc*., Case No. 2:17-cv-02817-JHS, ECF No. 90 (E.D. Pa. July 21, 2021)

# EXHIBIT 9A

Case 3:21-cv-00444-DJN Document 126-9 Filed 04/19/24 Page 6 of 586 PageID# Oether.P.
Case 1:09-cv-03701-JPO-JCF Document 361 Filed 12/04/15 Page 1 of 6
5194

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

FORT WORTH EMPLOYEES'                          :
RETIREMENT FUND, On Behalf of Itself and :
All Others Similarly Situated,                 :
                                               :
                              Plaintiff,       :
                                               :
            vs.                                :
                                               :
J.P. MORGAN CHASE & CO., et al.,               :
                                               :
                              Defendants.      :
                                               :
———————————————————————— x

1:09-CV-3701 (JPO)

CLASS ACTION

ORDER AND FINAL JUDGMENT

Case 3:21-cv-00444-DJN-JPC Document 126-9 Filed 04/19/24 Page 7 of 586 PageID#
Case 1:09-cv-03701-JPO-JCF Document 361 Filed 12/04/15 Page 2 of 6
5195

This matter came for hearing on December 4, 2015 (the "Settlement Hearing"), on the application of the parties to determine whether the terms and conditions of the Stipulation and Agreement of Settlement (the "Stipulation" or "Settlement") are fair, reasonable, and adequate and for approval of the Settlement. Due and adequate notice having been given to the Class, and the Court having considered all papers filed and proceedings had herein and otherwise being fully informed, and good cause appearing therefore, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1. This Order and Final Judgment (the "Order" or the "Judgment") incorporates by reference the definitions in the Stipulation and Agreement of Settlement (Dkt. No. 361, the "Stipulation") and all capitalized terms used herein shall have the same meanings as set forth in the Stipulation, unless otherwise set forth herein.

2. This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Members of the Class.

3. Pursuant to Federal Rule of Civil Procedure 23, the Court hereby approves the Settlement set forth in the Stipulation and finds that:

(a) said Stipulation and the Settlement contained therein are, in all respects, fair, reasonable, and adequate and in the best interest of the Class;

(b) there was no collusion in connection with the Stipulation;

(c) the Stipulation was the product of informed, arm's-length negotiations among competent, able counsel; and

(d) the record is sufficiently developed and complete to have enabled the Lead Plaintiffs and the Defendants to have adequately evaluated and considered their positions.

- 1 -

Case 3:21-cv-00444-DJN-JFA Document 126-9 Filed 04/19/24 Page 8 of 586 PageID#
Case 1:09-cv-03701-JPO-JCF Document 361 Filed 12/04/15 Page 3 of 6
5196

4.      Accordingly, the Court authorizes and directs implementation and performance of all the terms and provisions of the Stipulation, as well as the terms and provisions hereof.  The Court hereby dismisses the Action and all Released Claims of the Class with prejudice.  The Settling Parties are to bear their own costs, except as and to the extent provided in the Stipulation and herein.

5.      Upon the Effective Date, and as provided in the Stipulation, Lead Plaintiffs shall, and each of the other Class Members shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, dismissed, relinquished, and discharged any and all Released Claims (including Unknown claims) against each and all of the Released Parties, whether or not such Class Member executed and delivered the Proof of Claim Form or such Class Member shares in the Settlement Fund, with prejudice.  Claims to enforce the terms of the Stipulation are not released.

6.      Lead Plaintiffs and all other Class Members are hereby forever barred and enjoined from prosecuting any of the Released Claims against each and all of the Released Parties.

7.      Upon the Effective Date, and as provided in the Stipulation, Defendants and each of the other Released Parties shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, dismissed, relinquished, and discharged any and all Released Parties' Claims against Lead Plaintiffs, each and all of the other Class Members, and Lead Counsel. Claims to enforce the terms of the Stipulation are not released.

8.      The Notice of Pendency of Class Action and Proposed Settlement and Settlement Hearing given to the Class was the best notice practicable under the circumstances, including the individual notice to all Members of the Class who could be identified through reasonable effort, and constituted due and sufficient notice to all persons and entities entitled thereto.  The form and method of said notice fully satisfied the requirements of Federal Rule of Civil Procedure 23, the

- 2 -

Case 3:21-cv-00444-DJN-JPC Document 126-9 Filed 04/19/24 Page 9 of 586 PageID#
Case 1:09-cv-03701-JPO-JCF Document 361 Filed 12/04/15 Page 4 of 6
5197

Securities Act of 1933, as amended by the Private Securities Litigation Reform Act of 1995, and the requirements of due process. Thus, it is hereby determined that all Class Members are bound by this Order and Final Judgment.

9. Any Plan of Allocation submitted by Lead Counsel or any order entered regarding any attorneys' fees and Litigation Expense application shall in no way disturb or affect this Final Judgment and shall be considered separate from this Final Judgment.

10. Neither the Stipulation nor the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement:

(a) shall be offered or received against Defendants, other Released Parties, Plaintiffs or the other Members of the Class as evidence of, or be deemed to be evidence of, any presumption, concession, or admission by any of the Defendants or other Released Parties or by Plaintiffs or the other Members of the Class with respect to the truth of any fact alleged by Plaintiffs or the validity, or lack thereof, of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, or wrongdoing of Defendants or other Released Parties;

(b) shall be offered or received against the Released Parties as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by any Released Party, or against Plaintiffs or any of the other Members of the Class as evidence of any infirmity in the claims of Plaintiffs and the other Members of the Class;

(c) shall be offered or received against the Released Parties, Plaintiffs or the other Members of the Class as evidence of a presumption, concession, or admission with respect to any

Case 3:21-cv-00444-DJN-1 Document 126.9 Filed 04/19/24 Page 10 of 586 PageID#
Case 1:09-cv-03701-JPO-JCF Document 581 Filed 12/04/15 Page 5 of 6
5198

liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the parties to the Stipulation, in any arbitration proceeding or other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; provided, however, that the Released Parties may refer to the Stipulation and Settlement to effectuate the liability protection granted them hereunder;

(d)      shall be construed against the Released Parties, Plaintiffs' Counsel or Plaintiffs or the other Members of the Class as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; or

(e)      shall be construed as or received in evidence as an admission, concession, or presumption against Plaintiffs or the other Members of the Class or any of them that any of their claims are without merit or that damages recoverable in the Action would not have exceeded the Settlement Fund.

The Defendants may file the Stipulation and/or this Judgment in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

11.      Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of this Settlement and any award or distribution of the Settlement Fund, including interest earned thereon pursuant to ¶26 of the Stipulation; (b) disposition of the Settlement Fund; (c) hearing and determining applications for attorneys' fees and Litigation Expenses, plus interest earned thereon; (d) all parties herein for the purpose of construing,

- 4 -

Case 3:21-cv-00444-DJN-1 Document 126-9 Filed 04/19/24 Page 11 of 586 PageID#
Case 1:09-cv-03701-JPO-JCF Document 581 Filed 12/04/15 Page 5 of 6
5199

enforcing, and administering the Stipulation; (e) enforcement and administration of this Order; and (f) other matters related or ancillary to the foregoing.

12.     The Court finds that during the course of the Action, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

13.     In the event that the Settlement does not become effective in accordance with the terms of the Stipulation or the Effective Date does not occur, then this Judgment shall be rendered null and void to the extent provided by and in accordance with the Stipulation and shall be vacated and, in such event: (a) all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Stipulation and (b) the fact of the Settlement shall not be admissible in any trial of the Action (or any other action), and the Settling Parties shall be deemed to have reverted *nunc pro tunc* to their respective status in the Action as of June 4, 2015.

14.     Without further order of the Court, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

There is no just reason for delay in the entry of this Order and Final Judgment and immediate entry by the Clerk of the Court is expressly directed.

IT IS SO ORDERED.

Dated:  December 4, 2015

_____
J. PAUL OETKEN
United States District Judge

Case 3:21-cv-00444-DJN - JP Document 126-9 - Filed 04/19/24 - Page 12 of 586 PageID#
Case 1:09-cv-03701-JPO-JCF Document 581-1 Filed 12/04/15 Page 3 of 10
5200



**United States District Court**
**Southern District of New York**

Ruby J. Krajick
*Clerk of Court*

Dear Litigant:

Enclosed is a copy of the judgment entered in your case. If you disagree with a judgment or final order of the district court, you may appeal to the United States Court of Appeals for the Second Circuit. To start this process, file a "Notice of Appeal" with this Court's Pro Se Intake Unit.

You must file your notice of appeal in this Court within 30 days after the judgment or order that you wish to appeal is entered on the Court's docket, or, if the United States or its officer or agency is a party, within 60 days after entry of the judgment or order. If you are unable to file your notice of appeal within the required time, you may make a motion for extension of time, but you must do so within 60 days from the date of entry of the judgment, or within 90 days if the United States or its officer or agency is a party, and you must show excusable neglect or good cause for your inability to file the notice of appeal by the deadline.

Please note that the notice of appeal is a *one-page* document containing your name, a description of the final order or judgment (or part thereof) being appealed, and the name of the court to which the appeal is taken (the Second Circuit) – *it does not* include your reasons or grounds for the appeal. Once your appeal is processed by the district court, your notice of appeal will be sent to the Court of Appeals and a Court of Appeals docket number will be assigned to your case. At that point, all further questions regarding your appeal must be directed to that court.

The filing fee for a notice of appeal is $505 payable in cash, by bank check, certified check, or money order, to "Clerk of Court, S.D.N.Y." *No personal checks are accepted*. If you are unable to pay the $505 filing fee, complete the "Motion to Proceed *in Forma Pauperis* on Appeal" form and submit it with your notice of appeal to the Pro Se Intake Unit. If the district court denies your motion to proceed *in forma pauperis* on appeal, or has certified under 28 U.S.C. § 1915(a)(3) that an appeal would not be taken in good faith, you may file a motion in the Court of Appeals for leave to appeal *in forma pauperis*, but you must do so within 30 days after service of the district court order that stated that you could not proceed *in forma pauperis* on appeal.

For additional issues regarding the time for filing a notice of appeal, see Federal Rule of Appellate Procedure 4(a). There are many other steps to beginning and proceeding with your appeal, but they are governed by the rules of the Second Circuit Court of Appeals and the Federal Rules of Appellate Procedure. For more information, visit the Second Circuit Court of Appeals website at **http://www.ca2.uscourts.gov/**.

<table>
<tr><td>THE DANIEL PATRICK MOYNIHAN<br>UNITED STATES COURTHOUSE<br>500 PEARL STREET<br>NEW YORK, NY 10007-1312</td><td>THE CHARLES L. BRIEANT, JR.<br>UNITED STATES COURTHOUSE<br>300 QUARROPAS STREET<br>WHITE PLAINS, NY 10601-4150</td></tr>
</table>

Rev. 5/23/14

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

_____

(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

_____

_____

(List the full name(s) of the defendant(s)/respondent(s).)

_____CV_____ (     )(     )

**NOTICE OF APPEAL**

Notice is hereby given that the following parties: _____

_____

(list the names of all parties who are filing an appeal)

in the above-named case appeal to the United States Court of Appeals for the Second Circuit

from the    ☐ judgment    ☐ order    entered on: _____

(date that judgment or order was entered on docket)

that: _____

_____

(If the appeal is from an order, provide a brief description above of the decision in the order.)

_____    _____
Dated                                              Signature[*]

_____
Name (Last, First, MI)

_____
Address                          City                State                    Zip Code

_____
Telephone Number                          E-mail Address (if available)

_____

[*]Each party filing the appeal must date and sign the Notice of Appeal and provide his or her mailing address and telephone number, EXCEPT that a signer of a pro se notice of appeal may sign for his or her spouse and minor children if they are parties to the case. Fed. R. App. P. 3(c)(2). Attach additional sheets of paper as necessary.

Rev. 12/23/13

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

_____

(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

_____

_____

(List the full name(s) of the defendant(s)/respondent(s).)

_____CV_____ (      )(      )

**MOTION FOR EXTENSION OF TIME TO FILE NOTICE OF APPEAL**

I move under Rule 4(a)(5) of the Federal Rules of Appellate Procedure for an extension of time

to file a notice of appeal in this action. I would like to appeal the judgment

entered in this action on _____ but did not file a notice of appearance within the required
                          date

time period because:

_____

_____

_____

(Explain here the excusable neglect or good cause that led to your failure to file a timely notice of appeal.)

Dated: _____

Signature _____

Name (Last, First, MI)

Address _____ City _____ State _____ Zip Code

Telephone Number _____ E-mail Address (if available)

Rev. 12/23/13

Case 3:21-cv-00444-DJN  Document 126-9  Filed 04/19/24  Page 15 of 586 PageID#
Case 1:09-cv-03701-JPO-JCF  Document 581-1  Filed 12/04/15  Page 4 of 10
5203

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

_____

(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

_____

_____

(List the full name(s) of the defendant(s)/respondent(s).)

_____CV_____ (        )(        )

**MOTION FOR LEAVE TO
PROCEED IN FORMA
PAUPERIS ON APPEAL**

I move under Federal Rule of Appellate Procedure 24(a)(1) for leave to proceed *in forma*

*pauperis* on appeal. This motion is supported by the attached affidavit.

_____

Dated

_____

Name (Last, First, MI)

_____

Address                              City

_____

Telephone Number

_____

Signature

_____

_____

State                    Zip Code

_____

E-mail Address (if available)

Rev. 12/23/13

Case 3:21-cv-00444-DJN-JPC Document 126-9 Filed 04/19/24 Page 16 of 586 PageID#
Case 1:09-cv-03701-JPO-JCF Document 581-1 Filed 12/04/15 Page 5 of 10
5204

## Application to Appeal In Forma Pauperis

_____**v.** _____     Appeal No. _____

District Court or Agency No. _____

| **Affidavit in Support of Motion** | **Instructions** |
|---|---|
| I swear or affirm under penalty of perjury that, because of my poverty, I cannot prepay the docket fees of my appeal or post a bond for them. I believe I am entitled to redress. I swear or affirm under penalty of perjury under United States laws that my answers on this form are true and correct. (28 U.S.C. § 1746; 18 U.S.C. § 1621.) | Complete all questions in this application and then sign it. Do not leave any blanks: if the answer to a question is "0," "none," or "not applicable (N/A)," write that response. If you need more space to answer a question or to explain your answer, attach a separate sheet of paper identified with your name, your case's docket number, and the question number. |
| Signed: _____ | Date: _____ |

My issues on appeal are: (<u>required</u>):

1.     *For both you and your spouse estimate the average amount of money received from each of the following sources during the past 12 months. Adjust any amount that was received weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate. Use gross amounts, that is, amounts before any deductions for taxes or otherwise.*

| Income source | Average monthly amount during the past 12 months | | Amount expected next month | |
|---|---|---|---|---|
| | You | <u>Spouse</u> | You | <u>Spouse</u> |
| Employment | $ | $ | $ | $ |
| Self-employment | $ | $ | $ | $ |
| Income from real property (such as rental income) | $ | $ | $ | $ |

- 1 -

12/01/2013 SCC

| | | | | |
|---|---|---|---|---|
| Interest and dividends | $ | $ | $ | $ |
| Gifts | $ | $ | $ | $ |
| Alimony | $ | $ | $ | $ |
| Child support | $ | $ | $ | $ |
| Retirement (such as social security, pensions, annuities, insurance) | $ | $ | $ | $ |
| Disability (such as social security, insurance payments) | $ | $ | $ | $ |
| Unemployment payments | $ | $ | $ | $ |
| Public-assistance (such as welfare) | $ | $ | $ | $ |
| Other (specify): | $ | $ | $ | $ |
| **Total monthly income:** | **$** | **$** | **$** | **$** |

2. *List your employment history for the past two years, most recent employer first. (Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

3. *List your spouse's employment history for the past two years, most recent employer first. (Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

Case 3:21-cv-00444-DJN   Document 126-9   Filed 04/19/24   Page 18 of 586 PageID#
Case 1:09-cv-03701-JPO-JCF   Document 581-1   Filed 12/04/15   Page 57 of 10
5206

4. *How much cash do you and your spouse have? $_____*

   *Below, state any money you or your spouse have in bank accounts or in any other financial institution.*

| Financial Institution | Type of Account | Amount you have | Amount your spouse has |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

***If you are a prisoner seeking to appeal a judgment in a civil action or proceeding, you must attach a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts.  If you have multiple accounts, perhaps because you have been in multiple institutions, attach one certified statement of each account.***

5. *List the assets, and their values, which you own or your spouse owns. Do not list clothing and ordinary household furnishings.*

| Home | Other real estate | Motor vehicle #1 |
|---|---|---|
| (Value) $ | (Value) $ | (Value) $ |
| | | Make and year: |
| | | Model: |
| | | Registration #: |

| Motor vehicle #2 | Other assets | Other assets |
|---|---|---|
| (Value) $ | (Value) $ | (Value) $ |
| Make and year: | | |
| Model: | | |
| Registration #: | | |

Case 3:21-cv-00444-DJN-JFC Document 126-9 Filed 04/19/24 Page 19 of 586 PageID#
Case 1:09-cv-03701-JPO-JCF Document 581-1 Filed 12/04/15 Page 8 of 10
5207

6.    *State every person, business, or organization owing you or your spouse money, and the amount owed.*

| Person owing you or your spouse money | Amount owed to you | Amount owed to your spouse |
|---|---|---|
| | $ | $ |
| | $ | $ |
| | $ | $ |
| | $ | $ |

7.    *State the persons who rely on you or your spouse for support.*

| Name [or, if a minor (i.e., underage), initials only] | Relationship | Age |
|---|---|---|
| | | |
| | | |
| | | |

8.    *Estimate the average monthly expenses of you and your family.  Show separately the amounts paid by your spouse. Adjust any payments that are made weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate.*

| | You | Your Spouse |
|---|---|---|
| Rent or home-mortgage payment (including lot rented for mobile home)<br>      Are real estate taxes included?        [  ] Yes  [  ] No<br>      Is property insurance included?        [  ] Yes  [  ] No | $ | $ |
| Utilities (electricity, heating fuel, water, sewer, and telephone) | $ | $ |
| Home maintenance (repairs and upkeep) | $ | $ |
| Food | $ | $ |
| Clothing | $ | $ |
| Laundry and dry-cleaning | $ | $ |
| Medical and dental expenses | $ | $ |

- 4 -

| | | $ | $ |
|---|---|---|---|
| Transportation (not including motor vehicle payments) | | $ | $ |
| Recreation, entertainment, newspapers, magazines, etc. | | $ | $ |
| Insurance (not deducted from wages or included in mortgage payments) | | | |
| | Homeowner's or renter's: | $ | $ |
| | Life: | $ | $ |
| | Health: | $ | $ |
| | Motor vehicle: | $ | $ |
| | Other: | $ | $ |
| Taxes (not deducted from wages or included in mortgage payments) (specify): | | $ | $ |
| Installment payments | | | |
| | Motor Vehicle: | $ | $ |
| | Credit card (name): | $ | $ |
| | Department store (name): | $ | $ |
| | Other: | $ | $ |
| Alimony, maintenance, and support paid to others | | $ | $ |
| Regular expenses for operation of business, profession, or farm (attach detailed statement) | | $ | $ |
| Other (specify): | | $ | $ |
| **Total monthly expenses:** | | **$** | **$** |

9. *Do you expect any major changes to your monthly income or expenses or in your assets or liabilities during the next 12 months?*

   [ ] Yes    [ ] No    If yes, describe on an attached sheet.

10. *Have you spent — or will you be spending —any money for expenses or attorney fees in connection with this lawsuit?* [ ] Yes [ ] No

    *If yes, how much?* $ _____

- 5 -

Case 3:21-cv-00444-DJN-JPB Document 126-9 Filed 04/19/24 Page 21 of 586 PageID#
Case 1:09-cv-03701-JPO-JCF Document 381-1 Filed 12/04/19 Page 10 of 10
5209

11.    *Provide any other information that will help explain why you cannot pay the docket fees for your appeal.*

12.    *Identify the city and state of your legal residence.*

City _____    State _____

Your daytime phone number: _____

Your age: _____    Your years of schooling: _____

Last four digits of your social-security number: _____

Case 2:21-cv-00444-BJN - Document 126-9 Filed 04/19/24 Page 22 of 586 PageID#
Case 1:09-cv-03701-JPO-JCF  Document 361-2  Filed 12/04/15  Page 1 of 1
5210

**United States District Court
Southern District of New York**

# HOW TO APPEAL YOUR CASE TO THE UNITED STATES COURT
## OF APPEALS FOR THE SECOND CIRCUIT

If you disagree with a judgment or final order of the district court, you may appeal to the United States Court of Appeals for the Second Circuit. To start this process, file a "Notice of Appeal" with this Court's Pro Se Intake Unit.

You must file your notice of appeal in this Court within 30 days after the judgment or order that you wish to appeal is entered on the Court's docket, or, if the United States or its officer or agency is a party, within 60 days after entry of the judgment or order. If you are unable to file your notice of appeal within the required time, you may make a motion for extension of time, but you must do so within 60 days from the date of entry of the judgment, or within 90 days if the United States or its officer or agency is a party, and you must show excusable neglect or good cause for your inability to file the notice of appeal by the deadline.

Please note that the notice of appeal is a *one-page* document containing your name, a description of the final order or judgment (or part thereof) being appealed, and the name of the court to which the appeal is taken (the Second Circuit) – *it does not* include your reasons or grounds for the appeal. Once your appeal is processed by the district court, your notice of appeal will be sent to the Court of Appeals and a Court of Appeals docket number will be assigned to your case. At that point, all further questions regarding your appeal must be directed to that court.

The filing fee for a notice of appeal is $505 payable in cash, by bank check, certified check, or money order, to "Clerk of Court, S.D.N.Y." *No personal checks are accepted*. If you are unable to pay the $505 filing fee, complete the "Motion to Proceed *in Forma Pauperis* on Appeal" form and submit it with your notice of appeal to the Pro Se Intake Unit. If the district court denies your motion to proceed *in forma pauperis* on appeal, or has certified under 28 U.S.C. § 1915(a)(3) that an appeal would not be taken in good faith, you may file a motion in the Court of Appeals for leave to appeal *in forma pauperis*, but you must do so within 30 days after service of the district court order that stated that you could not proceed *in forma pauperis* on appeal.

For additional issues regarding the time for filing a notice of appeal, see Federal Rule of Appellate Procedure 4(a). There are many other steps to beginning and proceeding with your appeal, but they are governed by the rules of the Second Circuit Court of Appeals and the Federal Rules of Appellate Procedure. For more information, visit the Second Circuit Court of Appeals website at **http://www.ca2.uscourts.gov/.**

THE DANIEL PATRICK MOYNIHAN
UNITED STATES COURTHOUSE
500 PEARL STREET
NEW YORK, NY 10007-1312

THE CHARLES L. BRIEANT, JR.
UNITED STATES COURTHOUSE
300 QUARROPAS STREET
WHITE PLAINS, NY 10601-4150

Rev. 5/23/14

# EXHIBIT 9B

Case 3:2Case00494cvD0N562Dv6BmeDrocu26ent 155edF04d19/220/2Rage84 of586 PageID# 5212

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
                    :

FULTON COUNTY EMPLOYEES'       :
RETIREMENT SYSTEM, Derivatively on Be:
THE GOLDMAN SACHS GROUP, INC.,  :
                    :                        19-CV-1562 (VSB)
          Plaintiff      :
                    :           **FINAL JUDGMENT AND**
      -against-       :           **ORDER OF DISMISSAL**
                    :

LLOYD BLANKFEIN, DAVID M.    :
SOLOMON, M. MICHELE BURNS, MARK :
A. FLAHERTY, WILLIAM W. GEORGE, :
JAMES A. JOHNSON, ELLEN J.     :
KULLMAN, LAKSHMI N. MITTAL,   :
ADEBAYO O. OGUNLESI, PETER    :
OPPENHEIMER, DAVID A. VINIAR, and :
MARK O. WINKELMAN,        :
                    :

       Defendants,    :
                    :
         and        :
                    :

THE GOLDMAN SACHS GROUP, INC.,  :
                    :
       Nominal     :
       Defendant.   :
                    :
---------------------------------------------------------X

VERNON S. BRODERICK, United States District Judge:

      A hearing having been held before this Court on January 13, 2023, pursuant to the Court's

Order of September 16, 2022 (the "Preliminary Approval Order"), on the application of the Parties

for approval of the settlement set forth in the Stipulation and Agreement of Settlement, executed

on May 13, 2022 (the "Stipulation" or "Settlement"); due and adequate notice of the Settlement

having been given as required in said Preliminary Approval Order; and the Court having

considered all papers filed and proceedings held herein, and otherwise being fully informed, and

good cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**, this 20th day of January, 2023, that:

1.  This Final Judgment and Order of Dismissal incorporates by reference the definitions in the Stipulation, and all capitalized terms used herein shall have the meanings as set forth in the Stipulation.

2.  Notice has been given to shareholders of The Goldman Sachs Group, Inc. ("Goldman Sachs" or the "Company") pursuant to and in the manner directed by the Preliminary Approval Order; proof of publication of the required notice was filed with the Court; and a full opportunity to be heard has been afforded to all parties, Goldman Sachs shareholders and other interested persons.  The form and manner of the notice provided is hereby confirmed to have been the best notice practicable under the circumstances and to have been given in full compliance with each of the requirements of Federal Rule of Civil Procedure 23.1, due process and applicable law, and it is further determined that all Goldman Sachs shareholders are bound by the Final Judgment and Order of Dismissal herein.

3.  The Court reconfirms that, for settlement purposes only, the Action is properly maintained as a shareholder derivative action on behalf of Goldman Sachs, and that Plaintiff fairly and adequately represented the interests of Goldman Sachs and its shareholders.  Plaintiff Counsel is authorized to act on behalf of Goldman Sachs shareholders with respect to all acts required by the Stipulation or such other acts which are reasonably necessary to consummate the Settlement set forth in the Stipulation.

4.  The Court has reviewed the proposed settlement for adequacy and fairness based on the factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

Specifically, it has assessed the settlement based on "(1) the complexity, expense and likely duration of the litigation; (2) the stage of the proceedings and the amount of discovery completed; (3) the risks of establishing liability and damages; (4) the risks of maintaining the class action through the trial; (5) the lack of any objections; (6) the ability of the defendants to withstand a greater judgment; and (7) that the Total Settlement Amount is within the range of reasonableness in light of the best possible recovery and the attendant risks of litigation." *Gonzalez v. PB Hudson LLC*, No. 17-CV-2010 (VSB), 2019 WL 11541374, at *2 (S.D.N.Y. Apr. 4, 2019) (citing *Grinnell Corp.*, 495 F.2d at 463). Based on this review, the Settlement is found to be fair, reasonable, and adequate, and is hereby approved in all respects pursuant to Federal Rule of Civil Procedure 23.1. The Parties are hereby authorized and directed to comply with and to consummate the Settlement in accordance with its terms and provisions, and the Clerk is directed to enter and docket this Final Judgment and Order of Dismissal in the Action. The Court finds that this Final Judgment and Order of Dismissal is a final judgment and should be entered in accordance with Federal Rule of Civil Procedure 58.

5. This Court has jurisdiction over the subject matter of the Action, including all matters necessary to effectuate the Settlement and this Final Judgment and over all parties to the Action.

6. The Action and the Released Claims are hereby dismissed on the merits with prejudice as to all Defendants in the Action and against all Released Parties on the merits and, except as may be awarded by the Court as contemplated below in Paragraphs 15 and 16, without fees or costs.

7. "Released Claims" means the Released Plaintiff Claims and the Released Defendant Claims. "Claims" means any and all manner of claims, demands, rights, liabilities,

3

losses, obligations, duties, costs, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees, actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and controversies of any kind, nature, or description whatsoever, whether based on state, local, federal, statutory, regulatory, common, or other law or rule, whether asserted or unasserted, known or unknown, accrued or unaccrued, matured or not matured, liquidated or not liquidated, fixed or contingent, including Unknown Claims. "Released Plaintiff Claims" means any and all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, local, statutory, regulatory, common, foreign or other law or rule, that Plaintiff or the Company (i) asserted in the Complaint or (ii) could have asserted, or could hereafter assert against any of the Released Defendant Parties either directly or derivatively on behalf of the Company that in any way are based on, arise from or relate to the allegations, transactions, facts, matters, disclosures or nondisclosures set forth in the Complaint, including but not limited to the conduct, actions, inactions, deliberations, statements or representations of any Released Defendant Party. For the avoidance of doubt, "Released Plaintiff Claims" shall not include or release: (i) any claims relating to the right to enforce this Stipulation or Settlement, or (ii) any direct claims of Plaintiff or any other Goldman stockholder, including without limitation any direct claims asserted under the federal securities laws, including without limitation claims asserted in the Second Amended Class Action Complaint, dated October 28, 2019 (ECF No. 63) in *Sjunde AP-Fonden v. The Goldman Sachs Group, Inc. et al.*, No. 1:18-cv-12084-VSB (S.D.N.Y.). "Released Defendant Claims" means any Claims that have been or could have been asserted in the Action, or in any other action or proceeding, by Defendants or any of their respective successors, transferees and assigns against any of the Released Plaintiff Parties, which arise out of or relate in any way to the institution, prosecution, settlement or dismissal of

4

the Action. "Released Defendant Claims" shall not include: (i) the right to enforce the Settlement; (ii) any Claims that arise out of or relate in any way to the D&O Policies that any of the Defendants has or may have against any of the Insurers; and (iii) any Claims that the Company (or any affiliate thereof) has or may have against Timothy Leissner or Ng Chong Hwa (also referred to as Roger Ng) including, without limitation, any right to clawback, demand forfeiture of, or reduce compensation arising out of or relating to, their employment by the Company or any direct or indirect affiliate thereof.

8. "Unknown Claims" means any Released Claims which the Released Parties do not know or suspect exist in their favor at the time of the release of the Released Claims as against the Released Parties, including without limitation those which, if known, might have affected the decision to enter into or object to the Settlement. With respect to any and all Released Claims, and although the Settlement provides for a specific release of the Released Parties, the Parties stipulate and agree that, upon the Effective Date, the Released Parties shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have, waived the provisions, rights and benefits of California Civil Code § 1542, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

The Released Parties shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have, waived any and all provisions, rights and benefits conferred by any law of any jurisdiction, state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code § 1542. Any Released Party may hereafter discover facts in addition to or different from those which he, she, they or it now knows

or believes to be true with respect to the Released Claims but, upon the Court's entry of the Final Judgment and Order of Dismissal, the Released Parties shall be deemed to have fully, finally, and forever settled and released any and all Released Claims known or unknown without regard to the subsequent discovery or existence of such different or additional facts. The Released Parties shall be deemed by operation of the Final Judgment and Order of Dismissal to have acknowledged that the foregoing waivers were separately bargained for and are key elements of the Settlement of which this release is a part.

9. "Released Parties" means the Released Plaintiff Parties and the Released Defendant Parties. "Released Plaintiff Parties" means Plaintiff, on behalf of itself, its legal representatives, heirs, executors, administrators, estates, predecessors, predecessors-in-interest, successors, successors-in-interest, affiliates, transferees, and assigns, and any Person acting for or on behalf of, or claiming under, any of them, and each of them, together with each of their respective officers, directors, managers, general partners, employees, representatives, and agents and Plaintiff Counsel. "Released Defendant Parties" means, whether or not any or all of the following Persons were named, served with process, or appeared in the Action: (i) Goldman Sachs; (ii) the Individual Defendants; (iii) any current or former director or officer of the Company or any of its affiliates; (iv) any Person that is or was related to or affiliated or associated with any or all of Defendants or in which any or all of them has or had a controlling interest; and (v) with respect to each of the Persons set forth or described in (i)-(iv), each of their respective past or present family members, spouses, heirs, trusts, trustees, executors, estates, foundations, administrators, beneficiaries, distributees, agents, employees, fiduciaries, partners, control persons, partnerships, general or limited partners, joint ventures, member firms, limited liability companies, corporations, parents, subsidiaries, divisions, affiliates, associated entities, shareholders, principals, officers, managers,

directors, managing directors, members, managing members, managing agents, predecessors, predecessors-in-interest, successors, successors-in-interest, transferees, assigns, financial or investment advisors, advisors, consultants, investment bankers, entities providing any fairness opinion, underwriters, brokers, dealers, financing sources, lenders, commercial bankers, attorneys (including, without limitation, Defendants Counsel), personal or legal representatives, accountants, tax advisors, insurers, co-insurers, reinsurers and associates. "Released Defendant Parties" shall not include Messrs. Timothy Leissner, Roger Ng, nor any person who meets the criteria of subparts (iv) or (v) above in respect of Messrs. Leissner or Ng.

10. As of the Effective Date, the Released Plaintiff Parties, Goldman Sachs and each of Goldman Sachs shareholders to the extent he, she, they, or it are acting or purporting to act derivatively on behalf of Goldman Sachs shall be deemed to have fully, finally and forever released, settled, and discharged the Released Defendant Parties from and with respect to every one of the Released Plaintiff Claims on the terms and conditions set forth in the Stipulation, and shall thereupon be forever barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute, whether directly or indirectly, any Released Plaintiff Claims against any of the Released Defendant Parties.

11. As of the Effective Date, Defendants shall be deemed to have fully, finally, and forever, released, settled, and discharged the Released Plaintiff Parties from and with respect to every one of the Released Defendant Claims, and shall thereupon be forever barred and enjoined from commencing, instituting, or prosecuting, whether directly or indirectly, any of the Released Defendant Claims against any of the Released Plaintiff Parties.

12. As of the Effective Date, the Parties shall be deemed bound by the Stipulation and the Final Judgment and Order of Dismissal. The Final Judgment and Order of Dismissal including,

without limitation, the release of all Released Claims against all Released Parties, shall have res judicata, collateral estoppel, and all other preclusive effects in respect of all pending and future lawsuits, arbitrations, suits, actions, demands or proceedings involving any of the Released Plaintiff Parties or the Released Defendant Parties.

13. Plaintiff, Goldman Sachs, and each and every Goldman Sachs shareholder are hereby permanently barred and enjoined from asserting, commencing, prosecuting, assisting, instigating, continuing or in any way participating in the commencement or prosecution of any action, whether directly, representatively, derivatively or in any other capacity, asserting any of the Released Claims that are released pursuant to this Final Judgment and Order of Dismissal or under the Stipulation.

14. The existence of the Stipulation, its contents and any negotiations, statements, proceedings or agreements in connection therewith shall not be offered or received against any Party in any civil, criminal or administrative action, proceeding or forum as evidence of, or construed as or deemed to be evidence of, or in any way referred to for any other reason as against any of the Parties as a presumption, concession or admission: (i) by Plaintiff of any infirmity in the Claims asserted in the Action; (ii) by any Individual Defendant with respect to his or her liability, negligence or fault in respect of the Claims that have been or could have been asserted in the Action; or (iii) that the consideration to be given hereunder represents the consideration which could be or would have been recovered at trial; *provided, however,* that nothing contained in this paragraph shall apply to references to the Stipulation or accompanying documents in any action, proceeding or forum to effectuate the provisions of the Stipulation

15. Plaintiff Counsel's Fee Application is granted. The Court has reviewed the proposed fee based on the "percentage of fund method[]," *Goldberger v. Integrated Res., Inc.*, 209

8

F.3d 43, 50 (2d Cir. 2000), and applied the "lodestar" method as an additional check on the validity of the percentage award requested. *Nichols v. Noom, Inc.*, No. 20-CV-3677 (KHP), 2022 WL 2705354, at *11 (S.D.N.Y. July 12, 2022). It has also reviewed this award in light of the six "*Goldberger* factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* at *10 (quoting *In re Parking Heaters, Antitrust Litig.*, No. 15MC0940DLIJO, 2019 WL 8137325, at *7 (E.D.N.Y. Aug. 15, 2019). The 25 percent award sought is within the range of awards granted by judges in this District. *See, e.g.*, *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *15 (S.D.N.Y. July 21, 2020) ("The 25% attorney fee (net of expenses) requested by Lead Counsel is within the range of percentage fees that have been awarded in the Second Circuit in securities class actions and other similar litigation with comparable recoveries."); *In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d 336, 343 (S.D.N.Y. 2011) (determining, after collecting cases, that a 28 to 29 percent fee award was reasonable.) The Court's assessment of the *Goldberger* factors and lodestar cross-check further confirm the propriety of the award. Accordingly, Plaintiff Counsel is hereby awarded attorneys' fees in the amount of 25 percent of the Monetary Consideration provided in the Settlement, which amount the Court finds to be fair and reasonable, and which shall be paid to Plaintiff Counsel pursuant to the terms and conditions of the Stipulation.

16. Plaintiff's application for a Service Award is granted. "Courts in this Circuit routinely award . . . costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the

9

first place." *In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d 277, 285 (S.D.N.Y. 2015). Accordingly, Plaintiff is hereby awarded a Service Award in the amount of $5,000, which shall be paid to Plaintiff from Plaintiff Counsel's fee award pursuant to the terms and conditions of the Stipulation.

17. The effectiveness of this Final Judgment and Order of Dismissal and the obligations of Plaintiff, Plaintiff Counsel, Goldman Sachs, Goldman Sachs shareholders, and Defendants under the Settlement shall not be conditioned upon or subject to the resolution of any appeal or other matter that relates solely to the issue of any award for attorneys' fees or reimbursement of expenses.

18. The Court further orders, adjudges and decrees that all other relief be, and is hereby, denied, and that this Final Judgment and Order of Dismissal disposes of all the claims and all the parties in the above-styled captioned shareholder derivative action.

19. Without affecting the finality of this Final Judgment and Order of Dismissal in any way, this Court retains jurisdiction over all matters relating to the administration and consummation of the Settlement and all Parties hereto for the purpose of construing, enforcing and administering the Settlement. Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

20. The Court finds that the Action was filed, prosecuted, defended, and settled in good faith, and that during the course of the Action, the Parties and their respective counsel at all times complied with the requirements of Federal Rules of Civil Procedure.

21. In the event that the Settlement does not become effective in accordance with the terms of the Stipulation or the Effective Date does not occur, then this Final Judgment and Order of Dismissal shall be rendered null and void to the extent provided by and in accordance with the

10

Stipulation and shall be vacated, and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided for and in accordance with the Stipulation.

**SO ORDERED.**

Dated:  January 20, 2023
New York, New York

The Honorable Vernon S. Broderick
United States District Judge

# EXHIBIT 9C

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| PAUL HAYDEN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PORTOLA PHARMACEUTICALS INC., et al.,<br><br>Defendants. | No. 3:20-cv-00367-VC<br>Hon. Vince Chhabria |

**[PROPOSED] ORDER AWARDING (I) ATTORNEYS' FEES, (II) REIMBURSEMENT OF EXPENSES, AND (III) AWARD OF COSTS AND EXPENSES TO PLAINTIFFS**

This matter came for hearing before the Court on March 2, 2023 (the "Final Approval Hearing") on Lead Counsel's motion for (i) an award of attorneys' fees, (ii) reimbursement of litigation expenses incurred in this securities class action (the "Action"), and (iii) an award of costs and expenses to Plaintiffs pursuant to 15 U.S.C. § 78u-4(a)(4) (the "Fee and Expense Motion"). The Court, having considered all papers filed and the proceeding conducted herein, having found the Settlement reached in this action to be fair, reasonable, and adequate and otherwise being fully informed, finds as follows:

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. All capitalized terms not otherwise defined herein have the same meaning as set forth in the September 19, 2022 Stipulation and Agreement of Settlement (ECF No. 231-2) (the "Stipulation").

2. The Court has jurisdiction over the subject matter of this Action and all matters related thereto, including all members of the Settlement Class.[1]

---

[1] "Settlement Class" means the class defined in the Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") (ECF No. 242), at 2-3.

- 1 -

3.      Pursuant to and in compliance with Rule 23 of the Federal Rules of Civil Procedure, the Court hereby finds and concludes that due and adequate notice of these proceedings was directed to all persons and entities who are Settlement Class Members who could be identified with reasonable effort advising them of the Fee and Expense Motion and of their right to object thereto, and a full and fair opportunity was accorded to persons and entities who are Settlement Class Members to be heard with respect to the Fee and Expense Motion.

4.      The Court hereby finds that the Notice to the Settlement Class of the Fee and Expense Motion met the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 77z-1, 78u-4, as amended, and all other applicable law and rules; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all persons and entities entitled thereto.

5.      No Settlement Class Member has filed an objection to the Fee and Expense Motion, nor requested exclusion from the Settlement Class.

6.      Lead Counsel is hereby awarded, on behalf of all Plaintiffs' Counsel, attorneys' fees in the amount of $4,375,000 (25% of the Settlement Fund), and $750,612.54, in payment of Plaintiffs' Counsel's litigation expenses, together with any interest earned thereon for the same time period and at the same rate as that earned on the Settlement Fund until paid pursuant to the terms set forth in the Stipulation.

7.      The attorneys' fees awarded in paragraph 6, supra, is subject to the hold-back provision of paragraph 10, infra.

8.      The Court finds that the amount of fees awarded is appropriate and is fair and reasonable under both the "percentage-of-the-fund" method and using the lodestar cross-check, particularly given the substantial risks of non-recovery, the substantial time and effort involved, and the results obtained for the Settlement Class in connection with the Settlement.

9.      In accordance with 15 U.S.C. § 78u-4(a)(4), the Court hereby awards reimbursement of costs and expenses from the Settlement Fund to Lead Plaintiff Alameda

County Employees' Retirement Association ("ACERA") in the amount of $10,000 and Additional Named Plaintiff Oklahoma Firefighters Pension and Retirement System ("OFPRS") in the amount of $8,500—sums the Court finds to be fair and reasonable—in connection with their representation of the Settlement Class.

10.     Ninety percent (90%) of the total amount of attorneys' fees awarded and interest earned, as well as all litigation expenses and interest earned and reimbursement of costs and expenses to Plaintiffs, shall be paid from the Settlement Fund immediately upon entry of this Order, subject to the terms, conditions, and obligations of the Stipulation, which terms, conditions, and obligations are incorporated herein by reference.  Consistent with this Court's established practice, the Court orders that 10% of the total amount of attorneys' fees awarded shall be withheld until after a distribution of the Net Settlement Fund to Authorized Claimants has been made.  Pursuant to the Court's Standing Order for Civil Cases (at 17), with Lead Counsel's filing of the Post-Distribution Accounting, Lead Counsel will submit a proposed order to the Court requesting the release of the remainder of its fee award and applicable earned interest.

11.     In making the awards of attorneys' fees, reimbursement of litigation expenses, and reimbursement of Plaintiffs' costs and expenses to be paid from the Settlement Fund, the Court has considered and found that:

a.     The Settlement constitutes a favorable result for the Settlement Class as it created a common fund of $17.5 million in cash from which numerous Settlement Class Members who submit valid and timely Proofs of Claim will benefit;

b.     The requested attorneys' fees and payment of litigation expenses have been reviewed and approved as fair and reasonable by Lead Plaintiff and Additional Named Plaintiff OFPRS, institutional investors that have been directly involved in the prosecution and resolution of the Action and who have substantial interests in ensuring that any fees and expenses paid to counsel are duly earned and not excessive;

- 3 -

  c.  The requested 25% fee request is consistent with an *ex-ante* fee agreement negotiated by ACERA and entered into at the outset of the litigation;

  d.  The attorneys' fees awarded are consistent with awards in similar cases and with the Ninth Circuit's 25% "benchmark";

  e.  Notice was disseminated to Settlement Class Members stating that Lead Counsel would be submitting a request for attorneys' fees in an amount not to exceed 25% of the Settlement Amount plus accrued interest, payment of expenses incurred in connection with the prosecution of this Action in an amount not to exceed $840,000 plus accrued interest, and a payment of up to an aggregate of $20,000 to Plaintiffs, which payment includes but is not limited to reimbursement of Plaintiffs' reasonable costs and expenses directly related to their representation of the Settlement Class.  No Settlement Class Members have filed an objection to that request for fees, expenses, or reimbursement to Plaintiffs;

  f.  Plaintiffs' Counsel have expended substantial time and effort pursuing the Action on behalf of the Settlement Class;

  g.  The Action raised many complex factual and legal issues and, in the absence of settlement, would involve lengthy proceedings against the Defendants, the resolution of which would be uncertain;

  h.  Plaintiffs' Counsel assumed substantial risk by pursuing the Action on a contingent basis, having received no compensation during the Action, and expecting any fee award would be contingent on the result achieved;

  i.  As set forth in the Fee and Expense Motion, Plaintiffs' Counsel devoted over 15,400 hours, collectively, to the prosecution of the Action;

  j.  The fee awarded results in a negative lodestar multiplier of less than 0.5 of the collective lodestar of Plaintiffs' Counsel, which confirms the reasonableness of the requested fee;

  k.  Public policy strongly favors rewarding firms for bringing successful securities class action litigation; and

- 4 -

l.      The amounts to be paid from the Settlement Fund for attorneys' fees, expenses, and an award for reimbursement of Plaintiffs' costs and expenses are fair and reasonable and consistent with awards in similar cases.

12.     Any appeal or any challenge affecting this Court's approval regarding any attorneys' fee and expense application shall in no way disturb or affect the finality of the Judgment and other orders entered with respect to the Settlement.

13.     Exclusive jurisdiction is hereby retained over the subject matter of this Action and over all parties to the Action, including the administration and distribution of the Net Settlement Fund to Settlement Class Members.

14.     In the event that the Settlement is terminated or does not become Final or the Effective Date does not occur in accordance with the terms of the Stipulation, this Order shall be rendered null and void to the extent provided by the Stipulation and shall be vacated in accordance with the Stipulation.


IT IS SO ORDERED.


DATED:   March 6, 2023          _____
                                        THE HONORABLE VINCE CHHABRIA
                                        UNITED STATES DISTRICT JUDGE

# EXHIBIT 9D

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE BIOMARIN PHARMACEUTICAL INC. SECURITIES LITIGATION

Case No. 20-cv-06719-WHO

**ORDER GRANTING FINAL APPROVAL TO SETTLEMENT, APPROVING PLAN OF ALLOCATION, AND AWARDING FEES AND COSTS**

Re: Dkt. Nos. 147, 148

Lead Plaintiff Arbejdsmarkedets Tillægspension ("Lead Plaintiff"), on behalf of itself and the Settlement Class, and (b) Defendants BioMarin Pharmaceutical Inc. ("BioMarin" or the "Company"), Jean-Jacques Bienaimé, and Dr. Henry Fuchs (collectively, the "Individual Defendants" and, together with BioMarin, "Defendants") have entered into a Stipulation and Agreement of Settlement dated April 24, 2023 ("Stipulation"), that provides for a complete dismissal with prejudice of the claims asserted against Defendants in the Action on the terms and conditions set forth in the Stipulation, subject to the approval of this Court ("Settlement");

Unless otherwise defined, the capitalized terms herein shall have the same meanings as they have in the Stipulation;

The Court conducted a hearing on November 8, 2023 ("Final Approval Hearing") to consider, among other things, (a) whether the terms and conditions of the Settlement are fair, reasonable, and adequate to the Settlement Class, and should therefore be approved; and (b) whether a judgment should be entered dismissing the Action with prejudice as against the Defendants; and

The Court having reviewed and considered the Stipulation, all papers filed and proceedings held herein in connection with the Settlement, all oral and written comments received regarding the Settlement, and the record in the Action, and good cause appearing therefor;

IT IS HEREBY ORDERED:

1. **Jurisdiction** – The Court has jurisdiction over the subject matter of the Action, and all matters relating to the Settlement, as well as personal jurisdiction over all of the Parties and each of the Settlement Class Members.

2. **Incorporation of Settlement Documents** – Incorporated here in are: (a) the Stipulation filed with the Court on April 28, 2023; and (b) the Notice and Summary Notice, both of which were filed with the Court on October 4, 2023.

3. **Class Certification for Settlement Purposes** – The Court hereby certifies for the purposes of the Settlement only, the Action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Settlement Class consisting of all persons who purchased or otherwise acquired BioMarin common stock from March 3, 2020 through August 18, 2020, inclusive ("Class Period"). and were damaged thereby. Excluded from the Settlement Class are: (1) Defendants; (2) any current or former Officers or directors of BioMarin; (3) the Immediate Family members of any Defendant or any current or former Officer or director of BioMarin; (4) any entity that any Defendant owns or controls, or owned or controlled during the Class Period; and (5) the plaintiffs in *Alger Capital Appreciation Fund et al. v. BioMarin Pharmaceutical Inc. at al.,* Case 3:23-cv-00826 (N.D. Cal.) and any of their successors in interest. Also excluded from the Settlement Class are the persons and entities set forth in Exhibit 1.

4. **Adequacy of Representation** – Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, the Court hereby appoints Lead Plaintiff as Class Representative for the Settlement Class and appoints Lead Counsel Bernstein Litowitz Berger & Grossmann LLP as Class Counsel for the Settlement Class. Lead Plaintiff and Lead Counsel have fairly and adequately represented the Settlement Class both in terms of litigating the Action and for purposes of entering into and implementing the Settlement, and have satisfied the requirements of Federal Rules of Civil Procedure 23(a)(4) and 23(g), respectively.

5. **Notice** – The Court finds that the dissemination of the Notice substantially in the form approved by the Court was mailed to all Settlement Class Members who or which could be identified with reasonable effort, and that a summary notice of the hearing substantially in the form

2

approved by the Court was published in *The Wall Street Journal* and transmitted over the *PR Newswire* pursuant to the specifications of the Court; and more generally notice (a) was implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of (i) the pendency of the Action; (ii) the effect of the proposed Settlement (including the Releases to be provided thereunder); (iii) Lead Counsel's motion for attorneys' fees and Litigation Expenses; (iv) their right to object to any aspect of the Settlement, the Plan of Allocation and/or Lead Counsel's motion for attorneys' fees and Litigation Expenses; (v) their right to exclude themselves from the Settlement Class; and (vi) their right to appear at the Settlement Hearing; (d) constituted due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable law and rules.

6. **CAFA Notice -** The Court finds that the notice requirements set forth in the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, to the extent applicable to the Action, have been satisfied.

7. **Plan of Allocation** – Notice of the proposed Plan of Allocation and of the date for the was given to all Settlement Class Members who could be identified with reasonable effort. Copies of the Notice, which included the Plan of Allocation, were mailed to over 103,000 potential Settlement Class Members and nominees and no objections to the proposed Plan of Allocation were received.

8. The Court hereby finds and concludes that the formula for the calculation of the claims of Claimants as set forth in the Plan of Allocation mailed to Settlement Class Members provides a fair and reasonable basis upon which to allocate the proceeds of the Net Settlement Fund among Settlement Class Members with due consideration having been given to administrative convenience and necessity.

9. The Court hereby finds and concludes that the Plan of Allocation is, in all respects, fair and reasonable to the Settlement Class. Accordingly, the Court hereby approves the Plan of Allocation proposed by Lead Plaintiff.

3

10. **Attorney Fees and Costs** – Notice of Lead Counsel's motion for an award of attorneys' fees and payment of Litigation Expenses was given to all Settlement Class Members who could be identified with reasonable effort. The form and method of notifying the Settlement Class of the motion for an award of attorneys' fees and expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-4(a)(7)), due process, and all other applicable law and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

11. Lead Counsel is hereby awarded attorneys' fees in the amount of 19% of the Settlement Fund (including interest earned at the same rate as the Settlement Fund). Lead Counsel is also hereby awarded $397,052.78 for payment of its litigation expenses. These attorneys' fees and expenses shall be paid from the Settlement Fund, subject to the holdback discussed below.

12. In making this award of attorneys' fees and reimbursement of expenses to be paid from the Settlement Fund, the Court has considered and found that:

a. The Settlement has created a fund of $39,000,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Settlement Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Lead Counsel;

b. The fee sought is based on a retainer agreement entered into by Lead Counsel and Lead Plaintiff at the outset of the litigation and the requested fee has been again reviewed and approved as reasonable by Lead Plaintiff, a sophisticated institutional investor that actively supervised the Action, at the conclusion of the Action;

c. Copies of the Notice were mailed to over 103,000 potential Settlement Class Members and nominees stating that Lead Counsel would apply for attorneys' fees in an amount not to exceed 19% of the Settlement Fund and payment of Litigation Expenses in an amount not to exceed $650,000 and no objections to the requested award of attorneys' fees or Litigation Expenses were submitted;

d. Lead Counsel conducted the litigation and achieved the Settlement with perseverance and diligent advocacy;

e. The Action raised a number of complex issues;

f. Had Lead Counsel not achieved the Settlement there would remain a significant risk that Lead Plaintiff and the other members of the Settlement Class may have recovered less or nothing from Defendants;

g. Lead Counsel devoted over 12,500 hours, with a lodestar value of approximately $6.7 million, to achieve the Settlement; and

4

h.      The amount of attorneys' fees awarded and expenses to be reimbursed from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

13.     Lead Plaintiff Arbejdsmarkedets Tillægspension is hereby awarded $127,400 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

14.     **Costs of Settlement Administration** – the court-appointed Settlement Administrator A.B. Data shall be reimbursed reasonable expenses up to $450,000.  Any expenses in excess of that amount shall be justified by a declaration in support and submitted to the Court for its approval.

15.     **Final Settlement Approval and Dismissal of Claims** – Pursuant to, and in accordance with, Rule 23(e)(2) of the Federal Rules of Civil Procedure, this Court hereby fully and finally approves the Settlement set forth in the Stipulation in all respects (including, without limitation, the amount of the Settlement, the Releases provided for therein, and the dismissal with prejudice of the claims asserted against Defendants in the Action), and finds that the Settlement is, in all respects, fair, reasonable and adequate, and in the best interests of the Settlement Class. Specifically, the Court finds that (a) Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class; (b) the Settlement was negotiated by the Parties at arm's length; (c) the relief provided for the Settlement Class under the Settlement is adequate taking into account the costs, risks, and delay of trial and appeal, the proposed means of distributing the Settlement Fund to the Settlement Class, and the proposed attorneys' fee award; and (d) the Settlement treats members of the Settlement Class equitably relative to each other. The Parties are directed to implement, perform, and consummate the Settlement in accordance with the terms and provisions contained in the Stipulation.

16.     The Action and all of the claims asserted against Defendants in the Action by Lead Plaintiff and Settlement Class Members are hereby dismissed with prejudice as to all Defendants. The Parties shall bear their own costs and expenses, except as otherwise expressly provided in the Stipulation.

5

17. **Binding Effect** – The terms of the Stipulation and of this Order and the judgment entered shall be forever binding on Defendants, Lead Plaintiff, and all Settlement Class Members (regardless of whether or not any individual Settlement Class Member submits a Claim or seeks or obtains a distribution from the Net Settlement Fund), as well as their respective successors and assigns. The persons and entities listed on Exhibit 1 hereto are excluded from the Settlement Class pursuant to request and are not bound by the terms of the Stipulation or this Order and the judgment entered.

18. **Releases** – The Releases set forth in paragraphs 5 and 6 of the Stipulation, together with the definitions contained in paragraph 1 of the Stipulation relating thereto, are expressly incorporated herein. The Releases are effective as of the Effective Date. Accordingly, this Court orders that:

(a) Without further action by anyone, and subject to paragraph 11 below, upon the Effective Date of the Settlement, Lead Plaintiff and each of the other Settlement Class Members, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have, and by operation of law and this Order and the judgment entered shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Plaintiffs' Claim against Defendants and the other Defendants' Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiffs' Claims against any of the Defendants' Releasees. This release shall not apply to any person or entity listed on Exhibit 1 hereto.

(b) Without further action by anyone, and subject to paragraph 11 below, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have, and by operation of law and of this Order and the judgment entered shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Defendants' Claim against Lead Plaintiff and the other Plaintiffs' Releasees, and shall forever be barred and enjoined from prosecuting any or all of the

6

Released Defendants' Claims against any of the Plaintiffs' Releasees. This release shall not apply to any person or entity listed on Exhibit 1 hereto.

19.    Notwithstanding paragraphs 10(a) – (b) above, nothing in this Order shall bar any action by any of the Parties to enforce or effectuate the terms of the Stipulation or this Order and the judgment entered.

20.    **Rule 11 Findings** – The Court finds and concludes that the Parties and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and settlement of the Action.

21.    **No Admissions** – Neither this Order and the judgment entered, the Term Sheet, the Stipulation (whether or not consummated), including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the Parties' mediation and subsequent Settlement, the communications and/or discussions leading to the execution of the Term Sheet and this Stipulation, nor any proceedings taken pursuant to or in connection with the Term Sheet, the Stipulation, and/or approval of the Settlement (including any arguments proffered in connection therewith): (a) shall be offered against any of the Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants' Releasees with respect to the truth of any fact alleged by Lead Plaintiff or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants' Releasees or in any way referred to for any other reason as against any of the Defendants' Releasees, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; (b) shall be offered against any of the Plaintiffs' Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Plaintiffs' Releasees that any of their claims are without merit, that any of the Defendants' Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount

United States District Court
Northern District of California

or with respect to any liability, negligence, fault, or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Plaintiffs' Releasees, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; or (c) shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; *provided, however*, that if the Stipulation is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.

22. **Retention of Jurisdiction** – Without affecting the finality of this Order and the judgment entered in any way, this Court retains continuing and exclusive jurisdiction over: (a) the Parties for purposes of the administration, interpretation, implementation, and enforcement of the Settlement; (b) the disposition of the Settlement Fund; (c) any motion for attorneys' fees and/or Litigation Expenses by Lead Counsel in the Action that will be paid from the Settlement Fund; (d) any motion to approve the Plan of Allocation; (e) any motion to approve the Class Distribution Order; and (f) the Settlement Class Members for all matters relating to the Action.

23. **Modification of the Agreement of Settlement** – Without further approval from the Court, Lead Plaintiff and Defendants are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this Order and the judgment entered; and (b) do not materially limit the rights of Settlement Class Members in connection with the Settlement. Without further order of the Court, Lead Plaintiff and Defendants may agree to reasonable extensions of time to carry out any provisions of the Settlement.

24. **Termination of Settlement** – If the Settlement is terminated as provided in the Stipulation or the Effective Date of the Settlement otherwise fails to occur, this Order and the judgment entered shall be vacated, rendered null and void, and be of no further force and effect, except as otherwise provided by the Stipulation, and this Order shall be without prejudice to the rights of Lead Plaintiff, the other Settlement Class Members, and Defendants, and the Parties shall

United States District Court
Northern District of California

8

revert to their respective litigation positions in the Action immediately prior to the execution of the Term Sheet on March 14, 2023, as provided in the Stipulation.

25. **<u>Post Distribution Accounting</u>** – Class counsel shall file a post-distribution accounting within 21 days after the distribution of settlement funds. In addition to the information contained in the Northern District of California's Procedural Guidance for Class Action Settlements, available at https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/, the post-distribution accounting shall discuss any significant or recurring concerns communicated by class members to the settlement administrator or counsel since final approval, any other issues in settlement administration since final approval, and how any concerns or issues were resolved, the final costs of claims administrator, and any modifications of the Settlement Agreement and this Order under paragraph 23 above.

26. The Court directs the Claims Administrator to withhold 20% of the attorney's fees granted in this order until the post-distribution accounting has been filed. Class counsel shall file a proposed order releasing the remainder of the fees when they file their post-distribution accounting.

27. This matter is set for a further case management conference on July 10, 2024, with a case management statement due on July 3, 2024. The parties may request that the case management conference be continued if additional time is needed to complete the distribution. The conference will be vacated if the post-distribution accounting has been filed and the Court has released the remaining attorney's fees.

**IT IS SO ORDERED.**

Dated: November 14, 2023



William H. Orrick
United States District Judge

United States District Court<br>Northern District of California

9

**Exhibit 1**
**[List of Persons and Entities Excluded from the Settlement Class Pursuant to Request]**

1. James C. Collins
   Ramona, CA

2. Benjamin E. and Kathleen M. Ramp Living Trust U/A 12/17/15
   Benjamin E. Ramp & Kathleen M. Ramp, Trustees
   Geneseo, IL

United States District Court
Northern District of California

10

# EXHIBIT 9E

Case 3:14-cv-00682-JAG-RCY   Document 214   Filed 09/26/16   Page 1 of 10 PageID# 8220

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

## Richmond Division

IN RE: GENWORTH FINANCIAL
SECURITIES LITIGATION                              Civil Case No.: 3:14-cv-682-JAG

## JUDGMENT APPROVING CLASS ACTION SETTLEMENT

WHEREAS, a class action is pending in this Court entitled *In re Genworth Financial, Inc. Securities Litigation*, Case No. 3:14-cv-00682 (E.D. Va.) (the "Action");

WHEREAS, (a) Lead Plaintiffs Her Majesty the Queen in Right of Alberta and Fresno County Employees' Retirement Association ("Lead Plaintiffs"), on behalf of themselves and the Settlement Class (defined below), and (b) defendants Genworth Financial, Inc. ("Genworth"), and Thomas J. McInerney and Martin P. Klein (collectively, the "Individual Defendants," and, together with Genworth, the "Defendants"; and together with Lead Plaintiffs, the "Parties") have entered into a Stipulation and Agreement of Settlement (the "Stipulation") (Dk. No. 196-1), that provides for a complete dismissal with prejudice of the claims asserted against Defendants in the Action on the terms and conditions set forth in the Stipulation, subject to the approval of this Court (the "Settlement");

WHEREAS, unless otherwise defined in this Judgment, the capitalized terms herein shall have the same meaning as they have in the Stipulation;

WHEREAS, by Order dated April 18, 2016 (the "Preliminary Approval Order") (Dk. No. 201), this Court: (a) preliminarily approved the Settlement; (b) provisionally certified the Settlement Class solely for purposes of effectuating the Settlement; (c) ordered that notice of the

proposed Settlement be provided to potential Settlement Class Members; (d) provided Settlement Class Members with the opportunity either to exclude themselves from the Settlement Class or to object to the proposed Settlement; and (e) scheduled a hearing regarding final approval of the Settlement;

WHEREAS, due and adequate notice has been given to the Settlement Class;

WHEREAS, the Court conducted a hearing on July 20, 2016 (the "Settlement Hearing") to consider, among other things, (a) whether the terms and conditions of the Settlement are fair, reasonable and adequate to the Settlement Class, and should therefore be approved; and (b) whether a judgment should be entered dismissing the Action with prejudice as against the Defendants; and

WHEREAS, the Court having reviewed and considered the Stipulation, all papers filed and proceedings held herein in connection with the Settlement, all oral and written comments received regarding the Settlement, the record in the Action, and good cause appearing therefor;

For the reasons set forth in the accompanying Opinion, NOW THEREFORE IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. **Jurisdiction** – The Court has jurisdiction over the subject matter of the Action, and all matters relating to the Settlement, as well as personal jurisdiction over all of the Parties and each of the Settlement Class Members.

2. **Incorporation of Settlement Documents** – This Judgment incorporates and makes a part hereof the Stipulation and its exhibits filed with the Court on or about April 1, 2016.

3. **Class Certification for Settlement Purposes** – The Court hereby affirms its determinations in the Preliminary Approval Order certifying, for the purposes of the Settlement

2

only, the Action as a class action pursuant to Rules 23(a)(1)-(4), 23(b) and 23(e) of the Federal Rules of Civil Procedure on behalf of the Settlement Class consisting of all persons and entities who purchased or otherwise acquired the publicly traded Genworth Securities[1] during the Settlement Class Period, and were allegedly damaged thereby. Excluded from the Settlement Class are: (i) Defendants; (ii) Officers and directors of Genworth during the Settlement Class Period; (iii) members of the Immediate Families of the Individual Defendants and of the Officers and directors of Genworth; (iv) any entity in which any Defendant had and/or has a controlling interest during the Settlement Class Period; (v) Defendants' Directors and Officers Liability Program insurers for the period March 31, 2014 to March 31, 2015; (vi) any affiliates or subsidiaries of Genworth; and (vii) the legal representatives, heirs, agents, affiliates, successors or assigns of any excluded person or entity. Also excluded from the Settlement Class are the persons and entities listed on Exhibit 1 hereto who are excluded from the Settlement Class pursuant to their valid and timely requests for exclusion. Notwithstanding the foregoing, Genworth's employee retirement and benefit plan shall not be deemed an affiliate of any Defendant, except that any Claim submitted on behalf of Genworth's employee retirement and benefit plan shall be pro-rated to exclude the proportion owned by the Defendants and other specifically excluded Persons.

4. **Adequacy of Representation** – Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, the Court hereby affirms its

---

[1] "Genworth Securities" means the following securities: Genworth common stock (CUSIP No. 37247D106) and Fixed Senior Unsecured Notes due 5/22/2018; Fixed Senior Unsecured Notes due 6/15/2020; Fixed Senior Unsecured Notes due 2/15/2021; Fixed Senior Unsecured Notes due 9/24/2021; Fixed Senior Unsecured Notes due 8/15/2023; Fixed Senior Unsecured Notes due 2/15/2024; Fixed Senior Unsecured Notes due 6/15/2034; and Variable Junior Subordinated Notes due 11/15/2066 (the "Genworth Bonds").

determinations in the Preliminary Approval Order certifying Lead Plaintiffs as Class Representatives for the Settlement Class and appointing Lead Counsel as Class Counsel for the Settlement Class. Lead Plaintiffs and Lead Counsel have fairly and adequately represented the Settlement Class both in terms of litigating the Action and for purposes of entering into and implementing the Settlement and have satisfied the requirements of Federal Rules of Civil Procedure 23(a)(4) and 23(g), respectively.

5.      **Notice** – The Court finds that the dissemination of the Notice and the publication of the Summary Notice: (a) were implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of (i) the pendency of the Action; (ii) the effect of the proposed Settlement (including the Releases to be provided thereunder); (iii) Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses; (iv) their right to object to any aspect of the Settlement, the Plan of Allocation and/or Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses; (v) their right to exclude themselves from the Settlement Class; and (vi) their right to appear at the Settlement Hearing; (d) constituted due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable law and rules.

6.      **Final Settlement Approval and Dismissal of Claims** – Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, this Court hereby fully and finally approves the Settlement set forth in the Stipulation in all respects (including, without

4

limitation: the amount of the Settlement; the Releases provided for therein; and the dismissal with prejudice of the claims asserted against Defendants in the Action), and finds that the Settlement is, in all respects, fair, reasonable and adequate to the Settlement Class. The Parties are directed to implement, perform and consummate the Settlement in accordance with the terms and provisions contained in the Stipulation.

7. The Action and all of the claims asserted against Defendants in the Action by Lead Plaintiffs and the other Settlement Class Members are hereby dismissed with prejudice. The Parties shall bear their own costs and expenses, except as otherwise expressly provided in the Stipulation.

8. **Binding Effect** – The terms of the Stipulation and of this Judgment shall be forever binding on Defendants, Lead Plaintiffs and all other Settlement Class Members (regardless of whether or not any individual Settlement Class Member submits a Claim Form or seeks or obtains a distribution from the Net Settlement Fund), as well as their respective successors and assigns. The persons and entities listed on Exhibit 1 hereto are excluded from the Settlement Class pursuant to their valid and timely requests and are not bound by the terms of the Stipulation or this Judgment.

9. **Releases** – The Releases set forth in paragraphs 6 and 7 of the Stipulation, together with the definitions contained in paragraph 1 of the Stipulation relating thereto, are expressly incorporated herein in all respects. The Releases are effective as of the Effective Date. Accordingly, this Court orders that:

(a) Upon the Effective Date of the Settlement, the Releasing Plaintiffs (i) have and shall be deemed to have fully, finally, and forever waived, released, relinquished, discharged, and dismissed each and every one of the Released Plaintiffs' Claims against each

5

and every one of the Defendants' Releasees; (ii) have and shall be deemed to have covenanted not to sue, directly or indirectly, any of the Defendants' Releasees with respect to any and all of the Released Plaintiffs' Claims; and (iii) shall forever be barred and enjoined from directly or indirectly, filing, commencing, instituting, prosecuting, maintaining, or intervening in any action, suit, cause of action, arbitration, claim demand, or other proceeding in any jurisdiction, whether in the United States or elsewhere, on their own behalf or in a representative capacity, that is based upon or arises out of any or all of the Released Plaintiffs' Claims against any of the Defendants and the other Defendants' Releasees. All Releasing Plaintiffs shall be bound by the terms of the releases set forth in the Stipulation and this Judgment, whether or not they submit a valid and timely Claim Form, take any other action to obtain recovery from the Settlement Fund, or seek, or actually receive a distribution from the Net Settlement Fund.

(b) Upon the Effective Date of the Settlement, the Defendants' Releasees shall be deemed to have fully, finally and forever waived, released, discharged and dismissed each and every one of the Released Defendants' Claims against each and every one of the Lead Plaintiffs and the other Plaintiffs' Releasees, and shall forever be barred and enjoined from directly or indirectly, filing, commencing, instituting, prosecuting, maintaining, intervening in, participating in (as a class member or otherwise), or receiving any benefits or other relief, from any action, suit, cause of action, arbitration, claim, demand, or other proceeding in any jurisdiction, whether in the United States or elsewhere, on their own behalf or in a representative capacity, that is based upon, arises out of, or relates to any or all of the Released Defendants' Claims against any of the Lead Plaintiffs and the other Plaintiffs' Releasees. This Release shall not apply to any person or entity listed on Exhibit 1 hereto.

6

10. Notwithstanding paragraphs 9(a) – (b) above, nothing in this Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of the Stipulation or this Judgment.

11. **Rule 11 Findings** – Pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(c)(1), the Court finds and concludes that the Parties and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and settlement of the Action.

12. **No Admissions** – Neither this Judgment, the Term Sheet, the Stipulation (whether or not consummated), including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of the Term Sheet and the Stipulation, nor any proceedings taken pursuant to or in connection with the Term Sheet, the Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a) shall be offered against any of the Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants' Releasees with respect to the truth of any allegation by Lead Plaintiffs or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants' Releasees or in any way referred to for any other reason as against any of the Defendants' Releasees, in any civil, criminal or administrative action or proceeding;

7

(b)      shall be offered against any of the Plaintiffs' Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of the Plaintiffs' Releasees that any of their claims are without merit, that any of the Defendants' Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Plaintiffs' Releasees, in any civil, criminal or administrative action or proceeding; or

(c)      shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given under the Settlement represents the amount which could be or would have been recovered after trial;

(d)      *provided, however*, that, notwithstanding the foregoing, the Parties and the Releasees and their respective counsel may file or refer to the Stipulation or this Judgment in any action that may be brought to enforce the terms of the Stipulation or this Judgment.

13.      **Retention of Jurisdiction** – Without affecting the finality of this Judgment in any way, this Court retains continuing and exclusive jurisdiction over: (a) the Parties for purposes of the administration, interpretation, implementation and enforcement of the Settlement; (b) the disposition of the Settlement Fund; (c) any motion for an award of attorneys' fees and/or Litigation Expenses by Lead Counsel in the Action that will be paid from the Settlement Fund; (d) any motion to approve the Plan of Allocation; (e) any motion to approve the Class Distribution Order; and (f) the Settlement Class Members for all matters relating to the Action.

14.      Separate orders shall be entered regarding approval of a plan of allocation and the motion of Lead Counsel for an award of attorneys' fees and reimbursement of Litigation

8

Expenses. Such orders shall in no way affect or delay the finality of this Judgment and shall not affect or delay the Effective Date of the Settlement.

15. **Modification of the Agreement of Settlement** – Without further approval from the Court, Lead Plaintiffs and Defendants are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this Judgment; and (b) do not materially limit the rights of Settlement Class Members in connection with the Settlement. Without further order of the Court, Lead Plaintiffs and Defendants may agree to reasonable extensions of time to carry out any provisions of the Settlement.

16. **Termination of Settlement** – If the Settlement is terminated as provided in the Stipulation or the Effective Date of the Settlement otherwise fails to occur, this Judgment shall be vacated, rendered null and void and be of no further force and effect, except as otherwise provided by the Stipulation, and this Judgment shall be without prejudice to the rights of Lead Plaintiffs, the other Settlement Class Members and Defendants, and the Parties shall revert to their respective positions in the Action as of March 11, 2016, and funds returned, as provided in the Stipulation.

17. **Entry of Final Judgment** – There is no just reason to delay the entry of this Judgment as a final judgment in this Action. Accordingly, the Clerk of the Court is expressly DIRECTED to immediately enter this final judgment in this Action.

It is so ORDERED.

Let the Clerk send a copy of this Order to all counsel of record.

/s/

John A. Gibney, Jr.
United States District Judge

Date: September 26, 2016
Richmond, Virginia

10

Case 3:14-cv-00682-JAG-RCY   Document 214-1   Filed 09/26/16   Page 1 of 1 PageID# 8230

**Exhibit 1**

<u>**List of Persons and Entities Excluded from the Settlement Class Pursuant to Request**</u>

Geraldine Leimomi Olszowka-Martinez

# EXHIBIT 9F

Case 3:21-cv-00444-DJN Document 126-9 Filed 04/19/24 Page 65 of 586 PageID#
Case 1:17-cv-02587-ELR Document 102 Filed 07/21/20 Page 1 of 6
5253

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| IN RE HD SUPPLY HOLDINGS, INC. SECURITIES LITIGATION | CONSOLIDATED CASE NO. 1:17-CV-02587-ELR |

## ORDER AWARDING
## ATTORNEYS' FEES AND LITIGATION EXPENSES

This matter came on for hearing on July 21, 2020 (the "Settlement Hearing")
on Lead Plaintiffs' motion for attorneys' fees and litigation expenses. The Court
having considered all matters submitted to it at the Settlement Hearing and
otherwise; and it appearing that notice of the Settlement Hearing substantially in
the form approved by the Court was mailed to all Settlement Class Members who
or which could be identified with reasonable effort, and that a summary notice of
the hearing substantially in the form approved by the Court was published in
*Investor's Business Daily* and was transmitted over the *PR Newswire* pursuant to
the specifications of the Court; and the Court having considered and determined
the fairness and reasonableness of the award of attorneys' fees and litigation
expenses requested,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.     This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated January 30, 2020 (ECF No. 93-2) (the "Stipulation"), and all terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2.     The Court has jurisdiction to enter this Order and over the subject matter of the Action and all parties to the Action, including all Settlement Class Members.

3.     Notice of Lead Plaintiffs' motion for an award of attorneys' fees and litigation expenses was given to all Settlement Class Members who could be identified with reasonable effort. The form and method of notifying the Settlement Class of the motion for an award of attorneys' fees and litigation expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-4(a)(7)), due process, and all other applicable laws and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4.     Lead Plaintiffs' Counsel are hereby awarded attorneys' fees in the amount of 30% of the Settlement Fund or $15,000,000, plus interest earned at the same rate and for the same time period as the Settlement Fund, and $299,831.43 in reimbursement of litigation expenses (which fees and expenses shall be paid from

2

the Settlement Fund), which sums the Court finds to be fair and reasonable. Lead Counsel shall allocate the attorneys' fees awarded amongst Lead Plaintiffs' Counsel in a manner which it, in good faith, believes reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.

5. In making this award of attorneys' fees and litigation expenses to be paid from the Settlement Fund, the Court has considered and found that:

a) The Settlement has created a fund of $50,000,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Settlement Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Lead Plaintiffs' Counsel;

b) The fee sought is based on retainer agreements entered into between Lead Plaintiffs, sophisticated institutional investors that actively supervised the Action, and Lead Counsel at the outset of the Action; and the requested fee has been reviewed and approved as reasonable by Lead Plaintiffs;

c) Copies of the Notice were mailed to 62,137 potential Settlement Class Members and nominees stating that Lead Counsel would apply for attorneys' fees in an amount not to exceed 30% of the Settlement

3

Fund and for litigation expenses in an amount not to exceed $475,000, and no objections to the requested attorneys' fees and expenses were received;

d)     Lead Counsel conducted the litigation and achieved the Settlement with skill, perseverance, and diligent advocacy;

e)     The Action raised a number of complex issues;

f)     Had Lead Counsel not achieved the Settlement there would remain a significant risk that Lead Plaintiffs and the other members of the Settlement Class may have recovered less or nothing from Defendants;

g)     Lead Plaintiffs' Counsel devoted over 13,400 hours, with a lodestar value of over $6.6 million, to achieve the Settlement; and

h)     The amount of attorneys' fees awarded and expenses to be reimbursed from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

6.     In accordance with 15 U.S.C. § 78u-4(a)(4), Lead Plaintiff City Pension Fund for Firefighters & Police Officers in the City of Miami Beach is hereby awarded $8,208.00 from the Settlement Fund, Lead Plaintiff Pembroke Pines Pension Fund for Firefighters and Police Officers is hereby awarded $9,855.72 from the Settlement Fund, and Lead Plaintiff Hollywood Police Officers' Retirement System is hereby awarded $9,007.43 from the Settlement

4

Fund, as reimbursement for their reasonable costs and expenses directly related to their representation of the Settlement Class.

7.     Pursuant to Paragraph 12 of the Stipulation, the attorneys' fees and Litigation Expenses awarded above shall be paid to Lead Counsel from the Settlement Fund immediately upon award subject to the terms, conditions and obligations as set forth in the Stipulation.

8.     Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

9.     Exclusive jurisdiction is hereby retained over the parties and the Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

10.     In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

11.     There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this _____21st_____ day of ___July_____, 2020.


_____

The Honorable Eleanor L. Ross
United States District Judge

# EXHIBIT 9G

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE HENRY SCHEIN, INC. SECURITIES LITIGATION** | **Master File No. 1:18-cv-01428-MKB-VMS**<br><br>**CLASS ACTION** |

**ORDER APPROVING**
**CLASS-ACTION SETTLEMENT**

WHEREAS Lead Plaintiff City of Miami General Employees' & Sanitation Employees' Retirement Trust, on behalf of itself and the Class (as defined below), and defendants Henry Schein, Inc. and Timothy J. Sullivan have entered into a Stipulation of Settlement to settle the claims asserted in this Action; and

WHEREAS Lead Plaintiff and Defendants have applied to the Court pursuant to Fed. R. Civ. P. 23(e) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA") for an Order granting final approval of the proposed settlement in accordance with the Stipulation of Settlement (including its exhibits) (the "Settlement Agreement"), which sets forth the terms and conditions of the proposed settlement (the "Settlement"); and

WHEREAS, on May 5, 2020, the Court entered an Order preliminarily approving the proposed Settlement, preliminarily certifying the Class for settlement purposes, directing notice to be sent and published to potential Class Members, and scheduling a hearing (the "Fairness Hearing") to consider whether to approve the proposed Settlement, the proposed Plan of Allocation, Lead Counsel's application for an Attorneys' Fees and Expenses Award, and Lead Plaintiff's application for a PSLRA Award; and

WHEREAS the Court held the Fairness Hearing on September 16, 2020 to determine, among other things, (*i*) whether the terms and conditions of the proposed Settlement are fair, reasonable, and adequate and should therefore be approved; (*ii*) whether the Class should be finally certified for settlement purposes; (*iii*) whether notice to the Class was implemented pursuant to the Preliminary Approval Order and constituted due and adequate notice to potential Class Members in accordance with the Federal Rules of Civil Procedure, the PSLRA, the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law; (*iv*) whether to approve the proposed Plan of Allocation; (*v*) whether to enter an order and judgment dismissing the Action on the merits and with prejudice as to Defendants and against all Class Members, and releasing all the Released Class Claims and Released Releasees' Claims as provided in the Settlement Agreement; (*vi*) whether to enter the requested permanent injunction and bar orders as provided in the Settlement Agreement; (*vii*) whether and in what amount to grant an Attorneys' Fees and Expenses Award to Lead Counsel; and (*viii*) whether and in what amount to grant a PSLRA Award to Lead Plaintiff; and

WHEREAS the Court received submissions and heard argument at the Fairness Hearing;

NOW, THEREFORE, based on the written submissions received before the Fairness Hearing, the arguments at the Fairness Hearing, and the other materials of record in this action, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

1.      **Incorporation of Settlement Documents.**  This Order incorporates and makes a part hereof the Settlement Agreement dated as of April 30, 2020, including its defined terms.  To

2

the extent capitalized terms are not defined in this Order, this Court adopts and incorporates the definitions set out in the Settlement Agreement.[1]

2. **Jurisdiction.** The Court has jurisdiction over the subject matter of the Action, the Lead Plaintiff, and all other Class Members (as defined below) and has jurisdiction to enter this Order and the Judgment.

3. **Final Class Certification**. The Court grants certification of the Class solely for purposes of the Settlement pursuant to Fed. R. Civ. P. 23(b)(3). The Class is defined to consist of all persons and entities who purchased or otherwise acquired Schein Common Stock during the period from March 7, 2013 through February 12, 2018, inclusive, and who were damaged thereby. Excluded from the Class are:

a. such persons or entities who submitted valid and timely requests for exclusion from the Class;

b. such persons or entities who, while represented by counsel, settled an actual or threatened lawsuit or other proceeding against one or more of the Releasees arising out of or related to the Released Class Claims; and

c. Schein and (*i*) all officers and directors of Schein currently and during the Class Period (including Stanley Bergman, Steven Paladino, and Timothy J. Sullivan), (*ii*) Schein's Affiliates, subsidiaries, successors, and predecessors, (*iii*) any entity in which Schein or any individual identified in (*i*) has or had during the Class Period a Controlling Interest, and (*iv*) for the individuals identified in (*i*), (*ii*), and/or (*iii*), their Family Members, legal representatives, heirs, successors, and assigns.

---

[1] Select definitions from the Settlement Agreement are set out in the Appendix to this Order.

3

4.     This certification of the Class is made for the sole purpose of consummating the Settlement of the Action in accordance with the Settlement Agreement.  If the Court's approval of the Settlement does not become Final for any reason whatsoever, or if it is modified in any material respect deemed unacceptable by a Settling Party, this class certification shall be deemed void ab initio, shall be of no force or effect whatsoever, and shall not be referred to or used for any purpose whatsoever, including in any later attempt by or on behalf of Lead Plaintiff or anyone else to seek class certification in this or any other matter.

5.     For purposes of the settlement of the Action, and only for those purposes, the Court finds that the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3), and any other applicable laws (including the PSLRA) have been satisfied, in that:

a.     The Class is ascertainable from business records and/or from objective criteria;

b.     The Class is so numerous that joinder of all members would be impractical;

c.     One or more questions of fact and law are common to all Class Members;

d.     Lead Plaintiff's claims are typical of those of the other members of the Class;

e.     Lead Plaintiff has been and is capable of fairly and adequately protecting the interests of the members of the Class, in that (*i*) Lead Plaintiff's interests have been and are consistent with those of the other Class Members, (*ii*) Lead Counsel has been and is able and qualified to represent the Class, and (*iii*) Lead Plaintiff and Lead Counsel have fairly and adequately represented the Class Members in prosecuting this Action and in negotiating and entering into the proposed Settlement; and

4

f.      For settlement purposes, questions of law and/or fact common to members of the Class predominate over any such questions affecting only individual Class Members, and a class action is superior to all other available methods for the fair and efficient resolution of the Action.  In making these findings for settlement purposes, the Court has considered, among other things, (*i*) the questions of law and fact pled in the Complaint, (*ii*) the Class Members' interest in the fairness, reasonableness, and adequacy of the proposed Settlement, (*iii*) the Class Members' interests in individually controlling the prosecution of separate actions, (*iv*) the impracticability or inefficiency of prosecuting separate actions, (*v*) the extent and nature of any litigation concerning these claims already commenced, and (*vi*) the desirability of concentrating the litigation of the claims in a particular forum.

6.      **Final Certification of Lead Plaintiff and Appointment of Lead Counsel for Settlement Purposes**.  Solely for purposes of the proposed Settlement, the Court hereby confirms its (*i*) certification of Lead Plaintiff as representative of the Class and (*ii*) appointment of Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel for the Class pursuant to Fed. R. Civ. P. 23(g).

7.      **Notice.**  The Court finds that the distribution of the Individual Notice and Claim Form, the publication of the Summary Notice, and the notice methodology as set forth in the Preliminary Approval Order all were implemented in accordance with the terms of that Order. The Court further finds that the Individual Notice, the Claim Form, the Summary Notice, and the notice methodology (*i*) constituted the best practicable notice to potential Class Members, (*ii*) constituted notice that was reasonably calculated, under the circumstances, to apprise potential Class Members of the pendency of the Action, the nature and terms of the proposed Settlement, the effect of the Settlement Agreement (including the release of claims), their right to

5

object to the proposed Settlement, their right to exclude themselves from the Class, and their right to appear at the Fairness Hearing, (*iii*) were reasonable and constituted due, adequate, and sufficient notice to all persons or entities entitled to receive notice (including any State and/or federal authorities entitled to receive notice under the Class Action Fairness Act of 2005), and (*iv*) met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the PSLRA, the Rules of the Court, and any other applicable law.

8. **Final Settlement Approval.** The Court finds that the proposed Settlement resulted from serious, informed, non-collusive negotiations conducted at arm's length by the Settling Parties and their experienced counsel – under the auspices of a retired California Superior Court Judge serving as mediator – and was entered into in good faith. The terms of the Settlement Agreement do not have any material deficiencies, do not improperly grant preferential treatment to any individual Class Member, and treat Class Members equitably relative to each other. Accordingly, the proposed Settlement as set forth in the Settlement Agreement is hereby fully and finally approved as fair, reasonable, and adequate, consistent and in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the PSLRA, and the Rules of the Court, and in the best interests of the Class Members.

9. The Court hereby finds that the proposed Plan of Allocation is a fair and reasonable method to allocate the Net Settlement Amount among eligible Class Members.

10. In making these findings and in concluding that the relief provided to the Class is fair, reasonable, and adequate, the Court considered, among other factors, (*i*) the complexity, expense, and likely duration of the litigation if it were to continue, including the costs, risks, and

delay of trial and appeal; (*ii*) the reaction of the potential Class Members to the proposed

Settlement, including the number of exclusion requests and the number of objections; (*iii*) the

stage of the proceedings, the maturity of the Antitrust Proceedings, and the amount of discovery

and other materials available to Lead Counsel, including the Due-Diligence Discovery provided

to Lead Counsel; (*iv*) the risks of establishing liability and damages, including the nature of the

claims asserted and the strength of Lead Plaintiff's claims and Defendants' defenses as to

liability and damages; (*v*) Lead Plaintiff's risks of obtaining certification of a litigation class and

of maintaining certification through trial; (*vi*) the ability of Defendants to withstand a greater

judgment; (*vii*) the range of reasonableness of the Settlement Amount in light of the best possible

recovery; (*viii*) the range of reasonableness of the Settlement Amount to a possible recovery in

light of all the attendant risks of litigation; (*ix*) the availability of opt-out rights for potential

Class Members who do not wish to participate in the Settlement; (*x*) the effectiveness of the

procedures for processing Class Members' claims for relief from the Settlement fund and

distributing such relief to eligible Class Members; (*xi*) the terms of the proposed award of

attorneys' fees, including the timing of the payment; (*xii*) the terms of the Supplemental

Agreement; (*xiii*) the treatment of Class Members relative to each other; (*xiv*) the involvement of

a respected and experienced mediator (retired California Superior Court Judge Daniel

Weinstein); (*xv*) the experience and views of the Settling Parties' counsel; (*xvi*) the submissions

and arguments made throughout the proceedings by the Settling Parties; and (*xvii*) the

submissions and arguments made at and in connection with the Fairness Hearing.

11.     The Settling Parties are directed to implement and consummate the Settlement

Agreement in accordance with its terms and provisions.  The Court approves the documents

submitted to the Court in connection with the implementation of the Settlement Agreement.

12.     **Releases.**  Pursuant to this Approval Order and the Judgment, without further action by anyone, and subject to paragraph 15 below, on and after the Final Settlement Date, Lead Plaintiff and all other Class Members (whether or not a Claim Form has been executed and/or delivered by or on behalf of any such Class Member), on behalf of themselves and the other Releasors, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of this Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged:

a.     all Released Class Claims against each and every one of the Releasees;

b.     all Claims, damages, and liabilities as to each and every one of the Releasees to the extent that any such Claims, damages, or liabilities relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, (*i*) the prosecution, defense, or settlement of the Action, (*ii*) the Settlement Agreement or its implementation, (*iii*) the Settlement terms and their implementation, (*iv*) the provision of notice in connection with the proposed Settlement, and/or (*v*) the resolution of any Claim Forms submitted in connection with the Settlement; and

c.     all Claims against any of the Releasees for attorneys' fees, costs, or disbursements incurred by Plaintiffs' Counsel or any other counsel representing Lead Plaintiff or any other Class Member in connection with or related in any manner to the Action, the settlement of the Action, or the administration of the Action and/or its Settlement, except to the extent otherwise specified in the Settlement Agreement.

13.     Pursuant to this Order and the Judgment, without further action by anyone, and subject to paragraph 15 below, on and after the Final Settlement Date, each and every Releasee, including Defendants' Counsel, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of this Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged each and all Releasors, including Lead Counsel, from any and all Released Releasees' Claims, except to the extent otherwise specified in the Settlement Agreement.

14.     Pursuant to this Order and the Judgment, without further action by anyone, and subject to paragraph 15 below, on and after the Final Settlement Date, Plaintiffs' Counsel and any other counsel representing Lead Plaintiff or any other Class Member in connection with or related in any manner to the Action, on behalf of themselves, their heirs, executors, administrators, predecessors, successors, Affiliates, and assigns, and any person or entity claiming by, through, or on behalf of any of them, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of this Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged Defendants, Defendants' Counsel, and all other Releasees from any and all Claims that relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, (*i*) the prosecution, defense, or settlement of the Action, (*ii*) the Settlement Agreement or its implementation, or (*iii*) the Settlement terms and their implementation.

9

15.     Notwithstanding paragraphs 12 through 14 above, nothing in this Order or in the Judgment shall bar any action or Claim by the Settling Parties or their counsel to enforce the terms of the Settlement Agreement, this Order, or the Judgment.

16.     **Permanent Injunction.**  The Court orders as follows:

a.     Lead Plaintiff and all other Class Members (and their attorneys, accountants, agents, heirs, executors, administrators, trustees, predecessors, successors, Affiliates, representatives, and assigns) who have not validly and timely requested exclusion from the Class – and anyone else purporting to act on behalf of, for the benefit of, or derivatively for any of such persons or entities – are permanently enjoined from filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefit or other relief from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding (as well as a motion or complaint in intervention in the Action if the person or entity filing such motion or complaint in intervention purports to be acting as, on behalf of, for the benefit of, or derivatively for any of the above persons or entities) or order, in any jurisdiction or forum, as to the Releasees based on or relating to the Released Class Claims;

b.     All persons and entities are permanently enjoined from filing, commencing, or prosecuting any other lawsuit as a class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction) or other proceeding on behalf of any Class Members as to the Releasees, if such other lawsuit is based on or related to the Released Class Claims; and

c.     All Releasees, and anyone purporting to act on behalf of, for the benefit of, or derivatively for any such persons or entities, are permanently enjoined from commencing,

10

prosecuting, intervening in, or participating in any claims or causes of action relating to Released Releasees' Claims.

17.     Notwithstanding paragraph 16 above, nothing in this Order or in the Judgment shall bar any action or Claim by the Settling Parties or their counsel to enforce the terms of the Settlement Agreement, this Order, or the Judgment.

18.     **Contribution Bar Order.**  In accordance with 15 U.S.C. § 78u-4(f)(7)(A), any and all Claims for contribution arising out of any Released Class Claim (*i*) by any person or entity against any of the Releasees and (*ii*) by any of the Releasees against any person or entity other than as set out in 15 U.S.C. § 78u-4(f)(7)(A)(ii) are hereby permanently barred, extinguished, discharged, satisfied, and unenforceable.  Accordingly, without limitation to any of the above, (*i*) any person or entity is hereby permanently enjoined from commencing, prosecuting, or asserting against any of the Releasees any such Claim for contribution, and (*ii*) the Releasees are hereby permanently enjoined from commencing, prosecuting, or asserting against any person or entity any such Claim for contribution.  In accordance with 15 U.S.C. § 78u-4(f)(7)(B), any Final verdict or judgment that might be obtained by or on behalf of the Class or a Class Member against any person or entity for loss for which such person or entity and any Releasee are found to be jointly liable shall be reduced by the greater of (*i*) an amount that corresponds to such Releasee's or Releasees' percentage of responsibility for the loss to the Class or Class Member or (*ii*) the amount paid by or on behalf of Defendants to the Class or Class Member for common damages, unless the court entering such judgment orders otherwise.

19.     **Complete Bar Order.**  To effectuate the Settlement, the Court hereby enters the following Complete Bar:

11

a. Any and all persons and entities are permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any Releasee arising under any federal, state, or foreign statutory or common-law rule, however styled, whether for indemnification or contribution or otherwise denominated, including Claims for breach of contract or for misrepresentation, where the Claim is or arises from a Released Class Claim and the alleged injury to such person or entity arises from that person's or entity's alleged liability to the Class or any Class Member, including any Claim in which a person or entity seeks to recover from any of the Releasees ($i$) any amounts that such person or entity has or might become liable to pay to the Class or any Class Member and/or ($ii$) any costs, expenses, or attorneys' fees from defending any Claim by the Class or any Class Member. All such Claims are hereby extinguished, discharged, satisfied, and unenforceable, subject to a hearing to be held by the Court, if necessary. The provisions of this subparagraph are intended to preclude any liability of any of the Releasees to any person or entity for indemnification, contribution, or otherwise on any Claim that is or arises from a Released Class Claim and where the alleged injury to such person or entity arises from that person's or entity's alleged liability to the Class or any Class Member; *provided, however,* that, if the Class or any Class Member obtains any judgment against any such person or entity based upon, arising out of, or relating to any Released Class Claim for which such person or entity and any of the Releasees are found to be jointly liable, that person or entity shall be entitled to a judgment credit equal to an amount that is the greater of ($i$) an amount that corresponds to such Releasee's or Releasees' percentage of responsibility for the loss to the Class or Class Member and ($ii$) the amount paid by or on behalf of Defendants to the Class or Class Member for common damages, unless the court entering such judgment orders otherwise.

b.  Each and every Releasee is permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any other person or entity (including any other Releasee) arising under any federal, state, or foreign statutory or common-law rule, however styled, whether for indemnification or contribution or otherwise denominated, including Claims for breach of contract and for misrepresentation, where the Claim is or arises from a Released Class Claim and the alleged injury to such Releasee arises from that Releasee's alleged liability to the Class or any Class Member, including any Claim in which any Releasee seeks to recover from any person or entity (including another Releasee) (*i*) any amounts that any such Releasee has or might become liable to pay to the Class or any Class Member and/or (*ii*) any costs, expenses, or attorneys' fees from defending any Claim by the Class or any Class Member.  All such Claims are hereby extinguished, discharged, satisfied, and unenforceable.

c.  Notwithstanding anything stated in the Complete Bar Order, if any person or entity (for purposes of this subparagraph, a "petitioner") commences against any of the Releasees any action either (*i*) asserting a Claim that is or arises from a Released Class Claim and where the alleged injury to such petitioner arises from that petitioner's alleged liability to the Class or any Class Member or (*ii*) seeking contribution or indemnity for any liability or expenses incurred in connection with any such Claim, and if such action or Claim is not barred by a court pursuant to this paragraph 19 or is otherwise not barred by the Complete Bar Order, neither the Complete Bar Order nor the Settlement Agreement shall bar Claims by that Releasee against (*i*) such petitioner, (*ii*) any person or entity who is or was controlled by, controlling, or under common control with the petitioner, whose assets or estate are or were controlled, represented, or administered by the petitioner, or as to whose Claims the petitioner has succeeded, and (*iii*) any person or entity that participated with any of the preceding persons or entities described in

13

items (*i*) and/or (*ii*) of this subparagraph in connection with the assertion of the Claim brought against the Releasee(s).

d. If any term of the Complete Bar Order entered by the Court is held to be unenforceable after the date of entry, such provision shall be substituted with such other provision as may be necessary to afford all of the Releasees the fullest protection permitted by law from any Claim that is based upon, arises out of, or relates to any Released Class Claim.

e. For avoidance of doubt, nothing in the Contribution Bar Order or Complete Bar Order shall (*i*) expand the release provided by Class Members and other Releasors to the Releasees under Paragraph 12 above or (*ii*) bar any persons who are excluded from the Class by definition or by request from asserting any Released Class Claim against any of the Releasees. Notwithstanding the Complete Bar Order or anything else in the Settlement Agreement, (*i*) nothing shall prevent the Settling Parties from taking such steps as are necessary to enforce the terms of the Settlement Agreement, and (*ii*) nothing shall release, interfere with, limit, or bar the assertion by any Releasee of any Claim for insurance coverage under any insurance, reinsurance, or indemnity policy that provides coverage respecting the conduct and Claims at issue in the Action.

20. **No Admissions.** This Order and the Judgment, the Settlement Agreement, the offer of the Settlement Agreement, and compliance with the Judgment or the Settlement Agreement shall not constitute or be construed as an admission by any of the Releasees of any wrongdoing or liability, or by any of the Releasors of any infirmity in Lead Plaintiff's Claims. This Order, the Judgment, and the Settlement Agreement are to be construed solely as a reflection of the Settling Parties' desire to facilitate a resolution of the Claims in the Complaint and of the Released Class Claims. In no event shall this Order, the Judgment, the Settlement

14

Agreement, any of their provisions, or any negotiations, statements, or court proceedings relating to their provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Action, any other action, or any judicial, administrative, regulatory, or other proceeding, except a proceeding to enforce the Settlement Agreement. Without limiting the foregoing, this Order, the Judgment, the Settlement Agreement, and any related negotiations, statements, or court proceedings shall not be construed as, offered as, received as, used as, or deemed to be evidence or an admission or concession (*i*) of any kind against the Settling Parties or the other Releasees and Releasors in the Action, any other action, or any judicial, administrative, regulatory, or other proceeding or (*ii*) of any liability or wrongdoing whatsoever on the part of any person or entity, including Defendants, or as a waiver by Defendants of any applicable defense, or (*iii*) by Lead Plaintiff or the Class of the infirmities of any claims, causes of action, or remedies.

21.     Notwithstanding anything in paragraph 20 above, this Order, the Judgment, and/or the Settlement Agreement may be filed in any action against or by any Releasee to support a defense of *res judicata*, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, injunction, full faith and credit, or any other theory of claim preclusion, issue preclusion, or similar defense or counterclaim.

22.     **Attorneys' Fees and Expenses Award.** Plaintiffs' Counsel are hereby awarded attorneys' fees in the amount of 25% of the Settlement Fund and expenses in the amount of $102,840.56. Those amounts shall be paid out of the Settlement Fund (as that term is defined in the Settlement Agreement) pursuant to the terms set out in Section X of the Settlement Agreement. The Court finds that the Attorneys' Fees and Expenses Award is fair, reasonable, and appropriate.

23. In making this award of attorneys' fees and reimbursement of expenses, the Court has considered and found that: (a) the Settlement has created a fund of $35 million that has been paid into escrow pursuant to the terms of the Settlement and that numerous Class Members who submit acceptable Claim Forms will benefit from the Settlement; (b) the fee sought by Lead Counsel has been reviewed and approved as fair and reasonable by Lead Plaintiff; (c) copies of the Individual Notice, which were mailed to all potential Class Members who could be identified with reasonable effort, stated that Lead Counsel would apply for attorneys' fees in an amount not to exceed 25% of the Settlement Fund and reimbursement of Litigation Expenses in an amount not to exceed $200,000; (d) Plaintiffs' Counsel conducted the litigation and achieved the Settlement with skill, perseverance, and diligent advocacy; (e) the Action raised complex issues; (f) the Action presented significant risks to establishing liability and damages; and (g) the amount of attorneys' fees and expenses is fair and reasonable and consistent with awards in similar cases. The Court has considered the single objection submitted to the request for fees and expenses and finds the objection to be without merit.

24. **PSLRA Award.** The Court finds that the requested PSLRA Award of $6,000 to the Lead Plaintiff is reasonable in the circumstances. This amount shall be paid out of the Settlement Fund pursuant to the terms set out in Section XI of the Settlement Agreement.

25. **Modification of Settlement Agreement.** Without further approval from the Court, the Settling Parties are hereby authorized to agree to and adopt such amendments, modifications, and expansions of the Settlement Agreement (including its exhibits) that (*i*) are not materially inconsistent with this Order and the Judgment and (*ii*) do not materially limit the rights of Class Members under the Settlement Agreement.

16

26.  **Dismissal of Action.**  The Action, including all Claims that have been asserted, is hereby dismissed on the merits and with prejudice, without fees or costs to any Settling Party except as otherwise provided in the Settlement Agreement.

27.  **Retention of Jurisdiction.**  Without in any way affecting the finality of this Order and the Judgment, and subject to the Mediator's ability to make final, binding, and nonappealable rulings as prescribed in the Settlement Agreement, the Court expressly retains continuing and exclusive jurisdiction over the Settlement and all Settling Parties, the Class Members, and anyone else who appeared before this Court for all matters relating to the Action, including the administration, consummation, interpretation, implementation, or enforcement of the Settlement Agreement or of this Order and the Judgment, and for any other reasonably necessary purposes, including:

a.  enforcing the terms and conditions of the Settlement Agreement, this Order, and the Judgment (including the Complete Bar Order, the PSLRA Contribution Bar Order, and the permanent injunction);

b.  resolving any disputes, claims, or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement, this Order, or the Judgment (including whether a person or entity is or is not a Class Member and whether Claims or causes of action allegedly related to the Released Class Claims are or are not barred by this Order and the Judgment or the Release);

c.  entering such additional orders as may be necessary or appropriate to protect or effectuate this Order and the Judgment, including whether to impose a bond on any parties who appeal from this Order or the Judgment; and

d.      entering any other necessary or appropriate orders to protect and effectuate this Court's retention of continuing jurisdiction.

28.     **Rule 11 Findings.**  The Court finds that all complaints filed in the Action were filed on a good-faith basis in accordance with the PSLRA and with Rule 11 of the Federal Rules of Civil Procedure based upon all publicly available information.  The Court finds that all Settling Parties and their counsel have complied with each requirement of Rule 11 of the Federal Rules of Civil Procedure as to all proceedings herein.

29.     **Termination.**  If the Settlement does not become Final in accordance with the terms of the Settlement Agreement, or is terminated pursuant to the Settlement Agreement (including pursuant to Section XIV), this Order and the Judgment shall be rendered null and void to the extent provided by and in accordance with the Settlement Agreement; *provided, however,* that paragraph 40 of the Preliminary Approval Order (concerning the Confidentiality Agreement) shall remain in effect even if this Order and the Judgment are rendered null and void.

30.     **Entry of Judgment.**  There is no just reason to delay the entry of this Order and the Judgment, and immediate entry by the Clerk of Court is expressly directed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.  Any appeal from this Order or other proceeding seeking subsequent judicial review of this Order pertaining solely to (*i*) the attorneys' fees or expenses awarded to Plaintiffs' Counsel or the PSLRA Award to Lead Plaintiff and/or (*ii*) the Plan of Allocation shall not in any way delay or preclude this Order from becoming Final under the terms of the Settlement Agreement.

18

SO ORDERED this __16___ day of __September, 2020.


                                             _____S/Margo K. Brodie
                                        The Honorable Margo K. Brodie
                                        United States District Judge

## APPENDIX OF SELECTED SETTLEMENT DEFINITIONS

"**Action**" means the securities class action pending in this Court and currently captioned *In re Henry Schein, Inc. Securities Litigation*, Master File No. 1:18-cv-01428-MKB-VMS (E.D.N.Y), including any other cases that have been or might be consolidated into it as of the Final Settlement Date.

"**Common Stock**" means common stock issued by Henry Schein, Inc.

"**Operative Facts**" means those facts and circumstances that provide the factual predicate for the claims asserted in the Action and shall include, among other things:

a.      any alleged violations of antitrust or other anticompetition laws or regulations by Schein in its dental business and/or any alleged knowledge by Schein of purported violations of antitrust or other anticompetition laws or regulations by others, including Schein's competitors, in the dental business, including any conduct alleged in the Antitrust Proceedings or the Complaint [e.g., Compl. ¶¶ 3, 6, 48, 72, 125-27, 133, 137, 139, 145, 149, 151, 155, 157, 159, 161, 163, 165, 167];

b.      any alleged meetings, dealings, arrangements, communications, agreements, conspiracies, or attempts between or among Schein and any of its competitors, including, without limitation, Benco Dental Supply Company, Patterson Companies, Inc., and Burkhart Dental Supply, that allegedly constituted, were related to, or were entered into in connection with an alleged restraint of trade or other anticompetitive conduct whereby Schein or any other party allegedly agreed (or indicated any intention to agree):

(1)      to boycott, refuse to offer discounted prices to, or otherwise negotiate with or refuse to deal with a buying group, group purchasing organization, or any other customer or potential customer [*id.* ¶¶ 9, 50-86, 95-100, 126-27];

(2)      to fix or adjust prices or margins on dental supplies or equipment, or otherwise not to compete on price, including by charging similar or higher prices or margins on dental supplies or equipment [*id.* ¶¶ 3, 8, 10, 42, 48-50, 52, 60, 64, 92-101, 145];

(3)      not to pursue or poach a competitor's existing or prospective business, customers, or sales representatives [*id.* ¶¶ 95-100];

(4)      to block, boycott, threaten, or retaliate against entities (including competing distributors) seeking to enter the dental market or to expand their business in that market, or entities seeking to compete on price or to undercut prices in that market [*id.* ¶¶ 7-10, 39, 41-42, 48, 51, 67, 69-83, 87-100, 102-05, 127, 133, 135, 137, 139, 141, 143, 145, 149, 151, 153, 155, 157, 159, 161, 163, 165, 167];

(5)      to pressure or boycott manufacturers (through threats or otherwise) to terminate relations with distributors (including online sellers) in the dental market or to cause new entrants to raise prices or face being cut off from products [*id.* ¶¶ 7-10, 39-43, 46, 48, 51, 73-74, 79, 81-83, 87-100, 102-05, 127];

(6)      to prevent online sellers from supplying dentists with products at reduced margins [id. ¶¶ 9-10, 69-83, 87-91, 133, 137, 163, 167];

(7)      to pressure state dental associations (including the Texas Dental Association and the Arizona Dental Association) or other organizations not to do business with competitors or would-be competitors, including through any alleged boycotts of state dental associations' trade shows [*id.* ¶¶ 9, 40, 43, 51, 69-86, 92-94, 126-27]; or

(8)      to prevent buying groups or group purchasing organizations from successfully competing in the dental supply and equipment distribution market [*id.* ¶¶ 3, 9, 51-86, 126-27, 133, 137, 139, 141, 145, 149, 155, 157, 159, 161, 163, 167];

c.      any concealment of any alleged dealings, arrangements, communications, agreements, or conspiracies that allegedly involved a restraint of trade or other anticompetitive conduct in the dental market [*id.* ¶¶ 3, 6-7, 9, 11-12, 106, 109-10, 113-14, 119-20, 131-67, 181-83];

d.      any alleged boycott of dentists who purchased supplies from price-competing competitors, including by allegedly withholding services or repairs for installed equipment, charging higher prices for any services or repairs, or significantly delaying any services or repairs [*id.* ¶¶ 55, 82, 115];

e.      any alleged communications (whether internal to Schein or external, and whether oral or written) relating to or evidencing any of the alleged conduct described in Sections a-d;

f.      any allegedly illegal unilateral engaging or involvement in any of the alleged conduct described in Sections a-d;

g.      Schein's governance, policies, practices, procedures, and internal controls during the Class Period, including any deficiencies and weaknesses in, or compliance or purported noncompliance with, any of them [*id.* ¶¶ 60, 64, 83, 136-37];

h.      any allegedly false or misleading statements or omissions in any SEC filings (including Forms 10-Q and 10-K and proxy statements), Exchange Act or Sarbanes-Oxley certifications, or press releases filed or issued during the Class Period relating to the matters described in Sections a-g, including, without limitation, those addressing (i) competition (or alleged lack of competition) in the dental market, including Schein's competitive position,

Schein's primary competitors, conduct in the dental market, and risks facing Schein as a result of competition in the dental market; (ii) pricing strategies, competitive pricing, cost containment, margins, and profits; (iii) Schein's dental business, including the strength of that business, Schein's value-added model, Schein's products (including private-label products), services, and solutions, Schein's commitment to customer service and value-added products, Schein's customer mix, and the impact of that mix on margins and profit; (iv) Schein's infrastructure; (v) HMOs, group practices, other managed-care accounts, group purchasing organizations, and buying groups in the dental market; (vi) the effect of technological developments on Schein's dental distribution business; (vii) the impact of manufacturers' sales directly to end users; (viii) private or governmental litigation and/or investigations or any other proceedings involving alleged antitrust or competition issues or claims relating to the dental market, including the Antitrust Proceedings; (ix) Schein's financial performance and results; (x) Schein's internal controls and policies; and (xi) the healthcare industry in general [*id.* ¶¶ 5-6, 11, 34, 38-39, 42, 44-45, 49, 105-07, 109-11, 113-14, 117, 119-20, 125, 127-28, 130-47, 180-85, 190-91];

i.      any alleged misstatements or omissions at industry or investor conferences, or in analyst meetings, earnings calls, or other public statements, during the Class Period relating to the matters described in Sections a-g [*id.* ¶¶ 5-6, 11, 33-38, 40, 45, 49, 105-07, 109-11, 113-14, 119-20, 125, 128, 130-31, 148-67, 180-85, 190-91];

j.      any alleged inflation or decline in the price of Schein Common Stock during the Class Period that is related to or arises out of the alleged conduct and/or topics described in Sections a-i [*id.* ¶¶ 13, 106, 108-10, 113-14, 119-21, 169];

k.     any Claims under Exchange Act §§ 10(b) and/or 20(a) and/or SEC Rule 10b-5 arising out of the alleged conduct and/or topics described in Sections a-j [*id.* ¶¶ 1, 22, 177-93]; and

l.     any Claims related to sales of Schein Common Stock by any Releasees during the Class Period, including any Claims under Exchange Act §§ 10(b), 20(a), or 20A or SEC Rule 10b-5 relating to such sales, to the extent that such Claims are related in any way to the alleged conduct and/or topics described in Sections a-j [*id.* ¶¶ 12, 129].

"**Released Class Claims**" means each and every Claim that existed as of, on, or before the Execution Date and that Lead Plaintiff or any other Class Member (*i*) asserted against any of the Releasees in the Action (including all Claims alleged in the Complaint) or (*ii*) could have asserted or could assert against any of the Releasees in connection with or relating directly or indirectly to any of the Operative Facts or any alleged statements about, mischaracterizations of, or omissions concerning them, whether arising under any federal, state, or other statutory or common-law rule or under any foreign law, in any court, tribunal, agency, or other forum, if such Claim also arises out of or relates to the purchase or other acquisition of Schein Common Stock, or to any other Investment Decision, during the Class Period; *provided, however*, that the term "Released Class Claims" does not include (and will not release or impair): (*i*) any claims asserted in any action under the Employee Retirement Income Security Act of 1974 or in any derivative action, including without limitation the claims asserted in the Derivative Settlement or *Finazzo v. Bergman*, No. 1:19-cv-06485-LDH-JO (E.D.N.Y.), or *Sloan v. Bergman*, No. 1:20-cv-0076 (E.D.N.Y.), or any cases consolidated into those actions; (*ii*) any claims asserted in *City of Hollywood Police Officers Ret. Sys. v. Henry Schein, Inc.*, No. 2:19-cv-5530 (E.D.N.Y.), or any

APP-5

cases consolidated into that action; (*iii*) any claims asserted in the Antitrust Proceedings or by any governmental entity that arise out of any governmental investigation of Defendants relating to the Operative Facts except to the extent that any such claims arise from or are based on the purchase of Schein Common Stock during the Class Period; or (*iv*) any claims to enforce the Settlement Agreement.

"**Released Releasees' Claims**" means each and every Claim that has been, could have been, or could be asserted in the Action or in any other proceeding by any Releasee, including Defendants and their successors and assigns, or his, her, or its respective estates, heirs, executors, agents, attorneys (including in-house counsel, outside counsel, and Defendants' Counsel), beneficiaries, accountants, professional advisors, trusts, trustees, administrators, and assigns, against Lead Plaintiff, any other Class Members, or any of their respective attorneys (including, without limitation, Plaintiffs' Counsel) and that arises out of or relates in any way to the initiation, prosecution, or settlement of the Action or the implementation of the Settlement Agreement; *provided, however*, that Released Releasees' Claim shall not include any Claim to enforce the Settlement Agreement.

"**Releasee**" means each and every one of, and "Releasees" means all of, (*i*) Schein, (*ii*) Schein Affiliates, (*iii*) each of Schein's and Schein Affiliates' current and former officers (including Messrs. Bergman, Paladino, and Sullivan), directors, employees, agents, representatives, any and all in-house counsel and outside counsel (including Defendants' Counsel), advisors, administrators, accountants, accounting advisors, auditors, consultants, assigns, assignees, beneficiaries, representatives, partners, successors-in-interest, insurance

APP-6

carriers, reinsurers, parents, affiliates, subsidiaries, successors, predecessors, fiduciaries, service providers, and investment bankers and any entities in which Schein or any Schein Affiliate has or had a Controlling Interest or that has or had a Controlling Interest in Schein or any Schein Affiliate, and (*iv*) for each of the foregoing Releasees, (*y*) to the extent the Releasee is an entity, each of its current and former officers, directors, employees, agents, representatives, any and all in-house counsel and outside counsel (including Defendants' Counsel), advisors, administrators, accountants, accounting advisors, auditors, consultants, assigns, assignees, beneficiaries, representatives, partners, successors-in-interest, insurance carriers, reinsurers, parents, affiliates, subsidiaries, successors, predecessors, fiduciaries, service providers, and investment bankers, and any entities in which any Releasee has or had a Controlling Interest or that has or had a Controlling Interest in the Releasee and (*z*) to the extent the Releasee is an individual, each of his or her Family Members, estates, heirs, executors, beneficiaries, trusts, trustees, agents, representatives, attorneys, advisors, administrators, accountants, consultants, assigns, assignees, representatives, partners, successors-in-interest, insurance carriers, and reinsurers.

"**Releasor**" means each and every one of, and "Releasors" means all of, (*i*) Lead Plaintiff, (*ii*) all other Class Members, and (*iii*) for each of the foregoing Releasors, their respective heirs, executors, administrators, predecessors, successors, and assigns, in their capacities as such, or any person purporting to assert a Released Class Claim on behalf of, for the benefit of, or derivatively for any such Releasor.

"**Schein Affiliate**" means any Affiliate, holding company, or subsidiary of Schein, and

any other person or entity affiliated with Schein through direct or indirect ownership of Schein

shares.

SO ORDERED:
s/ MKB 9/16/2020

_____

MARGO K. BRODIE
United States District Judge

# EXHIBIT 9H

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

IN RE IMPINJ, INC. SECURITIES LITIGATION

No. 3:18-cv-05704-RSL

<u>CLASS ACTION</u>

**ORDER AWARDING ATTORNEYS' FEES AND LITIGATION EXPENSES**

ORDER AWARDING ATTORNEYS' FEES AND
LITIGATION EXPENSES
(3:18-cv-05704-RSL)

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

This matter came on for hearing on November 19, 2020 (the "Settlement Hearing") on Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses. The Court having considered all matters submitted to it at the Settlement Hearing and otherwise; and it appearing that notice of the Settlement Hearing substantially in the form approved by the Court was mailed to all Settlement Class Members who or which could be identified with reasonable effort, and that a summary notice of the hearing substantially in the form approved by the Court was published in *The Wall Street Journal* and released over *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and Litigation Expenses requested,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated July 9, 2020 (ECF No. 91-2) (the "Stipulation") and all terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2. The Court has jurisdiction to enter this Order approving the proposed Plan of Allocation, and over the subject matter of the Action and all Parties to the Action, including all Settlement Class Members.

3. Plaintiffs' Counsel are hereby awarded attorneys' fees in the amount of 25% of the Settlement Fund, and $176,771.21 in payment of Lead Counsel's litigation expenses (which fees and expenses shall be paid from the Settlement Fund), which sums the Court finds to be fair and reasonable. Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which it, in good faith, believes reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.

4. In making this award of attorneys' fees and payment of expenses from the Settlement Fund, the Court has considered and found that:

    (a) The Settlement has created a fund of $20,000,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Settlement Class

ORDER AWARDING ATTORNEYS' FEES AND LITIGATION EXPENSES
(3:18-cv-05704-RSL)

- 1 -

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Plaintiffs' Counsel;

(b)     The requested fee has been reviewed and approved as reasonable by Lead Plaintiff, a sophisticated institutional investor that actively supervised the Action;

(c)     No objections to the requested attorneys' fees and Litigation Expenses were received;

(d)     Plaintiffs' Counsel conducted the litigation and achieved the Settlement with skill, perseverance, and diligent advocacy;

(e)     The Action raised a number of complex issues;

(f)     Had Plaintiffs' Counsel not achieved the Settlement there would remain a significant risk that Lead Plaintiff and the other members of the Settlement Class may have recovered less or nothing from Defendants;

(g)     Plaintiffs' Counsel devoted over 4,700 hours, with a lodestar value of over $2,662,000, to achieve the Settlement; and

(h)     The amount of attorneys' fees awarded and expenses to be paid from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

5.     Lead Plaintiff Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge is hereby awarded $4,870.00 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

6.     Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

7.     Exclusive jurisdiction is hereby retained over the Parties and the Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

8.     In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

ORDER AWARDING ATTORNEYS' FEES AND
LITIGATION EXPENSES
(3:18-cv-05704-RSL)

- 2 -

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

9.     There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this 20th day of November, 2020.

_MM S Lasnik_
The Honorable Robert S. Lasnik
United States District Judge

ORDER AWARDING ATTORNEYS' FEES AND
LITIGATION EXPENSES
(3:18-cv-05704-RSL)

- 3 -

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

# EXHIBIT 9I

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE KRAFT HEINZ SECURITIES LITIGATION | Case No. 1:19-cv-01339<br><br>Honorable Jorge L. Alonso |

**ORDER AWARDING ATTORNEYS' FEES**
**AND LITIGATION EXPENSES**

This matter is before the Court on Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses. The Court having considered all matters submitted to it; and it appearing that notice substantially in the form approved by the Court, which advised of Lead Counsel's request for an award of attorneys' fees and Litigation Expenses, was mailed to all Settlement Class Members who or which could be identified with reasonable effort, and that a summary notice substantially in the form approved by the Court was published in *The Wall Street Journal* and transmitted over *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the attorneys' fees and Litigation Expenses requested,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement, dated as of May 2, 2023 (ECF No. 475-3) ("Stipulation"), and all capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2.      The Court has jurisdiction to enter this Order and over the subject matter of the Action and all Parties to the Action, including all Settlement Class Members.

3.      Notice of Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses was given to all Settlement Class Members who or which could be identified with reasonable effort. The form and method of notifying the Settlement Class of the motion for an award of attorneys' fees and Litigation Expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable law and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4.      Plaintiffs' Counsel are hereby awarded attorneys' fees in the amount of 20% of the Settlement Fund and $2,656,091.93 in payment of Plaintiffs' Counsel's litigation expenses (which fees and expenses shall be paid from the Settlement Fund), which sums the Court finds to be fair and reasonable. Lead Counsel shall allocate the attorneys' fees awarded among Plaintiffs' Counsel in a manner which they, in good faith, believe reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.

5.      In making this award of attorneys' fees and payment of expenses from the Settlement Fund, the Court has considered and found that:

A.      The Settlement has created a fund of $450,000,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Settlement Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Plaintiffs' Counsel;

B.      The fee sought has been reviewed and approved as reasonable by Plaintiffs, sophisticated investors that actively supervised the Action;

C. Over 1.6 million Postcard Notices and 5,600 Notice Packets (i.e., the Notice and Claim Form) were mailed to potential Settlement Class Members and Nominees stating that Lead Counsel would apply for an award of attorneys' fees in the amount of 20% of the Settlement Fund and for payment of Litigation Expenses in an amount not to exceed $3,200,000, and only two objections to the requested attorneys' fees have been received, which the Court has consider and rejected;

D. Plaintiffs' Counsel conducted the litigation and achieved the Settlement with skill, perseverance, and diligent advocacy;

E. The Action raised a number of complex issues;

F. Had Lead Counsel not achieved the Settlement there would remain a significant risk that Plaintiffs and the other members of the Settlement Class may have recovered less or nothing from Defendants;

G. Plaintiffs' Counsel devoted over 112,000 hours, with a lodestar value of $52,985,816.50, to achieve the Settlement; and

H. The amount of attorneys' fees awarded and expenses to be paid from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

6. Plaintiffs are hereby awarded reimbursement for their reasonable costs and expenses directly related to their representation of the Settlement Class in the following amounts: (i) $12,780.00 to Sjunde AP-Fonden; (ii) $73,950.00 to Union Asset Management Holding AG; and (iii) $27,610.00 to Booker Enterprises Pty Ltd.

7. Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

8.      In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

9.      There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this 19th day of September, 2023.

_____
The Honorable Jorge L. Alonso
United States District Judge

# EXHIBIT 9J

Case 8:19-cv-02326-DOC-ADS Document 126-18 Filed 04/19/24 Page 110 of 586 Page ID #: 5298

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE MERIT MEDICAL SYSTEMS, INC., SECURITIES LITIGATION | No. 8:19-cv-02326-DOC-ADS<br><br>**ORDER AWARDING ATTORNEYS' FEES AND LITIGATION EXPENSES** |

This matter came on for hearing on April 13, 2022 (the "Settlement Hearing") on Lead Counsel's motion for attorneys' fees and Litigation Expenses. The Court having considered all matters submitted to it at the Settlement Hearing and otherwise; and it appearing that notice of the Settlement Hearing substantially in the form approved by the Court was mailed to all Settlement Class Members who or which could be identified with reasonable effort, and that a summary notice of the Settlement Hearing substantially in the form approved by the Court was published in *Investor's Business Daily* and was transmitted over the *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and Litigation Expenses,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated December 21, 2021 (ECF No. 105-1) (the "Stipulation") and all capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2. The Court has jurisdiction to enter this Order and over the subject matter of the Action and all parties to the Action, including all Settlement Class Members.

3. Notice of Lead Counsel's motion for attorneys' fees and Litigation Expenses was given to all Settlement Class Members who could be identified with reasonable effort. The form and method of notifying the Settlement Class of the motion for attorneys' fees and Litigation Expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable law and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4. Lead Counsel are hereby awarded attorneys' fees in the amount of 30% of the Settlement Fund and $104,686.68 for Lead Counsel's litigation expenses (which

fees and expenses shall be paid from the Settlement Fund), which sums the Court finds to be fair and reasonable.

5.     In making this award of attorneys' fees and Litigation Expenses to be paid from the Settlement Fund, the Court has considered and found that:

a) The Settlement has created a fund of $18,250,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and numerous Settlement Class Members who submit acceptable Claim Forms will benefit from the Settlement because of Lead Counsel's efforts;

b) The fee sought by Lead Counsel has been reviewed and approved as reasonable by Class Representatives, the two institutional investor Lead Plaintiffs which oversaw the prosecution and resolution of the Action;

c) Copies of the Notice were mailed to over 25,000 potential Settlement Class Members and nominees stating that Lead Counsel would apply for attorneys' fees in an amount not to exceed 30% of the Settlement Fund and Litigation Expenses in an amount not to exceed $250,000;

d) There were no objections to the requested attorneys' fees and Litigation Expenses;

e) Lead Counsel have conducted the litigation and achieved the Settlement with skill, perseverance, and diligent advocacy;

f) The Action raised a number of complex and novel issues;

g) Had Lead Counsel not achieved the Settlement there would remain a significant risk that Class Representatives and the other members of the Settlement Class may have recovered less or nothing from Defendants;

h) Lead Counsel devoted over 6,550 hours, with a lodestar value of over $3.8 million, to achieve the Settlement; and

i) The amount of attorneys' fees awarded and expenses to be paid from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

6. Lead Plaintiffs City of Atlanta Police Officers' Pension Fund and City of Atlanta Firefighters' Pension Fund are hereby awarded $5,500.00 from the Settlement Fund as reimbursement for their reasonable costs and expenses directly related to their representation of the Settlement Class.

7. Lead Plaintiff Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge is hereby awarded $3,392.01 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

8. Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

9. Exclusive jurisdiction is hereby retained over the parties and Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

10. In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

11. There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this 15TH day of April, 2022.

David O. Carter
_____
Hon. David O. Carter
United States District Judge

- 3 -

# EXHIBIT 9K

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE NOVO NORDISK SECURITIES LITIGATION | No. 3:17-cv-00209-ZNQ-LHG |

## ORDER AWARDING ATTORNEYS' FEES AND LITIGATION EXPENSES AND AWARDS TO LEAD PLAINTIFFS PURSUANT TO 15 U.S.C. §78u-4(a)(4)

This matter having come before the Court on July 13, 2022, on Lead Counsel's motion for an award of attorneys' fees and litigation expenses (the "Fee Motion") in the above-captioned action (the "Action"), and the Court, having considered all papers filed and proceedings conducted herein, having found the Settlement of this Action to be fair, reasonable and adequate, and otherwise being fully informed in the premises and good cause appearing therefore;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.	This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated November 23, 2021 (the "Stipulation") (ECF 311-3), and all capitalized terms used in this Order, but not defined herein, shall have the same meanings as set forth in the Stipulation.

2.	This Court has jurisdiction over the subject matter of this Order, the Fee Motion, and all matters relating thereto, including Class Members.

3.	Notice of Lead Counsel's Fee Motion was given to all Class Members who could be located with reasonable effort. The form and method of notifying the Class of the Fee Motion met the requirements of Rule 23 of the Federal Rules of Civil Procedure and 15 U.S.C. §78u-4(a)(7), the

- 1 -

Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995, the United States Constitution (including the Due Process clause), and all other applicable law and rules, constituted the best notice practicable under the circumstances, and constituted due, adequate, and sufficient notice to all persons and entities entitled thereto.

4. The Court hereby awards Plaintiffs' Counsel attorneys' fees of 29% of the Settlement Fund (or $29 million together with interest earned thereon for the same time period and at the same rate as that earned on the Settlement Fund until paid), plus litigation expenses in the amount of $2,738,023.93. The Court finds that the amount of fees awarded is appropriate and that the amount of fees awarded is fair and reasonable under the "percentage-of-recovery" method.

5. The awarded attorneys' fees and expenses shall be paid to Plaintiffs' Counsel subject to the terms, conditions, and obligations of the Stipulation, and in particular ¶15 thereof, which terms, conditions, and obligations are incorporated herein.

6. In making this award of fees and expenses to Plaintiffs' Counsel, the Court has considered and found that:

(a) the Settlement has created a fund of $100,000,000 in cash that is already on deposit, and numerous Class Members who submit, or have submitted, valid Proof of Claim Forms will benefit from the Settlement created by Plaintiffs' Counsel;

(b) over 378,000 copies of the Settlement Notice were disseminated to potential Class Members indicating that Lead Counsel would move for attorneys' fees in an amount not to exceed 30% of the Settlement Fund, plus interest, and for litigation expenses in an amount not to exceed $3.3 million;

(c) Plaintiffs' Counsel have pursued the Action and achieved the Settlement with skill, perseverance, and diligent advocacy;

- 2 -

(d)     Plaintiffs' Counsel have expended substantial time and effort pursuing the Action on behalf of the Class;

(e)     Plaintiffs' Counsel pursued the Action on a contingent basis, having received no compensation during the Action, and any fee amount has been contingent on the result achieved;

(f)     the Action involves complex factual and legal issues and, in the absence of settlement, would involve lengthy proceedings whose resolution would be uncertain;

(g)     had Plaintiffs' Counsel not achieved the Settlement, there would remain a significant risk that the Class may have recovered less or nothing from Defendants;

(h)     Plaintiffs' Counsel have devoted a total of 123,862 hours, with a lodestar value of $60,856,642.25, to achieve the Settlement;

(i)     public policy concerns favor the award of reasonable attorneys' fees and expenses in securities class action litigation; and

(j)     the attorneys' fees and expenses awarded are fair and reasonable and consistent with awards in similar cases within the Third Circuit.

7.     Any appeal or any challenge affecting this Court's approval regarding the Fee Motion shall in no way disturb or affect the finality of the Judgment entered with respect to the Settlement.

8.      Pursuant to 15 U.S.C. §78u-4(a)(4), Lead Plaintiffs Lehigh County Employees' Retirement System, Oklahoma Firefighters Pension and Retirement System, Boston Retirement System, Employees' Pension Plan of the City of Clearwater, and Central States, Southeast and Southwest Pension Fund are awarded $10,410.50, $3,237.50, $8,932.26, $5,343.79, and $12,095.00, respectively, for a total of $40,019.05, for representation of the Class during the Action.

9.      The Court has considered the objection to the fee application filed by Neville Hedley (ECF 354-1) and finds it to be without merit. The objection is overruled in its entirety.

10.     In the event that the Settlement is terminated or the Judgment approving the Settlement does not become Final or the Effective Date does not occur in accordance with the terms of the Stipulation, this Order shall be rendered null and void to the extent provided in the Stipulation and shall be vacated in accordance with the Stipulation.

11.     There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED on this _13th_ day of ___July___, 2022.

The Honorable Zahid N. Quraishi
United States District Judge

- 4 -

# EXHIBIT 9L

Case 3:21-cv-00449-DJN-DCK Document 334 Filed 04/19/24 Page 120 of 586 PageID#
5508
Case 1:19-cv-00070-DLC Document 330-1 Filed 02/18/22 Page 1 of 4

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE PERRIGO COMPANY PLC SECURITIES LITIGATION | 19-CV-70 (DLC) |

## [PROPOSED] ORDER AWARDING ATTORNEYS' FEES AND REIMBURSING LITIGATION EXPENSES

WHEREAS, this matter came on for hearing on February 16, 2022 (the "Settlement Hearing") on Lead Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses. The Court having considered all matters submitted to it at the Settlement Hearing and otherwise; and it appearing that a notice of the Settlement Hearing, substantially in the form approved by the Court, was mailed to all Class Members who or which could be identified with reasonable effort, and that a summary notice of the Settlement Hearing, substantially in the form approved by the Court, was published in *Investor's Business Daily* and was transmitted over the *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and reimbursement of litigation expenses requested;

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. This Order incorporates by reference the definitions in the Amended Stipulation and Agreement of Settlement, dated October 22, 2021 (ECF No. 317-1) (the "Stipulation"), and all capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2. The Court has jurisdiction to enter this Order and over the subject matter of the Action and all parties to the Action, including all Class Members.

3.    Notice of Lead Plaintiffs' request for attorneys' fees and reimbursement of litigation expenses was given to all Class Members who or which could be identified with reasonable effort. The form and method of notifying the Class of the request for attorneys' fees and reimbursement of litigation expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-4(a)(7)), due process, and all other applicable laws and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4.    Lead Counsel are hereby awarded attorneys' fees in the amount of 33 and 1/3% of the Settlement Fund (the "Fee Award") and $978,116.75 in reimbursement of litigation expenses (which fees and expenses shall be paid from the Settlement Fund), which sums the Court finds to be fair and reasonable. One half of the Fee Award and all reimbursable litigation expenses shall be payable to Lead Counsel immediately upon entry of this Order. The remainder of the Fee Award shall be payable to Lead Counsel upon this Court's entry of an order granting Lead Plaintiffs' forthcoming motion for distribution of the Settlement Fund.

5.    In making this award of attorneys' fees and reimbursement of litigation expenses to be paid from the Settlement Fund, the Court has considered and found that:

a) The Settlement has created a common fund of $31,900,000 that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Lead Counsel;

2

Case 3:21-cv-00449-DJN Document 84 filed 04/19/21 Page 122 of 586 PageID#
5316
Case 1:19-cv-00070-DLC Document 330-1 Filed 02/18/22 Page 3 of 4

b) The fee sought has been reviewed and approved by Lead Plaintiffs, sophisticated institutional investors that oversaw the Action and have a substantial interest in ensuring that any attorneys' fees paid are duly earned and not excessive;

c) No objections to the fee request have been made by Class Members;

d) Lead Counsel has conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

e) The Action involves complex legal and factual issues and was actively prosecuted for nearly three years, and in the absence of a settlement, would involve further lengthy proceedings with uncertain resolution of the complex legal and factual issues;

f) Had Lead Counsel not achieved the Settlement, a significant risk would remain that Lead Plaintiffs and the other members of the Class may have recovered less or nothing from the Defendants;

g) Lead Counsel pursued the Action on a contingent basis, having received no compensation during the Action, and any fee amount has been contingent on the result achieved;

h) Public policy concerns favor the award of reasonable attorneys' fees and expenses in securities class action litigation; and

i) The amounts of attorneys' fees and expenses reimbursed from the Settlement Fund are fair and reasonable.

6. Any appeal or any challenge affecting this Court's approval regarding attorneys' fees and reimbursing Litigation Expenses shall in no way disturb or affect the finality of the Judgment and shall not affect or delay the Effective Date of the Settlement.

7.      Exclusive jurisdiction is hereby retained over the parties and Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

8.      In the event the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

9.      There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.


SO ORDERED this ___/8th___ day of ___February___, 2022.


_____
The Honorable Denise Cote
United States District Judge

4

# EXHIBIT 9M

**FILED**

July 28, 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ **SO** _____

DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| IN RE SOLARWINDS CORPORATION SECURITIES LITIGATION | Case No. 1:21-cv-00138-RP <br><br> <u>CLASS ACTION</u> |

**[PROPOSED] ORDER AWARDING
<u>ATTORNEYS' FEES AND LITIGATION EXPENSES</u>**

This matter came on for hearing on July 28, 2023 (the "Settlement Fairness Hearing") on Lead Counsel's motion for attorneys' fees and Litigation Expenses. The Court having considered all matters submitted to it at the Settlement Fairness Hearing and otherwise; it appearing that: (i) the Notice of the Settlement Fairness Hearing was mailed to all Settlement Class Members who or which could be identified with reasonable effort substantially in the form approved by the Court and (ii) a summary notice of the hearing substantially in the form approved by the Court was published in *The Wall Street Journal* and released over *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and Litigation Expenses requested,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated November 28, 2022 (ECF No. 97-1) (the "Stipulation") and all terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2. The Court has jurisdiction to enter this Order and over the subject matter of the Action and all parties to the Action, including all Settlement Class Members.

3. Notice of Lead Counsel's motion for attorneys' fees and Litigation Expenses was given to all Settlement Class Members who could be identified with reasonable effort. The form and method of notifying the Settlement Class of the motion for attorneys' fees and expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(7), due process, and all other applicable law and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4. Plaintiffs' Counsel are hereby awarded attorneys' fees in the amount of 25% of the Settlement Fund, net of Litigation Expenses awarded, or $6,426,697 (plus interest earned at the same rate as the Settlement Fund). Plaintiffs' Counsel are also hereby awarded $270,449.02 for payment of their litigation expenses. These attorneys' fees and expenses shall be paid from the Settlement Fund and the Court finds these sums to be fair and reasonable. Lead Counsel shall allocate the attorneys' fees awarded among Plaintiffs' Counsel in a manner in which it, in good faith, believes reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.

5. In making this award of attorneys' fees and payment of litigation expenses from the Settlement Fund, the Court has considered and found that:

a. The Settlement has created a fund of $26,000,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Settlement Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Plaintiffs' Counsel;

b. The requested fee has been reviewed and approved as reasonable by Lead Plaintiff, an institutional investor that actively supervised the Action;

2

c. Copies of the Notice were mailed to over 25,000 potential Settlement Class Members and nominees stating that Lead Counsel would apply for attorneys' fees in an amount not to exceed 25% of the Settlement Fund and payment of Litigation Expenses in an amount not to exceed $500,000 and no objections to the requested award of attorneys' fees or Litigation Expenses were submitted;

d. Lead Counsel conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

e. The Action raised a number of complex issues;

f. Had Lead Counsel not achieved the Settlement there would remain a significant risk that Lead Plaintiff and the other members of the Settlement Class may have recovered less or nothing from Defendants;

g. Plaintiffs' Counsel devoted over 6,200 hours, with a lodestar value of approximately $3.4 million, to achieve the Settlement; and

h. The amount of attorneys' fees awarded and expenses to be paid from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

6. Lead Plaintiff New York City District Council of Carpenters Pension Fund is hereby awarded $22,760.30 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

7. Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

8. Exclusive jurisdiction is hereby retained over the Parties and the Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

9. In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

10. There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this 28th day of July, 2023.

_____
The Honorable Robert Pitman
United States District Judge

4

# EXHIBIT 9N

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| IN RE: VENATOR MATERIALS PLC SECURITIES LITIGATION | Civil Action No. 4:19-cv-03464 |

**ORDER APPROVING
PLAN OF ALLOCATION OF NET SETTLEMENT FUND**

This matter came on for hearing on September 9, 2022 (the "Settlement Hearing") on Plaintiffs' motion to approve the proposed plan of allocation ("Plan of Allocation") of the Net Settlement Fund created under the Settlement in the above-captioned class action (the "Action"). The Court having considered all matters submitted to it at the Settlement Hearing and otherwise; and it appearing that Notice of the Settlement Hearing (which included a summary of the Settlement as well as the full text of the proposed Plan of Allocation) (the "Notice") substantially in the form approved by the Court was mailed to all Settlement Class Members who or which could be identified with reasonable effort, and that a summary notice of the hearing substantially in the form approved by the Court was published in *Investor's Business Daily* and released over *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the proposed Plan of Allocation,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      This Order approving the proposed Plan of Allocation incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated March 11,

2022 (ECF No. 117-2) (the "Stipulation") and all terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2.     The Court has jurisdiction to enter this Order approving the proposed Plan of Allocation, and over the subject matter of the Action and all Parties to the Action, including all Settlement Class Members.

3.     Notice of Plaintiffs' motion for approval of the proposed Plan of Allocation was given to all Settlement Class Members who or which could be identified with reasonable effort.  The form and method of notifying the Settlement Class of the motion for approval of the proposed Plan of Allocation satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 77z-1, 78u-4, as amended, and all other applicable laws and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4.     Copies of the Notice, which included the Plan of Allocation, were mailed to over 24,800 potential Settlement Class Members and nominees, and no objections to the Plan of Allocation have been received.

5.     The Court hereby finds and concludes that the formula for the calculation of the claims of Claimants as set forth in the Plan of Allocation mailed to Settlement Class Members provides a fair and reasonable basis upon which to allocate the proceeds of the Net Settlement Fund among Settlement Class Members with due consideration having been given to administrative convenience and necessity.

2

6. The Court hereby finds and concludes that the Plan of Allocation is, in all respects, fair and reasonable to the Settlement Class. Accordingly, the Court hereby approves the Plan of Allocation proposed by Plaintiffs.

7. Any appeal or any challenge affecting this Order approving the Plan of Allocation shall in no way disturb or affect the finality of the Judgment.

8. There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this _15th_ day of ___September_, 2022.

_____

The Honorable George C. Hanks, Jr.
United States District Judge

3

# EXHIBIT 9O

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE: VENATOR MATERIALS PLC SECURITIES LITIGATION | Civil Action No. 4:19-cv-03464 |

## JUDGMENT APPROVING CLASS ACTION SETTLEMENT

WHEREAS, a consolidated securities class action is pending in this Court entitled *In re Venator Materials PLC Securities Litigation*, No. 4:19-cv-03464 (the "Action");

WHEREAS, (a) Court-appointed Lead Plaintiffs Fresno County Employees' Retirement Association ("Fresno"), City of Miami General Employees' & Sanitation Employees' Retirement Trust ("Miami"), and City of Pontiac General Employees' Retirement System ("Pontiac"; together with Fresno and Miami, "Plaintiffs"), on behalf of themselves and the Settlement Class (defined below); and (b) Defendants Venator Materials PLC ("Venator"); Simon Turner, Kurt D. Ogden, Stephen Ibbotson, Mahomed Maiter, Russ R. Stolle, Peter R. Huntsman, Douglas D. Anderson, Kathy D. Patrick, Sir Robert J. Margetts, and Daniele Ferrari (collectively, the "Individual Defendants"); Huntsman Corporation ("Huntsman Corp."), Huntsman (Holdings) Netherlands B.V., and Huntsman International LLC (collectively, the "Huntsman Defendants"); and Citigroup Global Markets Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Goldman Sachs & Co. LLC, and J.P. Morgan Securities LLC (collectively, the "Underwriter Defendants"; together with Venator, the Individual Defendants, and the Huntsman Defendants,

"Defendants") have entered into a Stipulation and Agreement of Settlement dated March 11, 2022 (the "Stipulation"), that provides for a complete dismissal with prejudice of the claims asserted in the Action on the terms and conditions set forth in the Stipulation, subject to the approval of this Court (the "Settlement");

WHEREAS, unless otherwise defined in this Judgment, the capitalized terms herein shall have the same meaning as they have in the Stipulation;

WHEREAS, by Order dated May 19, 2022 (the "Preliminary Approval Order"), this Court: (a) found, pursuant to Rule 23(e)(1)(B), that it (i) would likely be able to approve the Settlement as fair, reasonable, and adequate under Rule 23(e)(2), and (ii) would likely be able to certify the Settlement Class for purposes of the Settlement; (b) ordered that notice of the proposed Settlement be provided to potential Settlement Class Members; (c) provided Settlement Class Members with the opportunity either to exclude themselves from the Settlement Class or to object to the proposed Settlement; and (d) scheduled a hearing regarding final approval of the Settlement;

WHEREAS, due and adequate notice has been given to the Settlement Class;

WHEREAS, the Court conducted a hearing on September 9, 2022 (the "Settlement Hearing") to consider, among other things, (a) whether the terms and conditions of the Settlement are fair, reasonable, and adequate to the Settlement Class and should therefore be approved; and (b) whether a judgment should be entered dismissing the Action with prejudice as against the Defendants; and

WHEREAS, the Court having reviewed and considered the Stipulation, all papers filed and proceedings held herein in connection with the Settlement, all oral and written

2

comments received regarding the Settlement, and the record in the Action, and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1.      **Jurisdiction** – The Court has jurisdiction over the subject matter of the Action and all matters relating to the Settlement, as well as personal jurisdiction over all of the Parties and each of the Settlement Class Members.

2.      **Incorporation of Settlement Documents** – This Judgment incorporates and makes a part hereof:  (a) the Stipulation filed with the Court on March 21, 2022; and (b) the Notice and the Summary Notice, both of which were filed with the Court on August 5, 2022.

3.      **Class Certification for Settlement Purposes** – The Court hereby certifies for the purposes of the Settlement only, the Action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Settlement Class consisting of all persons and entities who:  (i) purchased or otherwise acquired the publicly traded common stock of Venator between August 2, 2017, and October 29, 2018, inclusive (the "Class Period"); and/or (ii) purchased or otherwise acquired publicly traded Venator common stock either in or traceable to Venator's August 3, 2017 initial public offering ("IPO") or Venator's December 4, 2017 secondary public offering ("SPO") during the Class Period, and were damaged thereby (the "Settlement Class").  Excluded from the Settlement Class are:  (i) Defendants; (ii) members of the Immediate Family of any Individual Defendant; (iii) any person who was an officer or director of Venator, any of the Huntsman Defendants, or any of the Underwriter Defendants during the Class Period

3

and any members of their Immediate Family; (iv) any parents, subsidiaries, or affiliates of Venator, any of the Huntsman Defendants, or any of the Underwriter Defendants; (v) any entity in which any such excluded party has, or had during the Class Period, a direct or indirect majority ownership interest; and (vi) the legal representatives, heirs, successors-in-interest, or assigns of any such excluded persons or entities, provided, however, that the Settlement Class shall not exclude any Investment Vehicles. Also excluded from the Settlement Class are Macomb County Employees' Retirement System and Fireman's Retirement System of St. Louis.

4. **<u>Settlement Class Findings</u>** – For purposes of the Settlement only, the Court finds that each element required for certification of the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure has been met: (a) the members of the Settlement Class are so numerous that their joinder in the Action would be impracticable; (b) there are questions of law and fact common to the Settlement Class which predominate over any individual questions; (c) the claims of Plaintiffs in the Action are typical of the claims of the Settlement Class; (d) Plaintiffs and Lead Counsel have and will fairly and adequately represent and protect the interests of the Settlement Class; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the Action.

5. **<u>Adequacy of Representation</u>** – Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, the Court hereby appoints Plaintiffs as Class Representatives for the Settlement Class and appoints Lead Counsel as Class Counsel for the Settlement Class. Plaintiffs and Lead Counsel have fairly and adequately represented the Settlement Class both in terms of litigating the Action and for

purposes of entering into and implementing the Settlement and have satisfied the requirements of Federal Rules of Civil Procedure 23(a)(4) and 23(g), respectively.

6.      **Notice** – The Court finds that the dissemination of the Notice and the publication of the Summary Notice:  (a) were implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of (i) the pendency of the Action; (ii) the effect of the proposed Settlement (including the Releases to be provided thereunder); (iii) Lead Counsel's motion for attorneys' fees and reimbursement of expenses; (iv) their right to object to any aspect of the Settlement, the Plan of Allocation, and/or Lead Counsel's motion for attorneys' fees and reimbursement of expenses; (v) their right to exclude themselves from the Settlement Class; and (vi) their right to appear at the Settlement Hearing; (d) constituted due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 77z-1, 78u-4, as amended, and all other applicable laws and rules.  The Court further finds that the notice requirements set forth in the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, have been satisfied.

7.      **Objections** – No objections to approval of the Settlement have been submitted by Settlement Class Members or any other persons.

8.      **Final Settlement Approval and Dismissal of Claims** – Pursuant to, and in accordance with, Rule 23(e)(2) of the Federal Rules of Civil Procedure, this Court hereby fully and finally approves the Settlement set forth in the Stipulation in all respects (including, without limitation, the amount of the Settlement, the Releases provided for therein, and the dismissal with prejudice of the claims asserted against Defendants in the Action), and finds that the Settlement is, in all respects, fair, reasonable and adequate. Specifically, the Court finds that (a) Plaintiffs and Lead Counsel have adequately represented the Settlement Class; (b) the Settlement was negotiated by the Parties at arm's length; (c) the relief provided for the Settlement Class under the Settlement is adequate taking into account the costs, risks, and delay of trial and appeal, the proposed means of distributing the Settlement Fund to the Settlement Class, and the proposed attorneys' fee award; and (d) the Settlement treats members of the Settlement Class equitably relative to each other. The Parties are directed to implement, perform, and consummate the Settlement in accordance with the terms and provisions contained in the Stipulation.

9.      The Action and all of the claims asserted against Defendants in the Action by Plaintiffs and the other Settlement Class Members are hereby dismissed with prejudice as to all Defendants. The Parties shall bear their own costs and expenses, except as otherwise expressly provided in the Stipulation.

10.     **Binding Effect** – The terms of the Stipulation and of this Judgment shall be forever binding on Defendants, Plaintiffs, and all other Settlement Class Members (regardless of whether or not any individual Settlement Class Member submits a Claim Form or seeks or obtains a distribution from the Net Settlement Fund), as well as their

6

respective successors and assigns, including any and all Releasees and any corporation, partnership, or other entity into or with which any Party hereto may merge, consolidate, or reorganize.

11. **Releases** – The Releases set forth in paragraphs 5 and 6 of the Stipulation, together with the definitions contained in paragraph 1 of the Stipulation relating thereto, are expressly incorporated herein in all respects. The Releases are effective as of the Effective Date. Accordingly, this Court orders that:

(a) Without further action by anyone, and subject to paragraph 12 below, upon the Effective Date of the Settlement, Lead Plaintiff and each of the other Settlement Class Members, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, assigns, representatives, attorneys, and agents in their capacities as such (or any other person claiming on behalf of a Settlement Class Member), shall be deemed to have, and by operation of law and of this Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Plaintiffs' Claim against Defendants and the other Defendants' Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiffs' Claims against any of the Defendants' Releasees.

(b) Without further action by anyone, and subject to paragraph 12 below, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and each of their respective heirs, executors, administrators, predecessors, successors, assigns, representatives, attorneys, and agents in their capacities as such (or any other person claiming on behalf of a Defendant), shall be deemed to have, and by operation of law and

7

of this Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Defendants' Claim against Plaintiffs and the other Plaintiffs' Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiffs' Releasees.

12.     Notwithstanding paragraphs 11(a) – (b) above, nothing in this Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of the Stipulation or this Judgment.

13.     **Rule 11 Findings** – The Court finds and concludes that the Parties and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and settlement of the Action.

14.     **No Admissions** – Neither this Judgment, the Stipulation, including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of the Stipulation, nor any proceedings taken pursuant to or in connection with the Stipulation and/or the approval of the Settlement (including any arguments proffered in connection therewith):

> (a)     shall be offered against any of the Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants' Releasees with respect to the truth of any fact alleged by Plaintiffs or the validity of any claim that was, could have been, or could

8

in the future be asserted or the deficiency of any defense that has been, could have been, or could in the future be asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants' Releasees or in any way referred to for any other reason as against any of the Defendants' Releasees, in any civil, criminal, arbitration, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation;

(b)     shall be offered against any of the Plaintiffs' Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Plaintiffs' Releasees that any of their claims are without merit, that any of the Defendants' Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault, or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Plaintiffs' Releasees, in any civil, criminal, arbitration, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; or

(c)     shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial;

9

*provided, however*, that the Parties and the Releasees and their respective counsel may refer to this Judgment and the Stipulation to effectuate the protections from liability granted hereunder and thereunder or otherwise to enforce the terms of the Settlement.

15. **Retention of Jurisdiction** – Without affecting the finality of this Judgment in any way, this Court retains continuing and exclusive jurisdiction over: (a) the Parties for purposes of the administration, interpretation, implementation, and enforcement of the Settlement; (b) the disposition of the Settlement Fund; (c) any motion for an award of attorneys' fees and/or reimbursement of expenses by Lead Counsel in the Action that will be paid from the Settlement Fund; (d) any motion to approve the Class Distribution Order; and (e) the Settlement Class Members for all matters relating to the Action.

16. Separate orders shall be entered regarding approval of a plan of allocation and the motion of Lead Counsel for attorneys' fees and reimbursement of expenses. Such orders shall in no way affect or delay the finality of this Judgment and shall not affect or delay the Effective Date of the Settlement.

17. **Modification of the Agreement of Settlement** – Without further approval from the Court, Plaintiffs and Defendants are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this Judgment; and (b) do not materially limit the rights of Settlement Class Members in connection with the Settlement. Without further order of the Court, Plaintiffs and Defendants may agree to reasonable extensions of time to carry out any provisions of the Settlement.

18.     **Plan of Allocation** – The Court hereby finds that the proposed Plan of Allocation is a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members, and Lead Counsel and the Claims Administrator are directed to administer the Plan of Allocation in accordance with its terms and the terms of the Stipulation.

19.     **Termination of Settlement** – If the Settlement is terminated as provided in the Stipulation or the Effective Date of the Settlement otherwise fails to occur, this Judgment shall be vacated, rendered null and void, and be of no further force and effect, except as otherwise provided by the Stipulation, and this Judgment shall be without prejudice to the rights of Plaintiffs, the other Settlement Class Members, and Defendants, and the Parties shall revert to their respective positions in the Action as of December 10, 2021, the date on which the parties reached an agreement-in-principle to settle the Action.

20.     **Entry of Final Judgment** – There is no just reason to delay the entry of this Judgment as a final judgment in this Action.  Accordingly, the Clerk of the Court is expressly directed to immediately enter this final judgment in this Action.

SO ORDERED this __15th__ day of __September__ 2022.


_____
The Honorable George C. Hanks, Jr.
United States District Judge


11

# EXHIBIT 9P

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE WELLS FARGO & COMPANY SECURITIES LITIGATION | Case No. 1:20-cv-04494-JLR-SN |

**ORDER AWARDING**
**ATTORNEYS' FEES AND LITIGATION EXPENSES**

This matter came on for hearing on September 8, 2023 (the "Settlement Hearing") on Lead Counsel's motion for attorneys' fees and Litigation Expenses.  The Court having considered all matters submitted to it at the Settlement Hearing and otherwise; it appearing that: (i) the Notice of the Settlement Hearing was mailed to all Settlement Class Members who or which could be identified with reasonable effort substantially in the form approved by the Court and (ii) a summary notice of the hearing substantially in the form approved by the Court was published in *The Wall Street Journal* and *Investor's Business Daily* and released over *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and Litigation Expenses requested; and, for the reasons set forth more fully at the Settlement Hearing,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.    This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated May 8, 2023 (ECF No. 178-1), and as amended on August 31, 2023 (the "Stipulation") and all terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2.    The Court has jurisdiction to enter this Order and over the subject matter of the Action and all parties to the Action, including all Settlement Class Members.

3.      Notice of Lead Counsel's motion for attorneys' fees and Litigation Expenses was given to all Settlement Class Members who could be identified with reasonable effort.  The form and method of notifying the Settlement Class of the motion for attorneys' fees and expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(7), and due process; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all persons and entities entitled thereto.

4.      Plaintiffs' Counsel are hereby awarded attorneys' fees in the amount of 18% of the Settlement Fund, net of Litigation Expenses awarded, plus interest earned at the same rate as the Settlement Fund.  Plaintiffs' Counsel are also hereby awarded $1,130,909.85 for payment of their litigation expenses.  These attorneys' fees and expenses shall be paid from the Settlement Fund and the Court finds these sums to be fair and reasonable.  Lead Counsel shall allocate the attorneys' fees awarded among Plaintiffs' Counsel in a manner in which they, in good faith, believe reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.

5.      In making this award of attorneys' fees and payment of litigation expenses from the Settlement Fund, the Court has considered and found that:

a.      The Settlement has created a fund of $1,000,000,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Settlement Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Plaintiffs' Counsel;

b.      The requested fee has been reviewed and approved as reasonable by all four Lead Plaintiffs, institutional investors that actively supervised the Action, and is below the

2

fee permitted under the most restrictive of the retention agreements entered into between Lead Plaintiffs and Lead Counsel at the outset of the litigation;

      c.      Copies of the Notice were mailed to over 1,835,000 potential Settlement Class Members and nominees stating that Lead Counsel would apply for attorneys' fees in an amount not to exceed 19% of the Settlement Fund and payment of Litigation Expenses in an amount not to exceed $2,000,000.  Three objections to the requested award of attorneys' fees were submitted (by Patricia A. White, Larry D. Killion, and Charles Aaron McIntyre), and each of these objections are overruled;

      d.      Lead Counsel conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

      e.      The Action raised a number of complex issues;

      f.      Had Lead Counsel not achieved the Settlement there would remain a significant risk that Lead Plaintiffs and the other members of the Settlement Class may have recovered less or nothing from Defendants;

      g.      The amount of attorneys' fees awarded and expenses to be paid from the Settlement Fund are fair and reasonable and consistent with awards in similar cases on a percentage basis and when considering a lodestar cross-check.

6.      Lead Plaintiff Handelsbanken Fonder AB is hereby awarded $62,650.00 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

7.      Lead Plaintiff Public Employees' Retirement System of Mississippi is hereby awarded $17,550.00 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

8.      Louisiana Sheriffs' Pension & Relief Fund is hereby awarded $3,400.00 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

9.      Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

10.     Exclusive jurisdiction is hereby retained over the Parties and the Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

11.     In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

12.     There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this __8th__ day of ___September___ 2023.

_____
The Honorable Jennifer L. Rochon
United States District Judge

4

# EXHIBIT 9Q

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

| | |
|---|---|
| IN RE WILLIS TOWERS WATSON PLC PROXY LITIGATION | Master File No. 1:17-cv-1338-AJT-JFA <br><br> <u>CLASS ACTION</u> |

## JUDGMENT APPROVING CLASS ACTION SETTLEMENT

WHEREAS, a securities class action is pending in this Court styled *In re Willis Towers Watson plc Proxy Litigation*, Master File No. 1:17-cv-1338-AJT-JFA (E.D. Va.) (the "Action");

WHEREAS, (a) Lead Plaintiff The Regents of the University of California ("Lead Plaintiff"), on behalf of itself and the Class (defined below), and (b) defendants Willis Towers Watson plc ("WTW"), Towers Watson & Co. ("Towers") (n/k/a WTW Delaware Holdings LLC), Willis Group Holdings plc ("Willis") (n/k/a Willis Towers Watson plc), and ValueAct Capital Management, L.P. ("ValueAct") (collectively, the "Corporate Defendants"), and John J. Haley, Dominic Casserley, and Jeffrey Ubben (collectively, the "Individual Defendants," together with the Corporate Defendants, "Defendants," and, together with Lead Plaintiff, the "Parties") have entered into a Stipulation and Agreement of Settlement dated January 15, 2021 (the "Stipulation"), that provides for a complete dismissal with prejudice of the claims asserted against Defendants in the Action on the terms and conditions set forth in the Stipulation, subject to the approval of this Court (the "Settlement");

WHEREAS, unless otherwise defined in this Judgment, the capitalized terms herein shall have the same meaning as they have in the Stipulation;

WHEREAS, by Order dated January 21, 2021 (the "Preliminary Approval Order"), this Court: (a) found, pursuant to Rule 23(e)(1)(B) of the Federal Rules of Civil Procedure, that it

would likely be able to approve the Settlement as fair, reasonable, and adequate under Rule 23(e)(2); (b) ordered that notice of the proposed Settlement be provided to potential Class Members; (c) provided Class Members with the opportunity either to exclude themselves from the Class or to object to the proposed Settlement; and (d) scheduled a hearing regarding final approval of the Settlement;

WHEREAS, due and adequate notice has been given to the Class;

WHEREAS, the Court conducted a hearing on May 21, 2021 (the "Settlement Hearing") to consider, among other things, (a) whether the terms and conditions of the Settlement are fair, reasonable, and adequate to the Class, and should therefore be approved; and (b) whether a judgment should be entered dismissing the Action with prejudice as against the Defendants; and

WHEREAS, the Court having reviewed and considered the Stipulation, all papers filed and proceedings held herein in connection with the Settlement, all oral and written comments received regarding the Settlement, and the record in the Action, and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. **Jurisdiction** – The Court has jurisdiction over the subject matter of the Action, and all matters relating to the Settlement, as well as personal jurisdiction over all of the Parties and each of the Class Members.

2. **Incorporation of Settlement Documents** – This Judgment incorporates and makes a part hereof: the Stipulation and the Notice and the Summary Notice, each of which was filed with the Court on January 15, 2021.

3. **The Certified Class** – The "Class" means the class certified in the Court's order dated September 4, 2020, as modified by the Court's order dated November 4, 2020, and includes: all persons and entities that were Towers shareholders, including shareholders of record and

2

beneficial owners, as of both October 1, 2015, the record date for Towers shareholders to be eligible to vote on the Merger of Towers and Willis, and January 4, 2016, the date the Merger transaction between Towers and Willis closed, and who were allegedly damaged thereby. Excluded from the Class by definition are: Defendants; the members of the Immediate Family of any Individual Defendant; any person who was an Officer or director of WTW, Willis, Towers, or ValueAct as of October 1, 2015; any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest; any employee retirement and benefit plans of WTW, Willis, Towers, or ValueAct; Defendants' directors' and officers' liability insurance carriers and any affiliates or subsidiaries of those carriers; any Towers shareholder that completed the exercise of his, her, or its right to appraisal of his, her or its shares under Delaware law, including through a settlement of any litigation initiated by any former Towers shareholder to pursue appraisal rights related to the Merger; and the legal representatives, agents, affiliates, heirs, successors-in-interest, or assigns of any of the foregoing excluded parties. To be a Class Member, a person or entity does not need to have held all the Towers shares that he, she, or it owned on October 1, 2015 until January 4, 2016. He, she, or it need only have continued to own at least some of that Towers common stock that he, she, or it held on October 1, 2015 as of January 4, 2016. A person or entity is excluded from the Class if he, she, or it sold all of his, her, or its Towers shares before January 4, 2016. Any of a Class Member's shares which were sold between October 1, 2015 and January 4, 2016 will be excluded from that Class Member's pro rata recovery in the Settlement, and if a Class Member held more Towers shares on January 4, 2016 than he, she, or it held on October 1, 2015, then only the shares held on October 1, 2015 will be eligible for recovery in the Settlement. Also excluded from the Class is the person listed on Exhibit 1 to this Judgment who is excluded from the Class pursuant to request.

3

4.    **Notice** – The Court finds that the dissemination of the Notice and the publication of the Summary Notice: (a) were implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of (i) the pendency of the Action; (ii) the effect of the proposed Settlement (including the Releases to be provided thereunder); (iii) Lead Counsel's motion for attorneys' fees and Litigation Expenses; (iv) their right to object to any aspect of the Settlement, the Plan of Allocation, and/or Lead Counsel's motion for attorneys' fees and Litigation Expenses; (v) their right to exclude themselves from the Class; and (vi) their right to appear at the Settlement Hearing; (d) constituted due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable laws and rules.

5.    **Final Settlement Approval and Dismissal of Claims** – Pursuant to, and in accordance with, Rule 23(e)(2) of the Federal Rules of Civil Procedure, this Court hereby fully and finally approves the Settlement set forth in the Stipulation in all respects (including, without limitation, the amount of the Settlement, the Releases provided for therein, and the dismissal with prejudice of the claims asserted against Defendants in the Action), and finds that the Settlement is, in all respects, fair, reasonable, and adequate to the Class. Specifically, the Court finds that (a) Lead Plaintiff and Lead Counsel have adequately represented the Class; (b) the Settlement was negotiated by the Parties at arm's-length; (c) the relief provided to the Class under the Settlement is adequate, taking into account the costs, risks, and delay of trial and appeal, the proposed means of distributing the Settlement Fund to the Class, and the proposed attorneys' fee award; and (d) the

4

Settlement treats members of the Class equitably relative to each other. The Parties are directed to implement, perform, and consummate the Settlement in accordance with the terms and provisions contained in the Stipulation.

6. Defendants have complied with the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, et seq. Defendants timely mailed notice of the Settlement pursuant to 28 U.S.C. § 1715(b), including notices to the Attorney General of the United States of America, and the Attorneys General of each State. The CAFA notice contains the documents and information required by 28 U.S.C. § 1715(b)(1)-(8). The Court finds that Defendants have complied in all respects with the requirements of 28 U.S.C. § 1715.

7. The Action and all of the claims asserted against Defendants in the Action by Lead Plaintiff and the other Class Members are hereby dismissed. Upon the Effective Date of the Settlement, without further action by anyone, this dismissal shall be with prejudice. The Parties shall each bear their own costs and expenses, except as otherwise expressly provided in the Stipulation.

8. **Binding Effect** – The terms of the Stipulation and of this Judgment shall be forever binding on Defendants, Lead Plaintiff, and all other Class Members (regardless of whether or not any individual Class Member submits a Claim Form or seeks or obtains a distribution from the Net Settlement Fund), as well as their respective successors and assigns. The person listed on Exhibit 1 hereto is excluded from the Class pursuant to request and is not bound by the terms of the Stipulation or this Judgment.

9. **Releases** – The Releases set forth in paragraphs 5 and 6 of the Stipulation, together with the definitions contained in paragraph 1 of the Stipulation relating thereto, are expressly

5

incorporated herein in all respects. The Releases are effective as of the Effective Date. Accordingly, this Court orders that:

(a)     Without further action by anyone, and subject to paragraph 10 below, upon the Effective Date of the Settlement, Lead Plaintiff and each of the other Class Members, on behalf of themselves, and their respective legal representatives, heirs, executors, administrators, estates, predecessors, successors, predecessors-in-interest, successors-in-interest, and assigns, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, in their respective capacities as such, shall be deemed to have, and by operation of law and of this Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Plaintiffs' Claim against Defendants and the Defendants' Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiffs' Claims against any of the Defendants' Releasees.

(b)     Without further action by anyone, and subject to paragraph 10 below, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and their respective legal representatives, heirs, executors, administrators, estates, predecessors, successors, predecessors-in-interest, successors-in-interest, and assigns, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, in their respective capacities as such, shall be deemed to have, and by operation of law and of this Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Defendants' Claim against Lead Plaintiff and the Plaintiffs' Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiffs' Releasees. This Release shall not apply to the person listed on Exhibit 1 hereto.

10.     Notwithstanding paragraphs 9(a) – (b) above, nothing in this Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of the Stipulation or this Judgment.

11.     **Rule 11 Findings** – The Court finds and concludes that the Parties and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and settlement of the Action.

12.     **No Admissions** – Neither this Judgment, the Settlement (whether or not consummated), the Stipulation, including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of the Stipulation, nor any proceedings taken pursuant to or in connection with the Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a)     shall be offered against any of the Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of, any presumption, concession, or admission by any of the Defendants' Releasees with respect to the truth of any fact alleged by Lead Plaintiff or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants' Releasees or in any way referred to for any other reason as against any of the Defendants' Releasees, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation;

7

(b)     shall be offered against any of the Plaintiffs' Releasees, as evidence of, or construed as, or deemed to be evidence of, any presumption, concession or admission by any of the Plaintiffs' Releasees that any of their claims are without merit, that any of the Defendants' Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault, or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Plaintiffs' Releasees, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; or

(c)     shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given under the Settlement represents the amount which could be or would have been recovered after trial;

*provided, however,* that the Parties and the Releasees and their respective counsel may refer to this Judgment and the Stipulation to effectuate the protections from liability granted hereunder and thereunder or otherwise to enforce the terms of the Settlement.

13.     **Retention of Jurisdiction** – Without affecting the finality of this Judgment in any way, this Court retains continuing and exclusive jurisdiction over: (a) the Parties for purposes of the administration, interpretation, implementation, and enforcement of the Settlement; (b) the disposition of the Settlement Fund; (c) any motion for an award of attorneys' fees and/or Litigation Expenses by Lead Counsel in the Action that will be paid from the Settlement Fund; (d) any motion to approve the Plan of Allocation; (e) any motion to approve the Class Distribution Order; and (f) the Class Members, for all matters relating to the Action.

14.     Separate orders shall be entered regarding approval of a plan of allocation and the motion of Lead Counsel for attorneys' fees and Litigation Expenses. Such orders, or any appeal from any order relating thereto or reversal or modification thereof, shall in no way affect or delay the finality of this Judgment and shall not affect or delay the Effective Date of the Settlement.

15.     **Modification of the Stipulation** – Without further approval from the Court, Lead Plaintiff and Defendants are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this Judgment; and (b) do not materially limit the rights of Class Members in connection with the Settlement. Without further order of the Court, Lead Plaintiff and Defendants may agree to reasonable extensions of time to carry out any provisions of the Settlement.

16.     **Termination of Settlement** – If (a) the Settlement is terminated as provided in the Stipulation or the Supplemental Agreement or (b) the Effective Date of the Settlement otherwise fails to occur, then this Judgment shall be vacated and rendered null and void, and shall be of no further force and effect, except as otherwise provided by the Stipulation, and this Judgment shall be without prejudice to the rights of Lead Plaintiff, the other Class Members, and Defendants, and the Parties shall revert to their respective positions in the Action as of November 19, 2020, as provided in the Stipulation.

17.     **Entry of Final Judgment** – There is no just reason to delay the entry of this Judgment as a final judgment in this Action. Accordingly, the Clerk of the Court is expressly directed to immediately enter this final Judgment in this Action.

SO ORDERED this ___21st___ day of ___May___, 2021.

_____
Anthony J. Trenga
United States District Judge
The Honorable Anthony J. Trenga
United States District Judge

#3023669

10

# EXHIBIT 9R

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |
|---|
| IN RE WILLIS TOWERS WATSON PLC PROXY LITIGATION |

Master File No. 1:17-cv-1338-AJT-JFA

<u>CLASS ACTION</u>

**ORDER AWARDING
<u>ATTORNEYS' FEES AND LITIGATION EXPENSES</u>**

This matter came on for hearing on May 21, 2021 (the "Settlement Hearing") on Lead

Counsel's motion for an award of attorneys' fees and Litigation Expenses. The Court having

considered all matters submitted to it at the Settlement Hearing and otherwise; and it appearing that

notice of the Settlement Hearing substantially in the form approved by the Court was mailed to all

Class Members who or which could be identified with reasonable effort, and that a summary notice

of the hearing substantially in the form approved by the Court was published in *The Wall Street*

*Journal* and released over the *PR Newswire* pursuant to the specifications of the Court; and the Court

having considered and determined the fairness and reasonableness of the award of attorneys' fees

and Litigation Expenses requested,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      This Order incorporates by reference the definitions in the Stipulation and Agreement

of Settlement dated January 15, 2021 (ECF No. 330-1) (the "Stipulation") and all terms not

otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2.      The Court has jurisdiction to enter this Order and over the subject matter of the

Action and all Parties to the Action, including all Class Members.

3.      Plaintiffs' Counsel are hereby awarded attorneys' fees in the amount of 16% of the

Settlement Fund, and $1,658,540.74 in payment of Plaintiffs' Counsel's litigation expenses (which

fees and expenses shall be paid from the Settlement Fund), which sums the Court finds to be fair and reasonable. Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which it, in good faith, believes reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.

4. In making this award of attorneys' fees and payment of expenses from the Settlement Fund, the Court has considered and found that:

(a) The Settlement has created a fund of $75,000,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Plaintiffs' Counsel;

(b) The requested fee has been reviewed and approved as reasonable by Lead Plaintiff, a sophisticated institutional investor that actively supervised the Action;

(c) Copies of the Notice were mailed to over 70,000 potential Class Members and nominees stating that Lead Counsel would apply for attorneys' fees in an amount not to exceed 25% of the Settlement Fund and for Litigation Expenses in an amount not to exceed $2,000,000, and no objections to the requested attorneys' fees and Litigation Expenses were received;

(d) Plaintiffs' Counsel conducted the litigation and achieved the Settlement with skill, perseverance, and diligent advocacy;

(e) The Action raised a number of complex issues;

(f) Had Plaintiffs' Counsel not achieved the Settlement there would remain a significant risk that Lead Plaintiff and the other members of the Class may have recovered less or nothing from Defendants;

2

(g)     Plaintiffs' Counsel devoted more than 30,300 hours, with a lodestar value of $16,146,827.50, to achieve the Settlement; and

(h)     The amount of attorneys' fees awarded and expenses to be paid from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

5.     Lead Plaintiff The Regents of the University of California is hereby awarded $17,878.00 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Class.

6.     Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

7.     Exclusive jurisdiction is hereby retained over the Parties and the Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

8.     In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

9.     There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this _21st_ day of _May_, 2021.

_____
Anthony J. Trenga
United States District Judge
The Honorable Anthony J. Trenga
United States District Judge

3

# EXHIBIT 9S

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| JULIAN KEIPPEL, Individually and On Behalf of All Others Similarly Situated, | CASE NO. 8:19-CV-00421-WFJ-CPT |
| Plaintiff, | CLASS ACTION |
| v. | |
| HEALTH INSURANCE INNOVATIONS, INC. n/k/a BENEFYTT TECHNOLOGIES, INC., GAVIN SOUTHWELL, and MICHAEL D. HERSHBERGER, | |
| Defendants. | |

**ORDER AWARDING ATTORNEYS' FEES AND
LITIGATION EXPENSES**

This matter came on for hearing on March 23, 2021 (the "Settlement Hearing") on Lead Plaintiffs' motion for attorneys' fees and litigation expenses. The Court having considered all matters submitted to it at the Settlement Hearing and otherwise; and it appearing that notice of the Settlement Hearing substantially in the form approved by the Court was mailed to all Settlement Class Members who or which could be identified with reasonable effort, and that a summary notice of the hearing substantially in the form approved by the Court was published in *Investor's Business Daily* and was transmitted over the *PR Newswire* pursuant to the specifications of the

1

Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and litigation expenses requested,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated December 3, 2020 (ECF No. 100-2) (the "Stipulation"), and all terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2. The Court has jurisdiction to enter this Order and over the subject matter of the Action and all parties to the Action, including all Settlement Class Members.

3. Notice of Lead Plaintiffs' motion for an award of attorneys' fees and litigation expenses was given to all Settlement Class Members who could be identified with reasonable effort. The form and method of notifying the Settlement Class of the motion for an award of attorneys' fees and litigation expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-4(a)(7)), due process, and all other applicable laws and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4. Lead Counsel for the Settlement Class are hereby awarded attorneys' fees in the amount of one-third of the Settlement Fund, or $3,666,666.67, plus accrued interest, and $377,837.59 in reimbursement of litigation expenses (which fees and expenses shall be paid from the Settlement Fund), which sums the Court finds to be

fair and reasonable. Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which it, in good faith, believes reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.

5.     In making this award of attorneys' fees and litigation expenses to be paid from the Settlement Fund, the Court has considered and found that:

a)     The Settlement has created a fund of $11,000,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Settlement Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Lead Counsel;

b)     The requested fee has been reviewed and approved as reasonable by Lead Plaintiffs;

c)     Copies of the Notice were mailed to 25,531 potential Settlement Class Members and nominees stating that Lead Counsel would apply for attorneys' fees in an amount not to exceed one-third of the Settlement Fund and for litigation expenses in an amount not to exceed $450,000, and no objections to the requested attorneys' fees and expenses were received;

d)     Lead Counsel conducted the litigation and achieved the Settlement with skill, perseverance, and diligent advocacy;

e)     The Action raised a number of complex issues;

3

f) Had Lead Counsel not achieved the Settlement, there would remain a significant risk that Lead Plaintiffs and the other members of the Settlement Class may have recovered less or nothing from Defendants;

g) Plaintiffs' Counsel devoted over 9,480 hours, with a lodestar value of over $4.8 million, to achieve the Settlement; and

h) The amount of attorneys' fees awarded and expenses to be reimbursed from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

6. In accordance with 15 U.S.C. § 78u-4(a)(4), Lead Plaintiff City of Birmingham Retirement and Relief System is hereby awarded $7,503.75 from the Settlement Fund, and Lead Plaintiff Oklahoma Municipal Retirement Fund is hereby awarded $7,069.55 from the Settlement Fund, as reimbursement for their reasonable costs and expenses directly related to their representation of the Settlement Class.

7. Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

8. Exclusive jurisdiction is hereby retained over the parties and the Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

9.      In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

10.      Lead Plaintiffs' Motion for Attorneys' Fees and Litigation Expenses (Dkt. 106) is granted. There is no just reason for delay in the entry of this Order. The Clerk is directed to enter final judgment for attorneys' fees and expenses consistent with this Order.


**SO ORDERED** this 23rd day of March, 2021.


_____

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

# EXHIBIT 9T

IN THE UNITED STATES DISRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

GABBY KLEIN, *et al.*,
        Plaintiffs,

v.
                                      Civil No. 3:20cv75 (DJN)

ALTRIA GROUP, INC. *et al.*,
        Defendants.

## SCHEDULING ORDER

This matter comes before the Court following an on-the-record status call with the parties. The Court hereby ORDERS that this case will proceed on the following schedule:

1. Not later than July 2, 2021, the parties shall conduct a mediation with a private mediator and file a joint status report within ten (10) days following the mediation;

2. Not later than November 24, 2021, the parties shall complete all discovery in this matter;

3. Not later than January 21, 2022, the parties shall file all dispositive motions;

4. Not later than February 18, 2022, the parties shall file responses to dispositive motions;

5. Not later than March 11, 2022, the parties may file any reply in support of dispositive motions; and,

6. Following the resolution of the parties' dispositive motions, the Court will set a trial date.

Further, the parties are hereby ORDERED to meet and confer regarding a schedule that incorporates the above deadlines and jointly file a proposed schedule with the Court within ten (10) days of the entry hereof.

Let the Clerk file a copy of this Order electronically and notify all counsel of record.

It is so ORDERED.

                                 /s/
                               David J. Novak
                               United States District Judge

Richmond, Virginia
Dated: April 14, 2021

# EXHIBIT 9U

IN THE UNITED STATES DISRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

GABBY KLEIN, *et al.*,
          Plaintiffs,

      v.                           Civil No. 3:20cv75 (DJN)

ALTRIA GROUP, INC. *et al.*,
          Defendants.

## SCHEDULING ORDER

This matter comes before the Court for scheduling purposes. The Court previously entered a Scheduling Order (ECF No. 173) setting deadlines for discovery and dispositive motions and further ordered the parties to file a jointly proposed schedule incorporating the Court's deadlines. However, rather than submitting a jointly proposed schedule, the parties filed competing proposed schedules. (ECF Nos. 189-90, 193.) After reviewing the parties' proposed schedules, the Court hereby ORDERS that this case will proceed on the following schedule:

### Class Certification Schedule

1.     Not later than May 30, 2021, Defendant shall serve document requests on Plaintiffs;

2.     Not later than July 9, 2021, Plaintiffs shall produce documents on a rolling basis;

3.     Not later than August 6, 2021, Plaintiff shall file any motion for class certification and related expert reports;

4.     Not later than August 20, 2021, Defendants shall depose Plaintiffs;

5.     Not later than August 26, 2021, Defendants shall depose Plaintiffs' experts;

6.     Not later than September 17, 2021, Defendants shall file oppositions to Plaintiffs' class certification motion and their expert reports;

7. Not later than October 1, 2021, Plaintiffs shall depose Defendants' experts; and

8. Not later than October 14, 2021, Plaintiffs may file their reply in support of their class certification motion.

**Pre-Trial Schedule**

9. Not later than April 23, 2021, the parties should have exchanged initial disclosures, to include the identification of the confidential witnesses;

10. Not later than May 12, 2021, the parties shall submit a jointly agreed upon protective order, ESI order and 502 clawback order for entry by the Court;

11. Not later than May 30, 2021, Defendants shall produce the responsive, relevant documents that they have produced to government entities that have been produced in the MDL;

12. Not later than July 2, 2021, the parties shall have substantially completed document production;

13. Not later than July 30, 2021, the parties shall have completed document production;

14. Not later than August 5, 2021, the parties shall have completed the production of privilege logs;

15. Not later than August 6, 2021, the parties may seek leave to amend the pleadings or add any parties;

16. Not later than October 1, 2021, fact discovery shall close.

17. Not later than October 22, 2021, the parties shall exchange trial expert reports;

18. Not later than November 12, 2021, the parties shall exchange rebuttal expert reports;

19. Not later than November 24, 2021, all discovery shall close;

20.     Not later than January 21, 2022, all summary judgment motions shall be filed;

21.     Not later than February 18, 2022, all oppositions to summary judgment motions shall be filed;

22.     Not later than March 11, 2022, all replies in support of summary judgment motions shall be filed; and

23.     Following the resolution of the parties' summary judgment motions, the Court will set a date for trial.

### Defendant Crosthwaite's Summary Judgment Motion[1]

24.     Not later than 30 days following Defendant Crosthwaite's completion of document production, Plaintiffs shall take the deposition of Defendant Crosthwaite;

25.     Not later than September 7, 2021, Defendant Crosthwaite shall file his summary judgment motion[2];

26.     Not later than October 8, 2021, Plaintiffs shall file their opposition to Defendant Crosthwaite's summary judgment motion; and

27.     Not later than October 22, 2021, Defendant Crosthwaite shall file his reply in support of his summary judgment motion.

### Discovery Procedures

28.     Counsel are expected to resolve discovery disputes without filing motions or involving the Court.  Should a dispute arise, consistent with Local Rule 37(E), counsel must confer in good faith to resolve the dispute.  "Good faith" means that the parties have met in

---

[1]     If, at any time before the deadlines set herein, Plaintiffs and Defendant Crosthwaite agree that sufficient discovery has occurred for Plaintiffs to respond to a summary judgment motion from Defendant Crosthwaite, they may jointly move to amend this scheduling order to further expedite the briefing on Defendant Crosthwaite's summary judgment motion.

[2]     Provided that Plaintiffs have deposed Defendant Crosthwaite by this date, or that their time to depose him has expired.

3

person and engaged in one-on-one discussions, not that the parties have merely exchanged correspondence. If, after good faith effort, counsel are unable to resolve a dispute and need the Court to intervene, the parties shall file a joint motion not exceeding twenty (20) pages in length setting forth (1) the posture of the case, (2) the nature of the discovery dispute, (3) the efforts made by the parties to resolve the dispute, (4) the position of each party regarding the dispute, (5) whether a hearing is necessary to address the issue, and (6) a certification under Local Rule 37(E) signed by counsel for each party that they have met in person and conferred in good faith to resolve the dispute before involving the Court. The Court strongly prefers that the parties file a joint motion, so that the dispute can be addressed in an expedited manner. In extraordinary situations where the parties believe that a joint pleading is not feasible, the parties must file a motion for leave to file separate submissions, setting forth the reasons that a joint submission cannot suffice. The parties must file any motions with sufficient time for the Court to resolve the dispute before the completion of discovery, because the Court will not extend the discovery deadline due to a dispute except in extraordinary circumstances. Counsel are reminded that discovery disputes requiring judicial intervention are strongly disfavored and that the Court will impose sanctions pursuant to Rule 37 and Local Rule 37 against any party not acting in good faith to resolve a dispute before involving the Court. *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (recognizing a trial court's inherent authority to control the litigation of a case and impose sanctions for abuse of the judicial process); *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642-43 (1976) (affirming the power of district courts to, in their discretion, issue Rule 37 sanctions).

29. No discovery materials shall be filed with the Clerk except by order of the Court.

30. If a party objects to the production of documents on the grounds of attorney-client

4

privilege, attorney work-product doctrine, or any other protection, the objecting party must provide the requesting party with an inventory list of the documents to which objection is made (i.e., a privilege log), together with a brief description of the document, including the date, the author, identity of each recipient including their job titles at the pertinent time, and the claimed basis for its protection, all of which shall be sufficient to permit the opposing party to assess the claim of privilege or protection. Unless otherwise ordered by the Court, the claim of privilege or protection shall be waived unless the privilege log is served with the responses to the request for production or by the deadline established by this Order.

Let the Clerk send a copy of this Order to all counsel of record.

It is so ORDERED.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Date: May 5, 2021

5

# EXHIBIT 9V

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Richmond Division)**

| | | |
|---|---|---|
| GABBY KLEIN, et al., Individually and on Behalf of All Others Similarly Situated, | ) | Civil Action No. 3:20-cv-00075-DJN |
| | ) | |
| | ) | <u>CLASS ACTION</u> |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ALTRIA GROUP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**LEAD COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR AN AWARD OF ATTORNEYS' FEES AND
EXPENSES AND AWARDS TO LEAD PLAINTIFFS
<u>PURSUANT TO 15 U.S.C. § 78u-4(a)(4)</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................. 1

II.     THE REQUESTED ATTORNEYS' FEES ARE REASONABLE.................................... 4

      A.      The Settlement Creates a Common Fund from Which a "Percentage-of-the-Fund" Fee Would Be Appropriate ................................................................ 4

      B.      Lead Counsel's Fee Request Is Fair and Reasonable Under Fourth Circuit Authority ........................................................................................... 6

            1.      Lead Counsel Obtained an Exceptional Result for the Settlement Class ... 8

            2.      The Presence or Absence of Substantial Objections by Members of the Settlement Class........................................................................... 9

            3.      Lead Counsel Are Skilled and Efficient Litigators................................... 9

            4.      The Duration and Complexity of This Action Support the Requested Fee ................................................................................................. 10

            5.      Lead Counsel Faced the Significant Risk of Nonpayment ...................... 12

            6.      Plaintiffs' Counsel Necessarily Devoted Over 28,000 Hours Prosecuting This Action................................................................... 14

            7.      Public Policy Considerations Support the Requested Fee ....................... 15

            8.      Thirty Percent of the Settlement Amount Is a Reasonable Fee Award .... 15

            9.      A Cross-Check of Plaintiffs' Counsel's Lodestar Confirms the Reasonableness of the Fee Request ....................................................... 17

III.    LEAD COUNSEL'S REQUEST FOR AN AWARD OF LITIGATION EXPENSES AND CHARGES IS REASONABLE .............................................................................. 22

IV.     THE REQUESTED PSLRA AWARDS TO THE LEAD PLAINTIFFS ARE REASONABLE ...................................................................................................... 23

V.      CONCLUSION...................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
14-cv-7126 (JMF), 2018 WL 6250657 (S.D.N.Y. Nov. 29, 2018) .........................................24

*Anwar v. Fairfield Greenwich Ltd. Grp.*,
No. 1:09-cv-00118 (S.D.N.Y. Nov. 20, 2015), Dkt. No. 1457.........................................16, 19

*Archbold v. Wells Fargo Bank, N.A.*,
No. 3:13-CV-24599, 2015 WL 4276295 (S.D. W. Va. July 14, 2015) ....................................5

*Barber v. Kimbrell's, Inc.*,
577 F.2d 216 (4th Cir. 1978) ...................................................................................................7

*Blum v. Stenson*,
465 U.S. 886 (1984)..................................................................................................................5

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)..................................................................................................................4

*Boyd v. Coventry Health Care Inc.*,
299 F.R.D. 451 (D. Md. 2014)..................................................................................................8

*Camden I. Condo. Ass'n, Inc. v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) ..................................................................................................5

*City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank N.A.*,
No. 0:10-cv-04372 (D. Minn. Aug. 18, 2014), Dkt. No. 686.................................................16

*Deem v. Ames True Temper, Inc.*,
No. 6:10-CV-01339, 2013 WL 2285972 (S.D. W. Va. May 23, 2013)....................................6

*Galloway v. Williams*,
No. 3:19-CV-470, 2020 WL 7482191 (E.D. Va. Dec. 18, 2020) (Payne, J.) ...........................7

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2nd Cir. 2000)..................................................................................................5, 7

*Good v. W. Virginia-Am. Water Co.*,
No. 14- 1374, 2017 WL 2884535 (S.D. W. Va. July 6, 2017) ...............................................10

*Gottlieb v. Barry*,
43 F.3d 474 (10th Cir. 1994) ....................................................................................................5

*Grae v. Corrections Corp. of Am. et al.*,
   No. 3:16-cv-02267 (M.D. Tenn. Nov. 8, 2021), Dkt. No. 478 ...............................................16

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000)......................................................................................................7

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   134 S. Ct. 2398 (2014).............................................................................................................11

*Heien v. Archstone*,
   837 F.3d 97 (1st Cir. 2016).......................................................................................................5

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)...................................................................................................................8

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
   No. 09 MDL 2058 (PKC), 2013 WL 12091355 (S.D.N.Y. Apr. 8, 2013), *aff'd*,
   772 F.3d 125 (2d Cir. 2014).....................................................................................................24

*In re Busporine Antitrust Litig.*,
   No. 1:01-md-01410 (S.D.N.Y. Apr. 11, 2003) .........................................................................16

*In re Celebrex (Celecoxib) Antitrust Litig.*,
   No. 2:14-CV-00361, 2018 WL 2382091 (E.D. Va. Apr. 18, 2018) ..............................7, 15, 19

*In re Colgate-Palmolive Co. ERISA Litig.*,
   36 F. Supp. 3d 344 (S.D.N.Y. 2014)........................................................................................19

*In re Comput. Sci. Corp. Sec. Litig.*,
   No. Civ. A. 1:11-cv-610-TSE-LDD, 2013 WL 12155436 (E.D. Va. Sept. 20,
   2013) ...................................................................................................................................23, 24

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ...............................25

*In re Genworth Sec. Litig.*,
   210 F. Supp. 3d 837 (E.D. Va. 2016) (Gibney, J.) .......................................................... *passim*

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3rd Cir. 1995) .......................................................................................................5

*In re Initial Public Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009).......................................................................................15

*In re Linerboard Antitrust Litig.*,
   No. CIV.A. 98-5055, 2004 WL 1221350 (E.D. Pa. June 2, 2004), *amended*,
   No. CIV.A. 98-5055, 2004 WL 1240775 (E.D. Pa. June 4, 2004) ...........................................10

*In re Lloyd's Am. Trust Fund Litig.*,
No. 96-cv-1262 RWS, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .................................19

*In re Massey Energy Co. Securities Litigation*,
C. A. No. 5:10-cv-00689-ICB (S.D. W. Va. June 4, 2014) .......................................................24

*In re Merrill Lynch Tyco Research Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) ..............................................................................................15

*In re MicroStrategy, Inc. Sec. Litig.*,
172 F. Supp. 2d 778 (E.D. Va. 2001) .................................................................15, 17, 18, 20

*In re Mills Corp. Sec. Litig.*,
265 F.R.D. 246 (E.D. Va. 2009) ........................................................................................ *passim*

*In re Neustar, Inc. Sec. Litig.*,
No. 1:14CV885, 2015 WL 8484438 (E.D. Va. Dec. 8, 2015).................................................20

*In re Prudential Ins. Co. Am. Sales Litig.*,
148 F.3d 283 (3d Cir. 1998)........................................................................................................6

*In re Remeron Direct Purchaser Antitrust Litig.*,
No. CIV.03- 0085 FSH, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ........................................17

*In re Rent-Way Sec. Litig.*,
305 F. Supp. 2d 491 (W.D. Pa. 2003)........................................................................................13

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
461 F. Supp. 2d 383 (D. Md. 2006) ..........................................................................................18

*In re Telik, Inc., Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008).......................................................................................19

*In re Tronox, Inc. Sec. Litig.*,
No. 09-cv-6220 (SAS) (S.D.N.Y. Nov. 26, 2012), Dkt. No. 202...........................................24

*Johnson v. Georgia Highway Exp., Inc.*,
488 F.2d 714 (5th Cir. 1974) ......................................................................................................7

*Jones v. Dominion Res. Servs., Inc.*,
601 F. Supp. 2d 756 (S.D. W. Va. 2009).............................................................5, 11, 15, 17

*Landmen Partners, Inc., et al. v. The Blackstone Group, L.P., et al.*,
No. 1:08-cv-03601 (S.D.N.Y. Dec. 18, 2013), Dkt. No. 191 ..........................................15, 19

*Manuel v. Wells Fargo Bank, Nat'l Ass'n*,
No. 3:14CV238 (DJN), 2016 WL 1070819 (E.D. Va. Mar. 15, 2016) ....................................5

*Nieman v. Duke Energy Corp.*,
No. 3:12-cv-00456 (W.D.N.C. Nov. 2, 2015) ........................................................................24

*Oppenheimer Rochester Funds Grp. Sec. Litig.*,
No. 1:09-md-02063 (D. Colo. Sept. 5, 2014), Dkt. No. 527 .............................................16, 19

*Peace Officers' Annuity and Benefit Fund of Georgia, et al. v. DaVita Inc., et al.*,
No. 1:17-cv-00304 (D. Colo. July 15, 2021), Dkt. No. 122 ...............................................16, 19

*Phillips v. Triad Guar. Inc.*,
No. 1:09CV71, 2016 WL 2636289 (M.D.N.C. May 9, 2016)...................................................12

*Rawa v. Monsanto Co.*,
934 F.3d 862 (8th Cir. 2019) .....................................................................................................5

*Rawlings v. Prudential- Bache Props., Inc.*,
9 F.3d 513 (6th Cir. 1993) .........................................................................................................5

*Ret. Sys. v. Bank of Am. Corp.*,
318 F.R.D. 19 (S.D.N.Y. 2016) ................................................................................................24

*Ret. Sys. v. Wal-Mart Stores, Inc., et al.*,
No. 5:12-cv-05162 (W.D. Ark. Apr. 8, 2019), Dkt. No. 458 ...................................................16

*Reynolds v. Fidelity Invs. Institutional Operations Co., Inc.*,
No. 1:18-CV-423, 2020 WL 92092 (M.D.N.C. Jan. 8, 2020) ..................................................22

*Schuh v. HCA Holdings, Inc., et al.*,
No. 3:11-cv-01033 (M.D. Tenn. Apr. 14, 2016), Dkt. No. 563...............................................16

*Seaman v. Duke Univ.*,
No. 1:15-CV-462, 2019 WL 4674758 (M.D.N.C. Sept. 25, 2019) ...........................14, 18, 20

*Singleton v. Domino's Pizza, LLC*,
976 F. Supp. 2d 665 (D. Md. 2013) .........................................................................18, 22, 23

*Smith v. Krispy Kreme Doughnut Corp.*,
No. 1:05cv00187, 2007 WL 119157 (M.D.N.C. Jan. 10, 2007)...............................................10

*Spell v. McDaniel*,
852 F.2d 762 (4th Cir. 1988) ...................................................................................................22

*Sponn v. Emergent Biosolutions, Inc.*,
No. 8:16-cv-02625-RWT, 2019 WL 11731087 (D. Md. Jan. 25, 2019) .................................23

*Strang v. JHM Mortg. Sec. Ltd. P'ship*,
890 F. Supp. 499 (E.D. Va. 1995) .........................................................................................5, 6

*Swedish Hosp. Corp v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) ...................................................................................................5

*T Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp., et al.*,
    No. 2:10-cv-02847 (N.D. Ala. Sept. 14, 2015), Dkt. No. 320 ...........................................16, 19

*Thomas v. FTS USA, LLC*,
    No. 3:13cv825(REP), 2017 WL 1147460 (E.D. Va. Mar. 27, 2017) .......................................6

*Thomas v. FTS USA, LLC*,
    No. 3:13cv825(REP), 2017 WL 1148283 (E.D. Va. Jan. 9, 2017).................................6, 8, 17

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ...................................................................................................5

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .................................................................................................5

**Statutes**

15 U.S.C. § 78u- 4(a)(4) ...................................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 .......................................................10, 18, 20, 23

**Rules**

Fed. R. Civ. P. 23(h) ...................................................................................................................4

**Other Authorities**

Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action
    Litigation: 2020 Full-Year Review* (NERA 2021).....................................................................8

5 *Newberg on Class Actions* § 15:82 (5th ed.) .............................................................................7

Lead Counsel respectfully submit this application for an Order: (1) awarding Plaintiffs' Counsel[1] attorneys' fees of 30% of the Settlement Amount and litigation expenses of $1,544,748.17, and (2) awarding the Lead Plaintiffs[2] $68,775, in the aggregate, pursuant to 15 U.S.C. § 78u- 4(a)(4), in connection with their representation of the Settlement Class, to be paid from the Settlement Fund.

## I.    INTRODUCTION

In awarding fees, courts consider several factors, including the quality and quantity of work as reflected in the results obtained. Here, Plaintiffs' Counsel devoted over 28,000 hours to obtain an excellent Settlement for the Settlement Class. The Settlement Fund consists of $90 million, plus any interest thereon. For all the reasons set forth herein and in the accompanying Lead Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation of the Net Proceeds of the Settlement, the Settlement is an outstanding result and supports the current application.

The $90 million Settlement—which represents one of the largest recoveries ever achieved in a securities class action in Virginia and the Fourth Circuit and ***approximately seven times the median securities class action settlement value in the United States between 2018 and 2020***—was achieved through the skill, experience, and effective advocacy of Plaintiffs' Counsel, and will bring to a close an intense and hard-fought litigation. The Settlement was reached only after Lead

---

[1] "Plaintiffs' Counsel" means Pomerantz LLP, Robbins Geller Rudman & Dowd LLP, Cohen Milstein Sellers & Toll PLLC, and The Schall Law Firm. All capitalized terms used and not otherwise defined in this Memorandum shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated December 9, 2021 (the "Stipulation"), previously filed with the Court (ECF No. 297-1). Emphasis is added and citations are omitted throughout unless otherwise noted.

[2] "Lead Plaintiffs" or "Plaintiffs" means Lead Plaintiffs Donald and Sarah Sherbondy and Construction Laborers Pension Trust of Greater St. Louis ("CLPT").

Counsel achieved several notable litigation successes and milestones that included: (i) overcoming Defendants' four motions to dismiss; (ii) the full briefing of Plaintiffs' motion to amend the Complaint; (iii) the full briefing of Plaintiffs' motion for class certification; and (iv) vigorous settlement negotiations conducted at arm's length over the course of multiple mediation sessions. These achievements were made possible by Lead Counsel's comprehensive investigation, the drafting of the detailed amended complaint, and extensive discovery efforts. *See* Joint Declaration, ¶¶14-57, submitted herewith.[3]

Lead Counsel's investigation prior to filing the operative complaint and discovery efforts thereafter, all while proceeding along the "rocket docket," were thorough and wide-ranging. Prior to filing the complaint, Lead Counsel identified 166 former Altria and JLI employees and other persons believed to have relevant knowledge, contacted 165, and interviewed 24 of them. *Id.* at ¶5. During discovery, Lead Counsel analyzed approximately 30 million pages of documents produced by Defendants and third parties, reviewed transcripts and exhibits from over 70 depositions conducted in related actions, and took or defended 11 depositions, including the depositions of Plaintiffs, CLPT's investment manager, current and former Altria and JLI employees, certain Individual Defendants, and two experts. *Id*. at ¶¶26-38, 52-53.

While fact discovery was ongoing, Lead Counsel also concurrently briefed Plaintiffs' motion for class certification, which included two expert reports concerning market efficiency and price impact, and fully briefed Plaintiffs' motion to amend the complaint (which attached the

---

[3] The "Joint Declaration" is defined as the Joint Declaration of Jeremy A. Lieberman and David A. Rosenfeld in Support of (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation of the Net Proceeds of the Settlement, and (2) Lead Counsel's Application for an Award of Attorneys' Fees and Expenses and Awards to Lead Plaintiffs Pursuant to 15 U.S.C. § 78u-4(a)(4). All exhibits referenced below are attached to the Joint Declaration.

proposed First Amended Complaint) to add allegations based on the fruits of discovery. *Id*. And at the time Settlement was reached, Lead Counsel were in the process of finalizing seven expert reports addressing, among other things, JLI's improper marketing, Altria's due diligence of JLI's marketing, loss causation, and damages. This dedication of effort resulted in a very favorable and significant cash recovery for the Settlement Class. *Id*. at ¶¶39-53.

As compensation for their efforts, Lead Counsel respectfully request an award of attorneys' fees of 30% of the Settlement Amount and payment of litigation expenses of $1,544,748.17, plus interest on both amounts at the same rate and for the same period of time as that earned on the Settlement Fund.[4] Lead Counsel's efforts to date have been without compensation of any kind and the fee has been wholly contingent upon the result achieved. Through Lead Counsel's significant efforts, they demonstrated that they were prepared to take this case through trial.

Since fee awards are designed to encourage counsel to achieve the best possible result for the class, the amount requested in this case is warranted, if not modest, given the exceptional recovery obtained and the significant obstacles and risks Lead Counsel faced in bringing and prosecuting this case. As discussed herein, the requested fee award of 30% of the Settlement Amount is an amount that is well within the 30% to 33.33% range regularly approved by courts in class actions with comparable recoveries. Moreover, Plaintiffs actively supervised this litigation and recommend that Lead Counsel's application be approved. *See* Joint Decl., Ex. 1 (Donald Sherbondy Decl.); Ex. 2 (Sarah Sherbondy Decl.); Ex. 3 (CLPT Decl.). Lead Counsel respectfully request that this Court approve the requested fees and litigation expenses as justified under the particular facts of this case.

---

[4] This amount will include reimbursement to Plaintiffs for their time and expense in representing the Settlement Class, as provided in 15 U.S.C. § 78u-4(a)(4).

Separately, Lead Plaintiffs Donald and Sarah Sherbondy and Construction Laborers Pension Trust of Greater St. Louis ("CLPT") seek awards of $20,000, $20,000, and $28,775, respectively, pursuant to 15 U.S.C. § 78u-4(a)(4), in connection with their representation of the Settlement Class. Lead Plaintiffs support their applications with declarations setting forth the basis for the awards. *See* Joint Decl., Exs. 1-3. Lead Plaintiffs respectfully request that the Court approve the requested awards.

## II.   THE REQUESTED ATTORNEYS' FEES ARE REASONABLE

### A.   The Settlement Creates a Common Fund from Which a "Percentage-of-the-Fund" Fee Would Be Appropriate

Under Rule 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). As the Supreme Court has recognized, a "lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This common fund doctrine is based on the inherent powers of the federal court to "prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Id.* The two methods of calculating attorneys' fees in class actions are the percentage-of-the-fund method and the lodestar method. *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 260 (E.D. Va. 2009). The percentage-of-the-fund method involves an award based on a percentage of the class's recovery, set by the court based on several factors. *Id*. The lodestar method requires multiplying the number of hours worked by a reasonable hourly rate, the product of which the court can then adjust by employing a "multiplier." *Id.* The Supreme Court has suggested that percentage-of-recovery is the appropriate method for awarding fees under the common fund doctrine. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund

4

doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class . . . .").

Most federal courts of appeals have also endorsed the percentage-of-recovery method as an

appropriate method for determining an award of attorneys' fees in common fund cases.[5]

"While the Fourth Circuit has not definitively answered this debate, other districts within

this Circuit, and the vast majority of courts in other jurisdictions consistently apply a percentage

of the fund method for calculating attorneys' fees in common fund cases." *Mills*, 265 F.R.D. at

260; *see, e.g.*, *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14CV238 (DJN), 2016 WL

1070819, at *5 (E.D. Va. Mar. 15, 2016) ("District Courts within this Circuit have also favored

the percentage method."); *Archbold v. Wells Fargo Bank, N.A.*, No. 3:13-CV-24599, 2015 WL

4276295, at *5 (S.D. W. Va. July 14, 2015) ("[T]here is a clear consensus among the federal and

state courts, consistent with Supreme Court precedent, that the award of attorneys' fees in common

fund cases should be based on a percentage of the recovery."); *Strang v. JHM Mortg. Sec. Ltd.

P'ship*, 890 F. Supp. 499, 502 (E.D. Va. 1995) ("Although the Fourth Circuit has not yet ruled on

this issue, the current trend among the courts of appeal favors the use of a percentage method to

calculate an award of attorneys' fees in common fund cases."); *Jones v. Dominion Res. Servs.,

Inc.*, 601 F. Supp. 2d 756, 758 (S.D. W. Va. 2009) ("The percentage method has overwhelmingly

become the preferred method for calculating attorneys' fees in common fund cases.").

---

[5] *See, e.g.*, *Heien v. Archstone*, 837 F.3d 97, 100 (1st Cir. 2016); *Goldberger v. Integrated Res.,
Inc.*, 209 F.3d 43, 49 (2nd Cir. 2000); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55
F.3d 768, 821-22 (3rd Cir. 1995); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632,
644 (5th Cir. 2012); *Rawlings v. Prudential- Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir.
1993); *Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019); *Vizcaino v. Microsoft Corp.*,
290 F.3d 1043, 1047-50 (9th Cir. 2002); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994);
*Camden I. Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Swedish Hosp. Corp
v. Shalala*, 1 F.3d 1261, 1268-70 (D.C. Cir. 1993).

These courts recognize that the percentage-of-the-fund method is "more efficient and less burdensome than the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases." *Strang*, 890 F. Supp. at 503. It also better aligns the interests of Lead Counsel and class members because it ties the attorneys' fee award to the overall result achieved, rather than hours expended by the attorneys. *Thomas v. FTS USA, LLC*, No. 3:13cv825(REP), 2017 WL 1148283, at \*3 (E.D. Va. Jan. 9, 2017), *report and recommendation adopted*, No. 3:13cv825, 2017 WL 1147460 (E.D. Va. Mar. 27, 2017); *see also Deem v. Ames True Temper, Inc.*, No. 6:10-CV-01339, 2013 WL 2285972, at \*5 (S.D. W. Va. May 23, 2013) ("The percentage method 'is designed to allow courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure.'") (quoting *In re Prudential Ins. Co. Am. Sales Litig.*, 148 F.3d 283, 333 (3d Cir. 1998)).

Lead Counsel's application based on the percentage-of-fund method is therefore consistent with the law in this and other circuits. As explained below, the factors courts consider when assessing percentage-of-fund requests demonstrate the reasonableness of Lead Counsel's requested fee, which is further confirmed by cross-checking the requested amount against Plaintiffs' Counsel's calculated lodestar.

**B.     Lead Counsel's Fee Request Is Fair and Reasonable Under Fourth Circuit Authority**

"In determining the reasonableness of attorneys' fees, courts look at the following factors: (1) the result obtained for the class; (2) the presence or absence of substantial objections by members of the class to the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by the plaintiffs' counsel; and (7) awards in similar cases." *In re Genworth Sec. Litig.*, 210 F. Supp. 3d 837, 843 (E.D. Va. 2016) (Gibney, J.). Certain district

6

courts in this Circuit have applied a slightly different version of this standard, replacing the sixth factor with public policy considerations. *See, e.g.*, *In re Celebrex (Celecoxib) Antitrust Litig.*, No. 2:14-CV-00361, 2018 WL 2382091, at *4 (E.D. Va. Apr. 18, 2018); *Mills*, 265 F.R.D. at 261 (citing, *inter alia*, *Goldberger*, 209 F.3d at 50).

There is some disagreement as to whether to apply these seven factors, which were adopted from the Third Circuit, *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000), or the 12-factor test from the Fifth Circuit adopted in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974)).[6] *See Galloway v. Williams*, No. 3:19-CV-470, 2020 WL 7482191, at *5 (E.D. Va. Dec. 18, 2020) (Payne, J.); 5 Newberg on Class Actions § 15:82 (5th ed.) ("The Fourth Circuit utilized the Fifth Circuit's *Johnson* factors in a statutory fee-shifting case, so some district courts have utilized those factors in setting a percentage in common fund cases, while other district courts have used the Second Circuit's *Goldberger* factors and/or the Third Circuit's *Gunter* factors."). However, many of the *Johnson/Barber* factors overlap with the *Gunter* factors or are "subsumed in the calculation of the hours reasonably expended and the reasonableness of the hourly rate." *Galloway*, 2020 WL 7482191, at *6, *10-11; *see also Genworth*, 210 F. Supp. 3d at 843 (using the 7-factor Third Circuit test in evaluating the reasonableness of the requested fee and incorporating the *Johnson/Barber* factors into the lodestar cross-check). Notably, "fee award reasonableness factors 'need not be

---

[6] The *Johnson/Barber* factors are: "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases." *Barber*, 577 F.2d at 226 n.28.

applied in a formulaic way' because each case is different, 'and in certain cases, one factor may outweigh the rest.'" *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 463 (D. Md. 2014). Given the overlap in the factors, a consideration of the relevant factors under any standard supports Lead Counsel's requested fee.

> **1.      Lead Counsel Obtained an Exceptional Result for the Settlement Class**

"The first and most important factor for a court to consider when making a fee award is the result achieved." *Genworth*, 210 F. Supp. 3d at 843; *see also Thomas*, 2017 WL 1148283, at *3 ("[T]he Court gives the most weight to the results obtained." (citing, *inter alia*, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).

Here, the result achieved by Lead Counsel was excellent. The Settlement provides $90 million in cash for the benefit of the Settlement Class, which is approximately seven times the median recovery in all U.S. securities class actions between 2018 and 2020, inclusive. *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review*, at 1-2 (NERA 2021). Lead Counsel obtained this recovery as a result of their effective advocacy on behalf of the Settlement Class and efficient prosecution of this case through extensive discovery and motion practice. Lead Counsel litigated Defendants' motions to dismiss and fully briefed Plaintiffs' motion to amend and motion for class certification. Lead Counsel also faced numerous challenges concerning Defendants' impending summary judgment and *Daubert* motions, and trial and potential post-trial appeals. For example, in addition to Defendants' arguments regarding falsity and scienter, Defendants challenged Lead Plaintiffs' damages calculations arguing that: (i) Altria's write-down of its JLI investment did not disclose any new facts that were previously unknown to the market; and (ii) the announcements of regulatory action and government litigation were materializations of risks fully known to investors (and disclosed

8

by Defendants) prior to their purchases during the Class Period. Joint Decl., ¶¶62-70. The JLI Defendants would have also continued to argue, as they did at the motion to dismiss and class certification stage, that Plaintiffs (purchasers of Altria's common stock) do not have "standing" to bring an action against the JLI Defendants for statements that JLI made about itself. *Id*. at ¶66. Indeed, as discussed below, shortly after the Court denied Defendants' motion to dismiss, the Court warned Plaintiffs that their case had "serious potential for summary judgment" (Tr. of Apr. 13, 2021 Conference Call, at 7:16-8:1), and "the wind is blowing against you." *Id*. at 15:8-11. Despite these headwinds, Lead Counsel achieved an outstanding result for the Settlement Class.

Balanced against the many significant challenges of continued litigation and compared to the results achieved in many other securities class action settlements, the Settlement provides an exceptional result for the Settlement Class and supports Lead Counsel's request for attorneys' fees.

### 2. The Presence or Absence of Substantial Objections by Members of the Settlement Class

"A lack of objections by class members as to fees requested by counsel weighs in favor of the reasonableness of the fees." *Genworth*, 210 F. Supp. 3d at 844. Significantly, to date, not a single Settlement Class Member has objected to the Settlement or Lead Counsel's fee request. The absence of objections is noteworthy, as it is not uncommon for them to be filed in cases with settlements of this size. The deadline for objections is March 10, 2022, however, and Lead Counsel will advise the Court as to this factor in their reply papers, which are due on March 24, 2022.

### 3. Lead Counsel Are Skilled and Efficient Litigators

The quality of the representation is another significant factor supporting Lead Counsel's fee request. *See id.* ("The skill required in complex cases such as this involving massive discovery efforts and complicated issues of fact and law also weighs in favor of supporting the substantial attorneys' fees award in this case."). Lead Counsel have substantial experience litigating securities

9

class action cases. *See* Joint Decl., ¶¶93-95. And, of course, "the result achieved is the clearest reflection of petitioners' skill and expertise." *In re Linerboard Antitrust Litig.*, No. CIV.A. 98-5055, 2004 WL 1221350, at *5 (E.D. Pa. June 2, 2004), *amended*, No. CIV.A. 98-5055, 2004 WL 1240775 (E.D. Pa. June 4, 2004). The Settlement here reflects Lead Counsel's skill and expertise.

Further, courts often evaluate the quality of the work performed by the plaintiff's counsel in light of the quality of the opposition's representation. *See, e.g.*, *Mills*, 265 F.R.D. at 262 (noting that counsel reached a favorable settlement against "experienced and sophisticated defense attorneys"); *Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05cv00187, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007) ("Additional skill is required when the opponent is a sophisticated corporation with sophisticated counsel."). Here, Defendants are represented by highly skilled and experienced securities litigators from some of the leading defense law firms in the United States. It was in the face of such skilled and vigorous opposition that Lead Counsel obtained the benefits for the Settlement Class that they did. This factor weighs in favor of the requested fee award.

### 4. The Duration and Complexity of This Action Support the Requested Fee

Courts recognize that "there are good reasons to award higher-than-typical fees when the issues in a case are particularly 'novel and complex.'" *Good v. W. Virginia-Am. Water Co.*, No. 14- 1374, 2017 WL 2884535, at *25 (S.D. W. Va. July 6, 2017). Securities cases are routinely found to be complex as they "require significant showings of fact in order to prevail before a jury, and 'elements such as scienter, reliance, and materiality of misrepresentation are notoriously difficult to establish.'" *Genworth*, 210 F. Supp. 3d at 844 (quoting *Mills*, 265 F.R.D. at 263). Due to the inherent complexity of securities litigation and the stringent requirements imposed by the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737, 15 U.S.C. § 78u-4(f)(7) ("PSLRA"), amendments to the Exchange Act, as well as supervening case law

developments such as the Supreme Court's decision in *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014) ("*Halliburton II*"), prosecution of securities class action litigation is inherently complex and lengthy.

"In evaluating the complexity and duration of the litigation, courts consider not only the time between filing the complaint and reaching settlement, but also the amount of motions [*sic*] practice prior to settlement and the amount and nature of discovery." *Jones*, 601 F. Supp. 2d at 761. Lead Counsel efficiently achieved the Settlement after vigorous, hard-fought litigation. Since this case was filed on this Court's "rocket docket," and during the COVID-19 pandemic, Lead Counsel:

(i)      conducted a robust investigation concerning the allegedly fraudulent misrepresentations and omissions that involved, among other things, a review of publicly available information regarding Altria and JLI;

(ii)      identified 166 former Altria and JLI employees and other persons believed to have relevant knowledge, contacted 165, and interviewed 24 of them;

(iii)      prepared and filed a detailed 160-page corrected consolidated class action complaint;

(iv)      consulted with a damages expert to evaluate recoverable losses;

(v)      researched and drafted an opposition to Defendants' four motions to dismiss the complaint, which included 113 pages of briefing and 68 exhibits;

(vi)      served and responded to document requests and provided supplemental responses when necessary;

(vii)      served subpoenas on over two dozen third parties for documents relevant to the litigation;

(viii)      analyzed approximately 30 million pages of documents produced by Defendants and third parties;

(ix)      reviewed transcripts from over 70 depositions (including over 1,000 exhibits) conducted in related actions;

(x)      took or defended 11 depositions, including the depositions of Plaintiffs, CLPT's investment manager, current and former Altria and JLI employees, certain Individual Defendants, and two experts;

(xi)      served interrogatories and requests for admission on Defendants and responded to Defendants' interrogatories and requests for admission;

11

(xii)    prepared, filed and fully briefed a motion to amend the complaint (attaching the proposed amended complaint);

(xiii)   filed and fully briefed a motion for class certification;

(xiv)    filed two expert reports addressing market efficiency and price impact;

(xv)     prepared an additional seven expert reports concerning, among other things, loss causation and damages, that Lead Counsel were prepared to serve if the Settlement had not been reached; and

(xvi)    prepared for and participated in three separate full-day mediation sessions.

This case's complexity and duration strongly support the reasonableness of Lead Counsel's request.

### 5.      Lead Counsel Faced the Significant Risk of Nonpayment

The risk of receiving little or no recovery is a factor courts in this Circuit recognize when considering an award of attorneys' fees. *See, e.g.*, *Mills*, 265 F.R.D. at 263 ("'[C]ounsel bore a substantial risk of nonpayment . . . [t]he outcome of the case was hardly a foregone conclusion, but nonetheless counsel accepted representation of the plaintiff and the class on a contingent fee basis, fronting the costs of litigation.'"); *Phillips v. Triad Guar. Inc.*, No. 1:09CV71, 2016 WL 2636289, at *6 (M.D.N.C. May 9, 2016) (finding fee award justified where "[l]ead [c]ounsel bore the risks involved with surviving dispositive motions, obtaining class certification, proving liability, causation, and damages, prevailing with experts, and litigating through trial and possible appeals" knowing "'that the only way [they] would be compensated was to achieve a successful result'"). In addition to the risk of non-recovery at trial, "any victory at trial in this case would have to withstand appeals which could reverse or limit any award by a jury." *Genworth*, 210 F. Supp. 3d at 844. Lead Counsel undertook this case on a wholly contingent basis and ran a substantial risk of no recovery whatsoever. While all securities class actions involve risk, the risk here was significant and very real. As discussed in the accompanying brief in support of Plaintiffs motion for final approval of the Settlement, Defendants advanced arguments concerning standing,

falsity, scienter and loss causation throughout the litigation. While Lead Counsel believe they had meritorious responses to Defendants' arguments, there was no guarantee the Court would agree. Indeed, the Court warned during a conference with the Parties shortly after denying Defendants' motions to dismiss that Plaintiffs' risk of losing at summary judgment was "significant":

> This is a message to plaintiffs' counsel. Even though I've denied the motion to dismiss, that was largely driven by the stage of the case that we're in. I think this is a case that's got serious potential for summary judgment . . . So what I'm telling plaintiffs' counsel is don't get too bullish on your prospects here because I think summary judgment is going to be a big issue here.

Tr. of Apr. 13, 2021 Conference Call, at 7:16-8:1. *See also, id*. at 12:21-22 (stating that certain claims were "hanging by a gnat's eyelash"). The Court also ordered the Parties to complete mediation by July 2, telling Lead Plaintiffs "the wind is blowing against you" and "you ought to be reasonable when you go into settlement here." *Id*. at 15:8-11. The Court repeated the message in a call with plaintiffs in the related derivative action: "I think [the securities action] is a case that very well could go on summary judgment. . . . I think the percentages are significant that that could be granted if not as to all the defendants, certainly as to a good many of them." Tr. of Apr. 21, 2021 Conference Call, at 13:4-13.

Despite these headwinds, Plaintiffs' Counsel devoted over 28,000 hours to prosecuting the case on behalf of the Settlement Class knowing that there was a very real risk that Lead Counsel could receive no payment for their substantial time and effort.

Additionally, Plaintiffs' Counsel incurred $1,544,748.17 in litigation expenses and charges to prosecute the litigation, which would not have been recovered absent a successful result. *See Mills*, 265 F.R.D. at 263 (noting uncertainty of the case outcome, defendants' rigorous defense, and that "[l]ead [c]ounsel devoted thousands of hours on the case and fronted nearly $3 million in costs in the process" to conclude that factor weighed in favor of awarding the requested fee); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 516 (W.D. Pa. 2003) ("Aside from investing their time,

counsel had to front copious sums of money . . . . Thus, the risks that counsel incurred in prosecuting this case were substantial and further support the requested fee award."). The risk of nonpayment weighs in favor of the requested fee award.

### 6.    Plaintiffs' Counsel Necessarily Devoted Over 28,000 Hours Prosecuting This Action

Plaintiffs' Counsel devoted considerable time and effort to researching, investigating, and litigating this case. *See, e.g.*, Joint Decl., ¶¶14-57. As set forth in the Joint Declaration and Plaintiffs' Counsel's Fee and Expense Declarations,[7] Plaintiffs' Counsel devoted 28,080.90 hours prosecuting this case, resulting in a total lodestar of $14,321,432. Joint Decl., ¶88. Plaintiffs' Counsel could have spent those attorney hours litigating other matters, which weighs in favor of awarding the requested fees. *See, e.g.*, *Seaman v. Duke Univ.*, No. 1:15-CV-462, 2019 WL 4674758, at *4 (M.D.N.C. Sept. 25, 2019) (highlighting that the "attorneys and staff have worked over 12,500 hours since [the litigation] began" and "spent over $3 million from their own pockets litigating this case," which "was time and money the attorneys could have directed to other simpler and less risky opportunities"); *Genworth*, 210 F. Supp. 3d at 844-45 (finding that "counsel for plaintiffs devoted an enormous amount of time and effort into this case, totaling more than 66,000 hours and investing more than three million dollars in fees towards consulting experts" to be among the considerations that "support the attorneys' fees award").

The extensive time and resources Plaintiffs' Counsel committed to this case similarly weigh in favor of the requested fee.

---

[7] Plaintiffs' Counsel's Fee and Expense Declarations include the following: Declaration of Michael J. Wernke Filed on Behalf of Pomerantz LLP ("Pomerantz Fee Decl."), Ex. 5; Declaration of Douglas R. Britton Filed on Behalf of Robbins Geller Rudman & Dowd LLP ("Robbins Geller Fee Decl."), Ex.6; Declaration of Steven J. Toll Filed on Behalf of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein Fee Decl."), Ex. 7.

### 7.    Public Policy Considerations Support the Requested Fee

A "central factor in fixing the amount of attorneys' fees is 'to ensure that competent, experienced counsel will be encouraged to undertake the often risky and arduous task of representing a class." *Mills*, 265 F.R.D. at 260. In complex securities cases, fee awards have been enhanced by courts "to provide an incentive for competent lawyers to pursue such actions in the future." *In re MicroStrategy, Inc. Sec. Litig.*, 172 F. Supp. 2d 778, 788 (E.D. Va. 2001). Public policy "generally favors attorneys' fees that will induce attorneys to act and protect individuals who may not be able to act for themselves but also will not create an incentive to bring unmeritorious actions." *Jones*, 601 F. Supp. 2d at 765 (citing *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 142 (S.D.N.Y. 2008); *MicroStrategy*, 172 F. Supp. 2d at 789 n.36). "The cost and difficulty [of bringing a meritorious complex class action] naturally stands as a deterrent from doing so, and one object of an award of attorneys' fees should be to counteract this deterrence and incentivize competent attorneys to pursue these cases when necessary." *Mills*, 265 F.R.D. at 263. Public policy considerations support awarding the requested fee.

### 8.    Thirty Percent of the Settlement Amount Is a Reasonable Fee Award

Courts in this District and elsewhere routinely award attorneys' fees of 30% to 33.33% of a settlement fund for similar and even higher recoveries. *See, e.g.*, *In re Celebrex (Celecoxib) Antitrust Litig.*, No. 2:14-cv-00361, 2018 WL 2382091 (E.D. Va. Apr. 18, 2018) (awarding 33% of $94 million settlement fund); *In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding 33.33% of $510 million settlement fund); Final Judgment and Order, *Landmen Partners, Inc., et al. v. The Blackstone Group, L.P., et al.*, No. 1:08-cv-03601 (S.D.N.Y. Dec. 18, 2013), Dkt. No. 191 (awarding 33.33% of $85 million settlement fund); Final Order and Judgment, *City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank N.A.*, No. 0:10-cv-04372 (D. Minn. Aug. 18, 2014), Dkt. No. 686 (awarding 33.33% of $62.5 million settlement fund);

15

Order Awarding Attorneys' Fees and Expenses, *Grae v. Corrections Corp. of Am. et al.*, No. 3:16-cv-02267 (M.D. Tenn. Nov. 8, 2021), Dkt. No. 478 (awarding 33.33% of $56 million settlement fund); *In re Busporine Antitrust Litig.*, No. 1:01-md-01410 (S.D.N.Y. Apr. 11, 2003) (awarding 33.3% of $220 million settlement fund); Order Awarding Attorneys' Fees and Expenses, *Schuh v. HCA Holdings, Inc., et al.*, No. 3:11-cv-01033 (M.D. Tenn. Apr. 14, 2016), Dkt. No. 563 (awarding 30% of $215 million settlement fund); Order Awarding Attorneys' Fees and Expenses and Award to Lead Plaintiff, *City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores, Inc., et al.*, No. 5:12-cv-05162 (W.D. Ark. Apr. 8, 2019), Dkt. No. 458 (awarding 30% of $160 million settlement fund); Order Granting Lead Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, *Peace Officers' Annuity and Benefit Fund of Georgia, et al. v. DaVita Inc., et al.*, No. 1:17-cv-00304 (D. Colo. July 15, 2021), Dkt. No. 122 (awarding 30% of $135 million settlement fund); Final Judgment and Order of Dismissal, *Anwar v. Fairfield Greenwich Ltd. Grp.*, No. 1:09-cv-00118 (S.D.N.Y. Nov. 20, 2015), Dkt. No. 1457 (awarding 30% of $125 million settlement fund); Order Awarding Attorneys' Fees and Expenses and Reimbursement of Lead Plaintiffs' Expenses, *T Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp., et al.*, No. 2:10-cv-02847 (N.D. Ala. Sept. 14, 2015), Dkt. No. 320 (awarding 30% of $90 million settlement fund); Order Approving Lead Plaintiffs' Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses, *Oppenheimer Rochester Funds Grp. Sec. Litig.*, No. 1:09-md-02063 (D. Colo. Sept. 5, 2014), Dkt. No. 527 (awarding 30% of $89.5 million settlement fund and noting the "customary fee award of 30% of the fund under the percentage of the fund approach").

Additionally, "[t]he percentage-of-the-fund method of awarding attorneys' fees in class actions should approximate the fee which would be negotiated if the lawyer were offering his or

16

her services in the private marketplace." *In re Remeron Direct Purchaser Antitrust Litig.*, No. CIV.03- 0085 FSH, 2005 WL 3008808, at \*16 (D.N.J. Nov. 9, 2005). "Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation." *Id.*; *see also Thomas*, 2017 WL 1148283, at \*5 ("[A]ny discussion of percentage awards should acknowledge the age-old assumption that a lawyer receives a third of his client's recovery under most contingency agreements."). Consideration of the awards in similar cases strongly supports the requested award of 30% of the Settlement Amount.

### 9. A Cross-Check of Plaintiffs' Counsel's Lodestar Confirms the Reasonableness of the Fee Request

Courts often supplement their analysis of the percentage-of-fund method with a lodestar cross-check. "A lodestar cross-check first computes the plaintiffs' attorneys' reasonable hourly rate for the litigation and multiplies that rate by the number of hours dedicated to the case," and "then compares that figure with the attorneys' fees award, typically resulting in a positive multiplier." *Genworth*, 210 F. Supp. 3d at 845. When using the lodestar as a cross-check, courts "take a somewhat truncated approach to the lodestar analysis" and "generally do not apply the same scrutiny in a lodestar cross-check as they do when using the lodestar method to calculate the fee." *Thomas*, 2017 WL 1148283, at \*6; *see also Jones*, 601 F. Supp. 2d at 765 (explaining that when "using the lodestar method as a cross-check," the court "need not apply the 'exhaustive scrutiny' normally required by that method").

This Court has recognized that reviewing counsel's lodestar as a "cross-check" can assist in assessing the reasonableness of a percentage fee. *See Genworth*, 210 F. Supp. 3d at 845; *MicroStrategy*, 172 F. Supp. 2d at 787 (stating that a fee should "adequately compensate lead counsel for the time expended on the case"). Since fee awards are designed to encourage efficient litigation and great results, courts recognize that the fee award should "include a reward or

enhancement beyond the lodestar figure to account for the difficulty of the case, the degree of success achieved, and other qualitative factors." *Id.* Multipliers are appropriate to encourage efficiency and to compensate for the delay in payment and additional risks because, unlike defense firms who are guaranteed payment win or lose and paid immediately, Plaintiffs' Counsel are only paid at the end of the case and only if the case is successful. *See, e.g.*, *id.* at 788 (noting that because PSLRA cases are essentially contingent fee cases, "there is no fee unless there is a recovery and the fee awarded must bear a reasonable relation to the size of the recovery").

Plaintiffs' Counsel and their professionals have expended 28,080.90 hours prosecuting this Action with a resulting lodestar of approximately $14,321,432,[8] resulting in a 1.88x multiplier on Plaintiffs' Counsel's lodestar based on their 30% fee request. *See* Joint Decl., ¶88; Pomerantz Fee Decl., ¶4, Ex. 1; Robbins Geller Fee Decl., ¶4, Ex. A; Cohen Milstein Fee Decl., ¶4, Ex. 1. This modest lodestar multiplier confirms the reasonableness of the requested 30% fee award, as it is within the range of reasonableness and well below the 2-3x multipliers regularly awarded in the Fourth Circuit. "District courts within the Fourth Circuit have regularly approved attorneys' fees awards with 2-3 times lodestar multipliers." *Genworth*, 210 F. Supp. 3d at 845 & n.5 (citing cases approving lodestar multipliers of 2.6x to 2.9x). *See In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 387 (D. Md. 2006) (approving a 2.6x lodestar multiplier); *MicroStrategy*, 172 F. Supp. 2d at 787-88 (approving a 2.6x lodestar multiplier); *see also Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 689 (D. Md. 2013) ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee.").[9]

---

[8] This lodestar is based on counsel's current rates, which is "appropriate to account for the delay in payment to counsel." *Seaman*, 2019 WL 4674758, at *5.

[9] *See also In re Telik, Inc., Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) (noting in contingency litigation, "lodestar multiples of over four are routinely awarded"); *In re Lloyd's Am. Trust Fund Litig.*, No. 96-cv-1262 RWS, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002)

18

The lodestar multiplier is also in line with what courts have approved in similar situations. *See, e.g.*, *In re Celebrex (Celecoxib) Antitrust Litig.*, No. 2:14-cv-00361, 2018 WL 2382091 (E.D. Va. Apr. 18, 2018) (awarding 33% of $94 million settlement fund where lodestar multiplier was 1.94); Final Judgment and Order, *Landmen Partners, Inc., et al. v. The Blackstone Group, L.P., et al.*, No. 1:08-cv-03601 (S.D.N.Y. Dec. 18, 2013), Dkt. No. 191 (awarding 33.33% of $85 million settlement fund where lodestar multiplier was 2.06); Order Granting Lead Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, *Peace Officers' Annuity and Benefit Fund of Georgia, et al. v. DaVita Inc., et al.*, No. 1:17-cv-00304 (D. Colo. July 15, 2021), Dkt. No. 122 (awarding 30% of $135 million settlement fund where lodestar multiplier was 2.75); Final Judgment and Order of Dismissal, *Anwar v. Fairfield Greenwich Ltd. Grp.*, No. 1:09-cv-00118 (S.D.N.Y. Nov. 20, 2015), Dkt. No. 1457 (awarding 30% of $125 million settlement fund where lodestar multiplier was 2.42); Order Awarding Attorneys' Fees and Expenses and Reimbursement of Lead Plaintiffs' Expenses, *T Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp., et al.*, No. 2:10-cv-02847 (N.D. Ala. Sept. 14, 2015), Dkt. No. 320 (awarding 30% of $90 million settlement fund where lodestar multiplier was 2.6); Order Approving Lead Plaintiffs' Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses, *Oppenheimer Rochester Funds Grp. Sec. Litig.*, No. 1:09-md-02063 (D. Colo. Sept. 5, 2014), Dkt. No. 527 (awarding 30% of $89.5 million settlement fund where lodestar multiplier was 2.1).

Further, as detailed in the Joint Declaration, the number of hours spent by Plaintiffs' Counsel was reasonable given their extensive investigation, aggressive discovery efforts, vigorous briefing on class certification and on Plaintiffs' motion to amend, and notable victories in

---

("the resulting multiplier of 2.09 is at the ***lower*** end of the range of multipliers awarded by courts within the Second Circuit"); *see also In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344 (S.D.N.Y. 2014) (5 multiplier is "large, but not unreasonable").

19

overcoming Defendants' four motions to dismiss. The complexity of the legal issues involved, and the intensity and skill of Defendants' Counsel also justify the number of hours spent by Plaintiffs' Counsel. Finally, Plaintiffs' Counsel anticipate expending additional time in connection with administering the Settlement, for which Plaintiffs' Counsel will not seek additional compensation.

Moreover, Plaintiffs' Counsel's hourly rates are "within the range of reasonableness for PSLRA cases, where the market for class action attorneys is nationwide and populated by very experienced attorneys with excellent credentials." *MicroStrategy*, 172 F. Supp. 2d at 788. The hourly rates of Plaintiffs' Counsel are based on periodic analyses of rates used by firms performing comparable work on both the plaintiffs' and defense side. *See* Pomerantz Fee Decl., ¶5, Ex. 1; Robbins Geller Fee Decl., ¶4, Ex. A; Cohen Milstein, ¶5, Ex. 1.[10] Considering the several factors discussed above, including the result achieved, the complexity and risk of the Action, and the skill and experience of counsel, Plaintiffs' Counsel's rates are reasonable and appropriate. A lodestar cross-check confirms the reasonableness of the requested fee.

---

[10] Lead Counsel recognize that, in some instances, these rates may be higher than the prevailing rates in Richmond, Virginia. "When fees are awarded based on the lodestar, not as a comparison, a prevailing plaintiff may justify an award of extra-community hourly market rates if 'the complexity and specialized nature of the case . . . mean that no attorney, with the required skills, is available locally, and the party choosing the attorney from elsewhere acted reasonably in making the choice.'" *Seaman*, 2019 WL 4674758, at *5. While there are experienced securities class action practitioners in Richmond, there are not many local firms both with the expertise and willingness to dedicate the resources necessary to bring a case of this magnitude on a purely contingent basis. *See id.* ("While antitrust lawyers exist locally, as noted above there are not many firms willing to handle a high-risk matter requiring the resources, time, and skill this case demanded."). Moreover, given that the lodestar multiplier is on the low side, even if all rates were significantly reduced, the lodestar multiplier would still be well within the acceptable range. *See In re Neustar, Inc. Sec. Litig.*, No. 1:14CV885 (JCC/TRJ), 2015 WL 8484438, at *10 (E.D. Va. Dec. 8, 2015) (noting that although counsel's rates were above local market rates, given the low multiplier "the fee request would remain reasonable if the Court were to discount the total lodestar figure by fifty percent"). Lastly, it is highly likely that Lead Counsel's hourly rates compare favorably with those of Defendants' Counsel, where there is no contingency to the payment of fees and expenses.

20

Finally, during the hearing on Plaintiffs' motion for preliminary approval of the Settlement, the Court expressed its desire to maintain $60 million of the $90 million Settlement Amount for distribution to Settlement Class Members that submit valid claims ("Authorized Claimants"). Given the Court's comments, Lead Counsel are requesting a fee of 30% (as opposed to 31% identified in the Notice), that if awarded, will leave $60 million available for distribution to the Settlement Class. As discussed directly below, Lead Counsel are requesting a total of $1,613,523.17 for payment of litigation expenses ($1,544,748.17) and awards to the Lead Plaintiffs ($68,775). Thus, awarding Plaintiffs' Counsel 30% of the Settlement Amount as fees would preserve $61,399,485.78 for distribution to Authorized Claimants and for Notice and Administration of the Settlement Fund.[11] The Claims Administrator anticipates that the total cost of Notice and Administration of the Settlement Fund will not exceed $1.4 million (Mailing Decl., ¶19),[12] preserving approximately $60 million for distribution to the Class. Joint Decl., ¶91.

For all the foregoing reasons, Lead Counsel respectfully submit that an award of the requested 30% fee is reasonable under the circumstances of this case.

---

[11] This figure also includes an anticipated balance of $13,008.95 in the litigation expense fund, which will be contributed to the Settlement Fund. *See* Pomerantz Fee Decl., ¶9; Ex. 3.

[12] "Mailing Decl." refers to the Declaration of Jordan Broker Regarding: (i) Notice Dissemination; (ii) Publication of Summary Notice; (iii) Call Center Services; (iv) the Settlement Website; (v) Requests for Exclusion and Objections Received to Date; and (vi) Estimate of Administration Costs ("Mailing Decl."), attached to the Joint Declaration as Exhibit 4.

### III. LEAD COUNSEL'S REQUEST FOR AN AWARD OF LITIGATION EXPENSES AND CHARGES IS REASONABLE

Lead Counsel also request an award of reasonable and necessary litigation expenses and charges incurred to prosecute this Action. Since the inception of the case, Plaintiffs' Counsel have incurred $1,544,748.17 in expenses and charges.[13]

"'It is well-established that plaintiffs who are entitled to recover attorneys' fees are also entitled to recover reasonable litigation-related expenses as part of their overall award.'" *Singleton*, 976 F. Supp. 2d at 689. Such costs may include "'those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services.'" *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988).

The amount requested is based on the declarations of Plaintiffs' Counsel. *See* Pomerantz Fee Decl., ¶8, Ex. 2; Robbins Geller Fee Decl., ¶¶5-6, Ex. B; Cohen Milstein Fee Decl., ¶8, Ex. 2. The expenses/charges are broken down in each declaration by type and amount. The categories of expenses/charges for which an award is sought include expert costs, electronic discovery costs, travel, photocopying, overnight mail, deposition services and transcripts, and electronic research.[14] These are precisely the type of expenses routinely charged to hourly clients in non-contingent private litigation. *See, e.g.*, *Reynolds v. Fidelity Invs. Institutional Operations Co., Inc.*, No. 1:18-CV-423, 2020 WL 92092, at *4 (M.D.N.C. Jan. 8, 2020) (explaining that "mailing costs, online legal research, long-distance telephone use, expert and mediator fees, travel expenses for

---

[13] The total amount of the incurred expenses is less than the amount stated in the Notice, *i.e.*, that Lead Counsel would request up to $1,700,000 in litigation expenses. *See* Joint Decl., Ex. 4 (Mailing Decl.), Ex. A (Notice).

[14] Lead Counsel's expenses include contributions to a common litigation fund, which was used to pay certain common expenses, including, among other things, expert costs, which usually constitute the largest type of expense incurred in securities cases. These common litigation fund expenses are detailed in Exhibit 3 to the Pomerantz Fee Decl.

mediation and court proceedings, and court filing fees. . . . are 'reasonable out-of-pocket expenses . . . which are normally charged to a fee-paying client, in the course of providing legal services'") (quoting *Singleton*, 976 F. Supp. 2d at 689).

Lead Counsel's request for the payment of $1,544,748.17 in expenses/charges from the common fund is reasonable and should be approved. No objections to the payment of these expenses have been filed.

## IV. THE REQUESTED PSLRA AWARDS TO THE LEAD PLAINTIFFS ARE REASONABLE

Lead Plaintiffs Donald Sherbondy, Sarah Sherbondy and Construction Laborers Pension Trust of Greater St. Louis ("CLPT") also request approval of awards in the amounts of $20,000, $20,000 and $28,775 respectively, pursuant to 15 U.S.C. § 78u-4(a)(4) in connection with their representation of the Settlement Class.

The PSLRA limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but it also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4).

District courts in the Fourth Circuit routinely approve such awards under 15 U.S.C. § 78u-4(a)(4) to compensate Lead Plaintiffs for the time and effort related to supervising the action on behalf of the absent class members. *See, e.g., In re Comput. Sci. Corp. Sec. Litig.*, No. Civ. A. 1:11-cv-610-TSE-LDD, 2013 WL 12155436, at *2 (E.D. Va. Sept. 20, 2013) (awarding "[c]lass [r]epresentative reimbursement of its reasonable costs for the time devoted to the matter"); *Sponn v. Emergent Biosolutions, Inc.*, No. 8:16-cv-02625-RWT, 2019 WL 11731087, at *2 (D. Md. Jan. 25, 2019) (same). Lead Plaintiffs request that their application be approved as well.

As set forth in their accompanying declarations, Plaintiffs Donald Sherbondy and Sarah Sherbondy and CLPT seek awards of $20,000 each for the time devoted to supervising and participating in the Action. Donald Sherbondy Decl., ¶¶2-7; Sarah Sherbondy Decl., ¶¶2-7; CLPT Decl., ¶¶3-8. CLPT also seeks reimbursement for $8,775 in costs incurred in prosecuting this Action. The declarations identify the activities directly related to representing the Settlement Class, including: (a) consulting and corresponding with counsel regarding pleadings, briefs, discovery, court orders, mediations, and other case developments; (b) reviewing significant pleadings and briefs filed in the case and various orders entered by the Court; (c) gathering and producing documents to the Defendants; (d) providing deposition testimony; and (e) discussing the parameters for an appropriate resolution of the case and ultimately agreeing to the Settlement. *Id.*

Like the expenses in this case, the requested awards are consistent with cost and expense awards in similar cases. *See, e.g.*, *Mills*, 265 F.R.D. at 265 (reimbursing lead plaintiffs $42,419.50); *Nieman v. Duke Energy Corp.*, No. 3:12-cv-00456 (W.D.N.C. Nov. 2, 2015) (reimbursing lead plaintiff $20,612.50); *In re Massey Energy Co. Securities Litigation*, C. A. No. 5:10-cv-00689-ICB (S.D. W. Va. June 4, 2014), Dkt. No. 203 (reimbursing lead plaintiff $33,889.18); *Genworth*, 210 F. Supp. 3d at 846 (awarding $23,128 for time relating to supervision of the action); *Comput. Sci.*, 2013 WL 12155436, at *2 (awarding $28,881 for time and $32,024 for expenses). Lead Plaintiffs respectfully request the awards be approved.[15]

---

[15] The requested awards are lower than a number of awards courts have approved in other cases. *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 14-cv-7126 (JMF), 2018 WL 6250657, at *4 (S.D.N.Y. Nov. 29, 2018) (awarding $50,000 to six named plaintiffs and $100,000 to two of them, in addition to out-of-pocket expenses for three of them finding that "the considerable effort expended by the named Plaintiffs to assist in the litigation renders the awards requested by lead counsel appropriate" and that "in the aggregate they amount to a miniscule portion of the settlement fund."); *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, No. 09 MDL 2058 (PKC), 2013 WL 12091355 (S.D.N.Y. Apr. 8, 2013) (awarding $259,610 to one plaintiff and $125,688 to a second plaintiff), *aff'd*, 772 F.3d 125 (2d Cir. 2014); *Pa. Pub. Sch. Emps.' Ret. Sys.*

## V.  CONCLUSION

For the reasons discussed above, Lead Plaintiffs respectfully request that the Court: (1) award Lead Counsel 30% of the Settlement Amount as attorneys' fees, plus accrued interest; (2) award litigation expenses incurred by Plaintiffs' Counsel in the amount of $$1,544,748.17, plus accrued interest; and (3) grant Plaintiffs Donald Sherbondy, Sarah Sherbondy and CLPT awards of $20,000, $20,000 and $28,775, respectively.

Respectfully submitted,

DATED:  February 24, 2022

By: /s/ *Steven J. Toll*
Steven J. Toll (VSB #15300)
Daniel S. Sommers
S. Douglas Bunch
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave., N.W., Suite 500
Washington, D.C.  20005
Telephone:  202/408-4600
202/408-4699 (fax)
stoll@cohenmilstein.com
dsommers@cohenmilstein.com
dbunch@cohenmilstein.com

*Local Counsel for Lead Plaintiffs*

Jeremy A. Lieberman
Michael J. Wernke
POMERANTZ LLP
600 Third Ave.
New York, NY  10016

---

*v. Bank of Am. Corp.*, 318 F.R.D. 19, 27 (S.D.N.Y. 2016) (awarding $130,323 to sole lead plaintiff); Final Judgment Approving Class Action Settlement, *In re Tronox, Inc. Sec. Litig.*, No. 09-cv-6220 (SAS) (S.D.N.Y. Nov. 26, 2012), Dkt. No. 202 (awarding $194,460, including $129,804 to two related lead plaintiffs); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *31 (S.D.N.Y. Nov. 8, 2010) (awarding lead plaintiff $100,000).

Telephone: 212/661-1100
212/661-8665 (fax)
jalieberman@pomlaw.com
mjwernke@pomlaw.com

*Lead Counsel for Lead Plaintiffs Donald
Sherbondy and Sarah Sherbondy*

Samuel H. Rudman
David A. Rosenfeld
Erin W. Boardman
Philip T. Merenda
ROBBINS GELLER RUDMAN
        & DOWD LLP
58 South Service Rd., Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
eboardman@rgrdlaw.com
pmerenda@rgrdlaw.com

Ellen Gusikoff Stewart
Douglas R. Britton
Kevin A. Lavelle
Matthew J. Balotta
ROBBINS GELLER RUDMAN
        & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
dougb@rgrdlaw.com
klavelle@rgrdlaw.com
mbalotta@rgrdlaw.com

*Lead Counsel for Lead Plaintiff Laborers
Pension Trust of Greater St. Louis*

Brian Schall
THE SCHALL LAW FIRM
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: 310/301-3335

26

brian@schallfirm.com

*Additional Counsel for Lead Plaintiffs*
*Donald*
*Sherbondy and Sarah Sherbondy*

# EXHIBIT 9W

IN THE UNITED STATES DISRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

GABBY KLEIN, *et al.*,
                Plaintiffs,

v.                                          Civil No. 3:20cv75 (DJN)

ALTRIA GROUP, INC. *et al.*,
                Defendants.

## ORDER AND JUDGMENT APPROVING CLASS ACTION SETTLEMENT

This matter comes before the Court on Lead Plaintiffs' Motion for Final Approval of Class Action and Approval of Plan of Allocation of the Net Proceeds of the Settlement (ECF No. 307) and Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Awards to Lead Plaintiffs (ECF No. 309). For the reasons stated herein, the Court hereby GRANTS both Motions (ECF Nos. 307, 309.)

WHEREAS, a securities class action is pending in this Court entitled *Klein v. Altria Group, Inc., et al.*, No. 3:20-cv-00075-DJN (the "Action");

WHEREAS, Lead Plaintiffs Donald and Sarah Sherbondy and Construction Laborers Pension Trust of Greater St. Louis ("Plaintiffs"), on behalf of themselves and the other members of the Settlement Class (as defined below), and Defendants Altria Group, Inc. ("Altria"), JUUL Labs, Inc. ("JLI"), Howard A. Willard III, William F. Gifford, Jr., Adam Bowen, James Monsees, Kevin Burns, and K.C. Crosthwaite (collectively, the "Defendants," and, together with Plaintiffs, on behalf of themselves and the other members of the Settlement Class, the "Parties") have entered into the Stipulation and Agreement of Settlement dated December 9, 2021 (the "Stipulation"), that provides for a complete dismissal with prejudice of the claims asserted

against Defendants in the Action on the terms and conditions set forth in the Stipulation, subject to the approval of this Court (the "Settlement");

WHEREAS, unless otherwise defined in this Judgment, the capitalized terms used herein shall have the same meanings as they have in the Stipulation;

WHEREAS, by Order dated December 16, 2021 (the "Preliminary Approval Order"), this Court: (a) preliminarily approved the Settlement; (b) preliminarily certified the Settlement Class for purposes of this Settlement only; (c) directed that notice of the proposed Settlement be provided to Settlement Class Members; (d) provided Settlement Class Members with the opportunity either to exclude themselves from the Settlement Class or to object to the Settlement; and (e) scheduled a hearing regarding final approval of the Settlement;

WHEREAS, due and adequate notice has been given to the Settlement Class;

WHEREAS, the Court conducted a hearing on March 31, 2022 (the "Settlement Fairness Hearing") to consider, among other things, (a) whether the terms and conditions of the Settlement are fair, reasonable, and adequate to the Settlement Class, and should therefore be approved; and (b) whether a judgment should be entered dismissing the Action with prejudice as against the Defendants; and

WHEREAS, the Court, having reviewed and considered the Stipulation, all papers filed and proceedings held herein in connection with the Settlement, all oral and written comments received regarding the Settlement, and the record in the Action, and good cause appearing therefor;

2

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. **Jurisdiction** – The Court has jurisdiction over the subject matter of the Action, and all matters relating to the Settlement, as well as personal jurisdiction over all of the Parties and each of the Settlement Class Members.

2. **Incorporation of Settlement Documents** – This Judgment incorporates and makes a part hereof: (a) the Stipulation filed with the Court on December 9, 2021; and (b) the Postcard Notice, Notice and Summary Notice, each of which were filed with the Court on December 9, 2021.

3. **Class Certification for Settlement Purposes** – The Court hereby affirms its determinations in the Preliminary Approval Order and finally certifies, for the purposes of the Settlement only, the Action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Settlement Class consisting of all persons and entities who purchased or otherwise acquired Altria securities between October 25, 2018 and April 1, 2020, both dates inclusive, and were allegedly damaged thereby. Excluded from the Settlement Class are (i) Defendants, (ii) current and former officers and directors of Altria and JLI; (iii) members of the Immediate Family of each of the Individual Defendants; (iv) all subsidiaries and affiliates of Altria and JLI and the directors and officers of Altria, JLI, and their respective subsidiaries or affiliates; (v) all persons, firms, trusts, corporations, officers, directors, and any other individual or entity in which any Defendant has a controlling interest; and (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of all such excluded parties. Also excluded from the Settlement Class are the persons listed on Exhibit 1 hereto, who are excluded from the Settlement Class pursuant to request.

3

4. **Adequacy of Representation** – Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, the Court hereby affirms its determinations in the Preliminary Approval Order certifying Plaintiffs as Class Representatives for the Settlement Class and appointing Lead Counsel as Class Counsel for the Settlement Class. Plaintiffs and Lead Counsel have fairly and adequately represented the Settlement Class both in terms of litigating the Action and for purposes of entering into and implementing the Settlement and have satisfied the requirements of Federal Rules of Civil Procedure 23(a)(4) and 23(g), respectively.

5. **Notice** – The Court finds that the dissemination of the Postcard Notice, Notice and the publication of the Summary Notice: (a) were implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of (i) the pendency of the Action; (ii) the effect of the proposed Settlement (including the Releases to be provided thereunder); (iii) Lead Counsel's motion for an award of attorneys' fees, Litigation Expenses and awards to Plaintiffs pursuant to 15 U.S.C. § 78u-4(a)(4); (iv) their right to object to any aspect of the Settlement, the Plan of Allocation, and/or Lead Counsel's motion for attorneys' fees and Litigation Expenses; (v) their right to exclude themselves from the Settlement Class; and (vi) their right to appear at the Settlement Fairness Hearing; (d) constituted due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable laws and rules.

4

6.      **CAFA** – The Court finds that the notice requirements set forth in the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, to the extent applicable to the Action, have been satisfied.

7.      **Objections** – The Court has considered each of the objections to the Settlement submitted pursuant to Rule 23(e)(5) of the Federal Rules of Civil Procedure.  The Court finds and concludes that each of the objections is without merit, and they are hereby overruled.

8.      **Final Settlement Approval and Dismissal of Claims** – Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, this Court hereby fully and finally approves the Settlement set forth in the Stipulation in all respects (including, without limitation: the amount of the Settlement; the Releases provided for therein; and the dismissal with prejudice of the claims asserted against Defendants in the Action), and finds that the Settlement is, in all respects, fair, reasonable, and adequate to the Settlement Class under Federal Rule of Civil Procedure 23(e)(2), having considered and found that:

a.      Plaintiffs and Lead Counsel have adequately represented the Class;

b.      the proposal was negotiated at arm's length between experienced counsel;

c.      the relief provided for the Settlement Class is adequate, having taken into account:

(1)      the costs, risks, and delay of motion practice, trial and appeal;

(2)      the effectiveness of any proposed method of distributing relief to the Settlement Class, including the method of processing Settlement Class Member claims; and

5

(3)     the terms of any proposed award of attorney's fees, including timing of payment; and

d.     the proposed Plan of Allocation treats Settlement Class Members equitably relative to each other.

9.      Accordingly, the Parties are directed to implement, perform, and consummate the Settlement in accordance with the terms and provisions contained in the Stipulation.

10.     The Action and all of the claims asserted against Defendants in the Action by Plaintiffs and the other Settlement Class Members are hereby dismissed with prejudice. The Parties shall bear their own costs and expenses, except as otherwise expressly provided in the Stipulation.

11.     **Binding Effect** – The terms of the Stipulation and of this Judgment shall be forever binding on Defendants, Plaintiffs, and all other Settlement Class Members (regardless of whether or not any individual Settlement Class Member submits a Claim Form or seeks or obtains a distribution from the Net Settlement Fund), as well as their respective successors and assigns. The persons and entities listed on Exhibit 1 hereto are excluded from the Settlement Class pursuant to request and are not bound by the terms of the Stipulation or this Judgment.

12.     **Releases and Bars** – The Releases set forth in paragraphs 4 through 8 of the Stipulation, together with the definitions contained in paragraph 1 of the Stipulation relating thereto, are expressly incorporated herein in all respects. The Releases are effective as of the Effective Date. Accordingly, this Court orders that:

(a)     Without further action by anyone, and subject to paragraph 13 below, upon the Effective Date of the Settlement, Plaintiffs' Releasees and each of the other Settlement Class Members (whether or not such person submitted a Claim Form), on behalf of themselves,

6

and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, and on behalf of any other person or entity legally entitled to bring Released Plaintiffs' Claims on behalf of any Settlement Class Member, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, discharged, and dismissed with prejudice each and every one of the Released Plaintiffs' Claims (including, without limitation, any Unknown Claims) against any and all of Defendants' Releasees, and shall forever be barred and enjoined, to the fullest extent permitted by law, from commencing, instituting, maintaining, prosecuting or continuing to prosecute any or all of the Released Plaintiffs' Claims against any of Defendants' Releasees, in this Action or in any other proceeding. This Release shall not apply to any Excluded Plaintiffs' Claims.

(b)      Without further action by anyone, and subject to paragraph 13 below, upon the Effective Date of the Settlement, Defendants' Releasees, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors and assigns in their capacities as such, and on behalf of any other person or entity legally entitled to bring Released Defendants' Claims on behalf of Defendants, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Defendants' Claim (including, without limitation, any Unknown Claims) against Plaintiffs' Releasees, and shall forever be barred and enjoined from commencing, instituting, maintaining, prosecuting or continuing to prosecute any or all of the Released Defendants' Claims against any of Plaintiffs' Releasees, in this Action or in any other proceeding. This Release shall not apply to any Excluded Defendants' Claims.

7

13.     Notwithstanding paragraphs 12(a) – (b) above, nothing in this Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of the Stipulation or this Judgment.

14.     **Rule 11 Findings** – The Court finds and concludes that the Parties and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and settlement of the Action.

15.     **No Admissions** – Neither this Judgment, the MOU, the Stipulation (whether or not consummated), including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of the Stipulation, nor any proceedings taken pursuant to or in connection with the Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a)     shall be offered or received against or to the prejudice of any of the Defendants or Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants or Defendants' Releasees with respect to the truth of any fact alleged by Plaintiffs and the Settlement Class, or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants or the Defendants' Releasees or in any way referred to for any other reason as against any of the Defendants or the Defendants' Releasees, in any arbitration proceeding or other civil, criminal,

8

or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation;

(b)     shall be offered or received against or to the prejudice of Plaintiffs or any of the Plaintiffs' Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by Plaintiffs or any of the Plaintiffs' Releasees that any of their claims are without merit, that any of the Defendants or Defendants' Releasees had meritorious defenses, or that damages recoverable in this Action would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault, or wrongdoing of any kind, or in any way referred to for any other reason as against Plaintiffs or any of the Plaintiffs' Releasees, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation;

(c)     shall be offered or received against or to the prejudice of any of the Defendants' Releasees, Plaintiffs, any other member of the Settlement Class, or their respective counsel, as evidence of a presumption, concession, or admission with respect to any liability, damages, negligence, fault, infirmity, or other wrongdoing of any kind, or in any way referred to for any other reason against or to the prejudice of any of the Defendants' Releasees, Plaintiffs, other members of the Settlement Class, or their respective counsel, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; or

(d)     shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; *provided, however, that if the Stipulation is approved by the Court, the Parties and the Releasees and their respective*

*counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.*

16.  **Retention of Jurisdiction** – Without affecting the finality of this Judgment in any way, this Court retains continuing and exclusive jurisdiction over: (a) the Parties for purposes of the administration, interpretation, implementation, and enforcement of the Settlement; (b) the disposition of the Settlement Fund; (c) any motion to approve the Settlement Class Distribution Order; and (d) the Settlement Class Members for all matters relating to the Action.

17.  **Modification of the Agreement of Settlement** – Without further approval from the Court, Plaintiffs and Defendants are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this Judgment; and (b) do not materially limit the rights of Settlement Class Members in connection with the Settlement.  Without further order of the Court, Plaintiffs and Defendants may agree to reasonable extensions of time to carry out any of the provisions of the Settlement.

18.  **Plan of Allocation** – The Court hereby finds that the proposed Plan of Allocation is a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members, and Lead Counsel and the Claims Administrator are directed to administer the Plan of Allocation in accordance with its terms and the terms of the Stipulation.

19.  **Attorneys' Fees and Litigation Expenses** – Lead Counsel is awarded attorneys' fees in the amount of $27,000,000, and expenses in the amount of $1,544,748.17, such amounts to be paid out of the Settlement Fund immediately upon entry of this Order.  Lead Counsel shall thereafter be solely responsible for allocating the attorneys' fees and expenses among The Schall Law Firm and Cohen Milstein Sellers & Toll PLLC in the manner in which

Lead Counsel in good faith believe reflects the contributions of such counsel to the initiation, prosecution, and resolution of the Action. In the event that this Judgment does not become Final, and any portion of the fee and expense award has already been paid from the Settlement Fund, Lead Counsel and all other counsel to whom Lead Counsel has distributed payments shall within thirty (30) calendar days of (i) entry of the order rendering the Settlement and Judgment non-Final, (ii) notice of the Settlement being terminated, or (iii) the occurrence of any other event that precludes the Effective Date from occurring, refund the Settlement Fund the fee and expense award paid to Lead Counsel and, if applicable, distributed to other counsel.

20. **Awards to Plaintiffs** – Plaintiffs Donald Sherbondy, Sarah Sherbondy and Construction Laborers Pension Trust of Greater St. Louis are awarded $20,000, $20,000 and $28,775, respectively for their reasonable costs and expenses directly relating to the representation of the Settlement Class as provided in 15 U.S.C. § 78u-4(a)(4), with such amounts to be paid from the Settlement Fund upon the Effective Date of the Settlement.

21. **Termination of Settlement** – If the Settlement is terminated as provided in the Stipulation or the Effective Date of the Settlement otherwise fails to occur, including as a result of any appeals, this Judgment shall be vacated, rendered null and void and be of no further force and effect, except as otherwise provided by the Stipulation, and this Judgment shall be without prejudice to the rights of Plaintiffs, Class Members, and Defendants, and the Parties shall be deemed to have reverted *nunc pro tunc* to their respective positions in the Action as of the date immediately prior to the execution of the MOU on October 28, 2021. Except as otherwise provided in the Stipulation, in the event the Settlement is terminated in its entirety or if the Effective Date fails to occur for any reason, the balance of the Settlement Fund including interest accrued therein, less any Notice and Administration Costs actually incurred, paid, or payable and

11

less any Taxes and Tax Expenses paid, due, or owing, shall be returned to Altria (or such other persons or entities as Altria may direct), in accordance with the Stipulation.

22. **Additional Notice Required Following Disbursement** — Not later than thirty (30) days following the completion of the disbursement of the Settlement Fund, Plaintiffs shall file a notice to the Court listing the exact disbursement of funds for each recipient. Specifically, the notice shall state the exact amount disbursed to (1) the Settlement Class Members collectively (not by individual Class Member); (2) Lead Counsel, distinguishing between fees and expenses; (3) Lead Plaintiffs as awards; (3) the Claims Administrator; and (4) any other individual or entity receiving funds. If any portion of the Settlement Fund remains after disbursement to the Settlement Class Members, Lead Counsel, Lead Plaintiffs and the Claims Administrator, Plaintiffs shall indicate the total funds remaining and whether those funds have been or will be disbursed to a *cy pres* beneficiary, including identification of the *cy pres* beneficiary.

23. **Entry of Final Judgment** – There is no just reason to delay the entry of this Judgment.

Let the Clerk file a copy of this Order and Judgment electronically and notify all counsel of record.

It is so ORDERED.

_____ /s/ _____
David J. Novak
United States District Judge

Richmond, Virginia
Dated: March 31, 2022

12

# EXHIBIT 1

| # | NAME/ACCOUNT | CITY | STATE/COUNTRY |
|---|---|---|---|
| 1 | GERALD A JOHNSON & JODY A GRAMS TR UA 07/17/2014 JOHNSON TRUST | OAKDALE | MN |
| 2 | CHUNGHO CHIAO | N/A | N/A |
| 3 | RICHARD ENTERLINE JR | PINELLAS PARK | FL |
| 4 | WILLARD J SPARKS | ARLINGTON | TX |
| 5 | PHYLLIS A SPARKS | ARLINGTON | TX |
| 6 | KEVIN J O CONNER | BELLINGHAM | WA |
| 7 | MARY ANN E HILDEBRAND | LANSDALE | PA |
| 8 | KENNETH C GOTSCH & LYNNE M GOTSCH JT WROS | HIGHLAND PARK | IL |
| 9 | JAMES MISTRO & KAREN MISTRO | CRETE | IL |
| 10 | SHARON ALCALA | GAHANNA | OH |
| 11 | ROSEMARY MCDANIEL | TRENTON | FL |
| 12 | PATRICIA A WOMACK | MECHANICSVILLE | VA |
| 13 | DEBORAH J KNOWLES | KITCHENER | CAN |
| 14 | DAVID BRIAN HOLLAND | SAN ANTONIO | TX |
| 15 | JANET V BENSON | GLEN MILLS | PA |
| 16 | JAMES W JAPPE | CENTEREACH | NY |
| 17 | FOREST A BENSON | GLEN MILLS | PA |
| 18 | GEORGE DANIEL ROBBINS | RICHMOND | TX |
| 19 | BENJAMIN E & KATHLEEN M RAMP LIVING TRUST U/A 12/17/15 | GENESEO | IL |
| 20 | RENEE MCCOWN | PORTLAND | OR |
| 21 | KATHLEEN F WELLS | PATCHOGUE | NY |
| 22 | STEPHANIE CLARK | TELFORD | PA |
| 23 | STEPHEN L KRUER & RUTH L KRUER | FLOYDS KNOBS | IN |
| 24 | MICHAEL LOCASCIO | FLANDERS | NJ |
| 25 | EDNA R SHUEY | LAS VEGAS | NV |
| 26 | SANDRA CRUM | LEHIGHTON | PA |
| 27 | CLARENCE GREER | SMITHS STATION | AL |
| 28 | TERRY A PAGE & CAROLE R PAGE | HILLSBORO | IL |
| 29 | MARGARET M SIMPSON | CLARENDON | AR |
| 30 | EUGENE KLIMENT | LINCOLN | NE |
| 31 | GLENNA CATTERMOLE | SCOTTS VALLEY | CA |
| 32 | ELIANA CROOKS | LEOPOLD | AUS |

# EXHIBIT 9X

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

GABBY KLEIN, ET AL.                    }
                                       }
v.                                     }    Civil Action No.
                                       }    3:20 CV 75
ALTRIA GROUP INC., ET AL               }

March 31, 2022


COMPLETE TRANSCRIPT OF FINAL FAIRNESS HEARING
BEFORE THE HONORABLE DAVID J. NOVAK
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

Jeremy A. Lieberman, Esquire
Michael J. Wernke, Esquire
POMERANTZ LLP
600 Third Avenue
New York, New York  10016

Steven J. Toll, Esquire
COHEN MILSTEIN SELLERS & TOLL PLLC (DC)
1100 New York Avenue NW
Suite 500, West Tower
Washington, DC  20005-3965

David A. Rosenfeld, Esquire
ROBBINS GELLER RUDMAN & DOWD, LLP
58 South Service Road, Suite 200
Melville, New York  11747

Douglas R. Britton, Esquire
Ellen G. Stewart, Esquire
ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, California  92101


Counsel on behalf of the Plaintiffs

KRISTA L. HARDING, RMR
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT

APPEARANCES:  (Continued)


Stephen R. DiPrima, Esquire
Jacob Miller, Esquire
WACHTELL, LIPTON ROSEN & KATZ
51 West 52nd Street
New York, New York  10019

Edward J. Fuhr, Esquire
HUNTON ANDREWS KURTH LLP
951 East Byrd Street, Riverfront Plaza
Richmond, Virginia  23219

Jared M. Gerber, Esquire
CLEARY GOTTLIEB STEEN & HAMILTON, LLP
One Liberty Plaza
New York, New York  10006

Brian E. Pumphrey, Esquire
MCGUIRE WOODS LLP (Richmond)
800 East Canal Street
Richmond, Virginia  23219


        Counsel on behalf of the Defendants

3

(The proceeding commenced at 11:59 a.m.)

THE CLERK: Case Number 3:20 CV 75. *Gabby Klein, et al v. Altria Group, Inc. et al.*

Representing the plaintiff, David Rosenfeld, Jeremy Lieberman, Doug Britton, Ellen Stewart, Steven Toll and Michael Wernke.

On behalf of the defendant, Stephen DiPrima, Edward Fuhr, Jacob Miller, Jared Gerber and Brian Pumphrey.

Counsel, are we ready to proceed?

MR. LIEBERMAN: Yes.

THE COURT: Who's speaking for the plaintiffs?

MR. LIEBERMAN: Good afternoon, Your Honor.

Jeremy Lieberman, Pomerantz LLP on behalf of the plaintiffs.

THE COURT: Okay.

And who's going to speak for the defendants then?

MR. DiPRIMA: Your Honor, to the extent anything needs to be said, I'll be speaking.

THE COURT: Okay. And remind me again.

MR. DiPRIMA: Stephen DiPrima.

THE COURT: That's right. Okay. Okay.

Well, there are lots of lawyers here. That tells me there's a lot of money at stake. That's how we

4

get lots of lawyers.

All right. We're here for the final approval of this class action settlement.

So, Mr. Lieberman, do you want to put on the record what the agreement is?

MR. LIEBERMAN: Good afternoon, Your Honor.

The proposed settlement is a $90,000,000 settlement on behalf of the class. We think, clearly, the settlement meets the *Jiffy Lube* factors in this circuit. It was a hard fought litigation.

It is a case that went almost to the end of discovery. We have taken 11 -- taken defendant 11 depositions in the case. We were already finalizing seven expert reports. That's in addition to the two expert reports that were submitted in favor of class certification. And it's a case that this Court had made a lot of colorful remarks as to his scepticism regrading how far we'd go.

THE COURT: I'm a colorful guy.

MR. LIEBERMAN: Yes.

THE COURT: But what I was trying to tell you, and I think this is what your point was, that just because you made it past the motion to dismiss, which was a tough hurdle for you, I was worried about whether you would next meet the next hurdle, which was summary judgment. I had

not made a decision yet, of course, because we hadn't gotten there. But I was worried about that for your perspective.

But I also knew that if you did get past summary judgment and we had gone to trial, on the other hand the defense was looking at possibly a significant higher damage amount than what they're paying here, which is what the balance is, right? It's all about a risk/reward.

We received one correspondence where somebody, unsigned, indicated that if I approved your attorneys' fees I ought to be impeached. I don't know if that's an objection or not. To the extent it's an objection, it's overruled because I don't want to be impeached.

But are you aware of any other objections?

MR. LIEBERMAN: It's our position that objection is not a valid objection. It came beyond the deadline. It also didn't identify who was the objector. And it also didn't set forth its shares and its holdings. We don't even know if it was a class member in this case. That's A.

And, B, we haven't received any other objections, let alone valid objections.

THE COURT: All right.

Look, I'll just say this: When somebody receives something in the mail and they see that attorneys

are making $27,000,000, my first reaction is what any other citizen's reaction would be is, oh, my God, that's a lot of money, right? Why are we doing that?

But I don't think until you do this work that you understand why that amount exists. And of course that's lower than the norm. I basically told you I wasn't going to go over 30 percent. You were at least looking for 33 percent. In our district, it's been as high as 40 percent that's been approved. So I was on the lower side of that.

But again, the only reason you can get able counsel like you-all into these cases is a risk/reward. Are you willing to put in, first, the amount of money. You had $1.5 million in expenses up front.

Then the amount of manpower that goes into this. You put your lodestar number in there as well. And if you're not willing -- if you're not going to receive some kind of reasonable outcome, firms are not willing do that.

MR. LIEBERMAN: That is correct, Your Honor. We've got, as Your Honor mentioned, a lot of attorneys representing the defendants, and the class needs just as able and adequate class representation.

THE COURT: A hundred percent.

MR. LIEBERMAN: And only if they get paid does that occur.

7

THE COURT: Right. And that's really the balance. And so whoever that person was that sent that in, I just -- it's an emotional reaction as opposed to understanding what the reason for this is.

Okay. Do you want to talk about the notice? You talked about all this in your papers?

MR. LIEBERMAN: Yes.

THE COURT: And I intend to approve this, but I will just let you put it on the record a little bit.

MR. LIEBERMAN: Sure.

The notice had gone out to over 1.2 million individuals who were listed as having health securities during the relevant period, which they -- they have now the opportunity for them to file their claim forms, which is due in five days from now. Then we will know the extent of the participation in the settlement.

We anticipate the -- I mean, as an almost certainly, the settlement monies of $60,000,000 left that we -- that will be left after attorneys' fees and expenses, will be completely exhausted by many multiples. And so it will go completely to shareholders.

So that that was -- it was a very robust notice program. And the fact that after that program you have zero objections. You have exclusions. Really, 32 listed exclusions. Of those, only seven are valid representing

8

1,500 shares.

And so the Fourth Circuit has recognized -- I mean, the class has spoken here, and there's no -- there's no institutional investor, despite significant institutional investor holdings that went ahead and either, A, objected to the settlement thinking that there should be a better deal or, B, excluded themselves and said, well, I can go and do better in this Court under my own private litigation with my own attorney hired by me. So that's very telling as to the result here.

At the end of the day, given all the risks to the class, as Your Honor noted multiple times, this is a -- going to be a $60,000,000 dividend, essentially, to investors. That's meaningful.

THE COURT: And they may have gotten nothing. If they had fully litigated this case, they may have not gotten a thing.

MR. LIEBERMAN: They would have gotten nothing. And the theories in this case were somewhat -- somewhat unique, somewhat cutting edge. There was the issue as to whether or not Juul could be held liable. There was an issue of standing. You know, we're litigating that now in the Second Circuit under similar circumstances.

And actually some of my counsel here is defending that appeal. And the District Court there ruled

there should be no standing. I'm in a situation very similar, and so that was a novel legal theory.

And then all the information that was out there in the marketplace regarding the investigations into the potential or alleged marketing to youth was also very -- a very significant risk to the class as to whether or not those claims would ultimately survive summary judgment on a truth and market defense or a materiality defense.

THE COURT: All right.

Two other points I just want to make before you have a seat, and that's this: I'm not going to give you interest on your expenses. You're making enough money. You can afford the interest. We don't do that, number one.

MR. LIEBERMAN: Fair enough.

THE COURT: Number two, to the extent that there is any money left, I think I talked to you before about this, I'm very watchful over what the *cy-près* are going to be. That they're not to be, so-called, charities that are really litigation vehicles.

The ones that I have approved here before is Feed More in Richmond. If there is a need for a cy-prè*s*, it needs to be a true charity. Not something that's used to generate cases for plaintiff's lawyers.

Two, it must be Richmond-based and something

addressing the poor. You know, this is a case involving smoking, but really -- the people that are generally harmed in that really are more poor, which is why I reach for Feed More. So if you're -- I'm not telling you you have to use Feed More, but I am telling you it has to be something like that. And I want to approve it before you use it, okay? I'm not sure there is going to be a need for a *cy-près* here. But if there is, I want you to come back to me.

If you are going to use Feed More, you don't have to come back to me. I have approved that in advance. Feed More is based here in Richmond.

MR. LIEBERMAN: Your Honor, the process as we anticipate it occurring is that we'll go through -- we've had the notice -- we've had the notice processed. There is now the claims filing process. There will be some several months of going through those claims.

And likely there will be one or two distributions, and then there will be an assessment of whether or not it's economical to make yet another distribution.

THE COURT: All right.

MR. LIEBERMAN: And at that stage, -- through that whole process there will be a -- before we make the first distribution, we will make a motion for

distribution. And in that motion, we will suggest that if there is any *cy-près* it should be, in all likelihood, the charity mentioned by Your Honor.

THE COURT: All right. Well, again, I'm not mandating. I'm just very -- I don't like it when plaintiff's lawyers use so-called charities that are really just vehicles to get cases. I'm sure you wouldn't do that, but I'm just saying I'm advising.

Number two is this: At the end of the case, and I've added this into the order, that after all the distributions are made, I would like you to file a report to the Court saying the distributions have been made, and who they have been made to and the amounts. So you would say -- I don't want individual names of class members.

You would say collectively to the class, $60,000,000, okay? Attorneys' fees paid out, $27,000,000, the expenses paid, you know, X. And if there was any *cy-près*, you would put that in there.

So within 30 days after the full distributions have been made just so there is a public accounting as to who got what money. Again, I do not want you to go Mr. Smith got $1,000. I just want you to say collectively this is what was disbursed to the class members.

Does that make sense?

MR. LIEBERMAN: Yes, that's fine.

12

THE COURT:  I think that's what I'm going to do going forward in these cases.

So, Mr. Pumphrey, you will know that in the future because you're going to keep settling cases, so we're going to have that as a continued requirement.

MR. PUMPHREY:  Yes, sir.

THE COURT:  Is there anything else you want to say?

MR. LIEBERMAN:  Nothing further, Your Honor. And we just want to thank Your Honor for the attention to the case.  And, ultimately, I think everyone's effort here yielded a good result for the class.

THE COURT:  Well, the real hero is Magistrate Judge Colombell.

MR. LIEBERMAN:  That's for sure.

THE COURT:  You know, I keep hearing about retired Judge Phillips is the greatest mediator known to mankind, but it took the free guy to get it done.

MR. LIEBERMAN:  We'll move on to Judge Phillips on our next --

THE COURT:  Well, I've had him in like three or four cases I had to come in afterwards.  And I'm sure he's just as great as everybody says, but, you know, the free guys are the ones that are getting it done in this courthouse.

MR. LIEBERMAN: No doubt.

THE COURT: And Mr. Pumphrey can tell you that from experience. And I mean no disrespect to Judge Phillips.

I want to make one observation. We gave public notice here in case anybody wanted to come to object. They needed to come in person. I see nobody here as an objector. You have reported none as well. I've overruled that one comment.

I will just ask Mr. DiPrima did you want to say anything, or are you aware of any objectors?

MR. DiPRIMA: No, Your Honor. And we're supportive of the settlement, the defendants are supportive, and we thank the Court and Judge Colombell.

THE COURT: Okay. All right.

Well, I'm going to make my findings then. We will begin with notice. Because this is a 23(b)(3) class settlement, the Court must assess whether the notice here was directed in a reasonable manner to all class members.

Under the rule, the notice to the class must be the best practical -- practicable under the circumstances, and include individual notice to all members who can be identified through reasonable efforts. In an easy to understand language, the notice must clearly state the nature of the case and the claims involved.

You must also inform class members of their opportunity to opt out. That the judgment will bind all the class members who did not opt out. And any class members who do not opt out may enter an appearance through counsel.

Here I find that the notice to class was directed in a reasonable manner to potential class members through a combination of the U.S. Mail and publications. The class administrator, working with the parties, brokerage firms, and nominees obtained the names and contact information of potential class members.

And as of March the 24th of this year, the class administrator had mailed 1,221,001 copies of the notice to potential class members. And the class administrator also had published a notice in *Investor's Business Daily* and *P.R. Newswire*.

So I find that this notice program was the best practicable under the circumstances, and that it satisfied the requirements of both Rule 23 and due process.

I'm moving on to the terms of the settlement, and evaluating the settlement under the *Jiffy Lube* factors determining that it is fair, reasonable and adequate under those factors.

I find that the settlement is fair and reasonable to the class members based on the following:

15

The parties had engaged in a thorough investigation of legal claims and facts surrounding the case.  The parties had fully briefed multiple motions to dismiss, and a motion to amend the complaint and a motion for class certification.  Parties engaged in significant discovery, including the production and review of tens of millions of pages of documents, as well as the deposition of 11 witnesses, as well as reviewing the depositions and related matters.

The parties engaged in multiple extensive arm's length negotiations that were contentious and complex with the supervision and guidance of an experienced private mediator, who I referenced was retired Judge Phillips.  And then again multiple mediations that proved to be successful in front of our Magistrate Judge Mark Colombell, who deserves a lot of credit here.

Class counsels' experience and expertise in the field of securities class actions also speaks to the fairness and reasonableness of the settlement reached.  Class counsel and defense counsel on both sides are highly skilled in this area of the law.  Each zealously representing the respective clients' best interest.  And all counsel endorsed the settlement before the Court as fair, reasonable and adequate.  Considering the number of lawyers that are in this room, too, involved in this

should speak to that as well.

As to adequacy, with that in mind, I also find that the settlement is adequate in its representation of the class members. Both parties have presented substantive and contested arguments throughout the course of the litigation. Even though I denied the motions to dismiss, defendants, I believe, had some strong defenses that they could have raised both as to merits and class certification.

Continuing litigation, therefore, would have proved extremely costly and time-consuming to both sides with extensive risk.

I have also considered the degree of opposition to the proposed settlement. As we have already discussed, there are no objections to the settlement.

Further, only 32 class members have opted out of the class settlement which represents a miniscule percentage of the shares outstanding during the class settlement period. So, overwhelmingly, the class as a whole has supported this proposed settlement.

And finally, as I have already mentioned, the extent of discovery, the circumstances of the multiple settlement negotiations, experience of counsel in securities law and class action litigation, all favor a finding that the settlement here was adequate.

And as to plan of allocation, the plaintiffs have proposed a plan as to the allocation and the net proceeds of the settlement.  Their damage expert calculated the estimate amount of the alleged artificial inflation in the share prices of the common stock.  The plan of allocution -- I'm sorry, allocation, calculates a recognized loss amount for each purchase of the Altria common stock during the settlement class period.  So in approving the plan of allocation, I find it to be fair, adequate and reasonable.

As to the service awards now for each of the class numbers or class representatives, no class member has objected to the service awards, and the defendants do not oppose them.

So pursuant to Title 15, United States Code, Section 78u-4(a)(4), the plaintiffs request a service award of $20,000 each for Donald Sherbondy and Sarah Sherbondy, and $28,775 for the Construction Laborers Pension Trust of Greater St. Louis.  I find their requested awards to be appropriate, and they'll be paid from the settlement.

As to the attorneys' fees, as I mentioned, class counsel seeks $27,000,000 in fees.  This represents 30 percent of the settlement fund.  As I noted before, that is actually a lower percentage than a norm in these

cases.  I think the request was probably based upon my nudge that I was not going to go over 30 percent.  But it is more common to be in the 33 to 40 percent range.

Cross-checked against the lodestar amount of $14,321,432, the fee requested is a 1.88 multiplier of the lodestar.  I believe that the fee request is appropriate.

I understand that the final number is high, but I've already addressed really the reasons for that.  Given the extensive amounts of time and labor that plaintiffs' counsel have expended in this case, and the significant risk involved in this case that I have discussed before, I believe that it is appropriate.

The settlement, obviously, provides substantial benefits to shareholders.  They're getting $60,000,000 that they would not have gotten before, even though there was substantial risk.

And notably, no class member has objected to the fee award.  I just got that one comment that somebody would like to have me impeached if I approved it, but they can do what they want to do.

Class counsel also requests reimbursement of their litigation expenses, which I'm going to approve in the amount $1,544,748.17; although, I deny their request for interest on that amount.  They have made enough money here.

In light of the fact that approximately $60,000,000 will go to the class members after paying out the attorneys' fees, litigation expenses, lead plaintiff awards, and the settlement, the administrator's anticipated cost, I believe that these fees and expenses are appropriate.

I reaffirm the settlement class as the final settlement class pursuant to Rule 23 for the reasons I previously set forth in the preliminary approval order. I find that the action -- I find that the action for the purposes of the settlement may be maintained as a class action on behalf of the settlement class. As I said, I'm going to have you do that report in 30 days after the final disbursement.

Is there anything else that we need to do? Because the final answer is I'm approving it.

MR. LIEBERMAN: Thank you very much, Your Honor. Nothing for class plaintiffs.

THE COURT: Okay.

Anything else from the defendants?

MR. DiPRIMA: No, sir.

THE COURT: All right.

I appreciate all of your hard work.

And again, I want to commend Magistrate Judge Colombell for his great work.

MR. LIEBERMAN:  Thank you, Your Honor.

MR. DiPRIMA:  Thank you.

(The proceeding concluded at 12:20 p.m.)


REPORTER'S CERTIFICATE

I, Krista Liscio Harding, OCR, RMR, Notary Public in and for the Commonwealth of Virginia at large, and whose commission expires March 31, 2024, Notary Registration Number 149462, do hereby certify that the pages contained herein accurately reflect the notes taken by me, to the best of my ability, in the above-styled action.
Given under my hand this 4th day of May, 2022.

/s/
Krista Liscio Harding, RMR
Official Court Reporter

# EXHIBIT 9Y

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

|  |  |  |
|---|---|---|
| STEVEN KNURR, Individually and on Behalf of All Others Similarly Situated, | ) ) | Civil Action No. 1:16-cv-01031-TSE-MSN |
|  | ) | CLASS ACTION |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) |  |
|  | ) |  |
| ORBITAL ATK, INC., et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

DECLARATION OF JAMES E. BARZ FILED ON BEHALF OF ROBBINS GELLER
RUDMAN & DOWD LLP IN SUPPORT OF APPLICATION FOR AWARD OF
ATTORNEYS' FEES AND EXPENSES

I, JAMES E. BARZ, declare as follows:

1.     I am a member of the firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or the "Firm"). I am submitting this declaration in support of the Firm's application for an award of attorneys' fees, expenses and charges ("expenses") in connection with services rendered in the above-entitled action (the "Action").

2.     I am the partner who oversaw and/or conducted the day-to-day activities in the litigation. This declaration and the supporting exhibits were prepared by, or with the assistance of, other lawyers and staff at the Firm and reviewed by me before signing. The information contained herein is believed to be accurate based on what I know and what I have learned from others at the Firm.

3.     This Firm is counsel of record for Lead Plaintiff Construction Laborers Pension Trust of Greater St. Louis and named plaintiff Wayne County Employees' Retirement System (collectively, "plaintiffs").

- 1 -

1544053_1

Case 3:21-cv-00414-DJN  Document 126-9    Filed 04/19/24    Page 251 of 586 PageID#
5439
Case 1:16-cv-01031-TSE-MSN   Document 453   Filed 04/26/19   Page 2 of 158 PageID# 8570

4.       The information in this declaration regarding the Firm's time and expenses is taken from time and expense printouts and supporting documentation prepared and maintained by the Firm in the ordinary course of business.  I reviewed these printouts in connection with the preparation of this declaration.  The purpose of this review was to review both the accuracy of the entries on the printouts as well as the necessity for, and reasonableness of, the time and expenses committed to the Action.  As a result of this review, reductions were made to both time and expenses in the exercise of billing judgment.  Based on this review and the adjustments made, I believe that the time reflected in the Firm's lodestar calculation and the expenses for which payment is sought herein are reasonable and were necessary for the effective and efficient prosecution and resolution of the Action.  In addition, I believe that these expenses are all of a type that have been previously approved by courts in class action cases and would normally be charged to a fee-paying client in the private legal marketplace.

5.       After the reductions referred to above, the number of hours spent on the Action by the Firm is 29,013.40.  A breakdown of the lodestar is provided in the attached Exhibit A.  The lodestar amount for attorney and paraprofessional time based on the Firm's current rates is $16,697,443.00. The hourly rates shown in Exhibit A are the usual and customary rates set by the Firm for each individual and submitted in support of other present fee applications.

6.       The Firm seeks an award of $1,117,515.10 in expenses and charges in connection with the prosecution of the Action.  Those expenses and charges are summarized by category in the attached Exhibit B.

7.       The following is additional information regarding certain of these expenses:

(a)       Witness and Other Fees: $9,141.65.  These expenses have been paid to attorney service firms or individuals who served process of summons and subpoenas for plaintiffs. The vendors who were paid for these services are set forth in the attached Exhibit C.

- 2 -

1544053_1

Case 3:21-cv-00444-DJN  Document 126-9  Filed 04/19/24  Page 252 of 586 PageID#
5440
Case 1:16-cv-01031-TSE-MSN  Document 453  Filed 04/26/19  Page 3 of 158 PageID# 8571

(b)     Transportation, Hotels & Meals: $90,596.68.   In connection with the prosecution of this case, the Firm has paid for travel expenses to, among other things, attend court hearings, attend mediations, and take or defend depositions.  The date, destination and purpose of each trip is set forth in the attached Exhibit D.  The Firm has reduced all airfare to economy rates.

(c)     Court Hearing Transcripts and Deposition Reporting, Transcripts and Videography: $94,971.47.  The vendors who were paid for these services are listed in the attached Exhibit E.

(d)     Experts/Consultants: $771,255.25.

(i)     Hemming Morse, LLP ("Hemming Morse"): $444,392.25.  Hemming Morse is a forensic accounting and financial consulting services firm.  Lead Counsel retained D. Paul Regan (CPA/CFF, CFE), the Chairman of Hemming Morse and a well-respected forensic accountant with over 40 years' experience in the accounting field, to offer opinions and testify regarding Orbital ATK, Inc.'s ("Orbital ATK" or the "Company") accounting for the Lake City Contract and its forward loss, Orbital ATK's compliance with Generally Accepted Accounting Principles and U.S. Securities and Exchange Commission ("SEC") disclosure rules, Orbital ATK's internal controls, and accounting materiality.  Mr. Regan and his team spent considerable time studying the record, including auditor workpapers, internal emails, witness interviews, consultant reports, bid documents, and accounting memoranda and policies, in order to be able to address the relevant accounting and disclosure issues relating to the Lake City Contract and Orbital ATK's internal controls.  Based on this work, Mr. Regan provided an expert report opining on these issues.

(ii)     Crowninshield Financial Research, Inc. ("Crowninshield"): $263,623.00.  Crowninshield is a financial economics consulting firm.  Lead Counsel retained Professor Steven P. Feinstein (Ph.D., CFA), the President of Crowninshield and an Associate Professor of Finance at Babson College, to offer opinions and testify regarding market efficiency,

- 3 -

1544053_1

loss causation, and damages relating to Orbital ATK's stock and the 2015 merger between Orbital Sciences Corporation and Alliant Techsystems, Inc. to form Orbital ATK.  Dr. Feinstein and his team spent considerable time studying the record and public information, including analyst reports, SEC filings, the Company's and its financial advisors' presentations and valuation analyses, and internal emails, in order to be able to address the market in which Orbital ATK stock traded, disclosures related to Orbital ATK's finances and operations and any related stock price movement, and the value of the entities at the time of the merger.  Based on this work, Dr. Feinstein provided (i) an expert report opining on market efficiency submitted with plaintiffs' motion for class certification, (ii) a rebuttal expert report submitted with plaintiffs' reply brief in support of class certification responding to defendants' market efficiency expert, and (iii) an expert report regarding loss causation and damages for plaintiffs' §10(b) and §14(a) claims.  Dr. Feinstein also prepared and sat for a deposition.

(iii)  Steven Davidoff Solomon (dba Solomon Advisory Services, LLC): $63,240.00.  Lead Counsel retained Steven Davidoff Solomon, a former mergers and acquisitions attorney and current Professor of Law at the University of California, Berkeley, School of Law, to offer opinions and testify regarding the customary and usual due diligence practices in mergers and acquisitions and the due diligence investigation made by defendants Orbital ATK, David W. Thompson, and Garrett E. Pierce with respect to Alliant Techsystems, Inc. and the Lake City Contract.  Professor Solomon spent considerable time studying the record, including internal emails, witness interviews, accounting and bid documents, and Company and third party due diligence presentations, analyses, and checklists, in order to address the defendants' due diligence investigation and what customary and usual due diligence would have entailed.  Based on this work, Professor Solomon provided an expert report opining on these issues.

- 4 -

1544053_1

(e)     Photocopies: $7,439.62.  In connection with this case, the Firm made 25,621 black and white copies.  Robbins Geller requests $0.15 per copy for a total of $3,843.15.  In addition, the Firm made 271 color copies.  Robbins Geller requests $0.50 per copy for a total of $135.50.  Each time an in-house copy machine is used, our billing system requires that a case or administrative billing code be entered and that is how the number of in-house copies were identified as related to the Action.  The Firm also paid $3,460.97 to outside copy vendors.  A breakdown of these outside charges by date and vendor is set forth in the attached Exhibit F.

(f)     Online Legal and Financial Research: $45,305.26.  This category includes vendors such as ALM Media Service, Caliber Advisors, Inc., LexisNexis Products, PACER, Thomson Financial, TransUnion Acquisition Corp. and Westlaw.  These resources were used to obtain access to SEC filings, factual databases, legal research and for cite-checking of briefs.  This expense represents the expenses incurred by Robbins Geller for use of these services in connection with this Action.  The charges for these vendors vary depending upon the type of services requested.  For example, Robbins Geller has flat-rate contracts with some of these providers for use of their services.  When Robbins Geller utilizes online services provided by a vendor with a flat-rate contract, access to the service is by a billing code entered for the specific case being litigated.  At the end of each billing period in which such service is used, Robbins Geller's costs for such services are allocated to specific cases based on the percentage of use in connection with that specific case in the billing period.  As a result of the contracts negotiated by Robbins Geller with certain providers, it is able to obtain substantial savings in comparison with the "market-rate" for *a la carte* use of such services which some law firms pass on to their clients.  For example, the "market rate" charged to others by LexisNexis for the types of services used by Robbins Geller is more expensive than the rates negotiated by Robbins Geller.

- 5 -

1544053_1

Case 1.16-cv-01031-TSE-MSN   Document 453   Filed 04/26/19   Page 6 of 158 PageID# 8574

8.      Mediation Fees (Phillips ADR Enterprises, P.C.): $27,275.00.   These are the plaintiffs' one-half share of the fees of the mediator, Gregory P. Lindstrom, who reviewed the substantial submissions by the parties in advance of, and conducted two full day in-person mediation sessions.   In addition, he conducted numerous telephonic conferences and sent and received electronic communications with the parties ultimately leading to a mediator's proposal and the settlement of the Action.

9.      In addition, the Firm seeks to recover a charge of $58,872.42 for eDiscovery database hosting.   Robbins Geller has installed top tier software, infrastructure and security.   The platform implemented, Relativity, is offered by over 120 vendors and is currently being used by 198 of the AmLaw200.   Over 30 servers are dedicated to Robbins Geller's Relativity hosting environment with all data stored in a secure SSAE 16 Type II data center with automatic replication to a datacenter located in a different geographic location.   By hosting in-house, Robbins Geller is able to charge a reduced, all-in rate that includes many services which are often charged as extra fees when hosted by a third party vendor.   Robbins Geller's hosting fee includes user logins, processing, deduplication, OCRing, TIFFing, bates stamping, exports, productions and archiving – all at no additional cost.   Also included is unlimited structured and conceptual analytics (*i.e.*, email threading, inclusive detection, near-dupe detection, concept searching, assisted review, clustering, and more).   Robbins Geller is able to provide all these services for a rate that is typically much lower than outsourcing to a third party vendor.   Utilizing a secure, advanced platform in-house has allowed Robbins Geller to prosecute actions more efficiently and has reduced the time and expense associated with maintaining and searching electronic discovery databases.   Similar to third-party vendors, Robbins Geller uses a tiered rate system to calculate hosting charges.   The amount requested reflects charges for the hosting of over 4.8 million pages of documents produced by defendants, plaintiffs and non-parties in this Action.

- 6 -

1544053_1

10.     The expenses and charges pertaining to this case are reflected in the books and records of this Firm. These books and records are prepared from receipts, expense vouchers, check records and other documents and based on the reviews performed by me and others at the Firm are believed to be an accurate record of the expenses and charges.

11.     The identification and background of my Firm and its partners is attached hereto as Exhibit G.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 24th day of April, 2019, at Chicago, Illinois.

_____

JAMES E. BARZ

- 7 -

Case 1:16-cv-01031-TSE-MSN   Document 453   Filed 04/26/19   Page 8 of 158 PageID# 6576

# EXHIBIT A

Case 3:21-cv-00414-DJN   Document 126-9   Filed 04/19/24   Page 258 of 586 PageID# 7
Case 1:16-cv-01031-TSE-MSN   Document 453   Filed 04/26/19   Page 9 of 158 PageID# 8577
5446

**EXHIBIT A**

*Steven Knurr v. Orbital ATK, Inc., et al.*
**Robbins Geller Rudman & Dowd LLP**
**Inception through March 29, 2019**

| NAME | | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| Baig, Aelish | (P) | 28.70 | 890 | $ 25,543.00 |
| Barz, James | (P) | 1,491.55 | 975 | 1,454,261.25 |
| Herman, John | (P) | 1,167.90 | 980 | 1,144,542.00 |
| Jones, Peter | (P) | 1,194.65 | 820 | 979,613.00 |
| Mueller, Maureen | (P) | 1,362.40 | 780 | 1,062,672.00 |
| Myers, Danielle S. | (P) | 87.80 | 800 | 70,240.00 |
| Pintar, Theodore | (P) | 147.40 | 1,050 | 154,770.00 |
| Robbins, Darren | (P) | 67.65 | 1,250 | 84,562.50 |
| Abel, Lawrence | (A) | 891.90 | 600 | 535,140.00 |
| Brenner, Michael | (A) | 10.05 | 400 | 4,020.00 |
| Dale, Maren | (A) | 67.20 | 480 | 32,256.00 |
| Davis, Alina | (A) | 29.50 | 600 | 17,700.00 |
| Douglas, Kathleen | (A) | 1,760.80 | 570 | 1,003,656.00 |
| Economides, Constantine | (A) | 120.50 | 580 | 69,890.00 |
| Klein, Scott | (A) | 156.00 | 600 | 93,600.00 |
| Leonard, Robert | (A) | 784.10 | 475 | 372,447.50 |
| LoVerde, Dominic | (A) | 717.00 | 450 | 322,650.00 |
| Richter, Frank | (A) | 2,311.75 | 550 | 1,271,462.50 |
| Bays, Lea | (OC) | 19.20 | 750 | 14,400.00 |
| Hutton, Andrew | (OC) | 1,363.45 | 950 | 1,295,277.50 |
| Langley, Matthew | (OC) | 1,229.70 | 730 | 897,681.00 |
| Jones, Carlton | (SC) | 1,239.50 | 550 | 681,725.00 |
| Phillips, Todd | (SA) | 1,004.45 | 415 | 416,846.75 |
| Rosing, Robert | (SA) | 924.05 | 425 | 392,721.25 |
| Byron, Leslee | (PA) | 410.30 | 360 | 147,708.00 |
| Chapman, Lynda | (PA) | 642.50 | 360 | 231,300.00 |
| Davidson, Ross | (PA) | 437.10 | 360 | 157,356.00 |
| Isan, Racheal | (PA) | 552.80 | 360 | 199,008.00 |
| Martey, Leslie | (PA) | 698.80 | 360 | 251,568.00 |
| McLean, Kerry-Ann | (PA) | 179.60 | 360 | 64,656.00 |
| Miller, Elaine | (PA) | 376.00 | 360 | 135,360.00 |
| Miller, Jill | (PA) | 48.00 | 360 | 17,280.00 |
| O'Neill, Petra | (PA) | 674.50 | 360 | 242,820.00 |
| Saba, Amy | (PA) | 1,763.20 | 360 | 634,752.00 |

| NAME | | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| Wilson, Katrina | (PA) | 521.80 | 360 | 187,848.00 |
| Woodbine, Shernese | (PA) | 605.60 | 360 | 218,016.00 |
| Koelbl, Terry | (FA) | 183.15 | 575 | 105,311.25 |
| Yurcek, Christopher | (FA) | 1,426.40 | 725 | 1,034,140.00 |
| Kim, Yong | (SNA) | 38.00 | 250 | 9,500.00 |
| Barhoum, Anthony | (EA) | 28.05 | 430 | 12,061.50 |
| Topp, Jennifer | (EA) | 25.70 | 335 | 8,609.50 |
| Uralets, Boris | (EA) | 17.00 | 415 | 7,055.00 |
| Roelen, Scott | (RA) | 29.60 | 295 | 8,732.00 |
| Brandon, Kelley | (I) | 15.00 | 290 | 4,350.00 |
| Diamond, Vicki | (I) | 301.45 | 275 | 82,898.75 |
| Camozzi, Miranda | (LS) | 269.80 | 220 | 59,356.00 |
| Holland, Maureen | (LS) | 125.60 | 325 | 40,820.00 |
| Milliron, Christine | (LS) | 20.90 | 375 | 7,837.50 |
| Torres, Michael | (LS) | 28.70 | 375 | 10,762.50 |
| Ulloa, Sergio | (LS) | 16.40 | 290 | 4,756.00 |
| Edwards, Blake | (LC) | 160.85 | 175 | 28,148.75 |
| Paralegals | | 1,075.45 | 325-350 | 368,752.50 |
| Document Clerks | | 144.35 | 100-150 | 16,917.50 |
| Shareholder Relations | | 19.60 | 100-150 | 2,085.00 |
| TOTAL | | 29,013.40 | | $ 16,697,443.00 |

(P) Partner

(A) Associate

(OC) Of Counsel

(SC) Special Counsel

(SA) Staff Attorney

(PA) Project Attorney

(FA) Forensic Accountant

(SNA) Senior Analyst

(EA) Economic Analyst

(RA) Research Analyst

(I) Investigator

(LS) Litigation Support

(LC) Law Clerk

# EXHIBIT B

**EXHIBIT B**

*Steven Knurr v. Orbital ATK, Inc., et al.*
**Robbins Geller Rudman & Dowd LLP**
**Inception through March 24, 2019**

| CATEGORY | | AMOUNT |
|---|---|---|
| Witness and Other Fees | | $ 9,141.65 |
| Transportation, Hotels & Meals | | 90,596.68 |
| Telephone | | 2,262.19 |
| Messenger, Overnight Delivery | | 10,395.56 |
| Court Hearing Transcripts and Deposition Reporting, Transcripts and Videography | | 94,971.47 |
| Experts/Consultants | | 771,255.25 |
|     Hemming Morse, LLP | $ 444,392.25 | |
|     Crowninshield Financial Research, Inc. | 263,623.00 | |
|     Steven Davidoff Solomon (dba Solomon Advisory Services, LLC) | 63,240.00 | |
| Photocopies | | 7,439.62 |
|     Outside | $ 3,460.97 | |
|     In-House Black and White (25,621 copies at $0.15 per page) | 3,843.15 | |
|     In-House Color (271 copies at $0.50 per page) | 135.50 | |
| Online Legal and Financial Research | | 45,305.26 |
| eDiscovery Database Hosting | | 58,872.42 |
| Mediation Fees (Phillips ADR Enterprises, P.C.) | | 27,275.00 |
| *TOTAL* | | *$ 1,117,515.10* |

# EXHIBIT C

**EXHIBIT C**

*Steven Knurr v. Orbital ATK, Inc., et al.*
**Robbins Geller Rudman & Dowd LLP**

Witness and Other Fees: $9,141.65

| INVOICE DATE | VENDOR | PURPOSE |
|---|---|---|
| 05/31/17 | Class Action Research & Litigation Support Services, Inc. | Substituted service – Blake E. Larson and Mark W. DeYoung: summons in a civil action; class action complaint; notice regarding consent to Magistrate Judge/financial interest disclosure |
| 08/16/18 | Class Action Research & Litigation Support Services, Inc. | Personal service and witness fee – Brian Snow: subpoena to testify at a deposition in a civil action; attachment A |
| 08/21/18 | Class Action Research & Litigation Support Services, Inc. | Personal service and witness fee – John Casper: subpoena to testify at a deposition in a civil action; attachment A; format of production protocol |
| 08/31/18 | Class Action Research & Litigation Support Services, Inc. | Personal service – Barclays Capital Inc., Citigroup Global Markets, Inc., Deloitte LLP, Jefferies LLC, KeyBanc Capital Markets Inc., Merrill Lynch, Pierce, Fenner & Smith Inc., Monness, Crespi, Hardt & Co., Inc., PricewaterhouseCoopers LLP, R.W. Pressprich & Co., Raymond James Financial Services, Inc., RBC Capital Markets, LLC, Stifel, Nicolaus & Company, Incorporated, SunTrust Robinson Humphrey, Inc., UBS Financial Services, Inc., Argus Research Group, Inc., Cowen and Company, Inc., Cravath, Swaine & Moore LLP, Credit Suisse (USA), Inc., Dickinson Wright PLLC, FBR Capital Markets & Co., Goldman Sachs Group, Inc., Hogan Lovells US LLP, JP Morgan Chase & Co., Sidoti & Company, LLC, Spin-Off Advisors, LLC, Wells Fargo Securities, LLC, EVA Dimensions LLC, Vista Outdoor, Inc., Accounting Research & Analytics, LLC, C.L. King & Associates, Inc., UBS Securities, LLC: subpoena to produce documents, information, or objects or to permit inspection of premises in a civil action; attachment A; format of production protocol; table 1 |

| INVOICE DATE | VENDOR | PURPOSE |
|---|---|---|
|  |  | Attempted personal service – Accounting Research & Analytics, LLC dba CFRA, WhiteSand Research, LLC, C.L. King & Associates, Inc.: subpoena to produce documents, information, or objects or to permit inspection of premises in a civil action; attachment A; format of production protocol; table 1 |
| 10/03/18 | Class Action Research & Litigation Support Services, Inc. | Personal service – Alvarez & Marsal Holdings, LLC and MorganFranklin Consulting, LLC: subpoena to produce documents, information, or objects or to permit inspection of premises in a civil action; attachment A; format of production protocol; table 1; stipulated protective order |
| 10/26/18 | Class Action Research & Litigation Support Services, Inc. | Personal service – Deloitte LLP and PricewaterhouseCoopers LLP: subpoena to produce documents, information, or objects or to permit inspection of premises in a civil action; attachment A; format of production protocol; table 1; stipulated protective order

Personal service and witness fee – Deloitte LLP and PricewaterhouseCoopers LLP: subpoena to testify at a deposition in a civil action; attachment A |
| 10/31/18 | Class Action Research & Litigation Support Services, Inc. | Personal service – Northrop Grumman Corporation: subpoena to produce documents, information, or objects or to permit inspection of premises in a civil action; attachment A; format of production protocol; table 1; stipulated protective order |
| 11/01/18 | Class Action Research & Litigation Support Services, Inc. | Miscellaneous job – Deposition officer services: record production from CitiGroup Global Markets, Inc. |
| 12/27/18 | Class Action Research & Litigation Support Services, Inc. | Personal service and witness fee – Deloitte LLP and PricewaterhouseCoopers LLP: subpoena to testify at a deposition in a civil action; attachment A |
| 01/04/19 | Class Action Research & Litigation Support Services, Inc. | Personal service – Vista Outdoor, Inc.: subpoena to produce documents, information, or objects or to permit inspection of premises in a civil action; attachment A; format of production protocol |

| INVOICE DATE | VENDOR | PURPOSE |
|---|---|---|
|  |  | Personal service and witness fee – Cindy Jones: subpoena to testify at a deposition in a civil action; attachment A |

Case 3:21-cv-00444-DJN   Document 126-9   Filed 04/19/24   Page 266 of 586 PageID# 5454

# EXHIBIT D

**EXHIBIT D**

*Steven Knurr v. Orbital ATK, Inc., et al.*
**Robbins Geller Rudman & Dowd LLP**

Transportation, Hotels & Meals: $90,596.68

| *NAME* | *DATE* | *DESTINATION* | *PURPOSE* |
|---|---|---|---|
| Barz, James | 11/03/16-11/04/16 | Alexandria, VA | Lead plaintiff hearing |
| Myers, Danielle | 11/03/16-11/04/16 | Alexandria, VA | Lead plaintiff hearing |
| Barz, James | 07/13/17-07/14/17 | Alexandria, VA | Motion to dismiss hearing |
| Barz, James | 12/07/17-12/08/17 | Alexandria, VA | Motion to dismiss hearing |
| Herman, John | 04/08/18-04/09/18 | Alexandria, VA | Initial pretrial conference hearing |
| Herman, John | 04/19/18-04/20/18 | Alexandria, VA | Motion to compel hearing |
| Mueller, Maureen | 04/23/18-04/24/18 | St. Louis, MO | Client deposition |
| Douglas, Kathleen | 05/03/18-05/04/18 | Alexandria, VA | Motion to compel hearing |
| Herman, John | 05/03/18-05/04/18 | Alexandria, VA | Motion to compel hearing |
| Barz, James | 05/07/18-05/08/18 | Washington, D.C. | Rule 30(b)(6) deposition |
| Richter, Frank | 05/07/18-05/08/18 | Washington, D.C. | Rule 30(b)(6) deposition |
| Herman, John | 06/05/18-06/06/18 | New York, NY | Mediation |
| Mueller, Maureen | 06/05/18-06/06/18 | New York, NY | Mediation |
| Richter, Frank | 06/05/18-06/06/18 | New York, NY | Mediation |
| Barz, James | 06/05/18-06/07/18 | New York, NY | Mediation |
| Douglas, Kathleen | 06/21/18-06/22/18 | Alexandria, VA | Motion to compel compliance and motion for protective order hearing |
| Douglas, Kathleen | 06/25/18 | Washington, D.C. | Motion to compel compliance and motion for protective order continued hearing |
| Mueller, Maureen | 07/04/18-07/06/18 | Boston, MA | S. Feinstein deposition |

| *NAME* | *DATE* | *DESTINATION* | *PURPOSE* |
|---|---|---|---|
| Herman, John | 07/05/18-07/06/18 | Alexandria, VA | Motion to compel, motion to extend and motion to seal hearing |
| Jones, Peter | 07/05/18-07/06/18 | Alexandria, VA | Motion to compel, motion to extend and motion to seal hearing |
| Mueller, Maureen | 07/08/18-07/10/18 | Detroit, MI | Rule 30(b)(6) deposition (G. Grysko) |
| Langley, Matthew | 07/11/18-07/12/18 | Washington, D.C. | G. DiSalvo deposition |
| Mueller, Maureen | 07/11/18-07/13/18 | St. Louis, MO | Rule 30(b)(6) deposition (D. Willey) |
| Herman, John | 07/23/18-07/25/18 | Washington, D.C. | K. Bristow deposition |
| Langley, Matthew | 07/24/18-07/27/18 | Washington, D.C. | A. Crickenberger and B. Larson depositions |
| Douglas, Kathleen | 07/26/18-07/28/18 | Washington, D.C. | B. Larson deposition |
| Herman, John | 08/01/18-08/03/18 | Washington, D.C. | M. Pugliese deposition |
| Hutton, Andrew | 08/02/18-08/04/18 | Washington, D.C. | H. Thompson deposition |
| Mueller, Maureen | 08/07/18-08/08/18 | New York, NY | J. Milev deposition |
| Jones, Peter | 08/13/18-08/14/18 | Washington, D.C. | M. Kahn deposition |
| Douglas, Kathleen | 08/15/18-08/16/18 | Alexandria, VA | Rule 72 and class certification hearing |
| Herman, John | 08/15/18-08/16/18 | Alexandria, VA | Rule 72 and class certification hearing |
| Mueller, Maureen | 08/15/18-08/16/18 | Alexandria, VA | Rule 72 and class certification hearing |
| Herman, John | 08/20/18-08/22/18 | Washington, D.C. | K. Holiday deposition |
| Barz, James | 08/23/18-08/24/18 | Salt Lake City, UT | M. DeYoung deposition |
| LoVerde, Dominic | 08/23/18-08/24/18 | Salt Lake City, UT | M. DeYoung deposition |
| Jones, Carlton | 08/27/18-08/29/18 | Washington, D.C. | D. Larson deposition |
| Langley, Matthew | 08/29/18-08/30/18 | Washington, D.C. | G. Pierce deposition |
| Leonard, Robert | 08/29/18-08/31/18 | Washington, D.C. | G. Pierce and Rule 30(b)(6) depositions |
| Hutton, Andrew | 09/03/18-09/05/18 | Washington, D.C. | D. Ryan and M. Covert depositions |

| NAME | DATE | DESTINATION | PURPOSE |
|---|---|---|---|
| Yurcek, Christopher | 09/03/18-09/05/18 | Washington, D.C. | PricewaterhouseCoopers and Deloitte depositions |
| Richter, Frank | 09/04/18-09/05/18 | Washington, D.C. | D. Thompson deposition |
| Douglas, Kathleen | 09/05/18-09/07/18 | Washington, D.C. | D. Lien deposition |
| Mueller, Maureen | 09/06/18-09/08/18 | Washington, D.C. | K. Sharp deposition |
| Richter, Frank | 09/11/18-09/12/18 | Washington, D.C. | M. Franklin deposition |
| Herman, John | 09/11/18-09/13/18 | Kansas City, MO | B. Snow deposition |
| Langley, Matthew | 09/20/18-09/21/18 | Washington, D.C. | J. Casper deposition |
| Jones, Peter | 10/01/18-10/02/18 | Kansas City, MO | C. Jones deposition |
| Barz, James | 11/05/18-11/06/18 | New York, NY | Mediation |
| Douglas, Kathleen | 11/05/18-11/06/18 | New York, NY | Mediation |
| Herman, John | 11/05/18-11/06/18 | New York, NY | Mediation |
| Richter, Frank | 11/05/18-11/06/18 | New York, NY | Mediation |
| Robbins, Darren | 11/05/18-11/06/18 | New York, NY | Mediation |
| Barz, James | 12/06/18-12/07/18 | Alexandria, VA | Status conference hearing |
| Langley, Matthew | 12/20/18-12/21/18 | Arlington, VA | Motions to compel hearing |
| Richter, Frank | 12/20/18-12/21/18 | Alexandria, VA | Motions to compel hearing |
| Barz, James | 02/21/19-02/22/19 | Alexandria, VA | Preliminary approval hearing |
| Pintar, Theodore | 02/21/19-02/22/19 | Alexandria, VA | Preliminary approval hearing |

Case 3:21-cv-00444-DJN   Document 126-9   Filed 04/19/24   Page 270 of 586 PageID# 5458

# EXHIBIT E

Case 3:21-cv-00444-DJN  Document 126-9    Filed 04/19/24   Page 271 of 586 PageID#
Case 1:16-cv-01031-TSE-MSN   Document 453   Filed 04/26/19   Page 22 of 158 PageID# 8590
5459

## EXHIBIT E

### *Steven Knurr v. Orbital ATK, Inc., et al.*
### Robbins Geller Rudman & Dowd LLP

Court Hearing Transcripts and Deposition Reporting, Transcripts and Videography: $94,971.47

| INVOICE DATE | VENDOR | PURPOSE |
|---|---|---|
| 05/25/18 | Veritext Corp. | K. Sharp deposition video |
| 06/04/18 | Veritext Corp. | K. Sharp deposition transcript |
| 07/19/18 | Veritext Corp. | G. DiSalvo deposition transcript |
| 07/20/18 | Alderson Reporting Company, Inc. | S. Feinstein deposition transcript and video; Rule 30(b)(6) (G. Grysko) deposition transcript and video; D. Willey deposition transcript and video |
| 07/25/18 | Veritext Corp. | G. DiSalvo deposition video |
| 07/30/18 | Veritext Corp. | A. Crickenberger deposition transcript |
| 07/31/18 | Veritext Corp. | K. Bristow deposition transcript |
| 08/02/18 | Veritext Corp. | K. Bristow deposition video |
| 08/06/18 | Veritext Corp. | A. Crickenberger deposition video; B. Larson deposition transcript |
| 08/08/18 | Veritext Corp. | G. DiSalvo deposition video; B. Larson deposition video; H. Thompson deposition transcript |
| 08/09/18 | Veritext Corp. | M. Pugliese deposition transcript |
| 08/13/18 | Veritext Corp. | M. Pugliese deposition video; H. Thompson deposition video; J. Milev deposition transcript |
| 08/21/18 | Veritext Corp. | J. Milev deposition video |
| 08/26/18 | Veritext Corp. | M. Kahn deposition transcript |
| 08/29/18 | Veritext Corp. | M. Kahn deposition video |
| 08/30/18 | Veritext Corp. | M. DeYoung deposition transcript |
| 08/31/18 | Veritext Corp. | K. Holiday deposition video; M. DeYoung deposition video |
| 09/06/18 | Veritext Corp. | K. Holiday deposition transcript |
| 09/07/18 | Veritext Corp. | D. Larson deposition transcript; J. Gardemal, III deposition transcript |
| 09/11/18 | Veritext Corp. | D. Larson deposition video; D. Thompson deposition transcript |
| 09/13/18 | Veritext Corp. | G. Pierce deposition video; J. Gardemal, III deposition video; M. Covert deposition transcript |
| 09/14/18 | Veritext Corp. | D. Ryan deposition transcript |

| INVOICE DATE | VENDOR | PURPOSE |
|---|---|---|
| 09/18/18 | Veritext Corp. | M. Covert deposition video; D. Thompson deposition video; D. Lien deposition transcript and video |
| 09/21/18 | Veritext Corp. | D. Ryan deposition video; K. Sharp deposition transcript and video |
| 09/24/18 | Veritext Corp. | G. Pierce deposition transcript; T. Roland deposition video |
| 09/25/18 | Veritext Corp. | B. Snow deposition transcript |
| 09/26/18 | Veritext Corp. | T. Roland deposition transcript |
| 10/02/18 | Veritext Corp. | B. Snow deposition video |
| 10/11/18 | Veritext Corp. | J. Casper deposition video |
| 10/18/18 | Veritext Corp. | J. Casper deposition transcript; C. Jones deposition transcript |
| 10/26/18 | Veritext Corp. | C. Jones deposition video |

# EXHIBIT F

**EXHIBIT F**

*Steven Knurr v. Orbital ATK, Inc., et al.*
**Robbins Geller Rudman & Dowd LLP**

Photocopies: $7,439.62
        In-house black and white: $3,843.15 (25,621 copies at $0.15 per copy)
        In-house color: $135.50 (271 copies at $0.50 per copy)
        Outside Photocopies: $3,460.97 (detailed below)

| *DATE* | *VENDOR* | *PURPOSE* |
|---|---|---|
| 11/04/16 | Uniguest, Inc. | Copy charges for lead plaintiff hearing |
| 02/24/17 | Treasurer, U.S. Government | Fee estimate for FOIA request |
| 06/05/18 | FedEx Office | Copy charges for mediation |
| 06/06/18 | FedEx Office | Copy charges for mediation |
| 06/07/18 | TTI Technologies | Copy charges for mediation |
| 07/06/18 | Uniguest, Inc. | Copy charges for S. Feinstein deposition |
| 07/13/18 | Uniguest, Inc. | Copy charges for G. DiSalvo deposition |
| 08/09/18 | Staples | Copy charges for J. Milev deposition |
| 08/23/18 | FedEx Office | Copy charges for M. DeYoung deposition |
| 08/29/18 | FedEx Office | Copy charges for D. Larson deposition |
| 09/04/18 | FedEx Office | Copy charges for PricewaterhouseCoopers deposition |
| 11/06/18 | FedEx Office | Copy charges for mediation |
| 11/06/18 | TTI Technologies | Copy charges for mediation |

Case 3:21-cv-00444-DJN   Document 126-9   Filed 04/19/24   Page 275 of 586 PageID#
5463
Case 1:16-cv-01031-TSE-MSN   Document 453   Filed 04/26/19   Page 26 of 158 PageID# 8594

# EXHIBIT G

Case 3:21-cv-00444-DJN  Document 126-9  Filed 04/19/24  Page 276 of 586 PageID#
5464
Case 1:16-cv-01031-TSE-MSN  Document 453  Filed 04/26/19  Page 27 of 158 PageID# 8595

# FIRM RESUME

**Robbins Geller
Rudman & Dowd** LLP

(800) 449-4900 | rgrdlaw.com

Case 3:21-cv-00444-DJN   Document 126-9   Filed 04/19/24   Page 277 of 586 PageID# 5465

# TABLE OF CONTENTS

Introduction

Practice Areas and Services

Securities Fraud.................................................................................................... 2
Shareholder Derivative and Corporate Governance Litigation......................... 6
Options Backdating Litigation............................................................................. 9
Corporate Takeover Litigation............................................................................ 10
Insurance.............................................................................................................. 12
Antitrust............................................................................................................... 14
Consumer Fraud.................................................................................................. 15
Intellectual Property............................................................................................ 18
Human Rights, Labor Practices and Public Policy............................................. 18
Environment and Public Health.......................................................................... 19
Pro Bono.............................................................................................................. 20
E-Discovery.......................................................................................................... 22

Prominent Cases, Precedent-Setting Decisions and Judicial Commendations

Prominent Cases.................................................................................................. 23
Precedent-Setting Decisions................................................................................ 31
Additional Judicial Commendations................................................................... 38

Attorney Biographies

Partners................................................................................................................ 44
Of Counsel........................................................................................................... 106
Special Counsel.................................................................................................... 127
Forensic Accountants........................................................................................... 128

Case 3:21-cv-00444-DJN  Document 126-9  Filed 04/19/24  Page 278 of 586 PageID#
5466
Case 1:16-cv-01031-TSE-MSN  Document 453  Filed 04/26/19  Page 29 of 158 PageID# 8597

# INTRODUCTION

Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or the "Firm") is a 200-lawyer firm with offices in Atlanta, Boca Raton, Chicago, Manhattan, Melville, Nashville, San Diego, San Francisco, Philadelphia and Washington, D.C. (www.rgrdlaw.com). The Firm is actively engaged in complex litigation, emphasizing securities, consumer, antitrust, insurance, healthcare, human rights and employment discrimination class actions, as well as intellectual property disputes. The Firm's unparalleled experience and capabilities in these fields are based upon the talents of its attorneys, who have successfully prosecuted thousands of class action lawsuits and numerous individual cases, recovering billions of dollars.

This successful track record stems from our experienced attorneys, including many who came to the Firm from federal or state law enforcement agencies. The Firm also includes several dozen former federal and state judicial clerks.

The Firm is committed to practicing law with the highest level of integrity in an ethical and professional manner. We are a diverse firm with lawyers and staff from all walks of life. Our lawyers and other employees are hired and promoted based on the quality of their work and their ability to treat others with respect and dignity.

We strive to be good corporate citizens and work with a sense of global responsibility. Contributing to our communities and environment is important to us. We often take cases on a pro bono basis and are committed to the rights of workers, and to the extent possible, we contract with union vendors. We care about civil rights, workers' rights and treatment, workplace safety and environmental protection. Indeed, while we have built a reputation as the finest securities and consumer class action law firm in the nation, our lawyers have also worked tirelessly in less high-profile, but no less important, cases involving human rights and other social issues.

# PRACTICE AREAS AND SERVICES

## Securities Fraud

As recent corporate scandals demonstrate clearly, it has become all too common for companies and their executives – often with the help of their advisors, such as bankers, lawyers and accountants – to manipulate the market price of their securities by misleading the public about the company's financial condition or prospects for the future. This misleading information has the effect of artificially inflating the price of the company's securities above their true value. When the underlying truth is eventually revealed, the prices of these securities plummet, harming those innocent investors who relied upon the company's misrepresentations.

Robbins Geller is the leader in the fight to protect investors from corporate securities fraud. We utilize a wide range of federal and state laws to provide investors with remedies, either by bringing a class action on behalf of all affected investors or, where appropriate, by bringing individual cases.

The Firm's reputation for excellence has been repeatedly noted by courts and has resulted in the appointment of Firm attorneys to lead roles in hundreds of complex class-action securities and other cases. In the securities area alone, the Firm's attorneys have been responsible for a number of outstanding recoveries on behalf of investors. Currently, Robbins Geller attorneys are lead or named counsel in hundreds of securities class action or large institutional-investor cases. Some notable current and past cases include:

- *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (S.D. Tex.). Robbins Geller attorneys and lead plaintiff The Regents of the University of California aggressively pursued numerous defendants, including many of Wall Street's biggest banks, and successfully obtained settlements in excess of *$7.2 billion* for the benefit of investors. *This is the largest securities class action recovery in history*.

- *Jaffe v. Household Int'l, Inc.*, No. 02-C-05893 (N.D. Ill.). As sole lead counsel, Robbins Geller obtained a record-breaking settlement of *$1.575 billion* after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a securities fraud verdict in favor of the class. In 2015, the Seventh Circuit Court of Appeals upheld the jury's verdict that defendants made false or misleading statements of material fact about the company's business practices and financial results, but remanded the case for a new trial on the issue of whether the individual defendants "made" certain false statements, whether those false statements caused plaintiffs' losses, and the amount of damages. The parties reached an agreement to settle the case just hours before the retrial was scheduled to begin on June 6, 2016. *The $1.575 billion settlement, approved in October 2016, is the largest ever following a securities fraud class action trial, the largest securities fraud settlement in the Seventh Circuit and the seventh-largest settlement ever in a post-PSLRA securities fraud case.* According to published reports, the case was just the seventh securities fraud case tried to a verdict since the passage of the PSLRA.

- *In re UnitedHealth Grp. Inc. PSLRA Litig.*, No. 06-CV-1691 (D. Minn.). Robbins Geller represented the California Public Employees' Retirement System ("CalPERS") and demonstrated its willingness to vigorously advocate for its institutional clients, even under the most difficult circumstances. The Firm obtained an $895 million recovery on behalf of the UnitedHealth shareholders, and former CEO William A. McGuire paid $30 million and returned stock options representing more than three million shares to the shareholders, bringing the total recovery for the class to over $925 million, the largest stock option backdating recovery ever, and *a recovery that is more than four times larger than the next largest options backdating recovery*. Moreover, Robbins Geller obtained unprecedented corporate governance reforms, including election of a

shareholder-nominated member to the company's board of directors, a mandatory holding period for shares acquired by executives via option exercise, and executive compensation reforms that tie pay to performance.

- *Alaska Elec. Pension Fund v. CitiGroup, Inc. (In re WorldCom Sec. Litig.)*, No. 03 Civ. 8269 (S.D.N.Y.). Robbins Geller attorneys represented more than 50 private and public institutions that opted out of the class action case and sued WorldCom's bankers, officers and directors, and auditors in courts around the country for losses related to WorldCom bond offerings from 1998 to 2001. The Firm's attorneys recovered more than $650 million for their clients, substantially more than they would have recovered as part of the class.

- *Luther v. Countrywide Fin. Corp.*, No. 12-cv-05125 (C.D. Cal.). Robbins Geller attorneys secured a $500 million settlement for institutional and individual investors in what is the largest RMBS purchaser class action settlement in history, and one of the largest class action securities settlements of all time. The unprecedented settlement resolves claims against Countrywide and Wall Street banks that issued the securities. The action was the first securities class action case filed against originators and Wall Street banks as a result of the credit crisis. As co-lead counsel Robbins Geller forged through six years of hard-fought litigation, oftentimes litigating issues of first impression, in order to secure the landmark settlement for its clients and the class.

- *In re Wachovia Preferred Sec. & Bond/Notes Litig.*, No. 09-cv-06351 (S.D.N.Y.). On behalf of investors in bonds and preferred securities issued between 2006 and 2008, Robbins Geller and co-counsel obtained a significant settlement with Wachovia successor Wells Fargo & Company and Wachovia auditor KPMG LLP. *The total settlement – $627 million – is one of the largest credit-crisis settlements involving Securities Act claims and one of the 20 largest securities class action recoveries in history*. The settlement is also one of the biggest securities class action recoveries arising from the credit crisis. The lawsuit focused on Wachovia's exposure to "pick-a-pay" loans, which the bank's offering materials said were of "pristine credit quality," but which were actually allegedly made to subprime borrowers, and which ultimately massively impaired the bank's mortgage portfolio. Robbins Geller served as co-lead counsel representing the City of Livonia Employees' Retirement System, Hawaii Sheet Metal Workers Pension Fund, and the investor class.

- *In re Cardinal Health, Inc. Sec. Litig.*, No. C2-04-575 (S.D. Ohio). As sole lead counsel representing Cardinal Health shareholders, Robbins Geller obtained a recovery of $600 million for investors on behalf of the lead plaintiffs, Amalgamated Bank, the New Mexico State Investment Council, and the California Ironworkers Field Trust Fund. At the time, the $600 million settlement was the tenth-largest settlement in the history of securities fraud litigation and is the largest-ever recovery in a securities fraud action in the Sixth Circuit.

- *AOL Time Warner Cases I & II*, JCCP Nos. 4322 & 4325 (Cal. Super. Ct., Los Angeles Cty.). Robbins Geller represented The Regents of the University of California, six Ohio state pension funds, Rabo Bank (NL), the Scottish Widows Investment Partnership, several Australian public and private funds, insurance companies, and numerous additional institutional investors, both domestic and international, in state and federal court opt-out litigation stemming from Time Warner's disastrous 2001 merger with Internet high flier America Online. After almost four years of litigation involving extensive discovery, the Firm secured combined settlements for its opt-out clients totaling over $629 million just weeks before The Regents' case pending in California state court was scheduled to go to trial. The Regents' gross recovery of $246 million is the largest individual opt-out securities recovery in history.

- *In re HealthSouth Corp. Sec. Litig.*, No. CV-03-BE-1500-S (N.D. Ala.). As court-appointed co-lead counsel, Robbins Geller attorneys obtained a combined recovery of $671 million from HealthSouth, its auditor Ernst & Young, and its investment banker, UBS, for the benefit of stockholder plaintiffs. The settlement against HealthSouth represents one of the larger settlements in securities class action history and is considered among the top 15 settlements achieved after passage of the PSLRA. Likewise, the settlement against Ernst & Young is one of the largest securities class action settlements entered into by an accounting firm since the passage of the PSLRA.

- *Jones v. Pfizer Inc.*, No. 1:10-cv-03864 (S.D.N.Y.). Lead plaintiff Stichting Philips Pensioenfonds obtained a $400 million settlement on behalf of class members who purchased Pfizer Inc. common stock during the January 19, 2006 to January 23, 2009 class period. The settlement against Pfizer resolves accusations that it misled investors about an alleged off-label drug marketing scheme. As sole lead counsel, Robbins Geller attorneys helped achieve this exceptional result after five years of hard-fought litigation against the toughest and the brightest members of the securities defense bar by litigating this case all the way to trial.

- *In re Dynegy Inc. Sec. Litig.*, No. H-02-1571 (S.D. Tex.). As sole lead counsel representing The Regents of the University of California and the class of Dynegy investors, Robbins Geller attorneys obtained a combined settlement of $474 million from Dynegy, Citigroup, Inc. and Arthur Andersen LLP for their involvement in a clandestine financing scheme known as Project Alpha. Most notably, the settlement agreement provides that Dynegy will appoint two board members to be nominated by The Regents, which Robbins Geller and The Regents believe will benefit all of Dynegy's stockholders.

- *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 01-cv-1451 (D. Colo.). In July 2001, the Firm filed the initial complaint in this action on behalf of its clients, long before any investigation into Qwest's financial statements was initiated by the SEC or Department of Justice. After five years of litigation, lead plaintiffs entered into a settlement with Qwest and certain individual defendants that provided a $400 million recovery for the class and created a mechanism that allowed the vast majority of class members to share in an additional $250 million recovered by the SEC. In 2008, Robbins Geller attorneys recovered an additional $45 million for the class in a settlement with defendants Joseph P. Nacchio and Robert S. Woodruff, the CEO and CFO, respectively, of Qwest during large portions of the class period.

- *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, No. 1:09-cv-03701 (S.D.N.Y.). Robbins Geller attorneys served as lead counsel for a class of investors and obtained court approval of a $388 million recovery in nine 2007 residential mortgage-backed securities offerings issued by J.P. Morgan. The settlement represents, on a percentage basis, the largest recovery ever achieved in an MBS purchaser class action. The result was achieved after more than five years of hard-fought litigation and an extensive investigation.

- *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, No. 1:08-cv-10783 (S.D.N.Y.). As sole lead counsel, Robbins Geller obtained a $272 million settlement on behalf of Goldman Sachs' shareholders. The settlement concludes one of the last remaining mortgage-backed securities purchaser class actions arising out of the global financial crisis. The remarkable result was achieved following seven years of extensive litigation. After the claims were dismissed in 2010, Robbins Geller secured a landmark victory from the Second Circuit Court of Appeals that clarified the scope of permissible class actions asserting claims under the Securities Act of 1933 on behalf of MBS investors. Specifically, the Second Circuit's decision rejected the concept of "tranche" standing and concluded that a lead plaintiff in an MBS class action has class standing to pursue claims on behalf of purchasers of other securities that were issued from the same registration

statement and backed by pools of mortgages originated by the same lenders who had originated mortgages backing the lead plaintiff's securities.

- **Schuh v. HCA Holdings, Inc.**, No. 3:11-cv-01033 (M.D. Tenn.). As sole lead counsel, Robbins Geller obtained a groundbreaking $215 million settlement for former HCA Holdings, Inc. shareholders – the largest securities class action recovery ever in Tennessee. Reached shortly before trial was scheduled to commence, the settlement resolves claims that the Registration Statement and Prospectus HCA filed in connection with the company's massive $4.3 billion 2011 IPO contained material misstatements and omissions. The recovery achieved approximately 70% of classwide damages, which as a percentage of damages significantly exceeds the median class action recovery of 2%-3% of damages.

- **In re AT&T Corp. Sec. Litig.**, MDL No. 1399 (D.N.J.). Robbins Geller attorneys served as lead counsel for a class of investors that purchased AT&T common stock. The case charged defendants AT&T and its former Chairman and CEO, C. Michael Armstrong, with violations of the federal securities laws in connection with AT&T's April 2000 initial public offering of its wireless tracking stock, one of the largest IPOs in American history. After two weeks of trial, and on the eve of scheduled testimony by Armstrong and infamous telecom analyst Jack Grubman, defendants agreed to settle the case for $100 million.

- **Silverman v. Motorola, Inc.**, No. 1:07-cv-04507 (N.D. Ill.). The Firm served as lead counsel on behalf of a class of investors in Motorola, Inc., ultimately recovering $200 million for investors just two months before the case was set for trial. This outstanding result was obtained despite the lack of an SEC investigation or any financial restatement.

- **Nieman v. Duke Energy Corp.**, No. 3:12-cv-00456 (W.D.N.C.). Robbins Geller, along with co-counsel, obtained a $146.25 million settlement on behalf of Duke Energy Corporation investors. The settlement resolves accusations that defendants misled investors regarding Duke's future leadership following its merger with Progress Energy, Inc., and specifically, their premeditated coup to oust William D. Johnson (CEO of Progress) and replace him with Duke's then-CEO, John Rogers. This historic settlement represents the largest recovery ever in a North Carolina securities fraud action, and one of the five largest recoveries in the Fourth Circuit.

- **Bennett v. Sprint Nextel Corp.**, No. 2:09-cv-02122 (D. Kan.). As co-lead counsel, Robbins Geller obtained a $131 million recovery for a class of Sprint investors. The settlement, secured after five years of hard-fought litigation, resolved claims that former Sprint executives misled investors concerning the success of Sprint's ill-advised merger with Nextel and the deteriorating credit quality of Sprint's customer base, artificially inflating the value of Sprint's securities.

- **In re LendingClub Sec. Litig.**, No. 3:16-cv-02627 (N.D. Cal.). Robbins Geller attorneys obtained a $125 million settlement for the court-appointed lead plaintiff Water and Power Employees' Retirement, Disability and Death Plan of the City of Los Angeles and the class. The settlement resolved allegations that LendingClub promised investors an opportunity to get in on the ground floor of a revolutionary lending market fueled by the highest standards of honesty and integrity. The settlement ranks among the top ten largest securities recoveries ever in the Northern District of California.

- **Marcus v. J.C. Penney Co., Inc.**, No. 13-cv-00736 (E.D. Tex.). Robbins Geller attorneys obtained a $97.5 million recovery on behalf of J.C. Penney shareholders. The result resolves claims that J.C. Penney and certain officers and directors made misstatements and/or omissions regarding the company's financial position that resulted in artificially inflated stock prices. Specifically, defendants failed to disclose and/or misrepresented adverse facts, including that J.C. Penney

would have insufficient liquidity to get through year-end and would require additional funds to make it through the holiday season, and that the company was concealing its need for liquidity so as not to add to its vendors' concerns.

- *Luna v. Marvell Technology Group, Ltd.*, No. 3:15-cv-05447 (N.D. Cal.). In the Marvell litigation, Robbins Geller attorneys represented the Plumbers and Pipefitters National Pension Fund and obtained a $72.5 million settlement. The case involved claims that Marvell reported revenue and earnings during the class period that were misleading as a result of undisclosed pull-in and concession sales. The settlement represents approximately 24% to 50% of the best estimate of classwide damages suffered by investors who purchased shares during the February 19, 2015 through December 7, 2015 class period.

- *Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*, No. 3:09-cv-00882 (M.D. Tenn.). In the *Psychiatric Solutions* case, Robbins Geller represented lead plaintiff and class representative Central States, Southeast and Southwest Areas Pension Fund in litigation spanning more than four years. Psychiatric Solutions and its top executives were accused of insufficiently staffing their in-patient hospitals, downplaying the significance of regulatory investigations and manipulating their malpractice reserves. Just days before trial was set to commence, attorneys from Robbins Geller achieved a $65 million settlement that was the third-largest securities recovery ever in the district and the largest in a decade.

- *Plumbers & Pipefitters National Pension Fund v. Burns*, No. 3:05-cv-07393-JGC (N.D. Ohio). After 11 years of hard-fought litigation, Robbins Geller attorneys secured a $64 million recovery for shareholders in a case that accused the former heads of Dana Corp. of securities fraud for trumpeting the auto parts maker's condition while it actually spiraled toward bankruptcy. The Firm's Appellate Practice Group successfully appealed to the Sixth Circuit Court of Appeals twice, reversing the district court's dismissal of the action.

- *In re St. Jude Med., Inc. Sec. Litig.*, No. 0:10-cv-00851 (D. Minn.). After four and one half years of litigation and mere weeks before the jury selection, Robbins Geller obtained a $50 million settlement on behalf of investors in medical device company St. Jude Medical. The settlement resolves accusations that St. Jude Medical misled investors by utilizing heavily discounted end-of-quarter bulk sales to meet quarterly expectations, which created a false picture of demand by increasing customer inventory due of St. Jude Medical devices. The complaint alleged that the risk of St. Jude Medical's reliance on such bulk sales manifested when it failed to meet its forecast guidance for the third quarter of 2009, which the company had reaffirmed only weeks earlier.

Robbins Geller's securities practice is also strengthened by the existence of a strong appellate department, whose collective work has established numerous legal precedents. The securities practice also utilizes an extensive group of in-house economic and damage analysts, investigators and forensic accountants to aid in the prosecution of complex securities issues.

## Shareholder Derivative and Corporate Governance Litigation

The Firm's shareholder derivative and corporate governance practice is focused on preserving corporate assets and enhancing long-term shareowner value. Shareowner derivative actions are often brought by institutional investors to vindicate the rights of the corporation injured by its executives' misconduct, which can effect violations of the nation's securities, anti-corruption, false claims, cyber-security, labor, environmental and/or health & safety laws.

Case 3:21-cv-00444-DLN Document 12-53 Filed 04/19/24 Page 284 of 586 PageID#
5472
Case 1:16-cv-01031-TSE-MSN Document 453 Filed 04/26/19 Page 5 of 138 PageID# 9603
PRACTICE AREAS AND SERVICES

Robbins Geller attorneys have aided Firm clients in significantly enhancing shareowner value by obtaining hundreds of millions of dollars in financial clawbacks and successfully negotiating corporate governance enhancements. Robbins Geller has worked with its institutional clients to address corporate misconduct such as options backdating, bribery of foreign officials, pollution, off-label marketing, and insider trading and related self-dealing. Additionally, the Firm works closely with noted corporate governance consultants Robert Monks, Richard Bennett and their firm, ValueEdge Advisors LLC, to shape corporate governance practices that will benefit shareowners.

Robbins Geller's efforts have conferred substantial benefits upon shareowners, and the market effect of these benefits measures in the billions of dollars. The Firm's significant achievements include:

- *City of Westland Police and Fire Retirement System v. Stumpf (Wells Fargo Derivative Litigation)*, No. 3:11-cv-02369 (N.D. Cal.). Prosecuted shareholder derivative action on behalf of Wells Fargo & Co. alleging that Wells Fargo's executives allowed participation in the mass-processing of home foreclosure documents by engaging in widespread robo-signing, *i.e.*, the execution and submission of false legal documents in courts across the country without verification of their truth or accuracy, and failed to disclose Wells Fargo's lack of cooperation in a federal investigation into the bank's mortgage and foreclosure practices. In settlement of the action, Wells Fargo agreed to provide $67 million in homeowner down-payment assistance, credit counseling and improvements to its mortgage servicing system. The initiatives will be concentrated in cities severely impacted by the bank's foreclosure practices and the ensuing mortgage foreclosure crisis. Additionally, Wells Fargo agreed to change its procedures for reviewing shareholder proposals and a strict ban on stock pledges by Wells Fargo board members.

- *In re Ormat Techs., Inc. Derivative Litig.*, No. CV10-00759 (Nev. Dist. Ct., Washoe Cty.). Robbins Geller brought derivative claims for breach of fiduciary duty and unjust enrichment against the directors and certain officers of Ormat Technologies, Inc., a leading geothermal and recovered energy power business. During the relevant time period, these Ormat insiders caused the company to engage in accounting manipulations that ultimately required restatement of the company's financial statements. The settlement in this action includes numerous corporate governance reforms designed to, among other things: (i) increase director independence; (ii) provide continuing education to directors; (iii) enhance the company's internal controls; (iv) make the company's board more independent; and (iv) strengthen the company's internal audit function.

- *In re Alphatec Holdings, Inc. Derivative S'holder Litig.*, No. 37-2010-00058586 (Cal. Super. Ct., San Diego Cty.). Obtained sweeping changes to Alphatec's governance, including separation of the Chairman and CEO positions, enhanced conflict of interest procedures to address related-party transactions, rigorous director independence standards requiring that at least a majority of directors be outside independent directors, and ongoing director education and training.

- *In re Finisar Corp. Derivative Litig.*, No. C-06-07660 (N.D. Cal.). Prosecuted shareholder derivative action on behalf of Finisar against certain of its current and former directors and officers for engaging in an alleged nearly decade-long stock option backdating scheme that was alleged to have inflicted substantial damage upon Finisar. After obtaining a reversal of the district court's order dismissing the complaint for failing to adequately allege that a pre-suit demand was futile, Robbins Geller lawyers successfully prosecuted the derivative claims to resolution obtaining over $15 million in financial clawbacks for Finisar. Robbins Geller attorneys also obtained significant changes to Finisar's stock option granting procedures and corporate governance. As a part of the settlement, Finisar agreed to ban the repricing of stock options without first obtaining specific shareholder approval, prohibit the retrospective selection of grant dates for stock options and similar awards, limit the number of other boards on which Finisar directors may serve,

require directors to own a minimum amount of Finisar shares, annually elect a Lead Independent Director whenever the position of Chairman and CEO are held by the same person, and require the board to appoint a Trading Compliance officer responsible for ensuring compliance with Finisar's insider trading policies.

- ***Loizides v. Schramm (Maxwell Technology Derivative Litigation)***, No. 37-2010-00097953 (Cal. Super. Ct., San Diego Cty.). Prosecuted shareholder derivative claims arising from the company's alleged violations of the Foreign Corrupt Practices Act of 1977 ("FCPA"). As a result of Robbins Geller's efforts, Maxwell insiders agreed to adopt significant changes in Maxwell's internal controls and systems designed to protect Maxwell against future potential violations of the FCPA. These corporate governance changes included, establishing the following, among other things: a compliance plan to improve board oversight of Maxwell's compliance processes and internal controls; a clear corporate policy prohibiting bribery and subcontracting kickbacks, whereby individuals are accountable; mandatory employee training requirements, including the comprehensive explanation of whistleblower provisions, to provide for confidential reporting of FCPA violations or other corruption; enhanced resources and internal control and compliance procedures for the audit committee to act quickly if an FCPA violation or other corruption is detected; an FCPA and Anti-Corruption Compliance department that has the authority and resources required to assess global operations and detect violations of the FCPA and other instances of corruption; a rigorous ethics and compliance program applicable to all directors, officers and employees, designed to prevent and detect violations of the FCPA and other applicable anti-corruption laws; an executive-level position of Chief Compliance Officer with direct board-level reporting responsibilities, who shall be responsible for overseeing and managing compliance issues within the company; a rigorous insider trading policy buttressed by enhanced review and supervision mechanisms and a requirement that all trades are timely disclosed; and enhanced provisions requiring that business entities are only acquired after thorough FCPA and anti-corruption due diligence by legal, accounting and compliance personnel at Maxwell.

- ***In re SciClone Pharm., Inc. S'holder Derivative Litig.***, No. CIV 499030 (Cal. Super. Ct., San Mateo Cty.). Robbins Geller attorneys successfully prosecuted the derivative claims on behalf of nominal party SciClone Pharmaceuticals, Inc., resulting in the adoption of state-of-the-art corporate governance reforms. The corporate governance reforms included the establishment of an FCPA compliance coordinator; the adoption of an FCPA compliance program and code; and the adoption of additional internal controls and compliance functions.

- ***Policemen & Firemen Ret. Sys. of the City of Detroit v. Cornelison (Halliburton Derivative Litigation)***, No. 2009-29987 (Tex. Dist. Ct., Harris Cty.). Prosecuted shareholder derivative claims on behalf of Halliburton Company against certain Halliburton insiders for breaches of fiduciary duty arising from Halliburton's alleged violations of the FCPA. In the settlement, Halliburton agreed, among other things, to adopt strict intensive controls and systems designed to detect and deter the payment of bribes and other improper payments to foreign officials, to enhanced executive compensation clawback, director stock ownership requirements, a limitation on the number of other boards that Halliburton directors may serve, a lead director charter, enhanced director independence standards, and the creation of a management compliance committee.

- ***In re UnitedHealth Grp. Inc. PSLRA Litig.***, No. 06-CV-1691 (D. Minn.). In the *UnitedHealth* case, our client, CalPERS, obtained sweeping corporate governance improvements, including the election of a shareholder-nominated member to the company's board of directors, a mandatory holding period for shares acquired by executives via option exercises, as well as executive compensation reforms that tie pay to performance. In addition, the class obtained $925 million, the largest stock option backdating recovery ever and four times the next largest options backdating recovery.

Robbins Geller Rudman & Dowd LLP | 8

Case 3:21-cv-00444-DJN Document 126-9 Filed 04/19/24 Page 286 of 586 PageID# 5474
Case 1:16-cv-01031-TSE-MSN Document 453 Filed 04/26/19 Page 287 of 158 PageID# 9605
PRACTICE AREAS AND SERVICES

- *In re Fossil, Inc. Derivative Litig.*, No. 3:06-cv-01672 (N.D. Tex.). The settlement agreement included the following corporate governance changes: declassification of elected board members; retirement of three directors and addition of five new independent directors; two-thirds board independence requirements; corporate governance guidelines providing for "Majority Voting" election of directors; lead independent director requirements; revised accounting measurement dates of options; addition of standing finance committee; compensation clawbacks; director compensation standards; revised stock option plans and grant procedures; limited stock option granting authority, timing and pricing; enhanced education and training; and audit engagement partner rotation and outside audit firm review.

- *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Sinegal (Costco Derivative Litigation),* No. 2:08-cv-01450 (W.D. Wash.). The parties agreed to settlement terms providing for the following corporate governance changes: the amendment of Costco's bylaws to provide "Majority Voting" election of directors; the elimination of overlapping compensation and audit committee membership on common subject matters; enhanced Dodd-Frank requirements; enhanced internal audit standards and controls, and revised information-sharing procedures; revised compensation policies and procedures; revised stock option plans and grant procedures; limited stock option granting authority, timing and pricing; and enhanced ethics compliance standards and training.

- *In re F5 Networks, Inc. Derivative Litig.*, No. C-06-0794 (W.D. Wash.). The parties agreed to the following corporate governance changes as part of the settlement: revised stock option plans and grant procedures; limited stock option granting authority, timing and pricing; "Majority Voting" election of directors; lead independent director requirements; director independence standards; elimination of director perquisites; and revised compensation practices.

- *In re Community Health Sys., Inc. S'holder Derivative Litig.*, No. 3:11-cv-00489 (M.D. Tenn.). Robbins Geller obtained unprecedented corporate governance reforms on behalf of Community Health Systems, Inc. in a case against the company's directors and officers for breaching their fiduciary duties by causing Community Health to develop and implement admissions criteria that systematically steered patients into unnecessary inpatient admissions, in contravention of Medicare and Medicaid regulations. The governance reforms obtained as part of the settlement include two shareholder-nominated directors, the creation of a Healthcare Law Compliance Coordinator with specified qualifications and duties, a requirement that the Board's Compensation Committee be comprised solely of independent directors, the implementation of a compensation clawback that will automatically recover compensation improperly paid to the company's CEO or CFO in the event of a restatement, the establishment of an insider trading controls committee, and the adoption of a political expenditure disclosure policy. In addition to these reforms, $60 million in financial relief was obtained, which is the largest shareholder derivative recovery ever in Tennessee and the Sixth Circuit.

## Options Backdating Litigation

As has been widely reported in the media, the stock options backdating scandal suddenly engulfed hundreds of publicly traded companies throughout the country in 2006. Robbins Geller was at the forefront of investigating and prosecuting options backdating derivative and securities cases. The Firm has recovered over $1 billion in damages on behalf of injured companies and shareholders.

- ***In re KLA-Tencor Corp. S'holder Derivative Litig.***, No. C-06-03445 (N.D. Cal.). After successfully opposing the special litigation committee of the board of directors' motion to terminate the derivative claims, Robbins Geller recovered $43.6 million in direct financial benefits for KLATencor, including $33.2 million in cash payments by certain former executives and their directors' and officers' insurance carriers.

- ***In re Marvell Technology Grp. Ltd. Derivative Litig.***, No. C-06-03894 (N.D. Cal.). Robbins Geller recovered $54.9 million in financial benefits, including $14.6 million in cash, for Marvell, in addition to extensive corporate governance reforms related to Marvell's stock option granting practices, board of directors' procedures and executive compensation.

- ***In re KB Home S'holder Derivative Litig.***, No. 06-CV-05148 (C.D. Cal.). Robbins Geller served as co-lead counsel for the plaintiffs and recovered more than $31 million in financial benefits, including $21.5 million in cash, for KB Home, plus substantial corporate governance enhancements relating to KB Home's stock option granting practices, director elections and executive compensation practices.

## Corporate Takeover Litigation

Robbins Geller has earned a reputation as the leading law firm in representing shareholders in corporate takeover litigation. Through its aggressive efforts in prosecuting corporate takeovers, the Firm has secured for shareholders billions of dollars of additional consideration as well as beneficial changes for shareholders in the context of mergers and acquisitions.

The Firm regularly prosecutes merger and acquisition cases post-merger, often through trial, to maximize the benefit for its shareholder class. Some of these cases include:

- ***In re Kinder Morgan, Inc. S'holders Litig.***, No. 06-C-801 (Kan. Dist. Ct., Shawnee Cty.). In the largest recovery ever for corporate takeover class action litigation, the Firm negotiated a settlement fund of $200 million in 2010.

- ***In re Dole Food Co., Inc. Stockholder Litig.***, No. 8703-VCL (Del. Ch.). Robbins Geller and co-counsel went to trial in the Delaware Court of Chancery on claims of breach of fiduciary duty on behalf of Dole Food Co., Inc. shareholders. The litigation challenged the 2013 buyout of Dole by its billionaire Chief Executive Officer and Chairman, David H. Murdock. On August 27, 2015, the court issued a post-trial ruling that Murdock and fellow director C. Michael Carter – who also served as Dole's General Counsel, Chief Operating Officer and Murdock's top lieutenant – had engaged in fraud and other misconduct in connection with the buyout and are liable to Dole's former stockholders for over $148 million, the largest trial verdict ever in a class action challenging a merger transaction.

- ***In re Rural Metro Corp. Stockholders Litig.***, No. 6350-VCL (Del. Ch.). Robbins Geller and co-counsel were appointed lead counsel in this case after successfully objecting to an inadequate settlement that did not take into account evidence of defendants' conflicts of interest. In a post-trial opinion, Delaware Vice Chancellor J. Travis Laster found defendant RBC Capital Markets, LLC liable for aiding and abetting Rural/Metro's board of directors' fiduciary duty breaches in the $438 million buyout of Rural/Metro, citing "the magnitude of the conflict between RBC's claims and the evidence." RBC was ordered to pay nearly $110 million as a result of its wrongdoing, the largest damage award ever obtained against a bank over its role as a merger adviser. The Delaware Supreme Court issued a landmark opinion affirming the judgment on November 30, 2015, *RBC Capital Mkts., LLC v. Jervis*, 129 A.3d 816 (Del. 2015).

- *In re Del Monte Foods Co. S'holders Litig.*, No. 6027-VCL (Del. Ch.). Robbins Geller exposed the unseemly practice by investment bankers of participating on both sides of large merger and acquisition transactions and ultimately secured an $89 million settlement for shareholders of Del Monte. For efforts in achieving these results, the Robbins Geller lawyers prosecuting the case were named Attorneys of the Year by *California Lawyer* magazine in 2012.

- *In re TD Banknorth S'holders Litig.*, No. 2557-VCL (Del. Ch.). After objecting to a modest recovery of just a few cents per share, the Firm took over the litigation and obtained a common fund settlement of $50 million.

- *In re Chaparral Res., Inc. S'holders Litig.*, No. 2633-VCL (Del. Ch.). After a full trial and a subsequent mediation before the Delaware Chancellor, the Firm obtained a common fund settlement of $41 million (or 45% increase above merger price) for both class and appraisal claims.

- *Laborers' Local #231 Pension Fund v. Websense, Inc.*, No. 37-2013-00050879-CU-BT-CTL (Cal. Super. Ct., San Diego Cty.). Robbins Geller successfully obtained a record-breaking $40 million in *Websense, Inc.*, which is believed to be the largest post-merger common fund settlement in California state court history. The class action challenged the May 2013 buyout of Websense by Vista Equity Partners (and affiliates) for $24.75 per share and alleged breach of fiduciary duty against the former Websense Board of Directors, and aiding and abetting against Websense's financial advisor, Merrill Lynch, Pierce, Fenner & Smith, Inc. Claims were pursued by the plaintiff in both California state court and the Delaware Court of Chancery.

- *In re Onyx Pharm., Inc. S'holder Litig.*, No. CIV523789 (Cal. Super. Ct., San Mateo Cty.). Robbins Geller obtained $30 million in a case against the former Onyx Board of Directors for breaching its fiduciary duties in connection with the acquisition of Onyx by Amgen Inc. for $125 per share at the expense of shareholders. At the time of the settlement, it was believed to set the record for the largest post-merger common fund settlement in California state court history. Over the case's three years, Robbins Geller defeated defendants' motions to dismiss, obtained class certification, took over 20 depositions and reviewed over one million pages of documents. Further, the settlement was reached just days before a hearing on the defendants' motion for summary judgment was set to take place, and the result is now believed to be the second largest post-merger common fund settlement in California state court history.

- *Harrah's Entertainment*, No. A529183 (Nev. Dist. Ct., Clark Cty.). The Firm's active prosecution of the case on several fronts, both in federal and state court, assisted Harrah's shareholders in securing an additional $1.65 billion in merger consideration.

- *In re Chiron S'holder Deal Litig.*, No. RG 05-230567 (Cal. Super. Ct., Alameda Cty.). The Firm's efforts helped to obtain an additional $800 million in increased merger consideration for Chiron shareholders.

- *In re Dollar Gen. Corp. S'holder Litig.*, No. 07MD-1 (Tenn. Cir. Ct., Davidson Cty.). As lead counsel, the Firm secured a recovery of up to $57 million in cash for former Dollar General shareholders on the eve of trial.

- *In re Prime Hospitality, Inc. S'holders Litig.*, No. 652-N (Del. Ch.). The Firm objected to a settlement that was unfair to the class and proceeded to litigate breach of fiduciary duty issues involving a sale of hotels to a private equity firm. The litigation yielded a common fund of $25 million for shareholders.

- *In re UnitedGlobalCom, Inc. S'holder Litig.*, No. 1012-VCS (Del. Ch.). The Firm secured a common fund settlement of $25 million just weeks before trial.

- *In re eMachines, Inc. Merger Litig.*, No. 01-CC-00156 (Cal. Super. Ct., Orange Cty.). After four years of litigation, the Firm secured a common fund settlement of $24 million on the brink of trial.

- *In re PeopleSoft, Inc. S'holder Litig.*, No. RG-03100291 (Cal. Super. Ct., Alameda Cty.). The Firm successfully objected to a proposed compromise of class claims arising from takeover defenses by PeopleSoft, Inc. to thwart an acquisition by Oracle Corp., resulting in shareholders receiving an increase of over $900 million in merger consideration.

- *ACS S'holder Litig.*, No. CC-09-07377-C (Tex. Cty. Ct., Dallas Cty.). The Firm forced ACS's acquirer, Xerox, to make significant concessions by which shareholders would not be locked out of receiving more money from another buyer.

## Insurance

Fraud and collusion in the insurance industry by executives, agents, brokers, lenders and others is one of the most costly crimes in the United States. Some experts have estimated the annual cost of white collar crime in the insurance industry to be over $120 billion nationally. Recent legislative proposals seek to curtail anti-competitive behavior within the industry. However, in the absence of comprehensive regulation, Robbins Geller has played a critical role as private attorney general in protecting the rights of consumers against insurance fraud and other unfair business practices within the insurance industry.

Robbins Geller attorneys have long been at the forefront of litigating race discrimination issues within the life insurance industry. For example, the Firm has fought the practice by certain insurers of charging African-Americans and other people of color more for life insurance than similarly situated Caucasians. The Firm recovered over $400 million for African-Americans and other minorities as redress for civil rights abuses, including landmark recoveries in *McNeil v. American General Life & Accident Insurance Company*; *Thompson v. Metropolitan Life Insurance Company*; and *Williams v. United Insurance Company of America*.

The Firm's attorneys fight on behalf of elderly victims targeted for the sale of deferred annuity products with hidden sales loads and illusory bonus features. Sales agents for life insurance companies such as Allianz Life Insurance Company of North America, Midland National Life Insurance Company, and National Western Life Insurance Company targeted senior citizens for these annuities with lengthy investment horizons and high sales commissions. The Firm recovered millions of dollars for elderly victims and seeks to ensure that senior citizens are afforded full and accurate information regarding deferred annuities.

Robbins Geller attorneys also stopped the fraudulent sale of life insurance policies based on misrepresentations about how the life insurance policy would perform, the costs of the policy, and whether premiums would "vanish." Purchasers were also misled about the financing of a new life insurance policy, falling victim to a "replacement" or "churning" sales scheme where they were convinced to use loans, partial surrenders or withdrawals of cash values from an existing permanent life insurance policy to purchase a new policy.

- **Brokerage "Pay to Play" Cases**. On behalf of individuals, governmental entities, businesses, and non-profits, Robbins Geller has sued the largest commercial and employee benefit insurance brokers and insurers for unfair and deceptive business practices. While purporting to provide independent, unbiased advice as to the best policy, the brokers failed to adequately disclose that

they had entered into separate "pay to play" agreements with certain third-party insurance companies. These agreements provide additional compensation to the brokers based on such factors as profitability, growth and the volume of insurance that they place with a particular insurer, and are akin to a profit-sharing arrangement between the brokers and the insurance companies. These agreements create a conflict of interest since the brokers have a direct financial interest in selling their customers only the insurance products offered by those insurance companies with which the brokers have such agreements.

Robbins Geller attorneys were among the first to uncover and pursue the allegations of these practices in the insurance industry in both state and federal courts. On behalf of the California Insurance Commissioner, the Firm brought an injunctive case against the biggest employee benefit insurers and local San Diego brokerage, ULR, which resulted in major changes to the way they did business. The Firm also sued on behalf of the City and County of San Francisco to recover losses due to these practices. Finally, Robbins Geller represents a putative nationwide class of individuals, businesses, employers, and governmental entities against the largest brokerage houses and insurers in the nation. To date, the Firm has obtained over $200 million on behalf of policyholders and enacted landmark business reforms.

- **Discriminatory Credit Scoring and Redlining Cases**. Robbins Geller attorneys have prosecuted cases concerning countrywide schemes of alleged discrimination carried out by Nationwide, Allstate, and other insurance companies against African-American and other persons of color who are purchasers of homeowner and automobile insurance policies. Such discrimination includes alleged redlining and the improper use of "credit scores," which disparately impact minority communities. Plaintiffs in these actions have alleged that the insurance companies' corporate-driven scheme of intentional racial discrimination includes refusing coverage and/or charging them higher premiums for homeowners and automobile insurance. On behalf of the class of aggrieved policyholders, the Firm has recovered over $400 million for these predatory and racist policies.

- **Senior Annuities**. Robbins Geller has prosecuted numerous cases against insurance companies and their agents who targeted senior citizens for the sale of deferred annuities. Plaintiffs alleged that the insurers misrepresented or failed to disclose to senior consumers material facts concerning the costs associated with their fixed and equity indexed deferred annuities and enticed seniors to buy the annuities by promising them illusory up-front bonuses. As a result of the Firm's efforts, hundreds of millions of dollars in economic relief has been made available to seniors who have been harmed by these practices. Notable recoveries include:

  - *Negrete v. Allianz Life Ins. Co. of N. Am.*, No. CV-05-6838 (C.D. Cal.). Robbins Geller attorneys served as co-lead counsel on behalf of a nationwide RICO class consisting of over 200,000 senior citizens who had purchased deferred annuities issued by Allianz Life Insurance Company of North America. In March 2015, after nine years of litigation, District Judge Christina A. Snyder granted final approval of a class action settlement that made available in excess of $250 million in cash payments and other benefits to class members. In approving the settlement, the Court praised the effort of the Firm and noted that "counsel has represented their clients with great skill and they are to be complimented."

  - *In re Am. Equity Annuity Practices & Sales Litig.*, No. CV-05-6735 (C.D. Cal.). As co-lead counsel, Robbins Geller attorneys secured a settlement that made available $129 million in economic benefits to a nationwide class of 114,000 senior citizens.

- *In re Midland Nat'l Life Ins. Co. Annuity Sales Practices Litig.*, MDL No. 07-1825 (C.D. Cal.). After four years of litigation, the Firm secured a settlement that made available $79.5 million in economic benefits to a nationwide class of 70,000 senior citizens.

- *Negrete v. Fidelity & Guar. Life Ins. Co.*, No. CV-05-6837 (C.D. Cal.). The Firm's efforts resulted in a settlement under which Fidelity made available $52.7 in benefits to 56,000 class members across the country.

- *In re Nat'l Western Life Ins. Deferred Annuities Litig.*, No. 05-CV-1018 (S.D. Cal.). The Firm litigated this action for more than eight years. On the eve of trial, the Firm negotiated a settlement providing over $21 million in value to a nationwide class of 12,000 senior citizens.

# Antitrust

Robbins Geller's antitrust practice focuses on representing businesses and individuals who have been the victims of price-fixing, unlawful monopolization, market allocation, tying and other anti-competitive conduct. The Firm has taken a leading role in many of the largest federal and state price-fixing, monopolization, market allocation and tying cases throughout the United States.

- *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.). Robbins Geller attorneys, serving as co-lead counsel on behalf of merchants, have reached a $6.26 billion cash settlement with defendants in this antitrust litigation. Defendants have contributed additional funds to the class settlement fund that remains from the earlier settlement in 2012, which was approved by the district court in 2013 but was then reversed on appeal in 2016. The case is pending preliminary approval before the Honorable Margo K. Brodie in the Eastern District of New York.

- *Dahl v. Bain Capital Partners, LLC*, No. 07-cv-12388-EFH (D. Mass). Robbins Geller attorneys served as co-lead counsel on behalf of shareholders in this antitrust action against the nation's largest private equity firms that colluded to restrain competition and suppress prices paid to shareholders of public companies in connection with leveraged buyouts. Robbins Geller attorneys recovered more than $590 million for the class from the private equity firm defendants, including Goldman Sachs Group Inc. and Carlyle Group LP.

- *Alaska Elec. Pension Fund v. Bank of America Corp.*, No. 14-cv-07126-JMF (S.D.N.Y.). Robbins Geller attorneys prosecuted antitrust claims against 14 major banks and broker ICAP plc who were alleged to have conspired to manipulate the ISDAfix rate, the key interest rate for a broad range of interest rate derivatives and other financial instruments in contravention of the competition laws. The class action was brought on behalf of investors and market participants who entered into interest rate derivative transactions between 2006 and 2013. Final approval has been granted to settlements collectively yielding $504.5 million from all defendants.

- *In re Currency Conversion Fee Antitrust Litig.*, 01 MDL No. 1409 (S.D.N.Y.). Robbins Geller attorneys served as lead counsel and recovered $336 million for a class of credit and debit cardholders. The court praised the Firm as "indefatigable," noting that the Firm's lawyers "vigorously litigated every issue against some of the ablest lawyers in the antitrust defense bar."

- *Sheet Metal Workers Pension Plan of Northern California v. Bank of America Corporation*, No.

Case 1:16-cv-01031-TSE-MSN Document 453 Filed 04/26/19 Page 43 of 158 PageID# 9611

1:16-cv-04603-ER (S.D.N.Y.). Robbins Geller attorneys are serving as co-lead counsel in a case against several of the world's largest banks and the traders of certain specialized government bonds. They are alleged to have entered into a wide-ranging price-fixing and bid-rigging scheme costing pension funds and other investors hundreds of millions. To date, two of the more than a dozen corporate defendants have settled for more than $65 million.

- **_In re Aftermarket Automotive Lighting Products Antitrust Litig._**, 09 MDL No. 2007 (C.D. Cal.). Robbins Geller attorneys are co-lead counsel in this multi-district litigation in which plaintiffs allege that defendants conspired to fix prices and allocate markets for automotive lighting products. The last defendants settled just before the scheduled trial, resulting in total settlements of more than $50 million. Commenting on the quality of representation, the court commended the Firm for "expend[ing] substantial and skilled time and efforts in an efficient manner to bring this action to conclusion."

- **_In re Dig. Music Antitrust Litig._**, 06 MDL No. 1780 (S.D.N.Y.). Robbins Geller attorneys are co-lead counsel in an action against the major music labels (Sony-BMG, EMI, Universal and Warner Music Group) in a case involving music that can be downloaded digitally from the Internet. Plaintiffs allege that defendants restrained the development of digital downloads and agreed to fix the distribution price of digital downloads at supracompetitive prices. Plaintiffs also allege that as a result of defendants' restraint of the development of digital downloads, and the market and price for downloads, defendants were able to maintain the prices of their CDs at supracompetitive levels. The Second Circuit Court of Appeals upheld plaintiffs' complaint, reversing the trial court's dismissal. Discovery is ongoing.

- **_In re Dynamic Random Access Memory (DRAM) Antitrust Litig._**, 02 MDL No. 1486 (N.D. Cal.). Robbins Geller attorneys served on the executive committee in this multi-district class action in which a class of purchasers of dynamic random access memory (or DRAM) chips alleged that the leading manufacturers of semiconductor products fixed the price of DRAM chips from the fall of 2001 through at least the end of June 2002. The case settled for more than $300 million.

- **_Microsoft I-V Cases_**, JCCP No. 4106 (Cal. Super. Ct., San Francisco Cty.). Robbins Geller attorneys served on the executive committee in these consolidated cases in which California indirect purchasers challenged Microsoft's illegal exercise of monopoly power in the operating system, word processing and spreadsheet markets. In a settlement approved by the court, class counsel obtained an unprecedented $1.1 billion worth of relief for the business and consumer class members who purchased the Microsoft products.

## Consumer Fraud

In our consumer-based economy, working families who purchase products and services must receive truthful information so they can make meaningful choices about how to spend their hard-earned money. When financial institutions and other corporations deceive consumers or take advantage of unequal bargaining power, class action suits provide, in many instances, the only realistic means for an individual to right a corporate wrong.

Robbins Geller attorneys represent consumers around the country in a variety of important, complex class actions. Our attorneys have taken a leading role in many of the largest federal and state consumer fraud, environmental, human rights and public health cases throughout the United States. The Firm is also actively involved in many cases relating to banks and the financial services industry, pursuing claims on behalf of individuals victimized by abusive telemarketing practices, abusive mortgage lending practices, market timing violations in the sale of variable annuities, and deceptive consumer credit lending practices

Case 3:21-cv-00444-DMN Document 126-9 Filed 04/19/24 Page 293 of 586 PageID#
Case 1:16-cv-01031-TSE-MSN Document 453 Filed 04/26/19 Page 293 of 586 PageID# 12
5481
PRACTICE AREAS AND SERVICES

in violation of the Truth-In-Lending Act. Below are a few representative samples of our robust, nationwide consumer practice.

- **In re Nat'l Prescription Opiate Litig.**, MDL No. 2804 (N.D. Ohio). Robbins Geller serves on the Plaintiffs' Executive Committee to spearhead more than 900 federal lawsuits brought on behalf of governmental entities and other plaintiffs in the sprawling litigation concerning the nationwide prescription opioid epidemic. In reporting on the selection of the lawyers to lead the case, *The National Law Journal* reported that "[t]he team reads like a 'Who's Who' in mass torts."

- **Apple Inc. Device Performance Litigation**. Robbins Geller serves on the Plaintiffs' Executive Committee to advance judicial interests of efficiency and protect the interests of the proposed class in the *Apple Inc*. litigation. The case alleges Apple Inc. misrepresented its iPhone devices and the nature of updates to its mobile operating system (iOS), which allegedly included code that significantly reduced the performance of older-model iPhones and forced users to incur expenses replacing these devices or their batteries.

- **In re Intel Corp. CPU Mktg., Sales Practices & Prods. Liab. Litig.**, No. 3:18-md-02828-SI (D. Or.). Robbins Geller serves on the Plaintiffs' Steering Committee in *Intel*, a massive multidistrict litigation pending in the United States District Court for the District of Oregon. *Intel* concerns serious security vulnerabilities – known as "Spectre" and "Meltdown" – that infect nearly all of Intel's x86 processors manufactured and sold since 1995, the patching of which results in processing speed degradation of the impacted computer, server or mobile device.

- **Hauck v. Advanced Micro Devices, Inc.**, No. 18-CV-00447-LHK (N.D. Cal.). An attorney from Robbins Geller serves as co-lead counsel in a case against Advanced Micro Devices, Inc. ("AMD"), which alleges that AMD's processors are incapable of operating as intended and at processing speeds represented by AMD without exposing users to the Spectre vulnerability, which allows hackers to covertly access sensitive information stored within the CPU's kernel.

- **In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.**, No. 15-md-2672 (N.D. Cal.). As part of the Plaintiffs' Steering Committee, Robbins Geller reached a series of settlements on behalf of purchasers, lessees and dealers that total well over $17 billion, the largest settlement in history, concerning illegal "defeat devices" that Volkswagen installed on many of its diesel-engine vehicles. The device tricked regulators into believing the cars were complying with emissions standards, while the cars were actually emitting between 10 and 40 times the allowable limit for harmful pollutants.

- **Trump University**. After six and half years of tireless litigation and on the eve of trial, Robbins Geller, serving as co-lead counsel, secured a historic recovery on behalf of Trump University students around the country. The settlement provides $25 million to approximately 7,000 consumers, including senior citizens who accessed retirement accounts and maxed out credit cards to enroll in Trump University. The extraordinary result means individual class members are eligible for upwards of $35,000 in restitution. The settlement resolves claims that President Donald J. Trump and Trump University violated federal and state laws by misleadingly marketing "Live Events" seminars and mentorships as teaching Trump's "real-estate techniques" through his "hand-picked" "professors" at his so-called "university." Robbins Geller represented the class on a *pro bono* basis.

- **Bank Overdraft Fees Litigation**. The banking industry charges consumers exorbitant amounts for "overdraft" of their checking accounts, even if the customer did not authorize a charge beyond the

Case 3:21-cv-00444-D-JN Document 126-9 Filed 04/19/24 Page 294 of 586 PageID#
5482
Case 1:16-cv-01031-TSE-MSN Document 453 Filed 04/26/19 Page 45 of 158 PageID# 9613
PRACTICE AREAS AND SERVICES

available balance and even if the account would not have been overdrawn had the transactions been ordered chronologically as they occurred – that is, banks reorder transactions to maximize such fees. The Firm brought lawsuits against major banks to stop this practice and recover these false fees. These cases have recovered over $500 million thus far from a dozen banks and we continue to investigate other banks engaging in this practice.

- ***Schwartz v. Visa Int'l***, No. 822404-4 (Cal. Super. Ct., Alameda Cty.). After years of litigation and a six-month trial, Robbins Geller attorneys won one of the largest consumer-protection verdicts ever awarded in the United States. The Firm's attorneys represented California consumers in an action against Visa and MasterCard for intentionally imposing and concealing a fee from cardholders. The court ordered Visa and MasterCard to return $800 million in cardholder losses, which represented 100% of the amount illegally taken, plus 2% interest. In addition, the court ordered full disclosure of the hidden fee.

- ***West Telemarketing Case***. Robbins Geller attorneys secured a $39 million settlement for class members caught up in a telemarketing scheme where consumers were charged for an unwanted membership program after purchasing Tae-Bo exercise videos. Under the settlement, consumers were entitled to claim between one and one-half to three times the amount of all fees they unknowingly paid.

- ***Dannon Activia®***. Robbins Geller attorneys secured the largest ever settlement for a false advertising case involving a food product. The case alleged that Dannon's advertising for its Activia® and DanActive® branded products and their benefits from "probiotic" bacteria were overstated. As part of the nationwide settlement, Dannon agreed to modify its advertising and establish a fund of up to $45 million to compensate consumers for their purchases of Activia® and DanActive®.

- ***Mattel Lead Paint Toys***. In 2006-2007, toy manufacturing giant Mattel and its subsidiary Fisher-Price announced the recall of over 14 million toys made in China due to hazardous lead and dangerous magnets. Robbins Geller attorneys filed lawsuits on behalf of millions of parents and other consumers who purchased or received toys for children that were marketed as safe but were later recalled because they were dangerous. The Firm's attorneys reached a landmark settlement for millions of dollars in refunds and lead testing reimbursements, as well as important testing requirements to ensure that Mattel's toys are safe for consumers in the future.

- ***Tenet Healthcare Cases***. Robbins Geller attorneys were co-lead counsel in a class action alleging a fraudulent scheme of corporate misconduct, resulting in the overcharging of uninsured patients by the Tenet chain of hospitals. The Firm's attorneys represented uninsured patients of Tenet hospitals nationwide who were overcharged by Tenet's admittedly "aggressive pricing strategy," which resulted in price gouging of the uninsured. The case was settled with Tenet changing its practices and making refunds to patients.

- ***Pet Food Products Liability Litigation***. Robbins Geller served as co-lead counsel in this massive, 100+ case products liability MDL in the District of New Jersey concerning the death of and injury to thousands of the nation's cats and dogs due to tainted pet food. The case settled for $24 million.

- ***In re Sony Gaming Networks & Customer Data Sec. Breach Litig.***, No. 3:11-md-2258-AJB (MDD) (S.D. Cal.). The Firm served as a member of the Plaintiffs' Steering Committee, helping to obtain a precedential opinion denying in part Sony's motion to dismiss plaintiffs' claims involving the breach of Sony's gaming network, leading to a pending $15 million settlement.

# Intellectual Property

Individual inventors, universities, and research organizations provide the fundamental research behind many existing and emerging technologies. Every year, the majority of U.S. patents are issued to this group of inventors. Through this fundamental research, these inventors provide a significant competitive advantage to this country. Unfortunately, while responsible for most of the inventions that issue into U.S. patents every year, individual inventors, universities and research organizations receive very little of the licensing revenues for U.S. patents. Large companies reap 99% of all patent licensing revenues.

Robbins Geller enforces the rights of these inventors by filing and litigating patent infringement cases against infringing entities. Our attorneys have decades of patent litigation experience in a variety of technical applications. This experience, combined with the Firm's extensive resources, gives individual inventors the ability to enforce their patent rights against even the largest infringing companies.

Our attorneys have experience handling cases involving a broad range of technologies, including:

- biochemistry
- telecommunications
- medical devices
- medical diagnostics
- networking systems
- computer hardware devices and software
- mechanical devices
- video gaming technologies
- audio and video recording devices

# Human Rights, Labor Practices and Public Policy

Robbins Geller attorneys have a long tradition of representing the victims of unfair labor practices and violations of human rights. These include:

- ***Does I v. The Gap, Inc.***, No. 01 0031 (D. N. Mar. I.). In this groundbreaking case, Robbins Geller attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top U.S. retailers such as The Gap, Target and J.C. Penney. In the first action of its kind, Robbins Geller attorneys pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort Claims Act, and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan. This case was a companion to two other actions: ***Does I v. Advance Textile Corp.***, No. 99 0002 (D. N. Mar. I.), which alleged overtime violations by the garment factories under the Fair Labor Standards Act and local labor law, and ***UNITE v. The Gap, Inc.***, No. 300474 (Cal. Super. Ct., San Francisco Cty.), which alleged violations of California's Unfair Practices Law by the U.S. retailers. These actions resulted in a settlement of approximately $20 million that included a comprehensive monitoring program to address past violations by the factories and prevent future ones. The members of the litigation team were honored as Trial Lawyers of the Year by the Trial Lawyers for Public Justice in recognition of the team's efforts at bringing about the precedent-setting settlement of the actions.

- ***Liberty Mutual Overtime Cases***, No. JCCP 4234 (Cal. Super. Ct., Los Angeles Cty.). Robbins Geller attorneys served as co-lead counsel on behalf of 1,600 current and former insurance claims adjusters at Liberty Mutual Insurance Company and several of its subsidiaries. Plaintiffs brought the case to recover unpaid overtime compensation and associated penalties, alleging that Liberty

Mutual had misclassified its claims adjusters as exempt from overtime under California law. After 13 years of complex and exhaustive litigation, Robbins Geller secured a settlement in which Liberty Mutual agreed to pay $65 million into a fund to compensate the class of claims adjusters for unpaid overtime. The Liberty Mutual action is one of a few claims adjuster overtime actions brought in California or elsewhere to result in a successful outcome for plaintiffs since 2004.

- *Veliz v. Cintas Corp.*, No. 5:03-cv-01180 (N.D. Cal.). Brought against one of the nation's largest commercial laundries for violations of the Fair Labor Standards Act for misclassifying truck drivers as salesmen to avoid payment of overtime.

- *Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002). The California Supreme Court upheld claims that an apparel manufacturer misled the public regarding its exploitative labor practices, thereby violating California statutes prohibiting unfair competition and false advertising. The Court rejected defense contentions that any misconduct was protected by the First Amendment, finding the heightened constitutional protection afforded to noncommercial speech inappropriate in such a circumstance.

Shareholder derivative litigation brought by Robbins Geller attorneys at times also involves stopping anti-union activities, including:

- *Southern Pacific/Overnite*. A shareholder action stemming from several hundred million dollars in loss of value in the company due to systematic violations by Overnite of U.S. labor laws.

- *Massey Energy*. A shareholder action against an anti-union employer for flagrant violations of environmental laws resulting in multi-million-dollar penalties.

- *Crown Petroleum*. A shareholder action against a Texas-based oil company for self-dealing and breach of fiduciary duty while also involved in a union lockout.

## Environment and Public Health

Robbins Geller attorneys have also represented plaintiffs in class actions related to environmental law. The Firm's attorneys represented, on a *pro bono* basis, the Sierra Club and the National Economic Development and Law Center as *amici curiae* in a federal suit designed to uphold the federal and state use of project labor agreements ("PLAs"). The suit represented a legal challenge to President Bush's Executive Order 13202, which prohibits the use of project labor agreements on construction projects receiving federal funds. Our *amici* brief in the matter outlined and stressed the significant environmental and socio-economic benefits associated with the use of PLAs on large-scale construction projects.

Attorneys with Robbins Geller have been involved in several other significant environmental cases, including:

Case 1:16-cv-01031-TSE-MSN Document 453 Filed 04/26/19 Page 4 of 158 PageID# 9616

- ***Public Citizen v. U.S. D.O.T.*** Robbins Geller attorneys represented a coalition of labor, environmental, industry and public health organizations including Public Citizen, The International Brotherhood of Teamsters, California AFL-CIO and California Trucking Industry in a challenge to a decision by the Bush administration to lift a Congressionally-imposed "moratorium" on cross-border trucking from Mexico on the basis that such trucks do not conform to emission controls under the Clean Air Act, and further, that the administration did not first complete a comprehensive environmental impact analysis as required by the National Environmental Policy Act. The suit was dismissed by the United States Supreme Court, the Court holding that because the D.O.T. lacked discretion to prevent crossborder trucking, an environmental assessment was not required.

- ***Sierra Club v. AK Steel***. Brought on behalf of the Sierra Club for massive emissions of air and water pollution by a steel mill, including homes of workers living in the adjacent communities, in violation of the Federal Clean Air Act, Resource Conservation Recovery Act and the Clean Water Act.

- ***MTBE Litigation***. Brought on behalf of various water districts for befouling public drinking water with MTBE, a gasoline additive linked to cancer.

- ***Exxon Valdez***. Brought on behalf of fisherman and Alaska residents for billions of dollars in damages resulting from the greatest oil spill in U.S. history.

- ***Avila Beach***. A citizens' suit against UNOCAL for leakage from the oil company pipeline so severe it literally destroyed the town of Avila Beach, California.

Federal laws such as the Clean Water Act, the Clean Air Act, and the Resource Conservation and Recovery Act and state laws such as California's Proposition 65 exist to protect the environment and the public from abuses by corporate and government organizations. Companies can be found liable for negligence, trespass or intentional environmental damage, be forced to pay for reparations and to come into compliance with existing laws. Prominent cases litigated by Robbins Geller attorneys include representing more than 4,000 individuals suing for personal injury and property damage related to the Stringfellow Dump Site in Southern California, participation in the Exxon Valdez oil spill litigation, and litigation involving the toxic spill arising from a Southern Pacific train derailment near Dunsmuir, California.

Robbins Geller attorneys have led the fight against Big Tobacco since 1991. As an example, Robbins Geller attorneys filed the case that helped get rid of Joe Camel, representing various public and private plaintiffs, including the State of Arkansas, the general public in California, the cities of San Francisco, Los Angeles and Birmingham, 14 counties in California, and the working men and women of this country in the Union Pension and Welfare Fund cases that have been filed in 40 states. In 1992, Robbins Geller attorneys filed the first case in the country that alleged a conspiracy by the Big Tobacco companies.

## Pro Bono

Robbins Geller provides counsel to those unable to afford legal representation as part of a continuous and longstanding commitment to the communities in which it serves. Over the years the Firm has dedicated a considerable amount of time, energy, and a full range of its resources for many pro bono and charitable actions.

Robbins Geller has been honored for its pro bono efforts by the California State Bar (including a

nomination for the President's Pro Bono Law Firm of the Year award) and the San Diego Volunteer Lawyer's Program, among others.

Some of the Firm's and its attorneys' pro bono and charitable actions include:

- Representing Trump University students in two class actions against President Donald J. Trump. The historic settlement provides $25 million to approximately 7,000 consumers. This means individual class members are eligible for upwards of $35,000 in restitution – an extraordinary result.

- Representing children diagnosed with Autism Spectrum Disorder, as well as children with significant disabilities, in New York to remedy flawed educational policies and practices that cause substantial harm to these and other similar children year after year.

- Representing 19 San Diego County children diagnosed with Autism Spectrum Disorder in their appeal of the San Diego Regional Center's termination of funding for a crucial therapy. The victory resulted in a complete reinstatement of funding and set a precedent that allows other children to obtain the treatments they need.

- Serving as Northern California and Hawaii District Coordinator for the United States Court of Appeals for the Ninth Circuit's Pro Bono program since 1993.

- Representing the Sierra Club and the National Economic Development and Law Center as *amici curiae* before the U.S. Supreme Court.

- Obtaining political asylum, after an initial application had been denied, for an impoverished Somali family whose ethnic minority faced systematic persecution and genocidal violence in Somalia, as well as forced female mutilation.

- Working with the ACLU in a class action filed on behalf of welfare applicants subject to San Diego County's "Project 100%" program. Relief was had when the County admitted that food-stamp eligibility could not hinge upon the Project 100% "home visits," and again when the district court ruled that unconsented "collateral contacts" violated state regulations. The decision was noted by the *Harvard Law Review*, *The New York Times* and *The Colbert Report*.

- Filing numerous *amicus curiae* briefs on behalf of religious organizations and clergy that support civil rights, oppose government-backed religious-viewpoint discrimination, and uphold the American traditions of religious freedom and church-state separation.

- Serving as *amicus* counsel in a Ninth Circuit appeal from a Board of Immigration Appeals deportation decision. In addition to obtaining a reversal of the BIA's deportation order, the Firm consulted with the Federal Defenders' Office on cases presenting similar fact patterns, which resulted in a precedent-setting *en banc* decision from the Ninth Circuit resolving a question of state and federal law that had been contested and conflicted for decades.

# E-Discovery

Robbins Geller has successfully litigated some of the largest and most complex shareholder and antitrust actions in history and has become the vanguard of a rapidly evolving world of e-discovery in complex litigation. The Firm has 200 attorneys supported by a large staff of forensic and e-discovery specialists and has a level of technological sophistication that is unmatched by any other firm. As the size and stakes of complex litigation continue to increase, it is more important than ever to retain counsel with a successful track record of results. Robbins Geller has consistently proven to be the right choice for anyone seeking representation in actions against the largest corporations in the world.

Led by 20-year litigation veteran Tor Gronborg, and advised by Lea Bays, e-discovery counsel, and Christine Milliron, Director of E-Discovery and Litigation Support, the Robbins Geller e-discovery practice group is a multi-disciplinary team of attorneys, forensic analysts and database professionals. No plaintiffs' firm is better equipped to develop the type of comprehensive and case specific e-discovery strategy that is necessary for today's complex litigation. The attorneys have extensive knowledge and experience in drafting and negotiating sophisticated e-discovery protocols, including those involving the use of predictive coding. High quality document review services are performed by a consistent group of staff attorneys who are experienced in the Firm's litigation practice areas and specialize in document review and analysis. A team of forensic and technology professionals work closely with the attorneys to ensure an effective and efficient e-discovery strategy. The litigation support team includes six Relativity Certified Administrators. Collectively, the Robbins Geller forensic and technology professionals have more than 75 years of e-discovery experience.

Members of the practice group are also leaders in shaping the broader dialogue on e-discovery issues. They regularly contribute to industry publications, speak at conferences organized by leading e-discovery think tanks such as The Sedona Conference and Georgetown University Law Center's Advanced eDiscovery Institute, and play prominent roles in the local chapters of Women in eDiscovery and the Relativity Users Steering Committee. The e-discovery practice group also offers regular in-house training and education, ensuring that members of the Firm are always up-to-date on the evolving world of e-discovery law and technology.

Robbins Geller has always been a leader in document-intensive litigation. Boasting high-performing infrastructure resources, state-of-the-art technology, and a deep bench of some of the most highly trained Relativity Certified Administrators and network engineers, the Firm's capabilities rival, if not outshine, those of the top e-discovery vendors in the industry. Additionally, the Firm's implementation of advanced analytic technologies and custom workflows makes its work fast, smart and efficient. Combined with Robbins Geller's decision to manage and host its litigation support in-house, these technologies reduce the Firm's reliance on third-party vendors, enabling it to offer top-notch e-discovery services to clients at a fair and reasonable cost.

Security is a top priority at Robbins Geller. The Firm's hosted e-discovery is secured using bank-level 128 encryption and is protected behind state-of-the-art Cisco firewalls. All e-discovery data is hosted on Firm-owned equipment at an SSAE 16-compliant, SOC 1, 2, and 3 audited facility that features 9.1 megawatts of power, N+1 or better redundancy on all data center systems, and security protocols required by leading businesses in the most stringent verticals. Originally designed to support a large defense contractor, it is built to rigorous standards, complete with redundant power and cooling systems plus multiple generators.

# PROMINENT CASES, PRECEDENT-SETTING DECISIONS AND JUDICIAL COMMENDATIONS

## Prominent Cases

Over the years, Robbins Geller attorneys have obtained outstanding results in some of the most notorious and well-known cases, frequently earning judicial commendations for the quality of their representation.

- ***In re Enron Corp. Sec. Litig.***, No. H-01-3624 (S.D. Tex.). Investors lost billions of dollars as a result of the massive fraud at Enron. In appointing Robbins Geller lawyers as sole lead counsel to represent the interests of Enron investors, the court found that the Firm's zealous prosecution and level of "insight" set it apart from its peers. Robbins Geller attorneys and lead plaintiff The Regents of the University of California aggressively pursued numerous defendants, including many of Wall Street's biggest banks, and successfully obtained settlements in excess of ***$7.2 billion*** for the benefit of investors. ***This is the largest securities class action recovery in history***.

  The court overseeing this action had utmost praise for Robbins Geller's efforts and stated that "[t]he experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008).

  The court further commented: "[I]n the face of extraordinary obstacles, the skills, expertise, commitment, and tenacity of [Robbins Geller] in this litigation cannot be overstated. Not to be overlooked are the unparalleled results, . . . which demonstrate counsel's clearly superlative litigating and negotiating skills." *Id*. at 789.

  The court stated that the Firm's attorneys "are to be commended for their zealousness, their diligence, their perseverance, their creativity, the enormous breadth and depth of their investigations and analysis, and their expertise in all areas of securities law on behalf of the proposed class." *Id*.

  In addition, the court noted, "This Court considers [Robbins Geller] 'a lion' at the securities bar on the national level," noting that the Lead Plaintiff selected Robbins Geller because of the Firm's "outstanding reputation, experience, and success in securities litigation nationwide." *Id*. at 790.

  The court further stated that "Lead Counsel's fearsome reputation and successful track record undoubtedly were substantial factors in . . . obtaining these recoveries." *Id*.

  Finally, Judge Harmon stated: "As this Court has explained [this is] an extraordinary group of attorneys who achieved the largest settlement fund ever despite the great odds against them." *Id*. at 828.

- ***Jaffe v. Household Int'l, Inc.***, No. 02-C-05893 (N.D. Ill). As sole lead counsel, Robbins Geller obtained a record-breaking settlement of ***$1.575 billion*** after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a securities fraud verdict in favor of the class. In 2015, the Seventh Circuit Court of Appeals upheld the jury's verdict that defendants made false or misleading statements of material fact about the company's business practices and financial results, but remanded the case for a new trial on the issue of whether the individual defendants "made" certain false statements, whether those false statements caused plaintiffs' losses, and the amount of

damages. The parties reached an agreement to settle the case just hours before the retrial was scheduled to begin on June 6, 2016. ***The $1.575 billion settlement, approved in October 2016, is the largest ever following a securities fraud class action trial, the largest securities fraud settlement in the Seventh Circuit and the seventh-largest settlement ever in a post-PSLRA securities fraud case.*** According to published reports, the case was just the seventh securities fraud case tried to a verdict since the passage of the PSLRA.

In approving the settlement, the Honorable Jorge L. Alonso noted the team's "skill and determination" while recognizing that "Lead Counsel prosecuted the case vigorously and skillfully over 14 years against nine of the country's most prominent law firms" and "achieved an exceptionally significant recovery for the class." The court added that the team faced "significant hurdles" and "uphill battles" throughout the case and recognized that "[c]lass counsel performed a very high-quality legal work in the context of a thorny case in which the state of the law has been and is in flux." The court succinctly concluded that the settlement was "a spectacular result for the class." *Jaffe v. Household Int'l, Inc.*, No. 02-C-5892, 2016 U.S. Dist. LEXIS 156921, at *8 (N.D. Ill. Nov. 10, 2016); *Jaffe v. Household Int'l, Inc.*, No. 02-C-05893, Transcript at 56, 65 (N.D. Ill. Oct. 20, 2016).

- ***In re UnitedHealth Grp. Inc. PSLRA Litig.***, No. 06-CV-1691 (D. Minn.). In the *UnitedHealth* case, Robbins Geller represented the California Public Employees' Retirement System ("CalPERS") and demonstrated its willingness to vigorously advocate for its institutional clients, even under the most difficult circumstances. For example, in 2006, the issue of high-level executives backdating stock options made national headlines. During that time, many law firms, including Robbins Geller, brought shareholder derivative lawsuits against the companies' boards of directors for breaches of their fiduciary duties or for improperly granting backdated options. Rather than pursuing a shareholder derivative case, the Firm filed a securities fraud class action against the company on behalf of CalPERS. In doing so, Robbins Geller faced significant and unprecedented legal obstacles with respect to loss causation, *i.e.*, that defendants' actions were responsible for causing the stock losses. Despite these legal hurdles, Robbins Geller obtained an $895 million recovery on behalf of the UnitedHealth shareholders. Shortly after reaching the $895 million settlement with UnitedHealth, the remaining corporate defendants, including former CEO William A. McGuire, also settled. McGuire paid $30 million and returned stock options representing more than three million shares to the shareholders. The total recovery for the class was over $925 million, the largest stock option backdating recovery ever, and ***a recovery that is more than four times larger than the next largest options backdating recovery***. Moreover, Robbins Geller obtained unprecedented corporate governance reforms, including election of a shareholder-nominated member to the company's board of directors, a mandatory holding period for shares acquired by executives via option exercise, and executive compensation reforms that tie pay to performance.

- ***Alaska Elec. Pension Fund v. CitiGroup, Inc. (In re WorldCom Sec. Litig.)***, No. 03 Civ. 8269 (S.D.N.Y.). Robbins Geller attorneys represented more than 50 private and public institutions that opted out of the class action case and sued WorldCom's bankers, officers and directors, and auditors in courts around the country for losses related to WorldCom bond offerings from 1998 to 2001. The Firm's clients included major public institutions from across the country such as CalPERS, CalSTRS, the state pension funds of Maine, Illinois, New Mexico and West Virginia, union pension funds, and private entities such as AIG and Northwestern Mutual. Robbins Geller attorneys recovered more than $650 million for their clients, substantially more than they would have recovered as part of the class.

- ***Luther v. Countrywide Fin. Corp.***, No. 12-cv-05125 (C.D. Cal.). Robbins Geller attorneys secured a

$500 million settlement for institutional and individual investors in what is the largest RMBS purchaser class action settlement in history, and one of the largest class action securities settlements of all time. The unprecedented settlement resolves claims against Countrywide and Wall Street banks that issued the securities. The action was the first securities class action case filed against originators and Wall Street banks as a result of the credit crisis. As co-lead counsel Robbins Geller forged through six years of hard-fought litigation, oftentimes litigating issues of first impression, in order to secure the landmark settlement for its clients and the class.

In approving the settlement, Judge Mariana R. Pfaelzer repeatedly complimented plaintiffs' attorneys, noting that it was "beyond serious dispute that Class Counsel has vigorously prosecuted the Settlement Actions on both the state and federal level over the last six years." Judge Pfaelzer also commented that "[w]ithout a settlement, these cases would continue indefinitely, resulting in significant risks to recovery and continued litigation costs. It is difficult to understate the risks to recovery if litigation had continued." *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-00302, 2013 U.S. Dist. LEXIS 179190, at *44, *56 (C.D. Cal. Dec. 5, 2013).

Judge Pfaelzer further noted that the proposed $500 million settlement represents one of the "largest MBS class action settlements to date. Indeed, this settlement easily surpasses the next largest . . . MBS settlement." *Id*. at *59.

- *In re Wachovia Preferred Sec. & Bond/Notes Litig.*, No. 09-cv-06351 (S.D.N.Y.). In litigation over bonds and preferred securities, issued by Wachovia between 2006 and 2008, Robbins Geller and co-counsel obtained a significant settlement with Wachovia successor Wells Fargo & Company ($590 million) and Wachovia auditor KPMG LLP ($37 million). *The total settlement – $627 million – is one of the largest credit-crisis settlements involving Securities Act claims and one of the 20 largest securities class action recoveries in history*. The settlement is also one of the biggest securities class action recoveries arising from the credit crisis.

  As alleged in the complaint, the offering materials for the bonds and preferred securities misstated and failed to disclose the true nature and quality of Wachovia's mortgage loan portfolio, which exposed the bank and misled investors to tens of billions of dollars in losses on mortgage-related assets. In reality, Wachovia employed high-risk underwriting standards and made loans to subprime borrowers, contrary to the offering materials and their statements of "pristine credit quality." Robbins Geller served as co-lead counsel representing the City of Livonia Employees' Retirement System, Hawaii Sheet Metal Workers Pension Fund, and the investor class.

- *In re Cardinal Health, Inc. Sec. Litig.*, No. C2-04-575 (S.D. Ohio). As sole lead counsel representing Cardinal Health shareholders, Robbins Geller obtained a recovery of $600 million for investors. On behalf of the lead plaintiffs, Amalgamated Bank, the New Mexico State Investment Council, and the California Ironworkers Field Trust Fund, the Firm aggressively pursued class claims and won notable courtroom victories, including a favorable decision on defendants' motion to dismiss. *In re Cardinal Health, Inc. Sec. Litigs.*, 426 F. Supp. 2d 688 (S.D. Ohio 2006). At the time, the $600 million settlement was the tenth-largest settlement in the history of securities fraud litigation and is the largest-ever recovery in a securities fraud action in the Sixth Circuit. Judge Marbley commented:

  > The quality of representation in this case was superb. Lead Counsel, [Robbins Geller], are nationally recognized leaders in complex securities litigation class actions. The quality of the representation is demonstrated by the substantial benefit achieved for the Class and the efficient, effective prosecution and resolution of this action. Lead Counsel defeated a volley of motions to dismiss, thwarting well-formed challenges from prominent and capable attorneys from six different law

firms.

*In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007).

- *AOL Time Warner Cases I & II*, JCCP Nos. 4322 & 4325 (Cal. Super. Ct., Los Angeles Cty.). Robbins Geller represented The Regents of the University of California, six Ohio state pension funds, Rabo Bank (NL), the Scottish Widows Investment Partnership, several Australian public and private funds, insurance companies, and numerous additional institutional investors, both domestic and international, in state and federal court opt-out litigation stemming from Time Warner's disastrous 2001 merger with Internet high flier America Online. Robbins Geller attorneys exposed a massive and sophisticated accounting fraud involving America Online's e-commerce and advertising revenue. After almost four years of litigation involving extensive discovery, the Firm secured combined settlements for its opt-out clients totaling over $629 million just weeks before The Regents' case pending in California state court was scheduled to go to trial. The Regents' gross recovery of $246 million is the largest individual opt-out securities recovery in history.

- *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, No. 1:08-cv-07508-SAS-DCF (S.D.N.Y.), and *King County, Washington v. IKB Deutsche Industriebank AG*, No. 1:09-cv-08387-SAS (S.D.N.Y.). The Firm represented multiple institutional investors in successfully pursuing recoveries from two failed structured investment vehicles, each of which had been rated "AAA" by Standard & Poors and Moody's, but which failed fantastically in 2007. The matter settled just prior to trial in 2013. This result was only made possible after Robbins Geller lawyers beat back the rating agencies' longtime argument that ratings were opinions protected by the First Amendment.

- *In re HealthSouth Corp. Sec. Litig.*, No. CV-03-BE-1500-S (N.D. Ala.). As court-appointed co-lead counsel, Robbins Geller attorneys obtained a combined recovery of $671 million from HealthSouth, its auditor Ernst & Young, and its investment banker, UBS, for the benefit of stockholder plaintiffs. The settlement against HealthSouth represents one of the larger settlements in securities class action history and is considered among the top 15 settlements achieved after passage of the PSLRA. Likewise, the settlement against Ernst & Young is one of the largest securities class action settlements entered into by an accounting firm since the passage of the PSLRA. HealthSouth and its financial advisors perpetrated one of the largest and most pervasive frauds in the history of U.S. healthcare, prompting Congressional and law enforcement inquiry and resulting in guilty pleas of 16 former HealthSouth executives in related federal criminal prosecutions. In March 2009, Judge Karon Bowdre commented in the *HealthSouth* class certification opinion: "The court has had many opportunities since November 2001 to examine the work of class counsel and the supervision by the Class Representatives. The court finds both to be far more than adequate." *In re HealthSouth Corp. Sec. Litig.*, 257 F.R.D. 260, 275 (N.D. Ala. 2009).

- *In re Dynegy Inc. Sec. Litig.*, No. H-02-1571 (S.D. Tex.). As sole lead counsel representing The Regents of the University of California and the class of Dynegy investors, Robbins Geller attorneys obtained a combined settlement of $474 million from Dynegy, Citigroup, Inc. and Arthur Andersen LLP for their involvement in a clandestine financing scheme known as Project Alpha. Given Dynegy's limited ability to pay, Robbins Geller attorneys structured a settlement (reached shortly before the commencement of trial) that maximized plaintiffs' recovery without bankrupting the company. Most notably, the settlement agreement provides that Dynegy will appoint two board members to be nominated by The Regents, which Robbins Geller and The Regents believe will benefit all of Dynegy's stockholders.

- ***Jones v. Pfizer Inc.***, No. 1:10-cv-03864 (S.D.N.Y.). Lead plaintiff Stichting Philips Pensioenfonds obtained a $400 million settlement on behalf of class members who purchased Pfizer Inc. common stock during the January 19, 2006 to January 23, 2009 class period. The settlement against Pfizer resolves accusations that it misled investors about an alleged off-label drug marketing scheme. As sole lead counsel, Robbins Geller attorneys helped achieve this exceptional result after five years of hard-fought litigation against the toughest and the brightest members of the securities defense bar by litigating this case all the way to trial.

  In approving the settlement, United States District Judge Alvin K. Hellerstein commended the Firm, noting that "[w]ithout the quality and the toughness that you have exhibited, our society would not be as good as it is with all its problems. So from me to you is a vote of thanks for devoting yourself to this work and doing it well. . . . You did a really good job. Congratulations."

- ***In re Qwest Commc'ns Int'l, Inc. Sec. Litig.***, No. 01-cv-1451 (D. Colo.). Robbins Geller attorneys served as lead counsel for a class of investors that purchased Qwest securities. In July 2001, the Firm filed the initial complaint in this action on behalf of its clients, long before any investigation into Qwest's financial statements was initiated by the SEC or Department of Justice. After five years of litigation, lead plaintiffs entered into a settlement with Qwest and certain individual defendants that provided a $400 million recovery for the class and created a mechanism that allowed the vast majority of class members to share in an additional $250 million recovered by the SEC. In 2008, Robbins Geller attorneys recovered an additional $45 million for the class in a settlement with defendants Joseph P. Nacchio and Robert S. Woodruff, the CEO and CFO, respectively, of Qwest during large portions of the class period.

- ***Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.***, No. 1:09-cv-03701 (S.D.N.Y.). Robbins Geller attorneys served as lead counsel for a class of investors and obtained court approval of a $388 million recovery in nine 2007 residential mortgage-backed securities offerings issued by J.P. Morgan. The settlement represents, on a percentage basis, the largest recovery ever achieved in an MBS purchaser class action. The result was achieved after more than five years of hard-fought litigation and an extensive investigation. In granting approval of the settlement, the court stated the following about Robbins Geller attorneys litigating the case: "[T]here is no question in my mind that this is a very good result for the class and that the plaintiffs' counsel fought the case very hard with extensive discovery, a lot of depositions, several rounds of briefing of various legal issues going all the way through class certification."

- ***NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.***, No. 1:08-cv-10783 (S.D.N.Y.). As sole lead counsel, Robbins Geller obtained a $272 million settlement on behalf of Goldman Sachs' shareholders. The settlement concludes one of the last remaining mortgage-backed securities purchaser class actions arising out of the global financial crisis. The remarkable result was achieved following seven years of extensive litigation. After the claims were dismissed in 2010, Robbins Geller secured a landmark victory from the Second Circuit Court of Appeals that clarified the scope of permissible class actions asserting claims under the Securities Act of 1933 on behalf of MBS investors. Specifically, the Second Circuit's decision rejected the concept of "tranche" standing and concluded that a lead plaintiff in an MBS class action has class standing to pursue claims on behalf of purchasers of other securities that were issued from the same registration statement and backed by pools of mortgages originated by the same lenders who had originated mortgages backing the lead plaintiff's securities.

  In approving the settlement, the Honorable Loretta A. Preska of the Southern District of New York complimented Robbins Geller attorneys, noting:

> Counsel, thank you for your papers. They were, by the way, extraordinary papers in support of the settlement, and I will particularly note Professor Miller's declaration in which he details the procedural aspects of the case and then speaks of plaintiffs' counsel's success in the Second Circuit essentially changing the law.
>
> I will also note what counsel have said, and that is that this case illustrates the proper functioning of the statute.
>
> *       *       *
>
> Counsel, you can all be proud of what you've done for your clients. You've done an extraordinarily good job.

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, No. 1:08-cv-10783, Transcript at 10-11 (S.D.N.Y. May 2, 2016).

- ***Schuh v. HCA Holdings, Inc.***, No. 3:11-cv-01033 (M.D. Tenn.). As sole lead counsel, Robbins Geller obtained a groundbreaking $215 million settlement for former HCA Holdings, Inc. shareholders – the largest securities class action recovery ever in Tennessee. Reached shortly before trial was scheduled to commence, the settlement resolves claims that the Registration Statement and Prospectus HCA filed in connection with the company's massive $4.3 billion 2011 IPO contained material misstatements and omissions. The recovery achieved approximately 70% of classwide damages, which as a percentage of damages significantly exceeds the median class action recovery of 2%-3% of damages. At the hearing on final approval of the settlement, the Honorable Kevin H. Sharp described Robbins Geller attorneys as "gladiators" and commented: "Looking at the benefit obtained, the effort that you had to put into it, [and] the complexity in this case . . . I appreciate the work that you all have done on this." *Schuh v. HCA Holdings, Inc.*, No. 3:11-CV-01033, Transcript at 12-13 (M.D. Tenn. Apr. 11, 2016).

- ***Silverman v. Motorola, Inc.***, No. 1:07-cv-04507 (N.D. Ill.). The Firm served as lead counsel on behalf of a class of investors in Motorola, Inc., ultimately recovering $200 million for investors just two months before the case was set for trial. This outstanding result was obtained despite the lack of an SEC investigation or any financial restatement. In May 2012, the Honorable Amy J. St. Eve of the Northern District of Illinois commented: "The representation that [Robbins Geller] provided to the class was significant, both in terms of quality and quantity." *Silverman v. Motorola, Inc.*, No. 07 C 4507, 2012 U.S. Dist. LEXIS 63477, at *11 (N.D. Ill. May 7, 2012), *aff'd*, 739 F.3d 956 (7th Cir. 2013).

  In affirming the district court's award of attorneys' fees, the Seventh Circuit noted that "no other law firm was willing to serve as lead counsel. Lack of competition not only implies a higher fee but also suggests that most members of the securities bar saw this litigation as too risky for their practices." *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013).

- ***In re AT&T Corp. Sec. Litig.***, MDL No. 1399 (D.N.J.). Robbins Geller attorneys served as lead counsel for a class of investors that purchased AT&T common stock. The case charged defendants AT&T and its former Chairman and CEO, C. Michael Armstrong, with violations of the federal securities laws in connection with AT&T's April 2000 initial public offering of its wireless tracking stock, one of the largest IPOs in American history. After two weeks of trial, and on the eve of scheduled testimony by Armstrong and infamous telecom analyst Jack Grubman, defendants agreed to settle the case for $100 million. In granting approval of the settlement, the court stated the following about the Robbins Geller attorneys handling the case:

> Lead Counsel are highly skilled attorneys with great experience in prosecuting complex securities action[s], and their professionalism and diligence displayed during [this] litigation substantiates this characterization. The Court notes that Lead Counsel displayed excellent lawyering skills through their consistent preparedness during court proceedings, arguments and the trial, and their well-written and thoroughly researched submissions to the Court. Undoubtedly, the attentive and persistent effort of Lead Counsel was integral in achieving the excellent result for the Class.

*In re AT&T Corp. Sec. Litig.*, MDL No. 1399, 2005 U.S. Dist. LEXIS 46144, at *28-*29 (D.N.J. Apr. 25, 2005), *aff'd*, 455 F.3d 160 (3d Cir. 2006).

- ***In re Dollar Gen. Corp. Sec. Litig.***, No. 01-CV-00388 (M.D. Tenn.). Robbins Geller attorneys served as lead counsel in this case in which the Firm recovered $172.5 million for investors. The *Dollar General* settlement was the largest shareholder class action recovery ever in Tennessee.

- ***Carpenters Health & Welfare Fund v. Coca-Cola Co.***, No. 00-CV-2838 (N.D. Ga.). As co-lead counsel representing Coca-Cola shareholders, Robbins Geller attorneys obtained a recovery of $137.5 million after nearly eight years of litigation. Robbins Geller attorneys traveled to three continents to uncover the evidence that ultimately resulted in the settlement of this hard-fought litigation. The case concerned Coca-Cola's shipping of excess concentrate at the end of financial reporting periods for the sole purpose of meeting analyst earnings expectations, as well as the company's failure to properly account for certain impaired foreign bottling assets.

- ***Schwartz v. TXU Corp.***, No. 02-CV-2243 (N.D. Tex.). As co-lead counsel, Robbins Geller attorneys obtained a recovery of over $149 million for a class of purchasers of TXU securities. The recovery compensated class members for damages they incurred as a result of their purchases of TXU securities at inflated prices. Defendants had inflated the price of these securities by concealing the fact that TXU's operating earnings were declining due to a deteriorating gas pipeline and the failure of the company's European operations.

- *In re Doral Fin. Corp. Sec. Litig.*, 05 MDL No. 1706 (S.D.N.Y.).  In July 2007, the Honorable Richard Owen of the Southern District of New York approved the $129 million settlement, finding in his order:

> The services provided by Lead Counsel [Robbins Geller] were efficient and highly successful, resulting in an outstanding recovery for the Class without the substantial expense, risk and delay of continued litigation.  Such efficiency and effectiveness supports the requested fee percentage.
>
> Cases brought under the federal securities laws are notably difficult and notoriously uncertain. . . .  Despite the novelty and difficulty of the issues raised, Lead Plaintiffs' counsel secured an excellent result for the Class.
>
> . . . Based upon Lead Plaintiff's counsel's diligent efforts on behalf of the Class, as well as their skill and reputations, Lead Plaintiff's counsel were able to negotiate a very favorable result for the Class. . . .  The ability of [Robbins Geller] to obtain such a favorable partial settlement for the Class in the face of such formidable opposition confirms the superior quality of their representation . . . .

  *In re Doral Fin. Corp. Sec. Litig.*, No. 1:05-md-01706, Order at 4-5 (S.D.N.Y. July 17, 2007).

- *In re Exxon Valdez*, No. A89 095 Civ. (D. Alaska), and *In re Exxon Valdez Oil Spill Litig.*, No. 3 AN 89 2533 (Alaska Super. Ct., 3d Jud. Dist.).  Robbins Geller attorneys served on the Plaintiffs' Coordinating Committee and Plaintiffs' Law Committee in this massive litigation resulting from the Exxon Valdez oil spill in Alaska in March 1989.  The jury awarded hundreds of millions in compensatory damages, as well as $5 billion in punitive damages (the latter were later reduced by the U.S. Supreme Court to $507 million).

- *Mangini v. R.J. Reynolds Tobacco Co.*, No. 939359 (Cal. Super. Ct., San Francisco Cty.).  In this case, R.J. Reynolds admitted that "the *Mangini* action, and the way that it was vigorously litigated, was an early, significant and unique driver of the overall legal and social controversy regarding underage smoking that led to the decision to phase out the Joe Camel Campaign."

- *Does I v. The Gap, Inc.*, No. 01 0031 (D. N. Mar. I.).  In this groundbreaking case, Robbins Geller attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top U.S. retailers such as The Gap, Target and J.C. Penney.  In the first action of its kind, Robbins Geller attorneys pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort Claims Act, and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan.  This case was a companion to two other actions: *Does I v. Advance Textile Corp.*, No. 99 0002 (D. N. Mar. I.), which alleged overtime violations by the garment factories under the Fair Labor Standards Act and local labor law, and *UNITE v. The Gap, Inc.*, No. 300474 (Cal. Super. Ct., San Francisco Cty.), which alleged violations of California's Unfair Practices Law by the U.S. retailers.  These actions resulted in a settlement of approximately $20 million that included a comprehensive monitoring program to address past violations by the factories and prevent future ones.  The members of the litigation team were honored as Trial Lawyers of the Year by the Trial Lawyers for Public Justice in recognition of the team's efforts in bringing about the precedent-setting settlement of the actions.

- *Hall v. NCAA (Restricted Earnings Coach Antitrust Litigation)*, No. 94-2392 (D. Kan.).  Robbins

Geller attorneys were lead counsel and lead trial counsel for one of three classes of coaches in these consolidated price-fixing actions against the National Collegiate Athletic Association. On May 4, 1998, the jury returned verdicts in favor of the three classes for more than $70 million.

- **In re Prison Realty Sec. Litig.**, No. 3:99-0452 (M.D. Tenn.). Robbins Geller attorneys served as lead counsel for the class, obtaining a $105 million recovery.

- **In re Honeywell Int'l, Inc. Sec. Litig.**, No. 00-cv-03605 (D.N.J.). Robbins Geller attorneys served as lead counsel for a class of investors that purchased Honeywell common stock. The case charged Honeywell and its top officers with violations of the federal securities laws, alleging the defendants made false public statements concerning Honeywell's merger with Allied Signal, Inc. and that defendants falsified Honeywell's financial statements. After extensive discovery, Robbins Geller attorneys obtained a $100 million settlement for the class.

- **Schwartz v. Visa Int'l**, No. 822404-4 (Cal. Super. Ct., Alameda Cty.). After years of litigation and a six-month trial, Robbins Geller attorneys won one of the largest consumer protection verdicts ever awarded in the United States. Robbins Geller attorneys represented California consumers in an action against Visa and MasterCard for intentionally imposing and concealing a fee from their cardholders. The court ordered Visa and MasterCard to return $800 million in cardholder losses, which represented 100% of the amount illegally taken, plus 2% interest. In addition, the court ordered full disclosure of the hidden fee.

- **Thompson v. Metro. Life Ins. Co.**, No. 00-cv-5071 (S.D.N.Y.). Robbins Geller attorneys served as lead counsel and obtained $145 million for the class in a settlement involving racial discrimination claims in the sale of life insurance.

- **In re Prudential Ins. Co. of Am. Sales Practices Litig.**, MDL No. 1061 (D.N.J.). In one of the first cases of its kind, Robbins Geller attorneys obtained a settlement of $4 billion for deceptive sales practices in connection with the sale of life insurance involving the "vanishing premium" sales scheme.

## Precedent-Setting Decisions

Robbins Geller attorneys operate at the vanguard of complex class action of litigation. Our work often changes the legal landscape, resulting in an environment that is more-favorable for obtaining recoveries for our clients.

- **Alaska Electrical Pension Fund v. Asar**, No. 17-50162 (5th Cir.). In August 2018, Robbins Geller attorneys scored a significant win in the Fifth Circuit when the court ruled in favor of lead plaintiff, Alaska Electrical Pension Fund. Last January, the district court dismissed the case on the grounds that a strong inference of scienter had not been sufficiently pled. Working with Robbins Geller attorneys, the Pension Fund went above and beyond in an effort to protect the retirement savings of its thousands of hard-working participants and of the class that it represents by appealing the case to the Fifth Circuit after the district court's dismissal. Following appellate briefing and oral argument, the court reversed the dismissal, concluding that as to Hanger and its CFO, the case "support[s] a strong inference of scienter."

- **Stoyas v. Toshiba Corporation**, No. 16-56058 (9th Cir.). In July 2018, the Ninth Circuit ruled in plaintiffs' favor in the *Toshiba Corporation* securities class action. Following appellate briefing and oral argument by Robbins Geller attorneys, a three-judge Ninth Circuit panel reversed the district court's prior dismissal in a unanimous, 36-page opinion, stating "that the Exchange Act could

Case 1:16-cv-01031-TSE-MSN Document 453 Filed 04/26/19 Page 60 of 158 PageID# 8628

apply to the Toshiba ADR transactions, as domestic transactions in securities [are] not registered on an exchange." Additionally, the court held that "Toshiba ADRs were 'securities' under the Exchange Act." In adopting the Second and Third Circuits' "irrevocable liability" test, the panel further concluded that "plaintiffs must be allowed to amend their complaint to allege that the purchase of Toshiba ADRs on the over-the-counter market was a domestic purchase, and that the alleged fraud was 'in connection with' the purchase."

- *Cyan, Inc. v. Beaver County Employees Retirement Fund*, No. 15-1439 (U.S.). In March 2018, the Supreme Court ruled in favor of investors represented by Robbins Geller, holding that state courts continue to have jurisdiction over class actions asserting violations of the Securities Act of 1933. The Court's ruling secures investors' ability to bring 1933 Act actions when companies fail to make full and fair disclosure of relevant information in offering documents. The Court confirmed that the Securities Litigation Uniform Standards Act of 1998 was designed to preclude securities class actions asserting violations of state law – not to preclude securities actions asserting federal law violations brought in state courts.

- *Mineworkers' Pension Scheme v. First Solar Inc.*, No. 15-17282 (9th Cir.). In January 2018, the Ninth Circuit upheld the district court's denial of defendants' motion for summary judgment, agreeing with plaintiffs that the test for loss causation in the Ninth Circuit is a general "proximate cause test," and rejecting the more stringent revelation of the fraudulent practices standard advocated by the defendants. The opinion is a significant victory for investors, as it forecloses defendants' ability to immunize themselves from liability simply by refusing to publicly acknowledge their fraudulent conduct.

- *In re Quality Systems, Inc. Sec. Litig.*, No. 15-55173 (9th Cir.). In July 2017, Robbins Geller's Appellate Practice Group scored a significant win in the Ninth Circuit in the *Quality Systems* securities class action. On appeal, a three-judge Ninth Circuit panel unanimously reversed the district court's prior dismissal of the action against Quality Systems and remanded the case to the district court for further proceedings. The decision addressed an issue of first impression concerning "mixed" future and present-tense misstatements. The appellate panel explained that "non-forward-looking portions of mixed statements are not eligible for the safe harbor provisions of the PSLRA . . . . Defendants made a number of mixed statements that included projections of growth in revenue and earnings based on the state of QSI's sales pipeline." The panel then held *both* the non-forward-looking and forward-looking statements false and misleading and made with scienter, deeming them actionable. Later, although defendants sought rehearing by the Ninth Circuit sitting *en banc*, the circuit court denied their petition.

- *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, No. 13-435 (U.S.). In March 2015, the Supreme Court ruled in favor of investors represented by Robbins Geller that investors asserting a claim under §11 of the Securities Act of 1933 with respect to a misleading statement of opinion do not, as defendant Omnicare had contended, have to prove that the statement was subjectively disbelieved when made. Rather, the Court held that a statement of opinion may be actionable either because it was not believed, or because it lacked a reasonable basis in fact. This decision is significant in that it resolved a conflict among the federal circuit courts and expressly overruled the Second Circuit's widely followed, more stringent pleading standard for §11 claims involving statements of opinion. The Supreme Court remanded the case back to the district court for determination under the newly articulated standard. In August of 2016, upon remand, the district court applied the Supreme Court's new test and denied defendants' motion to dismiss in full.

- *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012). In a securities fraud action involving mortgage-backed securities, the Second Circuit rejected the concept of "tranche" standing and found that a lead plaintiff has class standing to pursue claims on behalf of purchasers of securities that were backed by pools of mortgages originated by the same lenders who had originated mortgages backing the lead plaintiff's securities. The court noted that, given those common lenders, the lead plaintiff's claims as to its purchases implicated "the same set of concerns" that purchasers in several of the other offerings possessed. The court also rejected the notion that the lead plaintiff lacked standing to represent investors in different tranches.

- *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694 (9th Cir. 2012). The panel reversed in part and affirmed in part the dismissal of investors' securities fraud class action alleging violations of §§10(b), 20(a), and 20A of the Securities Exchange Act of 1934 and SEC Rule 10b-5 in connection with a restatement of financial results of the company in which the investors had purchased stock.

  The panel held that the third amended complaint adequately pleaded the §10(b), §20A and Rule 10b-5 claims. Considering the allegations of scienter holistically, as the U.S. Supreme Court directed in *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S 27, 48-49 (2011), the panel concluded that the inference that the defendant company and its chief executive officer and former chief financial officer were deliberately reckless as to the truth of their financial reports and related public statements following a merger was at least as compelling as any opposing inference.

- *Fox v. JAMDAT Mobile, Inc.*, 185 Cal. App. 4th 1068 (2010). Concluding that Delaware's shareholder ratification doctrine did not bar the claims, the California Court of Appeal reversed dismissal of a shareholder class action alleging breach of fiduciary duty in a corporate merger.

- *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774 (3d Cir. 2009). The Third Circuit flatly rejected defense contentions that where relief is sought under §11 of the Securities Act of 1933, which imposes liability when securities are issued pursuant to an incomplete or misleading registration statement, class certification should depend upon findings concerning market efficiency and loss causation.

- *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S 27 (2011), *aff'g* 585 F.3d 1167 (9th Cir. 2009). In a securities fraud action involving the defendants' failure to disclose a possible link between the company's popular cold remedy and a life-altering side effect observed in some users, the U.S. Supreme Court unanimously affirmed the Ninth Circuit's (a) rejection of a bright-line "statistical significance" materiality standard, and (b) holding that plaintiffs had successfully pleaded a strong inference of the defendants' scienter.

- *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221 (5th Cir. 2009). Aided by former U.S. Supreme Court Justice O'Connor's presence on the panel, the Fifth Circuit reversed a district court order denying class certification and also reversed an order granting summary judgment to defendants. The court held that the district court applied an incorrect fact-for-fact standard of loss causation, and that genuine issues of fact on loss causation precluded summary judgment.

- *In re F5 Networks, Inc., Derivative Litig.*, 207 P.3d 433 (Wash. 2009). In a derivative action alleging unlawful stock option backdating, the Supreme Court of Washington ruled that shareholders need not make a pre-suit demand on the board of directors where this step would be futile, agreeing with plaintiffs that favorable Delaware case law should be followed as persuasive authority.

- ***Lormand v. US Unwired, Inc.***, 565 F.3d 228 (5th Cir. 2009). In a rare win for investors in the Fifth Circuit, the court reversed an order of dismissal, holding that safe harbor warnings were not meaningful when the facts alleged established a strong inference that defendants knew their forecasts were false. The court also held that plaintiffs sufficiently alleged loss causation.

- ***Institutional Inv'rs Grp. v. Avaya, Inc.***, 564 F.3d 242 (3d Cir. 2009). In a victory for investors in the Third Circuit, the court reversed an order of dismissal, holding that shareholders pled with particularity why the company's repeated denials of price discounts on products were false and misleading when the totality of facts alleged established a strong inference that defendants knew their denials were false.

- ***Alaska Elec. Pension Fund v. Pharmacia Corp.***, 554 F.3d 342 (3d Cir. 2009). The Third Circuit held that claims filed for violation of §10(b) of the Securities Exchange Act of 1934 were timely, adopting investors' argument that because scienter is a critical element of the claims, the time for filing them cannot begin to run until the defendants' fraudulent state of mind should be apparent.

- ***Rael v. Page***, 222 P.3d 678 (N.M. Ct. App. 2009). In this shareholder class and derivative action, Robbins Geller attorneys obtained an appellate decision reversing the trial court's dismissal of the complaint alleging serious director misconduct in connection with the merger of SunCal Companies and Westland Development Co., Inc., a New Mexico company with large and historic landholdings and other assets in the Albuquerque area. The appellate court held that plaintiff's claims for breach of fiduciary duty were direct, not derivative, because they constituted an attack on the validity or fairness of the merger and the conduct of the directors. Although New Mexico law had not addressed this question directly, at the urging of the Firm's attorneys, the court relied on Delaware law for guidance, rejecting the "special injury" test for determining the direct versus derivative inquiry and instead applying more recent Delaware case law.

- ***Lane v. Page***, No. 06-cv-1071 (D.N.M. 2012). In May 2012, while granting final approval of the settlement in the federal component of the Westland cases, Judge Browning in the District of New Mexico commented:

  > Class Counsel are highly skilled and specialized attorneys who use their substantial experience and expertise to prosecute complex securities class actions. In possibly one of the best known and most prominent recent securities cases, Robbins Geller served as sole lead counsel – *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (S.D. Tex.). *See* Report at 3. The Court has previously noted that the class would "receive high caliber legal representation" from class counsel, and throughout the course of the litigation the Court has been impressed with the quality of representation on each side. *Lane v. Page*, 250 F.R.D. at 647.

  *Lane v. Page*, 862 F. Supp. 2d 1182, 1253-54 (D.N.M. 2012).

  In addition, Judge Browning stated, "'Few plaintiffs' law firms could have devoted the kind of time, skill, and financial resources over a five-year period necessary to achieve the pre- and post-Merger benefits obtained for the class here.' . . . [Robbins Geller is] both skilled and experienced, and used those skills and experience for the benefit of the class [Robbins Geller is] both skilled and experienced, and used those skills and experience for the benefit of the class." *Id*. at 1254.

- ***Luther v. Countrywide Home Loans Servicing LP***, 533 F.3d 1031 (9th Cir. 2008). In a case of first impression, the Ninth Circuit held that the Securities Act of 1933's specific non-removal features had not been trumped by the general removal provisions of the Class Action Fairness Act of 2005.

- ***In re Gilead Scis. Sec. Litig.***, 536 F.3d 1049 (9th Cir. 2008). The Ninth Circuit upheld defrauded investors' loss causation theory as plausible, ruling that a limited temporal gap between the time defendants' misrepresentation was publicly revealed and the subsequent decline in stock value was reasonable where the public had not immediately understood the impact of defendants' fraud.

- ***In re WorldCom Sec. Litig.***, 496 F.3d 245 (2d Cir. 2007). The Second Circuit held that the filing of a class action complaint tolls the limitations period for all members of the class, including those who choose to opt out of the class action and file their own individual actions without waiting to see whether the district court certifies a class – reversing the decision below and effectively overruling multiple district court rulings that *American Pipe* tolling did not apply under these circumstances.

- ***In re Merck & Co. Sec., Derivative & ERISA Litig.***, 493 F.3d 393 (3d Cir. 2007). In a shareholder derivative suit appeal, the Third Circuit held that the general rule that discovery may not be used to supplement demand-futility allegations does not apply where the defendants enter a voluntary stipulation to produce materials relevant to demand futility without providing for any limitation as to their use. In April 2007, the Honorable D. Brooks Smith praised Robbins Geller partner Joe Daley's efforts in this litigation:

  > Thank you very much Mr. Daley and a thank you to all counsel. As Judge Cowen mentioned, this was an exquisitely well-briefed case; it was also an extremely well-argued case, and we thank counsel for their respective jobs here in the matter, which we will take under advisement. Thank you.

  *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, No. 06-2911, Transcript at 35:37-36:00 (3d Cir. Apr. 12, 2007).

- ***Alaska Elec. Pension Fund v. Brown***, 941 A.2d 1011 (Del. 2007). The Supreme Court of Delaware held that the Alaska Electrical Pension Fund, for purposes of the "corporate benefit" attorney-fee doctrine, was presumed to have caused a substantial increase in the tender offer price paid in a "going private" buyout transaction. The Court of Chancery originally ruled that Alaska's counsel, Robbins Geller, was not entitled to an award of attorney fees, but Delaware's high court, in its published opinion, reversed and remanded for further proceedings.

- ***Crandon Capital Partners v. Shelk***, 157 P.3d 176 (Or. 2007). Oregon's Supreme Court ruled that a shareholder plaintiff in a derivative action may still seek attorney fees even if the defendants took actions to moot the underlying claims. The Firm's attorneys convinced Oregon's highest court to take the case, and reverse, despite the contrary position articulated by both the trial court and the Oregon Court of Appeals.

- ***In re Qwest Commc'ns Int'l***, 450 F.3d 1179 (10th Cir. 2006). In a case of first impression, the Tenth Circuit held that a corporation's deliberate release of purportedly privileged materials to governmental agencies was not a "selective waiver" of the privileges such that the corporation could refuse to produce the same materials to non-governmental plaintiffs in private securities fraud litigation.

- ***In re Guidant S'holders Derivative Litig.***, 841 N.E.2d 571 (Ind. 2006).  Answering a certified question from a federal court, the Supreme Court of Indiana unanimously held that a pre-suit demand in a derivative action is excused if the demand would be a futile gesture.  The court adopted a "demand futility" standard and rejected defendants' call for a "universal demand" standard that might have immediately ended the case.

- ***Denver Area Meat Cutters v. Clayton***, 209 S.W.3d 584 (Tenn. Ct. App. 2006).  The Tennessee Court of Appeals rejected an objector's challenge to a class action settlement arising out of Warren Buffet's 2003 acquisition of Tennessee-based Clayton Homes.  In their effort to secure relief for Clayton Homes stockholders, the Firm's attorneys obtained a temporary injunction of the Buffet acquisition for six weeks in 2003 while the matter was litigated in the courts.  The temporary halt to Buffet's acquisition received national press attention.

- ***DeJulius v. New Eng. Health Care Emps. Pension Fund***, 429 F.3d 935 (10th Cir. 2005).  The Tenth Circuit held that the multi-faceted notice of a $50 million settlement in a securities fraud class action had been the best notice practicable under the circumstances, and thus satisfied both constitutional due process and Rule 23 of the Federal Rules of Civil Procedure.

- ***In re Daou Sys.***, 411 F.3d 1006 (9th Cir. 2005).  The Ninth Circuit sustained investors' allegations of accounting fraud and ruled that loss causation was adequately alleged by pleading that the value of the stock they purchased declined when the issuer's true financial condition was revealed.

- ***Barrie v. Intervoice-Brite, Inc.***, 397 F.3d 249 (5th Cir.), *reh'g denied and opinion modified*, 409 F.3d 653 (5th Cir. 2005).  The Fifth Circuit upheld investors' accounting-fraud claims, holding that fraud is pled as to both defendants when one knowingly utters a false statement and the other knowingly fails to correct it, even if the complaint does not specify who spoke and who listened.

- ***City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.***, 399 F.3d 651 (6th Cir. 2005).  The Sixth Circuit held that a statement regarding objective data supposedly supporting a corporation's belief that its tires were safe was actionable where jurors could have found a reasonable basis to believe the corporation was aware of undisclosed facts seriously undermining the statement's accuracy.

- ***Ill. Mun. Ret. Fund v. Citigroup, Inc.***, 391 F.3d 844 (7th Cir. 2004).  The Seventh Circuit upheld a district court's decision that the Illinois Municipal Retirement Fund was entitled to litigate its claims under the Securities Act of 1933 against WorldCom's underwriters before a state court rather than before the federal forum sought by the defendants.

- ***Nursing Home Pension Fund, Local 144 v. Oracle Corp.***, 380 F.3d 1226 (9th Cir. 2004).  The Ninth Circuit ruled that defendants' fraudulent intent could be inferred from allegations concerning their false representations, insider stock sales and improper accounting methods.

- ***Southland Sec. Corp. v. INSpire Ins. Sols. Inc.***, 365 F.3d 353 (5th Cir. 2004).  The Fifth Circuit sustained allegations that an issuer's CEO made fraudulent statements in connection with a contract announcement.

- ***Smith v. Am. Family Mut. Ins. Co.***, 289 S.W.3d 675 (Mo. Ct. App. 2009).  Capping nearly a decade of hotly contested litigation, the Missouri Court of Appeals reversed the trial court's judgment notwithstanding the verdict for auto insurer American Family and reinstated a unanimous jury verdict for the plaintiff class.

- **Troyk v. Farmers Grp., Inc.**, 171 Cal. App. 4th 1305 (2009). The California Court of Appeal held that Farmers Insurance's practice of levying a "service charge" on one-month auto insurance policies, without specifying the charge in the policy, violated California's Insurance Code.

- **Lebrilla v. Farmers Grp., Inc.**, 119 Cal. App. 4th 1070 (2004). Reversing the trial court, the California Court of Appeal ordered class certification of a suit against Farmers, one of the largest automobile insurers in California, and ruled that Farmers' standard automobile policy requires it to provide parts that are as good as those made by vehicle's manufacturer. The case involved Farmers' practice of using inferior imitation parts when repairing insureds' vehicles.

- **In re Monumental Life Ins. Co.**, 365 F.3d 408, 416 (5th Cir. 2004). The Fifth Circuit Court of Appeals reversed a district court's denial of class certification in a case filed by African-Americans seeking to remedy racially discriminatory insurance practices. The Fifth Circuit held that a monetary relief claim is viable in a Rule 23(b)(2) class if it flows directly from liability to the class as a whole and is capable of classwide "'computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances.'"

- **Dent, et al. v. National Football League**, No. 15-15143 (9th Cir.). In September 2018, the United States Court of Appeals for the Ninth Circuit issued an important decision reversing the district court's previous dismissal of the *Dent v. National Football League* litigation, concluding that the complaint brought by NFL Hall of Famer Richard Dent and others should not be dismissed on labor-law preemption grounds. The case was remanded to the district court for further proceedings.

- **Kwikset Corp. v. Superior Court**, 51 Cal. 4th 310 (2011). In a leading decision interpreting the scope of Proposition 64's new standing requirements under California's Unfair Competition Law (UCL), the California Supreme Court held that consumers alleging that a manufacturer has misrepresented its product have "lost money or property" within the meaning of the initiative, and thus have standing to sue under the UCL, if they "can truthfully allege that they were deceived by a product's label into spending money to purchase the product, and would not have purchased it otherwise." *Id*. at 317. *Kwikset* involved allegations, proven at trial, that defendants violated California's "Made in the U.S.A." statute by representing on their labels that their products were "Made in U.S.A." or "All-American Made" when, in fact, the products were substantially made with foreign parts and labor.

- **Safeco Ins. Co. of Am. v. Superior Court**, 173 Cal. App. 4th 814 (2009). In a class action against auto insurer Safeco, the California Court of Appeal agreed that the plaintiff should have access to discovery to identify a new class representative after her standing to sue was challenged.

- **Consumer Privacy Cases**, 175 Cal. App. 4th 545 (2009). The California Court of Appeal rejected objections to a nationwide class action settlement benefiting Bank of America customers.

- **Koponen v. Pac. Gas & Elec. Co.**, 165 Cal. App. 4th 345 (2008). The Firm's attorneys obtained a published decision reversing the trial court's dismissal of the action, and holding that the plaintiff's claims for damages arising from the utility's unauthorized use of rights-of-way or easements obtained from the plaintiff and other landowners were not barred by a statute limiting the authority of California courts to review or correct decisions of the California Public Utilities Commission.

- *Sanford v. MemberWorks, Inc.*, 483 F.3d 956 (9th Cir. 2007). In a telemarketing-fraud case, where the plaintiff consumer insisted she had never entered the contractual arrangement that defendants said bound her to arbitrate individual claims to the exclusion of pursuing class claims, the Ninth Circuit reversed an order compelling arbitration – allowing the plaintiff to litigate on behalf of a class.

- *Ritt v. Billy Blanks Enters.*, 870 N.E.2d 212 (Ohio Ct. App. 2007). In the Ohio analog to the *West* case, the Ohio Court of Appeals approved certification of a class of Ohio residents seeking relief under Ohio's consumer protection laws for the same telemarketing fraud.

- *Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n*, 148 P.3d 1179 (Haw. 2006). The Supreme Court of Hawaii ruled that claims of unfair competition were not subject to arbitration and that claims of tortious interference with prospective economic advantage were adequately alleged.

- *Branick v. Downey Sav. & Loan Ass'n*, 39 Cal. 4th 235 (2006). Robbins Geller attorneys were part of a team of lawyers that briefed this case before the Supreme Court of California. The court issued a unanimous decision holding that new plaintiffs may be substituted, if necessary, to preserve actions pending when Proposition 64 was passed by California voters in 2004. Proposition 64 amended California's Unfair Competition Law and was aggressively cited by defense lawyers in an effort to dismiss cases after the initiative was adopted.

- *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457 (2006). The California Court of Appeal reversed the trial court, holding that plaintiff's theories attacking a variety of allegedly inflated mortgage-related fees were actionable.

- *West Corp. v. Superior Court*, 116 Cal. App. 4th 1167 (2004). The California Court of Appeal upheld the trial court's finding that jurisdiction in California was appropriate over the out-of-state corporate defendant whose telemarketing was aimed at California residents. Exercise of jurisdiction was found to be in keeping with considerations of fair play and substantial justice.

- *Kruse v. Wells Fargo Home Mortg., Inc.*, 383 F.3d 49 (2d Cir. 2004), and *Santiago v. GMAC Mortg. Grp., Inc.*, 417 F.3d 384 (3d Cir. 2005). In two groundbreaking federal appellate decisions, the Second and Third Circuits each ruled that the Real Estate Settlement Practices Act prohibits marking up home loan-related fees and charges.

## Additional Judicial Commendations

Robbins Geller attorneys have been praised by countless judges all over the country for the quality of their representation in class-action lawsuits. In addition to the judicial commendations set forth in the Prominent Cases and Precedent-Setting Decisions sections, judges have acknowledged the successful results of the Firm and its attorneys with the following plaudits:

- On December 20, 2018, at the final approval hearing for the settlement, the court lauded Robbins Geller's attorneys and their work: "I've been very impressed with the level of lawyering in the case . . . and with the level of briefing . . . and I wanted to express my appreciation for that and for the work that everyone has done here." The court concluded, "your clients were all blessed to have you, [and] not just because of the outcome." *Duncan v. Joy Global, Inc.*, No. 16-CV-1229, Transcript at 20-21 (E.D. Wis. Dec. 20, 2018).

- On November 9, 2018, in granting final approval of the settlement, the Honorable Jesse M. Furman commented: "[Robbins Geller] did an extraordinary job here. . . . [I]t is fair to say [this was] probably the most complicated case I have had since I have been on the bench. . . . I cannot really imagine how complicated it would have been if I didn't have counsel who had done as admirable [a] job in briefing it and arguing as you have done. You have in my view done an extraordinary service to the class. . . . I think you have done an extraordinary job and deserve thanks and commendation for that." *Alaska Electrical Pension Fund v. Bank of America Corp.*, No. 1:14-cv-07126-JMF-OTW, Transcript at 27-28 (S.D.N.Y. Nov. 9, 2018).

- On September 12, 2018, at the final approval hearing of the settlement, the Honorable William H. Orrick of the Northern District of California praised Robbins Geller's "high-quality lawyering" in a case that "involved complicated discovery and complicated and novel legal issues," resulting in an "excellent" settlement for the class. The "lawyering . . . was excellent" and the case was "very well litigated." *In re Lidoderm Antitrust Litig.*, No. 14-MDL-02521-WHO, Transcript at 11, 14, 22 (N.D. Cal. Sept. 12, 2018).

- On March 31, 2017, in granting final approval of the settlement, the Honorable Gonzalo P. Curiel hailed the settlement as "extraordinary" and "all the more exceptional when viewed in light of the risk" of continued litigation. The court further commended Robbins Geller for prosecuting the case on a *pro bono* basis: "Class Counsel's exceptional decision to provide nearly seven years of legal services to Class Members on a *pro bono* basis evidences not only a lack of collusion, but also that Class Counsel are in fact representing the best interests of Plaintiffs and the Class Members in this Settlement. Instead of seeking compensation for fees and costs that they would otherwise be entitled to, Class Counsel have acted to allow maximum recovery to Plaintiffs and Class Members. Indeed, that Eligible Class Members may receive recovery of 90% or greater is a testament to Class Counsel's representation and dedication to act in their clients' best interest." In addition, at the final approval hearing, the court commented that "this is a case that has been litigated – if not fiercely, zealously throughout." *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1302, 1312 (S.D. Cal. 2017); *Low v. Trump University LLC and Donald J. Trump*, No. 10-cv-0940 GPC-WVG, and *Cohen v. Donald J. Trump*, No. 13-cv-2519-GPC-WVG, Transcript at 7 (S.D. Cal. Mar. 30, 2017).

- In January 2017, at the final approval hearing, the Honorable Kevin H. Sharp of the Middle District of Tennessee commended Robbins Geller attorneys, stating: "It was complicated, it was drawn out, and a lot of work clearly went into this [case] . . . . I think there is some benefit to the shareholders that are above and beyond money, a benefit to the company above and beyond money that changed hands." *In re Community Health Sys., Inc. S'holder Derivative Litig.*, No. 3:11-cv-00489, Transcript at 10 (M.D. Tenn. Jan. 17, 2017).

- In November 2016, at the final approval hearing, the Honorable James G. Carr stated: "I kept throwing the case out, and you kept coming back. . . . And it's both remarkable and noteworthy and a credit to you and your firm that you did so. . . . [Y]ou persuaded the Sixth Circuit. As we know, that's no mean feat at all." Judge Carr further complimented the Firm, noting that it "goes without question or even saying" that Robbins Geller is very well-known nationally and that the settlement is an excellent result for the class. He succinctly concluded that "given the tenacity and the time and the effort that [Robbins Geller] lawyers put into [the case]" makes the class "a lot better off." *Plumbers & Pipefitters Nat'l Pension Fund v. Burns*, No. 3:05-cv-07393-JGC, Transcript at 4, 10, 14, 17 (N.D. Ohio Nov. 18, 2016).

- In September 2016, in granting final approval of the settlement, Judge Arleo commended the

"vigorous and skilled efforts" of Robbins Geller attorneys for obtaining "an excellent recovery." Judge Arleo added that the settlement was reached after "contentious, hard-fought litigation" that ended with "a very, very good result for the class" in a "risky case." *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, No. 2:12-cv-05275-MCA-LDW, Transcript of Hearing at 18-20 (D.N.J. Sept. 28, 2016).

- In August 2015, at the final approval hearing for the settlement, the Honorable Karen M. Humphreys praised Robbins Geller's "extraordinary efforts" and "excellent lawyering," noting that the settlement "really does signal that the best is yet to come for your clients and for your prodigious labor as professionals. . . . I wish more citizens in our country could have an appreciation of what this [settlement] truly represents." *Bennett v. Sprint Nextel Corp.*, No. 2:09-cv-02122-EFM-KMH, Transcript at 8, 25 (D. Kan. Aug. 12, 2015).

- In August 2015, the Honorable Judge Max O. Cogburn, Jr. noted that "plaintiffs' attorneys were able [to] achieve the big success early" in the case and obtained an "excellent result." The "extraordinary" settlement was because of "good lawyers . . . doing their good work." *Nieman v. Duke Energy Corp.*, No. 3:12-cv-456, Transcript at 21, 23, 30 (W.D.N.C. Aug. 12, 2015).

- In July 2015, in approving the settlement, the Honorable Douglas L. Rayes of the District of Arizona stated: "Settlement of the case during pendency of appeal for more than an insignificant amount is rare. The settlement here is substantial and provides favorable recovery for the settlement class under these circumstances." He continued, noting, "[a]s against the objective measures of . . . settlements [in] other similar cases, [the recovery] is on the high end." *Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, No. 2:06-cv-02674-DLR, Transcript at 8, 11 (D. Ariz. July 28, 2015).

- In June 2015, at the conclusion of the hearing for final approval of the settlement, the Honorable Susan Richard Nelson of the District of Minnesota noted that it was "a pleasure to be able to preside over a case like this," praising Robbins Geller in achieving "an outstanding [result] for [its] clients," as she was "very impressed with the work done on th[e] case." *In re St. Jude Med., Inc. Sec. Litig.*, No. 0:10-cv-00851-SRN-TNL, Transcript at 7 (D. Minn. June 12, 2015).

- In May 2015, at the fairness hearing on the settlement, the Honorable William G. Young noted that the case was "very well litigated" by Robbins Geller attorneys, adding that "I don't just say that as a matter of form. . . . I thank you for the vigorous litigation that I've been permitted to be a part of." *Courtney v. Avid Tech., Inc.*, No. 1:13-cv-10686-WGY, Transcript at 8-9 (D. Mass. May 12, 2015).

- In January 2015, the Honorable William J. Haynes, Jr. of the Middle District of Tennessee described the settlement as a "highly favorable result achieved for the Class" through Robbins Geller's "diligent prosecution . . . [and] quality of legal services." The settlement represents the third largest securities recovery ever in the Middle District of Tennessee and the largest in more than a decade. *Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*, No. 3:09-cv-00882, 2015 U.S. Dist. LEXIS 181943, at *6-*7 (M.D. Tenn. Jan. 16, 2015).

- In September 2014, in approving the settlement for shareholders, Vice Chancellor John W. Noble noted "[t]he litigation caused a substantial benefit for the class. It is unusual to see a $29 million recovery." Vice Chancellor Noble characterized the litigation as "novel" and "not easy," but "[t]he lawyers took a case and made something of it." The Court commended Robbins Geller's efforts in obtaining this result: "The standing and ability of counsel cannot be questioned" and "the benefits achieved by plaintiffs' counsel in this case cannot be ignored." *In re Gardner Denver, Inc. S'holder Litig.*, No. 8505-VCN, Transcript at 26-28 (Del. Ch. Sept. 3, 2014).

- In May 2014, at the conclusion of the hearing for final approval of the settlement, the Honorable Elihu M. Berle stated: "I would finally like to congratulate counsel on their efforts to resolve this case, on excellent work – it was the best interest of the class – and to the exhibition of professionalism. So I do thank you for all your efforts." *Liberty Mutual Overtime Cases*, No. JCCP 4234, Transcript at 20:1-5 (Cal. Super. Ct., Los Angeles Cty. May 29, 2014).

- In March 2014, Ninth Circuit Judge J. Clifford Wallace (presiding) expressed the gratitude of the court: "Thank you. I want to especially thank counsel for this argument. This is a very complicated case and I think we were assisted no matter how we come out by competent counsel coming well prepared. . . . It was a model of the type of an exercise that we appreciate. Thank you very much for your work . . . you were of service to the court." *Eclectic Properties East, LLC v. The Marcus & Millichap Co.*, No. 12-16526, Transcript (9th Cir. Mar. 14, 2014).

- In February 2014, in approving a settlement, Judge Edward M. Chen noted the "very substantial risks" in the case and recognized Robbins Geller had performed "extensive work on the case." *In re VeriFone Holdings, Inc. Sec. Litig.*, No. C-07-6140, 2014 U.S. Dist. LEXIS 20044, at *5, *11-*12 (N.D. Cal. Feb. 18, 2014).

- In August 2013, in granting final approval of the settlement, the Honorable Richard J. Sullivan stated: "Lead Counsel is to be commended for this result: it expended considerable effort and resources over the course of the action researching, investigating, and prosecuting the claims, at significant risk to itself, and in a skillful and efficient manner, to achieve an outstanding recovery for class members. Indeed, the result – and the class's embrace of it – is a testament to the experience and tenacity Lead Counsel brought to bear." *City of Livonia Emps. Ret. Sys. v. Wyeth*, No. 07 Civ. 10329, 2013 U.S. Dist. LEXIS 113658, at *13 (S.D.N.Y. Aug. 7, 2013).

- In July 2013, in granting final approval of the settlement, the Honorable William H. Alsup stated that Robbins Geller did "excellent work in this case," and continued, "I look forward to seeing you on the next case." *Fraser v. Asus Comput. Int'l*, No. C 12-0652, Transcript at 12:2-3 (N.D. Cal. July 11, 2013).

- In June 2013, in certifying the class, U.S. District Judge James G. Carr recognized Robbins Geller's steadfast commitment to the class, noting that "plaintiffs, with the help of Robbins Geller, have twice successfully appealed this court's orders granting defendants' motion to dismiss." *Plumbers & Pipefitters Nat'l Pension Fund v. Burns*, 292 F.R.D. 515, 524 (N.D. Ohio 2013).

- In November 2012, in granting appointment of lead plaintiff, Chief Judge James F. Holderman commended Robbins Geller for its "substantial experience in securities class action litigation" and commented that the Firm "is recognized as 'one of the most successful law firms in securities class actions, if not the preeminent one, in the country.' *In re Enron Corp. Sec.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008) (Harmon, J.)." He continued further that, "'Robbins Geller attorneys are responsible for obtaining the largest securities fraud class action recovery ever [$**7.2** billion in *Enron*], as well as the largest recoveries in the Fifth, Sixth, Eighth, Tenth and Eleventh Circuits.'" *Bristol Cty. Ret. Sys. v. Allscripts Healthcare Sols., Inc.*, No. 12 C 3297, 2012 U.S. Dist. LEXIS 161441 at *21 (N.D. Ill. Nov. 9, 2012).

- In June 2012, in granting plaintiffs' motion for class certification, the Honorable Inge Prytz Johnson noted that other courts have referred to Robbins Geller as "'one of the most successful law firms in securities class actions . . . in the country.'" *Local 703, I.B. v. Regions Fin. Corp.*, 282 F.R.D. 607, 616 (N.D. Ala. 2012) (quoting *In re Enron Corp. Sec. Litig.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008)), *aff'd in part and vacated in part on other grounds*, 762 F.3d 1248 (11th Cir. 2014).

- In June 2012, in granting final approval of the settlement, the Honorable Barbara S. Jones commented that "class counsel's representation, from the work that I saw, appeared to me to be of the highest quality." *In re CIT Grp. Inc. Sec. Litig.*, No. 08 Civ. 6613, Transcript at 9:16-18 (S.D.N.Y. June 13, 2012).

- In March 2012, in granting certification for the class, Judge Robert W. Sweet referenced the *Enron* case, agreeing that Robbins Geller's "'clearly superlative litigating and negotiating skills'" give the Firm an "'outstanding reputation, experience, and success in securities litigation nationwide,'" thus, "'[t]he experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country.'" *Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 158 (S.D.N.Y. 2012).

- In March 2011, in denying defendants' motion to dismiss, Judge Richard Sullivan commented: "Let me thank you all. . . . [The motion] was well argued . . . and . . . well briefed . . . . I certainly appreciate having good lawyers who put the time in to be prepared . . . ." *Anegada Master Fund Ltd. v. PxRE Grp. Ltd.*, No. 08-cv-10584, Transcript at 83 (S.D.N.Y. Mar. 16, 2011).

- In January 2011, the court praised Robbins Geller attorneys: "They have gotten very good results for stockholders. . . . [Robbins Geller has] such a good track record." *In re Compellent Technologies, Inc. S'holder Litig.*, No. 6084-VCL, Transcript at 20-21 (Del. Ch. Jan. 13, 2011).

- In August 2010, in reviewing the settlement papers submitted by the Firm, Judge Carlos Murguia stated that Robbins Geller performed "a commendable job of addressing the relevant issues with great detail and in a comprehensive manner . . . . The court respects the [Firm's] experience in the field of derivative [litigation]." *Alaska Elec. Pension Fund v. Olofson*, No. 08-cv-02344-CM-JPO (D. Kan.) (Aug. 20, 2010 e-mail from court re: settlement papers).

- In June 2009, Judge Ira Warshawsky praised the Firm's efforts in *In re Aeroflex, Inc. S'holder Litig.*: "There is no doubt that the law firms involved in this matter represented in my opinion the cream of the crop of class action business law and mergers and acquisition litigators, and from a judicial point of view it was a pleasure working with them." *In re Aeroflex, Inc. S'holder Litig.*, No. 003943/07, Transcript at 25:14-18 (N.Y. Sup. Ct., Nassau Cty. June 30, 2009).

- In March 2009, in granting class certification, the Honorable Robert Sweet of the Southern District of New York commented in *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 74 (S.D.N.Y. 2009): "As to the second prong, the Specialist Firms have not challenged, in this motion, the qualifications, experience, or ability of counsel for Lead Plaintiff, [Robbins Geller], to conduct this litigation. Given [Robbins Geller's] substantial experience in securities class action litigation and the extensive discovery already conducted in this case, this element of adequacy has also been satisfied."

- In June 2008, the court commented, "Plaintiffs' lead counsel in this litigation, [Robbins Geller], has demonstrated its considerable expertise in shareholder litigation, diligently advocating the rights of Home Depot shareholders in this Litigation. [Robbins Geller] has acted with substantial skill and professionalism in representing the plaintiffs and the interests of Home Depot and its shareholders in prosecuting this case." *City of Pontiac General Employees' Ret. Sys. v. Langone*, No. 2006-122302, Findings of Fact in Support of Order and Final Judgment at 2 (Ga. Super. Ct., Fulton Cty. June 10, 2008).

- In a December 2006 hearing on the $50 million consumer privacy class action settlement in *Kehoe v. Fidelity Fed. Bank & Tr.*, No. 03-80593-CIV (S.D. Fla.), United States District Court Judge Daniel

T.K. Hurley said the following:

> First, I thank counsel. As I said repeatedly on both sides, we have been very, very fortunate. We have had fine lawyers on both sides. The issues in the case are significant issues. We are talking about issues dealing with consumer protection and privacy. Something that is increasingly important today in our society. . . . I want you to know I thought long and hard about this. I am absolutely satisfied that the settlement is a fair and reasonable settlement. . . . I thank the lawyers on both sides for the extraordinary effort that has been brought to bear here . . . .

*Kehoe v. Fidelity Fed. Bank & Tr.*, No. 03-80593-CIV, Transcript at 26, 28-29 (S.D. Fla. Dec. 7, 2006).

- In *Stanley v. Safeskin Corp.*, No. 99 CV 454 (S.D. Cal.), where Robbins Geller attorneys obtained $55 million for the class of investors, Judge Moskowitz stated:

> I said this once before, and I'll say it again. I thought the way that your firm handled this case was outstanding. This was not an easy case. It was a complicated case, and every step of the way, I thought they did a very professional job.

*Stanley v. Safeskin Corp.*, No. 99 CV 454, Transcript at 13 (S.D. Cal. May 25, 2004).

Case 3:21-cv-00444-DJN  Document 126-9  Filed 04/19/24  Page 321 of 586 PageID#
5509
Case 1:16-cv-01031-TSE-MSN  Document 453  Filed 04/26/19  Page 72 of 158 PageID# 8640

# ATTORNEY BIOGRAPHIES

## Mario Alba Jr. | Partner

Mario Alba is a partner in the Firm's Melville office.  He is a member of the Firm's Institutional Outreach Team, which provides advice to the Firm's institutional clients, including numerous public pension systems and Taft-Hartley funds throughout the United States, and consults with them on issues relating to corporate fraud in the U.S. securities markets, as well as corporate governance issues and shareholder litigation.  Some of Alba's institutional clients are currently involved in securities cases involving: BHP Billiton Limited ($50 million recovery – pending final approval), BRF S.A., Ryanair Holdings PLC, HCP, Inc., Iconix Brand Group, Advisory Board Company, Endo International PLC, Impax Laboratories, Inc., Super Micro Computer, Inc., Skechers USA, Inc. and Hertz Global Holdings, Inc.  Alba's institutional clients are also involved in certain antitrust actions, namely: *In re National Prescription Opiate Litigation*, *In re Epipen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation* and *Forth v. Walgreen Co.* Alba has served as lead counsel in numerous cases and is responsible for initiating, investigating, researching, and filing securities and consumer fraud class actions.  He has recovered millions of dollars in numerous actions, including cases against NBTY, Inc. ($16 million), OSI Pharmaceuticals ($9 million recovery) and PXRe Group, Ltd. ($5.9 million).  Alba has lectured at numerous institutional investor conferences throughout the United States on various shareholder issues, including at the Illinois Public Pension Fund Association, the New York State Teamsters Conference, the American Alliance Conference, and the TEXPERS/IPPFA Joint Conference at the New York Stock Exchange, among others.

## Education
B.S., St. John's University, 1999; J.D., Hofstra University School of Law, 2002

## Honors / Awards
Super Lawyer "Rising Star," 2012-2013, 2016-2017; B.S., Dean's List, St. John's University, 1999; Selected as participant in Hofstra Moot Court Seminar, Hofstra University School of Law

# Susan K. Alexander | Partner

Susan Alexander is a partner in the Firm's San Francisco office. Alexander's practice specializes in federal appeals of securities fraud class actions on behalf of investors. With nearly 30 years of federal appellate experience, she has argued on behalf of defrauded investors in circuit courts throughout the United States. Among her most notable cases are *In re VeriFone Holdings, Inc. Sec. Litig.* ($95 million recovery) and the successful appellate ruling in *Alaska Elec. Pension Fund v. Flowserve Corp.* ($55 million recovery). Other representative results include: *W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 845 F.3d 384 (8th Cir. 2016) (reversing summary judgment of securities fraud action on statute of limitations grounds); *In re Ubiquiti Networks, Inc. Sec. Litig.*, 2016 U.S. App. LEXIS 19141 (9th Cir. 2016) (reversing dismissal of §11 claim); *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227 (2d Cir. 2014) (reversing dismissal of securities fraud complaint, focused on loss causation); *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114 (2d Cir. 2012) (reversing dismissal of §11 claim); *City of Pontiac Gen. Emps. Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169 (2d Cir. 2011) (reversing dismissal of securities fraud complaint, focused on statute of limitations*); In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) (reversing dismissal of securities fraud complaint, focused on loss causation); and *Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249 (5th Cir. 2005) (reversing dismissal of securities fraud complaint, focused on scienter). Alexander's prior appellate work was with the California Appellate Project ("CAP"), where she prepared appeals and petitions for writs of *habeas corpus* on behalf of individuals sentenced to death. At CAP, and subsequently in private practice, she litigated and consulted on death penalty direct and collateral appeals for ten years.

## Education
B.A., Stanford University, 1983; J.D., University of California, Los Angeles, 1986

## Honors / Awards
Super Lawyer, 2015-2018; American Academy of Appellate Lawyers; California Academy of Appellate Lawyers; Ninth Circuit Advisory Rules Committee; Appellate Delegate, Ninth Circuit Judicial Conference; ABA Council of Appellate Lawyers

## Jason H. Alperstein | Partner

Jason Alperstein is a partner in the Firm's Boca Raton office. His practices focuses on consumer fraud, securities fraud, mass torts and data breach litigation. Alperstein was an integral member of the *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, & Prods. Liab. Litig.*, No. 15-md-2672 (N.D. Cal.), litigation team, prosecuting claims on behalf of almost 600,000 consumers who were duped into purchasing and leasing Volkswagen, Audi and Porsche vehicles that were marketed as environmentally friendly, yet spewed toxic pollutants up to 40 times the legal limit permitted by the EPA. Working closely with Plaintiffs' Steering Committee ("PSC") member Paul J. Geller, Alperstein was involved in almost all aspects of the litigation. The PSC and government agencies ultimately reached a series of settlements on behalf of purchasers, lessees and dealers that totaled well over $17 billion, the largest consumer automotive settlement in history. Alperstein is actively involved in a number of other class actions and MDLs pending throughout the country, including: *In re Yahoo! Inc. Customer Data Security Breach Litig.*, No. 16-md-02752 (N.D. Cal.), regarding the largest data breach in history; *In re FieldTurf Artificial Turf Mktg. & Sales Practices Litig.*, No. 17-md-02779 (D.N.J.), concerning the sale of defective synthetic turf for use in athletic fields; *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods. Liab. Litig.*, No. 17-md-02777 (N.D. Cal.), pertaining to Fiat Chrysler's use of defeat devices to hide emission levels on its Jeep and Dodge "EcoDiesel" vehicles; *Benkle v. Ford Motor Co.*, No. 16-cv-01569 (C.D. Cal.), involving defective electronic throttle body units in Ford vehicles; and *Zimmerman v. The 3M Company*, No. 17-cv-01062 (W.D. Mich.), relating to the dumping of toxic waste and polluting of groundwater in Kent County, Michigan.

Prior to joining Robbins Geller, Alperstein served on lead and co-lead litigation teams in nationwide and statewide class action lawsuits against dozens of the largest banking institutions in connection with the unlawful assessment of checking account overdraft fees. His efforts resulted in over $250 million in settlements for his clients and significant changes in the way banks charge overdraft fees to their customers. In addition, he led consumer class actions against product manufacturers for false and deceptive labeling, and some of the world's largest clothing retailers for their use of false and deceptive comparative pricing in their outlet stores.

## Education
B.A., Brown University, 2004; M.B.A., University of Miami School of Business, 2008, J.D., University of Miami School of Law, 2008

## Honors / Awards
40 & Under Hot List, *Benchmark Litigation*, 2017-2018; Super Lawyer "Rising Star," 2014-2018; Rising Star, Consumer Protection, *Law360*, 2017; J.D., *Cum Laude*, University of Miami School of Law, 2008

# Matthew I. Alpert | Partner

Matthew Alpert is a partner in the Firm's San Diego office and focuses on the prosecution of securities fraud litigation. He has helped recover over $800 million for individual and institutional investors financially harmed by corporate fraud. Alpert's current cases include securities fraud cases against Diplomat Pharmacy (E.D. Mich.), Valeant (D.N.J.), Santander Consumer USA (N.D. Tex.) and Banc of California (C.D. Cal.). Alpert is part of the litigation team that successfully obtained class certification in a securities fraud class action against Regions Financial, a class certification decision which was substantively affirmed by the United States Court of Appeals for the Eleventh Circuit in *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248 (11th Cir. 2014). Upon remand, the United States District Court for the Northern District of Alabama granted class certification again, rejecting defendants' post-*Halliburton II* arguments concerning stock price impact.

## Education
B.A., University of Wisconsin at Madison, 2001; J.D., Washington University, St. Louis, 2005

## Honors / Awards
Super Lawyer "Rising Star," 2015-2019

# Darryl J. Alvarado | Partner

Darryl Alvarado is a partner in the Firm's San Diego office. Alvarado focuses his practice on securities fraud and other complex civil litigation. Alvarado helped secure $388 million for investors in J.P. Morgan RMBS in *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co*. That settlement is, on a percentage basis, the largest recovery ever achieved in an RMBS class action. He was also a member of a team of attorneys that secured $95 million for investors in Morgan Stanley-issued RMBS in *In re Morgan Stanley Mortgage Pass-Through Certificates Litig*. In addition, Alvarado was a member of a team of lawyers that obtained landmark settlements, on the eve of trial, from the major credit rating agencies and Morgan Stanley arising out of the fraudulent ratings of bonds issued by the Cheyne and Rhinebridge structured investment vehicles in *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Incorporated* and *King County, Washington v. IKB Deutsche Industriebank AG*. He was integral in obtaining several precedent-setting decisions in those cases, including defeating the rating agencies' historic First Amendment defense and defeating the ratings agencies' motions for summary judgment concerning the actionability of credit ratings.

## Education
B.A., University of California, Santa Barbara, 2004; J.D., University of San Diego School of Law, 2007

## Honors / Awards
Super Lawyer "Rising Star," 2015-2019; 40 & Under Hot List, *Benchmark Litigation*, 2018; "Outstanding Young Attorneys," *San Diego Daily Transcript*, 2011

# X. Jay Alvarez | Partner

Jay Alvarez is a partner in the Firm's San Diego office. He focuses his practice on securities fraud litigation and other complex litigation. Alvarez's notable cases include *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.* ($400 million recovery), *In re Coca-Cola Sec. Litig.* ($137.5 million settlement), *In re St. Jude Medical, Inc. Sec. Litig.* ($50 million settlement) and *In re Cooper Cos. Sec. Litig.* ($27 million recovery). Most recently, Alvarez was a member of the litigation team that secured a historic recovery on behalf of Trump University students in two class actions against President Donald J. Trump. The settlement provides $25 million to approximately 7,000 consumers. This result means individual class members are eligible for upwards of $35,000 in restitution. He represented the class on a *pro bono* basis.

Prior to joining the Firm, Alvarez served as an Assistant United States Attorney for the Southern District of California from 1991-2003. As an Assistant United States Attorney, he obtained extensive trial experience, including the prosecution of bank fraud, money laundering and complex narcotics conspiracy cases. During his tenure as an Assistant United States Attorney, Alvarez also briefed and argued numerous appeals before the Ninth Circuit Court of Appeals.

## Education

B.A., University of California, Berkeley, 1984; J.D., University of California, Berkeley, Boalt Hall School of Law, 1987

## Stephen R. Astley | Partner

Stephen Astley is a partner in the Firm's Boca Raton office. Astley devotes his practice to representing institutional and individual shareholders in their pursuit to recover investment losses caused by fraud. He has been lead counsel in numerous securities fraud class actions across the country, helping secure significant recoveries for his clients and investors. He was on the trial team that recovered $60 million on behalf of investors in *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.* Other notable representations include: *In re Red Hat, Inc. Sec. Litig.* (E.D.N.C.) ($20 million settlement); *Eshe Fund v. Fifth Third Bancorp* (S.D. Ohio) ($16 million); *City of St. Clair Shores Gen. Emps.' Ret. Sys. v. Lender Processing Servs., Inc.* (M.D. Fla.) ($14 million); and *In re Synovus Fin. Corp.* (N.D. Ga.) ($11.75 million).

Prior to joining the Firm, Astley was with the Miami office of Hunton & Williams, where he concentrated his practice on class action defense, including securities class actions and white collar criminal defense. Additionally, he represented numerous corporate clients accused of engaging in unfair and deceptive practices. Astley was also an active duty member of the United States Navy's Judge Advocate General's Corps where he was the Senior Defense Counsel for the Naval Legal Service Office Pearl Harbor Detachment. In that capacity, Astley oversaw trial operations for the Detachment and gained substantial first-chair trial experience as the lead defense counsel in over 75 courts-martial and administrative proceedings. Additionally, from 2002-2003, Astley clerked for the Honorable Peter T. Fay, U.S. Court of Appeals for the Eleventh Circuit.

## Education

B.S., Florida State University, 1992; M. Acc., University of Hawaii at Manoa, 2001; J.D., University of Miami School of Law, 1997

## Honors / Awards

J.D., *Cum Laude*, University of Miami School of Law, 1997; United States Navy Judge Advocate General's Corps., Lieutenant

## A. Rick Atwood, Jr. | Partner

Rick Atwood is a partner in the Firm's San Diego office. As a recipient of the California Lawyer Attorney of the Year ("CLAY") Award for his work on behalf of shareholders, he has successfully represented shareholders in securities class actions, merger-related class actions, and shareholder derivative suits in federal and state courts in more than 30 jurisdictions. Through his litigation efforts at both the trial and appellate levels, Atwood has helped recover billions of dollars for public shareholders, including the largest post-merger common fund recoveries on record.

Most recently, in *In re Dole Food Co., Inc. Stockholder Litig.*, which went to trial in the Delaware Court of Chancery on claims of breach of fiduciary duty on behalf of Dole Food Co., Inc. shareholders, Atwood helped obtain $148 million, the largest trial verdict ever in a class action challenging a merger transaction. He was also a key member of the litigation team in *In re Kinder Morgan, Inc. S'holders Litig.*, where he helped obtain an unprecedented $200 million common fund for former Kinder Morgan shareholders, the largest merger & acquisition class action recovery in history.

Atwood also led the litigation team that obtained an $89.4 million recovery for shareholders in *In re Del Monte Foods Co. S'holders Litig.*, after which the Delaware Court of Chancery stated that "it was only through the effective use of discovery that the plaintiffs were able to 'disturb[ ] the patina of normalcy surrounding the transaction.'" The court further commented that "Lead Counsel engaged in hard-nosed discovery to penetrate and expose problems with practices that Wall Street considered 'typical.'" One Wall Street banker even wrote in *The Wall Street Journal* that "'Everybody does it, but Barclays is the one that got caught with their hand in the cookie jar . . . . Now everybody has to rethink how we conduct ourselves in financing situations.'" Atwood's other significant opinions include *Brown v. Brewer* ($45 million recovery) and *In re Prime Hospitality, Inc. S'holders Litig.* ($25 million recovery).

## Education
B.A., University of Tennessee, Knoxville, 1987; B.A., Katholieke Universiteit Leuven, Belgium, 1988; J.D., Vanderbilt School of Law, 1991

## Honors / Awards
Recommended Lawyer, *The Legal 500*, 2017-2018; M&A Litigation Attorney of the Year in California, *Corporate International*, 2015; Super Lawyer, 2014-2017; Attorney of the Year, *California Lawyer*, 2012; B.A., Great Distinction, Katholieke Universiteit Leuven, Belgium, 1988; B.A., Honors, University of Tennessee, Knoxville, 1987; Authorities Editor, *Vanderbilt Journal of Transnational Law*, 1991

# Aelish M. Baig | Partner

Aelish Marie Baig is a partner in the Firm's San Francisco office. She specializes in federal securities and consumer class actions. She focuses primarily on securities fraud litigation on behalf of individual and institutional investors, including state and municipal pension funds, Taft-Hartley funds, and private retirement and investment funds. Baig has litigated a number of cases through jury trial, resulting in multi-million dollar awards and settlements for her clients, and has prosecuted securities fraud, consumer and derivative actions obtaining millions of dollars in recoveries against corporations such as Wells Fargo, Verizon, Celera, Pall and Prudential.

Baig, along with other Robbins Geller attorneys, is currently leading the effort on behalf of cities and counties around the country in *In re National Prescription Opiate Litigation*. Additionally, she prosecuted an action against Wells Fargo's directors and officers accusing the giant of engaging in the robosigning of foreclosure papers so as to mass-process home foreclosures, a practice which contributed significantly to the 2008-2009 financial crisis. The resulting settlement was worth more than $67 million in cash, corporate preventative measures and new lending initiatives for residents of cities devastated by Wells Fargo's alleged unlawful foreclosure practices. Baig was part of the litigation and trial team in *White v. Cellco Partnership d/b/a Verizon Wireless*, which resulted in a $25 million settlement and Verizon's agreement to an injunction restricting its ability to impose early termination fees in future subscriber agreements. She was also part of the team that prosecuted dozens of stock option backdating actions, securing tens of millions of dollars in cash recoveries as well as the implementation of comprehensive corporate governance enhancements for numerous companies victimized by their directors' and officers' fraudulent stock option backdating practices. Additionally, Baig prosecuted an action against Prudential Insurance for its alleged failure to pay life insurance benefits to beneficiaries of policyholders it knew or had reason to know had died, resulting in a settlement in excess of $30 million.

## Education
B.A., Brown University, 1992; J.D., Washington College of Law at American University, 1998

## Honors / Awards
Super Lawyer, 2012-2013; J.D., *Cum Laude*, Washington College of Law at American University, 1998; Senior Editor, *Administrative Law Review*, Washington College of Law at American University

Case 3:21-cv-00444-D-1N Document 1269  Filed 04/19/24  Page 329 of 586 PageID#
5517
Case 1:16-cv-01031-TSE-MSN  Document 453  Filed 04/26/19  Page 330 of 586 PageID# 9048

ATTORNEY BIOGRAPHIES

# Randall J. Baron | Partner

Randy Baron is a partner in the Firm's San Diego office.  He specializes in securities litigation, corporate takeover litigation and breach of fiduciary duty actions.  For almost two decades, Baron has headed up a team of lawyers whose accomplishments include obtaining instrumental rulings both at injunction and trial phases, establishing liability of financial advisors and investment banks.  With an in-depth understanding of merger and acquisition and breach of fiduciary duty law, an ability to work under extreme time pressures, and the experience and willingness to take a case through trial, he has been responsible for recovering more than a billion dollars for shareholders.  Notable achievements over the years include: *In re Kinder Morgan, Inc. S'holders Litig.* (Kan. Dist. Ct., Shawnee Cty.) ($200 million common fund for former Kinder Morgan shareholders, the largest merger & acquisition class action recovery in history); *In re Dole Food Co., Inc. Stockholder Litig.* (Del. Ch.) (obtained $148 million, the largest trial verdict ever in a class action challenging a merger transaction); and *In re Rural/Metro Corp. Stockholders Litig.* (Del. Ch.) (Baron and co-counsel obtained nearly $110 million for shareholders against Royal Bank of Canada Capital Markets LLC).  In *In re Del Monte Foods Co. S'holders Litig.* (Del. Ch.), he exposed the unseemly practice by investment bankers of participating on both sides of large merger and acquisition transactions and ultimately secured an $89 million settlement for shareholders of Del Monte.  Baron was one of the lead attorneys representing about 75 public and private institutional investors that filed and settled individual actions in *In re WorldCom Sec. Litig.* (S.D.N.Y.), where more than $657 million was recovered, the largest opt-out (non-class) securities action in history.  In *In re Dollar Gen. Corp. S'holder Litig.* (Tenn. Cir. Ct., Davidson Cty.), Baron was lead trial counsel and helped to secure a settlement of up to $57 million in a common fund shortly before trial, and in *Brown v. Brewer* (C.D. Cal.), he secured $45 million for shareholders of Intermix Corporation, relating to News Corp.'s acquisition of that company.  Formerly, Baron served as a Deputy District Attorney from 1990-1997 in Los Angeles County.

## Education

B.A., University of Colorado at Boulder, 1987; J.D., University of San Diego School of Law, 1990

## Honors / Awards

Fellow, Advisory Board, Litigation Counsel of America (LCA); Leading Lawyer in America, *Lawdragon*, 2011, 2017-2019; Litigation Star, *Benchmark Litigation*, 2016-2019; California Star, *Benchmark Litigation*, 2019; National Practice Area Star, *Benchmark Litigation*, 2019; State Litigation Star, *Benchmark Litigation*, 2019; Best Lawyer in America, *Best Lawyers*®, 2019; Super Lawyer, 2014-2016, 2018-2019; Winning Litigator, *The National Law Journal*, 2018; Leading Lawyer, *Chambers USA*, 2016-2018; Local Litigation Star, *Benchmark Litigation*, 2018; Leading Lawyer, *The Legal 500*, 2014-2018; Recommended Lawyer, *The Legal 500*, 2017; Mergers & Acquisitions Trailblazer, *The National Law Journal*, 2015-2016; Litigator of the Week, *The American Lawyer*, October 16, 2014; Attorney of the Year, *California Lawyer*, 2012; Litigator of the Week, *The American Lawyer*, October 7, 2011; J.D., *Cum Laude*, University of San Diego School of Law, 1990

# James E. Barz | Partner

James Barz is a partner at the Firm and manages the Firm's Chicago office. He is a trial lawyer who has tried 18 cases to verdict, a registered CPA, a former federal prosecutor, and has been an adjunct professor at Northwestern University School of Law from 2008 to 2019, teaching courses on trial advocacy and class action litigation. Barz has focused on representing investors in securities fraud class actions that have resulted in recoveries of over $1 billion, including: *HCA* ($215 million, M.D. Tenn.); *Motorola* ($200 million, N.D. Ill.); *Sprint* ($131 million, D. Kan.); *Psychiatric Solutions* ($65 million, M.D. Tenn.); *Dana Corp.* ($64 million, N.D. Ohio); and *Hospira*($60 million, N.D. Ill.). He has been lead trial counsel in several of these cases obtaining favorable settlements just days or weeks before trial and after obtaining denials of summary judgment. Barz is currently representing investors in securities fraud litigation against Valeant Pharmaceuticals Inc. (D.N.J.). Barz also handles whistleblower cases, including a successful settlement in *United States v. Signature Healthcare LLC* (M.D. Tenn.) ($30 million), and antitrust cases, including recently being appointed to the Plaintiffs' Steering Committee in *In re Dealer Management Systems Antitrust Litigation* (N.D. Ill.).

Before joining the Firm, Barz was a partner at Mayer Brown LLP from 2006 to 2011 and an associate from 1998 to 2002. At Mayer Brown, Barz handled commercial litigation, internal investigations, and antitrust cases. Barz was also active in their *pro bono* program where, in his first jury trial, he won an acquittal on all charges and, in his first appeal, he obtained the reversal of a conviction based on the trial judge having solicited a bribe from the defendant. From 2002 to 2006 he served as an Assistant United States Attorney in Chicago, trying cases and supervising investigations involving public corruption, financial frauds, tax offenses, money laundering, and drug and firearm offenses. He successfully obtained a conviction against every defendant who went to trial.

## Education
B.B.A., Loyola University Chicago, School of Business Administration, 1995; J.D., Northwestern University School of Law, 1998

## Honors / Awards
Super Lawyer, 2018-2019; Leading Lawyer, Law Bulletin Media, 2018; B.B.A., *Summa Cum Laude*, Loyola University Chicago, School of Business Administration, 1995; J.D., *Cum Laude*, Northwestern University School of Law, 1998

# Nathan W. Bear | Partner

Nate Bear is a partner in the Firm's San Diego office. Bear advises institutional investors on a global basis. His clients include Taft-Hartley funds, public and multi-employer pension funds, fund managers, insurance companies and banks around the world. He counsels clients on securities fraud and corporate governance, and frequently speaks at conferences worldwide. He has recovered over $1 billion for investors, including *In re Cardinal Health, Inc. Sec. Litig.* ($600 million) and *Jones v. Pfizer Inc.* ($400 million). In addition to initiating securities fraud class actions in the United States, he possesses direct experience in potential group actions in the United Kingdom, settlements in the European Union under the Wet Collectieve Afwikkeling Massaschade (WCAM), the Dutch Collective Mass Claims Settlement Act, as well as representative actions in Germany utilizing the Kapitalanlegermusterverfahrensgesetz (KapMuG), the Capital Market Investors' Model Proceeding Act. In *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, Bear commenced a lawsuit resulting in the first major ruling upholding fraud allegations against the chief credit rating agencies. That ruling led to the filing of a similar case, *King County, Washington v. IKB Deutsche Industriebank AG*. These cases, arising from the fraudulent ratings of bonds issued by the Cheyne and Rhinebridge structured investment vehicles, ultimately obtained landmark settlements – on the eve of trial – from the major credit rating agencies and Morgan Stanley. Bear maintained an active role in litigation at the heart of the worldwide financial crisis, and is currently pursuing banks over their manipulation of LIBOR, FOREX and other benchmark rates.

## Education
B.A., University of California at Berkeley, 1998; J.D., University of San Diego School of Law, 2006

## Honors / Awards
Super Lawyer "Rising Star," 2015-2016; "Outstanding Young Attorneys," *San Diego Daily Transcript*, 2011

# Alexandra S. Bernay | Partner

Xan Bernay is a partner in the Firm's San Diego office, where she specializes in antitrust and unfair competition class-action litigation. She has also worked on some of the Firm's largest securities fraud class actions, including the *Enron* litigation, which recovered an unprecedented $7.2 billion for investors. Bernay currently serves as co-lead counsel in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, in which a settlement of up to $6.26 billion was recently preliminarily approved by the Eastern District of New York. This case was brought on behalf of millions of U.S. merchants against Visa and MasterCard and various card-issuing banks, challenging the way these companies set and collect tens of billions of dollars annually in merchant fees. The settlement is believed to be the largest antitrust class action settlement of all time.

Additionally, Bernay is involved in *In re Remicade Antitrust Litig.* pending in the Eastern District of Pennsylvania – a large case involving anticompetitive conduct in the biosimilars market, where the Firm is sole lead counsel for the end-payor plaintiffs. She is also part of the litigation team in *In re Dealer Mgmt. Sys. Antitrust Litig.* (N.D. Ill.), which involves anticompetitive conduct related to dealer management systems on behalf of auto dealerships across the country. Another representative case is *Persian Gulf Inc. v. BP West Coast Prods. LLC* (S.D. Cal.), a massive case against the largest gas refiners in the world brought by gasoline station owners who allege they were overcharged for gasoline in California as a result of anticompetitive conduct. Bernay has also had experience in large consumer class actions, including *In re Checking Account Overdraft Litig.*, which case was brought on behalf of bank customers who were overcharged for debit card transactions and resulted in more than $500 million in settlements with major banks that manipulated customers' debit transactions to maximize overdraft fees. She also helped try to verdict a case against one of the world's largest companies who was sued on behalf of consumers.

## Education
B.A., Humboldt State University, 1997; J.D., University of San Diego School of Law, 2000

## Honors / Awards
Litigator of the Week, *Global Competition Review*, October 1, 2014

## Erin W. Boardman | Partner

Erin Boardman is a partner in the Firm's Melville office, where her practice focuses on representing individual and institutional investors in class actions brought pursuant to the federal securities laws. She has been involved in the prosecution of numerous securities class actions that have resulted in millions of dollars in recoveries for defrauded investors, including: *Medoff v. CVS Caremark Corp.* (D.R.I.) ($48 million recovery); *Construction Laborers Pension Trust of Greater St. Louis v. Autoliv Inc.* (S.D.N.Y.) ($22.5 million recovery); *In re Gildan Activewear Inc. Sec. Litig.* (S.D.N.Y.) (resolved as part of a $22.5 million global settlement); *In re L.G. Phillips LCD Co., Ltd., Sec. Litig.* (S.D.N.Y.) ($18 million recovery); *In re Giant Interactive Grp., Inc. Sec. Litig.* (S.D.N.Y.) ($13 million recovery); *In re Coventry HealthCare, Inc. Sec. Litig.* (D. Md.) ($10 million recovery); *Lenartz v. American Superconductor Corp.* (D. Mass.) ($10 million recovery); *Dudley v. Haub* (D.N.J.) ($9 million recovery); *Hildenbrand v. W Holding Co.* (D.P.R.) ($8.75 million recovery); *In re Doral Financial Corp. Sec. Litig.* (D.P.R.) ($7 million recovery); and *Van Dongen v. CNinsure Inc.* (S.D.N.Y.) ($6.625 million recovery). During law school, Boardman served as Associate Managing Editor of *the Journal of Corporate, Financial and Commercial Law* interned in the chambers of the Honorable Kiyo A. Matsumoto in the United States District Court for the Eastern District of New York, and represented individuals on a *pro bono* basis through the Workers' Rights Clinic.

## Education
B.A., State University of New York at Binghamton, 2003; J.D., Brooklyn Law School, 2007

## Honors / Awards
Super Lawyer "Rising Star," 2015-2018; B.A., *Magna Cum Laude*, State University of New York at Binghamton, 2003

## Douglas R. Britton | Partner

Doug Britton is a partner in the Firm's San Diego office. His practice focuses on securities fraud and corporate governance. Britton has been involved in settlements exceeding $1 billion and has secured significant corporate governance enhancements to improve corporate functioning. Notable achievements include *In re WorldCom, Inc. Sec. & "ERISA" Litig.*, where he was one of the lead partners that represented a number of opt-out institutional investors and secured an unprecedented recovery of $651 million; *In re SureBeam Corp. Sec. Litig.*, where he was the lead trial counsel and secured an impressive recovery of $32.75 million; and *In re Amazon.com, Inc. Sec. Litig.*, where he was one of the lead attorneys securing a $27.5 million recovery for investors.

## Education
B.B.A., Washburn University, 1991; J.D., Pepperdine University School of Law, 1996

## Honors / Awards
J.D., *Cum Laude*, Pepperdine University School of Law, 1996

Case 3:21-cv-00444-D-N Document 126-9 Filed 04/19/24 Page 334 of 586 PageID#
5522
Case 1:16-cv-01031-TSE-MSN Document 453 Filed 04/26/19 Page 335 of 586 PageID# 9653
ATTORNEY BIOGRAPHIES

## Luke O. Brooks | Partner

Luke Brooks is a partner in the Firm's securities litigation practice group in the San Diego office. He focuses primarily on securities fraud litigation on behalf of individual and institutional investors, including state and municipal pension funds, Taft-Hartley funds, and private retirement and investment funds. Brooks was on the trial team in *Jaffe v. Household Int'l, Inc.*, a securities class action that obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs. Other prominent cases recently prosecuted by Brooks include *Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.*, in which plaintiffs recovered $388 million for investors in J.P. Morgan residential mortgage-backed securities, and a pair of cases – *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.* ("Cheyne") and *King County, Washington, et al. v. IKB Deutsche Industriebank AG* ("Rhinebridge") – in which plaintiffs obtained a settlement, on the eve of trial in Cheyne, from the major credit rating agencies and Morgan Stanley arising out of the fraudulent ratings of bonds issued by the Cheyne and Rhinebridge structured investment vehicles.

## Education
B.A., University of Massachusetts at Amherst, 1997; J.D., University of San Francisco, 2000

## Honors / Awards
California Star, *Benchmark Litigation*, 2019; State Litigation Star, *Benchmark Litigation*, 2019; Local Litigation Star, *Benchmark Litigation*, 2017-2018; Recommended Lawyer, *The Legal 500*, 2017-2018; Member, *University of San Francisco Law Review*, University of San Francisco

## Spencer A. Burkholz | Partner

Spence Burkholz is a partner in the Firm's San Diego office and a member of the Firm's Executive and Management Committees. He has 21 years of experience in prosecuting securities class actions and private actions on behalf of large institutional investors. Burkholz was one of the lead trial attorneys in *Jaffe v. Household Int'l, Inc.*, a securities class action that obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs. Burkholz has also recovered billions of dollars for injured shareholders in cases such as *Enron* ($7.2 billion), *WorldCom* ($657 million), *Countrywide* ($500 million) and *Qwest* ($445 million). He is currently representing large institutional investors in actions involving the credit crisis.

## Education
B.A., Clark University, 1985; J.D., University of Virginia School of Law, 1989

## Honors / Awards
Leading Lawyer in America, *Lawdragon*, 2018-2019; Top 100 Trial Lawyer, *Benchmark Litigation*, 2018-2019; Top 20 Trial Lawyer in California, *Benchmark Litigation*, 2019; California Star, *Benchmark Litigation*, 2019; State Litigation Star, *Benchmark Litigation*, 2019; Super Lawyer, 2015-2016, 2019; Best Lawyer in America, *Best Lawyers®*, 2018-2019; Top Lawyer in San Diego, *San Diego Magazine*, 2013-2019; Plaintiff Attorney of the Year, *Benchmark Litigation*, 2018; Local Litigation Star, *Benchmark Litigation*, 2015-2018; Recommended Lawyer, *The Legal 500*, 2017-2018; B.A., *Cum Laude*, Clark University, 1985; *Phi Beta Kappa*, Clark University, 1985

## Michael G. Capeci | Partner

Michael Capeci is a partner in Robbins Geller Rudman & Dowd LLP's Melville office. His practice focuses on prosecuting complex securities and breach of fiduciary duty class actions, as well as shareholder derivative lawsuits.

Throughout his tenure with the Firm, Capeci has played an integral role in cases such as: *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*; *City of Pontiac General Employees' Retirement System v. Lockheed Martin Corporation*; *Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Arbitron Inc.*; *Billhofer v. Flamel Technologies, S.A.*; *In re Virgin Media Inc. Shareholders Litigation*; and *Allen v. El Paso Pipeline GP Company, L.L.C.* Most recently, he was on the litigation team responsible for recovering $50 million in litigation against BHP Billiton, an Australian-based mining company accused of failing to disclose significant safety problems at the Fundão iron-ore dam, in Brazil.

## Education
B.S., Villanova University, 2007; J.D., Hofstra University School of Law, 2010

## Honors / Awards
Super Lawyer "Rising Star," 2014-2018; J.D., *Cum Laude,* Hofstra University School of Law, 2010

## Brian E. Cochran | Partner

Brian Cochran is a partner in the Firm's San Diego and Chicago offices. He focuses his practice on complex securities and shareholder derivative litigation. In particular, Cochran specializes in case investigation and initiation, and lead plaintiff issues arising under the Private Securities Litigation Reform Act of 1995. He was a member of the litigation team that obtained a $65 million recovery in *Garden City Emps.' Ret. Sys. v. Psychiatric Solutions, Inc.*, the third largest securities recovery ever in the Middle District of Tennessee and the largest in more than a decade.

Most recently, Cochran was a member of the litigation team that secured a historic recovery on behalf of Trump University students in two class actions against President Donald J. Trump. The settlement provides $25 million to approximately 7,000 consumers. This result means individual class members are eligible for upwards of $35,000 in restitution. He represented the class on a *pro bono* basis. In addition, Cochran developed a groundbreaking securities fraud lawsuit against Fifth Street Finance and its external asset manager, which led to over $14 million in settlements, significant corporate reforms and a follow-on SEC investigation. Cochran has also helped secure class certification and/or successfully opposed a motion to dismiss in class action litigation against several prominent corporate defendants, including Goldman Sachs, Big Lots and Scotts Miracle-Gro.

## Education
A.B., Princeton University, 2006; J.D., University of California at Berkeley School of Law, Boalt Hall, 2012

## Honors / Awards
A.B., With Honors, Princeton University, 2006; J.D., Order of the Coif, University of California at Berkeley School of Law, Boalt Hall, 2012

# Susannah R. Conn | Partner

Susannah Conn is a partner in the Firm's San Diego office, where her practice focuses on complex securities litigation. Since joining the Firm, Conn has participated in the prosecution of several cases that have resulted in substantial recoveries for investors, including *Alaska Elec. Pension Fund v. Pharmacia Corp.*, *City of Livonia Emps.' Ret. Sys. v. Wyeth* and *In re Sanofi-Aventis Sec. Litig*. Most recently, she was a member of the Firm's trial team in *Hsu v. Puma Biotechnology, Inc.*, No. SACV15-0865 (C.D. Cal.), a securities fraud class action that resulted in a verdict in favor of investors after a two-week jury trial.

## Education
B.A., University of Wyoming, 1995; J.D., California Western School of Law, 1999

## Honors / Awards
J.D., *Magna Cum Laude*, California Western School of Law, 1999; Executive Lead Articles Editor, *California Western Law Review*, California Western School of Law; B.A., *Cum Laude*, University of Wyoming, 1995; Outstanding Graduate Award, University of Wyoming

# Joseph D. Daley | Partner

Joseph Daley is a partner in the Firm's San Diego office, serves on the Firm's Securities Hiring Committee, and is a member of the Firm's Appellate Practice Group. Precedents include: *City of Providence v. Bats Glob. Mkts., Inc.*, 878 F.3d 36 (2d Cir. 2017); *DeJulius v. New Eng. Health Care Emps. Pension Fund*, 429 F.3d 935 (10th Cir. 2005); *Frank v. Dana Corp.* ("*Dana I*"), 547 F.3d 564 (6th Cir. 2008); *Frank v. Dana Corp.* ("*Dana II*"), 646 F.3d 954 (6th Cir. 2011*); Freidus v. Barclays Bank Plc*, 734 F.3d 132 (2d Cir. 2013); *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248 (11th Cir. 2009*); In re Merck & Co. Sec., Derivative & ERISA Litig.*, 493 F.3d 393 (3d Cir. 2007); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130 (9th Cir. 2017); *In re Qwest Commc'ns Int'l*, 450 F.3d 1179 (10th Cir. 2006); *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031 (9th Cir. 2008); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012); *Rosenbloom v. Pyott* ("*Allergan*"), 765 F.3d 1137 (9th Cir. 2014); *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956 (7th Cir. 2013); *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167 (9th Cir. 2009), *aff'd*, 563 U.S. 27 (2011); and *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353 (5th Cir. 2004). Daley is admitted to practice before the U.S. Supreme Court, as well as before 12 U.S. Courts of Appeals around the nation.

## Education
B.S., Jacksonville University, 1981; J.D., University of San Diego School of Law, 1996

## Honors / Awards
Super Lawyer, 2011-2012, 2014-2018; Appellate Moot Court Board, Order of the Barristers, University of San Diego School of Law; Best Advocate Award (Traynore Constitutional Law Moot Court Competition), First Place and Best Briefs (Alumni Torts Moot Court Competition and USD Jessup International Law Moot Court Competition)

Case 3:21-cv-00444-D1N Document 126-9 Filed 04/19/24 Page 337 of 586 PageID#
Case 1:16-cv-01031-TSE-MSN Document 453 Filed 04/26/19 Page 83 of 158 PageID# 9656
5525
ATTORNEY BIOGRAPHIES

# Patrick W. Daniels | Partner

Patrick Daniels is a founding and managing partner in the Firm's San Diego office. He is widely recognized as a leading corporate governance and investor advocate. The *Daily Journal*, the leading legal publisher in California, named him one of the 20 most influential lawyers in California under 40 years of age. Additionally, the Yale School of Management's Millstein Center for Corporate Governance and Performance awarded Daniels its "Rising Star of Corporate Governance" honor for his outstanding leadership in shareholder advocacy and activism. Daniels counsels private and state government pension funds, central banks and fund managers in the United States, Australia, United Arab Emirates, United Kingdom, the Netherlands, and other countries within the European Union on issues related to corporate fraud in the United States securities markets and on "best practices" in the corporate governance of publicly traded companies. Daniels has represented dozens of institutional investors in some of the largest and most significant shareholder actions, including *Enron*, *WorldCom*, *AOL Time Warner*, *BP*, *Pfizer*, *Countrywide*, *Petrobras* and *Volkswagen*, to name just a few. In the wake of the financial crisis, he represented dozens of investors in structured investment products in ground-breaking actions against the ratings agencies and Wall Street banks that packaged and sold supposedly highly rated shoddy securities to institutional investors all around the world.

## Education
B.A., University of California, Berkeley, 1993; J.D., University of San Diego School of Law, 1997

## Honors / Awards
One of the Most 20 Most Influential Lawyers in the State of California Under 40 Years of Age, *Daily Journal*; Rising Star of Corporate Governance, Yale School of Management's Milstein Center for Corporate Governance & Performance; B.A., *Cum Laude*, University of California, Berkeley, 1993

# Stuart A. Davidson | Partner

Stuart Davidson is a partner in the Firm's Boca Raton office. His practice focuses on complex consumer class actions, including cases involving deceptive and unfair trade practices, privacy and data breach issues, and antitrust violations. Davidson served as class counsel in one of the earliest privacy cases, *Kehoe v. Fidelity Federal Bank & Trust*, where he represented half-a-million Florida drivers against a national bank for purchasing their private information from the state department of motor vehicles for marketing purposes, in violation of the Driver's Privacy Protection Act. His efforts resulted in a seminal privacy decision on damages by the Eleventh Circuit, 421 F.3d 1209 (11th Cir. 2005), *cert. denied*, 547 U.S. 1051 (2006), and after years of hard-fought litigation, including an appeal to the United States Supreme Court, he was able to obtain a $50 million recovery for the class. He was also integral in obtaining a settlement valued at $15 million in *In re Sony Gaming Networks & Customer Data Security Breach Litigation*, concerning claims related to the massive data breach of Sony's PlayStation Network, and currently serves as a member of the Plaintiffs' Executive Committee in *In re Yahoo! Inc. Customer Data Security Breach Litigation* in the Northern District of California regarding the largest data breach in history. Davidson is actively involved in *In re Facebook Biometric Information Privacy Litigation*, concerning Facebook's alleged privacy violations through its collection of user's biometric identifiers without informed consent, both cutting-edge nationwide privacy consumer class actions in California.

Most recently, Davidson was appointed to the Plaintiffs' Steering Committee in *In re Intel Corp. CPU Marketing, Sales Practices and Products Liability Litigation*, which concerns serious security vulnerabilities – known as "Spectre" and "Meltdown" – that infect nearly all of Intel's x86 processors manufactured and sold since 1995, the patching of which results in processing speed degradation of the impacted computer, server or mobile device. Davidson also currently serves as co-lead counsel for hundreds of retired NHL players in *In re NHL Players' Concussion Injury Litigation* in the District of Minnesota, and is spearheading several aspects of *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation* in the District of Kansas, a case involving the illegal monopolization of the epinephrine auto-injector market, which allowed the prices of the life-saving EpiPen to rise over 600% in 9 years, and where Robbins Geller named partner Paul J. Geller was appointed co-lead counsel.

Davidson is a former lead assistant public defender in the Felony Division of the Broward County, Florida Public Defender's Office. During his tenure at the Public Defender's Office, he tried over 30 jury trials, conducted hundreds of depositions, handled numerous evidentiary hearings, engaged in extensive motion practice, and defended individuals charged with major crimes ranging from third-degree felonies to life and capital felonies.

## Education
B.A., State University of New York at Geneseo, 1993; J.D., Nova Southeastern University Shepard Broad College of Law, 1996

## Honors / Awards
J.D., *Summa Cum Laude*, Nova Southeastern University Shepard Broad College of Law, 1996; Associate Editor, *Nova Law Review*, Book Awards in Trial Advocacy, Criminal Pretrial Practice and International Law

Case 1:16-cv-01031-TSE-MSN Document 453 Filed 04/26/19 Page 90 of 156 PageID# 9658

ATTORNEY BIOGRAPHIES

# Jason C. Davis | Partner

Jason Davis is a partner in the Firm's San Francisco office where he practices securities class actions and complex litigation involving equities, fixed-income, synthetic and structured securities issued in public and private transactions. Davis was on the trial team in *Jaffe v. Household Int'l, Inc.*, a securities class action that obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs. Most recently, he was part of the litigation team in *Luna v. Marvell Tech. Grp., Ltd.*, resulting in a $72.5 million settlement that represents approximately 24% to 50% of the best estimate of classwide damages suffered by investors.

Prior to joining the Firm, Davis focused on cross-border transactions, mergers and acquisitions at Cravath, Swaine and Moore LLP in New York.

## Education
B.A., Syracuse University, 1998; J.D., University of California at Berkeley, Boalt Hall School of Law, 2002

## Honors / Awards
B.A., *Summa Cum Laude*, Syracuse University, 1998; International Relations Scholar of the year, Syracuse University; Teaching fellow, examination awards, Moot court award, University of California at Berkeley, Boalt Hall School of Law

# Mark J. Dearman | Partner

Mark Dearman is a partner in the Firm's Boca Raton office, where his practice focuses on consumer fraud, securities fraud, mass torts, antitrust, whistleblower and corporate takeover litigation. Dearman, along with other Robbins Geller attorneys, is currently leading the effort on behalf of cities and counties around the country in *In re National Prescription Opiate Litigation*. He was also recently appointed as the Chair of the Plaintiffs' Executive Committee in *In re Apple Inc. Device Performance Litigation* and was appointed to the Plaintiffs' Executive Committee in *In re FieldTurf Artificial Turf Mktg. Practices Litig.*, which alleges that FieldTurf USA Inc. and its related companies sold defective synthetic turf for use in athletic fields. His other recent representative cases include: *In re NHL Players' Concussion Injury Litig.*, 2015 U.S. Dist. LEXIS 38755 (D. Minn. 2015); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942 (S.D. Cal. 2012); *In re Volkswagen "Clean Diesel" Mktg. Sales Practice, & Prods. Liab. Litig.*, 2016 U.S. Dist. LEXIS 1357 (N.D. Cal. 2016); *In re Ford Fusion & C-Max Fuel Econ. Litig.*, 2015 U.S. Dist. LEXIS 155383 (S.D.N.Y. 2015); *Looper v. FCA US LLC*, No. 5:14-cv-00700 (C.D. Cal.); *In re Aluminum Warehousing Antitrust Litig.*, 95 F. Supp. 3d 419 (S.D.N.Y. 2015), *aff'd*, 833 F.3d 151 (2d Cir. 2016); *In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 16-md-2687 (D.N.J.); *In re Winn-Dixie Stores, Inc. S'holder Litig.*, No. 16-2011-CA-010616 (Fla. 4th Jud. Cir. Ct., Duval Cty.); *Gemelas v. Dannon Co. Inc.*, No. 1:08-cv-00236 (N.D. Ohio); and *In re AuthenTec, Inc. S'holder Litig.*, No. 05-2012-CA-57589 (Fla. 18th Jud. Cir. Ct., Brevard Cty.). Prior to joining the Firm, he founded Dearman & Gerson, where he defended Fortune 500 companies, with an emphasis on complex commercial litigation, consumer claims, and mass torts (products liability and personal injury), and has obtained extensive jury trial experience throughout the United States. Having represented defendants for so many years before joining the Firm, Dearman has a unique perspective that enables him to represent clients effectively.

## Education

B.A., University of Florida, 1990; J.D., Nova Southeastern University, 1993

## Honors / Awards

AV rated by Martindale-Hubbell; Super Lawyer, 2014-2018; In top 1.5% of Florida Civil Trial Lawyers in *Florida Trend'*s Florida Legal Elite, 2006, 2004

# Kathleen B. Douglas | Partner

Kathleen Douglas is a partner in Robbins Geller Rudman & Dowd LLP's Boca Raton office. She focuses her practice on securities fraud class actions and consumer fraud.

Douglas was a member of the litigation team in *In re UnitedHealth Grp. Inc. PSLRA Litig.*, achieving a substantial $925 million settlement. In addition to the monetary recovery, UnitedHealth also made critical changes to a number of its corporate governance policies, including electing a shareholder-nominated member to the company's Board of Directors. Douglas also worked on *Nieman v. Duke Energy Corp.* ($146.25 million recovery), which is the largest recovery in North Carolina for a case involving securities fraud, and one of the five largest recoveries in the Fourth Circuit. She also worked on the *R.H. Donnelley* case, obtaining a $25 million settlement, and the *21st Century* case, resulting in a $2.2 million recovery.

Douglas has served as class counsel in several class actions brought on behalf of Florida emergency room physicians. These cases were against some of the nation's largest Health Maintenance Organizations and settled for substantial increases in reimbursement rates and millions of dollars in past damages for the class.

## Education
B.S., Georgetown University, 2004; J.D., University of Miami School of Law, 2007

## Honors / Awards
Super Lawyer "Rising Star" in the field of Class Actions, 2012-2017; B.S., *Cum Laude*, Georgetown University, 2004

Case 3:21-cv-00444-DJN Document 126-9 Filed 04/19/24 Page 342 of 586 PageID# 5530

# Travis E. Downs III | Partner

Travis Downs is a partner in the Firm's San Diego office. His areas of expertise include prosecution of shareholder and securities litigation, including complex shareholder derivative actions. Downs led a team of lawyers who successfully prosecuted over 65 stock option backdating derivative actions in federal and state courts across the country, resulting in hundreds of millions in financial givebacks for the plaintiffs and extensive corporate governance enhancements, including annual directors elections, majority voting for directors and shareholder nomination of directors. Notable cases include: *In re Community Health Sys., Inc. S'holder Derivative Litig.* ($60 million in financial relief and unprecedented corporate governance reforms); *In re Marvell Tech. Grp. Ltd. Derivative Litig.* ($54 million in financial relief and extensive corporate governance enhancements); *In re McAfee, Inc. Derivative Litig.* ($30 million in financial relief and extensive corporate governance enhancements); *In re Affiliated Computer Servs. Derivative Litig.* ($30 million in financial relief and extensive corporate governance enhancements); *In re KB Home S'holder Derivative Litig.* ($30 million in financial relief and extensive corporate governance enhancements); *In re Juniper Networks Derivative Litig.* ($22.7 million in financial relief and extensive corporate governance enhancements); *In re Nvidia Corp. Derivative Litig.* ($15 million in financial relief and extensive corporate governance enhancements); and *City of Pontiac Gen. Emps.' Ret. Sys. v. Langone* (achieving landmark corporate governance reforms for investors).

He was also part of the litigation team that obtained a $67 million settlement in *City of Westland Police & Fire Ret. Sys. v. Stumpf*, a shareholder derivative action alleging that Wells Fargo participated in the mass-processing of home foreclosure documents by engaging in widespread robo-signing, and a $250 million settlement in *In re Google, Inc. Derivative Litig.*, an action alleging that Google facilitated in the improper advertising of prescription drugs. Downs is a frequent speaker at conferences and seminars and has lectured on a variety of topics related to shareholder derivative and class action litigation.

## Education
B.A., Whitworth University, 1985; J.D., University of Washington School of Law, 1990

## Honors / Awards
Best Lawyer in America, *Best Lawyers®*, 2018-2019; Top Lawyer in San Diego, *San Diego Magazine*, 2013-2019; Board of Trustees, Whitworth University; Super Lawyer, 2008; B.A., Honors, Whitworth University, 1985

Case 3:21-cv-00444-DLN Document 126-9 Filed 04/19/24 Page 343 of 586 PageID#
5531
Case 1:16-cv-01031-TSE-MSN Document 453 Filed 04/26/19 Page 94 of 158 PageID# 8662
ATTORNEY BIOGRAPHIES

## Daniel S. Drosman | Partner

Dan Drosman is a partner in the Firm's San Diego office and a member of the Firm's Management Committee. He focuses his practice on securities fraud and other complex civil litigation and has obtained significant recoveries for investors in cases such as *Morgan Stanley*, *Cisco Systems*, *Coca-Cola*, *Petco*, *PMI* and *America West*. Drosman served as one of the lead trial attorneys in *Jaffe v. Household Int'l, Inc.* in the Northern District of Illinois, a securities class action that obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs. Drosman also led a group of attorneys prosecuting fraud claims against the credit rating agencies, where he was distinguished as one of the few plaintiffs' counsel to overcome the credit rating agencies' motions to dismiss.

Prior to joining the Firm, Drosman served as an Assistant District Attorney for the Manhattan District Attorney's Office, and an Assistant United States Attorney in the Southern District of California, where he investigated and prosecuted violations of the federal narcotics, immigration, and official corruption law.

## Education
B.A., Reed College, 1990; J.D., Harvard Law School, 1993

## Honors / Awards
Best Lawyer in America, *Best Lawyers*®, 2019; Leading Lawyer in America, *Lawdragon*, 2018-2019; Super Lawyer, 2017-2019; Recommended Lawyer, *The Legal 500*, 2017-2018; Top 100 Lawyer, *Daily Journal*, 2017; Department of Justice Special Achievement Award, Sustained Superior Performance of Duty; B.A., Honors, Reed College, 1990; *Phi Beta Kappa*, Reed College, 1990

## Thomas E. Egler | Partner

Tom Egler is a partner in the Firm's San Diego office and focuses his practice on representing clients in major complex, multidistrict litigations, such as *Lehman Brothers*, *Countrywide Mortgage Backed Securities*, *WorldCom*, *AOL Time Warner* and *Qwest*. He has represented institutional investors both as plaintiffs in individual actions and as lead plaintiffs in class actions. Prior to joining the Firm, Egler was a law clerk to the Honorable Donald E. Ziegler, Chief Judge, United States District Court, Western District of Pennsylvania.

## Education
B.A., Northwestern University, 1989; J.D., The Catholic University of America, Columbus School of Law, 1995

## Honors / Awards
Super Lawyer, 2017-2018; Associate Editor, the *Catholic University Law Review*

# Alan I. Ellman | Partner

Alan Ellman is a partner in the Firm's Melville office, where he concentrates his practice on prosecuting complex securities fraud cases on behalf of institutional investors. Most recently, Ellman was on the team of Robbins Geller attorneys who obtained a $34.5 million recovery in *Patel v. L-3 Communications Holdings, Inc.*, which represents a high percentage of damages that plaintiffs could reasonably expect to be recovered at trial and is more than eight times higher than the average settlement of cases with comparable investor losses. He was also on the team of attorneys who recovered in excess of $34 million for investors in *In re OSG Sec. Litig.*, which represented an outsized recovery of 93% of bond purchasers' damages and 28% of stock purchasers' damages. The creatively structured settlement included more than $15 million paid by a bankrupt entity. In 2006, Ellman received a Volunteer and Leadership Award from Housing Conservation Coordinators (HCC) for his *pro bono* service defending a client in Housing Court against a non-payment action, arguing an appeal before the Appellate Term, and staffing HCC's legal clinic. He also successfully appealed a *pro bono* client's criminal sentence before the Appellate Division.

## Education
B.S., B.A., State University of New York at Binghamton, 1999; J.D., Georgetown University Law Center, 2003

## Honors / Awards
Super Lawyer, 2017-2018; Super Lawyer "Rising Star," 2014-2015; B.S., B.A., *Cum Laude*, State University of New York at Binghamton, 1999

# Jason A. Forge | Partner

Jason Forge is a partner in the Firm's San Diego office. He specializes in complex investigations, litigation and trials. As a federal prosecutor and private practitioner, Forge has conducted and supervised scores of jury and bench trials in federal and state courts, including the month-long trial of a defense contractor who conspired with Congressman Randy "Duke" Cunningham in the largest bribery scheme in congressional history. He recently obtained preliminary approval of a $160 million recovery in the first securities fraud case against Wal-Mart Stores, Inc. in *City of Pontiac General Employees' Retirement System v. Wal-Mart Stores, Inc.* Most recently, Forge was a member of the Firm's trial team in *Hsu v. Puma Biotechnology, Inc.*, a securities fraud class action that resulted in a verdict in favor of investors after a two-week jury trial.

Forge was a key member of the litigation team that secured a historic recovery on behalf of Trump University students in two class actions against President Donald J. Trump. The settlement refunds over 90% of the money thousands of students paid to "enroll" in Trump University. He represented the class on a *pro bono* basis. Forge has also successfully defeated motions to dismiss and obtained class certification against several prominent defendants, including the first federal RICO case againstScotts Miracle-Gro. He was a member of the litigation team that obtained a $125 million settlement in *In re LendingClub Securities Litigation*, a settlement that ranks among the top ten largest securities recoveries ever in the Northern District of California.

In a case against another prominent defendant, Pfizer Inc., Forge led an investigation that uncovered key documents that Pfizer had not produced in discovery. Although fact discovery in the case had already closed, the district judge ruled that the documents had been improperly withheld and ordered that discovery be reopened, including reopening the depositions of Pfizer's former CEO, CFO and General Counsel. Less than six months after completing these depositions, Pfizer settled the case for $400 million. Forge has also taught trial practice techniques on local and national levels, and has written and argued many state and federal appeals, including an *en banc* argument in the Ninth Circuit. He also teaches White Collar Crime at the University of San Diego School of Law.

## Education

B.B.A., The University of Michigan Ross School of Business, 1990; J.D., The University of Michigan Law School, 1993

## Honors / Awards

Best Lawyer in America, *Best Lawyers®*, 2019; Plaintiffs' Lawyer Trailblazer, *The National Law Journal*, 2018; Top 100 Lawyer, *Daily Journal*, 2017; Litigator of the Year, *Our City San Diego*, 2017; Two-time recipient of one of Department of Justice's highest awards: Director's Award for Superior Performance by Litigation Team; numerous commendations from Federal Bureau of Investigation (including commendation from FBI Director Robert Mueller III), Internal Revenue Service, and Defense Criminal Investigative Service; J.D., *Magna Cum Laude*, Order of the Coif, The University of Michigan Law School, 1993; B.B.A., High Distinction, The University of Michigan Ross School of Business, 1990

# Paul J. Geller | Partner

Paul Geller, managing partner of Robbins Geller Rudman & Dowd LLP's Boca Raton, Florida office, is a founding partner of the Firm, a member of its Executive and Management Committees and head of the Firm's Consumer Practice Group.  Geller's 25 years of litigation experience is broad, and he has handled cases in each of the Firm's practice areas.  Notably, before devoting his practice to the representation of consumers and investors, he defended companies in high-stakes class action litigation, providing him an invaluable perspective.  Geller has tried bench and jury trials on both the plaintiffs' and defendants' sides, and has argued before numerous state, federal and appellate courts throughout the country.

Geller was recently selected to serve in a leadership position on behalf of governmental entities and other plaintiffs in the sprawling litigation concerning the nationwide prescription opioid epidemic.  In reporting on the selection of the lawyers to lead the case, *The National Law Journal* reported that Geller and "[t]he team reads like a 'Who's Who' in mass torts."  Geller was also part of the leadership team representing consumers in the massive *Volkswagen "Clean Diesel" Emissions* case.  The San Francisco legal newspaper *The Recorder* labeled Geller and the group that was appointed in that case, which settled for more than $17 billion, a "class action dream team."

Geller is also currently serving  as Co-Lead Counsel in *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, a nationwide class action that alleges that pharmaceutical company Mylan N.V. and others engaged in anticompetitive and unfair business conduct in its sale and marketing of the EpiPen Auto-Injector device.

Some of Geller's other recent noteworthy successes include a $265 million recovery against Massey Energy in *In re Massey Energy Co. Sec. Litig.*, in which Massey was found accountable for a tragic explosion at the Upper Big Branch mine in Raleigh County, West Virginia.  Geller also secured a $146.25 million recovery against Duke Energy in *Nieman v. Duke Energy Corp.*, the largest recovery in North Carolina for a case involving securities fraud, and one of the five largest recoveries in the Fourth Circuit.

## Education

B.S., University of Florida, 1990; J.D., Emory University School of Law, 1993

## Honors / Awards

Best Lawyer in America, *Best Lawyers*®, 2017-2019; Rated AV by Martindale-Hubbell; Fellow, Litigation Counsel of America (LCA) Proven Trial Lawyers; Leading Lawyer in America, *Lawdragon*, 2006-2007, 2009-2019; Super Lawyer, 2007-2018; Plaintiffs' Lawyer Trailblazer, *The National Law Journal*, 2018; Lawyer of the Year, *Best Lawyers*®, 2018; Attorney of the Month, *Attorney At Law*, 2017; Featured in "Lawyer Limelight" series, *Lawdragon*, 2017; Recommended Lawyer, *The Legal 500*, 2016; Top Rated Lawyer, South Florida's Legal Leaders, *Miami Herald*, 2015; Litigation Star, *Benchmark Litigation*, 2013; "Legal Elite," *Florida Trend Magazine*; One of "Florida's Most Effective Lawyers," *American Law Media*, One of Florida's top lawyers in *South Florida Business* Journal, One of the Nation's Top "40 Under 40," *The National Law Journal*; One of Florida's Top Lawyers, *Law & Politics*; Editor, *Emory Law Journal*; Order of the Coif, Emory University School of Law

Case 3:21-cv-00444-D-N Document 126-9 Filed 04/19/24 Page 347 of 586 PageID# 5535
Case 1:16-cv-01031-TSE-MSN Document 453 Filed 04/26/19 Page 93 of 158 PageID# 9066
ATTORNEY BIOGRAPHIES

# Christopher C. Gold | Partner

Christopher Gold is a partner in the Firm's Boca Raton office. His practice focuses on merger and acquisition, securities fraud, and consumer fraud litigation.

Gold is licensed to practice in Florida at both the state and the federal level and has worked on a number of notable cases, including: *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.* (S.D. Cal.), involving the massive data breach of Sony's PlayStation Network in 2011, which settled for benefits valued at $15 million; *In re Winn-Dixie Stores, Inc. S'holder Litig.* (Fla. 4th Cir. Ct.), which recovered $9 million for former Winn-Dixie shareholders following the corporate buyout by BI-LO, the then-largest merger and acquisition recovery in Florida history; *In re AuthenTec, Inc. S'holder Litig.* (Fla. 18th Cir. Ct.), which settled for $10 million (a new Florida record) on behalf of the former shareholders of AuthenTec following a buyout by Apple, which incorporated AuthenTec's fingerprint technology into the Apple iPhone; and *Boland v. Gerdau S.A., et al.* (S.D.N.Y.), which settled for $15 million.

## Education
B.S., Lynn University, 2006; J.D., DePaul University College of Law, 2010

# Jonah H. Goldstein | Partner

Jonah Goldstein is a partner in the Firm's San Diego office and is responsible for prosecuting complex securities cases and obtaining recoveries for investors. He also represents corporate whistleblowers who report violations of the securities laws. Goldstein has achieved significant settlements on behalf of investors including in *In re HealthSouth Sec. Litig.* (over $670 million recovered against HealthSouth, UBS and Ernst & Young), *In re Cisco Sec. Litig.* (approximately $100 million), and *Marcus v. J.C. Penney Company, Inc.* ($97.5 million recovery). Goldstein also served on the Firm's trial team in *In re AT&T Corp. Sec. Litig.*, MDL No. 1399 (D.N.J.), which settled after two weeks of trial for $100 million, and aided in the $65 million recovery in *Garden City Emps.' Ret. Sys. v. Psychiatric Solutions, Inc.*, the third largest securities recovery ever in the Middle District of Tennessee and the largest in more than a decade. Most recently, he was part of the litigation team in *Luna v. Marvell Tech. Grp., Ltd.*, resulting in a $72.5 million settlement that represents approximately 24% to 50% of the best estimate of classwide damages suffered by investors. Prior to joining the Firm, Goldstein served as a law clerk for the Honorable William H. Erickson on the Colorado Supreme Court and as an Assistant United States Attorney for the Southern District of California, where he tried numerous cases and briefed and argued appeals before the Ninth Circuit Court of Appeals.

## Education
B.A., Duke University, 1991; J.D., University of Denver College of Law, 1995

## Honors / Awards
Recommended Lawyer, *The Legal 500*, 2018; Comments Editor, *University of Denver Law Review*, University of Denver College of Law

Case 3:21-cv-00444-DLN Document 126-9 Filed 04/19/24 Page 348 of 586 PageID#
5536
Case 1:16-cv-01031-TSE-MSN Document 453 Filed 04/26/19 Page 349 of 586 PageID# 9667
ATTORNEY BIOGRAPHIES

## Benny C. Goodman III | Partner

Benny Goodman is a partner in the Firm's San Diego office. He primarily represents plaintiffs in shareholder actions on behalf of aggrieved corporations. Goodman has recovered hundreds of millions of dollars in shareholder derivative actions pending in state and federal courts across the nation. Most recently, he led a team of lawyers in litigation brought on behalf of Community Health Systems, Inc., resulting in a $60 million payment to the company, the largest recovery in a shareholder derivative action in Tennessee and the Sixth Circuit, as well as best in class value enhancing corporate governance reforms that included two shareholder nominated directors to the Community Health Board of Directors.

Similarly, Goodman recovered a $25 million payment to Lumber Liquidators and numerous corporate governance reforms, including a shareholder nominated director, in *In re Lumber Liquidators Holdings, Inc. S'holder Derivative Litig.* In *In re Google Inc. S'holder Derivative Litig.*, Goodman achieved groundbreaking corporate governance reforms designed to mitigate regulatory and legal compliance risk associated with online pharmaceutical advertising, including among other things, the creation of a $250 million fund to help combat rogue pharmacies from improperly selling drugs online.

### Education
B.S., Arizona State University, 1994; J.D., University of San Diego School of Law, 2000

### Honors / Awards
Super Lawyer, 2018-2019; Recommended Lawyer, *The Legal 500*, 2017

## Elise J. Grace | Partner

Elise Grace is a partner in the San Diego office and counsels the Firm's institutional clients on options to secure premium recoveries in securities litigation both within the United States and internationally. Grace is a frequent lecturer and author on securities and accounting fraud, and develops annual MCLE and CPE accredited educational programs designed to train public fund representatives on practices to protect and maximize portfolio assets, create long-term portfolio value and best fulfill fiduciary duties. Grace has routinely been named a Recommended Lawyer by *The Legal 500*. Grace has prosecuted various significant securities fraud class actions, as well as the AOL Time Warner state and federal securities opt-out litigations, which resulted in a combined settlement of over $629 million for defrauded investors. Prior to joining the Firm, Grace practiced at Clifford Chance, where she defended numerous Fortune 500 companies in securities class actions and complex business litigation.

### Education
B.A., University of California, Los Angeles, 1993; J.D., Pepperdine School of Law, 1999

### Honors / Awards
Recommended Lawyer, *The Legal 500*, 2016-2017; J.D., *Magna Cum Laude*, Pepperdine School of Law, 1999; American Jurisprudence Bancroft-Whitney Award – Civil Procedure, Evidence, and Dalsimer Moot Court Oral Argument; Dean's Academic Scholarship Recipient, Pepperdine School of Law; B.A., *Summa Cum Laude*, University of California, Los Angeles, 1993; B.A., *Phi Beta Kappa*, University of California, Los Angeles, 1993

# Tor Gronborg | Partner

Tor Gronborg is a partner in the Firm's San Diego office and a member of the Firm's Management Committee. He often lectures on topics such as the Federal Rules of Civil Procedure and electronic discovery. Gronborg has served as lead or co-lead counsel in numerous securities fraud cases that have collectively recovered nearly $2 billion for investors. Most recently, he was a member of the Firm's trial team in *Hsu v. Puma Biotechnology, Inc.*, No. SACV15-0865 (C.D. Cal.), a securities fraud class action that resulted in a verdict in favor of investors after a two-week jury trial.

Gronborg's work has included significant recoveries against corporations such as Cardinal Health ($600 million), Motorola ($200 million), Duke Energy ($146.25 million), Sprint Nextel Corp. ($131 million), Prison Realty ($104 million), CIT Group ($75 million), Wyeth ($67.5 million) and Intercept Pharmaceuticals ($55 million). On three separate occasions, Gronborg's pleadings have been upheld by the federal Courts of Appeals (*Broudo v. Dura Pharm., Inc.*, 339 F.3d 933 (9th Cir. 2003), *rev'd on other grounds*, 544 U.S. 336 (2005); *In re Daou Sys.*, 411 F.3d 1006 (9th Cir. 2005); *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406 (2d Cir. 2008)). He has also been responsible for a number of significant rulings, including *In re Sanofi-Aventis Sec. Litig.*, 293 F.R.D. 449 (S.D.N.Y. 2013); *Silverman v. Motorola, Inc.*, 798 F. Supp. 2d 954 (N.D. Ill. 2011); *Roth v. Aon Corp.*, No. 04-C-6835, 2008 U.S. Dist. LEXIS 18471 (N.D. Ill. Mar. 7, 2008); *In re Cardinal Health, Inc. Sec. Litigs.*, 426 F. Supp. 2d 688 (S.D. Ohio 2006); and *In re Dura Pharm., Inc. Sec. Litig.*, 452 F. Supp. 2d 1005 (S.D. Cal. 2006).

## Education

B.A., University of California, Santa Barbara, 1991; Rotary International Scholar, University of Lancaster, U.K., 1992; J.D., University of California, Berkeley, 1995

## Honors / Awards

Super Lawyer, 2013-2019; Moot Court Board Member, University of California, Berkeley; AFL-CIO history scholarship, University of California, Santa Barbara

# Ellen Gusikoff Stewart | Partner

Ellen Stewart is a partner in the Firm's San Diego office, and is a member of the Firm's Summer Associate Hiring Committee. She currently practices in the Firm's settlement department, negotiating and documenting complex securities, merger, ERISA and derivative action settlements. Notable settlements include: *KBC Asset Management v. 3D Systems Corp.* (D.S.C. 2018) ($50 million); *Luna v. Marvell Tech. Grp.* (N.D. Cal. 2018) ($72.5 million); *Garden City Emps.' Ret. Sys. v. Psychiatric Solutions, Inc.* (M.D. Tenn. 2015) ($65 million); and *City of Sterling Heights Gen. Emps.' Ret. Sys v. Hospira, Inc.* (N.D. Ill. 2014) ($60 million).

Stewart has served on the Federal Bar Association Ad Hoc Committee for the revisions to the Settlement Guidelines for the Northern District of California and was a contributor to the Guidelines and Best Practices – Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions manual of the Bolch Judicial Institute at the Duke University School of Law.

## Education
B.A., Muhlenberg College, 1986; J.D., Case Western Reserve University, 1989

## Honors / Awards
Peer-Rated by Martindale-Hubbell

# Robert Henssler | Partner

Bobby Henssler is a partner in the Firm's San Diego office, where he focuses his practice on securities fraud and other complex civil litigation. He has obtained significant recoveries for investors in cases such as *Enron*, *Blackstone* and *CIT Group*. Henssler is currently a key member of the team of attorneys prosecuting fraud claims against Goldman Sachs stemming from Goldman's conduct in subprime mortgage transactions (including "Abacus").

Most recently, Henssler served on the litigation team for *Schuh v. HCA Holdings, Inc.*, which resulted in a $215 million recovery for shareholders, the largest securities class action recovery ever in Tennessee. The recovery achieved approximately 70% of classwide damages, which as a percentage of damages significantly exceeds the median class action recovery of 2%-3% of damages. Henssler was also part of the litigation teams for *Marcus v. J.C. Penney Company, Inc.* ($97.5 million recovery); *Landmen Partners Inc. v. The Blackstone Group L.P.* ($85 million recovery); *In re Novatel Wireless Sec. Litig.* ($16 million recovery); *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC* ($14 million settlement); and *Kmiec v. Powerwave Technologies, Inc.* ($8.2 million settlement).

## Education
B.A., University of New Hampshire, 1997; J.D., University of San Diego School of Law, 2001

## Honors / Awards
Recommended Lawyer, *The Legal 500*, 2018

# Dennis J. Herman | Partner

Dennis Herman is a partner in the Firm's San Francisco office where he focuses his practice on securities class actions. He has led or been significantly involved in the prosecution of numerous securities fraud claims that have resulted in substantial recoveries for investors, including settled actions against Massey Energy ($265 million), Coca-Cola ($137 million), VeriSign ($78 million), Psychiatric Solutions, Inc. ($65 million), St. Jude Medical, Inc. ($50 million), NorthWestern ($40 million), BancorpSouth ($29.5 million), America Service Group ($15 million), Specialty Laboratories ($12 million), Stellent ($12 million) and Threshold Pharmaceuticals ($10 million).

## Education
B.S., Syracuse University, 1982; J.D., Stanford Law School, 1992

## Honors / Awards
Best Lawyer in America, *Best Lawyers®*, 2018-2019; Super Lawyer, 2017-2018; Order of the Coif, Stanford Law School; Urban A. Sontheimer Award (graduating second in his class), Stanford Law School; Award-winning Investigative Newspaper Reporter and Editor in California and Connecticut

# John Herman | Partner

John Herman is a partner at the Firm, the Chair of the Firm's Intellectual Property and Technology Practice and manages the Firm's Atlanta office. His practice focuses on complex civil litigation, with a particular emphasis on high technology matters. His experience includes securities, patent, antitrust, data breach, whistleblower and class action litigation. Herman also has significant first chair trial experience, handling numerous cases through verdict in both federal and state courts. Herman has worked on many noteworthy cases and successfully achieved favorable results for his clients. His notable cases include a recent derivative settlement of $60 million on behalf of Community Health Systems, as well as leading a team of attorneys enforcing the 3Com Ethernet patents, winning two jury trial victories in federal court. Herman also represented renowned inventor Ed Phillips in the landmark case *of Phillips v. AWH Corp.* He has represented the pioneers of mesh technology – David Petite, Edwin Brownrigg and SIPCO – in connection with their mesh technology portfolio. Herman has also worked on numerous class action cases, including acting as lead plaintiffs' counsel in the Home Depot shareholder derivative action, which achieved landmark corporate governance reforms for investors.

## Education
B.S., Marquette University, 1988; J.D., Vanderbilt University Law School, 1992

## Honors / Awards
Fellow, Litigation Counsel of America (LCA) Proven Trial Lawyers; Super Lawyer, 2005-2010, 2017-2019; Top Lawyers, *Atlanta Magazine*, 2017; Top 100 Georgia Super Lawyers list, 2007; One of "Georgia's Most Effective Lawyers," *Legal Trend*; John Wade Scholar, Vanderbilt University Law School; Editor-in-Chief, *Vanderbilt Journal*, Vanderbilt University Law School; B.S., *Summa Cum Laude*, Marquette University, 1988

Case 3:21-cv-00444-BJM Document 126-9 Filed 04/19/24 Page 353 of 586 PageID#
5540
Case 1:16-cv-01031-TSE-MSN Document 453 Filed 04/26/19 Page 103 of 158 PageID# 8671

## Steven F. Hubachek | Partner

Steve Hubachek is a partner in the Firm's San Diego office. He is a member of the Firm's appellate group, where his practice concentrates on federal appeals. He has more than 25 years of appellate experience, has argued over 100 federal appeals, including 3 cases before the United States Supreme Court and 7 cases before en banc panels of the Ninth Circuit Court of Appeals. Prior to his work with the Firm, Hubachek joined Perkins Coie in Seattle, Washington, as an associate. He was admitted to the Washington State Bar in 1987 and was admitted to the California State Bar in 1990, practicing for many years with Federal Defenders of San Diego, Inc. He also had an active trial practice, including over 30 jury trials, and was Chief Appellate Attorney for Federal Defenders.

### Education
B.A., University of California, Berkeley, 1983; J.D., Hastings College of the Law, 1987

### Honors / Awards
AV rated by Martindale-Hubbell; Top Lawyer in San Diego, *San Diego Magazine*, 2014-2019; Super Lawyer, 2007-2009, 2019; Assistant Federal Public Defender of the Year, National Federal Public Defenders Association, 2011; Appellate Attorney of the Year, San Diego Criminal Defense Bar Association, 2011 (co-recipient); President's Award for Outstanding Volunteer Service, Mid City Little League, San Diego, 2011; E. Stanley Conant Award for exceptional and unselfish devotion to protecting the rights of the indigent accused, 2009 (joint recipient); *The Daily Transcript* Top Attorneys, 2007; J.D., *Cum Laude*, Order of the Coif, Thurston Honor Society, Hastings College of Law, 1987

## Maxwell R. Huffman | Partner

Maxwell Huffman is a partner in the Firm's San Diego office. He focuses his practice on representing both institutional and individual shareholders in securities class action litigation in the context of mergers and acquisitions. Huffman was part of the litigation team for *In re Dole Food Co., Inc. Stockholder Litig.*, where he went to trial in the Delaware Court of Chancery on claims of breach of fiduciary duty on behalf of Dole Food Co., Inc. shareholders and obtained $148 million, the largest trial verdict ever in a class action challenging a merger transaction.

### Education
B.A., California State University, Sacramento, 2005; J.D., Gonzaga University School of Law, 2009

### Honors / Awards
Winning Litigator, *The National Law Journal*, 2018

# James I. Jaconette | Partner

James Jaconette is one of the founding partners of the Firm and is located in its San Diego office. He manages cases in the Firm's securities class action and shareholder derivative litigation practices. He has served as one of the lead counsel in securities cases with recoveries to individual and institutional investors totaling over $8 billion. He also advises institutional investors, including hedge funds, pension funds and financial institutions. Landmark securities actions in which he contributed in a primary litigating role include *In re Informix Corp. Sec. Litig.*, and *In re Dynegy Inc. Sec. Litig.* and *In re Enron Corp. Sec. Litig.*, where he represented lead plaintiff The Regents of the University of California. Most recently, Jaconette was part of the trial team in *Schuh v. HCA Holdings, Inc.*, which resulted in a $215 million recovery for shareholders, the largest securities class action recovery ever in Tennessee. The recovery achieved approximately 70% of classwide damages, which as a percentage of damages significantly exceeds the median class action recovery of 2%-3% of damages.

## Education

B.A., San Diego State University, 1989; M.B.A., San Diego State University, 1992; J.D., University of California Hastings College of the Law, 1995

## Honors / Awards

J.D., *Cum Laude*, University of California Hastings College of the Law, 1995; Associate Articles Editor, *Hastings Law Journal*, University of California Hastings College of the Law; B.A., with Honors and Distinction, San Diego State University, 1989

# Rachel L. Jensen | Partner

Rachel Jensen is a partner in the Firm's San Diego office. For 16 years, Jensen has developed a track record of success in helping to craft impactful business reforms and recover billions on behalf of individuals, businesses, and government entities injured by unlawful business practices, fraudulent schemes, and hazardous products.

Jensen was one of the lead attorneys who secured a historic recovery on behalf of Trump University students nationwide in two class actions against President Donald J. Trump. The settlement provided $25 million and provided nearly 100% refunds to 7,000 class members. Jensen represented the class on a *pro bono* basis. She was appointed by Judge Chen to serve on the Plaintiffs' Steering Committee in multidistrict litigation ("MDL") against Fiat Chrysler and Bosch for installing and concealing defeat devices in "EcoDiesel" SUVs and trucks; a global $840 million settlement is pending approval. Jensen also serves as one of class counsel in a RICO class action against Scotts Miracle-Gro for selling wild bird food treated with pesticides that are hazardous to birds; a class action settlement of up to $85 million is pending approval. Additionally, Jensen represents drivers against Volkswagen in one of the most brazen corporate frauds in recent history and helped recover $17 billion; represents California passengers in a consumer and civil rights case against Greyhound for voluntarily subjecting its paying customers to discriminatory immigration raids; and serves as one of the lead counsel for policyholders against certain Lloyd's Syndicates for collusive practices in the Lloyd's market.

Among other recoveries, Jensen has played significant roles in *In re LendingClub Sec. Litig.*, No. 3:16-cv-02627-WHA (N.D. Cal.) ($125 million settlement that ranks among the top ten largest securities recoveries ever in the Northern District of California); *Negrete v. Allianz Life Ins. Co. of N. Am.*, No. CV056838CAS(MANx) (C.D. Cal.) ($250 million to senior citizens targeted for exorbitant deferred annuities that would not mature in their lifetimes); *In re Ins. Brokerage Antitrust Litig.*, No. 04-5184(CCC) (D.N.J.) ($200 million recovered for policyholders who paid inflated premiums due to kickback scheme among major insurers and brokers); *City of Westland Police & Fire Ret. Sys. v. Stumpf*, No. 3:11-cv-02369-SI (N.D. Cal.) ($67 million in homeowner down-payment assistance and credit counseling for cities hardest hit by the foreclosure crisis and computer integration for mortgage servicing segments in derivative settlement with Wells Fargo for "robo-signing" of foreclosure affidavits); *In re Mattel, Inc., Toy Lead Paint Prods. Liab. Litig.*, No. 2:07-ml-01897-DSF-AJW (C.D. Cal.) ($50 million in refunds and quality assurance business reforms for toys made in China with lead and magnets); *In re Checking Account Overdraft Litig.*, No. 1:09-md-2036-JLK (S.D. Fla.) ($500 million in settlements with major banks for manipulating debit transactions to maximize overdraft fees).

## Education

B.A., Florida State University, 1997; University of Oxford, International Human Rights Law Program at New College, Summer 1998; J.D., Georgetown University Law School, 2000

## Honors / Awards

Leading Lawyer in America, *Lawdragon*, 2017-2019; Super Lawyer, 2016-2019; Plaintiffs' Lawyer Trailblazer, *The National Law Journal*, 2018; Top Woman Lawyer, *Daily Journal*, 2017; Super Lawyer "Rising Star," 2015; Nominated for 2011 Woman of the Year, *San Diego Magazine*; Editor-in-Chief, *First Annual Review of Gender and Sexuality Law*, Georgetown University Law School; Dean's List 1998-1999; B.A., *Cum Laude*, Florida State University's Honors Program, 1997; *Phi Beta Kappa*

# Steven M. Jodlowski | Partner

Steven Jodlowski is a partner in the Firm's San Diego office. His practice focuses on high-stakes complex litigation, often involving antitrust, securities and consumer claims. In recent years, he has specialized in representing investors in a series of antitrust actions involving the manipulation of benchmark rates, including the ISDAfix Benchmark litigation, which to date has resulted in the recovery of $504.5 million on behalf of investors, *In re Treasuries Sec. Auction Antitrust Litig.*, and *In re SSA Bonds Antitrust Litig.* Jodlowski was also part of the trial team in an antitrust monopolization case against a multinational computer and software company.

Jodlowski has successfully prosecuted numerous antitrust and RICO cases. These cases resulted in the recovery of more than $1 billion for investors and policyholders. Jodlowski has also represented institutional and individual shareholders in corporate takeover actions in state and federal court. He has handled pre- and post-merger litigation stemming from the acquisition of publicly listed companies in the biotechnology, oil and gas, information technology, specialty retail, electrical, banking, finance and real estate industries, among others.

## Education
B.B.A., University of Central Oklahoma, 2002; J.D., California Western School of Law, 2005

## Honors / Awards
Super Lawyer "Rising Star," 2015-2019; Outstanding Antitrust Litigation Achievement in Private Law Practice, American Antitrust Institute, 2018; CAOC Consumer Attorney of the Year Award Finalist, 2015; J.D., *Cum Laude*, California Western School of Law, 2005

# Peter M. Jones | Partner

Peter Jones is a partner in the Firm's Atlanta office. He has experience handling a wide range of complex civil litigation matters, including securities, intellectual property, whistleblower, product liability, premises liability, class action and commercial disputes. Jones has significant trial experience in both federal and state courts. Before joining the Firm, Jones practiced at King & Spalding LLP and clerked for the Honorable J.L. Edmondson, then Chief Judge of the United States Court of Appeals for the Eleventh Circuit.

## Education
B.A., University of the South, 1999; J.D., University of Georgia School of Law, 2003

## Honors / Awards
Super Lawyer "Rising Star," 2012-2013; Member, *Georgia Law Review*, Order of the Barristers, University of Georgia School of Law

# Evan J. Kaufman | Partner

Evan Kaufman is a partner in the Firm's Melville office. He focuses his practice in the area of complex litigation, including securities, ERISA, corporate fiduciary duty, derivative, and consumer fraud class actions. Kaufman has served as lead counsel or played a significant role in numerous actions, including *In re TD Banknorth S'holders Litig.* ($50 million recovery); *In re Gen. Elec. Co. ERISA Litig.* ($40 million cost to GE, including significant improvements to GE's employee retirement plan, and benefits to GE plan participants valued in excess of $100 million); Energy*Solutions*, Inc. Sec. Litig. ($26 million recovery); Lockheed Martin Corp. Sec. Litig. ($19.5 million recovery); *In re Warner Chilcott Ltd. Sec. Litig.* ($16.5 million recovery); *In re Third Avenue Mgmt. Sec. Litig.* ($14.25 million recovery); *In re Giant Interactive Grp., Inc. Sec. Litig.* ($13 million recovery); *In re Royal Grp. Tech. Sec. Litig.* ($9 million recovery); Fidelity Ultra Short Bond Fund Litig. ($7.5 million recovery); *In re Audiovox Derivative Litig.* ($6.75 million recovery and corporate governance reforms); State Street Yield Plus Fund Litig. ($6.25 million recovery); *In re Merrill Lynch & Co., Inc., Internet Strategies Sec. Litig.* (resolved as part of a $39 million global settlement); and *In re MONY Grp., Inc. S'holder Litig.* (obtained preliminary injunction requiring disclosures in proxy statement).

## Education
B.A., University of Michigan, 1992; J.D., Fordham University School of Law, 1995

## Honors / Awards
Super Lawyer, 2013-2015, 2017-2018; Member, *Fordham International Law Journal*, Fordham University School of Law

Case 1:16-cv-01031-TSE-MSN   Document 453   Filed 04/26/19   Page 108 of 158 PageID# 8676

# David A. Knotts | Partner

David Knotts is a partner in the Firm's San Diego office and, in addition to ongoing litigation work, teaches a full-semester course on M&A litigation at the University of California Berkeley School of Law. He focuses his practice on securities class action litigation in the context of mergers and acquisitions, representing both individual shareholders and institutional investors.  Knotts has been counsel of record for shareholders on a number of significant recoveries in courts and throughout the country, including *In re Rural/Metro Corp. Stockholders Litig.* (nearly $110 million total recovery, affirmed by the Delaware Supreme Court in *RBC v. Jervis*), *In re Del Monte Foods Co. S'holders Litig.* ($89.4 million), *Websense* ($40 million), *In re Onyx S'holders Litig.* ($30 million), and *Joy Global* ($20 million).  *Websense* and *Onyx* are both believed to be the largest post-merger class settlements in California state court history.  When Knotts recently presented the settlement as lead counsel for the stockholders in *Joy Global*, the United States District Court for the Eastern District of Wisconsin noted that "this is a pretty extraordinary settlement, recovery on behalf of the members of the class. . . . [I]t's always a pleasure to work with people who are experienced and who know what they are doing."

Before joining Robbins Geller, Knotts was an associate at one of the largest law firms in the world and represented corporate clients in various aspects of state and federal litigation, including major antitrust matters, trade secret disputes and unfair competition claims.

## Education
B.S., University of Pittsburgh, 2001; J.D., Cornell Law School, 2004

## Honors / Awards
40 & Under Hot List, *Benchmark Litigation*, 2018; Recommended Lawyer, *The Legal 500*, 2017-2018; Wiley W. Manuel Award for Pro Bono Legal Services, State Bar of California; Casa Cornelia Inns of Court; J.D., *Cum Laude*, Cornell Law School, 2004

# Laurie L. Largent | Partner

Laurie Largent is a partner in the Firm's San Diego, California office. Her practice focuses on securities class action and shareholder derivative litigation and she has helped recover millions of dollars for injured shareholders. Largent was part of the litigation team that obtained a $265 million recovery in *In re Massey Energy Co. Sec. Litig.*, in which Massey was found accountable for a tragic explosion at the Upper Big Branch mine in Raleigh County, West Virginia. She also helped obtain $67.5 million for Wyeth shareholders in *City of Livonia Employees' Retirement System v. Wyeth, et al.*, settling claims that the defendants misled investors about the safety and commercial viability of one of the company's leading drug candidates. Most recently, Largent was on the team that secured a $64 million recovery for Dana Corp. shareholders in *Plumbers & Pipefitters National Pension Fund v. Burns*, in which the Firm's Appellate Practice Group successfully appealed to the Sixth Circuit Court of Appeals twice, reversing the district court's dismissal of the action. She has been a board member on the San Diego County Bar Foundation and the San Diego Volunteer Lawyer Program since 2014. Largent has also served as an Adjunct Business Law Professor at Southwestern College in Chula Vista, California.

## Education
B.B.A., University of Oklahoma, 1985; J.D., University of Tulsa, 1988

## Honors / Awards
Board Member, San Diego County Bar Foundation, 2014-present; Board Member, San Diego Volunteer Lawyer Program, 2014-present

## Angel P. Lau | Partner

Angel Lau is a partner in Robbins Geller Rudman & Dowd LLP's San Diego office, where her practice focuses on complex securities litigation. She is a member of the litigation team prosecuting actions against investment banks and the leading national credit rating agencies for their role in structuring and rating structured investment vehicles. These cases are among the first to successfully allege fraud against the rating agencies, whose ratings have historically been protected by the First Amendment.

As part of the Firm's litigation team, Lau helped secure a $388 million recovery for investors in J.P. Morgan residential mortgage-backed securities in *Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.* The resulting settlement is, on a percentage basis, the largest recovery ever achieved in a class action brought on behalf of purchasers of RMBS. She was part of the litigation team that obtained a landmark $272 million recovery from the Second Circuit Court of Appeals in its precedent-setting *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.* decision, which dramatically expanded the scope of permissible class actions asserting claims under the Securities Act of 1933 on behalf of mortgage-backed securities investors. Additionally, Lau also helped to obtain a landmark settlement, on the eve of trial, from the major credit rating agencies and Morgan Stanley arising out of the fraudulent ratings of bonds issued by the structured investment vehicles in *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.* Prior to joining the Firm, Lau worked at an investment bank in New York, with experience in arbitrage trading and securitized products.

## Education

B.A., Stanford University, 1994; J.D., University of San Diego School of Law, 2012

# Arthur C. Leahy | Partner

Art Leahy is a founding partner in the Firm's San Diego office and a member of the Firm's Executive and Management Committees. He has over 20 years of experience successfully litigating securities actions and derivative cases. Leahy has recovered well over two billion dollars for the Firm's clients and has negotiated comprehensive pro-investor corporate governance reforms at several large public companies. Most recently, Leahy helped secure a $272 million recovery on behalf of mortgage-backed securities investors in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co*. In the *Goldman* Sachs case, he helped achieve favorable decisions in the Second Circuit Court of Appeals on behalf of investors of Goldman Sachs mortgage-backed securities and again in the Supreme Court, which denied Goldman Sachs' petition for certiorari, or review, of the Second Circuit's reinstatement of the plaintiff's case. He was also part of the Firm's trial team in the AT&T securities litigation, which AT&T and its former officers paid $100 million to settle after two weeks of trial. Prior to joining the Firm, he served as a judicial extern for the Honorable J. Clifford Wallace of the United States Court of Appeals for the Ninth Circuit, and served as a judicial law clerk for the Honorable Alan C. Kay of the United States District Court for the District of Hawaii.

## Education

B.A., Point Loma Nazarene University, 1987; J.D., University of San Diego School of Law, 1990

## Honors / Awards

Top Lawyer in San Diego, *San Diego Magazine*, 2013-2019; Super Lawyer, 2016-2017; J.D., *Cum Laude*, University of San Diego School of Law, 1990; Managing Editor, *San Diego Law Review*, University of San Diego School of Law

# Nathan R. Lindell | Partner

Nate Lindell is a partner in the Firm's San Diego office, where his practice focuses on representing aggrieved investors in complex civil litigation. He has helped achieve numerous significant recoveries for investors, including: *In re Enron Corp. Sec. Litig.* (**$7.2** billion recovery); *In re HealthSouth Corp. Sec. Litig.* ($671 million recovery); *Luther v. Countrywide Fin. Corp.* ($500 million recovery); *Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.* ($388 million recovery); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.* ($272 million recovery); *In re Morgan Stanley Mortgage Pass-Through Certificates Litig.* ($95 million recovery); *Massachusetts Bricklayers and Masons Trust Funds v. Deutsche Alt-A Securities, Inc.* ($32.5 million recovery); *City of Ann Arbor Employees' Ret. Sys. v. Citigroup Mortgage Loan Trust Inc.* ($24.9 million recovery); and *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.* ($21.2 million recovery). In October 2016, Lindell successfully argued in front of the New York Supreme Court, Appellate Division, First Judicial Department, for the reversal of an earlier order granting defendants' motion to dismiss in *Phoenix Light SF Limited, et al. v. Morgan Stanley, et al.*

Lindell was also a member of the litigation team responsible for securing a landmark victory from the Second Circuit Court of Appeals in its precedent-setting *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.* decision, which dramatically expanded the scope of permissible class actions asserting claims under the Securities Act of 1933 on behalf of mortgage-backed securities investors, and ultimately resulted in a $272 million recovery for investors.

## Education
B.S., Princeton University, 2003; J.D., University of San Diego School of Law, 2006

## Honors / Awards
Super Lawyer "Rising Star," 2015-2017; Charles W. Caldwell Alumni Scholarship, University of San Diego School of Law; CALI/AmJur Award in Sports and the Law

# Ryan Llorens | Partner

Ryan Llorens is a partner in the Firm's San Diego office. Llorens' practice focuses on litigating complex securities fraud cases. He has worked on a number of securities cases that have resulted in significant recoveries for investors, including *In re HealthSouth Corp. Sec. Litig.* ($670 million); *AOL Time Warner* ($629 million); *In re AT&T Corp. Sec. Litig.* ($100 million); *In re Fleming Cos. Sec. Litig.* ($95 million); and *In re Cooper Cos., Inc. Sec Litig.* ($27 million).

## Education
B.A., Pitzer College, 1997; J.D., University of San Diego School of Law, 2002

## Honors / Awards
Super Lawyer "Rising Star," 2015

Case 3:21-cv-00444-DJN Document 126-9 Filed 04/19/24 Page 363 of 586 PageID# 8681

# Andrew S. Love | Partner

Andrew Love is a partner in the Firm's San Francisco office. His practice focuses primarily on appeals of securities fraud class action cases. Love has briefed and argued cases on behalf of defrauded investors and consumers in several U.S. Courts of Appeal, as well as in the California appellate courts. Prior to joining the Firm, Love represented inmates on California's death row in appellate and habeas corpus proceedings, successfully arguing capital cases in both the California Supreme Court and the Ninth Circuit. During his many years as a death penalty lawyer, he co-chaired the Capital Case Defense Seminar (2004-2013), recognized as the largest conference for death penalty practitioners in the country. He regularly presented at the seminar and at other conferences on a wide variety of topics geared towards effective appellate practice. Additionally, he was on the faculty of the National Institute for Trial Advocacy's Post-Conviction Skills Seminar. Love has also written several articles on appellate advocacy and capital punishment that have appeared in *The Daily Journal*, *CACJ Forum*, *American Constitution Society*, and other publications.

## Education
University of Vermont, 1981; J.D., University of San Francisco School of Law, 1985

## Honors / Awards
J.D., *Cum Laude*, University of San Francisco School of Law, 1985; McAuliffe Honor Society, University of San Francisco School of Law, 1982-1985

# Erik W. Luedeke | Partner

Erik Luedeke is a partner in the Firm's San Diego office, where his practice focuses on the prosecution of complex securities and shareholder derivative litigation. Luedeke was a member of the trial team in *Jaffe v. Household Int'l, Inc.*, No. 02-C-5893 (N.D. Ill.), a securities class action that obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs. He was also part of the litigation teams in *In re UnitedHealth Grp. Inc. PSLRA Litig.*, No. 06-CV-1691 (D. Minn.) ($925 million recovery), and *In re Questcor Pharm., Inc. Sec. Litig.*, No. 8:12-cv-01623 (C.D. Cal.) ($38 million recovery).

Currently, Luedeke is involved in prosecuting a variety of shareholder derivative actions on behalf of corporations and shareholders injured by wayward corporate fiduciaries. Notable shareholder derivative actions in which he participated and the recoveries he helped to achieve include *In re Community Health Sys., Inc. S'holder Derivative Litig.* ($60 million in financial relief and unprecedented corporate governance reforms), *In re Lumber Liquidators Holdings, Inc. S'holder Derivative Litig.* ($26 million in financial relief plus substantial governance) and *In re Google Inc. S'holder Derivative Litig.* ($250 million in financial relief to fund substantial governance).

## Education
B.S./B.A., University of California Santa Barbara, 2001; J.D., University of San Diego School of Law, 2006

## Honors / Awards
Super Lawyer "Rising Star," 2015-2017; Student Comment Editor, *San Diego International Law Journal*, University of San Diego School of Law

# Carmen A. Medici | Partner

Carmen Medici is a partner in the Firm's San Diego office and focuses on complex antitrust class action litigation and unfair competition law. He represents businesses and consumers who are the victims of price-fixing, monopolization, collusion, and other anticompetitive and unfair business practices. Medici specializes in litigation against giants in the financial, pharmaceutical and commodities industries.

A veteran of litigation in the credit card industry, Medici is currently representing merchants in *In re Payment Card Interchange Fee and Merchant Discount Litig.*, in which a settlement of up to $6.26 billion was recently preliminarily approved by the Eastern District of New York. Thought to be the largest antitrust class action case in history, the case charges Visa, MasterCard and the country's major banks with violating federal law in the allegedly collusive manner in which rules are set in the industry, including rules requiring payment of ever-increasing interchange fees by merchants. He is also a part of the co-lead counsel team in *In re SSA Bonds Antitrust Litig.*, pending in the Southern District of New York, representing bond purchasers who were defrauded by a brazen price-fixing scheme perpetrated by traders at some of the nation's largest banks. Medici is also a member of the litigation team in *In re Dealer Management Systems Antitrust Litig.*, a lawsuit brought on behalf of car dealerships pending in federal court in Chicago, where one defendant has settled for nearly $30 million.

## Education
B.S., Arizona State University, 2003; J.D., University of San Diego School of Law, 2006

## Honors / Awards
Super Lawyer "Rising Star," 2015-2019

# Matthew S. Melamed | Partner

Matt Melamed is a partner in the Firm's San Francisco office, where he focuses on complex securities litigation and whistleblower representation. Since joining the Firm, he has been a member of litigation teams responsible for substantial investor recoveries, including *Jones v. Pfizer* (S.D.N.Y.), *In re St. Jude Medical, Inc. Securities Litigation* (D. Minn.), *Oklahoma Police Pension & Retirement System v. Sientra, Inc.* (Cal. Super. Ct., San Mateo Cty.) and *In re Willbros Group, Inc. Securities Litigation* (S.D. Tex.). He has also contributed to the Firm's appellate work, including in *Mineworkers' Pension Scheme, British Coal Staff Superannuation v. First Solar, Inc.* (9th Cir.) and *China Development Industrial Bank v. Morgan Stanley & Co. Incorporated* (N.Y. App. Div.). Melamed, along with other Robbins Geller attorneys, is currently leading the effort on behalf of cities and counties around the country in *In re National Prescription Opiate Litigation*.

## Education
B.A., Wesleyan University, 1996; J.D., University of California, Hastings College of the Law, 2008

## Honors / Awards
Super Lawyer "Rising Star," 2015-2018; J.D., *Magna Cum Laude*, University of California, Hastings College of the Law, 2008; Tony Patino Fellow, University of California, Hastings College of the Law; Order of the Coif, University of California, Hastings College of the Law; Senior Articles Editor, *Hastings Law Journal*, University of California, Hastings College of the Law; Student Director, General Assistance Advocacy Project, University of California, Hastings College of the Law

# Mark T. Millkey | Partner

Mark Millkey is a partner in the Firm's Melville office. He has significant experience in the areas of securities and consumer litigation, as well as in federal and state court appeals.

During his career, Millkey has worked on a major consumer litigation against MetLife that resulted in a benefit to the class of approximately $1.7 billion, as well as a securities class action against Royal Dutch/Shell that settled for a minimum cash benefit to the class of $130 million and a contingent value of more than $180 million. Since joining Robbins Geller, he has worked on securities class actions that have resulted in approximately $300 million in settlements.

## Education

B.A., Yale University, 1981; M.A., University of Virginia, 1983; J.D., University of Virginia, 1987

## Honors / Awards

Super Lawyer, 2013-2018

# David W. Mitchell | Partner

David Mitchell is a partner in the Firm's San Diego office and focuses his practice on antitrust and securities fraud litigation. As head of the Firm's Antitrust and Competition Law Practice Group, he has served as lead or co-lead counsel in numerous cases and has helped achieve substantial settlements for shareholders. His most notable cases include *Dahl v. Bain Capital Partners, LLC*, obtaining more than $590 million for shareholders, and *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, in which a settlement of up to $6.26 billion was recently preliminarily approved by the Eastern District of New York. Thought to be the largest antitrust class action case in history, the case charges Visa, MasterCard and the country's major banks with violating federal law in the allegedly collusive manner in which rules are set in the industry, including rules requiring payment of ever-increasing interchange fees by merchants.

Additionally, Mitchell served as class counsel in the ISDAfix Benchmark action against 14 major banks and broker ICAP plc, obtaining $504.5 million for plaintiffs. Currently, Mitchell serves as court-appointed counsel in *In re Aluminum Warehousing Antitrust Litig.*, *City of Providence, Rhode Island v. BATS Global Markets Inc.*, *In re SSA Bonds Antitrust Litig.*, *In re Remicade Antitrust Litig.* and *In re 1-800 Contacts Antitrust Litig.*

## Education

B.A., University of Richmond, 1995; J.D., University of San Diego School of Law, 1998

## Honors / Awards

Member, Enright Inn of Court; Best Lawyer in America, *Best Lawyers®*, 2018-2019; Super Lawyer, 2016-2019; Honoree, Outstanding Antitrust Litigation Achievement in Private Law Practice, American Antitrust Institute, 2018; Antitrust Trailblazer, *The National Law Journal*, 2015; "Best of the Bar," *San Diego Business Journal*, 2014

# Maureen E. Mueller | Partner

Maureen Mueller is a partner in the Firm's Boca Raton office, where her practice focuses on complex securities litigation. Mueller has helped recover more than $3 billion for investors. She was a member of the Firm's trial team in *Jaffe v. Household Int'l, Inc.*, No. 02-C-05893 (N.D. Ill.), a securities class action that obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs. She was also a member of the team of attorneys responsible for recovering a record-breaking $925 million for investors in the *UnitedHealth* litigation, *In re UnitedHealth Grp. Inc. PSLRA Litig.*, No. 06-CV-1216 (JMR/FLN) (D. Minn.), and served as co-lead counsel in *In re Wachovia Preferred Securities and Bond/Notes Litig.*, No. 09 Civ. 6351 (RJS) (S.D.N.Y.), which recovered $627 million. More recently, Mueller was part of the litigation team that secured a $64 million recovery for shareholders of Dana Corp. in *Plumbers & Pipefitters National Pension Fund v. Burns*, No. 3:05-cv-07393-JGC (N.D. Ohio), in which the Firm's Appellate Practice Group successfully appealed to the Sixth Circuit Court of Appeals twice, reversing the district court's dismissal of the action. She was also a member of the team of attorneys that recovered $13 million in *Burges v. BancorpSouth, Inc.*, No. 3:14-cv-01564 (M.D. Tenn.), and represented investors in *Knurr v. Orbital ATK, Inc.*, No. 1:16-cv-01031-TSE-MSN (E.D. Va.), in which the district court has preliminarily approved a $108 million settlement.

## Education

B.S., Trinity University, 2002; J.D., University of San Diego School of Law, 2007

## Honors / Awards

Next Generation Lawyer, *The Legal 500*, 2018; Top Litigator Under 40, *Benchmark Litigation*, 2017; Top Women Lawyer, *Daily Journal*, 2017; Recommended Lawyer, *The Legal 500*, 2017; Super Lawyer "Rising Star," 2015-2017; "Outstanding Young Attorneys," *San Diego Daily Transcript*, 2010; Lead Articles Editor, *San Diego Law Review*, University of San Diego School of Law

## Danielle S. Myers | Partner

Danielle Myers is a partner in the Firm's San Diego office, and focuses her practice on complex securities litigation. Myers is one of the partners that oversees the Portfolio Monitoring Program® and provides legal recommendations to the Firm's institutional investor clients on their options to maximize recoveries in securities litigation, both within the United States and internationally, from inception to settlement. In addition, Myers advises the Firm's clients in connection with lead plaintiff applications and has secured appointment of the Firm's clients as lead plaintiff in over 100 cases, including *Knurr v. Orbital ATK, Inc.*, No. 1:16-cv-01031 (E.D. Va.), *Evellard v. LendingClub Corp.*, No. 3:16-cv-02627 (N.D. Cal.), *In re Plains All American Pipeline, L.P. Sec. Litig.*, No. 4:15-cv-02404 (S.D. Tex.), *Marcus v. J.C. Penney Co., Inc.*, No. 6:13-cv-00736 (E.D. Tex.), *In re Hot Topic, Inc. Sec. Litig.*, No. 2:13-cv-02939 (C.D. Cal.), *Smilovits v. First Solar, Inc.*, No. 2:12-cv-00555 (D. Ariz.), and *In re Goldman Sachs Grp., Inc. Sec. Litig.*, No. 1:10-cv-03461 (S.D.N.Y.). Myers has obtained significant recoveries for shareholders in several cases, including: *Marcus v. J.C. Penney Co., Inc.*, No. 13-cv-00736 (E.D. Tex.) ($97.5 million recovery); *In re Hot Topic, Inc. Sec. Litig.*, No. 2:13-cv-02939 (C.D. Cal.) ($14.9 million recovery); *Genesee Cty. Emps.' Ret. Sys. v. Thornburg Mortg., Inc.*, No. 1:09-cv-00300 (D.N.M.) ($11.25 million recovery); *Goldstein v. Tongxin Int'l Ltd.*, No. 2:11-cv-00348 (C.D. Cal.) ($3 million recovery); and *Lane v. Page*, No. Civ-06-1071 (D.N.M.) (pre-merger increase in cash consideration and post-merger cash settlement). Myers is also a frequent lecturer on securities fraud and corporate governance reform at conferences and events around the world.

## Education

B.A., University of California at San Diego, 1997; J.D., University of San Diego, 2008

## Honors / Awards

Future Star, *Benchmark Litigation,* 2019; Super Lawyer "Rising Star," 2015-2018; Next Generation Lawyer, *The Legal 500,* 2017-2018; One of the "Five Associates to Watch in 2012," *Daily Journal*; Member, *San Diego Law Review*; CALI Excellence Award in Statutory Interpretation

## Eric I. Niehaus | Partner

Eric Niehaus is a partner in the Firm's San Diego office, where his practice focuses on complex securities and derivative litigation. His efforts have resulted in numerous multi-million dollar recoveries to shareholders and extensive corporate governance changes. Recent examples include: *In re NYSE Specialists Sec. Litig.* (S.D.N.Y.); *In re Novatel Wireless Sec. Litig.* (S.D. Cal.); *Batwin v. Occam Networks, Inc.* (C.D. Cal.); *Commc'ns Workers of Am. Plan for Emps.' Pensions and Death Benefits v. CSK Auto Corp.* (D. Ariz.); *Marie Raymond Revocable Tr. v. Mat Five* (Del. Ch.); and *Kelleher v. ADVO, Inc.* (D. Conn.). Niehaus is currently prosecuting cases against several financial institutions arising from their role in the collapse of the mortgage-backed securities market. Prior to joining the Firm, Niehaus worked as a Market Maker on the American Stock Exchange in New York, and the Pacific Stock Exchange in San Francisco.

## Education

B.S., University of Southern California, 1999; J.D., California Western School of Law, 2005

## Honors / Awards

Super Lawyer "Rising Star," 2015-2016; J.D., *Cum Laude*, California Western School of Law, 2005; Member, *California Western Law Review*

Case 1:16-cv-01031-TSE-MSN Document 453 Filed 04/26/19 Page 118 of 158 PageID# 8686

# Brian O. O'Mara | Partner

Brian O'Mara is a partner in the Firm's San Diego office. His practice focuses on complex securities and antitrust litigation. Since 2003, O'Mara has served as lead or co-lead counsel in numerous shareholder and antitrust actions, including: *Bennett v. Sprint Nextel Corp.* (D. Kan.) ($131 million recovery); *In re CIT Grp. Inc. Sec. Litig.* (S.D.N.Y.) ($75 million recovery); *In re MGM Mirage Sec. Litig.* (D. Nev.) ($75 million recovery); *C.D.T.S. No. 1 v. UBS AG* (S.D.N.Y.); *In re Aluminum Warehousing Antitrust Litig.* (S.D.N.Y.); and *Alaska Elec. Pension Fund v. Bank of Am. Corp.* (S.D.N.Y.). Most recently, O'Mara served as class counsel in the ISDAfix Benchmark action against 14 major banks and broker ICAP plc, obtaining $504.5 million for plaintiffs.

O'Mara has been responsible for a number of significant rulings, including*: Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 175 F. Supp. 3d 44 (S.D.N.Y. 2016); *Bennett v. Sprint Nextel Corp.*, 298 F.R.D. 498 (D. Kan. 2014); *In re MGM Mirage Sec. Litig.*, 2013 U.S. Dist. LEXIS 139356 (D. Nev. 2013*); In re Constar Int'l, Inc. Sec. Litig.*, 2008 U.S. Dist. LEXIS 16966 (E.D. Pa. 2008), *aff'd*, 585 F.3d 774 (3d Cir. 2009); *In re Direct Gen. Corp. Sec. Litig.*, 2006 U.S. Dist. LEXIS 56128 (M.D. Tenn. 2006); and *In re Dura Pharm., Inc. Sec. Litig.*, 452 F. Supp. 2d 1005 (S.D. Cal. 2006). Prior to joining the Firm, he served as law clerk to the Honorable Jerome M. Polaha of the Second Judicial District Court of the State of Nevada.

## Education

B.A., University of Kansas, 1997; J.D., DePaul University, College of Law, 2002

## Honors / Awards

Super Lawyer, 2016-2019; Outstanding Antitrust Litigation Achievement in Private Law Practice, American Antitrust Institute, 2018; CALI Excellence Award in Securities Regulation, DePaul University, College of Law

# Lucas F. Olts | Partner

Luke Olts is a partner in the Firm's San Diego office, where his practice focuses on securities litigation on behalf of individual and institutional investors. Olts has recently focused on litigation related to residential mortgage-backed securities, and has served as lead counsel or co-lead counsel in some of the largest recoveries arising from the collapse of the mortgage market. For example, he was a member of the team that recovered $388 million for investors in J.P. Morgan residential mortgage-backed securities in *Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.*, and a member of the litigation team responsible for securing a $272 million settlement on behalf of mortgage-backed securities investors in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.* Olts also served as co-lead counsel in *In re Wachovia Preferred Securities and Bond/Notes Litig.*, which recovered $627 million under the Securities Act of 1933. He also served as lead counsel in *Siracusano v. Matrixx Initiatives, Inc.*, in which the U.S. Supreme Court unanimously affirmed the decision of the Ninth Circuit that plaintiffs stated a claim for securities fraud under §10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5. Prior to joining the Firm, Olts served as a Deputy District Attorney for the County of Sacramento, where he tried numerous cases to verdict, including crimes of domestic violence, child abuse and sexual assault.

## Education

B.A., University of California, Santa Barbara, 2001; J.D., University of San Diego School of Law, 2004

## Honors / Awards

Future Star, *Benchmark Litigation*, 2018-2019; Next Generation Lawyer, *The Legal 500*, 2017; Top Litigator Under 40, *Benchmark Litigation*, 2017; Under 40 Hotlist, *Benchmark Litigation*, 2016

# Steven W. Pepich | Partner

Steve Pepich is a partner in the Firm's San Diego office. His practice has focused primarily on securities class action litigation, but has also included a wide variety of complex civil cases, including representing plaintiffs in mass tort, royalty, civil rights, human rights, ERISA and employment law actions. Pepich has participated in the successful prosecution of numerous securities class actions, including: *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, No. 1:00-CV-2838 ($137.5 million recovery); *In re Fleming Cos. Inc. Sec. & Derivative Litig.*, No. 5-03-MD-1530 ($95 million recovered); *In re Boeing Sec. Litig.*, No. C-97-1715Z ($92 million recovery); *In re Louisiana-Pacific Corp. Sec. Litig.*, No. C-95-707 ($65 million recovery); *Haw. Structural Ironworkers Pension Trust Fund v. Calpine Corp.*, No. 1-04-CV-021465 ($43 million recovery); *In re Advanced Micro Devices Sec. Litig.*, No. C-93-20662 ($34 million recovery); and *Gohler v. Wood*, No. 92-C-181 ($17.2 million recovery). Pepich was a member of the plaintiffs' trial team in *Mynaf v. Taco Bell Corp.*, which settled after two months of trial on terms favorable to two plaintiff classes of restaurant workers for recovery of unpaid wages. He was also a member of the plaintiffs' trial team in *Newman v. Stringfellow* where, after a nine-month trial in Riverside, California, all claims for exposure to toxic chemicals were ultimately resolved for $109 million.

## Education

B.S., Utah State University, 1980; J.D., DePaul University, 1983

# Daniel J. Pfefferbaum | Partner

Daniel Pfefferbaum is a partner in the Firm's San Francisco office, where his practice focuses on complex securities litigation. He has been a member of litigation teams that have recovered more than $100 million for investors, including: *Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.* ($65 million recovery); *In re PMI Grp., Inc. Sec. Litig.* ($31.25 million recovery); *Cunha v. Hansen Natural Corp.* ($16.25 million recovery); *In re Accuray Inc. Sec. Litig.* ($13.5 million recovery); and *Twinde v. Threshold Pharm., Inc.* ($10 million recovery). Pfefferbaum was a member of the litigation team that secured a historic recovery on behalf of Trump University students in two class actions against President Donald J. Trump. The settlement provides $25 million to approximately 7,000 consumers. This result means individual class members are eligible for upwards of $35,000 in restitution. He represented the class on a *pro bono* basis.

## Education
B.A., Pomona College, 2002; J.D., University of San Francisco School of Law, 2006; LL.M. in Taxation, New York University School of Law, 2007

## Honors / Awards
Future Star, *Benchmark Litigation*, 2018-2019; 40 & Under Hot List, *Benchmark Litigation*, 2016-2018; Top 40 Under 40, *Daily Journal*, 2017; Super Lawyer "Rising Star," 2013-2017

# Theodore J. Pintar | Partner

Ted Pintar is a partner in the Firm's San Diego office.  Pintar has over 20 years of experience prosecuting securities fraud actions and derivative actions and over 15 years of experience prosecuting insurance-related consumer class actions, with recoveries in excess of $1 billion.  He was part of the litigation team in the AOL Time Warner state and federal court securities opt-out actions, which arose from the 2001 merger of America Online and Time Warner.  These cases resulted in a global settlement of $618 million.  Pintar was also on the trial team in *Knapp v. Gomez*, which resulted in a plaintiff's verdict.  Pintar has successfully prosecuted several RICO cases involving the deceptive sale of deferred annuities, including cases against Allianz Life Insurance Company of North America ($250 million), American Equity Investment Life Insurance Company ($129 million), Midland National Life Insurance Company ($80 million) and Fidelity & Guarantee Life Insurance Company ($53 million).  He has participated in the successful prosecution of numerous other insurance and consumer class actions, including: (i) actions against major life insurance companies such as Manufacturer's Life ($555 million initial estimated settlement value) and Principal Mutual Life Insurance Company ($380+ million) involving the deceptive sale of life insurance; (ii) actions against major homeowners insurance companies such as Allstate ($50 million) and Prudential Property and Casualty Co. ($7 million); (iii) actions against automobile insurance companies such as the Auto Club and GEICO; and (iv) actions against Columbia House ($55 million) and BMG Direct, direct marketers of CDs and cassettes.  Additionally, Pintar has served as a panelist for numerous Continuing Legal Education seminars on federal and state court practice and procedure.

## Education

B.A., University of California, Berkeley, 1984; J.D., University of Utah College of Law, 1987

## Honors / Awards

Top Lawyer in San Diego, *San Diego Magazine*, 2013-2019; Super Lawyer, 2014-2017; CAOC Consumer Attorney of the Year Award Finalist, 2015; Note and Comment Editor, *Journal of Contemporary Law*, University of Utah College of Law; Note and Comment Editor, *Journal of Energy Law and Policy*, University of Utah College of Law

# Willow E. Radcliffe | Partner

Willow Radcliffe is a partner in the Firm's San Francisco office and concentrates her practice on securities class action litigation in federal court.  Radcliffe has been significantly involved in the prosecution of numerous securities fraud claims, including actions filed against Flowserve, NorthWestern and Ashworth, and has represented plaintiffs in other complex actions, including a class action against a major bank regarding the adequacy of disclosures made to consumers in California related to Access Checks.  Prior to joining the Firm, she clerked for the Honorable Maria-Elena James, Magistrate Judge for the United States District Court for the Northern District of California.

## Education

B.A., University of California, Los Angeles 1994; J.D., Seton Hall University School of Law, 1998

## Honors / Awards

J.D., *Cum Laude*, Seton Hall University School of Law, 1998; Most Outstanding Clinician Award; Constitutional Law Scholar Award

## Mark S. Reich | Partner

Mark Reich is a partner in the Firm's Melville office. Reich focuses his practice on challenging unfair mergers and acquisitions in courts throughout the country. Reich's notable cases include: *In re Aramark Corp. S'holders Litig.*, where he achieved a $222 million increase in consideration paid to shareholders of Aramark and a substantial reduction to management's voting power – from 37% to 3.5% – in connection with the approval of the going-private transaction; *In re Delphi Fin. Grp. S'holders Litig.*, resulting in a $49 million post-merger settlement for Class A Delphi shareholders; and *In re TD Banknorth S'holders Litig.*, where Reich played a significant role in raising the inadequacy of the $3 million initial settlement, which the court rejected as wholly inadequate, and later resulted in a vastly increased $50 million recovery.

Reich has also played a central role in other shareholder related litigation. His cases include *In re Gen. Elec. Co. ERISA Litig.*, resulting in structural changes to company's 401(k) plan valued at over $100 million, benefiting current and future plan participants, and *In re Doral Fin. Corp. Sec. Litig.*, obtaining a $129 million recovery for shareholders in a securities fraud litigation.

### Education
B.A., Queens College, 1997; J.D., Brooklyn Law School, 2000

### Honors / Awards
Super Lawyer, 2013-2018; Member, *The Journal of Law and Policy*, Brooklyn Law School; Member, Moot Court Honor Society, Brooklyn Law School

## Jack Reise | Partner

Jack Reise is a partner in the Firm's Boca Raton office. Devoted to protecting the rights of those who have been harmed by corporate misconduct, his practice focuses on class action litigation (including securities fraud, shareholder derivative actions, consumer protection, antitrust, and unfair and deceptive insurance practices). Reise also dedicates a substantial portion of his practice to representing shareholders in actions brought under the federal securities laws. He is currently serving as lead counsel in more than a dozen cases nationwide. As lead counsel, Reise represented investors in a series of cases involving mutual funds charged with improperly valuating their net assets, which settled for a total of more than $50 million. Other notable actions include: *In re NewPower Holdings Sec. Litig.* ($41 million settlement); *In re Red Hat Sec. Litig.* ($20 million settlement); and *In re AFC Enters., Inc. Sec. Litig.* ($17.2 million settlement). Prior to joining the Firm, Reise represented individuals suffering the debilitating effects of asbestos exposure back in the 1950s and 1960s.

### Education
B.A., Binghamton University, 1992; J.D., University of Miami School of Law, 1995

### Honors / Awards
American Jurisprudence Book Award in Contracts; J.D., *Cum Laude*, University of Miami School of Law, 1995; *University of Miami Inter-American Law Review*, University of Miami School of Law

# Darren J. Robbins | Partner

Darren Robbins is a founding partner of Robbins Geller Rudman & Dowd LLP. Over the last two decades, he has served as lead counsel in more than 100 securities class actions and has recovered billions of dollars for injured shareholders. Robbins has obtained significant recoveries in a number of actions arising out of wrongdoing related to the issuance of residential mortgage-backed securities, including the case against Goldman Sachs ($272 million recovery). Robbins also served as co-lead counsel in connection with a $627 million recovery for investors in *In re Wachovia Preferred Securities & Bond/Notes Litig.*, one of the largest credit-crisis settlements involving Securities Act claims. Robbins also recently served as lead counsel in *Schuh v. HCA Holdings, Inc.*, which resulted in a $215 million recovery for shareholders.

One of the hallmarks of Robbins' practice has been his focus on corporate governance reform. In *UnitedHealth*, a securities fraud class action arising out of an options backdating scandal, Robbins represented lead plaintiff CalPERS and was able to obtain the cancellation of more than 3.6 million stock options held by the company's former CEO and secure a record $925 million cash recovery for shareholders. Robbins also negotiated sweeping corporate governance reforms, including the election of a shareholder-nominated director to the company's board of directors, a mandatory holding period for shares acquired via option exercise, and compensation reforms that tied executive pay to performance. Recently, Robbins led a shareholder derivative action brought by several pension funds on behalf of Community Health Systems, Inc. The case yielded a $60 million payment to Community Health, as well as corporate governance reforms that included two shareholder-nominated directors, the creation and appointment of a Healthcare Law Compliance Coordinator, the implementation of an executive compensation clawback in the event of a restatement, the establishment of an insider trading controls committee, and the adoption of a political expenditure disclosure policy.

## Education

B.S., University of Southern California, 1990; M.A., University of Southern California, 1990; J.D., Vanderbilt Law School, 1993

## Honors / Awards

Leading Lawyer in America, *Lawdragon*, 2006-2007, 2009-2019; Benchmark California Star, *Benchmark Litigation*, 2019; State Litigation Star, *Benchmark Litigation*, 2019; Best Lawyer in America, *Best Lawyers®*, 2010-2019; Super Lawyer, 2013-2019; Leading Lawyer, *Chambers USA*, 2014-2018; Local Litigation Star, *Benchmark Litigation*, 2013-2018; Lawyer of the Year, *Best Lawyers®*, 2017; Influential Business Leader, *San Diego Business Journal*, 2017; Litigator of the Year, *Our City San Diego*, 2017; Recommended Lawyer, *The Legal 500*, 2011, 2017; Top 50 Lawyers in San Diego, *Super Lawyers Magazine*, 2015; One of the Top 100 Lawyers Shaping the Future, *Daily Journal*; One of the "Young Litigators 45 and Under," *The American Lawyer*; Attorney of the Year, *California Lawyer*; Managing Editor, *Vanderbilt Journal of Transnational Law*, Vanderbilt Law School

# Robert J. Robbins | Partner

Robert Robbins is a partner in the Firm's Boca Raton office. He focuses his practice on investigating securities fraud, initiating securities class actions, and helping institutional and individual shareholders litigate their claims to recover investment losses caused by fraud. Representing shareholders in all aspects of class actions brought pursuant to the federal securities laws, Robbins provides counsel in numerous securities fraud class actions across the country, helping secure significant recoveries for investors. Robbins has been a member of litigation teams responsible for the successful prosecution of many securities class actions, including *Hospira* ($60 million recovery); *3D Systems* ($50 million); *CVS Caremark* ($48 million recovery); *Baxter International* ($42.5 million recovery); *R.H. Donnelley* ($25 million recovery); *Spiegel* ($17.5 million recovery); *TECO Energy* ($17.35 million recovery); *AFC Enterprises* ($17.2 million recovery); *Accretive Health* ($14 million recovery); *Lender Processing Services* ($14 million recovery); *Imperial Holdings* ($12 million recovery); *Mannatech* ($11.5 million recovery); *Newpark Resources* ($9.24 million recovery); *Gilead Sciences* ($8.25 million recovery); *TCP International* ($7.175 million recovery); *Cryo Cell International* ($7 million recovery); *Gainsco* ($4 million recovery); and *Body Central* ($3.425 million recovery). Robbins is currently representing investors in securities fraud litigation against Valeant Pharmaceuticals International, Inc. (D.N.J.).

## Education
B.S., University of Florida, 1999; J.D., University of Florida College of Law, 2002

## Honors / Awards
Super Lawyer "Rising Star," 2015-2017; J.D., High Honors, University of Florida College of Law, 2002; Member, *Journal of Law and Public Policy*, University of Florida College of Law; Member, *Phi Delta Phi*, University of Florida College of Law; *Pro bono* certificate, Circuit Court of the Eighth Judicial Circuit of Florida; Order of the Coif

# Henry Rosen | Partner

Henry Rosen is a partner in the Firm's San Diego office, where he is a member of the Hiring Committee and Technology Committee, the latter of which focuses on applications to digitally manage documents produced during litigation and internally generate research files. He has significant experience prosecuting every aspect of securities fraud class actions and has obtained more than $1 billion on behalf of defrauded investors. Prominent cases include *In re Cardinal Health, Inc. Sec. Litig.*, in which Rosen recovered $600 million for defrauded shareholders. This $600 million settlement is the largest recovery ever in a securities fraud class action in the Sixth Circuit, and remains one of the largest settlements in the history of securities fraud litigation. Additional recoveries include: *Jones v. Pfizer Inc.* ($400 million); *In re First Energy* ($89.5 million); *In re CIT Grp. Inc. Sec. Litig* ($75 million); *Stanley v. Safeskin Corp.* ($55 million); *In re Storage Tech. Corp. Sec. Litig.* ($55 million); and *Rasner v. Sturm* (FirstWorld Communications ) ($25.9 million).

## Education
B.A., University of California, San Diego, 1984; J.D., University of Denver, 1988

## Honors / Awards
Editor-in-Chief, *University of Denver Law Review*, University of Denver

# David A. Rosenfeld | Partner

David Rosenfeld is a partner in the Firm's Melville office. He has focused his practice of law for more than 15 years in the areas of securities litigation and corporate takeover litigation. He has been appointed as lead counsel in dozens of securities fraud lawsuits and has successfully recovered hundreds of millions of dollars for defrauded shareholders. Rosenfeld works on all stages of litigation, including drafting pleadings, arguing motions and negotiating settlements. Most recently, he was on the team of Robbins Geller attorneys who obtained a $34.5 million recovery in *Patel v. L-3 Communications Holdings, Inc.*, which represents a high percentage of damages that plaintiffs could reasonably expect to be recovered at trial and is more than eight times higher than the average settlement of cases with comparable investor losses.

Additionally, Rosenfeld led the Robbins Geller team in recovering in excess of $34 million for investors in Overseas Shipholding Group, which represented an outsized recovery of 93% of bond purchasers' damages and 28% of stock purchasers' damages. The creatively structured settlement included more than $15 million paid by a bankrupt entity. Rosenfeld also led the effort that resulted in the recovery of nearly 90% of losses for investors in Austin Capital, a sub-feeder fund of Bernard Madoff. In connection with this lawsuit, Rosenfeld met with and interviewed Madoff in federal prison. Rosenfeld has also achieved remarkable recoveries against companies in the financial industry. In addition to recovering $70 million for investors in Credit Suisse Group, and having been appointed lead counsel in the securities fraud lawsuit against First BanCorp (which provided shareholders with a $74.25 million recovery), he recently settled claims against Barclays for $14 million, or 20% of investors' damages, for statements made about its LIBOR practices.

## Education
B.S., Yeshiva University, 1996; J.D., Benjamin N. Cardozo School of Law, 1999

## Honors / Awards
Advisory Board Member of *Stafford's Securities Class Action Reporter*; Future Star, *Benchmark Litigation*, 2016-2019; Recommended Lawyer, *The Legal 500*, 2018; Super Lawyer, 2014-2018; Super Lawyer "Rising Star," 2011-2013

## Robert M. Rothman | Partner

Robert Rothman is a partner in the Firm's Melville office. Rothman has extensive experience litigating cases involving investment fraud, consumer fraud and antitrust violations. He also lectures to institutional investors throughout the world. Rothman has served as lead counsel in numerous class actions alleging violations of securities laws, including cases against First Bancorp ($74.25 million recovery), CVS ($48 million recovery), Popular, Inc. ($37.5 million recovery), and iStar Financial, Inc. ($29 million recovery). He actively represents shareholders in connection with going-private transactions and tender offers. For example, in connection with a tender offer made by Citigroup, Rothman secured an increase of more than $38 million over what was originally offered to shareholders.

## Education
B.A., State University of New York at Binghamton, 1990; J.D., Hofstra University School of Law, 1993

## Honors / Awards
Super Lawyer, 2011, 2013-2018; Dean's Academic Scholarship Award, Hofstra University School of Law; J.D., with Distinction, Hofstra University School of Law, 1993; Member, *Hofstra Law Review*, Hofstra University School of Law

## Samuel H. Rudman | Partner

Sam Rudman is a founding member of the Firm, a member of the Firm's Executive and Management Committees, and manages the Firm's New York offices. His 25-year securities practice focuses on recognizing and investigating securities fraud, and initiating securities and shareholder class actions to vindicate shareholder rights and recover shareholder losses. A former attorney with the SEC, Rudman has recovered hundreds of millions of dollars for shareholders, including a $200 million recovery in *Motorola*, a $129 million recovery in *Doral Financial*, an $85 million recovery in *Blackstone*, a $74 million recovery in *First BanCorp*, a $65 million recovery in *Forest Labs,* a $50 million recovery in *TD Banknorth*, a $48 million recovery in *CVS Caremark*, and a $34.5 million recovery in *L-3 Communications Holdings*.

## Education
B.A., Binghamton University, 1989; J.D., Brooklyn Law School, 1992

## Honors / Awards
National Practice Area Star, *Benchmark Litigation*, 2019; Leading Lawyer in America, *Lawdragon*, 2016-2019; Local Litigation Star, *Benchmark Litigation*, 2013-2019; Litigation Star, *Benchmark Litigation*, 2013, 2017-2019; Leading Lawyer, *Chambers USA*, 2014-2018; Recommended Lawyer, *The Legal 500*, 2018; Super Lawyer, 2007-2018; Dean's Merit Scholar, Brooklyn Law School; Moot Court Honor Society, Brooklyn Law School; Member, *Brooklyn Journal of International Law*, Brooklyn Law School

Case 3:21-cv-00444-BJM   Document 126-9   Filed 04/19/24   Page 376 of 586 PageID#
5564
Case 1:16-cv-01031-TSE-MSN   Document 453   Filed 04/26/13   Page 127 of 158 PageID# 8695

# Joseph Russello | Partner

Joseph Russello is a partner in the Firm's Melville office. He principally prosecutes violations of the federal securities laws and breaches of fiduciary duty on behalf of individual and institutional investors. During his tenure at the Firm, Russello has achieved significant results in complex and challenging cases.

Currently, Russello is leading the Firm's efforts in litigating securities claims against several companies in the Commercial Division of the New York State Supreme Court, New York County, in the wake of the U.S. Supreme Court's decision in *Cyan, Inc. v. Beaver Cty. Emps.' Ret. Fund*, _ U.S. _, 138 S. Ct. 1061 (2018), which confirmed that state courts have concurrent jurisdiction of claims under the Securities Act of 1933. He is also prosecuting federal securities fraud cases against Telefonaktiebolaget LM Ericsson (known as Ericsson) and former executives and directors of Allied Nevada Gold Corporation, the latter of which was the subject of a favorable decision from the Ninth Circuit Court of Appeals reversing dismissal and reinstating the claims in their entirety (*In re Allied Nev. Gold Corp. Sec. Litig.*, 743 F. App'x 887 (9th Cir. 2018) (summary order)).

Recently, Russello led the team responsible for recovering $50 million in litigation against BHP Billiton, an Australian-based mining company accused of failing to disclose significant safety problems at the Fundão iron-ore dam, in Brazil. Together with Brazilian mining company Vale S.A., BHP owned Samarco Mineração S.A., which operated the mining complex at which the Fundão dam was located. On November 5, 2015, the dam collapsed and unleashed a torrent of mining waste, resulting in the death of 19 people, the destruction of the town of Bento Rodrigues, and the decimation of the surrounding environment. Even today, this event is regarded as the worst environmental disaster in Brazil's history. Russello and a team from Robbins Geller represented two institutional investors and an individual in defeating BHP's motion to dismiss (*In re BHP Billiton Ltd. Sec. Litig.*, 276 F. Supp. 3d 65 (S.D.N.Y. 2017)), and prosecuted and ultimately resolved the case on behalf of two sets of purchasers of American Depositary Shares (ADSs) trading on the New York Stock Exchange.

## Education
B.A., Gettysburg College, 1998; J.D., Hofstra University School of Law, 2001

## Honors / Awards
Super Lawyer, 2014-2018; *Law360* Securities Editorial Advisory Board, 2017

# Scott H. Saham | Partner

Scott Saham is a partner in the Firm's San Diego office, where his practice focuses on complex securities litigation. He is licensed to practice law in both California and Michigan. Most recently, Saham was a member of the litigation team that obtained a $125 million settlement in *In re LendingClub Securities Litigation*, a settlement that ranks among the top ten largest securities recoveries ever in the Northern District of California. He was also part of the litigation teams in *Schuh v. HCA Holdings, Inc.*, which resulted in a $215 million recovery for shareholders, the largest securities class action recovery ever in Tennessee, and *Luna v. Marvell Tech. Grp., Ltd.*, which resulted in a $72.5 million settlement that represents approximately 24% to 50% of the best estimate of classwide damages suffered by investors. He also served as lead counsel prosecuting the *Pharmacia* securities litigation in the District of New Jersey, which resulted in a $164 million recovery. Additionally, Saham was lead counsel in the *In re Coca-Cola Sec. Litig.* in the Northern District of Georgia, which resulted in a $137.5 million recovery after nearly eight years of litigation. He also obtained reversal from the California Court of Appeal of the trial court's initial dismissal of the landmark *Countrywide* mortgage-backed securities action. This decision is reported as *Luther v. Countrywide Fin. Corp.*, 195 Cal. App. 4th 789 (2011), and following this ruling that revived the action the case settled for $500 million.

## Education
B.A., University of Michigan, 1992; J.D., University of Michigan Law School, 1995

# Jessica T. Shinnefield | Partner

Jessica Shinnefield is a partner in the Firm's San Diego office and currently focuses on initiating, investigating and prosecuting new securities fraud class actions. Shinnefield was a member of the litigation teams that obtained significant recoveries for investors in cases such as *AOL Time Warner*, *Cisco Systems*, *Aon* and *Petco*. Shinnefield was also a member of the litigation team prosecuting actions against investment banks and leading national credit rating agencies for their roles in structuring and rating structured investment vehicles backed by toxic assets. These cases are among the first to successfully allege fraud against the rating agencies, whose ratings have traditionally been protected by the First Amendment. She is currently litigating several securities actions, including an action against Omnicare, in which she helped obtain a favorable ruling from the U.S. Supreme Court.

## Education
B.A., University of California at Santa Barbara, 2001; J.D., University of San Diego School of Law, 2004

## Honors / Awards
Super Lawyer "Rising Star," 2015-2019; 40 & Under Hot List, *Benchmark Litigation*, 2018; B.A., *Phi Beta Kappa*, University of California at Santa Barbara, 2001

# Elizabeth A. Shonson | Partner

Elizabeth Shonson is a partner in the Firm's Boca Raton office. She concentrates her practice on representing investors in class actions brought pursuant to the federal securities laws. Shonson has litigated numerous securities fraud class actions nationwide, helping achieve significant recoveries for aggrieved investors. She was a member of the litigation teams responsible for recouping millions of dollars for defrauded investors, including: *In re Massey Energy Co. Sec. Litig.* (S.D. W.Va.) ($265 million); *Nieman v. Duke Energy Corp.* (W.D.N.C.) ($146.25 million recovery); *Eshe Fund v. Fifth Third Bancorp* (S.D. Ohio) ($16 million); *City of St. Clair Shores Gen. Emps. Ret. Sys. v. Lender Processing Servs., Inc.* (M.D. Fla.) ($14 million); and *In re Synovus Fin. Corp.* (N.D. Ga.) ($11.75 million).

## Education

B.A., Syracuse University, 2001; J.D., University of Florida Levin College of Law, 2005

## Honors / Awards

Super Lawyer "Rising Star," 2016-2018; J.D., *Cum Laude*, University of Florida Levin College of Law, 2005; Editor-in-Chief, *Journal of Technology Law & Policy*; Phi Delta Phi; B.A., with Honors, *Summa Cum Laude*, Syracuse University, 2001; Phi Beta Kappa

# Trig Smith | Partner

Trig Smith is a partner in the Firm's San Diego office where he focuses his practice on complex securities litigation. He has been involved in the prosecution of numerous securities class actions that have resulted in over a billion dollars in recoveries for investors. His cases have included: *In re Cardinal Health, Inc. Sec. Litig.* ($600 million recovery); *Jones v. Pfizer Inc.* ($400 million recovery); *Silverman v. Motorola, Inc.* ($200 million recovery); and *City of Livonia Emps.' Ret. Sys. v. Wyeth* ($67.5 million). Most recently, he was a member of the Firm's trial team in *Hsu v. Puma Biotechnology, Inc.*, a securities fraud class action that resulted in a verdict in favor of investors after a two-week jury trial.

## Education

B.S., University of Colorado, Denver, 1995; M.S., University of Colorado, Denver, 1997; J.D., Brooklyn Law School, 2000

## Honors / Awards

Member, *Brooklyn Journal of International Law*, Brooklyn Law School; CALI Excellence Award in Legal Writing, Brooklyn Law School

# Mark Solomon | Partner

Mark Solomon is a founding partner in the Firm's San Diego office and leads its international litigation practice. Over the last 23 years, he has regularly represented United States- and United Kingdom-based pension funds, and asset managers in class and non-class securities litigation in federal and state courts throughout the United States. He has been admitted to the Bars of England and Wales (Barrister), Ohio and California, but now practices exclusively in California, as well as in various United States federal district and appellate courts.

Solomon has spearheaded the prosecution of many significant securities fraud cases. He has obtained multi-hundred million dollar recoveries for plaintiffs in pre-trial settlements and significant corporate governance reforms designed to limit recidivism and promote appropriate standards. He litigated, through the rare event of trial, the securities class action against Helionetics Inc. and its executives, where he won a $15.4 million federal jury verdict. Prior to the most recent financial crisis, he was instrumental in obtaining some of the first mega-recoveries in the field in California and Texas, serving as co-lead counsel in *In re Informix Corp. Sec. Litig.* (N.D. Cal.) and recovering $131 million for Informix investors; and serving as co-lead counsel in *Schwartz v. TXU Corp.* (N.D. Tex.), where he helped obtain a recovery of over $149 million for a class of purchasers of TXU securities. Solomon is currently counsel to a number of pension funds serving as lead plaintiffs in cases throughout the United States.

## Education

B.A., Trinity College, Cambridge University, England, 1985; L.L.M., Harvard Law School, 1986; Inns of Court School of Law, Degree of Utter Barrister, England, 1987

## Honors / Awards

Super Lawyer, 2017-2018; Recommended Lawyer, *The Legal 500*, 2016-2017; Lizette Bentwich Law Prize, Trinity College, 1983 and 1984; Hollond Travelling Studentship, 1985; Harvard Law School Fellowship, 1985-1986; Member and Hardwicke Scholar of the Honourable Society of Lincoln's Inn

Case 3:21-cv-00444-BJM-SN Document 126-9  Filed 04/19/24  Page 380 of 586 PageID#
5568
Case 1:16-cv-01031-TSE-MSN  Document 453  Filed 04/26/19  Page 131 of 158 PageID# 8699

# Douglas Wilens | Partner

Douglas Wilens is a partner in the Firm's Boca Raton office. Wilens is a member of the Firm's appellate practice group, participating in numerous appeals in federal and state courts across the country. Most notably, Wilens handled successful appeals in the First Circuit Court of Appeals in *Mass. Ret. Sys. v. CVS Caremark Corp.*, 716 F.3d 229 (1st Cir. 2013) (reversal of order granting motion to dismiss), and in the Fifth Circuit Court of Appeals in *Lormand v. US Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009) (reversal of order granting motion to dismiss). Wilens is also involved in the Firm's lead plaintiff practice group, handling lead plaintiff issues arising under the PSLRA.

Prior to joining the Firm, Wilens was an associate at a nationally recognized firm, where he litigated complex actions on behalf of numerous professional sports leagues, including the National Basketball Association, the National Hockey League and Major League Soccer. He has also served as an adjunct professor at Florida Atlantic University and Nova Southeastern University, where he taught undergraduate and graduate-level business law classes.

## Education
B.S., University of Florida, 1992; J.D., University of Florida College of Law, 1995

## Honors / Awards
Book Award for Legal Drafting, University of Florida College of Law; J.D., with Honors, University of Florida College of Law, 1995

# Shawn A. Williams | Partner

Shawn Williams is a partner in the Firm's San Francisco office and a member of the Firm's Management Committee. His practice focuses on securities class actions. Williams was among the lead class counsel for the Firm recovering investor losses in notable cases, including: *In re Krispy Kreme Doughnuts, Inc. Sec. Litig.* ($75 million); *In re Veritas Software Corp. Sec. Litig.* ($35 million); and *In re Cadence Design Sys. Sec. Litig.* ($38 million). Williams is also among the Firm's lead attorneys prosecuting shareholder derivative actions, securing tens of millions of dollars in cash recoveries and negotiating the implementation of comprehensive corporate governance enhancements, such as *In re McAfee, Inc. Derivative Litig.*; *In re Marvell Tech. Grp. Ltd. Derivative Litig.*; *In re KLA Tencor S'holder Derivative Litig.*; and *The Home Depot, Inc. Derivative Litig.* Prior to joining the Firm in 2000, Williams served for 5 years as an Assistant District Attorney in the Manhattan District Attorney's Office, where he tried over 20 cases to New York City juries and led white-collar fraud grand jury investigations.

## Education
B.A., The State of University of New York at Albany, 1991; J.D., University of Illinois, 1995

## Honors / Awards
Leading Lawyer in America, *Lawdragon*, 2018-2019; Super Lawyer, 2014-2017; Board Member, California Bar Foundation, 2012-2014

# David T. Wissbroecker | Partner

David Wissbroecker is a partner in the Firm's San Diego and Chicago offices.  He focuses his practice on securities class action litigation in the context of mergers and acquisitions, representing both individual shareholders and institutional investors. As part of the litigation team at Robbins Geller, Wissbroecker has helped secure monetary recoveries for shareholders that collectively exceed $1 billion.  Wissbroecker has litigated numerous high profile cases in Delaware and other jurisdictions, including shareholder class actions challenging the acquisitions of Dole, Kinder Morgan, Del Monte Foods, Affiliated Computer Services, Intermix and Rural Metro.  His practice has recently expanded to include numerous proxy fraud cases in federal court, along with shareholder document demand litigation in Delaware.  Before joining the Firm, Wissbroecker served as a staff attorney for the United States Court of Appeals for the Seventh Circuit, and then as a law clerk for the Honorable John L. Coffey, Circuit Judge for the Seventh Circuit.

## Education
B.A., Arizona State University, 1998; J.D., University of Illinois College of Law, 2003

## Honors / Awards
Super Lawyer "Rising Star," 2015; J.D., *Magna Cum Laude*, University of Illinois College of Law, 2003; B.A., *Cum Laude*, Arizona State University, 1998

# Christopher M. Wood | Partner

Christopher Wood is a partner in the Firm's Nashville office, where his practice focuses on complex securities litigation.  He has been a member of litigation teams responsible for recovering hundreds of millions of dollars for investors, including: *In re Massey Energy Co. Sec. Litig.* ($265 million recovery); *In re VeriFone Holdings, Inc. Sec. Litig.* ($95 million recovery); *Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.* ($65 million recovery); *In re Micron Tech., Inc. Sec. Litig.* ($42 million recovery); and *Winslow v. BancorpSouth, Inc.* ($29.5 million recovery).

Wood has provided *pro bono* legal services through the San Francisco Bar Association's Volunteer Legal Services Program, the Ninth Circuit's Pro Bono Program, Volunteer Lawyers & Professionals for the Arts, and Tennessee Justice for Our Neighbors.

## Education
B.A., Vanderbilt University, 2003; J.D., University of San Francisco School of Law, 2006

## Honors / Awards
Super Lawyer "Rising Star," 2011-2013, 2015-2018

Case 3:21-cv-00144-BJM Document 126-9 Filed 04/19/24 Page 383 of 586 PageID# 5570

# Debra J. Wyman | Partner

Debra Wyman is a partner in the Firm's San Diego office. She specializes in securities litigation and has litigated numerous cases against public companies in state and federal courts that have resulted in over $1 billion in securities fraud recoveries. Wyman was a member of the trial team in *Schuh v. HCA Holdings, Inc.*, which resulted in a $215 million recovery for shareholders, the largest securities class action recovery ever in Tennessee. The recovery achieved approximately 70% of classwide damages, which as a percentage of damages significantly exceeds the median class action recovery of 2%-3% of damages. Wyman prosecuted the complex securities and accounting fraud case *In re HealthSouth Corp. Sec. Litig.*, one of the largest and longest-running corporate frauds in history, in which $671 million was recovered for defrauded HealthSouth investors. She was also part of the trial team that litigated *In re AT&T Corp. Sec. Litig.*, which was tried in the United States District Court, District of New Jersey, and settled after only two weeks of trial for $100 million. Most recently, Wyman was part of the litigation team that secured a $64 million recovery for Dana Corp. shareholders in *Plumbers & Pipefitters National Pension Fund v. Burns*, in which the Firm's Appellate Practice Group successfully appealed to the Sixth Circuit Court of Appeals twice, reversing the district court's dismissal of the action.

## Education
B.A., University of California Irvine, 1990; J.D., University of San Diego School of Law, 1997

## Honors / Awards
Top Women Lawyer, *Daily Journal*, 2017; Litigator of the Year, *Our City San Diego*, 2017; Super Lawyer, 2016-2017

# Laura M. Andracchio | Of Counsel

Laura Andracchio is Of Counsel in the Firm's San Diego office. Having first joined the Firm in 1997, she was a Robbins Geller partner for ten years prior to her role as Of Counsel. As a partner with the Firm, Andracchio led countless securities fraud cases against public companies throughout the country, recovering hundreds of millions of dollars for injured investors. Her current focus remains securities fraud litigation under the federal securities laws.

Andracchio was a lead member of the trial team in *In re AT&T Corp. Sec. Litig.*, recovering $100 million for the class after two weeks of trial in district court in New Jersey. Prior to trial, she managed and litigated the case, which was pending for four years. She also led the trial team in *Brody v. Hellman*, a case against Qwest and former directors of U.S. West seeking an unpaid dividend, recovering $50 million for the class, which was largely comprised of U.S. West retirees. Other cases Andracchio has litigated include *City of Hialeah Emps.' Ret. Sys. v. Toll Bros., Inc.*, *Ross v. Abercrombie & Fitch Co.*, *In re GMH Cmtys. Tr. Sec. Litig.*, *In re Vicuron Pharm., Inc. Sec. Litig.* and *In re Navarre Corp. Sec. Litig.* Most recently, her focus is residential mortgage-backed securities litigation on behalf of investors against Wall Street financial institutions.

## Education
B.A., Bucknell University, 1986; J.D., Duquesne University School of Law, 1989

## Honors / Awards
Order of the Barristers, J.D., with honors, Duquesne University School of Law, 1989

Case 3:21-cv-00144-BJM Document 126-9 Filed 04/19/24 Page 384 of 586 PageID#
5572
Case 1:16-cv-01031-TSE-MSN Document 453 Filed 04/26/19 Page 135 of 158 PageID# 8703

ATTORNEY BIOGRAPHIES

## Randi D. Bandman | Of Counsel

Randi Bandman is Of Counsel in the Firm's Boca Raton office. Throughout her career, she has represented and advised hundreds of clients, including pension funds, managers, banks and hedge funds, such as the Directors Guild of America, Screen Actors Guild, Writers Guild of America and Teamster funds. Bandman's cases have yielded billions of dollars of recoveries. Notable cases include the AOL Time Warner, Inc. merger ($629 million), *In re Enron Corp. Sec. Litig.* ($7.2 billion), Private Equity litigation (*Dahl v. Bain Capital Partners, LLC*) ($590.5 million) and *In re WorldCom Sec. Litig.* ($657 million).

Bandman is currently representing plaintiffs in the Foreign Exchange Litigation pending in the Southern District of New York which alleges collusive conduct by the world's largest banks to fix prices in the $5.3 trillion a day foreign exchange market and in which billions of dollars have been recovered to date for injured plaintiffs. Bandman is part of the Robbins Geller Co-Lead Counsel team representing the class in the "High Frequency Trading" case, which accuses stock exchanges of giving unfair advantages to high-speed traders versus all other investors, resulting in billions of dollars being diverted. Bandman is also currently a member of the trial team in *In re Facebook Biometric Information Privacy Litigation*, concerning Facebook's alleged privacy violations through its collection of user's biometric identifiers without informed consent. Bandman was instrumental in the landmark state settlement with the tobacco companies for $12.5 billion. Bandman also led an investigation with congressional representatives on behalf of artists into allegations of "pay for play" tactics, represented Emmy winning writers with respect to their claims involving a long-running television series, represented a Hall of Fame sports figure, and negotiated agreements in connection with a major motion picture. Recently, Bandman was chosen to serve on the Law Firm Advisory Board of the Association of Media & Entertainment Counsel, an organization made up of thousands of attorneys from studios, networks, guilds, talent agencies and top media companies, dealing with protecting content distributed through a variety of formats worldwide.

## Education
B.A., University of California, Los Angeles; J.D., University of Southern California

# Lea Malani Bays | Of Counsel

Lea Malani Bays is Of Counsel in the Firm's San Diego office.  She focuses on e-discovery issues, from preservation through production, and provides counsel to the Firm's multi-disciplinary, e-discovery team consisting of attorneys, forensic analysts and database professionals.  Through her role as counsel to the e-discovery team, Bays is very familiar with the various stages of e-discovery, including identification of relevant electronically stored information, data culling, predictive coding protocols, privilege and responsiveness reviews, as well as having experience in post-production discovery through trial preparation.  Through speaking at various events, she is also a leader in shaping the broader dialogue on e-discovery issues.

Bays was recently part of the litigation team that earned the approval of a $131 million settlement in favor of plaintiffs in *Bennett v. Sprint Nextel Corp.*  The settlement, which resolved claims arising from Sprint Corporation's ill-fated merger with Nextel Communications in 2005, represents a significant recovery for the plaintiff class, achieved after five years of tireless effort by the Firm.  Prior to joining Robbins Geller, Bays was a Litigation Associate at Kaye Scholer LLP's New York office.  She has experience in a wide range of litigation, including complex securities litigation, commercial contract disputes, business torts, antitrust, civil fraud, and trust and estate litigation.

## Education

B.A., University of California, Santa Cruz, 1997; J.D., New York Law School, 2007

## Honors / Awards

J.D., *Magna Cum Laude*, New York Law School, 2007; Executive Editor, *New York Law School Law Review*; Legal Aid Society's Pro Bono Publico Award; NYSBA Empire State Counsel; Professor Stephen J. Ellmann Clinical Legal Education Prize; John Marshall Harlan Scholars Program, Justice Action Center

## Mary K. Blasy | Of Counsel

Mary Blasy is Of Counsel to the Firm and is based in the Firm's Melville and Washington, D.C. offices. Her practice focuses on the investigation, commencement, and prosecution of securities fraud class actions and shareholder derivative suits. Blasy has recovered hundreds of millions of dollars for investors in securities fraud class actions against Reliance Acceptance Corp. ($66 million); Sprint Corp. ($50 million); Titan Corporation ($15+ million); Martha Stewart Omni-Media, Inc. ($30 million); and Coca-Cola Co. ($137.5 million). Blasy has also been responsible for prosecuting numerous complex shareholder derivative actions against corporate malefactors to address violations of the nation's securities, environmental and labor laws, obtaining corporate governance enhancements valued by the market in the billions of dollars.

In 2014, the Presiding Justice of the Appellate Division of the Second Department of the Supreme Court of the State of New York appointed Blasy to serve as a member of the Independent Judicial Election Qualification Commission, which reviews the qualifications of candidates seeking public election to New York State Supreme Courts in the 10th Judicial District. She also served on the *Law360* Securities Editorial Advisory Board from 2015 to 2016.

## Education

B.A., California State University, Sacramento, 1996; J.D., UCLA School of Law, 2000

## Honors / Awards

Super Lawyer, 2016-2018; *Law360* Securities Editorial Advisory Board, 2015-2016; Member, Independent Judicial Election Qualification Commission, 2014-present

## Bruce Boyens | Of Counsel

Bruce Boyens is Of Counsel to the Firm. A private practitioner in Denver, Colorado since 1990, he specializes in consulting with labor unions on issues relating to labor and environmental law, labor organizing, labor education, union elections, internal union governance and alternative dispute resolutions. Boyens was a Regional Director for the International Brotherhood of Teamsters elections in 1991 and 1995. He developed and taught collective bargaining and labor law courses for the George Meany Center, the United Mine Workers of America, Transportation Workers Local 260, the Kentucky Nurses Association, among others.

In addition, Boyens served as the Western Regional Director and Counsel for the United Mine Workers from 1983-1990, where he was the chief negotiator in over 30 major agreements, and represented the United Mine Workers in all legal matters. From 1973-1977, he served as General Counsel to District 17 of the United Mine Workers Association, and also worked as an underground coal miner during that time.

## Education

J.D., University of Kentucky College of Law, 1973; Harvard University, Certificate in Environmental Policy and Management

# William K. Cavanagh, Jr. | Of Counsel

Bill Cavanagh is Of Counsel in the Firm's Washington, D.C. office. Cavanagh concentrates his practice in employee benefits law and works with the Firm's Institutional Outreach Team. Prior to joining Robbins Geller, Cavanagh was employed by Ullico for the past nine years, most recently as President of Ullico Casualty Group. The Ullico Casualty Group is the leading provider of fiduciary liability insurance for trustees in both the private as well as the public sector. Prior to that he was President of the of Ullico Investment Company.

Preceding Cavanagh's time at Ullico, he was a partner at the labor and employee benefits firm Cavanagh and O'Hara in Springfield, Illinois for 28 years. In that capacity, Cavanagh represented public pension funds, jointly trusteed Taft-Hartley, health, welfare, pension and joint apprenticeship funds advising on fiduciary and compliance issues both at the Board level as well as in administrative hearings, federal district courts and the United States Courts of Appeals. During the course of his practice, Cavanagh had extensive trial experience in state and the relevant federal district courts. Additionally, Cavanagh served as co-counsel on a number of cases representing trustees seeking to recover plan assets lost as a result of fraud in the marketplace.

## Education
B.A., Georgetown University, 1974; J.D., John Marshall Law School, 1978

# Christopher Collins | Of Counsel

Christopher Collins is Of Counsel in the Firm's San Diego office and his practice focuses on antitrust and consumer protection. Collins served as co-lead counsel in *Wholesale Elec. Antitrust Cases I & II*, charging an antitrust conspiracy by wholesale electricity suppliers and traders of electricity in California's newly deregulated wholesale electricity market wherein plaintiffs secured a global settlement for California consumers, businesses and local governments valued at more than $1.1 billion. He was also involved in California's tobacco litigation, which resulted in the $25.5 billion recovery for California and its local entities. Collins is currently counsel on the California Energy Manipulation antitrust litigation, the Memberworks upsell litigation, as well as a number of consumer actions alleging false and misleading advertising and unfair business practices against major corporations. He formerly served as a Deputy District Attorney for Imperial County where he was in charge of the Domestic Violence Unit.

## Education
B.A., Sonoma State University, 1988; J.D., Thomas Jefferson School of Law, 1995

## Patrick J. Coughlin | Of Counsel

Patrick Coughlin is Of Counsel to the Firm and is based in the San Diego office. He has been lead counsel for several major securities matters, including one of the earliest and largest class action securities cases to go to trial, *In re Apple Computer Sec. Litig.*, No. C-84-20148 (N.D. Cal.). Most recently, Coughlin was a member of the Firm's trial team in *Hsu v. Puma Biotechnology, Inc.*, No. SACV15-0865 (C.D. Cal.), a securities fraud class action that resulted in a verdict in favor of investors after a two-week jury trial.

Coughlin is currently representing merchants in *In re Payment Card Interchange Fee and Merchant Discount Litig.*, in which a settlement of up to $6.26 billion was recently preliminarily approved by the Eastern District of New York. Thought to be the largest antitrust class action case in history, the case charges Visa, MasterCard and the country's major banks with violating federal law in the allegedly collusive manner in which rules are set in the industry, including rules requiring payment of ever-increasing interchange fees by merchants. Coughlin was one of the lead attorneys who secured a historic $25 million recovery on behalf of approximately 7,000 Trump University students in two class actions against President Donald J. Trump, which means individual class members are eligible for upwards of $35,000 in restitution. He represented the class on a *pro bono* basis.

Additional prominent securities class actions prosecuted by Coughlin include the *Enron* litigation, in which $7.2 billion was recovered; the *Qwest* litigation, in which a $445 million recovery was obtained; and the *HealthSouth* litigation, in which a $671 million recovery was obtained. Coughlin has also handled a number of large antitrust cases including the *Currency Conversion* cases in which $360 million was recovered for consumers and the Private Equity litigation (*Dahl v. Bain Capital Partners, LLC*) in which $590.5 million was recovered for investors. He also served as class counsel in the ISDAfix Benchmark action against 14 major banks and broker ICAP plc, obtaining $504.5 million for plaintiffs.

## Education
B.S., Santa Clara University, 1977; J.D., Golden Gate University, 1983

## Honors / Awards
Rated AV Preeminent by Martindale-Hubbell; Best Lawyer in America, *Best Lawyers®*, 2006-2019; Super Lawyer, 2004-2019; Top Lawyer in San Diego, *San Diego Magazine*, 2013-2019; Outstanding Antitrust Litigation Achievement in Private Law Practice, American Antitrust Institute, 2018; Senior Statesman, *Chambers USA*, 2014-2018; Antitrust Trailblazer, *The National Law Journal*, 2015; Top 100 Lawyers, *Daily Journal*, 2008; Leading Lawyers in America, *Lawdragon*, 2006, 2008-2009

# Vicki Multer Diamond | Of Counsel

Vicki Multer Diamond is Of Counsel to the Firm and is based in the Firm's Melville office. She has over 25 years of experience as an investigator and attorney. Her practice at the Firm focuses on the initiation, investigation and prosecution of securities fraud class actions. Diamond played a significant role in the factual investigations and successful oppositions to the defendants' motions to dismiss in a number of cases, including *Tableau*, *One Main*, *Valeant* and *Orbital ATK*.

Diamond has served as an investigative consultant to several prominent law firms, corporations and investment firms. Before joining the Firm, she was an Assistant District Attorney in Brooklyn, New York where she served as a senior Trial Attorney in the Felony Trial Bureau, and was special counsel to the Special Commissioner of Investigations for the New York City schools, where she investigated and prosecuted crime and corruption within the New York City school system.

## Education
B.A., State University of New York at Binghamton, 1990; J.D., Hofstra University School of Law, 1993

## Honors / Awards
Member, *Hofstra Property Law Journal*, Hofstra University School of Law

# Michael J. Dowd | Of Counsel

Mike Dowd was a founding partner of the Firm. He has practiced in the area of securities litigation for 20 years, prosecuting dozens of complex securities cases and obtaining significant recoveries for investors in cases such as *UnitedHealth* ($925 million), *WorldCom* ($657 million), *AOL Time Warner* ($629 million), *Qwest* ($445 million) and *Pfizer* ($400 million). Dowd served as lead trial counsel in *Jaffe v. Household Int'l, Inc.* in the Northern District of Illinois, a securities class action that obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs. Dowd also served as the lead trial lawyer in *In re AT&T Corp. Sec. Litig.*, which was tried in the District of New Jersey and settled after only two weeks of trial for $100 million.

Dowd served as an Assistant United States Attorney in the Southern District of California from 1987-1991, and again from 1994-1998.

## Education
B.A., Fordham University, 1981; J.D., University of Michigan School of Law, 1984

## Honors / Awards
Rated AV Preeminent by Martindale-Hubbell; Best Lawyer in America, *Best Lawyers®*, 2015-2019; Super Lawyer, 2010-2019; Top Lawyer in San Diego, *San Diego Magazine*, 2013-2019; Hall of Fame, *Lawdragon*, 2018; Recommended Lawyer, *The Legal 500*, 2016-2018; Litigator of the Year, *Our City San Diego*, 2017; Leading Lawyer in America, *Lawdragon*, 2014-2016; Litigator of the Week, *The American* Lawyer, 2015; Litigation Star, *Benchmark Litigation* 2013; Directorship 100, NACD Directorship, 2012; Attorney of the Year, *California Lawyer*, 2010; Top 100 Lawyers, *Daily Journal*, 2009; Director's Award for Superior Performance, United States Attorney's Office; B.A., *Magna Cum Laude*, Fordham University, 1981

## L. Thomas Galloway | Of Counsel

Thomas Galloway is Of Counsel in the Firm's Washington D.C. office. He is the founding partner of Galloway & Associates, a law firm that concentrates in the representation of institutional investors – namely, public and multi-employer pension funds.

Galloway has authored several books and articles, including: *The American Response to Revolutionary Change: A Study of Diplomatic Recognition* (AEI Institute 1978); *American's Energy: Reports from the Nation* (Pantheon 1980); Contributor, *Coal Treastise* (Matthew Bender 1981); Contributor, *Mining in Germany, Great Britian, Australia, and the United States* 4 Harv. Envtl. L. Rev. 261 (Spring 1980); *A Miner's Bill of Rights*, 80 W. Va. L. Rev. 397 (1978); and Contributor, *Golden Dreams, Poisoned Streams* (Mineral Policy Center Washington D.C. 1997).

Galloway represents and/or provides consulting services for the following: National Wildlife Federation, Sierra Club, Friends of the Earth, United Mine Workers of America, Trout Unlimited, National Audubon Society, Natural Resources Defense Council, German Marshal Fund, Northern Cheyenne Indian Tribe, and Council of Energy Resource Tribes.

## Education
B.A., Florida State University, 1967; J.D., University of Virginia School of Law, 1972

## Honors / Awards
Articles Editor, *University of Virginia Law Review*, University of Virginia School of Law; *Phi Beta Kappa*, University of Virginia School of Law; Trial Lawyer of the Year in the United States, 2003

## John K. Grant | Of Counsel

John Grant is Of Counsel in the Firm's San Francisco office where he devotes his practice to representing investors in securities fraud class actions. Grant has been lead or co-lead counsel in numerous securities actions and recovered tens of millions of dollars for shareholders. His cases include: *In re Micron Tech, Inc. Sec. Litig.* ($42 million recovery); *Perera v. Chiron Corp.* ($40 million recovery); *King v. CBT Grp., PLC* ($32 million recovery); and *In re Exodus Commc'ns, Inc. Sec. Litig.* ($5 million recovery).

## Education
B.A., Brigham Young University, 1988; J.D., University of Texas at Austin, 1990

# Mitchell D. Gravo | Of Counsel

Mitchell Gravo is Of Counsel to the Firm and is a member of the Firm's institutional investor client services group. With more than 30 years of experience as a practicing attorney, he serves as liaison to the Firm's institutional investor clients throughout the United States and Canada, advising them on securities litigation matters.

Gravo's clients include Anchorage Economic Development Corporation, Anchorage Convention and Visitors Bureau, UST Public Affairs, Inc., International Brotherhood of Electrical Workers, Alaska Seafood International, Distilled Spirits Council of America, RIM Architects, Anchorage Police Department Employees Association, Fred Meyer, and the Automobile Manufacturer's Association. Prior to joining the Firm, he served as an intern with the Municipality of Anchorage, and then served as a law clerk to Superior Court Judge J. Justin Ripley.

## Education
B.A., Ohio State University; J.D., University of San Diego School of Law

# Helen J. Hodges | Of Counsel

Helen Hodges is Of Counsel in the Firm's San Diego office. She specializes in securities fraud litigation. Hodges has been involved in numerous securities class actions, including: *Dynegy*, which settled for $474 million; *Thurber v. Mattel*, which was settled for $122 million; *Nat'l Health Labs*, which was settled for $64 million; and *Knapp v. Gomez*, Civ. No. 87-0067-H(M) (S.D. Cal.), in which a plaintiffs' verdict was returned in a Rule 10b-5 class action. Additionally, beginning in 2001, Hodges focused on the prosecution of *Enron*, where a record $7.2 billion recovery was obtained for investors.

## Education
B.S., Oklahoma State University, 1979; J.D., University of Oklahoma, 1983

## Honors / Awards
Rated AV by Martindale-Hubbell; Top Lawyer in San Diego, *San Diego Magazine*, 2013-2019; Super Lawyer, 2007; Oklahoma State University Foundation Board of Trustees, 2013

## David J. Hoffa | Of Counsel

David Hoffa is Of Counsel in the Firm's Washington D.C. office. He has served as a liaison to over 110 institutional investors in portfolio monitoring, securities litigation and claims filing matters. His practice focuses on providing a variety of legal and consulting services to U.S. state and municipal employee retirement systems and single and multi-employer U.S. Taft-Hartley benefit funds. In addition to serving as a leader on the Firm's Israel Institutional Investor Outreach Team, Hoffa also serves as a member of the Firm's lead plaintiff advisory team, and advises public and multi-employer pension funds around the country on issues related to fiduciary responsibility, legislative and regulatory updates, and "best practices" in the corporate governance of publicly traded companies.

Early in his legal career, Hoffa worked for a law firm based in Birmingham, Michigan, where he appeared regularly in Michigan state court in litigation pertaining to business, construction and employment related matters. Hoffa has also appeared before the Michigan Court of Appeals on several occasions.

## Education
B.A., Michigan State University, 1993; J.D., Michigan State University College of Law, 2000

## Andrew W. Hutton | Of Counsel

Drew Hutton is Of Counsel in the Firm's San Diego and New York offices, responsible for simplifying cases of complex financial fraud. Hutton has prosecuted a variety of securities actions, achieving high-profile recoveries and results. Representative cases against corporations and their auditors include *In re AOL Time Warner Sec. Litig.* ($2.5 billion) and *In re Williams Cos. Sec. Litig.* ($311 million). Representative cases against corporations and their executives include *In re Broadcom Sec. Litig.* ($150 million) and *In re Clarent Corp. Sec. Litig.* (class plaintiff's 10b-5 jury verdict against former CEO). Hutton is also active in shareholder derivative litigation, achieving monetary recoveries and governance changes, including *In re Affiliated Computer Servs. Derivative Litig.* ($30 million), *In re KB Home S'holder Derivative Litig.* ($30 million) and *In re KeyCorp Derivative Litig.* (modified CEO stock options and governance). Hutton has also litigated securities cases in bankruptcy court (*In re WorldCom, Inc.* – $15 million for individual claimant) and a complex options case before FINRA (eight-figure settlement for individual investor). Hutton is also experienced in complex, multi-district consumer litigation. Representative nationwide insurance cases include *In re Prudential Sales Practices Litig.* ($4 billion), *In re Metro. Life Ins. Co. Sales Practices Litig.* ($2 billion) and *In re Conseco Life Ins. Co. Cost of Ins. Litig.* ($200 million). Representative nationwide consumer lending cases include a $30 million class settlement of Truth-in-Lending claims against American Express and a $24 million class settlement of RICO and RESPA claims against Community Bank of Northern Virginia (now PNC Bank).

Hutton is the founder of Hutton Law Group, a plaintiffs' litigation practice currently representing retirees, individual investors and businesses, and is also the founder of Hutton Investigative Accounting, a financial forensics and investigation firm. Prior founding Hutton Law and joining Robbins Geller, Hutton was a public company accountant, Certified Public Accountant, and broker of stocks, options and insurance products. Hutton has also served as an expert litigation consultant in both financial and corporate governance capacities. Hutton is often responsible for working with experts retained by the Firm in litigation and has conducted dozens of depositions of financial professionals, including audit partners, CFOs, directors, bankers, actuaries and opposing experts.

## Education
B.A., University of California, Santa Barbara, 1983; J.D., Loyola Law School, 1994

Case 1:16-cv-01031-TSE-MSN   Document 453   Filed 04/26/19   Page 145 of 158 PageID# 8713

# Frank J. Janecek, Jr. | Of Counsel

Frank Janecek is Of Counsel in the Firm's San Diego office and practices in the areas of consumer/antitrust, Proposition 65, taxpayer and tobacco litigation. He served as co-lead counsel, as well as court appointed liaison counsel, in *Wholesale Elec. Antitrust Cases I & II*, charging an antitrust conspiracy by wholesale electricity suppliers and traders of electricity in California's newly deregulated wholesale electricity market. In conjunction with the Governor of the State of California, the California State Attorney General, the California Public Utilities Commission, the California Electricity Oversight Board, a number of other state and local governmental entities and agencies, and California's large, investor-owned electric utilities, plaintiffs secured a global settlement for California consumers, businesses and local governments valued at more than $1.1 billion. Janecek also chaired several of the litigation committees in California's tobacco litigation, which resulted in the $25.5 billion recovery for California and its local entities, and also handled a constitutional challenge to the State of California's Smog Impact Fee in *Ramos v. Dep't of Motor Vehicles*, which resulted in more than a million California residents receiving full refunds and interest, totaling $665 million.

## Education

B.S., University of California, Davis, 1987; J.D., Loyola Law School, 1991

## Honors / Awards

Super Lawyer, 2013-2018

# Nancy M. Juda | Of Counsel

Nancy Juda is Of Counsel to the Firm and is based in the Firm's Washington, D.C. office. Her practice focuses on advising Taft-Hartley pension and welfare funds on issues related to corporate fraud in the United States securities markets. Juda's experience as an ERISA attorney provides her with unique insight into the challenges faced by pension fund trustees as they endeavor to protect and preserve their funds' assets.

Prior to joining Robbins Geller, Juda was employed by the United Mine Workers of America Health & Retirement Funds, where she began her practice in the area of employee benefits law. She was also associated with a union-side labor law firm in Washington, D.C., where she represented the trustees of Taft-Hartley pension and welfare funds on qualification, compliance, fiduciary, and transactional issues under ERISA and the Internal Revenue Code.

Using her extensive experience representing employee benefit funds, Juda advises trustees regarding their options for seeking redress for losses due to securities fraud. She currently advises trustees of funds providing benefits for members of unions affiliated with North America's Building Trades of the AFL-CIO. Juda also represents funds in ERISA class actions involving breach of fiduciary claims.

## Education

B.A., St. Lawrence University, 1988; J.D., American University, 1992

# Francis P. Karam | Of Counsel

Frank Karam is Of Counsel to the Firm and is based in the Firm's Melville office. Karam is a trial lawyer with 30 years of experience. His practice focuses on complex class action litigation involving shareholders' rights and securities fraud. He also represents a number of landowners and royalty owners in litigation against large energy companies. He has tried complex cases involving investment fraud and commercial fraud, both on the plaintiff and defense side, and has argued numerous appeals in state and federal courts. Throughout his career, Karam has tried more than 100 cases to verdict.

Karam has served as a partner at several prominent plaintiffs' securities firms. From 1984 to 1990, Karam was an Assistant District Attorney in the Bronx, New York, where he served as a senior Trial Attorney in the Homicide Bureau. He entered private practice in 1990, concentrating on trial and appellate work in state and federal courts.

## Education
A.B., College of the Holy Cross; J.D., Tulane University School of Law

## Honors / Awards
"Who's Who" for Securities Lawyers, *Corporate Governance Magazine*, 2015

# Ashley M. Kelly | Of Counsel

Ashley Kelly is Of Counsel in the San Diego office, where she represents large institutional and individual investors as a member of the Firm's antitrust and securities fraud practices. Her work is primarily federal and state class actions involving the federal antitrust and securities laws, common law fraud, breach of contract and accounting violations. Kelly's case work has been in the financial services, oil & gas, e-commerce and technology industries. In addition to being an attorney, she is a Certified Public Accountant. Kelly was an important member of the litigation team that obtained a $500 million settlement on behalf of investors in *Luther v. Countrywide Fin. Corp.*, which was the largest residential mortgage-backed securities purchaser class action recovery in history.

## Education
B.S., Pennsylvania State University, 2005; J.D., Rutgers University-Camden, 2011

## Honors / Awards
Super Lawyer, "Rising Star," 2016, 2018-2019

## Matthew J. Langley | Of Counsel

Matthew Langley is Of Counsel in the Firm's Chicago office. He focuses his practice on securities fraud and other complex civil litigation. Prior to joining Robbins Geller, Langley served as an Assistant United States Attorney in the Southern District of Florida. He tried cases before the United States District Court and argued before the Eleventh Circuit Court of Appeals. Langley was a member of the Economic Crimes Division and prosecuted cases involving financial fraud, tax fraud, health care fraud, narcotics trafficking and firearm offenses. Before that, Langley was an associate at K&L Gates LLP in Miami from 2011 to 2014 and at Kirkland and Ellis LLP in New York from 2008 to 2011 where he concentrated in complex commercial litigation.

## Education
B.A., University of Connecticut, 1997; J.D., Columbia Law School, 2008

## Honors / Awards
Super Lawyer "Rising Star," 2013-2014

## Jerry E. Martin | Of Counsel

Jerry Martin is Of Counsel in the Firm's Nashville office. He specializes in representing individuals who wish to blow the whistle to expose fraud and abuse committed by federal contractors, health care providers, tax cheats or those who violate the securities laws. Martin was a member of the litigation team that obtained a $65 million recovery in *Garden City Emps.' Ret. Sys. v. Psychiatric Solutions, Inc.*, the third largest securities recovery ever in the Middle District of Tennessee and the largest in more than a decade.

Prior to joining the Firm, Martin served as the presidentially appointed United States Attorney for the Middle District of Tennessee from May 2010 to April 2013. As U.S. Attorney, he made prosecuting financial, tax and health care fraud a top priority. During his tenure, Martin co-chaired the Attorney General's Advisory Committee's Health Care Fraud Working Group. Martin has been recognized as a national leader in combatting fraud and has addressed numerous groups and associations, such as Taxpayers Against Fraud and the National Association of Attorney Generals, and was a keynote speaker at the American Bar Association's Annual Health Care Fraud Conference.

## Education
B.A., Dartmouth College, 1996; J.D., Stanford University, 1999

## Honors / Awards
Super Lawyer, 2016-2018

Case 3:21-cv-00144-BJM Document 126-9 Filed 04/19/24 Page 397 of 586 PageID#716
Case 1:16-cv-01031-TSE-MSN Document 453 Filed 04/26/13 Page 148 of 158 PageID# 5585

ATTORNEY BIOGRAPHIES

# Ruby Menon | Of Counsel

Ruby Menon is Of Counsel to the Firm and serves as a member of the Firm's legal, advisory and business development group. She also serves as the liaison to the Firm's many institutional investor clients in the United States and abroad. For over 12 years, Menon served as Chief Legal Counsel to two large multi-employer retirement plans, developing her expertise in many areas of employee benefits and pension administration, including legislative initiatives and regulatory affairs, investments, tax, fiduciary compliance and plan administration.

## Education

B.A., Indiana University, 1985; J.D., Indiana University School of Law, 1988

# Eugene Mikolajczyk | Of Counsel

Eugene Mikolajczyk is Of Counsel to the Firm and is based in the Firm's San Diego Office. Mikolajczyk has over 30 years' experience prosecuting shareholder and securities litigation cases as both individual and class actions. Among the cases are *Heckmann v. Ahmanson*, in which the court granted a preliminary injunction to prevent a corporate raider from exacting greenmail from a large domestic media/entertainment company.

Mikolajczyk was a primary litigation counsel in an international coalition of attorneys and human rights groups that won a historic settlement with major U.S. clothing retailers and manufacturers on behalf of a class of over 50,000 predominantly female Chinese garment workers, in an action seeking to hold the Saipan garment industry responsible for creating a system of indentured servitude and forced labor. The coalition obtained an unprecedented agreement for supervision of working conditions in the Saipan factories by an independent NGO, as well as a substantial multi-million dollar compensation award for the workers.

## Education

B.S., Elizabethtown College, 1974; J.D., Dickinson School of Law, Penn State University, 1978

# Roxana Pierce | Of Counsel

Roxana Pierce is Of Counsel in the Firm's Washington D.C. office. She is an international lawyer whose practice focuses on securities litigation, arbitration, negotiations, contracts, international trade, real estate transactions and project development. She has represented clients in over 75 countries, with extensive experience in the Middle East, Asia, Russia, the former Soviet Union, Germany, Belgium, the Caribbean and India. Pierce's client base includes large institutional investors, international banks, asset managers, foreign governments, multi-national corporations, sovereign wealth funds and high net worth individuals.

Pierce has counseled international clients since 1994. She has spearheaded the contract negotiations for hundreds of projects, including several valued at over $1 billion, and typically conducts her negotiations with the leadership of foreign governments and the leadership of Fortune 500 corporations, foreign and domestic. Pierce presently represents several European legacy banks in litigation concerning the 2008 financial crisis.

## Education
B.A., Pepperdine University, 1988; J.D., Thomas Jefferson School of Law, 1994

## Honors / Awards
Certificate of Accomplishment, Export-Import Bank of the United States

# Svenna Prado | Of Counsel

Svenna Prado is Of Counsel in the Firm's San Diego office, where she focuses on various aspects of international securities and consumer litigation. She was part of the litigation teams that secured settlements against German defendant IKB, as well as Deutsche Bank and Deutsche Bank/West LB for their role in structuring residential mortgage-backed securities and their subsequent collapse. Prior to joining the Firm, Prado was Head of the Legal Department for a leading international staffing agency in Germany where she focused on all aspects of employment litigation and corporate governance. After she moved to the United States, Prado worked with an internationally oriented German law firm as Counsel to corporate clients establishing subsidiaries in the United States and Germany. As a law student, Prado worked directly for several years for one of the appointed Trustees winding up Eastern German operations under receivership in the aftermath of the German reunification. Utilizing her experience in this area of law, Prado later helped many clients secure successful outcomes in U.S. Bankruptcy Court.

## Education
J.D., University of Erlangen-Nuremberg, Germany, 1996; Qualification for Judicial Office, Upper Regional Court Nuremberg, Germany, 1998; New York University, "U.S. Law and Methodologies," 2001

Case 3:21-cv-00444-BJM Document 126-9 Filed 04/19/24 Page 399 of 586 PageID#718
Case 1:16-cv-01031-TSE-MSN Document 453 Filed 04/26/13 Page 150 of 158 PageID#
5587
ATTORNEY BIOGRAPHIES

# Stephanie Schroder | Of Counsel

Stephanie Schroder is Of Counsel in the Firm's San Diego office and focuses her practice on advising institutional investors, including public and multi-employer pension funds, on issues related to corporate fraud in the United States and worldwide financial markets. Schroder has been with the Firm since its formation in 2004, and has over 17 years of securities litigation experience.

Schroder has obtained millions of dollars on behalf of defrauded investors. Prominent cases include: *In re AT&T Corp. Sec. Litig.* ($100 million recovery at trial); *In re FirstEnergy Corp. Sec. Litig.* ($89.5 million recovery); *Rasner v. Sturm* (*FirstWorld Communications*); and *In re Advanced Lighting Sec. Litig.* Schroder also specializes in derivative litigation for breaches of fiduciary duties by corporate officers and directors. Significant litigation includes *In re OM Group S'holder Litig.* and *In re Chiquita S'holder Litig.* Schroder also represented clients that suffered losses from the Madoff fraud in the *Austin Capital* and *Meridian Capital* litigations, which were successfully resolved. In addition, Schroder is a frequent lecturer on securities fraud, shareholder litigation, and options for institutional investors seeking to recover losses caused by securities and accounting fraud.

## Education
B.A., University of Kentucky, 1997; J.D., University of Kentucky College of Law, 2000

# Christopher P. Seefer | Of Counsel

Christopher Seefer is Of Counsel in the Firm's San Francisco office. He concentrates his practice in securities class action litigation, including cases against Verisign, UTStarcom, VeriFone, Nash Finch, NextCard, Terayon and America West. Seefer served as an Assistant Director and Deputy General Counsel for the Financial Crisis Inquiry Commission, which reported to Congress in January 2011 its conclusions as to the causes of the global financial crisis. Prior to joining the Firm, he was a Fraud Investigator with the Office of Thrift Supervision, Department of the Treasury (1990-1999), and a field examiner with the Office of Thrift Supervision (1986-1990).

## Education
B.A., University of California Berkeley, 1984; M.B.A., University of California, Berkeley, 1990; J.D., Golden Gate University School of Law, 1998

Case 3:21-cv-00144-BJM   Document 126-9   Filed 04/19/24   Page 400 of 586 PageID# 5588

# Arthur L. Shingler III | Of Counsel

Arthur Shingler is Of Counsel to the Firm and is based in the Firm's San Diego office. Shingler has successfully represented both public and private sector clients in hundreds of complex, multi-party actions with billions of dollars in dispute. Throughout his career, he has obtained outstanding results for those he has represented in cases generally encompassing shareholder derivative and securities litigation, unfair business practices litigation, publicity rights and advertising litigation, ERISA litigation, and other insurance, health care, employment and commercial disputes.

Representative matters in which Shingler served as lead litigation or settlement counsel include, among others: *In re Royal Dutch/Shell ERISA Litig.* ($90 million settlement); *In re Priceline.com Sec. Litig.* ($80 million settlement); *In re General Motors ERISA Litig.* ($37.5 million settlement, in addition to significant revision of retirement plan administration); *Wood v. Ionatron, Inc.* ($6.5 million settlement); *In re Lattice Semiconductor Corp. Derivative Litig.* (corporate governance settlement, including substantial revision of board policies and executive management); *In re 360networks Class Action Sec. Litig.* ($7 million settlement); and *Rothschild v. Tyco Int'l (US), Inc.*, 83 Cal. App. 4th 488 (2000) (shaped scope of California's Unfair Practices Act as related to limits of State's False Claims Act).

## Education

B.A., Point Loma Nazarene College, 1989; J.D., Boston University School of Law, 1995

## Honors / Awards

B.A., *Cum Laude*, Point Loma Nazarene College, 1989

# Leonard B. Simon | Of Counsel

Leonard Simon is Of Counsel in the Firm's San Diego office. His practice has been devoted to litigation in the federal courts, including both the prosecution and the defense of major class actions and other complex litigation in the securities and antitrust fields. Simon has also handled a substantial number of complex appellate matters, arguing cases in the United States Supreme Court, several federal Courts of Appeals, and several California appellate courts. He has also represented large, publicly traded corporations. Simon served as plaintiffs' co-lead counsel in *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, MDL No. 834 (D. Ariz.) (settled for $240 million), and *In re NASDAQ Market-Makers Antitrust Litig.*, MDL No. 1023 (S.D.N.Y.) (settled for more than $1 billion). He was also in a leadership role in several of the state court antitrust cases against Microsoft, and the state court antitrust cases challenging electric prices in California. He was centrally involved in the prosecution of *In re Washington Pub. Power Supply Sys. Sec. Litig.*, MDL No. 551 (D. Ariz.), the largest securities class action ever litigated.

Simon is an Adjunct Professor of Law at Duke University, the University of San Diego, and the University of Southern California Law Schools. He has lectured extensively on securities, antitrust, and complex litigation in programs sponsored by the American Bar Association Section of Litigation, the Practicing Law Institute, and ALI-ABA, and at the UCLA Law School, the University of San Diego Law School, and the Stanford Business School. He is an Editor of *California Federal Court Practice* and has authored a law review article on the PSLRA.

## Education
B.A., Union College, 1970; J.D., Duke University School of Law, 1973

## Honors / Awards
Top Lawyer in San Diego, *San Diego Magazine*, 2016-2019; Super Lawyer, 2008-2016; J.D., Order of the Coif and with Distinction, Duke University School of Law, 1973

Case 3:21-cv-00444-BJM Document 126-9 Filed 04/19/24 Page 402 of 586 PageID#721
5590
Case 1:16-cv-01031-TSE-MSN Document 453 Filed 04/26/19 Page 153 of 158 PageID# 8721

# Laura S. Stein | Of Counsel

Laura Stein is Of Counsel in the Firm's Philadelphia office. Since 1995, she has practiced in the areas of securities class action litigation, complex litigation and legislative law. Stein has served for over 20 years as Special Counsel to the Institute for Law and Economic Policy (ILEP), a think tank which develops policy positions on selected issues involving the administration of justice within the American legal system. She has also served as Counsel to the Annenberg Institute of Public Service at the University of Pennsylvania.

In a unique partnership with her mother, attorney Sandra Stein, also Of Counsel to the Firm, the Steins have served as the Firm's and the nation's top asset recovery experts. The Steins focus on minimizing losses suffered by shareholders due to corporate fraud and breaches of fiduciary duty. The Steins also seek to deter future violations of federal and state securities laws by reinforcing the standards of good corporate governance. The Steins work with over 500 institutional investors across the nation and abroad, and their clients have served as lead plaintiff in successful cases where billions of dollars were recovered for defrauded investors against such companies as: AOL Time Warner, TYCO, Cardinal Health, AT&T, Hanover Compressor, 1st Bancorp, Enron, Dynegy, Inc., Honeywell International and Bridgestone, to name a few. Many of the cases led by the Steins' clients have accomplished groundbreaking corporate governance achievements, including obtaining shareholder-nominated directors.

## Education
B.A., University of Pennsylvania, 1992; J.D., University of Pennsylvania Law School, 1995

# Sandra Stein | Of Counsel

Sandra Stein is Of Counsel in the Firm's Philadelphia office. She concentrates her practice in securities class action litigation, legislative law and antitrust litigation. In a unique partnership with her daughter, Laura Stein, also Of Counsel to the Firm, the Steins have served as the Firm's and the nation's top asset recovery experts. The Steins focus on minimizing losses suffered by shareholders due to corporate fraud and breaches of fiduciary duty.

Previously, Stein served as Counsel to United States Senator Arlen Specter of Pennsylvania. During her service in the United States Senate, Stein was a member of Senator Specter's legal staff and a member of the United States Senate Judiciary Committee staff. She is also the Founder of the Institute for Law and Economic Policy (ILEP), a think tank that develops policy positions on selected issues involving the administration of justice within the American legal system. Stein has also produced numerous public service documentaries for which she was nominated for an Emmy and received an ACE award, cable television's highest award for excellence in programming.

## Education
B.S., University of Pennsylvania, 1961; J.D., Temple University School of Law, 1966

## Honors / Awards
Nominated for an Emmy and received an ACE award for public service documentaries

Case 3:21-cv-00444-BJM Document 126-9 Filed 04/19/24 Page 403 of 586 PageID#
Case 1:16-cv-01031-TSE-MSN Document 453 Filed 04/26/19 Page 154 of 158 PageID# 8722
5591
ATTORNEY BIOGRAPHIES

# John J. Stoia, Jr. | Of Counsel

John Stoia is Of Counsel to the Firm and is based in the Firm's San Diego office. He is one of the founding partners and former managing partner of the Firm. He focuses his practice on insurance fraud, consumer fraud and securities fraud class actions. Stoia has been responsible for over $10 billion in recoveries on behalf of victims of insurance fraud due to deceptive sales practices such as "vanishing premiums" and "churning." He has worked on dozens of nationwide complex securities class actions, including *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, which arose out of the collapse of Lincoln Savings & Loan and Charles Keating's empire. Stoia was a member of the plaintiffs' trial team that obtained verdicts against Keating and his co-defendants in excess of $3 billion and settlements of over $240 million.

He also represented numerous large institutional investors who suffered hundreds of millions of dollars in losses as a result of major financial scandals, including AOL Time Warner and WorldCom. Currently, Stoia is lead counsel in numerous cases against online discount voucher companies for violations of both federal and state laws including violation of state gift card statutes.

## Education
B.S., University of Tulsa, 1983; J.D., University of Tulsa, 1986; LL.M., Georgetown University Law Center, 1987

## Honors / Awards
Rated AV Preeminent by Martindale-Hubbell; Top Lawyer in San Diego, *San Diego Magazine*, 2013-2019; Super Lawyer, 2007-2017; Litigator of the Month, *The National Law Journal*, July 2000; LL.M. Top of Class, Georgetown University Law Center

# David C. Walton | Of Counsel

David Walton was a founding partner of Robbins Geller Rudman & Dowd LLP. For over 20 years, he has prosecuted class actions and private actions on behalf of defrauded investors, particularly in the area of accounting fraud. He has investigated and participated in the litigation of highly complex accounting scandals within some of America's largest corporations, including Enron ($7.2 billion), HealthSouth ($671 million), WorldCom ($657 million), AOL Time Warner ($629 million), Countrywide ($500 million), and Dynegy ($474 million), as well as numerous companies implicated in stock option backdating.

Walton is a member of the Bar of California, a Certified Public Accountant (California 1992), a Certified Fraud Examiner, and is fluent in Spanish. In 2003-2004, he served as a member of the California Board of Accountancy, which is responsible for regulating the accounting profession in California.

## Education
B.A., University of Utah, 1988; J.D., University of Southern California Law Center, 1993

## Honors / Awards
Super Lawyer, 2015-2016; California Board of Accountancy, Member, 2003-2004; *Southern California Law Review*, Member, University of Southern California Law Center; Hale Moot Court Honors Program, University of Southern California Law Center

# Bruce Gamble | Special Counsel

Bruce Gamble is Special Counsel to the Firm in the Firm's Washington D.C. office and is a member of the Firm's institutional investor client services group. He serves as liaison with the Firm's institutional investor clients in the United States and abroad, advising them on securities litigation matters. Gamble formerly served as Of Counsel to the Firm, providing a broad array of highly specialized legal and consulting services to public retirement plans. Prior to working with Robbins Geller, Gamble was General Counsel and Chief Compliance Officer for the District of Columbia Retirement Board, where he served as chief legal advisor to the Board of Trustees and staff. Gamble's experience also includes serving as Chief Executive Officer of two national trade associations and several senior level staff positions on Capitol Hill.

## Education

B.S., University of Louisville, 1979; J.D., Georgetown University Law Center, 1989

## Honors / Awards

Executive Board Member, National Association of Public Pension Attorneys, 2000-2006; American Banker selection as one of the most promising U.S. bank executives under 40 years of age, 1992

# Carlton R. Jones | Special Counsel

Carlton Jones is Special Counsel to the Firm and is a member of the Intellectual Property group in the Atlanta office. Although Jones primarily focuses on patent litigation, he has experience handling a variety of legal matters of a technical nature, including performing invention patentability analysis and licensing work for the Centers for Disease Control as well as litigation involving internet streaming-audio licensing disputes and medical technologies. He is a registered Patent Attorney with the United States Patent and Trademark Office.

## Education

B.S., Georgia Institute of Technology, 2006; J.D., Georgia State University College of Law, 2009

# Tricia L. McCormick | Special Counsel

Tricia McCormick is Special Counsel to the Firm and focuses primarily on the prosecution of securities class actions. McCormick has litigated numerous cases against public companies in the state and federal courts which resulted in hundreds of millions of dollars in recoveries to investors. She is also a member of a team that is in constant contact with clients who wish to become actively involved in the litigation of securities fraud. In addition, McCormick is active in all phases of the Firm's lead plaintiff motion practice.

## Education

B.A., University of Michigan, 1995; J.D., University of San Diego School of Law, 1998

## Honors / Awards

J.D., *Cum Laude*, University of San Diego School of Law, 1998

# R. Steven Aronica | Forensic Accountant

Steven Aronica is a Certified Public Accountant licensed in the States of New York and Georgia and is a member of the American Institute of Certified Public Accountants, the Institute of Internal Auditors and the Association of Certified Fraud Examiners. Aronica has been instrumental in the prosecution of numerous financial and accounting fraud civil litigation claims against companies that include Lucent Technologies, Tyco, Oxford Health Plans, Computer Associates, Aetna, WorldCom, Vivendi, AOL Time Warner, Ikon, Doral Financial, First BanCorp, Acclaim Entertainment, Pall Corporation, iStar Financial, Hibernia Foods, NBTY, Tommy Hilfiger, Lockheed Martin, the Blackstone Group and Motorola. In addition, he assisted in the prosecution of numerous civil claims against the major United States public accounting firms.

Aronica has been employed in the practice of financial accounting for more than 30 years, including public accounting, where he was responsible for providing clients with a wide range of accounting and auditing services; the investment bank Drexel Burnham Lambert, Inc., where he held positions with accounting and financial reporting responsibilities; and at the SEC, where he held various positions in the divisions of Corporation Finance and Enforcement and participated in the prosecution of both criminal and civil fraud claims.

## Education
B.B.A., University of Georgia, 1979

# Andrew J. Rudolph | Forensic Accountant

Andrew Rudolph is the Director of the Firm's Forensic Accounting Department, which provides in-house forensic accounting expertise in connection with securities fraud litigation against national and foreign companies. He has directed hundreds of financial statement fraud investigations, which were instrumental in recovering billions of dollars for defrauded investors. Prominent cases include *Qwest*, *HealthSouth*, *WorldCom*, *Boeing*, *Honeywell*, *Vivendi*, *Aurora Foods*, *Informix*, *Platinum Software*, *AOL Time Warner*, and *UnitedHealth*.

Rudolph is a Certified Fraud Examiner and a Certified Public Accountant licensed to practice in California. He is an active member of the American Institute of Certified Public Accountants, California's Society of Certified Public Accountants, and the Association of Certified Fraud Examiners. His 20 years of public accounting, consulting and forensic accounting experience includes financial fraud investigation, auditor malpractice, auditing of public and private companies, business litigation consulting, due diligence investigations and taxation.

## Education
B.A., Central Connecticut State University, 1985

# Christopher Yurcek | Forensic Accountant

Christopher Yurcek is the Assistant Director of the Firm's Forensic Accounting Department, which provides in-house forensic accounting and litigation expertise in connection with major securities fraud litigation.  He has directed the Firm's forensic accounting efforts on numerous high-profile cases, including *In re Enron Corp. Sec. Litig.* and *Jaffe v. Household Int'l, Inc.*, which obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs.  Other prominent cases include *HealthSouth*, *UnitedHealth*, *Vesta*, *Informix*, *Mattel*, *Coca-Cola* and *Media Vision*.

Yurcek has over 20 years of accounting, auditing, and consulting experience in areas including financial statement audit, forensic accounting and fraud investigation, auditor malpractice, turn-around consulting, business litigation and business valuation.  He is a Certified Public Accountant licensed in California, holds a Certified in Financial Forensics (CFF) Credential from the American Institute of Certified Public Accountants, and is a member of the California Society of CPAs and the Association of Certified Fraud Examiners.

## Education
B.A., University of California, Santa Barbara, 1985

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2019, I filed the foregoing pleading or paper through the

Court's CM/ECF system, which sent a notice of electronic filing to all registered users.

/s/ Craig C. Reilly
Craig C. Reilly VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
T:  703/549-5354
F: 703/549-5355
E: craig.reilly@ccreillylaw.com
*Liaison Counsel for Lead Plaintiff*

# EXHIBIT 9Z

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON D. MILBECK, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TRUECAR, INC., et al.,<br><br>Defendants. | No. 2:18-cv-02612-SVW-AGR<br><br>**ORDER AWARDING ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES** |

WHEREAS, Lead Plaintiff's motion for an award of attorneys' fees and reimbursement of Litigation Expenses and memorandum of points and authorities in support thereof (the "Fee Motion," ECF Nos. 180, 180-1) came before the Court for hearing on January 27, 2020, pursuant to the Court's Order dated October 15, 2019 preliminarily approving the Settlement and providing for Notice (the "Preliminary Approval Order," ECF No. 174); and

WHEREAS, due and adequate notice having been given to the Settlement Class as required by the Preliminary Approval Order, and the Court, having read and considered the Fee Motion and supporting declarations and exhibits and being fully informed of the related proceedings, now FINDS, CONCLUDES AND ORDERS as follows:

1.    This Order incorporates by reference the definitions set forth in the Stipulation and Agreement of Settlement (ECF No. 172), and all capitalized terms used, but not defined herein, shall have the same meaning as in the Stipulation.

2.    This Court has jurisdiction over the subject matter of the Action, and all matters relating to the Settlement, as well as personal jurisdiction over all of the Parties and each of the members of the Settlement Class.

3.    Notice of Lead Counsel's application for attorneys' fees and reimbursement of Litigation Expenses was given to all Settlement Class Members who could be identified with reasonable effort. The form and method of notifying the Settlement Class of the application for attorneys' fees and reimbursement of Litigation Expenses met the requirements of Rule 23 of the Federal Rules of Civil Procedure, Section 21(D)(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), due process, and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4.    The Fee Motion is here by GRANTED.

5.    The Court hereby awards Plaintiffs' Counsel attorneys' fees in the amount of 25% of the Settlement Amount of $28,250,000, or $7,062,500, plus interest earned at the same rate and for the same time period as the Settlement Fund, to be paid from the Settlement Fund. The Court finds that an award of attorneys' fees of 25% is fair and reasonable in light of the following factors, among others: the results achieved; the significant risks posed by the complex factual and legal issues in this Action, and by protracted litigation against Defendants, the outcome of which would be uncertain; the considerable time and effort expended by Plaintiffs' Counsel in prosecuting this Action and obtaining the Settlement; the quality of the legal services rendered; the significant risk posed by the contingent

nature of the case and the financial burden carried; the substantial benefit obtained for the Settlement Class before trial; the institutional Lead Plaintiff's support of the fee and expense application; the fee awards in similar actions involving common funds of a comparable size; and the positive reaction of the Settlement Class. The requested award of attorneys' fees is also supported by a lodestar multiplier crosscheck.

6. The Court also grants Lead Plaintiff's request for reimbursement of Plaintiffs' Counsel's litigation expenses in the amount of $424,910.42, to be paid from the Settlement Fund. The litigation expenses incurred by Plaintiffs' Counsel have been adequately documented and were reasonably incurred for the benefit of the Settlement Class, and the Court finds that the reimbursement of those expenses is justified.

7. In accordance with 15 U.S.C. §78u-4(a)(4), Lead Plaintiff and Class Representative Oklahoma Police Pension and Retirement Fund is hereby awarded $5,000 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

8. Pursuant to Paragraph 7.2 of the Stipulation, the attorneys' fees and Litigation Expenses awarded above shall be paid to Lead Counsel from the Settlement Fund immediately upon award subject to the terms, conditions and obligations as set forth in the Stipulation.

9. Any appeal or challenge affecting this Court's approval of the attorneys' fees and reimbursement of Litigation Expenses, or of the Plan of Allocation, shall in no way disturb or affect the finality of the Judgment entered with respect to the Settlement.

10. Exclusive jurisdiction is hereby retained over the subject matter of this Action, and over all Parties to the Action, including the administration and distribution of the Net Settlement Fund to Class Members.

Case 3:21-cv-20444-DJN-AGR Document 126-95 Filed 04/29/24 Page 412 of 586 PageID#
5600
Case 2:18-cv-02612-SVW-AGR Document 185 Filed 01/27/20 Page 4 of 4 Page ID #:3591

11. In the event that the Settlement is terminated or does not become Final or the Effective Date does not occur in accordance with the terms of the Stipulation, this order shall be rendered null and void to the extent provided by the Stipulation and shall be vacated in accordance with the Stipulation.

12. There is no just reason to delay the entry of this Order, and immediate entry of this Order by the Clerk of the Court is expressly directed.

SO ORDERED this _27th_ day of _January_, 2020.

_____
The Honorable Stephen V. Wilson
United States District Judge

Copies:

Counsel of record

# EXHIBIT 9AA

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| NYKREDIT PORTEFØLJE ADMINISTRATION A/S, OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM, OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, OKLAHOMA CITY EMPLOYEE RETIREMENT SYSTEM, POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT, Individually and on behalf of all others similarly situated, | § § § § § § § § § § § § | No. MO:19-CV-217-DC |
| *Plaintiffs,* | § § | |
| v. | § § | |
| PROPETRO HOLDING CORP., DALE REDMAN, JEFFREY SMITH, IAN DENHOLM, and SPENCER D. ARMOUR III, | § § § § | |
| *Defendants.* | § § | |

## ORDER AWARDING ATTORNEY FEES
## AND LITIGATION EXPENSES

BEFORE THE COURT is Plaintiffs' Motion for Attorney Fees. (Doc. 171). After due consideration, Plaintiffs' Motion is hereby **GRANTED** (Doc. 171).

This matter came on for hearing on May 11, 2023 (the "Settlement Hearing") on Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses and Plaintiffs' Motion for Awards. The Court having considered all matters submitted to it at the Settlement Hearing and otherwise; it appearing that: (i) Notice of the Settlement Hearing substantially in the form approved by the Court was mailed to all Settlement Class Members who or which could be identified with reasonable effort, and (ii) a summary notice of the hearing substantially in the form approved by the Court was published in Investor's Business Daily and released over PR Newswire pursuant to the specifications of the Court; and the Court having considered and

1

determined the fairness and reasonableness of the award of attorneys' fees and Litigation Expenses requested,

THEREFORE, IT IS ORDERED:

1. This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated September 22, 2022 (Doc. 168-1) (the "Stipulation") and all terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2. The Court has jurisdiction to enter this Order approving the proposed Plan of Allocation, and over the subject matter of the Action and all Parties to the Action, including all Settlement Class Members.

3. Notice of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses and Plaintiffs' Motion for Awards was given to all Settlement Class Members who or which could be identified with reasonable effort. The form and method of notifying the Settlement Class of the for attorneys' fees and Litigation Expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 77z-1, 78u-4, as amended, and all other applicable laws and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4. Plaintiffs' Counsel are hereby awarded attorneys' fees in the amount of 20% of the Settlement Fund, or $6,000,000 (plus interest on that amount at the same rate as earned by the Settlement Fund), as well as $486,411.27 in payment of Plaintiffs' Counsel's litigation expenses (which fees and expenses shall be paid from the Settlement Fund), which sums the Court finds to be fair and reasonable. Lead Counsel shall allocate the attorneys' fees awarded

2

amongst Plaintiffs' Counsel in a manner which they, in good faith, believe reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.

5. In making this award of attorneys' fees and payment of expenses from the Settlement Fund, the Court has considered and found that:

(a) The Settlement has created a fund of $30,000,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and numerous Settlement Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Plaintiffs' Counsel;

(b) The requested fee has been reviewed and approved as reasonable by Plaintiffs, six sophisticated institutional investors that actively supervised the Action;

(c) Copies of the Notice were mailed to over 72,000 potential Settlement Class Members and nominees stating Lead Counsel would apply for attorneys' fees in an amount not to exceed 20% of the Settlement Fund and for Litigation Expenses in an amount not to exceed $750,000, and no objections to the requested attorneys' fees and Litigation Expenses were received; (

(d) Plaintiffs' Counsel conducted the litigation and achieved the Settlement with skill, perseverance, and diligent advocacy;

(e) The Action raised a number of complex issues;

(f) Had Plaintiffs' Counsel not achieved the Settlement there would remain a significant risk that Plaintiffs and the other members of the Settlement Class may have recovered less or nothing from Defendants;

(g) Plaintiffs' Counsel's attorneys devoted over 8,900 hours, with a lodestar value of over $6.3 million, to achieve the Settlement; and

3

(h)     The amount of attorneys' fees awarded and expenses to be paid from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

6.     Lead Plaintiff Nykredit Porteførje Administration A/S is hereby awarded $18,075.00 from the Settlement Fund in reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

7.     Lead Plaintiff Nykredit Porteførje Administration A/S is hereby awarded $18,075.00 from the Settlement Fund in reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

8.     Lead Plaintiff Oklahoma Law Enforcement Retirement System is hereby awarded $2,425.00 from the Settlement Fund in reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

9.     Lead Plaintiff Oklahoma Police Pension and Retirement System is hereby awarded $4,074.00 from the Settlement Fund in reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

10.     Lead Plaintiff Oklahoma City Employee Retirement System is hereby awarded $7,798.70 from the Settlement Fund in reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

11.     Plaintiff Police and Fire Retirement System of the City of Detroit is hereby awarded $2,860.30 from the Settlement Fund in reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

12.     Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

4

13. Exclusive jurisdiction is hereby retained over the Parties and the Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

14. In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

15. There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

It is so **ORDERED.**

**SIGNED this 11th day of May, 2023.**

**DAVID COUNTS**
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT 9BB

Case 1:17-cv-00304-WJM-NRN   Document 122   Filed 07/15/21   USDC Colorado   Page 1 of 10
Case 3:21-cv-00444-DJN      Document 126-9      Filed 04/19/24      Page 420 of 586 PageID#
5608

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 17-cv-0304-WJM-NRN

PEACE OFFICERS' ANNUITY AND BENEFIT FUND OF GEORGIA, individually and
on behalf of all others similarly situated; and
JACKSONVILLE POLICE AND FIRE PENSION FUND, individually and on behalf
of all others similarly situated,

      Plaintiffs,

v.

DAVITA INC.;
KENT J. THIRY;
JAMES K. HILGER; and
JAVIER J. RODRIGUEZ,

      Defendants.

---

**ORDER GRANTING LEAD PLAINTIFFS' MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

---

This matter is before the Court on Lead Plaintiffs' Peace Officers' Annuity and

Benefit Fund of Georgia and the Jacksonville Police and Fire Pension Fund (jointly,

"Lead Plaintiffs") Motion for an Award of Attorneys' Fees and Reimbursement of

Litigation Expenses, filed on February 23, 2021 ("Motion").  (ECF No. 108.)  The Motion

is unopposed.  This Court has subject matter jurisdiction pursuant to the Securities

Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78aa *et seq.,* and 28 U.S.C. §

1331.

**I. BACKGROUND**

The background of this case has been set forth at length in prior orders and

therefore the Court presumes familiarity with the facts of this case.  (*See, e.g.*, ECF No.

118.) On April 13, 2021, the Court entered the Order Granting Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation. (*Id.*) In the instant Motion, Lead Plaintiffs request that the Court enter an order directing: (i) an award of attorneys' fees in the amount of 30% of the Settlement Fund; (ii) reimbursement of $547,409.27 in litigation expenses; and (iii) Representative Reimbursements of $10,000 to Lead Plaintiffs for their efforts in representing the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1] No class members have objected to Lead Plaintiffs' requests.

## II. FEE AWARD

Under the PSLRA, the "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u–4(a)(6). In common fund cases, the Tenth Circuit has "recognized the propriety of awarding attorneys' fees . . . on a percentage of the fund, rather than lodestar, basis."[2] *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993); *accord Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994) (holding that, although either method is permissible in common fund cases, "*Uselton* implies a preference for the percentage of the fund method"). Because this is a common fund case and because Lead Plaintiffs' fee request is for a percentage of the common fund, the Court will

---

[1] The Court has already granted Lead Plaintiffs' request for reimbursement awards (ECF No. 118 at 14–15) and need not discuss this request further.

[2] The lodestar amount is calculated based upon "the total number of hours reasonably expended multiplied by a reasonable hourly rate—and then adjust[ing] the lodestar upward or downward to account for the particularities of the suit and its outcome." *Zinna v. Congrove*, 680 F.3d 1236, 1239, 1242 (10th Cir. 2012) (quotation marks omitted).

2

calculate the attorneys' fees award using the percentage of the fund approach. *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (distinguishing common fund and statutory fees cases).

The "percentage reflected in a common fund award must be reasonable [and] the district court must 'articulate specific reasons for fee awards.'" *Id.* at 454 (quoting *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983)). In determining the reasonableness of a percentage award, courts must apply the *Johnson* factors, which are:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee . . .; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 454–55 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974)); *see also Gottlieb,* 43 F.3d at 483. "[R]arely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation." *Brown,* 838 F.2d at 455–56 ("The court here clearly considered all of the relevant *Johnson* factors and applied them appropriately."). Thus, in evaluating the reasonableness of a fee award, a court need not specifically address each *Johnson* factor. *Gudenkauf v. Stauffer Commc'ns, Inc.,* 158 F.3d 1074, 1083 (10th Cir. 1998).

## A.    Time and Labor Involved

Lead Plaintiffs submit that prosecuting this case required Lead Counsel to

Case 1:17-cv-00304-WJM-NRN   Document 122   Filed 07/15/21   USDC Colorado   Page 4 of 10
Case 3:21-cv-00444-DJN   Document 126-9   Filed 04/19/24   Page 423 of 586 PageID#
5611

expend more than 31,000 hours, equivalent to $14.7 million in attorney and staff time, over the course of more than four years of vigorous litigation.  (ECF No. 108 at 11.)

These efforts included an extensive and extremely comprehensive investigation, which included locating numerous internal documents and confidential witnesses that proved critical in drafting a highly-detailed Complaint sufficient to defeat Defendants' motion to dismiss.  (*Id.* at 10.)  Furthermore, Lead Counsel engaged in comprehensive discovery, including consulting with various economic and industry experts; reviewing 845,000 pages of documents produced by Defendants and over twenty third-parties; collecting and producing over 25,000 pages in response to Defendants' document requests; extensive class certification-related briefing and discovery, including defending Lead Plaintiffs' depositions and the deposition of Lead Plaintiffs' expert on market efficiency, and deposing Defendants' rebuttal expert; and opposing Defendants' motion for partial reconsideration.  (*Id.*)  In addition, the extensive settlement negotiations were time-consuming, including submitting detailed mediation statements and presentations over the course of six formal mediations that culminated in the Settlement.  (*Id.* at 10–11.)  In the Motion, Lead Plaintiffs note that Lead Counsel will continue to expend additional time and out-of-pocket expenses in connection with the settlement administration process and assist with implementation of the Settlement, which was approved following the Fairness Hearing.  (*Id.* at 11 n.4.)

Based on the foregoing efforts expended by Lead Counsel, the Court concludes that the time and labor expended was appropriate given the nature of the case and finds that this factor supports the requested award.

Case 1:17-cv-00304-WJM-NRN   Document 122   Filed 07/15/21   USDC Colorado   Page 5 of 10
Case 3:21-cv-00444-DJN     Document 126-9     Filed 04/19/24     Page 424 of 586 PageID#
5612

**B.     The Amount Involved and Results Obtained**

Courts in this District have repeatedly found that when determining the amount of fees to be awarded, the "greatest weight should be given to the monetary results achieved for the benefits of the class."  *Anderson v. Merit Energy Co.*, 2009 WL 3378526, at *4 (D. Colo. Oct. 20, 2009); *see also Shaw v. Interthinx, Inc.*, 2015 WL 1867861, at *7 (D. Colo. Apr. 22, 2015) ("The degree of success . . . is a critical factor in determining the amount of fees to be awarded.").

As Lead Plaintiffs point out, the monetary result here is "exceptional."  (ECF No. 108 at 13.)  The $135 million recovery represents the second-largest all-cash securities class action recovery ever obtained in this District, is among the top five such settlements in Tenth Circuit history, and is more than twenty times larger than the $6.7 million median for securities class action settlements in the Tenth Circuit from 2010 to 2019.  (*Id.*)  Here, the likely maximum damages at trial ranged from $312 million to $432 million, and therefore the Settlement recovers between 31% and 43% of the Class's damages—eight to eleven times greater than the median 3.9% recovery in similar actions, a significant achievement which, in the Court's view, further supports granting the fee request.  *See In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 n.20 (D. Colo. 2014) (approving settlement representing "approximately 1.3% of the amount of damages that could be achieved").  Given the extraordinary nature of the recovery for class members, the Court finds that this factor also favors granting the fee request.

**C.     Customary Fee and Awards in Similar Cases**

Courts in the Tenth Circuit have noted that "the typical fee award in complex cases is around one third of the common fund."  *In re Crocs*, 2014 WL 4670886, at *3;

Case 1:17-cv-00304-WJM-NRN  Document 122  Filed 07/15/21  USDC Colorado  Page 6 of 10
Case 3:21-cv-00444-DJN  Document 126-9  Filed 04/19/24  Page 425 of 586 PageID#
5613

*see also Diaz*, 2019 WL 2189485, at *5 ("33% fee award falls within the norm");

*Nakkhumpun v. Taylor*, 2016 WL 11724397, at *5 (D. Colo. June 13, 2016) (same).

Moreover, courts in the Tenth Circuit have repeatedly found that a 30% fee award is

reasonable even in the context of so-called "megafund" settlements, because applying

an arbitrary sliding fee percentage scale in large settlements "fails to provide the proper

incentive for counsel and is fundamentally at odds with the percentage-of-the-fund

approach favored by the Tenth Circuit." *In re Syngenta AG MIR 162 Corn Litig.*, 357 F.

Supp. 3d 1094, 1114 (D. Kan. 2018) (awarding 33.3% fee of $1.51 billion settlement).

In the Motion, Lead Plaintiffs provide a detailed chart demonstrating that numerous

courts in the Tenth Circuit and nationwide have awarded 30% fees or higher in large

complex class actions.  (ECF No. 108 at 15.)

In addition, the Court notes that a lodestar cross-check, while not required in the

Tenth Circuit, supports the fee request.  Here, Lead Counsel's total lodestar is

$14,717,351.25, and the requested 30% fee thus equates to a multiplier of 2.75, which

is at the low end of the typical range of multipliers routinely approved by courts in this

District and the Tenth Circuit.  *See, e.g.*, *In re DaVita Healthcare Partners, Inc. Deriv.

Litig.*, 2015 WL 3582265, at *5 (D. Colo. June 5, 2015) (multiplier of 3 "in line with the

multipliers awarded in similar cases"); *In re Crocs*, 2014 WL 4670886, at *4 (referencing

District cases approving multipliers ranging from 2.5 to 4.6).

Moreover, Lead Counsel's hourly rates—ranging from $365 to $895 for

attorneys, and $250 to $275 for support staff—are lower than hourly rates previously

approved by this Court and others within the District.  *See Ramos v. Banner Health*,

2020 WL 6585849 (D. Colo. Nov. 10, 2020) and ECF No. 504 (approving rates ranging

Case 1:17-cv-00304-WJM-NRN   Document 122   Filed 07/15/21   USDC Colorado   Page 7 of 10
Case 3:21-cv-00444-DJN   Document 126-9   Filed 04/19/24   Page 426 of 586 PageID#
5614

from \$490 to \$1,060 per hour); *In re Molycorp Inc. Sec. Litig.*, 2017 WL 11598681, at

*1–2 (D. Colo. June 16, 2017) (approving 30% fee request in securities class action

where attorney hourly rates ranged from \$435 to \$955 per hour); *In re Crocs*, 2014 WL

4670886, at *4, ECF No. 208 at 95 (awarding 30% fee where attorney hourly rates were

up to \$935 per hour and were "higher than the rates charged by attorneys of similar skill

and experience in the Denver legal market").  The Court concludes this factor also

supports the fee request.

**D.     The Contingent Nature of the Fee, Undesirability of the Action, and
         Preclusion of Other Employment**

"Federal securities class actions require plaintiffs' counsel to expend substantial

time and effort with no guarantee of success."  *In re Crocs*, 2014 WL 4670886, at *5.

As a result, "[s]uch cases are often seen as undesirable."  *In re Spectranetics Corp.*

*Sec. Litig.*, 2011 WL 13238696, at *2 (D. Colo. Apr. 4, 2011).

As Lead Plaintiffs point out, the vast majority of securities class actions draw

multiple applications for appointment as lead plaintiff and lead counsel—that is the very

purpose of the PSLRA provision requiring notice to be disseminated advising

shareholders of the lead plaintiff deadline.  (ECF No. 108 at 17.)  Here, however, no law

firm other than Saxena White submitted a leadership application—a fact that

underscores the perceived "undesirability" and difficulty of the case.  (*Id.*)  Courts have

"recognize[d] that counsel should be rewarded for taking on a case from which other law

firms shrunk . . . the proper incentive here is a 30% fee."  *In re Checking Account*

*Overdraft Litig.*, 830 F. Supp. 2d 1330, 1364 (S.D. Fla. 2011); *see also Thorpe v. Walter*

*Inv. Mgmt. Corp.*, 2016 WL 10518902, at *10–11 (S.D. Fla. Oct. 17, 2016)

(undesirability shown where "Counsel was the only counsel willing to take on this

Case 1:17-cv-00304-WJM-NRN   Document 122   Filed 07/15/21   USDC Colorado   Page 8 of 10
Case 3:21-cv-00444-DJN      Document 126-9     Filed 04/19/24     Page 427 of 586 PageID#
5615

litigation").

Importantly, the risk that Lead Counsel "would recover no compensation for their extensive efforts was not merely hypothetical, especially where, as here, Plaintiffs were subject to the PSLRA's heightened pleading standard and faced the immediate possibility of an adverse decision." *In re Crocs*, 2014 WL 4670886, at *5. To date, Lead Counsel has received no compensation for its prosecution of this case, and since the extensive commitment of time and resources devoted here necessarily entailed the preclusion of other projects, the primary focus of this factor is to acknowledge this incongruence by permitting a higher recovery to compensate for the risk of recovering nothing. As courts in this District have held, "[a] contingent fee arrangement often weighs in favor of a greater fee because [s]uch a large investment of money [and time] place[s] incredible burdens upon law practices." *In re Crocs*, 2014 WL 4670886, at *4. The significant burdens inherent in a contingent fee arrangement in a case of this magnitude "weighs heavily in support of a substantial fee award." *Syngenta*, 357 F. Supp. 3d at 1113. The Court concludes that this factor also weighs in favor of the requested award.

## E.    Additional Considerations

The Court also notes that none of the class members objected to the requested attorneys' fees, which weighs in favor of the requested award. *See Anderson v. Merit Energy Co.*, 2009 WL 3378526, at *4 (D. Colo. Oct. 20, 2009) ("The absence of any Class members' objection is an additional factor that supports this Court's approval of the requested attorneys' fees.").

Case 1:17-cv-00304-WJM-NRN   Document 122   Filed 07/15/21   USDC Colorado   Page 9 of 10
Case 3:21-cv-00444-DJN   Document 126-9   Filed 04/19/24   Page 428 of 586 PageID#
5616

The Court finds that in combination the applicable *Johnson* factors compel its conclusion that 30% of the $135 million common fund, or $40,500,000, reflects a reasonable attorney fee award in this case.  *See* 15 U.S.C. § 78u–4(a)(6).  As a consequence, the Court will grant in full Lead Plaintiffs' request for attorneys' fees.

### III. EXPENSES

The PSLRA also contemplates compensating class counsel for expenses incurred in prosecuting a class action.  15 U.S.C. § 78u–4(a)(6).  "[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . *reasonable* litigation expenses from that fund."  *In re Gen. Instrument Sec. Litig.*, 209 F.Supp.2d 423, 434 (E.D. Pa. 2001) (quotation marks omitted, emphasis in original).  Expenses "'that are normally itemized and billed in addition to the hourly rate should be included in fee allowances . . . if reasonable in amount.'"  *Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir. 1990) (quoting *Ramos*, 713 F.2d at 559).

Lead Counsel seek reimbursement of $547,409.27 in litigation expenses reasonably incurred in litigating the Action, which expenses are routinely awarded in similar actions, including expert fees, mediation expenses, discovery-related costs, and investigation expenses.  (ECF No. 108 at 20.)  *See In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 2014 WL 12768451, at *3 ($3.5 million of expenses found reasonable in securities class action).  The White Declaration contains a full breakdown of the litigation expenses.  (*See* ECF No. 107-1, White Decl. Exs. E, F at ¶ 8, and G at ¶ 9.)  Notably, the requested expenses are significantly less than the $750,000 amount set forth in the Notice, and no objections have been lodged thereto—further supporting the reasonableness of the expense reimbursement request.  (ECF No. 108 at 20 (citing

Case 1:17-cv-00304-WJM-NRN   Document 122   Filed 07/15/21   USDC Colorado   Page 10 of 10
Case 3:21-cv-00444-DJN      Document 126-9      Filed 04/19/24      Page 429 of 586 PageID#
5617

ECF No. 107-1 at ¶¶ 134–35).)

Upon due consideration, the Court is satisfied that the expenses are reasonable, given the issues presented and duration of this case, and are of the type normally billed to clients.  The Court will therefore award Lead Counsel $547,409.27 in litigation expenses reasonably incurred in the prosecution of this case.

## IV. CONCLUSION

1.      Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation (ECF No. 108) is GRANTED;

2.      The Court awards to Plaintiffs attorneys' fees in the amount of 30% of the Settlement Fund, or $40,500,000, and the reimbursement of $547,409.27 in litigation expenses; and

3.      Should there be an unreasonable delay in the payment of these sums to Lead Plaintiffs, they are granted leave to seek an order from this Court setting a deadline for such payment.

Dated this 15th day of July, 2021.

BY THE COURT:

_____

William J. Martinez
United States District Judge

# EXHIBIT 9CC

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| PLYMOUTH COUNTY RETIREMENT SYSTEM and OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> EVOLENT HEALTH, INC., FRANK WILLIAMS, NICHOLAS MCGRANE, and SETH BLACKLEY, <br><br> Defendants. | Case No. 1:19-cv-01031-MSN-WEF |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, PLAN OF ALLOCATION AND REQUEST FOR ATTORNEYS' FEES AND EXPENSES**

**TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ................................................................................. 1

II. THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ......................... 4

    A.  Legal Standard ................................................................................. 4

    B.  The Settlement is Fair and Reasonable and Should Be Approved ....................... 5

        1.  The Settlement was Reached After Extensive Litigation ........................ 5

        2.  The Settlement is the Result of Good Faith, Arm's-Length
            Negotiations with the Assistance of an Experienced Mediator ................ 6

        3.  The Action Was Litigated and Settled by Counsel with Significant
            Experience in Securities Class Action Litigation ................................ 7

    C.  The Settlement is Adequate and Should Be Approved ........................................ 8

        1.  The Strength of Plaintiffs' Case and the Difficulties of Proof and
            Defenses Plaintiffs Would Encounter at Trial Support Settlement ........... 8

        2.  The Costs and Delay of Continued Litigation Support Final
            Approval ................................................................................. 10

        3.  The Proposed Settlement Falls Well Within the Range of Approval ....... 11

        4.  The Positive Reaction of the Settlement Class to the Settlement ............. 12

    D.  Additional Factors Support Final Approval of the Settlement ............................ 13

III. THE PLAN OF ALLOCATION SHOULD BE APPROVED ....................................... 14

IV. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ............................... 15

V.  PLAINTIFFS' FEE AND EXPENSE REQUEST IS FAIR AND REASONABLE ........ 15

    A.  Lead Counsel's Fee Request is Reasonable under Fourth Circuit Criteria ........... 16

        1.  The Results Obtained for the Class Support the Fee Award ................... 18

        2.  The Positive Reaction of the Class Supports the Requested Award ......... 19

        3.  The Skill, Experience, and Reputation of the Attorneys Involved ........... 20

        4.  The Complexity and Duration of the Action and Litigation Efforts ......... 21

        5.  The Contingent Nature of the Fee and Risk of Nonpayment ................... 23

i

6.     The Amount of Time Devoted to the Case by Plaintiffs' Counsel ........... 24

7.     A One-Third Fee is Customary and in Accordance with Other Similar Cases in this District and the Fourth Circuit ............................... 25

B.     The Requested Fee is Reasonable Under a Lodestar Cross-Check ...................... 26

C.     Plaintiffs' Counsel's Litigation Expenses and Lead Plaintiffs' Reimbursement Awards Are Reasonable and Should Be Granted ...................... 28

VI.     CONCLUSION ................................................................................................................. 29

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ...................................................................................... 10

*Barber v. Kimbrell's, Inc.*,
  577 F.2d 216 (4th Cir. 1978) ........................................................................................ 17

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
  603 F.2d 263 (2d Cir. 1979)........................................................................................... 10

*Bloom v. Anderson*,
  2020 WL 6710429 (S.D. Ohio Nov. 16, 2020)............................................................... 7

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)...................................................................................................... 16

*Cheng Jiangchen v. Rentech, Inc.*,
  2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)............................................................... 13

*Chrismon v. Pizza*,
  2020 WL 3790866 (E.D.N.C. July 7, 2020) ............................................................ 4, 10

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y May 9, 2014) ................................................................. 27

*Clark v. Duke University*,
  2019 WL 2579201 (M.D.N.C. June 24, 2019) ....................................................... 26, 28

*Cosby v. KPMG, LLP*,
  2022 WL 4129703 (E.D. Tenn. July 12, 2022) ............................................................ 25

*D&M Farms v. Birdsong Corp.*,
  2021 WL 1256905 (E.D. Va. Apr. 5, 2021) ................................................................... 4

*Decohen v. Abbasi, LLC*,
  299 F.R.D. 469 (D. Md. 2014)...................................................................................... 25

*Deem v. Ames True Temper, Inc.*,
  2013 WL 2285972 (S.D.W. Va. May 23, 2013)..................................................... 6, 11, 12

*DeLoach v. Phillip Morris Co.*,
  2003 WL 23094907 (M.D.N.C. Dec. 19, 2003) ........................................................... 26

*Fosbre v. Las Vegas Sands Corp.*,
  2017 WL 55878 (D. Nev. Jan. 3, 2017)......................................................................... 8

*Grae v. Corrections Corp. of America,*
2021 WL 5234966 (M.D. Tenn. Nov. 8, 2021) ........................................................................ 25

*Guevoura Fund Ltd. v. Sillerman,*
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ............................................................... 3, 27, 28

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings Inc.,*
2022 WL 4136175 (S.D.N.Y. Feb 14, 2022) ......................................................................... 28

*Health Ins. Innovations Sec. Litig.,*
2021 WL 1341881 (M.D. Fla. Mar. 23, 2021) .................................................................. 3, 27

*Hensley v. Eckerhart,*
461 U.S. 424 (1983) ............................................................................................................... 18

*In re Abrams & Abrams, P.A.,*
605 F.3d 238 (4th Cir. 2010) .................................................................................... 17, 18, 26

*In re Banc of California Sec. Litig.,*
2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) ....................................................................... 25

*In re Celebrex (Celecoxib) Antitrust Litig.,*
2018 WL 2382091 (E.D. Va. Apr. 18, 2018) ................................................................. *passim*

*In re Cendant Corp. PRIDES Litig.,*
243 F.3d 722 (3d Cir. 2001) ................................................................................................... 17

*In re Constellation Energy Grp., Inc. Sec. Litig.,*
2013 WL 12461134 (D. Md. Nov. 4, 2013) ..................................................................... 19, 26

*In re Deutsche Bank AG Sec. Litig.,*
2020 WL 3162980 (S.D.N.Y. June 11, 2020) ........................................................................ 25

*In re Flowers Foods, Inc. Sec. Litig.,*
2019 WL 6771749 (M.D. Ga. Dec. 11, 2019) ........................................................................ 25

*In re Genworth Fin. Sec. Litig.,*
210 F. Supp. 3d 837 (E.D. Va. 2016) ........................................................................... *passim*

*In re HD Supply Holdings, Inc. Sec. Litig.,*
2020 WL 8572953 (N.D. Ga. July 21, 2020) ........................................................................... 7

*In re Hi-Crush Partners L.P. Sec. Litig.,*
2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ........................................................................ 18

*In re Jiffy Lube Sec. Litig.,*
927 F.2d 155 (4th Cir. 1991) .................................................................................................... 4

iv

*In re Patriot Nat'l Sec. Litig.*,
828 Fed. Appx. 760 (2d Cir. 2020) .................................................................................. 12

*In re Peanut Farmers Antitrust Litig.*,
2021 WL 3174247 (E.D. Va. July 27, 2021) ...................................................................... 5

*In re Peanut Farmers Antitrust Litig.*,
2021 WL 9494033 (E.D. Va. Aug. 10, 2021) .................................................................... 26

*In re Perrigo Co. PLC Sec. Litig.*,
2022 WL 500913 (S.D.N.Y. Feb. 18, 2022) ................................................................. 7, 25

*In re REMEC Inc. Sec. Litig.*,
702 F. Supp. 2d 1202 (S.D. Cal. 2010) .............................................................................. 9

*In re Retek Inc. Sec. Litig.*,
621 F. Supp. 2d 690 (D. Minn. 2009) ................................................................................ 8

*In re Signet Jewelers Ltd. Sec. Litig.,*
2020 WL 4196468 (S.D.N.Y. July 21, 2020) .................................................................. 20

*In re Star Scientific, Inc. Sec. Litig.*,
2015 WL 12866962 (E.D. Va. June 26, 2015) ................................................................ 13

*In re Star Scientific, Inc. Sec. Litig.*,
2015 WL 13821326 (E.D. Va. June 26, 2015) ................................................................ 26

*In re Titanium Dioxide Antitrust Litig.*,
2013 WL 6577029 (D. Md. Dec. 13, 2013) .................................................................... 26

*In re Wilmington Tr. Sec. Litig.,*
2018 WL 6046452 (D. Del. Nov. 19, 2018) ...................................................................... 7

*Johnson v. Georgia Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ........................................................................................... 17

*Kelly v. Johns Hopkins Univ.,*
2020 WL 434473 (D. Md. Jan. 28, 2020) ................................................................. 25, 26

*Khoja v. Orexigen Therapeutics, Inc.*,
2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) ................................................................... 6

*Knurr v. Orbital ATK, Inc.,*
2019 WL 3317976 (E.D. Va. June 7, 2019) ............................................................. *passim*

*Krakauer v. Dish Network*,
2019 WL 7066834 (M.D.N.C. Dec. 23, 2019) ............................................................... 26

*Kruger v. Novant Health, Inc.*,
2016 WL 6769066 (M.D.N.C. Sep. 29, 2016)..................................................................... 26, 28

*Lea v. Tal Education Group*,
2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021)........................................................................... 9

*Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*,
2021 WL 2981970 (D. Colo. July 15, 2021) ........................................................................... 7

*Phillips v. Triad Guaranty Inc.*,
2016 WL 1175152 (M.D.N.C. Mar. 23, 2016)................................................................. *passim*

*Phillips v. Triad Guaranty Inc.*,
2016 WL 2636289 (M.D.N.C. May 9, 2016) ................................................................... 17, 23

*Plymouth Cnty. Ret. Sys. v. Patterson Companies, Inc.*,
2022 WL 2093054 (D. Minn. June 10, 2022).................................................................... 7, 25

*Plymouth Cnty. Ret. Sys. v. Patterson Companies. Inc.*,
2022 WL 2111237 (D. Minn. June 10, 2022)........................................................................ 12

*Plymouth Cnty. Ret. Sys. v. Evolent Health, Inc.*,
2021 WL 1439680 (E.D. Va. Mar. 24, 2021)..................................................................... 8, 18

*Plymouth Cnty. Ret. Sys. v. GTT Communications, Inc.*,
2021 WL 1659848 (E.D. Va. Apr. 23, 2021) .................................................................. *passim*

*Poth v. Russey*,
281 F. Supp. 2d 814 (E.D. Va. 2003) ...................................................................................... 9

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ............................................................................................ 10

*Robinson v. Carolina First Bank NA*,
2019 WL 2591153 (D.S.C. June 21, 2019)...................................................................... *passim*

*Roman Zak v. Pedder (Chelsea Therapeutics)*,
2016 WL 5109167 (W.D.N.C. Sept. 19, 2016) ............................................................... 26, 29

*Scott v. Family Dollar Stores, Inc.*,
2018 WL 1321048 (W.D.N.C. Mar. 14, 2018)...................................................................... 26

*Seaman v. Duke Univ.*,
2019 WL 4674758 (M.D.N.C. Sep. 25, 2019)................................................................. *passim*

*Seaman v. Duke Univ.*,
2019 WL 13193731 (M.D.N.C. Sep. 24, 2019)...................................................................... 6

*Sims v. BB&T Corp.,*
   2019 WL 1995314 (M.D.N.C. May 6, 2019) ............................................................... 4

*Sims v. BB&T Corporation,*
   2019 WL 1993519 (M.D.N.C. May 6, 2019) ............................................................. 26

*Smith v. Res-Care, Inc.,*
   2015 WL 6479658 (S.D.W. Va. Oct. 27, 2015) ............................................... 5, 11, 13

*Sponn v. Emergent Biosolutions Inc.,*
   2019 WL 11731087 (D. Md. Jan. 25, 2019)............................................. 4, 17, 26, 28

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
   551 U.S. 308 (2007) ................................................................................................. 16

*Temp. Servs., Inc. v. Am. Int'l Grp., Inc.,*
   2012 WL 4061537 (D.S.C. Sep. 14, 2012)........................................................... 23, 25

*Thorpe v. Walter Investment Mgmt. Corp.,*
   2016 WL 10518902 (S.D. Fla. Oct. 17, 2016)....................................... 12, 19, 21, 25

**STATUTES**

15 U.S.C.
   §78u-4(a)(4) ............................................................................................................. 29
   §78u-4(a)(7) ............................................................................................................. 13

**RULES**

Fed. R. Civ. P. 23 ............................................................................................ 1, 4, 15

**OTHER AUTHORITIES**

H.R. Conf. Rep. No. 104-369 (1995)............................................................................ 20

Lead Plaintiffs respectfully move this Court pursuant to Rule 23 of the Federal Rules of Civil Procedure for final approval of: (i) the proposed Settlement; (ii) the proposed Plan of Allocation; and (iii) the request for attorneys' fees and reimbursement of Litigation Expenses, including representative reimbursements to Lead Plaintiffs as authorized by the PSLRA.[1]

## I.     PRELIMINARY STATEMENT

After three years of vigorous litigation prosecuted entirely on a contingent basis, Lead Counsel have obtained an excellent recovery of $23.5 million on behalf of the Settlement Class. As set forth below, the Settlement is an excellent result, one which will provide the Settlement Class with a recovery representing a substantial percentage of its likely maximum recoverable damages, and which was obtained in the face of myriad significant risks. Indeed, as the Court is undoubtedly aware, Defendants at all times vehemently disputed pivotal issues of falsity, scienter, loss causation, and damages, and were prepared to put forth at summary judgment and trial credible evidence in response to Plaintiffs' allegations on each of these elements. While Plaintiffs had strong counterarguments on these points, if the Court or jury lent credence to Defendants' arguments, the Class's recovery would have been dramatically reduced, if not eliminated altogether. Accordingly, the Settlement avoids those significant risks while assuring for the Settlement Class a large monetary recovery now.

Significantly, the Settlement was achieved only after an extremely substantial litigation effort by Lead Plaintiffs and Lead Counsel, who prosecuted this Action through the completion of fact and expert discovery. Indeed, as detailed below and in the Hooker Declaration, this effort

---

[1] Unless otherwise indicated, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement (the "Stipulation" or "Settlement Agreement," ECF No. 245) or in the Declaration of Lester R. Hooker in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement, Plan of Allocation and Request for Attorneys' Fees and Expenses (the "Hooker Declaration" or "Hooker Decl."), filed herewith. Citations to "¶" and "Ex." are to paragraphs in, and exhibits to, the Hooker Declaration. All internal citations and quotations are omitted; and all emphasis is added.

1

included: (i) conducting a thorough investigation of the claims, including contacting and/or interviewing dozens of former Evolent and Passport employees, five of whom served as confidential witnesses who provided significant information that was critical to Plaintiffs' allegations; (ii) filing four complaints, including the initial complaint that commenced the Action and three highly detailed amended complaints; (iii) fully briefing, arguing, and twice defeating Defendants' motions to dismiss; (iv) consulting with multiple experts; (v) fully briefing Plaintiffs' motion for class certification and arguing that motion before the Court; (vi) engaging in comprehensive discovery efforts, including reviewing hundreds of thousands of pages of documents produced by Defendants and subpoenaing several non-parties; (vii) taking or defending twenty-three fact and expert depositions; (viii) submitting and/or reviewing the eleven expert reports filed and/or exchanged by the Parties in the Action; (ix) submitting detailed mediation submissions setting forth Plaintiffs' positions on highly disputed issues in the case; and (x) engaging in two formal, full-day mediation sessions before a highly respected and experienced mediator, Mr. Jed D. Melnick, Esq., of JAMS.

In light of the outstanding recovery, and the significant efforts undertaken in achieving it, Lead Plaintiffs respectfully request a fee award of one-third of the Settlement Fund, which is well in line with fee awards in this District, the Fourth Circuit, and around the country in securities and complex class actions. *See e.g., Plymouth County Ret. Sys. v. GTT Communications, Inc.*, 2021 WL 1659848, at *5 (E.D. Va. Apr. 23, 2021) (Hilton, J.) (awarding a one-third fee on a $25 million securities class action recovery); *Seaman v. Duke Univ.*, 2019 WL 4674758, at *3 (M.D.N.C. Sep. 25, 2019) (awarding a one-third fee on a $54.5 million recovery, noting that awards of one-third are "common" in cases of similar complexity in the Fourth Circuit). Furthermore, courts have repeatedly recognized that the reasonableness of a fee

2

request is reinforced where, as here, "the percentage fee would represent a negative multiplier of the lodestar." *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *18 (S.D.N.Y. Dec. 18, 2019) ("When the lodestar cross-check shows that the percentage fee is lower than the fee the lawyers have accrued on a time-and-service basis, it is relatively easy to support a percentage-based fee."); *see also In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *12 (M.D. Fla. Mar. 23, 2021) ("Moreover, the negative lodestar multiplier [] further supports the reasonableness of the fee requested.").

In addition, Lead Plaintiffs are two sophisticated institutional investors who have actively supervised this Action from the outset, and both have endorsed the fee request as consistent with their own separately negotiated retainer agreements, and as warranted by Lead Counsel's efforts in the Action. Furthermore, the reaction of the Settlement Class also strongly supports final approval, as no objections to any aspect of the Settlement or the fee request have been filed to date—which is particularly significant given that the vast majority of the Settlement Class consists of institutional investors with the resources to object, if warranted. Thus, the overwhelming endorsement of the Settlement Class weighs heavily in support. *See e.g., In re Celebrex (Celecoxib) Antitrust Litig.*, 2018 WL 2382091, at *4 (E.D. Va. Apr. 18, 2018) (Wright Allen, J.) (awarding one-third of $94 million settlement as there "were no objections to the Settlement," no opt-out requests, and the "largest class members" supported the settlement).

Finally, Lead Plaintiffs request reimbursement of $918,539.45 in litigation expenses—a reasonable amount that is well in-line with what is typically expended in similar cases. *See, e.g., Knurr v. Orbital ATK, Inc.,* 2019 WL 3317976, at *1 (E.D. Va. June 7, 2019) (Ellis, III, J.) (awarding over $1.1 million in expenses). Similarly, Lead Plaintiffs' representative reimbursements are fair and reasonable, as such reimbursements are expressly contemplated by

3

the PSLRA and routinely awarded in securities class actions. *See Sponn v. Emergent Biosolutions Inc.,* 2019 WL 11731087, at *2 (D. Md. Jan. 25, 2019).

## II.      THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

### A.      Legal Standard

Courts in the Fourth Circuit have long recognized a "a strong judicial policy in favor of settlement, in order [to] conserve scarce resources that would otherwise be devoted to protracted litigation." *Chrismon v. Pizza*, 2020 WL 3790866, at *4 (E.D.N.C. July 7, 2020). Importantly, "[t]his is particularly true in class actions." *Sims v. BB&T Corp.*, 2019 WL 1995314, at *3 (M.D.N.C. May 6, 2019).

Pursuant to Rule 23(e)(2), a class action settlement should be approved if the Court finds it "fair, reasonable, and adequate." Traditionally, the Fourth Circuit has instructed courts to analyze the "fairness" and "adequacy" factors set forth in *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th Cir. 1991) ("*Jiffy Lube*") when making this determination.[2] The *Jiffy Lube* fairness factors are: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery conducted; (3) the circumstances surrounding settlement negotiations; and (4) the experience of counsel in the area of law." *In re: Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 839-40 (E.D. Va. 2016) (Gibney, Jr., J.). The *Jiffy Lube* adequacy factors are: "(1) the relative

---

[2] In 2018, Rule 23(e) was amended to add new factors for courts to consider, but the "goal of this amendment is not to displace any [circuit's unique] factor[s]." Fed. R. Civ. P. 23(e)(2) Advisory Committee Notes to 2018 Amendment. Indeed, "because [the Fourth Circuit's] factors for assessing class-action settlements almost completely overlap with the new Rule 23(e)(2) factors, the outcome[s] [are] the same under both our factors and the Rule's factors." *D&M Farms v. Birdsong Corp.*, 2021 WL 1256905, at *3 (E.D. Va. Apr. 5, 2021) (Jackson, J.). The amendment requires consideration of whether: (A) plaintiffs and counsel have adequately represented the class; (B) the settlement was negotiated at arm's-length; (C) the relief for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed fee award, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2).

strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendant[] and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id.* at 841. The Settlement easily satisfies each of these factors.

### B.      The Settlement is Fair and Reasonable and Should Be Approved

#### 1.      The Settlement was Reached After Extensive Litigation

The first and second *Jiffy Lube* fairness factors require demonstrating that a case has progressed far enough to ensure that "the parties did not settle prematurely," and that they were fully informed as to "the strengths and weaknesses of their own and their adversaries' claims and defenses." *Smith v. Res-Care, Inc.*, 2015 WL 6479658, at **5-6 (S.D.W. Va. Oct. 27, 2015).

Here, these factors are easily satisfied. Specifically, at the time the Parties agreed to the Settlement, Plaintiffs had completed extensive litigation efforts over three years, including conducting an exhaustive investigation that uncovered information critical to successfully pleading their claims; drafting three amended complaints; fully briefing two motions to dismiss and a motion for class certification; producing, examining, and/or reviewing over 71,000 documents spanning more than 786,000 pages; participating in 23 fact and expert depositions; serving five expert reports and reviewing six prepared on behalf of Defendants; and preparing for anticipated motions for summary judgment and motions to exclude expert testimony. ¶¶18-69.

Thus, the litigation had progressed materially from its inception, allowing the Parties to fully vet the merits of their claims and defenses through contentious motion practice and comprehensive fact and expert discovery, lending significant weight to Plaintiffs' determination that the Settlement is fair and adequate. *See e.g., In re Peanut Farmers Antitrust Litig.*, 2021

5

WL 3174247, at *3 (E.D. Va. July 27, 2021) (Jackson, J.) (approving settlement where parties "had completed fact and expert discovery and, thus, were acutely aware of strengths and weaknesses of their respective cases at the time of settlement negotiations"); *Deem v. Ames True Temper, Inc.*, 2013 WL 2285972, at *2 (S.D.W. Va. May 23, 2013) ("adequate discovery and investigation had occurred to enable the parties to reach a fair settlement" where "[a]t the time the parties reached this settlement, they were on the eve of trial and had completed discovery").

**2.      The Settlement is the Result of Good Faith, Arm's-Length Negotiations with the Assistance of an Experienced Mediator**

"Absent evidence to the contrary, the Court should presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." *Deem*, 2013 WL 2285972, at *2. Here, the Settlement negotiations involved an intensive mediation process, including multiple detailed written submissions and presentations addressing contested issues concerning class certification, liability, and damages. ¶¶71-74. Significantly, these negotiations were overseen by Jed D. Melnick, Esq., of JAMS, an "experienced, neutral mediator" who has mediated over one thousand disputes with an aggregate value in the billions of dollars. *See Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673, at *4 (S.D. Cal. Nov. 30, 2021); *see also* Mr. Melnick's biography, available at https://www.jamsadr.com/melnick/.[3]

Moreover, despite being unable to resolve the litigation at the December 1, 2021 mediation session, the Parties remained in dialog with Mr. Melnick, which helped pave the way for them to ultimately resolve this Action following the July 11, 2022 mediation session. *See Seaman v. Duke Univ.,* 2019 WL 13193731, at *2 (M.D.N.C. Sep. 24, 2019) (continued

---

[3] In support of the Settlement, Mr. Melnick has provided a declaration attesting that "the Settlement is the product of true arm's-length negotiation by counsel on both sides seeking to represent their respective clients' best interests"; "the Settlement is the direct result of all counsel's experience, reputation, and ability in these types of complex class actions"; and that "it is my opinion that the Settlement is fair and reasonable, and I respectfully support the Court's approval of the Settlement in all respects." *See* Ex. C at ¶¶9,10, 12.

6

settlement "discussions that required more than a year to complete" favored final approval).

### 3. The Action Was Litigated and Settled by Counsel with Significant Experience in Securities Class Action Litigation

The fourth *Jiffy Lube* fairness factor weighs the experience of counsel in the particular field of law. *Genworth*, 210 F. Supp. 3d at 841. Indeed, "concerns of collusion" are minimized where both sides' counsel are "nationally recognized members of the securities litigation bar." *Phillips v. Triad Guaranty Inc.*, 2016 WL 1175152, at *3 (M.D.N.C. Mar. 23, 2016).

Here, Lead Counsel is highly experienced and well-respected in the field of securities class action litigation and has an extensive track record of successfully prosecuting actions on behalf of shareholder classes nationwide.[4] In addition to its major litigation successes, Saxena White has also been recognized for being a "federally-certified, minority- and women-owned firm" representing institutional investors in the securities class action litigation industry. *Bloom v. Anderson*, 2020 WL 6710429, at *9 (S.D. Ohio Nov. 16, 2020) (finding Saxena White, with attorneys consisting of "women and lawyers of color at above-average ratios," as "best suited" to represent "a large and heterogeneous group of investors").

Additionally, Plaintiffs were able to achieve this outstanding Settlement despite the highly skilled defense mounted by preeminent international law firm, King & Spalding LLP. *See*

---

[4] *See* Ex. 3 to Ex. F (Saxena White firm resume); *see also, e.g., In re Wilmington Tr. Sec. Litig.*, 2018 WL 6046452, at *8 (D. Del. Nov. 19, 2018) (approving $210 million settlement, noting Saxena White is "highly experienced" and that "[t]he significant amount of recovery in the settlement agreements attests to their efficiency"); *Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.,* 2021 WL 2981970, at **2-4 (D. Colo. July 15, 2021) ($135 million recovery where court recognized the "efforts expended by [Saxena White]"); *Plymouth Cnty. Ret. Sys. v. Patterson Companies, Inc.*, 2022 WL 2093054, at *2 (D. Minn. June 10, 2022) (approving $63 million settlement and noting that Saxena White "conducted the Litigation and achieved the Settlement with skill, perseverance, and diligent advocacy"); *In re HD Supply Holdings, Inc. Sec. Litig.*, 2020 WL 8572953, at *2 (N.D. Ga. July 21, 2020) (same, $50 million recovery); *In re Perrigo Co. PLC Sec. Litig.*, 2022 WL 500913, at **1-2 (S.D.N.Y. Feb. 18, 2022) (same, $31.9 million recovery); *GTT*, 2021 WL 1659848, at *5 (same, $25 million recovery).

*Genworth*, 210 F. Supp. 3d at 841 ("defendants' law firms are also national firms with deep experience in securities litigation, further demonstrating the fairness of the Settlement").

### C. The Settlement is Adequate and Should Be Approved

#### 1. The Strength of Plaintiffs' Case and the Difficulties of Proof and Defenses Plaintiffs Would Encounter at Trial Support Settlement

The first and second *Jiffy Lube* adequacy factors "require the Court to examine how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult case." *Robinson v. Carolina First Bank NA*, 2019 WL 2591153, at *10 (D.S.C. June 21, 2019). Courts around the country recognize securities class actions as "notably difficult and notoriously uncertain." *Phillips*, 2016 WL 1175152, at *4. The complexities and risks of this Action were especially pronounced.

As detailed in the Hooker Declaration, while Plaintiffs strongly believe that their claims have merit, Defendants lodged numerous credible defenses, each of which presented serious risks and easily could have resulted in either a substantially lesser recovery or no recovery.[5] Critically, Plaintiffs would be required to prove all elements of their claims, while Defendants would need to only succeed on one defense to potentially defeat the entire Action.[6]

For example, at class certification, even if the Court certified a class, the Court could well have shortened the Class Period by finding that Defendants had demonstrated a lack of price impact from Defendants' "savings" statements. *See* ECF No. 213 at 15-29. Furthermore, at

---

[5] Indeed, Defendants had already been successful in several of their arguments. For example, in granting in part and denying in part the motion to dismiss the SAC, the Court held that sixteen statements alleged to be false or misleading in the SAC were not adequately pled and thus were not actionable. *Plymouth County Ret. Sys. v. Evolent Health, Inc.*, 2021 WL 1439680, at *32 (E.D. Va. Mar. 24, 2021) (Alston, Jr., J.).

[6] *See e.g., In re Retek Inc. Sec. Litig.*, 621 F. Supp. 2d 690, 708-09 (D. Minn. 2009) (granting summary judgment in a securities action where plaintiffs failed to present evidence of loss causation); *Fosbre v. Las Vegas Sands Corp.*, 2017 WL 55878, at *28 (D. Nev. Jan. 3, 2017) (granting summary judgment in a securities action due to, *inter alia*, lack of falsity and scienter).

summary judgment or at trial, Defendants would have argued that Plaintiffs lacked sufficient evidence to establish that Defendants' statements about savings for Passport were false or misleading, because the statements were based on reasonable calculations and assumptions by the Company's actuaries. Defendants also would have argued that their statements that they had no intention to buy Passport or its assets were true as of February 26, 2019, because Evolent did not engage in formal discussions about acquisition until May 2019.

With respect to scienter, Defendants would have argued that, even if their savings statements were proven false, the Individual Defendants lacked the requisite scienter because, by relying on their actuaries, they had a reasonable basis upon which to make the statements.[7] Moreover, Defendants would have argued that a finding of scienter was undermined because there was no insider selling by the Individual Defendants—a fact which could have resonated with a jury. *See e.g., Genworth*, 210 F. Supp. 3d at 844 (due to "the complexity of securities fraud cases and the need to prove scienter … the risk of non-recovery at trial is very real."); *Lea v. Tal Education Group,* 2021 WL 5578665, at *9 (S.D.N.Y. Nov. 30, 2021) ("The element of scienter is often the most difficult and controversial aspect of a securities fraud claim").

Furthermore, with respect to loss causation, Defendants had extensively argued that the two alleged corrective disclosures did not reveal any truth about the alleged savings misstatements, because neither disclosure expressly discussed whether Evolent had saved Passport money or had financially harmed Passport, and because even after these alleged

---

[7] *See e.g., In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1238 (S.D. Cal. 2010) (granting defendants' motion for summary judgment and finding no scienter because defendants' "marshaled substantial, if not overwhelming evidence that [they] acted in good faith" in relying on analysis provided by accountants); *Poth v. Russey*, 281 F. Supp. 2d 814, 823 (E.D. Va. 2003) (Lee, J.) (granting summary judgment on securities claims for defendants who had had relied on bankers' estimates of what an IPO would raise and so plaintiffs had "fail[ed] to raise any genuine issue of material fact that [defendants] lacked a good faith basis.").

disclosures, multiple analysts opined that they did not believe that Evolent was responsible for Passport's financial decline. And finally, even if Plaintiffs could have established that Evolent had contributed to Passport's financial decline, Defendants would have presented evidence that Kentucky's Medicaid rate cuts and other non-Evolent-related factors were also contributing causes, and that damages should be reduced accordingly. *See, e.g.*, *Phillips*, 2016 WL 1175152, at *3 (approving settlement where "loss causation and damage assessments of [plaintiff's] and [d]efendants' experts were sure to vary substantially, and in the end, this crucial element at trial would be reduced to a 'battle of experts'").

Although Plaintiffs believe they had amassed sufficient evidence to counter these arguments and prove their claims, Plaintiffs at summary judgment and "at trial would bear the burden of conveying complex information to a jury using financial records, complicated accounting principles, and expert testimony" and accordingly the "high risk faced by taking the case to a jury verdict demonstrates the adequacy of this [] settlement." *Genworth*, 210 F. Supp. 3d at 841-42; *see also Chrismon*, 2020 WL 3790866, at *5 ("[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome").[8]

### 2. The Costs and Delay of Continued Litigation Support Final Approval

"[I]n a case such as this, a fully contested class action lawsuit would be expected to take significant time to resolve at the District Court level and additional time would result from any appeals." *Robinson*, 2019 WL 2591153, at *10. Here, the remaining cost and duration of pursuing this Action would be substantial and warrant approval of the Settlement.

---

[8] There would also be a risk that a favorable verdict could be disturbed or overturned even years later. *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).

The Settlement brings to a close litigation that could have lasted several more years and incurred significant additional costs—including the expenses of vendors and experts, Defendants' Counsel's fees, the value of Lead Counsel's billed time, and substantial judicial resources—which could very easily have totaled in the millions of dollars.[9]  *See Smith*, 2015 WL 6479658, at *6 (finding Plaintiffs understandably abided by the aphorism that "a bird in [the] hand is worth two in the bush" by settling and foregoing costly, and uncertain relief in exchange for a substantial, guaranteed, and immediate result).

### 3. The Proposed Settlement Falls Well Within the Range of Approval

The proposed $23.5 million Settlement is a superb recovery for the Settlement Class and falls well within the range of what is fair, reasonable, and adequate.  Indeed, the Settlement Amount represents at least 12% of the Settlement Class's maximum recoverable damages, which Plaintiffs' expert calculated at $195 million if Plaintiffs were to fully prevail at summary judgment and trial on all of their loss causation and damages arguments.  Significantly, however, that damages estimate assumes that 100% of the stock price declines that occurred following the two alleged corrective disclosures were attributable to Defendants' alleged misrepresentations—a fact that Defendants vehemently disputed.  Indeed, Plaintiffs' damages expert calculated that, assuming Defendants prevailed even on some of their loss causation and damages arguments, damages could be reduced to as little as $35 million, if any at all.  Accordingly, the Settlement represents a recovery of up to 67% of realistic damages—as much as nine times the median securities class action recovery as a percentage of damages, which between 2012 and 2020 was

---

[9] Although, to Plaintiffs' knowledge, Evolent faces no immediate insolvency risk, the uncertainty of any company's financial position, particularly in current economic conditions, also poses a risk that favors settlement.  *Deem*, 2013 WL 2285972, at *3 ("Although the court is unaware of any threat to Defendant's solvency, recovery of a litigated judgment cannot be taken for granted in these uncertain economic times. The proposed settlement avoids all risk of eventual insolvency and provides immediate cash to Class Members").

11

just 4% to 7.3% of damages for similarly-sized cases.[10]  Courts readily approve class action settlements representing much lower percentages of recoverable damages.[11]

### 4.  The Positive Reaction of the Settlement Class to the Settlement

"The lack of objections and opt-out requests are important factors contributing to a conclusion that the settlement is fair and reasonable."  *Deem*, 2013 WL 2285972, at \*2.  Here, 40,706 Notice Packets were mailed to potential Settlement Class Members and nominees.  Ex. D at ¶10.  Additionally, the Summary Notice was published in *Investor's Business Daily* and transmitted over the *PR Newswire*.  *Id.,* at ¶11.  While the October 28, 2022 deadline for opting out of or objecting to the Settlement has not yet passed, as of October 13, 2022, Lead Counsel have received no opt-out requests or objections to any aspect of the Settlement, the Plan of Allocation, or the request for attorneys' fees and reimbursement of Litigation Expenses.

Furthermore, and, importantly, "the Lead Plaintiffs in the case are sophisticated institutional investors managing [m]illions of dollars in pensioners' investments and experienced in the world of securities laws."[12]  *Genworth*, 210 F. Supp. 3d at 842. Indeed, "the active participation by the Lead Plaintiffs in the negotiation process further weighs in favor of

---

[10] *See* Cornerstone Research, Securities Class Action Settlements 2021 Review and Analysis, at 6, Fig. 5 (Mar. 24, 2022), https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf.  Median recovery as a percentage of Cornerstone's "simplified tiered damages for 2012-2020 was 7.3% for cases ranging from $25-74 million in damages, 4.9% for cases ranging from $75-149 million in damages, and 4.0% for cases ranging from $150-249 million in damages.

[11] *See, e.g., In re Patriot Nat'l Sec. Litig.*, 828 Fed. Appx. 760, 762 (2d Cir. 2020) (affirming settlement representing 6.1% of the maximum potentially recoverable damages); *Thorpe v. Walter Investment Mgmt. Corp.*, 2016 WL 10518902, at \*10 (S.D. Fla. Oct. 17, 2016) (approving $24 million settlement representing 5.5% of the maximum damages and 10% of the "most likely damages scenario").

[12] Lead Plaintiffs have significant experience in obtaining large settlements on behalf of classes of investors. *See*, *e.g.*, *Plymouth County Ret. Sys. v. Patterson Cos. Inc.*, 2022 WL 2111237, at \*2 (D. Minn. June 10, 2022) (approving $63 million PSLRA recovery where Plymouth County "adequately represented the Class"); *Avila v. LifeLock Inc.*, No. 2:15-cv-01398-SRB, ECF No. 150, at 4-5 (D. Ariz. July 22, 2020) (approving $20 million PSLRA recovery where Oklahoma Police "adequately represented the [s]ettlement [c]lass").

approving the Settlement." *Id.*

### D.    Additional Factors Support Final Approval of the Settlement

With respect to the manner in which the Settlement will be distributed, the proposed Plan of Allocation easily satisfies Rule 23(e)(2)(D) because it treats all Settlement Class Members equally. As set forth in Section III below, the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.

Further, the Settlement readily meets the requirements of Rule 23(e)(2)(C).[13] The Notice complied in all respects with the requirements set forth in the Stipulation and the Preliminary Approval Order. ¶¶84-87. Indeed, the Court-approved Notice contained all the information required by Rule 23(c)(2)(B), the PSLRA, 15 U.S.C. §78u-4(a)(7), and due process because it sufficiently apprised the Settlement Class of "the nature of the action, the definition of the Class, the Class's claims [], the Settlement's terms, how Class Members could receive a payment, how to opt out of the Settlement, how to object to the Settlement, the details of the fairness hearing, the binding effect of the judgment," and other information. *See Robinson*, 2019 WL 2591153, at *3; *see also In re Star Scientific, Inc. Sec. Litig.*, 2015 WL 12866962, at *3 (E.D. Va. June 26, 2015) (Gibney, Jr., J.) (approving similar notice program in securities class action). The Notice also provided information on how to submit a Claim Form and informed potential Settlement Class Members of the avenues available to them to obtain additional information necessary to make an informed decision, including by contacting the Court-appointed Claims Administrator or Lead Counsel. *See Smith*, 2015 WL 6479658, at *4 (approving notice providing a toll-free

---

[13] With respect to Rule 23(e)(2)(C)(iv), the Parties entered into a Supplemental Agreement under which Defendants may terminate the Settlement if requests for exclusion from the Settlement Class reach a certain threshold—generally called a "blow provision"—that is standard in securities class actions. *See Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *7 (C.D. Cal. Oct. 10, 2019) ("This type of agreement is common in securities fraud actions and does not weigh against [settlement] approval.").

number for inquiries, counsel's contact information, and instructions on how to file a claim).

Further, the Claims Administrator has mailed 40,706 copies of the Notice Packet, published the Summary Notice, and has maintained the website dedicated to the Action, which provides all information and documentation pertinent to the Settlement.  Ex. D at ¶¶11-12; *see also Phillips*, 2016 WL 1175152, at **1, 5 (publication of summary notice in *Investor's Business Daily* and via *PR Newswire*, establishment of website, and mailing notice to thousands of potential class members constituted sufficient notice).[14]

### III.   THE PLAN OF ALLOCATION SHOULD BE APPROVED

The objective of a plan of allocation is to provide an equitable method for distributing a settlement fund among eligible class members.  A plan of allocation should be approved when it "accounts for when claimants purchased their securities and for how long they held the stock, considerations that have been approved by courts in this district." *Genworth,* 210 F. Supp. 3d at 843.  The Plan of Allocation, which is set forth in the Notice disseminated to the Settlement Class pursuant to the Preliminary Approval Order, also warrants the Court's approval.

Here, the Plan of Allocation was developed by Plaintiffs in consultation with their damages expert after careful consideration of Plaintiffs' theories of liability and alleged damages under the Exchange Act.  In developing the Plan, Plaintiffs' expert calculated the estimated amount of artificial inflation in the price of Evolent's common stock during the Settlement Class Period by considering how the stock price changed after the announcement of each alleged corrective disclosure, and adjusting for price changes that were attributable to market or industry forces.  *See* Notice at ¶50.  Under the Plan of Allocation, a Recognized Loss Amount will be

---

[14] With respect to Rule 23(e)(2)(C)(iii), the terms of the proposed award of attorneys' fees were fully disclosed in the Notice and are highly reasonable in light of the work performed and the results obtained, as set forth below in Section V.

calculated for each purchase or acquisition of publicly traded Evolent common stock by an eligible Settlement Class Member in order to derive the amount of each Authorized Claimant's Recognized Claim, and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their respective Recognized Claims. *See* Notice at ¶¶51-66. Courts routinely approve substantially similar methods of distributing recoveries in securities class actions such as this one, and Plaintiffs respectfully submit that this Court should approve the Plan of Allocation submitted here. *See, e.g., Phillips,* 2016 WL 1175152, at \*4.

## IV. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The Court's Preliminary Approval Order conditionally certified the Settlement Class under Rules 23(a) and (b)(3) for purposes of the Settlement. *See* Preliminary Approval Order (ECF No. 247) at 3-4, ¶¶1-3 ("the Court finds that each element required for certification of the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure has been met"). Nothing has occurred since then to cast doubt on the propriety of class certification for settlement purposes, and no objections to certification have been received. For all the reasons stated in the Preliminary Approval Order and Plaintiffs' unopposed motion for preliminary approval of the Settlement (ECF No. 244), Plaintiffs respectfully request that the Court grant final certification to the Settlement Class under Rules 23(a) and (b)(3).

## V. PLAINTIFFS' FEE AND EXPENSE REQUEST IS FAIR AND REASONABLE

In undertaking this difficult and costly litigation on a fully contingent basis, Lead Counsel faced many challenges to proving both liability and damages. The $23.5 million all-cash recovery was achieved through Lead Counsel's skill, experience, and effective advocacy, all in the face of substantial risk and a skilled defense mounted by Defendants, who were represented by one of the top defense firms in the country. There was a real risk here that the Settlement Class would achieve no recovery at all, especially given Defendants' vigorous and

15

credible arguments on the key issues of falsity, scienter, loss causation, and damages as described above. As such, there was no guarantee that Plaintiffs' claims would survive summary judgment, much less succeed at trial or on appeal.

Despite these significant risks, Plaintiffs' Counsel collectively worked more than 20,400 hours, representing a total lodestar of $11,036,633.75, and incurred unreimbursed expenses of $918,539.45, over the course of three years to achieve the Settlement, all on a contingent basis with no assurance of ever being paid. This "negative" lodestar multiplier of 0.71 confirms the reasonableness of the requested one-third fee award, as it is within the range of reasonableness and well below the 2-4x multipliers regularly awarded in the Fourth Circuit.

In light of the recovery obtained, the time and effort involved, the complexity and amount of work performed, the skill and expertise of counsel, and the risks, Lead Counsel respectfully submits that a one-third fee award and reimbursement of Litigation Expenses in the amount of $918,539.45 is fair and reasonable, and well within the range of attorneys' fees awarded in this Circuit and throughout the nation in similar securities class action and complex cases. To date, no Settlement Class Member has objected to the fee and expense request, and Lead Plaintiffs fully support the request as fair and reasonable. *See* Exs. A and B to Hooker Decl. at ¶¶13-16.

### A. Lead Counsel's Fee Request is Reasonable under Fourth Circuit Criteria

Courts have long recognized that attorneys who obtain a recovery for a class in the form of a common fund are entitled to an award of fees and expenses from that fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[15] "District courts in the Fourth Circuit 'overwhelmingly' prefer the percentage method in common-fund cases." *Seaman*, 2019 WL

---

[15] Securities class actions such as this one are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 313 (2007).

16

4674758, at *2. Indeed, the Fourth Circuit has held that fee awards based on the percentage method "align the interests of lawyer and client" because they "reward[] exceptional success, and penalize[] failure." *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 246 (4th Cir. 2010). Thus, the percentage method applies here. *See Sponn*, 2019 WL 11731087, at *1.

In determining a reasonable fee, courts in the Fourth Circuit apply the factors articulated by the Third Circuit in *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 733 (3d Cir. 2001):

> (1) the results obtained for the class; (2) the presence or absence of substantial objections by members of the class to the fees counsel requested; (3) the skill and efficiency of attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time plaintiffs' counsel devoted to the case; and (7) awards in similar cases.

*See Genworth*, 210 F. Supp. 3d at 843; *Robinson*, 2019 WL 2591153, at *14. Some district courts in this Circuit have also incorporated the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978):[16]

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the litigation; (5) the customary fee for like work; (6) the attorneys' expectations at the outset of the litigation; (7) the time limitations imposed by the client or the circumstances; (8) the amount in controversy and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorneys and client; and (12) fee awards in similar cases.

All of these considerations warrant an award of the requested fees and costs in this case.

---

[16] The *Barber* factors are used to assess the reasonableness of a lodestar fee, which is used as a "cross-check" in PSLRA cases in this District. Because the *Barber* factors overlap with the *Cendant* factors, Plaintiffs address all factors concurrently. *See Robinson*, 2019 WL 2591153, at *14; *Phillips v. Triad Guaranty Inc.*, 2016 WL 2636289, at *4 (M.D.N.C. May 9, 2016) (noting that the *Barber* factors "incorporate and recognize most of the In re Cendant factors"). Courts need not mechanically list or comment on each factor, only those that are applicable. *See id*. Here, Lead Counsel respectfully submits that two *Barber* factors—the time limitations imposed by the client or circumstances, and the nature and length of the professional relationship between attorney and client—are not relevant in this class action, and therefore are not addressed. *See id*.

17

### 1. The Results Obtained for the Class Support the Fee Award

Courts have consistently recognized that, in evaluating a fee award, "the most critical factor is the degree of success obtained." *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Abrams*, 605 F.3d at 247 (same). As noted above, the excellent result obtained here was accomplished despite the substantial difficulties of proving liability for securities fraud and establishing damages in this Action. It was only through the extensive efforts of Lead Counsel that the $23.5 million Settlement was achieved.

Indeed, from the outset, Lead Counsel faced significant unique risks in formulating their allegations here, as there were no pending regulatory actions, such as an investigation by the SEC or other agency, upon which Plaintiffs could "piggy back" to develop their allegations. *See, e.g., In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014). Lead Counsel's extensive efforts to obtain documents from Kentucky via open records requests led to their uncovering of critical, non-public documents supporting their claims, including, *inter alia*, a series of letters assessing significant penalties against Passport as a result of Evolent's claims processing failures. Moreover, Lead Counsel successfully amended their operative complaint to incorporate allegations based on information provided by a new confidential witness—a high ranking former Passport executive—that were critical to surviving Defendants' motion to dismiss. Indeed, the Court's finding of scienter expressly hinged on the penalty letters and the facts provided by this confidential witness.[17] Later, following an intensive review of Defendants' document productions, Lead Counsel filed a Third Amended Complaint incorporating new allegations from some of these documents, and successfully defeated another

---

[17] *See Plymouth County Ret. Sys. v. Evolent Health, Inc.*, 2021 WL 1439680, at *35 (E.D. Va. Mar. 24, 2021) (Alston, Jr., J.) (scienter allegations "augmented by Plaintiffs' contention that Defendants received 'the monthly deficiency letters'" and by CW 5's confirmation that "these letters 'absolutely were' sent to Evolent's executives").

motion to dismiss, thereby nearly doubling the length of the operative class period and significantly increasing the Settlement Class's maximum recoverable damages. Without these specific efforts, any recovery would have been far smaller. ¶¶35-41.

Importantly, the Settlement recovers up to 67% of the Class's likely recoverable damages at trial—***up to nine times*** the typical securities class action recovery, which from 2012 to 2020 was 4% to 7.3% for similarly-sized settlements and 4.1% for all securities class action settlements in the Fourth Circuit. *See* ¶5; *Thorpe,* 2016 WL 10518902, at *10 (awarding fees of one-third of $24 million, where result represented "an excellent 5.5% of maximum damages"). The Settlement will provide immediate compensation to the Class and avoids the substantial risks from continued litigation. *See In re Constellation Energy Grp., Inc. Sec. Litig.,* 2013 WL 12461134, at *1 (D. Md. Nov. 4, 2013) (awarding one-third fee "given the substantial risks of non-recovery, the time and effort involved, and the result obtained for the Class").

### 2. The Positive Reaction of the Class Supports the Requested Award

Courts in the Fourth Circuit and nationwide routinely find that a lack of objections supports a finding that the fee request is reasonable. *See e.g., Seaman,* 2019 WL 4674758, at *3 (awarding a one-third fee in a $54.5 million recovery, as "[t]he absence of any objections to the settlement indicates that 'counsel have achieved a superior result for the class and weighs in favor of their requested award'"); *Celebrex*, 2018 WL 2382091, at *5 (awarding one-third of $94 million settlement as there "were no objections to the Settlement, the requested fee award, or the requested reimbursement of expenses," there were no opt-out requests, and the "largest Class members" supported the settlement).

The fact that there have been no objections to date is significant given that the majority of Evolent's shares were held by institutional investors with the resources and motivation to object,

19

if warranted. ¶111.  Significantly, Lead Plaintiffs' endorsement heavily supports the requested fee, as they are precisely the type of sophisticated institutional investors that Congress had envisioned would "participate in the litigation and exercise control over" Lead Counsel.  H.R. Conf. Rep. No. 104-369, at *32 (1995), reprinted in 1995 U.S.C.C.A.N. 730-731.  Ex. A, ¶¶5-9, 13, 15; Ex. B, ¶¶5-9, 13, 15; *see also Orbital*, 2019 WL 3317976, at *2 ("the requested attorneys' fees and litigation expenses have been reviewed and approved by Lead Plaintiff and Named Plaintiff, sophisticated institutional investors who were involved with and oversaw the Action").[18]

### 3.    The Skill, Experience, and Reputation of the Attorneys Involved

"The skill required in complex cases such as this involving massive discovery efforts and complicated issues of fact and law also weighs in favor of supporting the substantial attorneys' fees award in this case."  *Genworth*, 210 F. Supp. 3d at 844.  As set forth in the declarations supporting this fee application, and as addressed above, Lead Counsel marshaled their considerable experience and skill in successfully prosecuting and resolving this Action.  *See* Ex. F, ¶¶93-96.  Indeed, Lead Counsel's reputation as attorneys who will zealously prosecute a meritorious case through summary judgment and beyond enabled them to negotiate the outstanding recovery for the benefit of the Settlement Class.

Additionally, the fact that King & Spalding LLP, one of the country's most experienced defense firms, served as Defendants' counsel in the Action provides further support for Lead Counsel's requested fee award.  *See GTT Communications*, 2021 WL 1659848, at *5 (one-third

---

[18] Moreover, the requested fee is based on retainer agreements that Lead Counsel entered into with Lead Plaintiffs, which "supports approval of the fee" and is viewed by courts as "presumptively reasonable in light of Congress's intent to empower lead plaintiffs under the PSLRA to select and supervise attorneys on behalf of the class."  *In re Signet Jewelers Ltd. Sec. Litig.,* 2020 WL 4196468, at *17 (S.D.N.Y. July 21, 2020); *see* Exs. A & B at ¶14.

20

fee awarded where there were "considerable challenges from formidable opposition"); *Thorpe*, 2016 WL 10518902, at \*9 (that "Defense counsel have reputations for vigorous advocacy in the defense of complex civil cases such as this" favored approval of one-third fee award).

### 4. The Complexity and Duration of the Action and Litigation Efforts

"[S]ecurities fraud cases require significant showings of fact in order to prevail before a jury, and elements such as scienter, reliance, and materiality of misrepresentation are notoriously difficult to establish." *Genworth*, 210 F. Supp. 3d at 844; *see also Thorpe*, 2016 WL 10518902 at \*3 ("[a] securities case, by its very nature, is a complex animal"). These observations were even more pronounced here, as the novelty and difficulty of the legal and factual questions at issue in this Action were exceedingly complex. As a result, the litigation was hard-fought for three long years—a period encompassing a global pandemic that created unique logistical challenges—despite this District's reputation for expeditious resolution of cases.

Indeed, Lead Counsel spent substantial hours researching and analyzing the details of, *inter alia*: Medicaid and value-based care; Evolent's partnership with Passport; Passport's financial statements and operating results; Evolent's claims processing systems; Evolent's metrics for determining cost savings provided to its clients; Evolent's actuarial processes; the relevant regulatory agencies in Kentucky; the processes by which Medicaid plans in Kentucky applied for new contracts with the commonwealth and reported claims data, and by which the commonwealth set the rates it paid to these plans; and the means by which pharmacy benefit managers could reduce costs for health plans. This knowledge was crucial in pleading Defendants' alleged fraud with the requisite particularity and in effectively undertaking fact and expert discovery, and required frequent consultation with several experts. ¶¶59, 107. Lead Counsel also contacted and interviewed numerous confidential witnesses, including former high-

ranking employees of Evolent and Passport, who provided information critical to supporting Plaintiffs' allegations. ¶¶8, 20, 23.

Further, Lead Counsel prepared four complaints, including the SAC incorporating new allegations related to information provided by a confidential witness, and the TAC incorporating allegations regarding various documents produced in discovery by Defendants and adding new allegedly false statements. *See* ¶¶8, 20, 23, 35. Merely investigating and drafting sufficient complaints to survive two separate motions to dismiss required considerable skill and effort here, where Lead Counsel developed the allegations in the Action without the benefit of a pending regulatory action against Evolent that provided a roadmap for Plaintiffs' claims. *See* ¶18, 20; *Seaman*, 2019 WL 4674758, at *4 ("this case did not follow a government investigation [] that might have given some confirmation of the scope of misconduct").

Additionally, the complex issues in this case became a serious and uncertain point of contention during discovery, particularly with respect to factual issues involving Evolent's actuarial assessment of the savings it provided Passport, as well as price impact and loss causation issues that required an intensive, expert-assisted analysis of the reasons why Passport's Medicaid rates were cut and why Passport's financial health declined. Lead Counsel reviewed over 71,000 documents in total, over 61,000 of which were produced by Defendants and their experts. ¶44. There were eleven expert reports filed and/or served by the Parties in this Action. ¶62. The Parties conducted a total of twenty-three depositions in this Action between April 21, 2022 and June 28, 2022, including thirteen fact depositions, six expert depositions, and four depositions of representatives of Lead Plaintiffs and their investment managers. ¶61.

Lead Counsel thus clearly "undertook significant efforts in this case through every stage of the litigation, including discovery concerning [the PSLRA] elements, consultation with

necessary experts, briefing issues before the Court, and preparing for trial." *Genworth*, 210 F. Supp. 3d at 844. Accordingly, Lead Counsel's ability to successfully navigate these and other complex legal and factual obstacles fully supports the requested fee award.

### 5. The Contingent Nature of the Fee and Risk of Nonpayment

From inception, Lead Counsel "undertook this action on a contingent fee basis, funding the costs and devoting significant time to prosecute this action without any assurance of being compensated for their efforts." *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.,* 2012 WL 4061537, at *9 (D.S.C. Sep. 14, 2012). Lead Counsel "undertook numerous and significant risks of nonpayment in connection with the prosecution of this action." *Celebrex,* 2018 WL 2382091, at *4.

Indeed, as courts in this Circuit recognize, "prosecuting a securities fraud action is not only complex, but is also fraught with risk." *Phillips,* 2016 WL 2636289, at *8.[19] Not only did Lead Counsel have to contend with the heavy burden of the PSLRA's heightened pleading standard and Defendants' defenses to liability and damages, but there were also substantial risks to securing a meaningful recovery for the Class at every stage of the litigation, including significant ones that remained at the time of Settlement, as explained in Section II.C.1 above. Lead Counsel took on a risky, complex, and protracted litigation requiring the expenditure of extensive resources against formidable opposition with no guarantee of success, which further supports the requested fee.

To date, Lead Counsel has received no compensation for its prosecution of this case, and since the extensive commitment of time and resources devoted here necessarily entailed the

---

[19] Indeed, by the end of 2021, 48% of securities class actions filed in 2019 (like this one) had been dismissed, twice the number of cases that had settled. Cornerstone Research, Securities Class Action Filings (2021 Year in Review) at 18, available at https://www.cornerstone.com/wp-content/uploads/2022/02/Securities-Class-Action-Filings-2021-Year-in-Review.pdf

preclusion of other projects, the primary focus of this factor is to acknowledge this incongruence by permitting a commensurate recovery to compensate for the risk of recovering nothing. Consequently, this weighs in favor of the requested award. *See Robinson*, 2019 WL 2591153, at *16 ("Contingency fee arrangements … are usually one-third or higher" because "payment [is] entirely depend[e]nt upon achieving a good result for Plaintiff[s] and the Class, and Counsel face[] significant risk of nonpayment").

### 6. The Amount of Time Devoted to the Case by Plaintiffs' Counsel

The time and labor expended by Lead Counsel in prosecuting this Action firmly supports the requested fee. Lead Counsel "fiercely litigated this case on behalf of their clients." *Genworth,* 210 F. Supp. 3d at 845. As stated above and in the Hooker Declaration, Lead Counsel's efforts involved drafting four complaints, briefing three rounds of motions to dismiss, analyzing hundreds of thousands of pages of discovery, advancing extensive discovery disputes, participating in 23 depositions, engaging experts, and briefing class certification. In total, prosecuting this Action necessitated Plaintiffs' Counsel to expend more than 20,400 hours, equivalent to more than $11 million in attorney and staff time, over the course of three years.[20]

Accordingly, Lead Counsel's extensive litigation efforts were reasonable and necessary to secure the Settlement, fully supporting the requested fee award. *See Orbital,* 2019 WL 3317976, at *2 (29,000 hours reasonable).

---

[20] Lead Counsel will continue to expend additional time and out-of-pocket expenses in connection with the settlement administration process, the Fairness Hearing, and, if the Settlement is approved, assisting with implementation of the Settlement. Lead Counsel will not seek compensation for this time.

### 7.     A One-Third Fee is Customary and in Accordance with Other Similar Cases in this District and the Fourth Circuit

Lead Counsel's one-third fee request is eminently reasonable when considering the customary awards in similar cases in this District and the Fourth Circuit. *See e.g. Celebrex,* 2018 WL 2382091, at *5 ("Fee awards of one-third of the settlement amount are commonly awarded in cases analogous to this one"); *Kelly v. Johns Hopkins Univ.,* 2020 WL 434473, at *3 (D. Md. Jan. 28, 2020) (a "great weight of authority more than demonstrates that a one-third fee is justified in this case"); *Temp. Serv., Inc.*, 2012 WL 4061537, at *8 (a "total fee of one-third of the class settlement for all work performed and to be performed in this case is well within the range of what is customarily awarded in settlement class actions"). A one-third award is particularly appropriate here because of the highly complex issues involved, the extraordinary investment of time and resources, the result achieved, the approval of Lead Plaintiffs and the Settlement Class, and the risks in the litigation. *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 481 (D. Md. 2014) (one-third fee was proper given "superior result" obtained in complex litigation).

As demonstrated in the chart below, courts in the Fourth Circuit have consistently awarded one-third or higher fees in similar securities and other large complex class actions:[21]

---

[21] The requested fee award is also reasonable compared to nationwide securities class action recoveries. *See*, *e.g.*, *Grae v. Corrections Corp. of America*, 2021 WL 5234966 at, *1 (M.D. Tenn. Nov. 8, 2021) (awarding one-third fee on $56 million recovery); *Plymouth County Retirement System v. Patterson Companies, Inc*., 2022 WL 2093054, at *1 (D. Minn. June 10, 2022) (one-third fee on $63 million recovery); *Cosby v. KPMG, LLP*, 2022 WL 4129703, at **1-2 (E.D. Tenn. July 12, 2022) (one-third fee on $35 million recovery) *In re Perrigo Company plc Securities Litigation,* 2022 WL 500913, at *1 (S.D.N.Y. Feb. 18, 2022) (one-third fee on $31.9 million recovery); *Thorpe*, 2016 WL 10518902 at *11 (one-third of $24 million recovery); *In re Flowers Foods, Inc. Sec. Litig.*, 2019 WL 6771749, at *1 (M.D. Ga. Dec. 11, 2019) (one-third of $21 million recovery); *In re Banc of California Sec. Litig.*, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (33% of $19.75 million recovery); *In re Deutsche Bank AG Sec. Litig.*, 2020 WL 3162980, at *1 (S.D.N.Y. June 11, 2020) (one-third fee of $18.5 million recovery).

| Comparable Cases Within the Fourth Circuit | Recovery Amount | Fee Award |
|---|---|---|
| *DeLoach v. Phillip Morris Co.*, 2003 WL 23094907, at *11 (M.D.N.C. Dec. 19, 2003) | $211,800,000 | 33.3% |
| *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) | $163,500,000 | 33.3% |
| *In re Peanut Farmers Antitrust Litig.*, 2021 WL 9494033, at *9 (E.D. Va. Aug. 10, 2021) (Jackson, J.) | $102,750,000 | 33.3% |
| *In re Celebrex (Celecoxib) Antitrust Litig.*, 2018 WL 2382091, at *5 (E.D. Va. Apr. 18, 2018) (Wright Allen, J.) | $94,000,000 | 33.3% |
| *Krakauer v. Dish Network*, 2019 WL 7066834, at *7 (M.D.N.C. Dec. 23, 2019) | $61,342,800 | 33.3% |
| *Seaman v. Duke University*, 2019 WL 4674758, at *5 (M.D.N.C. Sep. 25, 2019) | $54,500,000 | 33.3% |
| *Scott v. Family Dollar Stores, Inc.*, 2018 WL 1321048, at *5 (W.D.N.C. Mar. 14, 2018) | $45,000,000 | 33.3% |
| *Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *5 (M.D.N.C. Sep. 29, 2016) | $32,000,000 | 33.3% |
| *Plymouth County Retirement System v. GTT Communications, Inc.*, 2021 WL 1659848, at *5 (E.D. Va. Apr. 23, 2021) (Hilton, J.) | $25,000,000 | 33.3% |
| *Sims v. BB&T Corporation*, 2019 WL 1993519, at *4 (M.D.N.C. May 6, 2019) | $24,000,000 | 33.3% |
| *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 248-249 (4th Cir. 2010) – *order on remand* at *Pellegrin v. National Union Fire Ins. Co.*, No. 5:08-CV-349-BO, ECF No. 53 (E.D. N.C. July 16, 2010) | $18,000,000 | 33.3% |
| *Kelly v. Johns Hopkins University*, 2020 WL 434473, at *7 (D. Md. Jan. 28, 2020) | $14,000,000 | 33.3% |
| *Clark v. Duke University*, 2019 WL 2579201, at *5 (M.D.N.C. June 24, 2019) | $10,650,000 | 33.3% |
| *In re BearingPoint, Inc. Securities Litigation*, No. 1:05-CV-00454, ECF No. 200 at 8 (E.D. Va. Sept. 28, 2010) (O'Grady, J.) | $7,500,000 | 33.3% |
| *In re Star Scientific, Inc. Securities Litigation,* 2015 WL 13821326, at *1 (E.D. Va. June 26, 2015) (Gibney, Jr., J.) | $5,900,000 | 33.3% |
| *Roman Zak v. Pedder (Chelsea Therapeutics)*, 2016 WL 5109167, at *1 (W.D.N.C. Sept. 19, 2016) | $5,500,000 | 33.3% |
| *In re Constellation Energy Group, Inc. Securities Litigation*, 2013 WL 12461134, at *1 (D. Md. Nov. 4, 2013) | $4,000,000 | 33.3% |
| *Sponn v. Emergent Biosolutions, Inc.*, 2019 WL 11731087, at *2 (D. Md. Jan. 25, 2019) | $6,500,000 | 33% |

## B.  The Requested Fee is Reasonable Under a Lodestar Cross-Check

A lodestar "cross-check" also wholly supports the fee request.  Here, Plaintiffs' Counsel's total lodestar is $11,036,633.75, and the requested one-third fee equates to a negative

26

multiplier of 0.71. This means that a one-third fee would represent significantly less than the total value of the attorney and staff hours invested by Plaintiffs' Counsel in this Action. A "negative multiplier [is] a strong indication of the reasonableness of the [requested] fee." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *13 (S.D.N.Y May 9, 2014); *see also, Guevoura Fund*, 2019 WL 6889901, at *18 ("When the lodestar cross-check shows that the percentage fee is lower than the fee the lawyers have accrued on a time-and-service basis, it is relatively easy to support a percentage-based fee"); *Health Ins. Innovations*, 2021 WL 1341881, at *12 ("Moreover, the negative lodestar multiplier [] further supports the reasonableness of the fee requested"). Additionally, this multiplier is substantially below the typical range of multipliers routinely approved by courts in this District, the Fourth Circuit, and across the country. *See e.g., Seaman*, 2019 WL 4674758, at *6 ("lodestar multipliers on large and complicated class actions have ranged from at least 2.26 to 4.5"); *Celebrex*, 2018 WL 2382091, at *5 (1.94 multiplier "is a reasonable multiplier in this Circuit"); *GTT Communications*, 2021 WL 1659848, at *6 (approving one-third fee representing 1.54 lodestar multiplier).

Moreover, Lead Counsel's hourly rates—ranging from $365 to $985 for attorneys and partners, and $250 to $300 for paralegals—are less than or comparable to hourly rates approved by this District, the Fourth Circuit and nationwide.[22] *See, e.g., GTT Communications*, No. 1:19-cv-00982-CMH-MSN, 2021 WL 1659848, at *5-6; ECF No. 93-4, at 7-8 (approving Saxena White's 2021 rates of $365 to $895 for attorneys); *Seaman*, 2019 WL 4674758, at *5 (approving hourly rates of between $590 and $900 for partners, between $395 and $510 for attorneys, and between $280 and $390 for paralegals and other support staff, because "[t]hese rates are in line with hourly rates used for Class Counsel in other cases"); *Orbital*, No. 1:16-cv-01031-TSE-

---

[22] The accompanying declarations of counsel include descriptions of the legal background and experience of the firms that worked on this case, which support the hourly rates submitted.

MSN,2019 WL 3317976, at *2 and ECF. No. 453 at 9-10 (E.D. Va. Apr. 26, 2019) (approving rates of $780-$1,250 for partners, $360-$600 for attorneys, and $220-$375 for litigation support in a securities class action). Indeed, Plaintiffs' Counsel's blended hourly rate of $541 underscores the reasonableness of the fee request and is well in-line with blended hourly rates approved in past securities class action settlements in this Circuit and nationwide. *See e.g., Guevoura Fund*, 2019 WL 6889901, at *18 (approving one-third fee on blended rate of $769 per hour); *Sponn*, 2019 WL 11731087, at *1, 2 (awarding 33% in a securities settlement where counsel had a blended rate of approximately $646).

Further, courts in this Circuit have recognized that while a "reasonable rate is usually calculated by looking at the local market, [] a national market rate is appropriate for matters involving complex issues requiring specialized expertise[.]" *Clark v. Duke University*, 2019 WL 2579201, at *2 (M.D.N.C. June 24, 2019); *see also Kruger v. Novant Health, Inc*., 2016 WL 6769066, at *4 (M.D.N.C. Sep. 29, 2016) (finding in complex class action, "the relevant market rate for cases such as the present case [is] a nationwide market rate").

### C. Plaintiffs' Counsel's Litigation Expenses and Lead Plaintiffs' Reimbursement Awards Are Reasonable and Should Be Granted

Plaintiffs' Counsel seek reimbursement of $918,539.45 in litigation expenses reasonably incurred in litigating the Action, which expenses are routinely awarded in similar actions, including expert fees, mediation expenses, discovery-related costs, and investigation expenses. *See e.g., Orbital*, 2019 WL 3317976, at *1 (approving over $1.1 million in expenses in securities class action); *Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings Inc.*, 2022 WL 4136175, at *1 (S.D.N.Y. Feb 14, 2022) (reimbursing $1,290,333.96 in expenses for a $18 million settlement at the conclusion of discovery and after a decision on a contested motion for class certification). The Hooker Declaration contains a full breakdown of the litigation expenses.

28

*See* Exs. E, F, and G.  Notably, the requested expenses are less than the $1,000,000 amount set forth in the Notice, and no objections have been lodged thereto.  ¶110, 111.

Lastly, Lead Plaintiffs also seek Representative Reimbursements of $7,335.27 and $8,550.00 as an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class"—awards that are specifically envisioned in the PSLRA and routinely awarded by courts nationwide.  *See* 15 U.S.C. §78u-4(a)(4); *Roman Zak v. Pedder,* 2016 WL 5109167, at *1 (W.D.N.C. Sep. 19, 2016) (awarding $10,000 for plaintiff's participation in the case); Exs. A & B (detailing each Lead Plaintiff's approximate time spent in the Action).

## VI.   CONCLUSION

For the reasons discussed above and in the Hooker Declaration, Plaintiffs respectfully request that the Court grant final approval of: (i) the Settlement; (ii) the Plan of Allocation; and (iii) Lead Counsel's fee and expense award and Lead Plaintiffs' reimbursement awards.

Dated: October 14, 2022                     Respectfully submitted,


                                                                */s/ Steven J. Toll*
                                                                Steven J. Toll
                                                                Va. Bar No. 15300
                                                                stoll@cohenmilstein.com
                                                                Daniel S. Sommers (*pro hac vice*)
                                                                dsommers@cohenmilstein.com
                                                                **COHEN MILSTEIN SELLERS
                                                                & TOLL PLLC**
                                                                1100 New York Avenue, Suite 500
                                                                Washington, D.C. 20005
                                                                Tel: (202) 408-4600
                                                                Fax: (202) 408-4699

                                                                *Liaison Counsel for Lead Plaintiffs and the
                                                                Settlement Class*

                                                                **SAXENA WHITE P.A.**

29

Maya Saxena (*pro hac vice*)
Joseph E. White III (*pro hac vice*)
Lester R. Hooker (*pro hac vice*)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel: (561) 394-3399
Fax: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com

Steven B. Singer (*pro hac vice*)
Sara DiLeo (*pro hac vice*)
Joshua H. Saltzman (*pro hac vice*)
Alec T. Coquin (*pro hac vice*)
10 Bank Street, 8th Floor
White Plains, NY 10606
Tel: (914) 437-8551
Fax: (888) 631-3611
ssinger@saxenawhite.com
sdileo@saxenawhite.com
jsaltzman@saxenawhite.com
acoquin@saxenawhite.com

*Lead Counsel for Lead Plaintiffs and the Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 14, 2022, I caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all of the registered participants.

*/s/ Steven J. Toll*
Steven J. Toll

# EXHIBIT 9DD

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

PLYMOUTH COUNTY RETIREMENT SYSTEM
and OKLAHOMA POLICE PENSION AND
RETIREMENT SYSTEM, Individually and On
Behalf of All Others Similarly Situated,

                Plaintiffs,

       v.

EVOLENT HEALTH, INC., FRANK WILLIAMS,
NICHOLAS MCGRANE, and SETH BLACKLEY,

                Defendants.

Case No. 1:19-cv-01031-MSN-WEF

---

**FINAL JUDGMENT AND ORDER OF DISMISSAL**

---

WHEREAS, a class action is pending in this Court entitled *Plymouth County Retirement System and Oklahoma Police Pension and Retirement System v. Evolent Health, Inc., et al.*, Case No. 1:19-cv-01031-MSN-WEF (E.D. Va.) (the "Action");

WHEREAS, on August 8, 2019, Plymouth County Retirement Association filed the initial class action complaint in this Action, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder (ECF No. 1);

WHEREAS, by order dated November 12, 2019, this Court appointed Plymouth County Retirement Association and Oklahoma Police Pension and Retirement System as Lead Plaintiffs ("Lead Plaintiffs" or "Plaintiffs") pursuant to the requirements of the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and approved Lead Plaintiffs' selection of Saxena White P.A.

("Saxena White") as Lead Counsel and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Liaison Counsel (ECF No. 29);

WHEREAS, on January 10, 2020, Lead Plaintiffs filed their Amended Class Action Complaint (ECF No. 38);

WHEREAS, on June 5, 2020, the Court granted Lead Plaintiffs' motion for leave to file the Second Amended Complaint, which thereby was rendered effective as of that date (ECF No. 68);

WHEREAS, on November 17, 2021, Lead Plaintiffs moved for leave to file the Third Amended Class Action Complaint (the "Complaint" or "TAC," (ECF Nos. 147, 150)) asserting federal securities claims on behalf of all persons and entities who purchased or otherwise acquired publicly-traded common stock of Evolent Health, Inc. ("Evolent" or the "Company") from January 10, 2018 through May 28, 2019, inclusive, and were damaged thereby and, by order dated December 2, 2021, this Court granted such motion, rendering the TAC effective as of that date (ECF Nos. 156, 158);

WHEREAS, (a) Lead Plaintiffs, on behalf of themselves and the Settlement Class, and (b) Defendants Evolent, Frank Williams, Nicholas McGrane, and Seth Blackley (collectively, the "Defendants," and together with Lead Plaintiffs, the "Parties") have entered into a Stipulation and Agreement of Settlement (the "Stipulation," (ECF No. 245)) that provides for a complete dismissal with prejudice of the claims asserted in the TAC against Defendant Releasees (as defined in the Stipulation) on the terms and conditions set forth in the Stipulation, subject to the approval of this Court (the "Settlement");

WHEREAS, unless otherwise defined in this Judgment, the capitalized terms herein shall have the same meanings as they have in the Stipulation;

2

WHEREAS, by order dated August 9, 2022 (the "Preliminary Approval Order," (ECF No. 247)), this Court: (a) preliminarily approved the Settlement and certified the Settlement Class for purposes of this Settlement only; (b) ordered that notice of the proposed Settlement be provided to potential Settlement Class Members; (c) provided Settlement Class Members with the opportunity either to exclude themselves from the Settlement Class or to object to the proposed Settlement; and (d) scheduled a hearing regarding final approval of the Settlement;

WHEREAS, due and adequate notice has been given to the Settlement Class;

WHEREAS, on October 14, 2022. Class Representatives moved for final approval of the Settlement, as provided for in the Preliminary Approval Order;

WHEREAS, the Court conducted a hearing on November 18, 2022 (the "Settlement Hearing") to consider, among other things, (a) whether the terms and conditions of the Settlement are fair, reasonable, and adequate to the Settlement Class, and should therefore be approved; and (b) whether a judgment should be entered dismissing the Action with prejudice as against the Defendants, and the Releases specified and described in the Stipulation (and in the Notice) should be granted; and

WHEREAS, the Court having reviewed and considered the Stipulation, all papers filed, and proceedings held herein in connection with the Settlement, all oral and written comments received regarding the Settlement, and the record in the Action, and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

1. **Jurisdiction:** The Court has jurisdiction over the subject matter of the Action and all matters relating to the Settlement, as well as personal jurisdiction over all the Parties and each of the Settlement Class Members.

2. **Incorporation of Settlement Documents:** This Judgment incorporates and makes a part hereof: (a) the Stipulation; and (b) the Notice and the Summary Notice, both of which were

3

previously filed with the Court.

3. **Class Certification for Settlement Purposes:** The Court hereby affirms its determinations in the Preliminary Approval Order certifying, for the purposes of the Settlement only, the Action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Settlement Class consisting of all persons and entities who purchased or otherwise acquired publicly-traded Evolent common stock between January 10, 2018 through May 28, 2019, inclusive, and were damaged thereby. Excluded from the Settlement Class are Defendants, the Officers, and directors of Evolent at all relevant times, and Defendants' Related Persons.

4. **Adequacy of Representation:** Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, the Court hereby affirms its determinations in the Preliminary Approval Order certifying Lead Plaintiffs as Class Representatives for the Settlement Class, appointing Lead Counsel as Class Counsel, and appointing Liaison Counsel as Liaison Class Counsel for the Settlement Class. Lead Plaintiffs and Lead Counsel have fairly and adequately represented the Settlement Class both in terms of litigating the Action and for purposes of entering into and implementing the Settlement and have satisfied the requirements of Federal Rules of Civil Procedure 23(a)(4) and 23(g), respectively.

5. **Settlement Notice:** The Court finds that the dissemination of the Notice and the publication of the Summary Notice: (a) were implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of (i) the pendency of the Action; (ii) the effect of the proposed Settlement (including the Releases to be provided thereunder); (iii) Lead Plaintiffs' request for an award of attorneys' fees and reimbursement of Litigation Expenses; (iv) their right to object to any aspect of the

4

Settlement, the Plan of Allocation and/or Lead Plaintiffs' request for attorneys' fees and reimbursement of Litigation Expenses; (v) their right to exclude themselves from the Settlement Class; and (vi) their right to appear at the Settlement Hearing; (d) constituted due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the PSLRA, 15 U.S.C. § 78u-4, as amended, and all other applicable laws and rules. The Court further finds that the notice requirements set forth in the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, have been satisfied.

6. **<u>Final Settlement Approval and Dismissal of Claims:</u>** Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, this Court hereby fully and finally approves the Settlement set forth in the Stipulation in all respects (including, without limitation: the amount of the Settlement; the Releases provided for therein; and the dismissal with prejudice of the claims asserted in the Complaint against Defendants in the Action), and finds that the Settlement is, in all respects, fair, reasonable, and adequate to the Settlement Class. Specifically, the Court finds that (a) Lead Plaintiffs and Lead Counsel have adequately represented the Settlement Class; (b) the Settlement was negotiated by the Parties at arm's length; (c) the relief provided for the Settlement Class under the Settlement is adequate taking into account the costs, risks, and delay of trial and appeal, the proposed means of distributing the Settlement Fund to the Settlement Class, and the proposed attorneys' fee award; and (d) the Settlement treats members of the Settlement Class equitably relative to each other. The Parties are directed to implement, perform, and consummate the Settlement in accordance with the terms and provisions contained in the Stipulation.

7. The Action and all the claims asserted in the Complaint against the Defendants by

Lead Plaintiffs and the other Settlement Class Members are hereby dismissed with prejudice. The Parties shall bear their own costs and expenses, except as otherwise expressly provided for in the Stipulation.

8.  **<u>Binding Effect:</u>**  The terms of the Stipulation and of this Judgment shall be forever binding on Defendants, Lead Plaintiffs, and all other Settlement Class Members (regardless of whether or not any individual Settlement Class Member submits a Claim Form or seeks or obtains a distribution from the Net Settlement Fund), as well as their respective successors and assigns.

9.  **<u>Releases:</u>**  The Releases set forth in the Stipulation, together with the definitions contained in the Stipulation relating thereto, are expressly incorporated herein in all respects.  The Releases are effective as of the Effective Date.  Accordingly, this Court orders that:

(a)  Without further action by anyone, upon the Effective Date of the Settlement, Plaintiff Releasees, by operation of the Stipulation, of law, and of this Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, dismissed, and discharged each and every one of the Released Plaintiffs' Claims against the Defendants and the other Defendant Releasees, and shall forever be barred and enjoined from commencing, instituting, prosecuting or maintaining any or all of the Released Plaintiffs' Claims against any of the Defendant Releasees, whether or not such Settlement Class Member executes and delivers a Proof of Claim Form, seeks or obtains a distribution from the Settlement Fund, is entitled to receive a distribution under the Plan of Allocation approved by the Court, or has objected to any aspect of the Stipulation or the Settlement, the Plan of Allocation, or Lead Plaintiffs' request for an award of attorneys' fees or Litigation Expenses.

6

(b)      Without further action by anyone, upon the Effective Date of the Settlement, Defendant Releasees shall be deemed to have, and by operation of the Stipulation, of law, and of the Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Defendants' Claim against the Plaintiff Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiff Releasees.

(c)      Upon the Effective Date, Plaintiff Releasees are forever barred and enjoined from commencing, instituting, maintaining, or continuing to prosecute any action or proceeding in any court of law or equity, arbitration tribunal, administrative forum, or forum of any kind, asserting any Released Plaintiffs' Claim against any of the Defendant Releasees.

(d)      Upon the Effective Date, to the extent allowed by law, the Stipulation shall operate conclusively as an estoppel and full defense in the event, and to the extent, of any claim, demand, action, or proceeding brought by Lead Plaintiffs or a Settlement Class Member against any of the Defendant Releasees with respect to any Released Plaintiffs' Claim, or brought by a Defendant against any of the Plaintiff Releasees with respect to any Released Defendants' Claim.

10.      Notwithstanding paragraphs 9(a) through 9(d) above, nothing in this Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of the Stipulation or this Judgment.

11.      **Rule 11 Findings:**  The Court finds and concludes that the Parties and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and settlement of the Action.

12.    **<u>No Admissions:</u>**    Neither this Judgment, nor the Stipulation (whether or not consummated), including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), nor any facts or terms of the Stipulation, negotiations, discussions, proceedings, acts performed or documents executed pursuant to or in furtherance of this Judgment, the Stipulation, or the Settlement:

(a)    shall be (i) offered against any of the Defendant Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendant Releasees with respect to: (a) the truth of any allegations by Lead Plaintiffs or any Settlement Class Member; (b) the validity of any claim that was or could have been asserted in the Action or in any other litigation; (c) the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation; (d) any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendant Releasees; or (e) any damages suffered by Lead Plaintiffs or the Settlement Class; or (ii) in any way referred to for any other reason as against any of the Defendant Releasees, in any civil, criminal, or administrative action or proceeding (including any arbitration) other than such proceedings as may be necessary to effectuate the provisions of the Stipulation;

(b)    shall be (i) offered against any of the Plaintiff Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Plaintiff Releasees (a) that any of their claims are without merit, that any of the Defendant Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount; or (b) with respect to any liability, negligence, fault or wrongdoing of any kind; or (ii) in any way referred to for any other reason as against any of the Plaintiff Releasees, in any civil, criminal, or administrative action or proceeding (including any arbitration), other than such proceedings as may be necessary to effectuate the provisions of the

Stipulation; or

(c)     shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given under the Settlement represents the amount which could be or would have been recovered after trial; *provided, however*, that the Parties and the Releasees and their respective counsel may refer to this Judgment and the Stipulation to effectuate the protections from liability granted hereunder and thereunder or otherwise to enforce the terms of the Settlement.

13.     **Retention of Jurisdiction:**  Without affecting the finality of this Judgment in any way, this Court retains continuing and exclusive jurisdiction over:  (a) the Parties for purposes of the administration, interpretation, implementation, and enforcement of the Settlement; (b) the disposition of the Settlement Fund; (c) any request for an award of attorneys' fees and/or Litigation Expenses by Lead Plaintiffs in the Action that will be paid from the Settlement Fund; (d) any motion to approve the Plan of Allocation; (e) any motion to approve the Class Distribution Order; and (f) the Settlement Class Members for all matters relating to the Action.

14.     Separate orders shall be entered regarding approval of a plan of allocation and Lead Plaintiffs' request for an award of attorneys' fees and reimbursement of Litigation Expenses. Such orders shall in no way affect or delay the finality of this Judgment and shall not affect or delay the Effective Date of the Settlement.

15.     **Modification of the Agreement of Settlement:**  Without further approval from the Court, the Parties are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that are approved of in writing and signed by or on behalf of all the Parties acting by and through their respective counsel of record in the Action so long as they:  (a) are not materially inconsistent with this Judgment; and (b) do not materially limit the rights of Settlement Class Members in connection

with the Settlement. Without further order of the Court, Lead Plaintiffs and Defendants may agree to reasonable extensions of time to carry out any provisions of the Settlement.

16.    **Termination of Settlement:**  If the Settlement is terminated as provided in the Stipulation or the Effective Date of the Settlement otherwise fails to occur, this Judgment shall be vacated, rendered null and void, and be of no further force and effect, except as otherwise provided by the Stipulation, and this Judgment shall be without prejudice to the rights of Lead Plaintiffs, the other Settlement Class Members, and Defendants, and the Parties shall revert to their respective positions in the Action as of July 8, 2022, as provided in the Stipulation.

17.    **Entry of Final Judgment:**  There is no just reason to delay the entry of this Judgment as a final judgment in this Action.  Accordingly, the Clerk of the Court is expressly directed to immediately enter this final judgment in this Action.

It is SO ORDERED.


Dated: November 18, 2022
Alexandria, Virginia


_____/s/_____
Hon. Michael S. Nachmanoff
United States District Judge

# EXHIBIT 9EE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| PLYMOUTH COUNTY RETIREMENT SYSTEM and OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br>v.<br><br>EVOLENT HEALTH, INC., FRANK WILLIAMS, NICHOLAS MCGRANE, and SETH BLACKLEY,<br><br>Defendants. | Case No. 1:19-cv-01031-MSN-WEF |

## <u>ORDER AWARDING ATTORNEYS' FEES AND EXPENSES</u>

This matter came on November 18, 2022 ("Settlement Hearing") on Lead Plaintiffs' Motion for Final Approval of Class Action Settlement, Plan of Allocation, and Request for Attorneys' Fees and Expenses. The Court having considered all matters submitted to it at the Settlement Hearing and otherwise; and it appearing that notice of the Settlement Hearing substantially in the form approved by the Court was mailed to all Settlement Class Members who or which could be identified with reasonable effort, and that a summary notice of the hearing substantially in the form approved by the Court was published in *Investor's Business Daily* and was transmitted over the *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and litigation expenses requested,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement, dated August 2, 2022 (ECF No. 245) (the "Stipulation"), and all

capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2. The Court has jurisdiction to enter this Order and over the subject matter of the Action and all parties to the Action, including all Settlement Class Members.

3. Pursuant to and in compliance with the Court's August 9, 2022 Order Preliminarily Approving Settlement and Providing For Notice (ECF No. 247), Rule 23 of the Federal Rules of Civil Procedure, and all other applicable laws and rules, this Court hereby finds and concludes that due and adequate notice was directed to persons and entities who are Settlement Class Members, advising them of the motion requesting attorneys' fees and litigation expenses and of their right to object thereto, and a full and fair opportunity was accorded to persons and entities who are Settlement Class Members to be heard with respect to the attorneys' fees and expenses request. There have been no objections to the attorneys' fees and expenses request.

4. Plaintiffs' Counsel are hereby awarded attorneys' fees in the amount of 33.33% of the Settlement Fund and $918,539.45 in reimbursement of Litigation Expenses (which fees and expenses shall be paid from the Settlement Fund), which sums the Court finds to be fair and reasonable. Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which it, in good faith, believes reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.

5. In making this award of attorneys' fees and expenses to be paid from the Settlement Fund, the Court has considered and found that:

a) The Settlement has created a fund of $23,500,000 that has been placed into escrow pursuant to the terms of the Stipulation, and that numerous Settlement Class Members who submit acceptable Proofs of Claim will benefit from the Settlement that occurred through the efforts of Lead Counsel;

b) The fee sought has been reviewed and approved by Lead Plaintiffs, sophisticated institutional investors that oversaw the Action and have a substantial interest in ensuring that any attorneys' fees paid are duly earned and not excessive;

c) Lead Counsel have conducted the litigation and achieved the Settlement with skill, perseverance, and diligent advocacy, and with considerable challenges from formidable opposition;

d) The Action raised a number of complex factual and legal issues;

e) Had Lead Counsel not achieved the Settlement, there would remain a significant risk that Lead Plaintiffs and the other members of the Settlement Class may have recovered less or nothing from the Defendants;

f) Lead Counsel initiated and pursued the Action on a contingent basis, having received no compensation during the Action, and any fee amount has been contingent on the result achieved;

g) Public policy concerns favor the award of reasonable attorneys' fees and expenses in securities class action litigation;

h) Plaintiffs' Counsel devoted over 20,400 hours prosecuting the Action and the negative lodestar multiplier, resulting in a reduced fee amount, supports the reasonableness of the fee requested; and

i) The amounts of attorneys' fees awarded and expenses reimbursed from the Settlement Fund are fair and reasonable and consistent with awards in similar cases in this District, the Fourth Circuit and nationwide.

6. In accordance with 15 U.S.C. § 78u-4(a), the Court hereby awards the Plymouth County Retirement Association $7,335.27 and the Oklahoma Police Pension and Retirement System $8,550.00, as reimbursements of costs and expenses directly related to their

3

representation of the Settlement Class, which shall be paid from the Settlement Fund.

7.      Any appeal or any challenge affecting this Court's approval regarding attorneys' fees and expenses shall in no way disturb or affect the finality of the Judgment.

8.      Exclusive jurisdiction is hereby retained over the parties and Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation, or enforcement of the Stipulation and this Order.

9.      In the event the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

10.     There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

It is SO ORDERED.


Dated: November 18, 2022
Alexandria, Virginia


_____
                                    /s/
                            Hon. Michael S. Nachmanoff
                            United States District Judge

4

# EXHIBIT 9FF

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

|  |  |
|---|---|
| PLYMOUTH COUNTY RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br> v. <br><br> GTT COMMUNICATIONS, INC., RICHARD D. CALDER, JR., CHRIS MCKEE, MICHAEL SICOLI, and GINA NOMELLINI, <br><br> Defendants. | Case No. 1:19-cv-00982-CMH-MSN |

---

**DECLARATION OF LESTER R. HOOKER IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES, FILED ON BEHALF OF SAXENA WHITE P.A.**

---

I, Lester R. Hooker, declare under penalty of perjury as follows:

1.      I am a Director of the law firm of Saxena White P.A. ("Saxena White"), Court-appointed Lead Counsel in the above-captioned class action (the "Action").[1]   I submit this declaration in support of Lead Plaintiff's motion for an award of attorneys' fees in connection with services rendered in the Action, as well as for reimbursement of Litigation Expenses incurred by my firm in connection with the Action.  I have knowledge of the matters set forth

---

[1]   Unless otherwise defined in this Declaration, all capitalized terms have the same meanings ascribed to them in the Stipulation and Agreement of Settlement, dated December 14, 2020 (the "Stipulation") (ECF No. 84-1).

1

herein based on personal knowledge, my review of the firm's records, and consultation with other firm personnel.

2.     My firm, as Lead Counsel and counsel for Lead Plaintiff City of Atlanta Police Pension Fund and City of Atlanta Firefighters' Pension Fund ("Lead Plaintiff"), was involved in all aspects of the prosecution and resolution of the Action, as set forth in my Declaration in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement, Plan of Allocation and Request for Attorneys' Fees and Expenses.

3.     The information in this Declaration regarding the firm's time, including the schedule attached hereto as Exhibit 1, was prepared from daily time records regularly prepared and maintained by my firm in the ordinary course of business.  I am the Director who oversaw my firm's activities in the litigation, and I, together with attorneys working under my direction, reviewed my firm's daily time records to confirm their accuracy.

4.     This audit confirmed the accuracy of the time entries as well as the necessity for, and reasonableness of, the time committed to this Action.  Only time that inured to the benefit of Lead Plaintiff and the Class, and that advanced the claims resolved by the Settlement, is reflected in the firm's lodestar calculation.  Accordingly, some reductions were made to time in the exercise of billing judgment.  Time expended in preparing the application for fees and expenses has not been included in this report, and time for timekeepers who had worked fewer than ten hours on the matter was also removed from the time report.

5.     I believe that the time reflected in the firm's lodestar calculation is reasonable in amount and was necessary for the effective and efficient prosecution and resolution of this litigation.  The total number of hours expended on this Action by my firm's attorneys and professional support staff employees from its inception through March 5, 2021 was 10,897.  The

2

total resulting lodestar for my firm is $5,272,855.00. The schedule attached hereto as Exhibit 1 is a detailed summary reflecting the amount of time spent by each attorney and professional support staff employee of my firm who was involved in the Action, and the lodestar calculation based on my firm's current hourly rates.

6.       The hourly rates shown in Exhibit 1 attached hereto are the current rates set by the firm for each individual. These hourly rates are the same as, or comparable to, the rates accepted by courts in other securities class action litigation or shareholder litigation, including courts in this District and Circuit. My firm's rates are set based on periodic analysis of rates charged by firms performing comparable work and that have been approved by courts in other securities class actions and complex actions within this Circuit and nationwide. Different timekeepers within the same employment category (*e.g.*, shareholders, directors, associates, paralegals, etc.) may have different rates based on a variety of factors, including years of practice, years at the firm, year in the current position (*e.g.*, years as a director), relevant experience, relative expertise, and the rates of similarly experienced peers at our firm or other firms. For personnel who are no longer employed by my firm, the lodestar calculation is based upon the rate for that person in his or her final year of employment with my firm.

7.       My firm's lodestar figures do not include expense items. Expense items are recorded separately, and these amounts are not duplicated in my firm's hourly rates.

8.       My firm has incurred a total of $452,314.86 in unreimbursed Litigation Expenses in connection with the prosecution of this Action from its inception through March 18, 2021, which are detailed in Exhibit 2 attached hereto.

9.       The following is additional information regarding certain of those expenses:

a)       **Experts** ($247,479.75). Lead Plaintiff consulted with and retained a number of economic, accounting and industry experts during the prosecution of the Action, including:

3

i.    Lead Plaintiff retained Mr. Chad Coffman, CFA of Global Economics Group—a company with expertise in both securities class action damages and in settlement plans of allocation— to provide expert advice on market efficiency, damages, and loss causation issues. Lead Counsel consulted with Mr. Coffman throughout the litigation of the Action. In addition, Lead Counsel worked with Mr. Coffman to prepare an expert report on market efficiency and class-wide damages methodology that was filed in support of Lead Plaintiff's class certification motion. Finally, Lead Counsel worked with Mr. Coffman to prepare a comprehensive expert report on damages and loss causation that was served on Defendants.

ii.    Lead Counsel also worked with Mr. Jeremy Marmer of Global Economics Group in developing the proposed Plan of Allocation.

iii.    Lead Counsel also consulted with Financial Markets Analysis, LLC, which specializes in securities class action damages, to provide consultation regarding damages and loss causation issues in the Action.

iv.    Lead Counsel also consulted with Ms. Kirsten Flanagan and Mr. Roman Maslennikov, both CPAs with Friedman LLP, to provide expert advice relating to GTT's accounting of its acquisitions.

v.    Lead Counsel also consulted with Mr. Michael Maldari of Matrix Mission Critical LLC, an IT consultant, to provide expert advice regarding GTT's and Interoute's products and the cloud networking and cloud services industries.

b)    **Mediator** ($51,184.00). This represents Lead Plaintiff's fees paid to JAMS, Inc. for the services of the mediators, Judge Daniel Weinstein (Ret.) and Mr. Jed Melnick, Esq. who conducted the two mediation sessions in October and November 2020 and participated in the negotiation efforts that lead to the Settlement of the Action.

c)    **Investigation Expense** ($47,603.12). Saxena White employed an outside investigator, Quest Research & Investigations LLC, to assist the firm in timely identifying and interviewing numerous potential witnesses, including former employees of GTT, in connection with the preparation of the complaints.

d)    **Discovery Costs** ($66,433.68). Plaintiff engaged a third-party vendor, Exiger LLC, for services that included maintaining a document database, preparing documents for production, and assisting in search and organization of documents, including provision of a Technology Assisted Review ("TAR") platform.

e)    **Outside/Consulting Counsel Expense** ($9,082.71). Saxena White engaged the law firm of Farella Braun and Martel LLP, regarding issues pertaining to GTT's Directors' and Officers' Insurance policies. Saxena White also engaged the law firm of Bienert Katzman PC, regarding the independent representation of former employees of GTT and Interoute.

4

f)      **Online Legal and Factual Research** ($21,102.22).  The charges reflected are for out-of-pocket payments to legal, financial, and factual research services such as Westlaw, Lexis/Nexis, PACER, Thomson Reuters Eikon and Law360, for research done in connection with this litigation.  These resources were used to obtain access to court filings, to conduct legal research and cite-checking of briefs, and to obtain factual and financial information regarding the claims asserted through access to various financial and news databases and other factual databases.  These expenses represent the actual expenses incurred by Saxena White for use of these services in connection with this litigation.  There are no administrative charges included in these figures.  On-line research is billed to each case based on actual usage at a charge set by the vendor.  When Saxena White utilizes online services provided by a vendor with a flat-rate contract, access to the service is by a billing code entered for the specific case being litigated.  At the end of each billing period, Saxena White's costs for such services are allocated to specific cases based on the percentage of use in connection with that specific case in the billing period.

g)      **Travel Expenses** ($6,226.80).  In connection with the prosecution of this case, my firm has incurred travel expenses for its attorneys and representatives of Lead Plaintiff to attend client meetings and deposition preparation sessions.  The expenses reflected in Exhibit 2 are the expenses actually incurred by my firm.

10.     The Litigation Expenses in this Action are reflected in the books and records of Saxena White, which are regularly prepared and maintained in the ordinary course of business. These records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.

11.     With respect to the standing of my firm, attached hereto as Exhibit 3 is a brief biography of my firm. A breakdown of the principal tasks that each attorney in my firm performed in the Action is set forth in Exhibit 4 below.[2] Brief biographies for each timekeeper in the Action, including information about his or her position, education, and relevant experience is set forth in Exhibit 5 below.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of March, 2021, at Boca Raton, Florida.

*/s/ Lester R. Hooker*
Lester R. Hooker

---

[2] The task breakdown is intended to be a summary, and is not an exhaustive list of all work performed by each attorney in the case.

**EXHIBIT 1**

*Plymouth County Retirement System v. GTT Communications, Inc., et al.*
No. 1:19-cv-00982-CMH-MSN (E.D. Va.)

**<u>SAXENA WHITE TIME REPORT</u>**

**Inception Through March 5, 2021**

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **Shareholders** | | | |
| Joseph E. White, III | 101.5 | $895.00 | $90,842.50 |
| Maya Saxena | 77.25 | $895.00 | $69,138.75 |
| **Directors** | | | |
| David Kaplan | 35.25 | $800.00 | $28,200.00 |
| Kyla J. Grant | 632.5 | $675.00 | $426,937.50 |
| Lester R. Hooker | 388 | $800.00 | $310,400.00 |
| Steven B. Singer | 181.75 | $895.00 | $162,666.25 |
| **Attorneys** | | | |
| Dianne M. Pitre | 722.5 | $550.00 | $397,375.00 |
| Donald Grunewald | 830.75 | $525.00 | $436,143.75 |
| Fei-Lu Qian | 156.5 | $650.00 | $101,725.00 |
| Jill M. Schorr-Miller | 328.25 | $525.00 | $172,331.25 |
| Jonathan Lamet | 144.5 | $600.00 | $86,700.00 |
| Kathryn W. Weidner | 97.25 | $575.00 | $55,918.75 |
| Mario Alvite | 107.5 | $450.00 | $48,375.00 |
| Sara Dileo | 782.75 | $625.00 | $489,218.75 |
| Scott Guarcello | 445.5 | $625.00 | $278,437.50 |
| **Staff Attorneys** | | | |
| Athma Birju | 481 | $365.00 | $175,565.00 |
| Billie Tarnove | 170 | $365.00 | $62,050.00 |
| Christian Vazquez | 152.5 | $365.00 | $55,662.50 |
| Christine Sciarrino | 10 | $420.00 | $4,200.00 |
| Craig Walenta | 341.5 | $365.00 | $124,647.50 |
| Elisabeth Porter | 629.5 | $365.00 | $229,767.50 |
| Marjorie Peralta | 615.75 | $365.00 | $224,748.75 |
| Matt Anderson | 170.75 | $365.00 | $62,323.75 |
| Mauri Lynn Levy | 600 | $365.00 | $219,000.00 |

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| Michele Fassberg | 18.75 | $365.00 | $6,843.75 |
| Richard Steele | 172 | $365.00 | $62,780.00 |
| Ryan Joseph | 100.25 | $365.00 | $36,591.25 |
| Tara Heydt | 797.75 | $365.00 | $291,178.75 |
| Timothy Odroniec | 487.5 | $365.00 | $177,937.50 |
| Victoria Cook | 278.5 | $365.00 | $101,652.50 |
| Zeeta Nanan | 188 | $365.00 | $68,620.00 |
| **Financial Analysts** | | | |
| Marc Grobler | 83 | $295.00 | $24,485.00 |
| Sam Jones | 24.5 | $295.00 | $7,227.50 |
| **In-house Investigators** | | | |
| Jerome Pontrelli | 114.75 | $495.00 | $56,801.25 |
| Rian Wroblewski | 67 | $425.00 | $28,475.00 |
| **Support Staff** | | | |
| Brandon Smith | 237.75 | $275.00 | $65,381.25 |
| Charlene Wallace | 50.5 | $250.00 | $12,625.00 |
| Fabricia Resende | 18.75 | $250.00 | $4,687.50 |
| Stefanie Leverette | 55.25 | $275.00 | $15,193.75 |
| **TOTALS** | **10,897** | | **$5,272,855.00** |

**EXHIBIT 2**

*Plymouth County Retirement System v. GTT Communications, Inc., et al.*
No. 1:19-cv-00982-CMH-MSN (E.D. Va.)

**SAXENA WHITE EXPENSE REPORT**

**Inception Through March 18, 2021**

| CATEGORY | AMOUNT |
|---|---|
| Discovery Costs | $66,433.68 |
| Experts | $247,479.75 |
| Filing Fees | $7.50 |
| Investigating Expense | $47,603.12 |
| Mediators | $51,184.00 |
| Online Legal and Factual Research* | $21,102.22 |
| Outside/Consulting Counsel Expense | $9,082.71 |
| Travel Expenses | $6,226.80 |
| Postage and Delivery | $163.22 |
| Press Releases/Marketing | $377.00 |
| Printing and Photocopying | $2,186.26 |
| Telephone, Conference Call | $343.60 |
| Transcript & Deposition Expense | $125.00 |
| **TOTAL EXPENSES** | **$452,314.86** |

* The charges reflected for online research are for out-of-pocket payments to the vendors for research done in connection with this litigation. There are no administrative charges included in these figures.

**EXHIBIT 3**

*Plymouth County Retirement System v. GTT Communications, Inc., et al.*
No. 1:19-cv-00982-CMH-MSN (E.D. Va.)

**<u>FIRM RESUME</u>**



# SAXENA WHITE

"A highly experienced
group of lawyers
with national reputations in large securities class actions..."

*- Hon. Alan Gold, U.S. District Court, Southern District of Florida*

# FIRM RESUME

FLORIDA **I** NEW YORK **I** CALIFORNIA **I** DELAWARE

www.saxenawhite.com

Case 1:21-cv-00842-DJN-MSN Document 26-3-4 Filed 03/19/21 Page 1497 of 586 PageID# 99

## SAXENA WHITE

Saxena White P.A. was founded in 2006 by Maya Saxena and Joseph White. After spending many years at one of the country's largest class action law firms, we wanted to do business a different way. Our goal in forming the Firm was to become big enough to handle prominent and complex litigation while remaining small enough to offer each client responsive, ethical, and personalized service.

Today our Firm's capabilities rival those of our largest competitors. We obtain victories against major corporations represented by the nation's top defense firms. We represent some of the largest pension funds in major securities fraud cases and have recovered over $2 billion on behalf of injured investors. We have succeeded in improving how corporations do business by requiring the implementation of significant corporate governance reforms. We have formed long-lasting relationships with our clients who know we are only a phone call away. However, the most important attribute of the Firm, and the key to its continued success, is the people. Saxena White was built upon the quality, integrity, and camaraderie, of its people — attributes that continue to be its greatest legacy.

*What Makes us Different?*

- *We are proud to be the only certified woman- and minority-owned firm in the securities litigation business representing institutional investors and have an ongoing commitment to diversity.*

- *We take a selective approach to litigation, recommending only a few fraud cases per year and litigating them aggressively.*

- *The securities fraud cases in which we have served as lead counsel are rarely dismissed due to our careful selection criteria.*

- *We offer tailored portfolio monitoring services to our clients that reflect their individual philosophies toward litigation.*

- *We emphasize community outreach and welcome opportunities to support our clients in their communities.*

## R E C E N T   R E C O V E R I E S

### ▪ *In re Wells Fargo & Company Shareholder Derivative Litigation*

Saxena White served as co-Lead Counsel in this landmark case alleging that the Board and executive management of Wells Fargo knew or consciously disregarded that Wells Fargo employees were illicitly creating millions of deposit and credit card accounts for their customers, without those customers' consent, in an attempt to drive up "cross selling," i.e., selling complementary Wells Fargo banking products to prospective or existing customers.

Over significant competition from the top law firms in our industry, the Court selected Saxena White as one of the two firms most qualified in the nation to lead this high-profile case, noting the superior quality of the work performed. Through this shareholder derivative action, Saxena White held Defendants accountable for a scandal that has significantly damaged one of America's largest financial institutions.

On April 7, 2020, the Northern District of California approved a $320 million settlement on behalf of nominal Defendant Wells Fargo & Company with the Company's officers, directors, and senior management. The Settlement includes a $240 million cash payment from Defendants' insurers—representing the largest insurance-funded monetary component of any shareholder derivative settlement by over $100 million.

Saxena White zealously advocated for the interests of the Company and obtained excellent results. In sum, after a thorough investigation of the relevant claims; the filing of a detailed complaint; success in defeating two motions to dismiss; active intervention in, stays of, and dismissals of multiple state court actions; consolidation and coordination with related federal actions; extensive review of over 3.5 million pages of documents from Defendants, Wells Fargo, and numerous third parties; consultation with experts; and research and preparation for depositions, the $320 million settlement was reached in this derivative action.

In approving the historic Settlement, the Court remarked that "this represents an excellent result for the shareholders" of Wells Fargo. The Court went on to praise "the risk" that Saxena White "took in litigation on a contingency basis – a risk they have borne for more than three years."

### ▪ *In re Wilmington Trust Securities Litigation*

Saxena White served as co-Lead Counsel in a class action against Wilmington Trust, its senior executives, board of directors, outside auditor, and the underwriters of one of its secondary offerings. Following the appointment of the Coral Springs Police Pension Fund, St. Petersburg Firefighters' Retirement System, Pompano Beach General Employees Retirement System as co-Lead Plaintiffs and Saxena White as co-Lead Counsel, Lead Plaintiffs conducted a comprehensive and wide-ranging investigation, culminating in an amended complaint that detailed how Defendants violated the Securities Exchange Act of 1934 by concealing the drastic deterioration of Wilmington Trust's loan portfolio and improperly accounting for the value of its loans under Generally Accepted Accounting Principles. In particular, Defendants understated Wilmington Trust's provision for loan losses as its loan portfolio declined in quality, improperly delayed recognition of losses on the portfolio, and inflated its financial results by misstating the fair value of its loan portfolio. Defendants' misconduct served to artificially inflate the price of Wilmington Trust securities during the Class Period. Lead Plaintiffs further alleged that Defendants violated the Securities Act of 1933 by issuing untrue statements in connection with the Company's February 23, 2010 public equity offering, by understating Wilmington Trust's provision for loan losses.

After prevailing over thousands of pages of briefing on Defendants' multiple motions to dismiss, Lead Plaintiffs sought to be appointed as class representatives and certify a class of damaged investors. After extensive briefing and discovery, the Court certified a class on September 3, 2015. In certifying the class, Saxena White also secured important new precedent for aggrieved shareholders nationwide who have fallen victim to securities fraud. The Court's opinion rejected Defendants' argument that the Supreme Court's opinion in Comcast Corp. v. Behrend, 569 U.S. 27 (2013) requires plaintiffs to submit a damages methodology and model at the class certification stage. Having defeated an argument that securities fraud defendants are increasingly relying upon to avoid responsibility for their illegal actions, Saxena White's efforts have again provided investors with a powerful weapon with which to combat corporate wrongdoing at the class certification stage. Indeed, in addition to certifying the class, the Court applauded Saxena White's "excellent lawyers" and noted that Ms. Saxena's "argument was very well argued."

Having certified a class, Saxena White and Lead Plaintiffs embarked on a monumental discovery effort to marshal the highly complex and technical evidence required to establish Defendants' fraud. As part of this massive undertaking, we closely reviewed and analyzed nearly 13 million pages of documents. Our efforts required us to not only take on a veritable who's who of highly skilled defense counsel, but also multiple branches of the U.S. Government. After two years of hard-fought motion practice, we successfully compelled the Federal Reserve and the Office of the Comptroller of the Currency to waive the bank examination privilege for over 35,000 documents that those regulators had withheld. Compelling the production of such documents is a rare feat and was the culmination of a multi-year effort to relentlessly fight for the information and facts that were relevant to the prosecution of the case. We also prevailed over the U.S. Attorney's Office, successfully moving to lift the discovery stay imposed at its request. As a result, we were able to depose key fact witnesses. In all, we deposed 39 witnesses in seven states, which generated nearly 11,000 pages of testimony and almost 900 exhibits.

After nearly eight years of hard-fought litigation, we negotiated an outstanding $210 million recovery on behalf of the Class. This remarkable settlement represents a recovery of nearly 40% of the Class's maximum likely recoverable damages, which is eight times greater than the 5% median recovery in the Third Circuit. The recovery also ranks among the top ten securities fraud settlements in the Third Circuit, and is in the top 5% of all securities fraud settlements since the PSLRA was enacted in 1995. On November 19, 2018, the Court approved the settlement in its entirety. Notably, the Court twice observed that Saxena White achieved the recovery independently of the Government's criminal investigation. The Court was also complimentary of the "legal prowess" exhibited by Saxena White's "highly experienced attorneys."

### ■ *In re HD Supply Securities Litigation*

Saxena White served as Lead Counsel in a class action against HD Supply Holdings, Inc., a commercial distributor whose financial success rises and falls with the efficacy of its supply chain. In 2016, the Company disclosed it had experienced significant failures that paralyzed the functionality of its supply chain and financially harmed the business. Following that operational breakdown, the complaint alleged that the company and its senior executives misled investors about the extent to which its supply chain had recovered. At the start of the class period, Defendants assured investors that the recovery was "on track" and the company was "perfectly poised" to deliver strong results in 2017. HD Supply's stock price skyrocketed in response. What Defendants then knew but failed to disclose, however, was that the supply chain was not in "as good condition as it's ever been," but in reality suffered from systemic problems and required a multi-million-dollar overhaul. The complaint further alleged that, while in possession of that material non-public information, HD Supply's then-CEO whom had not sold a single share over the last year, liquidated



an astonishing 80% of his holdings in HD Supply, for proceeds of $54 million, shortly after making those representations. When the truth about the catastrophic state of the Company's supply chain and the need for heavy spending to remedy its deficiencies was subsequently revealed to the market, the company's stock price declined significantly, causing investors substantial losses.

Saxena White engaged in extensive litigation efforts against HD Supply, including defeating Defendants' motion to dismiss, engaging in extensive fact discovery and deposition preparations, and moving for class certification. Moreover, as a result of the filing of the complaint, the SEC subsequently commenced an investigation into HD Supply's then-CEO's alleged insider trading. Ultimately, the parties participated in settlement negotiations through which Plaintiffs obtained a $50 million cash settlement on behalf of the Class - one of the largest securities class action settlements ever achieved in the U.S. District Court for the Northern District of Georgia.

### ■ *Milbeck v. TrueCar, et al.*

Saxena White served as Lead Counsel in a class action against TrueCar, Inc. that alleged that the company and its senior executives misled investors about TrueCar's relationship with its most significant business partner, United States Automobile Association (USAA). TrueCar's SEC filings disclosed that USAA's marketing of TrueCar's services on USAA's website alone generated approximately one third of TrueCar's annual revenue and warned that if USAA made even a minor change to its marketing of TrueCar on USAA's website, TrueCar's business could be harmed. The complaint alleged that, prior to the start of the Class Period, USAA informed TrueCar that it intended to substantially modify its website, including by reducing the prominence of its marketing of TrueCar's services. Thus, defendants knew that the risk TrueCar had warned investors about had, in fact, materialized, but failed to disclose this material information. The complaint also alleged that TrueCar's CFO and other insiders engaged in insider trading while in possession of material non-public information regarding the impending USAA website changes. When the truth that TrueCar's earnings were severely negatively impacted as a result of USAA's website redesign was finally revealed, the company's stock price declined significantly, causing investors substantial losses.

Saxena White engaged in extensive litigation efforts on an exceptionally expedited case schedule, including defeating Defendants' motion to dismiss, reviewing over 200,000 documents produced by defendants and obtaining class certification. Thereafter, the parties participated in negotiations through which Plaintiff ultimately obtained a $28.25 million cash settlement on behalf of the Class.

### ■ *John Cumming v. Wesley R. Edens, et al. (New Senior Investment Group)*

Described as a "landmark" settlement by Law360, in 2019 the Delaware Court of Chancery approved a $53 million settlement in a shareholder derivative action against real estate investment trust New Senior Investment Group. The suit targeted New Senior's $640 million acquisition of a portfolio of senior living properties owned by an affiliate of its investment manager, which, according to Plaintiff's experts, damaged New Senior by over $100 million. The settlement is the largest derivative action settlement as a percentage of market capitalization to date in Delaware and is one of the top ten derivative action settlements in the history of the Court of Chancery.

 The Plaintiff's extensive discovery efforts in the case included the review of more than 800,000 pages of documents, 16 depositions, and the filing of six motions to compel. Following fact discovery, the parties exchanged ten expert reports related to the damages from the real estate portfolio purchase and from a

related secondary stock offering. After a mediation and extensive follow-up negotiations, the parties agreed to settle the litigation in exchange for the payment of $53 million in cash to New Senior. The settlement also included valuable corporate governance reforms, including the board's agreement to approve and submit to New Senior's stockholders for adoption at the annual meeting amendments to New Senior's bylaws and certificate of incorporation which would (a) provide that directors be elected by a majority of the votes cast in any uncontested election of directors, and (b) eliminate New Senior's staggered board, so that all directors are elected on an annual basis.

In his remarks at the final settlement hearing, Vice-Chancellor Joseph R. Slights called the settlement "impressive" and further described counsel's efforts as "hard fought, but fought in the right way to reach a productive result."

### ◼ *In re Rayonier Inc. Securities Litigation*

Saxena White served as co-Lead Counsel in a class action against Rayonier that accused the company and its senior executives of misleading investors about its timber inventory and harvesting rates in the Pacific Northwest. When the company's new management ultimately disclosed that Rayonier had overharvested its premium Pacific Northwest timberlands by over 40% each year for over a decade and overstated its merchantable timber by 20% in this critical region, the company's stock price declined significantly, causing investors substantial losses.

After litigating this case for nearly three years and defeating Defendants' motion to dismiss, Plaintiffs ultimately negotiated a $73 million cash settlement on behalf of the Class, the second largest recovery from a securities class action achieved in the Middle District of Florida. The $73 million settlement is nearly nine times the national median settlement and nearly ten times greater than the median recovery in the Eleventh Circuit. As noted by Judge Timothy J. Corrigan, M.D. Fla., this was an "exceptional result[] achieved for the benefit of the Settlement Class."

### ◼ *Westchester Putnam Counties Heavy & Highway Laborers Local 60 Benefit Funds v. Brixmor Property Group, Inc. et al.*

Saxena White filed an original action in the United States District Court for the Southern District of New York against Brixmor and certain of its senior executives for securities fraud on May 31, 2016. Following the appointment of the Westchester Putnam Counties Heavy & Highway Laborers Local 60 Benefit Funds, Teamsters Local 456 Annuity Fund, and City of Birmingham Retirement and Relief System as Lead Plaintiffs and Saxena White as Lead Counsel, Lead Plaintiffs filed a comprehensive amended complaint alleging that throughout the Class Period, Defendants purposefully falsified Brixmor's income items for over two years in order to portray consistent quarterly same property NOI growth; the Company lacked adequate internal and financial controls; and as a result, Defendants' Class Period statements about Brixmor's business, operations, and prospects were false and misleading.

After extensive litigation efforts and negotiation, Lead Plaintiffs obtained a $28 million settlement. The Settlement is an exceptional recovery for the Class, representing a significant percentage of the Class's maximum estimated aggregate damages that was multiples ahead of the typical recovery in securities class actions. After a fairness hearing to evaluate the merits of the settlement, on December 13, 2017, the Honorable Analisa Torres issued an order granting the final approval of the Settlement as fair, adequate, and reasonable. Saxena White is pleased to achieve such a favorable settlement for shareholders.

### ■ *In re Jefferies Group, Inc. Shareholders Litigation*

Saxena White served as co-Lead Counsel in a class action involving breach of fiduciary duty claims against the board of directors of Jefferies Group, Inc., in connection with that company's merger with Leucadia National Corporation. In 2012, Jefferies entered into a merger agreement with Leucadia, a holding company which owned 28% of Jefferies and whose founders served on Jefferies' board. Leucadia's founders had a longstanding personal and professional relationship with Jefferies CEO, Richard Handler, which included lucrative joint ventures, personal investment advice and support, numerous financing transactions, and off-market stock purchases. As Leucadia's founders neared retirement, Handler recognized an opportunity to merge his company with Leucadia and serve as CEO of the much larger, combined company. Negotiating in secret for months before informing the independent board members, Handler and Leucadia's founders structured a deal that greatly benefitted Leucadia, to the detriment of Jefferies shareholders.

After aggressively litigating this case for almost two years and defeating Defendants' motion to dismiss and motion for summary judgment, Plaintiffs ultimately negotiated a settlement which required Leucadia to pay $70 million to class members, an outstanding result for former Jefferies shareholders.

### ■ *City Pension Fund for Firefighters and Police Officers in the City of Miami Beach v. Aracruz Celulose S.A., et al.*

One of our Firm's areas of expertise is litigating cases against foreign corporations. We recently obtained a significant victory against a Brazilian corporation, Aracruz Celulose. Accomplishing what no other law firm has ever done, Saxena White successfully served process on all three individual executives under the Inter-American Convention on Letters Rogatory. Our efforts included working closely with a Brazilian law firm to defeat Defendants' challenges to service in both the Brazilian trial and appellate courts.

After defeating three motions to dismiss filed by the foreign Defendants, Saxena White began the massive and highly technical discovery process. Because the vast majority of the documents were in Portuguese, we hired native Brazilian attorneys to analyze and translate the tens of thousands of documents that were produced. These documents were also incredibly complex, dealing with five dozen separate financial derivative instruments. Simply valuing one instrument required approximately 50,000 calculations. We consulted closely with highly-respected industry and academic experts to gain an unprecedented understanding of the workings of these instruments and how they were valued.

In the end, our hard work paid off. Saxena White successfully negotiated a $37.5 million settlement against Aracruz and its executives. This represents up to 50% of maximum provable damages – an outstanding result compared to the average national recovery of just 2.5% in cases of this magnitude.

### ■ *In re Bank of America Securities, Derivative and ERISA Litigation*

This derivative case arose out of Bank of America's acquisition of Merrill Lynch during the height of the financial crisis in late 2008. After successfully defending the complaint's core allegations against multiple motions to dismiss, Saxena White embarked on an extensive discovery process that included 31 depositions of senior BofA and Merrill executives and their attorneys, the review and analysis of 3 million pages of documents from BofA, Merrill, and multiple third parties, and close consultation with nationally recognized financial and economic experts.

On January 11, 2013, the Court approved the Settlement, which includes a $62.5 million cash component and fundamental corporate governance reforms. The cash component alone ranks this Settlement among the top



ten derivative settlements approved by federal courts. The extensive corporate governance reforms include the creation of a Board-level committee tasked with special oversight of mergers and acquisitions, which is aimed at preventing the alleged deficiencies surrounding the Merrill Lynch acquisition. The corporate governance reforms also include other components, including revisions to committee charters and director education requirements, which caused one noted scholar to observe that BofA is now at the forefront of corporate governance practices.

### ▌ *In re Lehman Brothers Equity/Debt Securities Litigation*

After conducting an extensive investigation into Lehman and its executives, Saxena White was the first firm to file a complaint alleging violations of the federal securities laws. Subsequent events, including the largest bankruptcy filing in U.S. history, interjected unique challenges to prosecuting this case – not the least of which was that because Lehman itself was in bankruptcy, damaged shareholders could not recover damages from it.

Despite these formidable obstacles, we continued to prosecute the case. Our efforts paid off. In the spring of 2012, the Court approved a $90 million partial settlement with Lehman's senior executives and directors, and a $426 million settlement with several dozen underwriters of its securities. After nearly two more years of hard-fought litigation, we reached a $99 million settlement with E&Y, Lehman's outside auditor, which was approved in the spring of 2014. The $99 million settlement ranks among the largest ever obtained from an outside auditor and is an outstanding recovery for damaged shareholders.

### ▌ *FindWhat Investor Group v. FindWhat.com*

Saxena White also has significant appellate experience. In this Eleventh Circuit appeal, we won a precedent-setting opinion with the court holding that corporations and their executives who make fraudulent statements that prevent artificial inflation in a company's stock price from dissipating are just as liable under the securities laws as those whose fraudulent statements introduce artificial inflation into the stock price in the first place. The Eleventh Circuit rejected Defendants' position that the mere repetition of lies already transmitted to the market cannot damage investors. "We decline to erect a per se rule," wrote the court, that "once a market is already misinformed about a particular truth, corporations are free to knowingly and intentionally reinforce material misconceptions by repeating falsehoods with impunity."

The Eleventh Circuit's opinion is a significant win for aggrieved investors. It is the first such ruling from any of the Courts of Appeals in the nation, and will help defrauded investors seeking to recover damages due to fraud.

### ▌ *Central Laborers' Pension Fund v. Sirva*

Saxena White served as sole Lead Counsel in this case, which was litigated in the Northern District of Illinois (SIRVA is the parent company of North American Van Lines). After two and a half years of hard-fought litigation, an extensive investigation which involved conducting nearly 120 witness interviews, and the review of approximately 2.7 million documents produced by Defendants, a two day mediation was conducted at which we were able to reach a global $53.3 million settlement on behalf of the proposed shareholder class. In addition, Saxena White conducted a comprehensive review of SIRVA's corporate governance procedures in an effort to ensure that securities fraud and accounting violations were less likely to occur at the Company in the future. This careful and comprehensive review, which was spearheaded in conjunction with retained corporate governance experts, confirmed that SIRVA had made great strides in improving its governance



standards over the course of our lawsuit. This was especially true in the area of its internal controls, which was a primary concern. The company formally recognized, in writing, that the lawsuit was one of the main reasons it reformed its governance standards, which confirmed that Saxena White was the key catalyst compelling SIRVA to recognize the need to change the way it does business.

In addition, Saxena White was able to obtain even more governance improvements by convincing the Board to discard their plurality (also known as "cumulative") standard for the election of their directors in favor of a modified majority standard (also known as the "Pfizer model"). This important change gives every SIRVA shareholder a greater voice, as well as improving director accountability, by forcing directors who do not receive a majority of the votes to tender their resignation for the Board's consideration. Furthermore, SIRVA also agreed to strengthen its requirements regarding director attendance at shareholder meetings, which created more director accountability and increased shareholder input. Importantly, judges are unable to order these types of governance changes – it was only the negotiation and litigation pressure that we imposed upon the Company that allowed these changes to be implemented.

### ▮ *In re Sadia S.A. Securities Litigation*

Sadia was a Brazilian company specializing in poultry and frozen goods that exported a majority of its products. Like Aracruz, it engaged in wildly speculative currency hedging while telling investors that its hedges were conservative and used to protect against sudden changes in currency fluctuation. Plaintiffs filed a securities fraud complaint against Sadia and its senior executives and board members alleging violations of the federal securities laws. Because the individual Defendants in this case were also citizens of Brazil, they had to be served pursuant to the Inter-American Convention on Letters Rogatory. We were successful in serving the individuals, once again accomplishing what few other law firms have been able to do.

We prevailed on the motion to dismiss and on the motion for class certification. Discovery was greatly complicated by the fact that the vast majority of the documents were in Portuguese, and the Court had no subpoena power to force witnesses to appear for deposition. In spite of this, we hired attorneys fluent in Portuguese to help us with the review, and we were able to depose one of the Company's executives. After three mediations over the course of eight months, we were able to reach a $27 million cash settlement with the Defendants.

### ▮ *In re Cox Radio, Inc. Shareholders Litigation*

Saxena White represented a Florida Police Pension Plan in an action against Cox Radio. The Pension Plan alleged that the initial price offered to public shareholders in the tender offer was unfair and did not properly value the assets of Cox Radio. After considerable discovery and expedited motion practice, we were instrumental in raising the price of the deal by nearly 30%, creating nearly $18 million in additional value for all public shareholders, including the Pension Plan. We also obtained the issuance of additional meaningful disclosures regarding the valuation process used in the deal.

### ▮ *In re Clear Channel Outdoor Holdings, Inc. Derivative Litigation*

Saxena White, on behalf of an institutional investor client, filed a derivative action on behalf of nominal Defendant Clear Channel Outdoor Holdings ("Outdoor" or the "Company") against certain of the Company's current and former directors, its majority stockholder, Clear Channel Communications, Inc. ("Clear Channel"), and other entities with respect to a 2009 agreement between the Company and Clear Channel. The derivative action brought forth claims that Outdoor's directors breached their fiduciary duties by approving a $1 billion

S
W

unsecured loan on highly unfavorable terms to Clear Channel. In response to the claims brought forth in the derivative action, the Company's Board of Directors established a Special Litigation Committee (the "SLC") and empowered it to investigate the matters and claims raised in the action.

After an extensive evaluation and investigation of the derivative claims, the SLC initiated discussions with certain of the Defendants to explore the prospects of settlement. The SLC also initiated discussions with Plaintiffs in order to explore the prospects of settling the derivative action. After several months of working with the SLC, the parties to the derivative action reached an agreement in principle to resolve the action on terms that will provide substantial and meaningful benefits to the Company and its shareholders, including an agreement that would provide a dividend to shareholders in the amount of $200 million, as well as additional corporate governance reforms. The settlement agreement acknowledges that Plaintiffs' involvement in the settlement negotiations was a factor in achieving the benefits received by Outdoor and its shareholders as a result of the settlement.

S
W

## SHAREHOLDERS & DIRECTORS



### MAYA SAXENA

Maya Saxena, co-founder of Saxena White P.A., has been practicing exclusively in the securities litigation field for over 20 years, representing institutional investors in shareholder actions involving breaches of fiduciary duty and violations of the federal securities laws. Prior to forming Saxena White, Ms. Saxena served as the Managing Partner of the Florida office of one of the nation's largest securities litigation firms, successfully directing numerous high profile securities cases. Ms. Saxena gained valuable trial experience before entering private practice while employed as an Assistant Attorney General in Ft. Lauderdale, Florida. During her time as an Assistant Attorney General, Ms. Saxena represented the State of Florida in civil cases at the appellate and trial level and prepared amicus curiae briefs in support of state policies at issue in state and federal courts. In addition, Ms. Saxena represented the Florida Highway Patrol and other law enforcement agencies in civil forfeiture trials.

Ms. Saxena has been instrumental in recovering nearly a billion dollars on behalf of investors. Recently, Ms. Saxena played a key role in obtaining a $320 million settlement against Wells Fargo & Company. The settlement includes a $240 million cash payment from Defendants' insurers-representing the largest insurance-funded monetary component of any shareholder derivative settlement by over $100 million. Ms. Saxena also led the litigation team that settled against Wilmington Trust for $210 million, one of the largest settlements in 2018. Other prominent settlements include: Rayonier, Inc. ($73 million settlement), SIRVA, Inc. ($53.3 million settlement), Aracruz Celulose ($37.5 million settlement), Brixmor Property Group ($28 million settlement), and Sunbeam (settled with Arthur Andersen LLP for $110 million-one of the largest settlements ever with an accounting firm-and a $15 million personal contribution from former CEO Al Dunlap).

Ms. Saxena is a frequent speaker at educational forums involving public pension funds and advises public and multi-employer pension funds on how to address fraud-related investment losses. She is an active member of the National Association of Public Pension Attorneys ("NAPPA") and co-chairs its Securities Litigation Committee. As part of her professional endeavors, Ms. Saxena writes numerous articles on protecting shareholder rights, and works closely with other NAPPA members to author, update, and publish a white paper on post-*Morrison* International Securities Litigation.

Ms. Saxena has been recognized in the *South Florida Business Journal's* "Best of the Bar" as one of the top lawyers in South Florida, and has been selected to the Florida *Super Lawyers* list for ten consecutive years in a row. Ms. Saxena was also selected by her peers for inclusion in *The Best Lawyers in America*® four years in a row, as well as one of Florida's "Legal Elite" by *Florida Trend* magazine. Recently, Ms. Saxena was named a "500 Leading Plaintiff Financial Lawyer" by *Lawdragon*.

Ms. Saxena graduated from Syracuse University *summa cum laude* in 1993 with a dual degree in policy studies and economics, and graduated from Pepperdine University School of Law in 1996. Ms. Saxena is a member of the Florida Bar, and is admitted to practice before the United States District Courts for the Southern and Middle Districts of Florida, as well as the Eleventh Circuit Court of Appeals, and the Supreme Court of the United States.





## JOSEPH E. WHITE, III

Joseph E. White, III, co-founder of Saxena White P.A., has represented shareholders as lead counsel in major securities fraud class actions and derivative actions for nearly 20 years. He has represented lead and representative plaintiffs in front-page cases, including actions against Bank of America, Lehman Brothers and Washington Mutual. He has successfully settled cases yielding over one billion dollars against numerous publicly traded companies, including cases against Rayonier, Inc. ($73 million), Brixmor Property Group ($28 million), SIRVA, Inc. ($53.3 million), and one of the largest settlements in 2018, Wilmington Trust ($210 million). Mr. White has also developed an expertise in litigating precedent-setting cases against foreign publicly traded companies, and settled two cases involving Brazilian corporations: Sadia, Inc. ($27 million) and Aracruz Celulose ($37.5 million).

Mr. White has also helped achieve meaningful corporate governance and monetary recoveries for shareholders in merger related and derivative lawsuits. Recently, Mr. White played an instrumental role in obtaining a $320 million settlement in *In re Wells Fargo & Company Shareholder Litigation*. The settlement includes a $240 million cash payment from Defendants' insurers-representing the largest insurance-funded monetary component of any shareholder derivative settlement by over $100 million.  In *In re Clear Channel Outdoor Holdings Derivative Litigation*, Mr. White's efforts obtained repayment of a $200 million loan from Outdoor's parent which was then paid as a special dividend to Outdoor shareholders. Mr. White regularly lectures on topics of interest to pension trustees, and advises municipal, state, and international institutional investors on instituting effective systems to monitor and prosecute securities and related litigation.

Mr. White has been recognized by *Palm Beach Illustrated* as a "Top Lawyer," and is a current *Lawyers of Distinction* Certified Member. He was also named a Florida's "Legal Elite" by *Florida Trend* magazine. Recently, Mr. White was named a "500 Leading Plaintiff Financial Lawyer" by *Lawdragon*.

Mr. White earned an undergraduate degree in Political Science from Tufts University before obtaining his Juris Doctor from Suffolk University School of Law.

Mr. White is a member of the Massachusetts, Florida, New York and Pennsylvania Bars. He is also admitted to the United States District Courts for the Southern, Northern, and Middle Districts of Florida, the Southern District of New York, the District of Massachusetts, the District of Colorado, the Western District of Michigan, and the Northern District of Illinois. Mr. White is also a member of the United States Circuit Courts of Appeals for the First and Eleventh Circuits, and the Supreme Court of the United States.



## STEVEN B. SINGER

Steven B. Singer is a Director at Saxena White P.A., and oversees the Firm's securities litigation practice. Prior to joining the Firm, Mr. Singer was employed for more than 20 years at Bernstein Litowitz Berger & Grossmann LLP, a well-known plaintiffs' firm, where he served as a senior partner and member of the firm's management committee.

During his career Mr. Singer has been the lead partner responsible for prosecuting many of the most significant and high-profile securities cases in the country, which collectively have recovered billions of dollars for investors. He led the litigation against Bank of America relating to its acquisition of Merrill Lynch, which resulted in a landmark settlement shortly before trial ($2.43 billion), one of the largest recoveries in history. Mr. Singer's work on that case was the subject of extensive media coverage, including numerous



articles published in The New York Times. He also has substantial trial experience and was one of the lead trial lawyers on the WorldCom Securities Litigation ($6 billion settlement) after a four-week jury trial.

Recently, Mr. Singer led the litigation team that successfully recovered $320 million against Wells Fargo & Company. The settlement includes a $240 million cash payment from Defendants' insurers-representing the largest insurance-funded monetary component of any shareholder derivative settlement by over $100 million. In addition, Mr. Singer has been lead counsel in numerous other actions that have resulted in substantial settlements, including cases involving Citigroup Inc. ($730 million, representing the second largest recovery in a case brought on behalf of bond purchasers), Lucent Technologies ($675 million), Mills Corp. ($203 million), WellCare Health Plans ($200 million), Satyam Computer Services ($150 million), Biovail Corp. ($138 million), Bank of New York Mellon ($180 million), JP Morgan Chase ($150 million), and one of the largest settlements in 2018, Wilmington Trust ($210 million).

At Saxena White, Mr. Singer serves as lead counsel in many highly significant securities matters, including class actions involving The Chemours Company, Novo Nordisk, DaVita, Inc., and Credit Suisse Group AG.

Mr. Singer has been consistently recognized by industry observers for his legal excellence and achievements. He has been selected by *Lawdragon* magazine as one of the "500 Leading Lawyers in America," by *Benchmark Plaintiff* as a "Litigation Star", and by the *Legal 500 US Guide* as one of the "Leading Lawyers" in securities litigation — one of only seven plaintiffs' attorneys so recognized. Recently, Mr. Singer was named a "500 Leading Plaintiff Financial Lawyer" by *Lawdragon*.

Mr. Singer graduated *cum laude* from Duke University in 1988, and from Northwestern University School of Law in 1991. He is a member of the New York State Bar, as well as the United States District Courts for the Southern and Eastern Districts of New York, the Northern District of Illinois, and the District of Colorado.



### DAVID KAPLAN

David R. Kaplan is a Director at Saxena White and manages the Firm's California office. Mr. Kaplan has over fifteen years of experience in the field of securities and shareholder litigation. He has helped investors achieve hundreds of millions of dollars in recoveries in federal and state courts nationwide, including in class actions, direct "opt out" actions, and shareholder derivative litigation.

Prior to joining Saxena White, Mr. Kaplan was a partner at Bernstein Litowitz Berger & Grossman LLP, where he co-chaired its direct-action practice, and counseled institutional investor clients on potential legal claims as a member of the firm's new matters department. Before that, Mr. Kaplan was a senior associate at Irell & Manella LLP, where he handled a variety of high-stakes business disputes and complex litigation matters.

A large part of Mr. Kaplan's day-to-day practice involves advising mutual funds, insurance companies, pension funds, hedge funds, and other institutional asset managers on whether to remain passive participants in securities class actions or opt out to maximize, accelerate, and protect their securities fraud recoveries. Most recently, Mr. Kaplan represented prominent institutional investor opt out groups in New York, New Jersey, Connecticut, and Texas federal courts. Mr. Kaplan has also successfully represented institutional investors in opt out actions in California federal and state courts.

Mr. Kaplan also has extensive experience advising institutional clients on pursuing securities fraud recoveries in international jurisdictions. His work in this area includes virtually all countries in which shareholder collective actions are authorized by law, including Canada, Australia, England, the Netherlands, Germany, Italy, France, Japan, Israel, and Brazil.

S W

Mr. Kaplan has authored multiple articles relating to class actions and the federal securities laws, which have been published in *The National Law Journal, The Daily Journal, Law360, Pensions & Investments*, and *The NAPPA Report*, among other publications. Mr. Kaplan is an editor of the *American Bar Association's* Class Actions and Derivative Suits Committee's Newsletter. For his achievements, Mr. Kaplan has been selected as a "Rising Star" by *Super Lawyers* and a "500 Leading Plaintiff Financial Lawyer" by *Lawdragon*.

Mr. Kaplan graduated with a Bachelor of Arts, *cum laude*, from Washington and Lee University, and earned his Juris Doctor, High Honors, from Duke University School of Law, where he was an editor of *Duke Law Review*. He is admitted to practice in California, United States District Courts for the Central, Northern, and Southern Districts of California, and the Eastern District of Wisconsin. He is also admitted to the United States Court of Appeals for the Ninth Circuit, and the and United States Bankruptcy Court for the Central District of California.



### LESTER R. HOOKER

Lester Hooker, Director, is involved in all of Saxena White's practice areas, including securities class action litigation and shareholder derivative actions. During his tenure at Saxena White, Mr. Hooker has obtained substantial monetary recoveries and secured valuable corporate governance reforms on behalf of investors nationwide.

Mr. Hooker played a key role on the litigation teams that have successfully prosecuted securities fraud class and derivative actions, including *In re Wells Fargo & Company Shareholder Litigation* ($320 million settlement, which includes a $240 million cash payment from Defendants' insurers - representing the largest insurance - funded monetary component of any shareholder derivative settlement by over $100 million), *In re HD Supply Holdings, Inc. Securities Litigation* ($50 million settlement-one of the largest securities class action settlements ever achieved in the U.S. District Court for the Northern District of Georgia), *In re Rayonier Inc. Securities Litigation* ($73 million settlement), *Westchester Putnam Counties Heavy and Highway Laborers Local 60 Benefit Funds v. Brixmor Property Group, Inc. et al.*, ($28 million settlement), Central Laborers' Pension Fund v. Sirva, Inc., ($53.3 million settlement along with the adoption of important corporate governance reforms), *City Pension Fund for Firefighters and Police Officers in the City of Miami Beach v. Aracruz Celulose S.A., et al.*, ($37.5 million settlement), *In re Sadia, Inc. Securities Litigation* ($27 million settlement), and *In re Tower Group International, Ltd. Securities Litigation* ($20.5 million settlement). Mr. Hooker is currently part of the litigation teams prosecuting securities fraud class actions against companies such as The Chemours Company, DaVita, Inc., Patterson Companies, Inc., Perrigo Company plc, and Sinclair Broadcast Group.

Mr. Hooker received a Bachelor of Arts degree with a major in English from the University of California at Berkeley. He earned his Juris Doctor from the University of San Diego School of Law, where he was awarded the Dean's Outstanding Scholar Scholarship. Mr. Hooker received his master's degree in Business Administration with an emphasis in International Business from the University of San Diego School of Business, where he was awarded the Ahlers Center International Graduate Studies Scholarship. Mr. Hooker has recently been recognized as a *Super Lawyer* "Rising Star" for 2017 and 2018, a *South Florida Legal Guide's* "Up and Comer" in 2017, and a *Palm Beach Illustrated* "Top Lawyer" in 2018. Recently, Mr. Hooker was named a "500 Leading Plaintiff Financial Lawyer" by *Lawdragon.*



Mr. Hooker is a member of the State Bars of California, Florida, New York, and the District of Columbia, and is admitted to practice law in the United States District Courts for the Northern, Central, Southern and Eastern Districts of California, the Southern, Middle and Northern Districts of Florida, the Western District of Michigan, the District of Colorado, and the Northern District of Illinois. Mr. Hooker is also admitted to practice law in the United States Courts of Appeals for the Ninth Circuit.



### BRANDON GRZANDZIEL

Brandon Grzandziel, Director, is involved in all of Saxena White's practice areas, including securities class action litigation and shareholder derivative actions. During his tenure at Saxena White, Mr. Grzandziel has obtained substantial monetary recoveries including the one of the largest settlements in 2018, In re Wilmington Trust Corporation Securities Litigation ($210 million).

Additionally, Mr. Grzandziel has been a member of the teams securing significant recoveries for investors *In re Rayonier Securities Litigation* ($73 million), *City Pension Fund v. Aracruz Celulose S.A.* ($37.5 million against a foreign defendant), *In re Bank of America* ($62.5 million, which ranks among the top ten derivative settlements approved by the federal courts), and *In re Sadia, S.A. Securities Litigation* ($27 million against foreign defendants). Having extensive appellate experience, Mr. Grzandziel has also successfully secured important new precedent for the protection of investors in cases such as FindWhat Investor Group v. FindWhat.com.

Mr. Grzandziel earned his Bachelor of Arts from Wake Forest University, where he graduated with Honors in 2005. In 2008, he received his Juris Doctor from the University of Miami School of Law while being Executive Editor of the University of Miami Business Law Review. His article, "A New Argument for Fair Use Under the Digital Millennium Copyright Act," was published in the Spring/Summer 2008 issue. During his recent legal career, Mr. Grzandziel has been recognized as a *Super Lawyer* "Rising Star" for 2017 through 2019.

Mr. Grzandziel is a member of the Florida Bar, the United States District Courts for the Southern and Middle Districts of Florida, and the United States Court of Appeals for the Second Circuit.



### THOMAS CURRY

Thomas Curry is a Director at Saxena White and manages the Firm's Delaware office. He represents investors in corporate governance matters, with a particular focus on M&A litigation in the Delaware Court of Chancery.

Prior to joining Saxena White, Mr. Curry was an associate at Labaton Sucharow LLP, where he represented investors in many of the most significant and highest profile corporate governance matters to arise in recent years. Mr. Curry has particular expertise in representing public investors shortchanged by corporate sales and other M&A activity influenced by insider conflicts of interest. He has successfully represented investors in a wide variety of derivative, class, and appraisal matters challenging conflicted M&A transactions in the Delaware Court of Chancery and other jurisdictions around the United States. Mr. Curry also has significant experience advising United States-based investors seeking to protect their interests in connection with M&A activity subject to the law of foreign jurisdictions.

S
W

Mr. Curry successfully represented the lead petitioners in appraisal actions arising from Coach's acquisition of Kate Spade and General Electric's combination of its oil and gas business with Baker Hughes. He was a key member of teams that secured a $35.5 million derivative recovery in litigation arising from AGNC Investment Corp.'s internalization of its investment manager and corporate reforms valued at approximately $25 million in litigation arising from a related-party loan extended by Clear Channel Outdoor Holdings to its controlling stockholder, iHeart Communications.

Mr. Curry has been named a "Rising Star" in the field of M&A litigation by *The Legal 500* in both 2019 and 2020.

Mr. Curry began his legal career at the prominent Wilmington defense firm Morris, Nichols, Arsht & Tunnell LLP. He earned a Juris Doctor from Cornell Law School and a Bachelor of Arts from Temple University.

Mr. Curry is admitted to practice in Delaware, and the United States District Court for the District of Delaware.



### KYLA GRANT

Kyla Grant has extensive experience in federal securities class action suits, securities enforcement, and complex commercial litigation in both federal and state courts. Before joining Saxena White, Ms. Grant practiced securities litigation at two top-ranked global law firms, Shearman & Sterling LLP and WilmerHale. Ms. Grant has been a member of the litigation teams that have successfully recovered hundreds of millions of dollars on behalf of injured shareholders, including the recent $320 million derivative settlement against Wells Fargo & Company. She was also a member of the litigation team that obtained a $28 million settlement against Brixmor Property Group, Inc. Ms. Grant is currently a member of the litigation teams prosecuting significant securities fraud class actions against Patterson Companies, Inc., Perrigo Company plc, and DaVita, Inc.

Ms. Grant graduated from the University of Hawai'i at Mānoa with distinction in 2004, where she received a Bachelor of Arts degree, majoring in both English and Political Science. She received her Juris Doctor degree from the University of Virginia School of Law in 2008. While attending law school, she was a recipient of the Dean's Scholarship, was appointed as a Dillard Fellow (a role in which she worked with first year students to improve their persuasive writing skills) and was an Articles Editor for the *Virginia Journal of International Law.*

Ms. Grant is a member of the New York State Bar and the United States District Court for the Southern District of New York.



## ATTORNEYS



### MARIO ALVITE

Mario Alvite performs analysis of potential securities and shareholder rights actions. Mr. Alvite's efforts are focused on stages of litigation including case origination and pre-trial discovery. Mr. Alvite is experienced in e-discovery and project management in the corporate litigation, transactional, and regulatory areas. He has served on teams representing investors against Wilmington Trust and Rayonier Inc.

Mr. Alvite received his Bachelor of Business Administration from Florida International University. He later earned his Juris Doctor from Nova Southeastern University. He is a member of the Florida Bar, and is admitted to practice in the United States District Court for the Southern and Middle Districts of Florida.



### TAYLER BOLTON

Tayler Bolton has extensive litigation experience with a particular focus on litigation in the courts of Delaware. Ms. Bolton's practice focuses on corporate governance and fiduciary duty litigation. She also has significant experience in corporate bankruptcy and commercial litigation.

Ms. Bolton earned a Bachelor of Music (Voice) and a Bachelor of Arts (Communication) from the University of Oklahoma. She received her Juris Doctor from Emory University School of Law where she served as an editor of the Emory Corporate Governance and Accountability Review, served as the elected Conduct Court Justice of the Student Bar Association, received the Emory Woman of Excellence Award, and was inducted into the Order of Barristers.

Following graduation from law school, Ms. Bolton served as a foreign law clerk to the Honorable Hanan Melcer in the Supreme Court of the State of Israel and served as a law clerk to the Honorable Diane Clarke-Streett in the Superior Court of Delaware.

Ms. Bolton is currently active in the Delaware Barristers Association, the Richard S. Rodney Inn of Court, and the Multicultural Judges and Lawyers Section where she received the Haile L. Alford Excellence Award.

Ms. Bolton is a member of the Delaware and New York State Bars, and is admitted to practice law in the United States District Court for the District of Delaware.



### RHONDA CAVAGNARO

Rhonda Cavagnaro is Special Counsel to Saxena White and a member of the Firm's Institutional Outreach group. She brings extensive expertise in many areas of employee benefits and pension administration with nearly two decades of public fund experience. Ms. Cavagnaro frequently speaks at industry conferences to further trustee education on fiduciary issues facing institutional investors.

Ms. Cavagnaro began her legal career as an Assistant District Attorney in New York City, where she was instrumental in creating the office's General Crimes Unit, covering major crimes. As an ADA, Ms. Cavagnaro gained valuable trial experience and prosecuted hundreds of misdemeanor and felony cases.

Ms. Cavagnaro started her career serving public pensions as Assistant General Counsel at the New York City Employees' Retirement System. She then went on to become the first General Counsel to the New York City Police Pension Fund in February 2002, where she worked for over 11 years, providing advice to the Board of Trustees and 140-member staff with respect to benefits administration, fiduciary issues, employment issues, legislation, and transactional matters. Ms. Cavagnaro last served as the Assistant CEO for the Santa Barbara County Employee's Retirement System, where under the general direction of the CEO and Board of Trustees, she oversaw the day to day operations of the System.

Ms. Cavagnaro graduated with a Bachelor of Arts in Political Science and History from the University of Rochester, in Rochester, New York, and earned her Juris Doctor from the California Western School of Law in San Diego, California. She is a member of the New York and New Jersey State Bars, and is admitted to the United States District Court for the Southern and Eastern Districts of New York, and is a current member of the National Association of Public Pension Attorneys.



### SARA DILEO

Sara DiLeo has extensive experience in federal securities class action lawsuits, derivative litigation, and complex commercial litigation in both federal and state courts. Ms. DiLeo is currently part of the litigation teams prosecuting securities fraud class actions against companies such as DaVita, Inc. and Evolent Health, Inc. Recently, Ms. DiLeo was a member of the litigation team that successfully recovered a $320 million derivative settlement for shareholders of Wells Fargo & Company. She was also part of the litigation teams that obtained a $28.25 million settlement for shareholders of TrueCar, Inc., and a $50 million settlement for shareholders of HD Supply Holdings, Inc.-one of the largest securities class action settlements ever achieved in the U.S. District Court for the Northern District of Georgia. Before joining Saxena White, Ms. DiLeo practiced securities litigation for nine years at a top-ranked global law firm, Skadden, Arps, Slate, Meagher & Flom LLP.

Ms. DiLeo graduated from New York University's College of Arts & Sciences program in 2003, where she received a Bachelor of Arts degree with a double major in Political Science and Psychology. She received her Juris Doctor degree from Fordham University School of Law in 2008. While attending law school, Ms. DiLeo was an Articles Editor for the *Fordham Urban Law Journal* and interned for the Hon. Barbara Jones in the United States District Court for the Southern District of New York.

Ms. DiLeo is a member of the New York Bar.



### HANI FARAH

Hani Farah is an Attorney at Saxena White's California office. Prior to joining Saxena White, Mr. Farah practiced at a leading securities litigation law firm where he analyzed potential new cases, primarily U.S. securities class action and individual opt-outs suits, as well as international securities litigation.

Prior to joining traditional practice, Mr. Farah was the primary legal counsel for a U.S. presidential candidate. In this role, Mr. Farah researched and provided counsel on myriad issues relevant during the 2016 campaign.

Mr. Farah graduated *cum laude* from the University of California San Diego in 2011. He later graduated *cum laude* from the University of San Diego School of Law in 2015. He is a member of the California Bar, and is admitted to practice in the United States District Court for the Central District of California.





### WILLIAM FORGIONE

Prior to joining Saxena White, William Forgione served as a senior legal executive with Teachers Insurance and Annuity Association ("TIAA") and its subsidiaries for over 25 years. While at TIAA, he held a variety of leadership positions, including as Executive Vice President and General Counsel with TIAA Global Asset Management and Nuveen, a leading financial services group of companies that provides investment advice and portfolio management through TIAA and numerous investment advisors. He oversaw the legal, compliance, and corporate governance aspects associated with the organization's $900 billion investment portfolios and asset management businesses, including TIAA's general account, various separate accounts, registered and unregistered funds and institutional investment mandates.

Under Mr. Forgione's leadership, TIAA was actively involved in a number of significant investment litigation matters in order to recover the maximum amount for the benefit of its investment portfolios and the beneficial owners. These included acting as lead plaintiff in class action lawsuits, initiating proxy contests, pursuing direct actions where appropriate and asserting appraisal rights when it felt the consideration to be paid to shareholders in connection with various merger and acquisition activity involving portfolio companies was inadequate.

Mr. Forgione also served as Deputy General Counsel to TIAA, where among his many responsibilities, he acted as a strategic partner and advisor to the heads of TIAA's pension and insurance business lines. He also served as a member of TIAA's Senior Leadership Team, actively participating on a number of management committees. In addition, Mr. Forgione has valuable corporate governance experience, having advised and served on a number of Boards, including Nuveen, the Westchester Group, several foreign operating subsidiaries of TIAA, as well as various Risk Management, Investment, Asset-Liability and Audit Committees. He also has served as lead counsel on several large business acquisitions.

After graduating *summa cum laude* from Binghamton University with a B.S. in Accounting, Mr. Forgione received his J.D. degree from Boston University. Among many industry associations, he has served as President and a member of the Board of Trustees of the Association of Life Insurance Counsel, President and Trustee of the American College of Investment Counsel and Chairman of the Investment Committee of the Life Insurance Council of New York. Mr. Forgione has spoken at many industry conferences and seminars, taught undergraduate and graduate courses in Accounting and Law and has won such awards as *Charlotte Business Journal's* Corporate Counsel Award for his success in corporate law.

Prior to joining TIAA, Mr. Forgione was associated with Fried, Frank, Harris, Shriver & Jacobson LLP, and Csaplar & Bok, where he practiced in the areas of mergers and acquisitions and corporate finance. He is admitted to the Bar of the State of New York.



### DONALD GRUNEWALD

Donald Grunewald focuses on performing research for securities and derivatives litigation. Before joining Saxena White, Mr. Grunewald taught Legal Research and other legal courses at a college in New York for six years. He has prepared economic and legal research for litigation, businesses, and academics.

Mr. Grunewald earned his Bachelor of Arts in Economics, *magna cum laude*, from Haverford College in 2004. He later earned a Bachelor of Arts in Jurisprudence from Oxford University and a Master of Laws from the University of Pennsylvania Law School.

Mr. Grunewald has been a member of the New York State Bar since 2008.





## SCOTT GUARCELLO

Scott Guarcello's practice focuses on the discovery stage of litigation. With over ten years of significant complex e-discovery experience, he brings to Saxena White an expertise honed by the numerous e-discovery services and training programs that he created, led and supported while serving as a Senior Managing Attorney for a global e-discovery consulting and services provider.

Combining both discovery and technical expertise, Mr. Guarcello advises on best practices concerning information governance principles, ESI protocols, collections, processing, large-scale document reviews, production management, and related infrastructure applications. Recently, Mr. Guarcello was a member of the litigation team that successfully obtained a $320 million derivative settlement against Wells Fargo & Company. He was also part of the litigation teams that recovered a $28.25 million settlement against TrueCar, Inc., and secured a $50 million settlement against HD Supply Holdings, Inc.-one of the largest securities class action settlements ever achieved in the U.S. District Court for the Northern District of Georgia. He is currently a member of the litigation teams prosecuting securities class actions against Credit Suisse Group AG, Evolent Health, Inc., DaVita, Inc., Perrigo Company plc, and Patterson Companies.

Mr. Guarcello earned a Bachelor of Science from Stetson University and received a Juris Doctor from Florida International University where he graduated *cum laude* with a concentration in securities law. He was a regular recipient of the Dean's List Award and received the CALI Book Awards for the Complex Litigation and Corporate Tax courses. Mr. Guarcello has also received the Legal Elite Award for 2017 and 2018 and holds extensive industry certifications that span review tools, feature-specific technical applications, project management and analytics. As an active member in the e-discovery community, Mr. Guarcello has been a guest speaker for both intimate and large audiences.

Mr. Guarcello is a member of the Florida Bar.



## SCOTT KOREN

Scott Koren is an Attorney at Saxena White. Mr. Koren concentrates on new case development by performing research on potential securities class actions and new derivative and corporate governance actions. Mr. Koren's efforts are focused on beginning stages of litigation including case origination and pre-trial discovery. Additionally, Mr. Koren has served on teams representing investors against HD Supply Holdings Inc. and DaVita, Inc.

Mr. Koren received his undergraduate degree in Business Management and Entrepreneurship from the University of Arizona and received his Juris Doctor degree from Pace University School of Law.



## JONATHAN D. LAMET

Jonathan D. Lamet has extensive experience in litigating direct securities actions and derivative actions involving publicly traded companies. Mr. Lamet is currently part of the litigation teams prosecuting securities fraud class actions against companies such as Health Insurance Innovations, Inc. n/k/a Benefytt Technologies and Patterson Companies, Inc.

Before joining Saxena White, Mr. Lamet practiced commercial and civil litigation, including directors and officers liability, securities and fraud litigation, bankruptcy adversary proceedings, and class action defense for seven years at an Am-Law 100 firm, Akerman LLP.

Mr. Lamet graduated from Yeshiva University, Sy Syms School of Business in 2010, where he received his Bachelor of Science in Business Management. He received his Juris Doctor degree from University of Miami School of Law in 2013. Mr. Lamet was a member of the University of Miami Law Review. While attending law school, Mr. Lamet interned for the United States Attorney's Office, Economic Crimes Division, for the Southern District of Florida, and for the Hon. William Turnoff in the United States District Court for the Southern District of Florida.

Mr. Lamet is a member of the Florida Bar, the United States District Courts for the Southern and Middle Districts of Florida, and the United States Court of Appeals for the Eleventh Circuit.



### DOUG McKEIGE

Douglas McKeige, Counsel, brings unparalleled experience investigating, commencing and prosecuting meritorious securities fraud and corporate governance cases to Saxena White. Mr. McKeige was co-managing partner of Bernstein Litowitz Berger & Grossmann LLP, a well-known plaintiffs' firm, for many years. During his time at that firm, he spearheaded the firm's institutional investor practice and developed and led its case starting department. Utilizing his extensive knowledge of the securities markets, Mr. McKeige counseled pension funds, hedge funds, private equity firms and, most importantly, hardworking men and women saving for their retirement, on potential claims and avenues for case prosecution. Under Mr. McKeige's supervision, the firm successfully commenced and prosecuted hundreds of cases in state and federal courts throughout the country, and recovered more than $12 billion on behalf of defrauded investors, including cases involving WorldCom ($6.2 billion), Nortel Networks ($2.45 billion), Freddie Mac ($410 million), Bristol-Myers Squibb ($300 million), and Mills Corporation ($203 million).

Mr. McKeige combines at Saxena White his more than two decades of legal experience with years of knowledge as a hedge fund Managing Director, during which time he helped build two multi-billion dollar hedge funds. As a result of his hedge fund experience, Mr. McKeige has extensive experience with macroeconomic themes, company-specific opportunities and trade implementation strategies across all asset classes (equities, fixed income, foreign exchange and commodities), and with using derivatives across all major geographies. His unique perspective on the workings of the financial markets provides Saxena White's institutional clients with valuable information when considering strategies for recovering investment losses.

Mr. McKeige earned his B.A. in Economics from Tufts University, *cum laude*, and his J.D. from Tulane Law School, *magna cum laude*, Order of the Coif. Mr. McKeige was Articles Editor of the *Tulane Law Review* and is admitted to the Bar of the State of New York.



### JILL MILLER

Jill Miller focuses her practice on e-discovery, including project management and litigation support services for class actions and other complex litigation. Ms. Miller was a member of the team that secured one of the largest settlements in 2018, In re Wilmington Trust Corporation Securities Litigation ($210 million). Prior to joining Saxena White, Ms. Miller served as team lead at various law firms for discovery in large, complex class actions and mass torts in the areas of securities fraud, software technology, pharmaceutical and patent infringement.

S
W

Prior to her litigation experience, Ms. Miller was an associate at Ruden McClosky where she practiced real estate law. During her 11 years with the firm, she represented large developers of residential and commercial real estate throughout the South Florida area. Ms. Miller began her legal career as an associate in the real estate practice division of a major New Jersey law firm where she concentrated her practice on residential and commercial real estate transactions and development. She also dedicated a significant portion of her practice to casino licensing and compliance.

For the past several years, Ms. Miller has volunteered her time as a Guardian ad Litem, protecting the rights of abused and neglected children in Broward County, Florida.

Ms. Miller received her law degree from Hofstra University in New York where she was the Articles Editor of the *International Property Investment Journal*. She also interned at the United States Federal Court, Eastern District of New York during her third year of law school.

Ms. Miller is admitted to practice in Florida, and the United States District Court for the Southern District of Florida.



### DIANNE PITRE

Dianne Pitre prosecutes securities fraud, corporate governance and shareholder rights litigation on behalf of injured shareholders. Ms. Pitre has served on the litigation teams that successfully prosecuted securities fraud class actions such as *In re Wells Fargo & Company Shareholder Litigation* ($320 million settlement), *In re Rayonier Inc. Securities Litigation* ($73 million settlement), *Westchester Putnam Counties Heavy and Highway Laborers Local 60 Benefit Funds v. Brixmor Property Group, Inc. et al.* ($28 million settlement), and *In re Tower Group International, Ltd. Securities Litigation,* ($20.5 million settlement). Ms. Pitre is currently a member of the litigation teams prosecuting significant securities fraud class actions against Patterson Companies, Sinclair Broadcast Group, Novo Nordisk, and The Chemours Company.

Before joining Saxena White, Ms. Pitre was a legal intern for Jack in the Box, Inc. and Alliant Insurance Services, Inc. She worked extensively with their in-house departments, assisting in a variety of corporate, employment, and government regulation matters. Ms. Pitre was an intern for Jewish Family Service of San Diego and Housing Opportunities Collaborative, two San Diego pro bono legal organizations. Additionally, she served as a Legal Intern for the San Diego City Attorney's Office with their Advisory Division, Public Works Section. Ms. Pitre has recently been recognized as a *Super Lawyer* "Rising Star" for 2018 and 2019.

Ms. Pitre graduated from the University of California, San Diego in 2008, where she received a Bachelor of Arts degree, majoring in Political Science with a minor in Law and Society. In 2012, she received her Juris Doctor degree from the University of San Diego School of Law. While attending law school, Ms. Pitre earned various scholarships and awards, including the San Diego La Raza Lawyers Association Scholarship and Frank E. and Dimitra F. Rogozienski Scholarship for outstanding academic performance in business law courses. Her outstanding law school academic achievements culminated in two CALI Excellence for the Future Awards for receiving the top grade in her Fall 2011 International Sports Law and Entertainment Law classes. Ms. Pitre is an alumnus of Phi Delta Phi, the international legal honor society and oldest legal organization in continuous existence in the United States.

Ms. Pitre is a member of the Florida and California State Bars. She is admitted to practice before the United States District Courts for the Southern and Northern Districts of Florida and the Northern, Central, Southern, and Eastern Districts of California.





## JOSHUA SALTZMAN

Joshua Saltzman focuses his practice on securities and derivative litigation. Before joining Saxena White, Mr. Saltzman litigated investor class actions, opt-out securities actions and derivative actions at two boutique law firms in New York City. Recently, Mr. Saltzman was a member of the litigation team that obtained a $53 million derivative settlement on behalf of New Senior Investment Group, which was the largest settlement of all time in a derivative lawsuit when measured as a percentage of the company's total market capitalization. He was also a member of the litigation team that obtained a $50 million settlement on behalf of HD Supply Holdings, Inc. – one of the largest securities class action settlements ever achieved in the U.S. District Court for the Northern District of Georgia.

Additionally, Mr. Saltzman has been a member of litigation teams that have obtained numerous other substantial recoveries on behalf of investors, including cases involving American International Group ($40 million settlement on behalf of AIG employees who invested in AIG's company stock fund, representing one of the largest ERISA stock drop recoveries of all time), Cornerstone Therapeutics ($17.9 million for minority stockholders of Cornerstone Therapeutics whose shares were purchased in a controller buyout), and Petrobras (high percentage recovery on behalf of state pension system in opt-out securities action). Mr. Saltzman is currently a member of the litigation teams prosecuting securities fraud class actions against companies such as Perrigo Company plc, and Evolent Health, Inc.

Mr. Saltzman received a Bachelor of Arts degree in English from Rutgers University in 2002, and a Juris Doctor degree from Brooklyn Law School in 2011, graduating *magna cum laude*. During law school, Mr. Saltzman served as an editor on the Brooklyn Law Review, where he published a note, and interned for the Honorable Victor Marrero in the United States District Court for the Southern District of New York.

Mr. Saltzman is a member of the New York Bar, the United States District Court for the Southern District of New York, and the United States Court of Appeals for the Third Circuit.



## ADAM WARDEN

Adam Warden is involved in all of Saxena White's practice areas, including shareholder derivative actions, securities fraud litigation, and merger and acquisition litigation. During his tenure at Saxena White, Mr. Warden has been a member of the teams securing significant recoveries, including *Cumming v. Edens* (derivative settlement of $53 million for claims challenging acquisition by senior living operator New Senior Investment Group, Inc., representing more than 10% of the company's market capitalization), *In re Wells Fargo & Company Shareholder Litigation* (derivative settlement valued at $320 million, including $240 million in cash and corporate governance reforms), *In re Jefferies Group, Inc. Shareholders Litigation* (class action settlement of $70 million, one of the largest settlements in the history of the Delaware Court of Chancery), and *In re Parametric Sound Corporation Shareholders' Litigation* ($9.65 million settlement, the second largest post-merger class action settlement in Nevada state history). Mr. Warden is currently part of the litigation teams prosecuting securities fraud class actions against Credit Suisse Group AG, Health Insurance Innovations, Inc. n/k/a Benefytt Technologies, and AmTrust Financial Services, Inc.

Mr. Warden has been recognized as a *Super Lawyer* "Rising Star" in 2018, a *South Florida Legal Guide's* "Up and Comer" from 2018-2020, and a *Palm Beach Illustrated* "Top Lawyer" in 2020. Mr. Warden is also a member of Saxena White's Diversity and Social Responsibility Committee.



S
W

Mr. Warden earned his Bachelor of Arts degree from Emory University in 2001 with a double major in Political Science and Psychology. He received his Juris Doctor from the University of Miami School of Law in 2004. During law school, Mr. Warden served as the Articles Editor of the *University of Miami International and Comparative Law Review*.

Mr. Warden is a member of the Florida Bar and the District of Columbia Bar. He is admitted to the United States District Courts for the Southern, Middle, and Northern Districts of Florida.

### KATHRYN WEIDNER

Kathryn Weidner has extensive experience in prosecuting securities class actions. Ms. Weidner has obtained substantial monetary recoveries including one of the largest settlements in 2018, *In re Wilmington Trust Corporation Securities Litigation* ($210 million). She has also prosecuted numerous other class actions that resulted in significant recoveries for investors, such as *In re HD Supply Holdings, Inc.* ($50 million, and one of the largest securities class action settlements ever achieved in the U.S. District Court for the Northern District of Georgia), *In re Rayonier Securities Litigation* ($73 million), and *In re Tower Group International, Ltd. Securities Litigation* ($20.5 million).

Ms. Weidner is very involved in the community and participates in organizations such as the League of Women Voters and the Women's Foundation of Florida and is also a member of numerous professional organizations such as FAWL, NAWL, and NAPPA. Ms. Weidner is a regular contributor at conferences, publications, CLE courses, and is the Chair of Saxena White's Diversity and Social Responsibility Committee. In addition, Ms. Weidner has been recognized as a *Super Lawyer* "Rising Star" for 2017 through 2019, and as a *South Florida Legal Guide* "Up and Comer" for 2018 and 2019.

Prior to joining Saxena White, Ms. Weidner developed valuable litigation skills as a Certified Legal Intern for the Department of Homeland Security. Ms. Weidner earned a Bachelor of Business Administration from the University of Miami in 2003, with a major in Political Science. During college, she studied abroad at Oxford University, as part of an Honors program for law and politics. Ms. Weidner received her Juris Doctor from Nova Southeastern University in 2006, where she graduated *cum laude* with a concentration in International Law. While at Nova, her outstanding course work regularly earned Dean's List and Provost Honor Roll, and she was honored with CALI Book Awards for Secured Transactions and Business Planning Law. Upon graduation, Ms. Weidner was the recipient of the Larry Kalevitch Scholarship Award for exhibiting the most promise in Business and Bankruptcy law.

Ms. Weidner is a member of the Florida Bar, and the United States District Courts for the Southern and Northern Districts of Florida.



## PROFESSIONALS



### SHERRIL CHEEVERS
*Client Services Specialist*

Ms. Cheevers is a Client Services Specialist at Saxena White. She is responsible for client outreach and business development among institutional investors. Ms. Cheevers attends industry conferences and organizes events and opportunities to give back to the community.

Prior to joining Saxena White, Ms. Cheevers worked as a sales and community liaison in multiple markets. Ms. Cheevers earned her Bachelor of Science from the University of Tampa.



### MARC GROBLER
*Manager of Case Analysis*

Marc Grobler plays a key role in new case development including performing in-depth investigations into potential securities fraud class actions, derivative, and other corporate governance related actions. By using an array of financial and legal industry research tools, Mr. Grobler analyzes information that helps support the theories behind our litigation efforts. He is also responsible for protecting the financial interests of our clients by managing the Firm's portfolio monitoring services and performing complex loss and damage calculations.

Prior to joining the Firm, he served as the Senior Business Analyst in the New York office of a leading securities class action law firm and has worked within the securities litigation industry for over 15 years.

Mr. Grobler graduated *cum laude* from Tulane University's A.B. Freeman School of Business in 1997, with a concentration in Accounting. With over 20 years of overall professional financial experience, he started his career in New York at PricewaterhouseCoopers performing audits within the Financial Services Group. Prior to entering the securities litigation industry, he worked within the asset management group at Goldman Sachs where he was responsible for the financial reporting of a group of billion dollar fund-of-fund investments. Mr. Grobler also previously worked at UBS Warburg as a Financial Analyst in the investment banking division that focused on financial institutions such as banks, asset managers, insurance and start-up financial technology companies.



### CHUCK JEROLOMAN
*Senior Client Services Specialist*

Chuck Jeroloman, Senior Client Services Specialist, has been with the Firm since 2010. Mr. Jeroloman focuses on public pension clients to provide relevant educational materials, and personalized communication and service. Mr. Jeroloman is a frequent participant and speaker at state and national investor conferences, including the Georgia Public Pension Trustee Association, the Florida Public Pension Trustee Association, the National Conference on Public Employee Retirement Systems, and many more. He currently serves on the Florida Public Pension Trustees Association's Advisory Board.

Prior to joining Saxena White, Mr. Jeroloman worked in law enforcement for 28 years. He was at the Delray Beach Police Department for 23 years, and served as a homicide/robbery detective, street level narcotics



investigator, field training officer, and a member of the S.W.A.T. and Terrorists Task Force. He was a Delray Beach Police and Fire Pension Board Trustee for 14 years, five of which he served as Chairman, and was also a member of the Delray Beach Fire and Police VEBA Board. Mr. Jeroloman also spent five years as a Deputy Sheriff with the Rockland County Sheriff's Department in New York. During that time, he was a member of the Joint Terrorists Task Force with the FBI, NYPD, Rockland County Sheriff's Department. During his tenure in law enforcement, Mr. Jeroloman served for 23 years as Union Representative for the Police Benevolent Association (PBA) and Fraternal Order of Police (FOP) as Union Treasurer for PBA in N.Y from 1982-87, then for Delray Beach FOP 1988-94, and last with Delray Beach PBA from 1994-2006 with 2001-2006 as President.

Mr. Jeroloman earned his Associate Degree in Criminal Justice from Pasco-Hernando Community College. After college, Mr. Jeroloman was very active in the baseball community. He was an associate scout with the Anaheim Angels and Texas Rangers, and volunteered as a youth baseball coach through high school levels. Mr. Jeroloman also served as a director vice president for the Okeeheelee Athletic Association, and was Founding Chairman to Wellington High Baseball Booster Association and Palm Beach Central Baseball Booster Association.



### SAM JONES
*Financial Analyst*

Sam Jones is a Financial Analyst with Saxena White's California office. Prior to joining Saxena White, Mr. Jones worked for over ten years as a financial analyst at a leading securities litigation law firm where he specialized in developing techniques for data modeling and visualization. He worked on numerous landmark securities cases including *In re Bank of America Securities Litigation* ($2.425 billion recovery); *In re Lehman Brothers Equity/Debt Securities Litigation* ($735 million recovery); *In re Wachovia Corp. Securities Litigation (*$627 million recovery); and *Merrill Lynch Mortgage Pass-Through Litigation* ($315 million recovery).

In the fallout of the housing and credit crisis, Sam pioneered techniques in data management and analysis for the firm's then-developing RMBS and structured finance practice. He has worked on numerous individual and class action RMBS cases against most of the major Wall Street banks.

Sam graduated from Vassar College in 1996, where he studied anthropology with a focus on economics. After graduation he worked extensively as a field archaeologist throughout the U.S. and in Israel before transitioning to a career in securities litigation and financial analysis.



### STEFANIE LEVERETTE
*Manager of Client Services*

Stefanie Leverette is Saxena White's Manager of Client Services. In this role, she manages the Firm's client outreach and developmental programs and oversees the Firm's portfolio monitoring program. Since joining Saxena White in 2008, Ms. Leverette has coordinated the Firm's presence at industry conferences attended by representatives of various institutional clients throughout the United States. In addition, Ms. Leverette is responsible for the timely dissemination of all reports, notifications and all new cases and class action settlements that may have an impact to an investment portfolio. Ms. Leverette's main role is acting as the liaison between institutional clients and the Firm.



Ms. Leverette is a member of the Firm's Diversity and Social Responsibility Committee and a member of the Women's Initiative Subcommittee. She is also a member of the Firm's Case Starting Team, providing institutional clients with important information regarding potential litigation.

Ms. Leverette earned her undergraduate degree in Business Administration with a focus on Management from the University of Central Florida, and her Master's in Business Administration with a focus on International Business at Florida Atlantic University.

### JEROME PONTRELLI
*Chief of Investigations*

With over two decades of law enforcement experience, including 12 years with the Federal Bureau of Investigation, Jerome Pontrelli serves as Saxena White's Chief of Investigations. He oversees all of the Firm's efforts to detect, investigate, and prosecute securities cases. Prior to joining Saxena White, Mr. Pontrellli was Director of Investigations at Labaton Sucharow LLP, where his cases resulted in monetary relief for harmed investors in excess of $4 billion. He was also part of the firm's initial SEC Whistleblower Program.

Over the years, in the FBI and in private practice, Mr. Pontrelli has led over one hundred investigations of possible securities violations. Throughout his award-winning career, he has developed extensive experience in securities-related matters. Mr. Pontrelli began his career with the FBI in Covert Special Operations, and was later assigned to the FBI/NYPD Joint Bank Robbery Task Force. Following the September 11th attacks, Mr. Pontrelli was assigned to the Joint Terrorism Task Force. He later transferred to the White Collar Crime Heath Care Fraud Unit. Mr. Pontrelli has an extensive network of high-level relationships throughout the state and federal law enforcement communities.

Mr. Pontrelli received a Bachelor of Arts degree from St. Thomas Aquinas College and a Master of Arts degree from Seton Hall University. He graduated from the FBI Academy in 1996.



### RIAN WROBLEWSKI
*Head of Investigative Intelligence*

With over eighteen years of intelligence gathering experience, Rian Wroblewski serves as Saxena White's Head of Investigative Intelligence. He oversees all of the Firm's efforts to generate proprietary sources of intelligence using advanced technological tools, systems, and methods. Prior to joining Saxena White, Mr. Wroblewski was Senior Manager of Investigative Intelligence at Labaton Sucharow LLP, where his cases resulted in monetary relief for harmed investors in excess of $4 billion. He was also part of the firm's initial SEC Whistleblower Program.

Over the years, Mr. Wroblewski has provided expert commentary to The Washington Post, Investor's Business Daily, Canadian Broadcasting Corporation, and other news outlets. Mr. Wroblewski has provided consulting to database providers, eDiscovery vendors, corporate boards, and government entities throughout the world. He has extensive pro bono experience assisting political asylum seekers and targets of honor killings, working alongside the FBI and Department of State. Mr. Wroblewski is an active member of the FBI's InfraGard Program. He has an extensive network of high-level relationships within the global intelligence community.

Mr. Wroblewski received a Bachelor of Science degree from John Jay College of Criminal Justice.



## STAFF ATTORNEYS



### DENISE BRYAN

With over 20 years of overall professional experience, Ms. Bryan began her legal career in New York at Prudential Securities. While at Prudential Securities, she reviewed claims alleging fraudulent practices and determined settlements in accordance with the guidelines of the Limited Partnership Settlement Fund as established by the Securities and Exchange Commission.

Ms. Bryan gained experience in the insurance industry as an attorney in the Environmental Claims Department of American International Group, and as an underwriter focusing on Professional Liability coverage for financial institutions including banks, insurance companies, and broker dealers. She was an Assistant Vice President at Marsh Inc. in New York and Chicago, where she was an insurance broker focused on providing Professional Liability coverage to Fortune 500 companies.

Ms. Bryan has been working in the area of e-discovery since 2007. She supervised teams of attorneys conducting large scale document reviews at a consulting group specializing in providing litigation support services to national and international companies. Ms. Bryan is a member of the New York Bar.



### REBECCA NILSEN

Ms. Nilsen is experienced in e-discovery and litigation support services for class actions and other complex litigation. She has over 13 years of litigation experience in matters related to Federal Trade Commission, U.S Securities and Exchange Commission, Fair Debt Collection Practices and Consumer Financial Protection Bureau.

Ms. Nilsen graduated cum laude from Florida Atlantic University where she received a Bachelor of Arts with a major in Criminal Justice. In 2002, she received her Juris Doctorate degree from Nova Southeastern University, Shepard Broad College of Law. While attending law school, Ms. Nilsen interned in the Pro Bono Honor Program earning the Gold Award for 2001 – 2002. Ms. Nilsen is a member of the Florida Bar, and is admitted to practice before the United States District Courts for the Southern and Northern Districts of Florida.



### CHRISTINE SCIARRINO

Christine Sciarrino has extensive experience in e-discovery as a project attorney for class action securities fraud litigation. Her legal practice has focused primarily on early resolution of matters, with an objective toward achieving optimum results for litigating parties through superb pre-trial preparation and informed decision making. As an experienced practitioner for plaintiffs who have been wronged by financial institutions and other entities, Ms. Sciarrino has most recently dedicated her expertise exclusively to this area.

Ms. Sciarrino graduated from Florida Atlantic University in 1988, where she received a Bachelor of Arts degree with a major in History. In 1992, she received her Juris Doctor from the St. Thomas University School of Law. Ms. Sciarrino also earned a Master of Fine Arts in Creative Writing at Florida Atlantic University in 2004. Ms. Sciarrino is a member of the Florida Bar.

S
W

## HARRIET ATSEGBUA

Ms. Atsegbua received her Juris Doctor from the Southern Methodist University Dedman School of Law, Master of Arts from the University of Denver, Josef Korbel School of International Studies, and her Bachelor of Science from Emory University. Ms. Atsegbua is a member of the New York and Texas Bars.

## ATHMA BIRJU

Mr. Birju received his Juris Doctor from Western Michigan University Thomas M. Cooley Law School and his Bachelor of Science from Nova Southeastern University Farquhar College of Arts and Sciences. Mr. Birju is a member of the Florida Bar.

## VALERIE KANNER BONK

Ms. Bonk received her Juris Doctor from Catholic University of America Columbus School of Law and her Bachelor of Arts from University of Maryland. Ms. Bonk is a member of the Maryland Bar.

## PAUL BURNS

Mr. Burns received his Juris Doctor from St. Thomas University School of Law and his Bachelor of Science from University of Central Florida. Mr. Burns is member of the Florida Bar.

## CHRISTOPHER DONNELLY

Mr. Donnelly received his Juris Doctor from University of Pennsylvania Law School, his LL.M from New York University and his Bachelor of Arts from Rutgers University. Mr. Donnelly is a member of the Florida, California, New Jersey, and New York Bars, and he is admitted to practice before the United States District Court for the Southern District of Florida.

## MICHELE FASSBERG

Ms. Fassberg received her Juris Doctor from St. Thomas University School of Law and her Bachelor of Arts from Florida International University. Ms. Fassberg is a member of the Florida Bar.

## NINA HAKOUN

Ms. Hakoun received her Juris Doctor from Nova Southeastern University and her Bachelor of Arts from Florida International University. Ms. Hakoun is a member of the Florida Bar.

## TARA HEYDT

Ms. Heydt received her Juris Doctor from UCLA School of Law and her Bachelor of Arts from the University of Pennsylvania. Ms. Heydt is a member of the Florida Bar.

## RYAN JOSEPH

Mr. Joseph received his Juris Doctor from New York Law School and his Bachelor of Science from Boston University. Mr. Joseph is a member of the Florida Bar.

## MAX KOTELEVETS

Mr. Kotelevets received his Juris Doctor from New York Law School and his Bachelor of Arts from Stony Brook University. Mr. Kotelevets is a member of the New York, Florida and New Jersey Bars, and is admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York.

## MAURI LEVY

Ms. Levy received her Juris Doctor Degree from Villanova University School of Law and her Bachelor of General Arts and Sciences from Pennsylvania State University. Ms. Levy is a member of the Pennsylvania Bar and is admitted to practice before the United States District Court for the Eastern District of Pennsylvania.

## LESLIE MARTEY

Ms. Martey received her Juris Doctor from Fordham University School of Law and her Bachelor of Arts from C.W. Post College. Ms. Martey is a member of the New York Bar.

## ELISABETH PORTER

Ms. Porter received her Juris Doctor from University of Miami School of Law, her Master of Arts from Hunter College-CUNY, and her Bachelor of Arts from Columbia College. Ms. Porter is a member of the Florida Bar and is admitted to practice before the United States Supreme Court and the United States District Court for the Southern District of Florida.

## ZERIN TAHER

Ms. Taher received her Juris Doctor from Western Michigan University, and her Masters of Business Administration and Bachelor of Science from Nova Southeastern University. Ms. Taher is a member of the Florida Bar.

## KAREN THOMPSON

Karen Thompson received her Juris Doctor from St. Thomas University School of Law and her Bachelor of Arts from the University of Bridgeport. Ms. Thompson is a member of the Florida Bar.

## COURTNEY WEISHOLTZ

Ms. Weisholtz received her Juris Doctor from Nova Southeastern University and her Bachelor of Arts from Northern Illinois University. She is a member of the Florida Bar, and is admitted to practice before the United States District Court for the Southern District of Florida.

## OFFICES

### FLORIDA
7777 Glades Road, Suite 300
Boca Raton, FL 33434
P: 561.394.3399
F: 561.394.3382

### NEW YORK
10 Bank Street, 8th Floor
White Plains, NY 10606
P: 914.437.8551
F: 888.631.3611

### CALIFORNIA
12750 High Bluff Drive, Suite 475
San Diego, CA 92130
P: 858.997.0860
F: 858.369.0096

### DELAWARE
1000 N West Street
Suite 1200, Office 1265
Wilmington, DE 19801
P: 302.485.0483
F: 888.331.1606

www.saxenawhite.com

**EXHIBIT 4**


*Plymouth County Retirement System v. GTT Communications, Inc., et al.*
No. 1:19-cv-00982-CMH-MSN (E.D. Va.)

## TASK BREAKDOWN

### SHAREHOLDERS

**MAYA SAXENA** (77.25 hours): Ms. Saxena, one of the Firm's founding shareholders, was actively involved in litigation strategy and participated in high-level decision-making on case development, direction, and management of the Action since its inception.

**JOSEPH E. WHITE, III** (101.5 hours): Mr. White, one of the Firm's founding shareholders, was actively involved in strategy and oversight of the litigation since its inception. Mr. White participated in case planning, tactical discussions, and complex decision making. He was also involved in reviewing and editing important briefing. Mr. White actively participated in both mediation sessions and principally responsible for negotiations of the Settlement.

### DIRECTORS

**STEVEN B. SINGER** (181.75 hours): Mr. Singer, Director of Litigation at Saxena White, was one of the lead attorneys on the case from its inception. He helped direct the investigations for both amended complaints and helped review, edit, and finalize each of those documents, and edited Plaintiff's briefing in opposition to Defendants' motion to dismiss and Plaintiff's briefing in support of its motion for class certification, and also participated in decisions on case management and strategy. He developed negotiation strategies in advance of the mediation, reviewed and edited Plaintiff's mediation submissions, actively participated in the parties' mediation sessions, and actively supervised the litigation and settlement process.

**DAVID R. KAPLAN** (35.25 hours): Mr. Kaplan, a Director at Saxena White, was primarily responsible for the initial investigation of the case, analysis of its merits, and the drafting of the initial complaint in the Action. Mr. Kaplan had primary responsibility for coordinating the research, drafting, and editing of the Lead Plaintiff motion briefing, which included gathering all the supporting papers, as well as maintaining client involvement.

**LESTER HOOKER** (388 hours): Mr. Hooker, a Director at Saxena White, was primarily responsible for actively managing and supervising the day-to-day litigation of the Action, as well as communicating regularly with Defendants and Lead Plaintiff. Mr. Hooker was heavily involved in all aspects of the investigation of Plaintiff's Amended Complaint, including financial analysis of the Company, development of legal theories and allegations, and interviews with confidential witnesses. Mr. Hooker coordinated the research, drafting, and finalizing of all major briefing in the case, including Plaintiff's opposition to Defendants' motion to dismiss, Plaintiff's motion for class certification, the Second Amended Complaint, and all other documents filed with the Court. Mr. Hooker prepared the Lead Plaintiff to sit for deposition in connection with

class certification. Mr. Hooker was actively involved in reviewing key documents produced by Defendants and preparing all mediation submissions.  He also attended and participated in both mediation sessions and helped to direct the negotiation process on behalf of Lead Plaintiff and the Class. Mr. Hooker also oversaw the drafting of the stipulation, plan of allocation, motion for preliminary approval of the settlement, motion for final approval of the settlement, and all other supporting documents. Mr. Hooker contributed to overseeing the notice and claims process.

**KYLA (STEWART) GRANT** (632.5 hours): Ms. Grant, a Director at Saxena White, played a significant role in formulating Plaintiff's theories of the case, including by participating in Plaintiff's investigation and drafting of the Amended Complaint. She also led the research and drafting of Plaintiff's opposition to Defendants' motion to dismiss. Ms. Grant commenced and actively participated in the discovery process, including drafting and editing discovery requests and search proposals, participating in meet-and-confers, drafting correspondence, and analyzing key documents.  Ms. Grant also prepared legal research and briefing for the motion for leave to file the Second Amended Complaint. Ms. Grant also helped draft and review all of Plaintiff's mediation submissions and attended and participated in the mediation session.

### ATTORNEYS

**MARIO ALVITE** (107.5 hours) Mr. Alvite was involved in helping to formulate and execute initial case strategies relating to lead plaintiff appointment and representation, including investigating and drafting the initial complaint and researching and drafting Plaintiff's motion for appointment as Lead Plaintiff.

**DIANNE (ANDERSON) PITRE** (722.5 hours): Ms. Pitre was significantly involved in various aspects of the litigation, including the investigation and drafting of the amended complaint, and the research and drafting of Plaintiff's opposition to the motion to dismiss and motion for class certification.  Ms. Pitre conducted research and drafted memoranda on several legal issues that arose throughout the litigation, and was involved in discovery efforts, including reviewing and drafting Lead Plaintiff's initial disclosures, Lead Plaintiff's responses to Defendants' discovery requests and set of interrogatories, Lead Plaintiff's initial search term and custodian proposals, and discovery requests to Defendants.  In addition, Ms. Pitre was instrumental in researching, drafting, and editing of documents relating to the Settlement, including the Stipulation, motion for preliminary approval, motion for final approval, and all other supporting documents.

**SARA DILEO** (782.75 hours): Ms. DiLeo was actively involved in directing and overseeing the discovery process for the Action, including drafting and editing discovery requests and search proposals, participating in meet-and-confers, and drafting correspondence.  Ms. DiLeo was primarily responsible for supervising the review and analysis of documents produced by Defendants and a third party, including by conducting weekly meetings with the team of staff attorneys to discuss the contents of relevant documents and to provide feedback necessary to better guide the quality of the review.  She also worked on Plaintiff's motion for class certification.  Ms. DiLeo spent a substantial amount of time working closely with all of Plaintiff's experts in the Action.  Ms. DiLeo prepared Plaintiff's deponent list, managed the document review team during the deposition preparation process for anticipated depositions, and reviewed multiple deposition preparation memoranda. She also led the research and drafting of

the Second Amended Complaint. Ms. DiLeo also helped draft Plaintiff's mediation submissions. Finally, Ms. DiLeo assisted in drafting Plaintiff's briefing and supporting documents in support of preliminary approval of the Settlement.

**SCOTT GUARCELLO**: (445.5 hours) Mr. Guarcello oversaw the e-discovery process and was primarily responsible throughout the case for administering the document review database and related Technology Assisted Review ("TAR") applications, and developing and coordinating discovery management and document review practices. Mr. Guarcello was also involved in the Parties' discovery efforts, including several meet-and-confer meetings and correspondence with Defendants and third parties. He drafted, or contributed as a drafting team member, the ESI protocol, protective order, client and third-party litigation holds, initial disclosures, discovery requests and related responses to Defendants, and assisted with drafting the document review protocol. Additionally, Mr. Guarcello managed the collection, review, and production of Plaintiff's documents and assisted with the preparation of Plaintiff's deposition.

**DONALD F. GRUNEWALD** (830.75 hours): Mr. Grunewald performed significant legal and in-depth factual research, and drafted memoranda on multiple issues and topics arising during the litigation. He principally assisted Mr. Hooker and Ms. DiLeo on all aspects of the case following the commencement of discovery. Mr. Grunewald assisted in managing staff attorney discovery efforts by conducting a second-level review, attended weekly meetings with the team of staff attorneys, helped to draft Plaintiff's motion for class certification, participated in meet-and-confers with Defense counsel, worked directly with all of Plaintiff's experts, assisted in the research and drafting of the Second Amended Complaint, and reviewed deposition preparation memoranda. Mr. Grunewald was instrumental in finding key documents for use in Plaintiff's supplemental mediation submissions and assisted in drafting Plaintiff's mediation submissions. Additionally, Mr. Grunewald contributed to the drafting and editing of all documentation relating to the Settlement, including the motion for preliminary approval, the motion for final approval, and all other supporting documents.

**JONATHAN LAMET** (144.5 hours): Mr. Lamet participated in the discovery stage of the litigation, including by conducting a second-level review of all documents produced, participating in weekly meetings with staff attorneys, and undertaking key research on the accounting allegations for the Second Amended Complaint. Mr. Lamet was also instrumental in locating numerous documents for use in Plaintiff's mediation submissions and contributed to the drafting and editing of these submissions.

**JILL (SCHORR) MILLER** (328.25 hours): Ms. Miller managed and oversaw the document review process and was primarily responsible throughout the case for managing the work of the staff attorneys in the Action, including by supervising the preparation of the document review protocol, formulating document review strategy and procedures, developing quality control processes, and coordinating discovery-related tasks, including deposition preparations. Ms. Miller was actively involved in preparing weekly team meetings to discuss key documents and analyze key issues in the case and providing quality feedback to review team members to better guide the review.

**FEI-LU QIAN** (156.5 hours) Mr. Qian was involved in helping to formulate and execute initial case strategies relating to lead plaintiff appointment and representation, including investigating and drafting the initial complaint and the researching and drafting of Plaintiff's motion for appointment as Lead Plaintiff.

**KATHRYN WEIDNER** (97.25 hours): Ms. Weidner was heavily involved in the discovery stage of the litigation. Ms. Weidner facilitated the collection and review of Plaintiff's productions to ensure compliance with requests and ESI protocol. In addition, Ms. Weidner reviewed Plaintiff's privilege log and prepared for Plaintiff's depositions.

## STAFF ATTORNEYS

**CHRISTINE SCIARRINO** (10 hours): Ms. Sciarrino assisted with the preparation of mediation briefs. She also kept the team apprised of relevant case developments.

**ATHMA BIRJU** (481 hours): In addition to reviewing Defendants' productions and participating in weekly team meetings, Mr. Birju was part of a team that prepared for the depositions of certain witnesses.

**BILLIE TARNOVE** (170 hours): Ms. Tarnove reviewed Defendants' productions and participated in weekly team meetings.

**CHRISTIAN VAZQUEZ** (152.5 hours): In addition to reviewing Defendants' productions and participating in weekly team meetings, Mr. Vazquez researched and drafted biographies of potential deponents.

**CRAIG WALENTA** (341.5 hours) In addition to reviewing Defendants' productions and participating in weekly team meetings, Mr. Walenta was part of a team that prepared for the depositions of certain witnesses.

**ELISABETH PORTER** (629.5 hours): In addition to reviewing Defendants' productions and participating in weekly team meetings, Ms. Porter was part of a team that prepared for the depositions of certain witnesses. She also performed legal research and drafted memoranda on discovery issues arising during the litigation and on issues relating to final approval of the settlement.

**MARJORIE PERALTA** (615.75 hours): In addition to reviewing Defendants' productions and participating in weekly team meetings, Ms. Peralta researched and drafted biographies of potential deponents, performed redactions and was part of a team that prepared for the depositions of certain witnesses.

**MATT ANDERSON** (170.75 hours): In addition to reviewing the Defendants' productions and participating in weekly team meetings, Mr. Anderson researched and drafted biographies for potential deponents.

**MAURI LYNN LEVY** (600 hours): In addition to reviewing the Defendants' productions and participating in weekly team meetings, Ms. Levy researched and drafted biographies for potential deponents and was part of a team that prepared for the depositions of certain witnesses.

**MICHELE FASSBERG** (18.75 hours): Ms. Fassberg assisted with the preparation of the amended complaint and Lead Plaintiff's responses and objections to Defendants' first set of requests for the production of documents.

**RICHARD STEELE** (172 hours): In addition to reviewing the Defendants' productions and participating in weekly team meetings, Mr. Steele researched and drafted biographies for potential deponents and gathered other facts to aid in the team's litigation efforts.

**RYAN JOSEPH** (100.25 hours): Mr. Joseph drafted Plaintiff's initial disclosures, performed significant legal research and drafted memoranda on various legal issues arising during the course of the litigation.

**TARA HEYDT** (797.75 hours): In addition to reviewing the document productions and participating in weekly team meetings, Ms. Heydt was an integral part of the document review process; contributed to the preparation of key employee biographies; assisted with drafting the document review coding protocol; prepared weekly hot document spreadsheets for lead attorneys; compiled and maintained a questions and answers log; led the second-level review team; and served as deposition preparation team lead for the depositions of certain witnesses. She also performed legal research and drafted memoranda on various legal issues arising during the litigation.

**TIMOTHY ODRONIEC** (487.5 hours): In addition to reviewing the Defendants' productions and participating in weekly team meetings, Mr. Odroniec was part of a team that prepared for the depositions of certain witnesses.

**VICTORIA COOK** (278.5 hours): In addition to reviewing the Defendants' productions and participating in weekly team meetings, Ms. Cook was part of a team that prepared for the depositions of certain witnesses.

**ZEETA NANAN** (188 hours): Ms. Nanan reviewed the Defendants' productions and participated in weekly team meetings.

## FINANCIAL ANALYSTS

**MARC D. GROBLER** (83 hours): Mr. Grobler assisted in developing the theories underlying Plaintiff's initial complaint. He performed in-depth investigations into and analysis of loss causation, the appropriate length of the class period, and damages.

**SAM JONES** (24.5 hours): Mr. Jones assisted in developing the theories underlying Plaintiff's initial complaint. He performed in-depth investigations into and analysis of loss causation and damages. Mr. Jones provided financial analysis as needed on a rolling basis during litigation.

## CLIENT SERVICES

**STEFANIE LEVERETTE** (55.25 hours)**:** Ms. Leverette is Saxena White's Manager of Client Services. In this role, she corresponded extensively with Lead Plaintiff regarding the amended complaint, declarations, and coordinated discovery efforts regarding Lead Plaintiff's production of documents in response to Defendants' document requests.

## PARALEGALS

**CHARLENE WALLACE** (50.5 hours): Ms. Wallace was a litigation paralegal at Saxena White. In that role, she performed work in the case, including monitoring the news and related case dockets to keep the team apprised of relevant developments and maintaining physical and electronic case materials (including discovery).

**BRANDON SMITH** (237.75 hours): Mr. Smith assisted the lead attorneys with many aspects of the case, including proof reading, cite checking and finalizing most of the documents filed with the Court. He prepared exhibits for mediation submissions, assisted with the preparation of a third party subpoena, reviewed Lead Plaintiff's requests for production of documents and responses to interrogatories, and addressed service of process issues. He also conducted legal research to assist in the preparation of the Amended Complaint and briefing on Defendants' motion to dismiss and Lead Plaintiff's motion for class certification. Mr. Smith also reviewed local rules regarding permissible deposition objections, witness instructions and other discovery matters.

**FABRICIA RESENDE** (18.75 hours): Ms. Resende was a litigation paralegal at Saxena White. While with the firm, she kept the team informed about case deadlines, transcribed handwritten documents and assisted in the preparation of pro hac vice motions.

## IN-HOUSE INVESTIGATORS

**JEROME PONTRELLI** (114.75 hours): Mr. Pontrelli, Chief of Investigations for Saxena White, from the date of the commencement of his employment at the firm, was primarily responsible for locating and communicating with confidential witnesses and advising the lead attorneys of the facts garnered from such communications, as well as coordinating with outside investigator Quest Research & Investigations LLC.

**RIAN WROBLEWSKI** (67 hours); Mr. Wroblewski, Head of Investigative Intelligence for Saxena White, was responsible for locating potential confidential witnesses.

**EXHIBIT 5**

*Plymouth County Retirement System v. GTT Communications, Inc., et al.*
No. 1:19-cv-00982-CMH-MSN (E.D. Va.)

**<u>TIMEKEEPER BIOGRAPHIES</u>**

**<u>SHAREHOLDERS</u>**

**MAYA SAXENA**, co-founder of Saxena White P.A., has been practicing exclusively in the securities litigation field for over 20 years, representing institutional investors in shareholder actions involving breaches of fiduciary duty and violations of the federal securities laws. Prior to forming Saxena White, Ms. Saxena served as the Managing Partner of the Florida office of one of the nation's largest securities litigation firms, successfully directing numerous high-profile securities cases. Ms. Saxena gained valuable trial experience before entering private practice while employed as an Assistant Attorney General in Ft. Lauderdale, Florida. During her time as an Assistant Attorney General, Ms. Saxena represented the State of Florida in civil cases at the appellate and trial level and prepared amicus curiae briefs in support of state policies at issue in state and federal courts. In addition, Ms. Saxena represented the Florida Highway Patrol and other law enforcement agencies in civil forfeiture trials.

Ms. Saxena has been instrumental in recovering nearly a billion dollars on behalf of investors. Recently, Ms. Saxena played a key role in obtaining a $320 million settlement against Wells Fargo & Company. The settlement includes a $240 million cash payment from Defendants' insurers-representing the largest insurance-funded monetary component of any shareholder derivative settlement by over $100 million. Ms. Saxena also led the litigation team that settled against Wilmington Trust for $210 million, one of the largest settlements in 2018. Other prominent settlements include: Rayonier, Inc. ($73 million settlement), HD Supply Holdings Inc. ($50 million recovery), SIRVA, Inc. ($53.3 million settlement), Aracruz Celulose ($37.5 million settlement), and Sunbeam (settled with Arthur Andersen LLP for $110 million-one of the largest settlements ever with an accounting firm-and a $15 million personal contribution from former CEO Al Dunlap).

Ms. Saxena is a frequent speaker at educational forums involving public pension funds and advises public and multi-employer pension funds on how to address fraud-related investment losses. She is an active member of the National Association of Public Pension Attorneys ("NAPPA") and co-chairs its Securities Litigation Committee. As part of her professional endeavors, Ms. Saxena writes numerous articles on protecting shareholder rights, and has worked closely with other NAPPA members to author, update, and publish a white paper on post-Morrison International Securities Litigation.

Ms. Saxena has been recognized in the South Florida Business Journal's "Best of the Bar" as one of the top lawyers in South Florida, and has been selected to the Florida Super Lawyers list for ten consecutive years in a row. Ms. Saxena was also selected by her peers for inclusion in The Best Lawyers in America® four years in a row, as well as one of Florida's "Legal Elite" by

Florida Trend magazine.  Recently, Ms. Saxena was named a "500 Leading Plaintiff Financial Lawyer" by Lawdragon.

EDUCATION: Syracuse University, B.A., *summa cum laude*, 1993. Pepperdine University School of Law, J.D., 1996.

BAR ADMISSIONS: Florida; United States District Courts for the Southern and Middle Districts of Florida; Second, Fourth, Fifth, Ninth, and Eleventh Circuit Courts of Appeals; and United States Supreme Court.

**JOSEPH E. WHITE, III**, co-founder of Saxena White P.A., has represented shareholders as lead counsel in major securities fraud class actions and derivative actions for nearly 20 years.  He has represented lead and representative plaintiffs in front-page cases, including actions against Bank of America, Lehman Brothers and Washington Mutual.  He has successfully settled cases yielding over one billion dollars against numerous publicly traded companies, including cases against Rayonier, Inc. ($73 million), SIRVA, Inc. ($53.3 million), HD Supply Holdings Inc. ($50 million recovery), and one of the largest settlements in 2018, Wilmington Trust ($210 million).  Mr. White has also developed an expertise in litigating precedent-setting cases against foreign publicly traded companies, and settled two cases involving Brazilian corporations: Sadia, Inc. ($27 million) and Aracruz Celulose ($37.5 million).

Mr. White has also helped achieve meaningful corporate governance and monetary recoveries for shareholders in merger related and derivative lawsuits.  Recently, Mr. White played an instrumental role in obtaining a $320 million settlement in *In re Wells Fargo & Company Shareholder Litigation*.  The settlement includes a $240 million cash payment from Defendants' insurers-representing the largest insurance-funded monetary component of any shareholder derivative settlement by over $100 million.  In *In re Clear Channel Outdoor Holdings Derivative Litigation*, Mr. White's efforts obtained repayment of a $200 million loan from Outdoor's parent which was then paid as a special dividend to Outdoor shareholders.  Mr. White regularly lectures on topics of interest to pension trustees, and advises municipal, state, and international institutional investors on instituting effective systems to monitor and prosecute securities and related litigation.

Mr. White has been recognized by Palm Beach Illustrated as a "Top Lawyer," and is a current Lawyers of Distinction Certified Member.  He was also named a Florida's "Legal Elite" by Florida Trend magazine.  Recently, Mr. White was named a "500 Leading Plaintiff Financial Lawyer" by Lawdragon.

EDUCATION: Tufts University, B.A., 1996. Suffolk University School of Law, J.D., 2000.

BAR ADMISSIONS: Massachusetts; Florida; New York; Pennsylvania; United States District Courts for the Southern, Middle, and Northern Districts of Florida; United States District Courts for the Southern District of New York and the District of Massachusetts; United States Supreme Court; United States Circuit Courts of Appeal for the First, Second, and Eleventh Circuits.

## DIRECTORS

**STEVEN B. SINGER** is a Director at Saxena White P.A. and oversees the Firm's securities litigation practice.  Prior to joining the Firm, Mr. Singer was employed for more than 20 years at Bernstein Litowitz Berger & Grossmann LLP, a well-known plaintiffs' firm, where he served as a senior partner and member of the firm's management committee.

During his career Mr. Singer has been the lead partner responsible for prosecuting many of the most significant and high-profile securities cases in the country, which collectively have recovered billions of dollars for investors.  He led the litigation against Bank of America relating to its acquisition of Merrill Lynch, which resulted in a landmark settlement shortly before trial ($2.43 billion), one of the largest recoveries in history.  Mr. Singer's work on that case was the subject of extensive media coverage, including numerous articles published in *The New York Times*.  He also has substantial trial experience and was one of the lead trial lawyers on the *WorldCom Securities Litigation* ($6 billion settlement) after a four-week jury trial.  Recently, Mr. Singer led the litigation team that successfully recovered $320 million against Wells Fargo & Company.  The settlement includes a $240 million cash payment from Defendants' insurers-representing the largest insurance-funded monetary component of any shareholder derivative settlement by over $100 million.

In addition, Mr. Singer has been lead counsel in numerous other actions that have resulted in substantial settlements, including cases involving Citigroup Inc. ($730 million, representing the second largest recovery in a case brought on behalf of bond purchasers), Lucent Technologies ($675 million), Mills Corp. ($203 million), WellCare Health Plans ($200 million), Satyam Computer Services ($150 million), Biovail Corp. ($138 million), Bank of New York Mellon ($180 million), JP Morgan Chase ($150 million), and one of the largest settlements in 2018, Wilmington Trust ($210 million).

At Saxena White, Mr. Singer serves as lead counsel in many highly significant securities matters, including class actions involving The Chemours Company and Novo Nordisk.

Mr. Singer has been consistently recognized by industry observers for his legal excellence and achievements.  He has been selected by *Lawdragon* magazine as one of the "500 Leading Lawyers in America," by *Benchmark Plaintiff* as a "Litigation Star," and by the *Legal 500 US Guide* as one of the "Leading Lawyers" in securities litigation — one of only seven plaintiffs' attorneys so recognized.  Recently, Mr. Singer was named a "500 Leading Plaintiff Financial Lawyer" by *Lawdragon*.

EDUCATION: Duke University, B.A., *cum laude*, 1988; Northwestern University School of Law, J.D., 1991.

BAR ADMISSIONS: New York; U.S. District Court, Southern and Eastern Districts of New York; U.S. Court of Appeals, Second Circuit; U.S. District Court, District of Connecticut; U.S. District Court, District of Colorado; U.S. District Court, Northern District of Illinois.

**DAVID R. KAPLAN** is a Director at Saxena White and manages the Firm's California office. Mr. Kaplan has over fifteen years of experience in the field of securities and shareholder litigation. He has helped investors achieve hundreds of millions of dollars in recoveries in federal and state courts nationwide, including in class actions, direct "opt out" actions, and shareholder derivative litigation.

Prior to joining Saxena White, Mr. Kaplan was a partner at Bernstein Litowitz Berger & Grossman LLP, where he co-chaired its direct-action practice, and counseled institutional investor clients on potential legal claims as a member of the firm's new matters department. Before that, Mr. Kaplan was a senior associate at Irell & Manella LLP, where he handled a variety of high-stakes business disputes and complex litigation matters.

A large part of Mr. Kaplan's day-to-day practice involves advising mutual funds, insurance companies, pension funds, hedge funds, and other institutional asset managers on whether to remain passive participants in securities class actions or opt out to maximize, accelerate, and protect their securities fraud recoveries. Most recently, Mr. Kaplan represented prominent institutional investor opt out groups in New York, New Jersey, Connecticut, and Texas federal courts. Mr. Kaplan has also successfully represented institutional investors in opt out actions in California federal and state courts.

Mr. Kaplan also has extensive experience advising institutional clients on pursuing securities fraud recoveries in international jurisdictions. His work in this area includes virtually all countries in which shareholder collective actions are authorized by law, including Canada, Australia, England, the Netherlands, Germany, Italy, France, Japan, Israel, and Brazil.

Mr. Kaplan has authored multiple articles relating to class actions and the federal securities laws, which have been published in *The National Law Journal*, *The Daily Journal*, *Law360*, *Pensions & Investments*, and *The NAPPA Report*, among other publications. Mr. Kaplan is an editor of the *American Bar Association's* Class Actions and Derivative Suits Committee's Newsletter. For his achievements, Mr. Kaplan has been selected as a "Rising Star" by *Super Lawyers* and a "500 Leading Plaintiff Financial Lawyer" by *Lawdragon*.

EDUCATION: Washington and Lee University, B.A., 1999. Duke University School of Law, J.D., *High Honors*, 2003*, Duke Law Review* editor.

BAR ADMISSIONS: California; United States Court of Appeals for the Ninth Circuit; United States District Courts for the Southern, Northern and Central Districts of California; United States District Court for the Eastern District of Wisconsin.

**LESTER R. HOOKER**, Director, is involved in all of Saxena White's practice areas, including securities class action litigation and shareholder derivative actions. During his tenure at Saxena White, Mr. Hooker has obtained substantial monetary recoveries and secured valuable corporate governance reforms on behalf of investors nationwide.

Mr. Hooker played a leading role on the litigation teams that have successfully prosecuted securities fraud class and derivative actions, including *In re Wells Fargo & Company*

4

*Shareholder Litigation* ($320 million settlement, which includes a $240 million cash payment from Defendants' insurers— representing the largest insurance-funded monetary component of any shareholder derivative settlement by over $100 million), *In re HD Supply Holdings, Inc. Securities Litigation* ($50 million settlement-one of the largest securities class action settlements ever achieved in the U.S. District Court for the Northern District of Georgia), *In re Rayonier Inc. Securities Litigation* ($73 million settlement), *Westchester Putnam Counties Heavy and Highway Laborers Local 60 Benefit Funds v. Brixmor Property Group, Inc. et al.*, ($28 million settlement), *Central Laborers' Pension Fund v. Sirva, Inc.*, ($53.3 million settlement along with the adoption of important corporate governance reforms), *City Pension Fund for Firefighters and Police Officers in the City of Miami Beach v. Aracruz Celulose S.A., et al.*, ($37.5 million settlement), *In re Sadia, Inc. Securities Litigation* ($27 million settlement), and *In re Tower Group International, Ltd. Securities Litigation* ($20.5 million settlement).

Mr. Hooker is currently part of the litigation teams prosecuting securities fraud class actions against companies such as The Chemours Company, Patterson Companies, Inc., Perrigo Company plc, and ProAssurance Corporation.

Mr. Hooker has recently been recognized as a *Super Lawyer* "Rising Star" for 2017 and 2018, a *South Florida Legal Guide*'s "Up and Comer" in 2017, and a *Palm Beach Illustrated* "Top Lawyer" in 2018. Recently, Mr. Hooker was named a "500 Leading Plaintiff Financial Lawyer" by *Lawdragon*. He is also fluent in Spanish.

EDUCATION: University of California at Berkeley, B.A., 1999. University of San Diego School of Law, J.D., 2005. Dean's Outstanding Scholar Scholarship; University of San Diego School of Business, M.B.A. in Business Administration with an emphasis in International Business, 2005. Ahlers Center International Graduate Studies Scholarship.

BAR ADMISSIONS: California; Florida; New York; District of Columbia; United States District Courts for the Northern, Central, Southern, and Eastern Districts of California; United States District Courts for the Northern, Middle, and Southern Districts of Florida; United States District Court for the Western District of Michigan; United States Courts of Appeal for the Ninth and Eleventh Circuits.

**KYLA (STEWART) GRANT**, Director, is involved in all of Saxena White's practice areas, focusing on securities class action litigation. Ms. Grant has extensive experience in federal securities class action suits, securities enforcement, and complex commercial litigation in both federal and state courts. Before joining Saxena White, Ms. Grant practiced securities litigation at two top-ranked global law firms, Shearman & Sterling LLP and WilmerHale.

Ms. Grant has been a member of the litigation teams that have successfully recovered hundreds of millions of dollars on behalf of injured shareholders, including the recent $320 million derivative settlement against Wells Fargo & Company. She was also a key member of the litigation teams that obtained a $28 million recovery for shareholders of Brixmor Property Group, Inc., a $28.25 million recovery for shareholders of TrueCar, Inc., a $15.5 million recovery for shareholders of Credit Suisse Group AG, and a preliminarily approved $135 million settlement for shareholders of DaVita, Inc.

5

Ms. Grant is currently part of the litigation teams prosecuting securities fraud class actions against companies such as The Chemours Company, Patterson Companies, Inc., and Perrigo Company plc.

EDUCATION: University of Hawai'i, B.A., *with distinction*, 2004. University of Virginia School of Law, J.D., 2008. Dean's Scholarship; Dillard Fellow; Articles Editor for the *Virginia Journal of International Law.*

BAR ADMISSIONS: New York; United States District Court for the Southern District of New York.

**ATTORNEYS**

**MARIO ALVITE** performs analysis of potential securities and shareholder rights actions. Mr. Alvite's efforts are focused on stages of litigation including case origination and pre-trial discovery. Mr. Alvite is experienced in e-discovery and project management in the corporate litigation, transactional, and regulatory areas. He has served on teams representing investors against Wilmington Trust and Rayonier Inc.

EDUCATION: Florida International University, B.A., 2001. Nova Southeastern University, J.D., 2004.

BAR ADMISSIONS: Florida; United States District Courts for the Southern and Middle Districts of Florida.

**DIANNE M. (ANDERSON) PITRE** prosecutes securities fraud, corporate governance and shareholder rights litigation on behalf of injured shareholders. Ms. Pitre has served on the litigation teams that successfully prosecuted securities fraud class actions such as *In re Wells Fargo & Company Shareholder Litigation* ($320 million settlement), *In re Rayonier Inc. Securities Litigation* ($73 million settlement), *Leon D. Milbeck v. TrueCar, Inc., et al.*, ($28.25 million settlement), *Westchester Putnam Counties Heavy and Highway Laborers Local 60 Benefit Funds v. Brixmor Property Group, Inc. et al*. ($28 million settlement), and *In re Tower Group International, Ltd. Securities Litigation,* ($20.5 million settlement).

Ms. Pitre is currently a member of the litigation teams prosecuting significant securities fraud class actions against Patterson Companies, ProAssurance Corporation, and The Chemours Company. Ms. Pitre is also a member of the team prosecuting the derivative action on behalf of FirstEnergy Corp.

Before joining Saxena White, Ms. Pitre was a legal intern for Jack in the Box, Inc. and Alliant Insurance Services, Inc. She worked extensively with their in-house departments, assisting in a variety of corporate, employment, and government regulation matters. Ms. Pitre was an intern for Jewish Family Service of San Diego and Housing Opportunities Collaborative, two San Diego pro bono legal organizations. Additionally, she served as a Legal Intern for the San Diego City Attorney's Office with their Advisory Division, Public Works Section.

6

Ms. Pitre has recently been recognized as a Super Lawyer "Rising Star" for 2018, 2019 and 2020 and received Palm Beach Illustrated's Top Attorney award for 2020. She is also fluent in Spanish.

EDUCATION: University of California San Diego, B.A., 2008. University of San Diego School of Law, J.D., 2012. San Diego La Raza Lawyers Association Scholarship; Frank E. and Dimitra F. Rogozienski Scholarship; received two CALI Excellence for the Future Awards; *Phi Delta Phi.*

BAR ADMISSIONS: Florida; California; United States District Courts for the Northern and Southern Districts of Florida; United States District Courts for the Northern, Central, Southern, and Eastern Districts of California.

**SARA DILEO** has extensive experience in federal securities class action lawsuits, derivative litigation, and complex commercial litigation in both federal and state courts. Ms. DiLeo is currently part of the litigation teams prosecuting securities fraud class actions against companies such as ProAssurance Corporation and Evolent Health, Inc.

Recently, Ms. DiLeo was a member of the litigation team that successfully recovered a $320 million derivative settlement for shareholders of Wells Fargo & Company. She was also part of the litigation teams that obtained a $28.25 million settlement for shareholders of TrueCar, Inc., a $50 million settlement for shareholders of HD Supply Holdings, Inc., one of the largest securities class action settlements ever achieved in the U.S. District Court for the Northern District of Georgia, and a preliminarily approved $135 million settlement for shareholders of DaVita, Inc.

Before joining Saxena White, Ms. DiLeo practiced securities litigation for nine years at a top-ranked global law firm, Skadden, Arps, Slate, Meagher & Flom LLP.

EDUCATION: New York University's College of Arts & Sciences, B.A., 2003. Fordham University School of Law, J.D., 2008. Articles Editor for the *Fordham Urban Law Journal;* interned for the Hon. Barbara Jones in the United States District Court for the Southern District of New York.

BAR ADMISSIONS: New York.

**SCOTT GUARCELLO**'s practice focuses on the discovery stage of litigation. With over eleven years of significant complex e-discovery experience, he brings to Saxena White an expertise honed by the numerous e-discovery services and training programs that he created, led and supported while serving as a Senior Managing Attorney for a global e-discovery consulting and services provider. Combining both discovery and technical expertise, Mr. Guarcello advises on best practices concerning information governance principles, ESI protocols, protective orders, document production requests, collections, processing, large-scale document reviews, production management, and related infrastructure applications and security.

Recently, Mr. Guarcello was a member of the litigation team that successfully obtained a $320 million derivative settlement against Wells Fargo & Company. He was also part of the litigation

teams that recovered a $28.25 million settlement against TrueCar, Inc., secured a $50 million settlement against HD Supply Holdings, Inc.-one of the largest securities class action settlements ever achieved in the U.S. District Court for the Northern District of Georgia, and obtained preliminary approval of a $135 million settlement for shareholders of DaVita, Inc.

He is currently a member of the litigation teams prosecuting securities class actions against Evolent Health, Inc., Perrigo Company plc, and Patterson Companies.

Mr. Guarcello has also received the Legal Elite Award for 2017 and 2018, Super Lawyers Rising Star award for 2020, and Palm Beach Illustrated's Top Attorney award for 2020 and holds extensive industry certifications that span review tools, feature-specific technical applications, project management and analytics. As an active member in the e-discovery community, Mr. Guarcello has been a guest speaker for both intimate and large audiences. Mr. Guarcello is a member of the Florida Bar.

EDUCATION: Stetson University, B.S., 1996. Florida International University, J.D., c*um laude*, 2007.

BAR ADMISSIONS: Florida.

**DONALD F. GRUNEWALD** focuses on performing research for securities and derivatives litigation. Before joining Saxena White, Mr. Grunewald taught Legal Research and other legal courses at a college in New York for six years. He has prepared economic and legal research for litigation, businesses, and academics. Mr. Grunewald has served on the litigation teams that successfully prosecuted securities fraud class actions such against TrueCar, Inc. ($28.25 million recovery), HD Supply Holdings Inc. ($50 million recovery), and DaVita, Inc. ($135 million preliminarily approved settlement).

Mr. Grunewald is currently part of the litigation teams prosecuting securities fraud class actions against companies such as The Chemours Company, Evolent Health, Inc., and Perrigo Company plc. He is also a regular contributor to Saxena White's newsletter.

EDUCATION: Haverford College, B.A., *magna cum laude,* 2004. Oxford University, B.A. in Jurisprudence (equivalent to LLB). University of Pennsylvania, Master of Laws, 2007.

BAR ADMISSIONS: New York.

**JONATHAN LAMET** has extensive experience in litigating direct securities actions and derivative actions involving publicly traded companies. Mr. Lamet is currently part of the litigation teams prosecuting securities fraud class actions against companies such Patterson Companies, Inc.

Before joining Saxena White, Mr. Lamet practiced commercial and civil litigation, including directors and officers liability, securities and fraud litigation, bankruptcy adversary proceedings, and class action defense for seven years at an Am-Law 100 firm, Akerman LLP.

EDUCATION: Yeshiva University, Sy Syms School of Business, B.S., 2010. University of Miami School of Law, J.D., 2013. Member of *University of Miami Law Review.* Interned for the United States Attorney's Office, Economic Crimes Division, for the Southern District of Florida, and for the Hon. William Turnoff in the United States District Court for the Southern District of Florida

BAR ADMISSIONS: Florida; United States Court of Appeals for the Eleventh Circuit; United States District Courts for the Southern and Middle Districts of Florida.

**JILL (SCHORR) MILLER** focuses her practice on e-discovery, including project management and litigation support services for class actions and other complex litigation. Ms. Miller was a member of the team that secured one of the largest settlements in 2018, *In re Wilmington Trust Corporation Securities Litigation* ($210 million). She was also a member of the litigation teams that successfully obtained a $320 million derivative settlement against Wells Fargo & Company, a $28.25 million settlement against TrueCar, Inc., and a $50 million settlement against HD Supply Holdings, Inc. She is currently a member of the litigation teams prosecuting securities class actions against Perrigo Company plc and Patterson Companies.

Prior to joining Saxena White, Ms. Miller served as team lead at various law firms for discovery in large, complex class actions and mass torts in the areas of securities fraud, software technology, pharmaceutical and patent infringement. Prior to her litigation experience, Ms. Miller was an associate at Ruden McClosky where she practiced real estate law. During her 11 years with the firm, she represented large developers of residential and commercial real estate throughout the South Florida area. Ms. Miller began her legal career as an associate in the real estate practice division of a major New Jersey law firm where she concentrated her practice on residential and commercial real estate transactions and development. She also dedicated a significant portion of her practice to casino licensing and compliance.

For the past several years, Ms. Miller has volunteered her time as a Guardian ad Litem, protecting the rights of abused and neglected children in Broward County, Florida.

EDUCATION: University of Maryland, B.A., *with honors*, 1983. Hofstra University, School of Law, J.D., 1986. Articles Editor of the *International Property Investment Journal;* interned at the United States Federal Court, Eastern District of New York.

BAR ADMISSIONS: Florida; United States District Court for the Southern District of Florida.

**FEI-LU QIAN** is currently Senior Client Relationship Manager, Global Securities Class Actions at Broadridge. While at Saxena White, he performed analysis of potential securities and shareholder rights actions. Prior to joining Saxena White, Mr. Qian was associated with several boutique law firms in New York City, where he specialized in securities litigation.

EDUCATION: Union College, B.A., *with honors,* 1998. Albany Law School, J.D., 2003. During law school, Mr. Qian served as an Associate Editor of the *Albany Law Review* and interned for the Honorable Lawrence E. Kahn of the United States District Court for the

Northern District of New York. Mr. Qian also served as a legal intern with the Office of New York State Attorney General.

BAR ADMISSIONS: New York; United States District Court for the Southern District of New York.

**KATHRYN WEIDNER** concentrates her practice on prosecuting shareholder class actions, and has extensive experience obtaining monetary relief on behalf of institutional investor plaintiffs. Ms. Weidner has obtained substantial monetary recoveries including one of the largest settlements in 2018, *In re Wilmington Trust Corporation Securities Litigation* ($210 million). She has also prosecuted numerous other noteworthy class actions that resulted in significant recoveries for investors, such as *In re HD Supply Holdings, Inc.* ($50 million, which is one of the largest securities class action settlements ever achieved in the U.S. District Court for the Northern District of Georgia), *In re Rayonier Securities Litigation* ($73 million), and *In re Tower Group International, Ltd. Securities Litigation* ($20.5 million).

Ms. Weidner is very involved in the community and participates in organizations such as the League of Women Voters and the Women's Foundation of Florida, and is a member of numerous professional legal organizations such as FAWL, NAWL, and NAPPA. She also regularly contributes to presentations, publications, and CLE courses regarding securities litigation and diversity, and is the Chair of Saxena White's Diversity and Social Responsibility Committee. For her achievements, Ms. Weidner was recognized as a *Super Lawyer* "Rising Star" for 2017-2020, a *South Florida Legal Guide* "Up and Comer" for 2018-2020, and a *Palm Beach Illustrated* "Top Lawyer" for 2020.

Prior to joining Saxena White, Ms. Weidner developed valuable litigation skills as a Certified Legal Intern for the Department of Homeland Security. Ms. Weidner earned a Bachelor of Business Administration from the University of Miami in 2003, with a major in Political Science. During college, she studied abroad at Oxford University, as part of an Honors program for law and politics. Ms. Weidner received her Juris Doctor from Nova Southeastern University in 2006, where she graduated *cum laude* with a concentration in International Law. While at Nova, her outstanding course work regularly earned Dean's List and Provost Honor Roll, and she was honored with CALI Book Awards for Secured Transactions and Business Planning Law. Upon graduation, Ms. Weidner was the recipient of the Larry Kalevitch Scholarship Award for exhibiting the most promise in Business and Bankruptcy law.

EDUCATION: University of Miami, B.B.A, 2003. Nova Southeastern University, J.D., 2006.

BAR ADMISSIONS: Florida; United States District Courts for the Northern and Southern Districts of Florida.

## STAFF ATTORNEYS

**CHRISTINE SCIARRINO** has extensive experience in e-discovery as a project attorney for class action securities fraud litigation. Ms. Sciarrino is particularly skilled in legal research and writing and deposition preparation. Her legal practice has focused primarily on early resolution

10

of matters with an objective toward achieving optimum results for litigating parties through superb pre-trial preparation and informed decision making. As an attorney with the Firm since 2014, Ms. Sciarrino worked on *In re Wilmington Trust Securities Litigation* and the derivative action on behalf of shareholders of Wells Fargo & Company, among other cases. She has practiced in many areas of complex civil litigation, including cases involving natural disasters caused by hurricanes, fires, floods, and structural roof collapse. As an experienced practitioner for plaintiffs who have been wronged by financial institutions and other entities, Ms. Sciarrino has most recently dedicated her expertise exclusively to this area.

EDUCATION**:** Florida Atlantic University, B.A., 1988, MFA, 2004. St. Thomas University School of Law, J.D., 1992.

BAR ADMISSIONS: Florida.

**ATHMA BIRJU**, prior to joining the Firm, worked as an e-discovery attorney on class actions and other complex litigation. Prior to that, Mr. Birju was an attorney with Aldridge Pite, LLP where he focused on bankruptcy and foreclosure matters and had his own law practice where he represented clients in various civil and criminal matters.

EDUCATION: Nova Southeastern University, B.S., 2007. Western Michigan University-Thomas M. Cooley School of Law, J.D., 2012.

BAR ADMISSIONS: Florida.

**BILLIE TARNOVE**, prior to joining the Firm, worked as an e-discovery attorney on class actions and other complex litigation. Prior to that, Ms. Tarnove had her own law practice where she represented clients in bankruptcy and foreclosure matters and related real estate transactions.

EDUCATION: New College, Hofstra University, B.A., *magna cum laude*, 1976. Washington College of Law, American University, J.D., 1978.

BAR ADMISSIONS: Florida, United States District Courts for the Southern and Middle Districts of Florida.

**CHRISTIAN VAZQUEZ**, prior to joining the Firm, worked as an e-discovery attorney on class actions and other complex litigation. Prior to that, Mr. Vazquez was an associate attorney with Millennium Partners where he represented lending institutions, mortgage bankers and other grantors of credit in foreclosure proceedings. He also was an attorney with Oritz Almedina & Associates, PSC in Puerto Rico where he managed cases dealing with employment disputes and corporate compliance.

EDUCATION: Tulane University, B.S., 2000. Catholic University, J.D., 2006. Washington University/Chulalongkorn University, L.L.M.

BAR ADMISSIONS: Florida.

**CRAIG WALENTA**, prior to joining the Firm, worked as an e-discovery attorney on class actions and other complex litigation for firms such as Deloitte. Prior to that, Mr. Walenta had his own law practice where he focused on real estate transactions.

EDUCATION: Drew University, B.A., *magna cue laude,* 1994. Seton Hall University School of Law, J.D./M.B.A., 1999.

BAR ADMISSIONS: New Jersey.

**ELISABETH PORTER**, prior to joining the Firm, worked on federal case matters under supervision of the litigation manager and partners at Popkin & Rosaler, P.A. Ms. Porter was also previously an attorney in the real estate litigation/foreclosure department at Ward Damon Posner Pheterson & Bleau.

EDUCATION: Columbia College. B.A., 1991. Hunter College-CUNY, M.A., 1997. University of Miami School of Law, J.D., 2002.

BAR ADMISSIONS: Florida, United States District Court for the Southern District of Florida.

**MARJORIE (KRET) PERALTA**, prior to joining the Firm, worked as an e-discovery attorney on class actions and other complex litigation. Ms. Peralta supervised teams of attorneys and oversaw the QC process in many cases. Prior to that, she had her own firm where she focused on real estate transactions and was an associate attorney at Larson King LLP and McGrane & Nosich, where she concentrated in commercial litigation and medical malpractice cases, respectively.

EDUCATION: American University, B.A., *with honors*, 1997. University of Miami School of Law, J.D., 2001. Executive Editor, *International and Comparative Law Review*

BAR ADMISSIONS: Florida

**MATT ANDERSON**, prior to joining the Firm, worked as an e-discovery attorney on class actions and other complex litigation. Prior to that, Mr. Anderson had his own practice where he focused on immigration law.

EDUCATION: Wheaton College, B.A., 1999. University of St. Thomas School of Law (Minneapolis, Minnesota), J.D., 2007.

BAR ADMISSIONS: Minnesota.

**MAURI LYNN LEVY**, prior to joining the Firm, worked as an e-discovery attorney on class actions and other complex litigation. Prior to that, Ms. Levy practiced workers' compensation law at several firms such as Lowenthal & Abrams, LLC, The Law Offices of Jerry Foley and Webber Gallagher, LLP.

EDUCATION: Pennsylvania State University, B.A., 1988. Villanova School of Law, J.D., 1992.

12

BAR ADMISSIONS: Pennsylvania, United States District Court for the Eastern District of Pennsylvania.

**MICHELE FASSBERG** has extensive experience in e-discovery as a project attorney for class action securities fraud litigation and is highly skilled in deposition preparation. While as an attorney with the Firm, she has worked cases such as *Leon D. Milbeck v. TrueCar, Inc., et. al.* and *In re HD Supply Holdings, Inc. Securities Litigation*.

Prior to joining the Firm, Ms. Fassberg served as Litigation Counsel for lenders and mortgage servicing agents at Shapiro & Fishman, LLC and Allied Home Mortgage Capital Corporation, and as a plaintiff's counsel specializing in personal injury, and workers' compensation claims at the Law office of Robert J. Fenstershieb, P.A.

EDUCATION: Florida International University, B.A., 1995; St. Thomas University School of Law, J.D., 1998.

BAR ADMISSIONS: Florida.

**RICHARD STEELE**, prior to joining the Firm, worked as an e-discovery attorney on class actions and other complex litigation. Prior to that, Mr. Steele was a commercial litigation attorney with DeMahy, Labrador, Drake, Victor, Rojas & Cabeza d/b/a DLD Lawyers.

EDUCATION: University of Florida, B.A., *cum laude*, 2009. Florida International University, J.D., 2014.

BAR ADMISSIONS: Florida.

**RYAN JOSEPH** has extensive experience in e-discovery as a project attorney for class action securities fraud litigation. Mr. Joseph is particularly skilled in legal research and writing, managing teams of document reviewers and deposition preparation. As an attorney with the Firm since 2019, he worked on *Leon D. Milbeck v. TrueCar, Inc., et al.* and *In re HD Supply Holdings, Inc. Securities Litigation*. Prior to joining the Firm, Mr. Joseph worked at the Brown & Heller law firm and in the legal department for Collectors Coins & Jewelry.

EDUCATION: Boston University, B.S., *magna cum laude*, 2006. New York Law School, J.D., *magna cum laude*, 2009.

BAR ADMISSIONS: Florida.

**TARA HEYDT** has extensive experience in e-discovery as a project attorney for class action securities fraud litigation. Ms. Heydt is particularly skilled in legal research and writing, managing teams of document reviewers and deposition preparation. As an attorney with the Firm since 2018, Ms. Heydt has worked on *Leon D. Milbeck v. TrueCar, Inc., et al.*, and *In re HD Supply Holdings, Inc. Securities Litigation*.

13

Prior to joining the Firm, Ms. Heydt worked as an e-discovery attorney on class actions and other complex litigation for various firms including Robbins Geller Rudman & Dowd LLP and Wicker Smith O'Hara McCoy & Ford, P.A. Prior to that, Ms. Heydt was an Associate Attorney with Greenspoon Marder, P.A in the foreclosure division. Prior to that, Ms. Heydt was a Research Attorney with the Los Angeles County Superior Court for twelve years, where she provided judges with recommended rulings on civil law and motion matters, both pre-trial and post-trial.

EDUCATION: University of Pennsylvania, B.A., *magna cum laude*, 1992; UCLA School of Law, J.D., 1996.

BAR ADMISSIONS: California; Florida.

**TIMOTHY ODRONIEC**, prior to joining the Firm, worked as an e-discovery attorney on class actions and other complex litigation.

EDUCATION: University of Central Florida, B.A., 2008. Nova Southeastern University, Shepard Broad Law Center, J.D., 2015.

BAR ADMISSIONS: Florida.

**VICTORIA COOK**, prior to joining the Firm, worked as an e-discovery attorney on class actions and other complex litigation. Ms. Cook was also a commercial litigation attorney with Maclean and Ema and Duke, Mullin & Galloway, P.A. where her practice focused on estate administration and with William L. Bromagen, P.A.

EDUCATION: Arizona State University, B.A., *cum laude*, 1982. Nova Southeastern University, Shepard Broad Law Center, J.D., 1996.

BAR ADMISSIONS: Florida.

**ZEETA NANAN**, prior to joining the Firm, worked as an e-discovery attorney on class actions and other complex litigation.

EDUCATION: Florida International University, B.A., 2006. St. Thomas University School of Law, J.D., 2012.

BAR ADMISSIONS: Florida.

**<u>FINANCIAL ANALYSTS</u>**

**MARC D. GROBLER** is Saxena White's Manager of Case Development. Mr. Grobler plays a key role in new case development including performing in-depth investigations into potential securities fraud class actions, derivative, and other corporate governance related actions. By using an array of financial and legal industry research tools, Mr. Grobler analyzes information that helps support the theories behind our litigation efforts. He is also responsible for protecting the financial interests of our clients by managing the Firm's portfolio monitoring services and

14

performing complex loss and damage calculations. Prior to joining the Firm, he served as the Senior Business Analyst in the New York office of a leading securities class action law firm and has worked within the securities litigation industry for over 15 years.

EDUCATION: Tulane University, A.B. Freeman School of Business, MBA with a concentration in Accounting, *cum laude*, 1997.

**SAM JONES** is a Financial Analyst with Saxena White's California office. Prior to joining Saxena White, Mr. Jones worked for over ten years as a financial analyst at a leading securities litigation law firm where he specialized in developing techniques for data modeling and visualization. He worked on numerous landmark securities cases including *In re Bank of America Securities Litigation* ($2.425 billion recovery); *In re Lehman Brothers Equity/Debt Securities Litigation* ($735 million recovery); *In re Wachovia Corp. Securities Litigation* ($627 million recovery); and *Merrill Lynch Mortgage Pass-Through Litigation* ($315 million recovery).

In the fallout of the housing and credit crisis, Mr. Jones pioneered techniques in data management and analysis for the firm's then-developing RMBS and structured finance practice. He has worked on numerous individual and class action RMBS cases against most of the major Wall Street banks.

EDUCATION: Vassar College, B.A., 1996.

## CLIENT SERVICES

**STEFANIE LEVERETTE** is Saxena White's Manager of Client Services. In this role, she manages the Firm's client outreach and developmental programs and oversees the Firm's portfolio monitoring program. Since joining Saxena White in 2008, Ms. Leverette has coordinated the Firm's presence at industry conferences attended by representatives of various institutional clients throughout the United States. In addition, Ms. Leverette is responsible for the timely dissemination of all reports, notifications and all new cases and class action settlements that may have an impact to an investment portfolio. Ms. Leverette's main role is acting as the liaison between institutional clients and the Firm.

Ms. Leverette is a member of the Firm's Diversity and Social Responsibility Committee and a member of the Women's Initiative Subcommittee. She is also a member of the Firm's Case Starting Team, providing institutional clients with important information regarding potential litigation.

EDUCATION: University of Central Florida, B.A. 2008. Florida Atlantic University, MBA, 2011.

## PARALEGALS

**CHARLENE WALLACE** was a paralegal at Saxena White.  She has more than two decades of experience as a litigation paralegal.  Prior to joining the firm, she was a paralegal for John Delgado at Bluestein Nichols Thompson and Delgado.

EDUCATION: Drury University, B.S. in Criminal Justice and Sociology, 2002

**BRANDON SMITH** has over ten years of experience as a litigation paralegal.  Prior to joining the firm, he was a litigation paralegal at Havkins Rosenfeld Ritzert & Varriale LLP, at Tenaglia & Hunt, P.A., and at Jaffe & Asher LLP.

EDUCATION: Mercy College, B.A., *cum laude,* 2009.

**FABRICIA RESENDE** was a paralegal with Saxena White.  Prior to joining the firm, she was a FINRA case administrator and an attorney with Neil Bryan Tygar P.A.

EDUCATION: Universidade Vila Velha, J.D., 1999.  University of Florida, L.L.M., 2002.

## IN-HOUSE INVESTIGATORS

**JAY PONTRELLI,** with over two decades of law enforcement experience, including 12 years with the Federal Bureau of Investigation, serves as Saxena White's Chief of Investigations. He oversees all of the Firm's efforts to detect, investigate, and prosecute securities cases. Prior to joining Saxena White, Mr. Pontrelli was Director of Investigations at Labaton Sucharow LLP, where his cases resulted in monetary relief for harmed investors in excess of $4 billion. He was also part of the firm's initial SEC Whistleblower Program.

Over the years, in the FBI and in private practice, Mr. Pontrelli has led over one hundred investigations of possible securities violations. Throughout his award-winning career, he has developed extensive experience in securities-related matters. Mr. Pontrelli began his career with the FBI in Covert Special Operations, and was later assigned to the FBI/NYPD Joint Bank Robbery Task Force. Following the September 11th attacks, Mr. Pontrelli was assigned to the Joint Terrorism Task Force. He later transferred to the White Collar Crime Heath Care Fraud Unit. Mr. Pontrelli has an extensive network of high-level relationships throughout the state and federal law enforcement communities.

EDUCATION: St. Thomas Aquinas College, B.A., 1990.  Seton Hall University, M.A., 1993. FBI Academy, 1996.

**RIAN WROBLESKI,** with over eighteen years of intelligence gathering experience, serves as Saxena White's Head of Investigative Intelligence. He oversees all of the Firm's efforts to generate proprietary sources of intelligence using advanced technological tools, systems, and methods. Prior to joining Saxena White, Mr. Wroblewski was Senior Manager of Investigative Intelligence at Labaton Sucharow LLP, where his cases resulted in monetary relief for harmed investors in excess of $4 billion. He was also part of the firm's initial SEC Whistleblower Program.

16

Over the years, Mr. Wroblewski has provided expert commentary to *The Washington Post*, *Investor's Business Daily*, Canadian Broadcasting Corporation, and other news outlets. Mr. Wroblewski has provided consulting to database providers, eDiscovery vendors, corporate boards, and government entities throughout the world. He has extensive pro bono experience assisting political asylum seekers and targets of honor killings, working alongside the FBI and Department of State. Mr. Wroblewski is an active member of the FBI's InfraGard Program. He has an extensive network of high-level relationships within the global intelligence community.

EDUCATION: John Jay College of Criminal Justice, B.S., 2007.

# EXHIBIT 9GG



FILED
IN OPEN COURT

APR 2 3 2021

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

PLYMOUTH COUNTY RETIREMENT SYSTEM,
Individually and On Behalf of All Others Similarly
Situated,

Plaintiff,

v.

GTT COMMUNICATIONS, INC., RICHARD D.
CALDER, JR., CHRIS MCKEE, MICHAEL
SICOLI, and GINA NOMELLINI,

Defendants.

Case No. 1:19-cv-00982-CMH-MSN

---

## FINAL JUDGMENT AND ORDER OF DISMISSAL

---

WHEREAS, a class action is pending in this Court entitled *Plymouth County Retirement System v. GTT Communications, Inc. et al.*, 1:19-cv-00982-CMH-MSN (E.D. Va.) (the "Action");

WHEREAS, on July 30, 2019, Plymouth County Retirement System filed the initial class action complaint in this Action, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder (ECF No. 1);

WHEREAS, by order dated January 7, 2020, this Court appointed City of Atlanta Police Pension Fund and City of Atlanta Firefighters' Pension Fund as Lead Plaintiff ("Lead Plaintiff" or "Plaintiff") pursuant to the requirements of the Private Securities Litigation Reform Act of 1995 and approved Lead Plaintiff's selection of Saxena White P.A. ("Saxena White") as Lead

1

Counsel and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Liaison Counsel (ECF No. 35);

WHEREAS, on February 28, 2020, Lead Plaintiff filed its Amended Class Action Complaint for Violations of the Federal Securities Laws and Jury Trial Demand (the "Amended Complaint," ECF No. 42);

WHEREAS, by order dated September 10, 2020, this Court certified this Action to proceed as a class action, and appointed Lead Plaintiff as Class Representative, Saxena White as Class Counsel, and Cohen Milstein as Liaison Class Counsel (ECF No. 71);

WHEREAS, on October 12, 2020, Lead Plaintiff moved to file the Second Amended Class Action Complaint for Violations of the Federal Securities Laws and Jury Trial Demand (the "Second Amended Complaint" or "SAC," ECF No. 72-2), asserting federal securities claims on behalf of all persons or entities who purchased or otherwise acquired publicly traded common stock of GTT Communications, Inc. ("GTT" or the "Company") from February 26, 2018 to August 7, 2019, inclusive, and who were damaged thereby (the "Settlement Class"),[1] and, by order dated October 16, 2020, this Court granted such motion, rendering the SAC effective as of that date (ECF No. 78);

WHEREAS, (a) Lead Plaintiff, on behalf of itself and the Settlement Class (defined below), and (b) defendants GTT, Richard D. Calder, Jr., Chris McKee, Michael Sicoli, and Gina Nomellini (collectively the "Defendants" and, together with Lead Plaintiff, the "Parties") have entered into a Stipulation and Agreement of Settlement dated December 14, 2020 (the "Stipulation"), that provides for a complete dismissal with prejudice of the claims asserted in the

---

[1] Excluded from the Settlement Class are Defendants, the Officers and directors of GTT at all relevant times, and all such excluded persons' Immediate Family members, legal representatives, heirs, agents, affiliates, predecessors, successors and assigns, and any entity in which any excluded person has or had a controlling interest.

2

Second Amended Complaint against the Defendant Releasees (as defined in the Stipulation) on the terms and conditions set forth in the Stipulation, subject to the approval of this Court (the "Settlement");

WHEREAS, unless otherwise defined in this Judgment, the capitalized terms herein shall have the same meaning as they have in the Stipulation;

WHEREAS, by order dated January 28, 2021 (the "Preliminary Approval Order"), this Court: (a) preliminarily approved the Settlement and certified the Settlement Class for purposes of this Settlement only; (b) ordered that notice of the proposed Settlement be provided to potential Settlement Class Members; (c) provided Settlement Class Members with the opportunity either to exclude themselves from the Settlement Class or to object to the proposed Settlement; and (d) scheduled a hearing regarding final approval of the Settlement;

WHEREAS, due and adequate notice has been given to the Settlement Class;

WHEREAS, the Court conducted a hearing on April 23, 2021 (the "Settlement Hearing") to consider, among other things, (a) whether the terms and conditions of the Settlement are fair, reasonable, and adequate to the Settlement Class, and should therefore be approved; and (b) whether a judgment should be entered dismissing the Action with prejudice as against the Defendant Releasees; and

WHEREAS, the Court having reviewed and considered the Stipulation, all papers filed and proceedings held herein in connection with the Settlement, all oral and written comments received regarding the Settlement, and the record in the Action, and good cause appearing therefore;

3

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. **Jurisdiction:** The Court has jurisdiction over the subject matter of the Action and all matters relating to the Settlement, as well as personal jurisdiction over all of the Parties and each of the Settlement Class Members.

2. **Incorporation of Settlement Documents:** This Judgment incorporates and makes a part hereof: (a) the Stipulation; and (b) the Notice and the Summary Notice, both of which were previously filed with the Court.

3. **Class Certification for Settlement Purposes:** The Court hereby affirms its determinations in the Preliminary Approval Order certifying, for the purposes of the Settlement only, the Action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Settlement Class consisting of all persons or entities who purchased or otherwise acquired publicly traded common stock of GTT from February 26, 2018 to August 7, 2019, inclusive, and who were damaged thereby. Excluded from the Settlement Class are Defendants, the Officers and directors of GTT at all relevant times, and all such excluded persons' Immediate Family members, legal representatives, heirs, agents, affiliates, predecessors, successors and assigns, and any entity in which any excluded person has or had a controlling interest.

4. **Adequacy of Representation:** Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, the Court hereby affirms its determinations in the Preliminary Approval Order certifying Lead Plaintiff as Class Representative for the Settlement Class, appointing Lead Counsel as Class Counsel, and appointing Liaison Counsel as Liaison Class Counsel for the Settlement Class. Lead Plaintiff and Lead Counsel have fairly and adequately represented the Settlement Class both in terms of

4

litigating the Action and for purposes of entering into and implementing the Settlement and have satisfied the requirements of Federal Rules of Civil Procedure 23(a)(4) and 23(g), respectively.

5. **Settlement Notice:** The Court finds that the dissemination of the Notice and the publication of the Summary Notice: (a) were implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of (i) the pendency of the Action; (ii) the effect of the proposed Settlement (including the Releases to be provided thereunder); (iii) Lead Plaintiff's motion for an award of attorneys' fees and reimbursement of Litigation Expenses; (iv) their right to object to any aspect of the Settlement, the Plan of Allocation and/or Lead Plaintiff's motion for attorneys' fees and reimbursement of Litigation Expenses; (v) their right to exclude themselves from the Settlement Class; and (vi) their right to appear at the Settlement Hearing; (d) constituted due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable laws and rules.

6. **Final Settlement Approval and Dismissal of Claims:** Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, this Court hereby fully and finally approves the Settlement set forth in the Stipulation in all respects (including, without limitation: the amount of the Settlement; the Releases provided for therein; and the dismissal with prejudice of the claims asserted in the Second Amended Complaint against the Defendant Releasees), and finds that the Settlement is, in all respects, fair, reasonable, and adequate to the

5

Settlement Class.  The Parties are directed to implement, perform and consummate the Settlement in accordance with the terms and provisions contained in the Stipulation.

7.  The Action and all of the claims asserted in the Second Amended Complaint against the Defendant Releasees by Lead Plaintiff and the other Settlement Class Members are hereby dismissed with prejudice.  The Parties shall bear their own costs and expenses, except as otherwise expressly provided for in the Stipulation.

8.  **Binding Effect:**  The terms of the Stipulation and of this Judgment shall be forever binding on Defendants, Lead Plaintiff, and all other Settlement Class Members, other than those Settlement Class Members who timely and properly have taken steps to exclude themselves from the Settlement Class, (regardless of whether or not any individual Settlement Class Member submits a Claim Form or seeks or obtains a distribution from the Net Settlement Fund), as well as their respective successors and assigns.

9.  **Releases:**  The Releases set forth in Section IV, Paragraph 5 of the Stipulation, together with the definitions contained in Section IV, Paragraph 1 of the Stipulation relating thereto, are expressly incorporated herein in all respects.  The Releases are effective as of the Effective Date.  Accordingly, this Court orders that:

(a)  Without further action by anyone, and subject to paragraph 10 below, upon the Effective Date of the Settlement, Lead Plaintiff and each of the other Settlement Class Members, on behalf of themselves, and their respective Related Persons, heirs, executors, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have, and by operation of the Stipulation, of law, and of this Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, dismissed, and discharged each and every one of the Released Plaintiff's Claims against the Defendants and

6

the other Defendant Releasees, and shall forever be barred and enjoined from commencing, instituting, prosecuting or maintaining any or all of the Released Plaintiff's Claims against any of the Defendant Releasees, whether or not such Settlement Class Member executes and delivers a Proof of Claim Form, seeks or obtains a distribution from the Settlement Fund, is entitled to receive a distribution under the Plan of Allocation approved by the Court, or has objected to any aspect of the Stipulation or the Settlement, the Plan of Allocation, or Lead Counsel's application for an award of attorneys' fees or Litigation Expenses.

(b)     Without further action by anyone, and subject to paragraph 10 below, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and their respective heirs, executors, insurers, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have, and by operation of the Stipulation, of law, and of the Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Defendants' Claim against the Plaintiff Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiff Releasees.

(c)     Upon the Effective Date, Lead Plaintiff and each of the other Settlement Class Members and anyone claiming through or on behalf of any of them, are forever barred and enjoined from commencing, instituting, maintaining, or continuing to prosecute any action or proceeding in any court of law or equity, arbitration tribunal, administrative forum, or forum of any kind, asserting any Released Plaintiff's Claims against any of the Defendant Releasees.

(d)     Upon the Effective Date, to the extent allowed by law, the Stipulation shall operate conclusively as an estoppel and full defense in the event, and to the extent, of any claim, demand, action, or proceeding brought by Lead Plaintiff or a Settlement Class Member

7

against any of the Defendant Releasees with respect to any Released Plaintiff's Claims, or brought by a Defendant against any of the Plaintiff Releasees with respect to any Released Defendants' Claim.

10. Notwithstanding paragraphs 9(a) through 9(d) above, nothing in this Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of the Stipulation or this Judgment.

11. **Rule 11 Findings:** The Court finds and concludes that the Parties and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and settlement of the Action.

12. **No Admissions:** Neither this Judgment, nor the Stipulation (whether or not consummated), including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), nor any facts or terms of the Stipulation, negotiations, discussions, proceedings, acts performed or documents executed pursuant to or in furtherance of this Judgment, the Stipulation, or the Settlement:

(a) shall be (i) offered against any of the Defendant Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendant Releasees with respect to (a) the truth of any allegations by Lead Plaintiff or any Settlement Class Member; (b) the validity of any claim that was or could have been asserted in the Action or in any other litigation; (c) the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation; (d) any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendant Releasees; or (e) any damages suffered by Lead Plaintiff or the Settlement Class; or (ii) in any way referred to for any other reason as

8

against any of the Defendant Releasees, in any civil, criminal or administrative action or proceeding (including any arbitration) other than such proceedings as may be necessary to effectuate the provisions of the Stipulation;

(b)     shall be (i) offered against any of the Plaintiff Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of the Plaintiff Releasees (a) that any of their claims are without merit, that any of the Defendant Releasees had meritorious defenses, or that damages recoverable under the Second Amended Complaint would not have exceeded the Settlement Amount; or (b) with respect to any liability, negligence, fault or wrongdoing of any kind; or (ii) in any way referred to for any other reason as against any of the Plaintiff Releasees, in any civil, criminal or administrative action or proceeding (including any arbitration), other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; or

(c)     shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given under the Settlement represents the amount which could be or would have been recovered after trial; *provided, however*, that the Parties and the Releasees and their respective counsel may refer to this Judgment and the Stipulation to effectuate the protections from liability granted hereunder and thereunder or otherwise to enforce the terms of the Settlement.

13.     **Plan of Allocation:** The Court hereby finds and concludes that the formula for the calculation of the claims of Claimants as set forth in the proposed Plan of Allocation of the Net Settlement Fund mailed to Settlement Class Members provides a fair and reasonable basis upon which to allocate the proceeds of the Net Settlement Fund among Settlement Class Members with due consideration having been given to administrative convenience and necessity.

9

14. The Court hereby finds and concludes that the Plan of Allocation is, in all respects, a fair and reasonable method to distribute the Settlement Fund to the Settlement Class. Accordingly, this Court hereby approves the Plan of Allocation proposed by Lead Plaintiff.

15. The Escrow Agent shall continue to serve as such for the Settlement Fund, until such time as all funds in the Settlement Fund are distributed pursuant to the terms of the Stipulation or further order of the Court.

16. **Attorneys' Fees and Expenses:** Lead Plaintiff's Counsel are hereby awarded one-third of the Settlement Fund in fees and $453,866.36 in reimbursement of litigation expenses (which fees and expenses shall be paid from the Settlement Fund), which sums the Court finds to be fair and reasonable. Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiff's Counsel in a manner which it, in good faith, believes reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.

17. In making this award of attorneys' fees and litigation expenses to be paid from the Settlement Fund, the Court has considered and found that:

(a) The Settlement has created a Settlement Fund of $25,000,000 that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Class Members who submit acceptable Proofs of Claim will benefit from the Settlement that occurred because of the efforts of Lead Counsel;

(b) The fee sought has been reviewed and approved by Lead Plaintiff, a sophisticated institutional investor that oversaw the Action and has a substantial interest in ensuring that any attorneys' fees paid are duly earned and not excessive;

(c) As of April 13, 2021, 22,998 copies of the Notice were distributed to potential Settlement Class Members and nominees stating that Lead Counsel would apply for

10

attorneys' fees in an amount not to exceed 33⅓ percent of the Settlement Fund and for reimbursement of litigation expenses in an amount not to exceed $600,000, and no objections to the requested attorneys' fees and expenses were received;

(d)     The positive reaction from the Settlement Class is meaningful because the vast majority of the Company's shares are owned by institutional investors who have the resources, acumen and financial incentive to object or opt-out of the Settlement if warranted;

(e)     Lead Counsel have conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy, and with considerable challenges from formidable opposition;

(f)     The Action involves complex factual and legal issues;

(g)     Had Lead Counsel not achieved the Settlement, there would remain a significant risk that Lead Plaintiff and the other members of the Settlement Class may have recovered less or nothing from the Defendants;

(h)     Lead Counsel initiated and pursued the Action on a contingent basis, having received no compensation during the Action, and any fee amount has been contingent on the result achieved;

(i)     Public policy concerns favor the award of reasonable attorneys' fees and expenses in securities class action litigation;

(j)     Plaintiff's Counsel devoted over 11,000 hours, with a lodestar value of over $5.39 million, to achieve the Settlement; and

(k)     The amounts of attorneys' fees and expenses reimbursed from the Settlement Fund are fair and reasonable and consistent with awards in similar cases in this District, the Fourth Circuit and nationwide.

18. **Reimbursement of Lead Plaintiff's Expenses:** In accordance with 15 U.S.C. § 78u-4(a)(4), the Court hereby awards the Lead Plaintiff reimbursement for its reasonable costs and expenses directly incurred in representing the Class during the prosecution of this Action in the amount of $7,500, which shall be paid from the Settlement Fund.

19. **Retention of Jurisdiction:** Without affecting the finality of this Judgment in any way, this Court retains continuing and exclusive jurisdiction over: (a) the Parties for purposes of the administration, interpretation, implementation, and enforcement of the Settlement; (b) the disposition of the Settlement Fund; (c) any motion for an award of attorneys' fees and/or Litigation Expenses by Lead Counsel in the Action that will be paid from the Settlement Fund; (d) any motion to approve the Plan of Allocation; (e) any motion to approve the Class Distribution Order; and (f) the Settlement Class Members for all matters relating to the Action.

20. Final approval of the Settlement is in no way contingent upon approval of the Plan of Allocation or any application or motion for fees and expenses. Any appeal from the portion of this Judgment that relates solely to the Plan of Allocation or the fees and expenses granted hereunder shall in no way affect or delay the finality of this Judgment and shall not affect or delay the Effective Date of the Settlement.

21. **Modification of the Agreement of Settlement:** Without further approval from the Court, the Parties are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that are approved of in writing and signed by or on behalf of all the Parties acting by and through their respective counsel of record in the Action so long as they: (a) are not materially inconsistent with this Judgment; and (b) do not materially limit the rights of Settlement Class Members in connection with the Settlement. Without further order of the Court, Lead Plaintiff

12

and Defendants may agree to reasonable extensions of time to carry out any provisions of the Settlement.

22.   **Termination of Settlement:**   If the Settlement is terminated as provided in the Stipulation or the Effective Date of the Settlement otherwise fails to occur, this Judgment shall be vacated, rendered null and void and be of no further force and effect, except as otherwise provided by the Stipulation, and this Judgment shall be without prejudice to the rights of Lead Plaintiff, the other Settlement Class Members and the Defendant Releasees, and the Parties shall revert to their respective positions in the Action as of November 6, 2020, as provided in the Stipulation.

23.   **Entry of Final Judgment:**   There is no just reason to delay the entry of this Judgment as a final judgment in this Action.  Accordingly, the Clerk of the Court is expressly directed to immediately enter this final judgment in this Action.


SO ORDERED this _23rd_ day of _April_, 2021.


_____
The Honorable Claude M. Hilton
United States District Judge

13

# EXHIBIT 9HH

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| PLYMOUTH COUNTY RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | Civ. No. 0:18-cv-00871-MJD-HB<br><br>CLASS ACTION |
| Plaintiffs, | ) ) ) | ORDER AWARDING ATTORNEYS' FEES AND EXPENSES AND AWARDS |
| vs. | ) ) ) | TO PLAINTIFFS PURSUANT TO 15 U.S.C. §78u-4(a)(4) |
| PATTERSON COMPANIES, INC., et al., | ) ) | |
| Defendants. | ) ) | |

This matter having come before the Court on June 9, 2022, on the motion of Lead Counsel for an award of attorneys' fees and expenses and awards to Plaintiffs, the Court, having considered all papers filed and proceedings conducted herein, having found the Settlement of this Litigation to be fair, reasonable and adequate, and otherwise being fully informed in the premises and good cause appearing therefore;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.      This Order incorporates by reference the definitions in the Stipulation of Settlement dated October 11, 2021 (ECF 241) (the "Stipulation"), and all capitalized terms used, but not defined herein, shall have the same meanings as set forth in the Stipulation.

2.      This Court has jurisdiction over the subject matter of this application and all matters relating thereto, including all Members of the Class who have not timely and validly requested exclusion.

3.      Pursuant to and in compliance with Rule 23 of the Federal Rules of Civil Procedure and the Court's Order Granting Preliminary Approval Pursuant to Fed. R. Civ.

- 1 -

P. 23(e)(1) and Permitting Notice to the Class dated February 3, 2022 (ECF 248) (the "Preliminary Approval Order"), due and adequate notice was directed to all Class Members, including individual notice to those Class Members who could be identified through reasonable effort, advising them of Lead Counsel's request for attorneys' fees and expenses and awards to Plaintiffs in connection with their representation of the Class, and of their right to object thereto, and a full and fair opportunity was accorded to Class Members to be heard with respect to the request for attorneys' fees and expenses, and there were no objections to the request for attorneys' fees and expenses.

4.      The Court hereby awards Lead Counsel attorneys' fees of 33-1/3% of the Settlement Amount, plus expenses in the amount of $1,563,412.71, together with the interest earned on both amounts for the same time period and at the same rate as that earned on the Settlement Fund until paid.  The Court finds that the amount of fees awarded is appropriate and that the amount of fees awarded is fair and reasonable under the "percentage-of-recovery" method.

5.      In making this award of attorneys' fees and expenses to be paid from the Settlement Fund, the Court has considered and found that:

(a)      the Settlement has created a fund of $63,000,000.00 in cash that has been funded into escrow under the Stipulation, and Class Members who submit acceptable Proof of Claim and Release forms will benefit from the Settlement that occurred because of the efforts of Lead Plaintiffs' Counsel;

(b)    the fee sought by Lead Counsel has been reviewed and approved as reasonable by Class Representatives, institutional investors that were all involved in overseeing the prosecution and resolution of the Litigation;

(c)    over 184,000 copies of the Notice were mailed to potential Class Members and nominees stating that Lead Counsel would apply to the Court for an award of attorneys' fees on behalf of all Lead Plaintiffs' Counsel in an amount not to exceed 33-1/3% of the Settlement Amount, and expenses paid or incurred in connection with the institution, prosecution and resolution of the claims against Defendants, in an amount not to exceed $2,000,000.00, plus interest on both amounts at the same rate earned as the Settlement Fund.  The Notice advised Class Members of their right to object to Lead Counsel's motion for attorneys' fees and expenses, and a full and fair opportunity was accorded to persons who are Class Members to be heard with respect to the motion.  No objections to the fees and expenses requested by Lead Counsel have been received;

(d)    Lead Plaintiffs' Counsel have conducted the Litigation and achieved the Settlement with skill, perseverance, and diligent advocacy;

(e)    The Litigation involves complex factual and legal issues, and, in the absence of Settlement, would involve further lengthy proceedings with uncertain resolution if the case were to proceed to trial;

(f)    Lead Plaintiffs' Counsel have pursued the Litigation on a contingent basis, having received no compensation during the Litigation, and any fee award has been contingent on the result achieved;

- 3 -

(g)    Lead Plaintiffs' Counsel have devoted over 34,300 hours to this Litigation, with a lodestar value of approximately $18.7 million, to achieve the Settlement;

(h)    The amount of attorneys' fees is consistent with awards in similar cases and supported by public policy; and

(i)    the amount of expenses awarded is fair and reasonable and these expenses were necessary for the prosecution and settlement of the Litigation.

6.    The fees and expenses shall be allocated among Lead Plaintiffs' Counsel in a manner which, in Lead Counsel's good-faith judgment, reflects each such counsel's contribution to the institution, prosecution, and resolution of the Litigation.

7.    Pursuant to 15 U.S.C. §78u-4(a)(4), Class Representatives Plymouth County Retirement Association, Pembroke Pines Pension Fund for Firefighters and Police Officers, Central Laborers Pension Plan, and Gwinnett County Public Employees Retirement System are awarded $7,087.95, $5,715.68, $8,866.50, and $9,375.00, respectively, for their representation of the Class during the Litigation.

8.    The awarded attorneys' fees and expenses and interest earned thereon shall immediately be paid to Lead Counsel subject to the terms, conditions, and obligations of the Stipulation, and in particular ¶6.2 thereof, which terms, conditions, and obligations are incorporated herein.

9.    Any appeal or any challenge affecting the Court's approval of any attorneys' fee and expense application will in no way disturb or affect the finality of the Order and Final Judgment entered with respect to the Settlement.

10.     The Court retains exclusive jurisdiction over the parties and Class Members for all matters relating to this Litigation, including the administration, interpretation, effectuation, or enforcement of the Stipulation and this Order.

11.     If the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order will be rendered null and void to the extent provided by the Stipulation.

12.     Therefore, IT IS HEREBY ORDERED that Lead Counsel's Motion for an Award of Attorneys' Fees and Awards to Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) **(ECF 252)** is **GRANTED**.

DATED:   June 10, 2022

s/Michael J. Davis
MICHAEL J. DAVIS
UNITED STATES DISTRICT COURT

# EXHIBIT 9II

Case 3:21-cv-00424-DJN Document 126-9 Filed 04/19/23 Page 571 of 585 PageID# 5759

Case 4:20-cv-00005-VMC Document 108 Filed 04/10/23 Page 501 of 585

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | |
|---|---|
| PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>MOHAWK INDUSTRIES, INC. and JEFFREY S. LORBERBAUM,<br><br>        Defendants. | Civ. A. No. 4:20-cv-00005-VMC |

**ORDER AWARDING**
**ATTORNEYS' FEES AND LITIGATION EXPENSES**

This matter came on for hearing on May 31, 2023 (the "Settlement Hearing") on Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses in the above-captioned class action (the "Action"). The Court having considered all matters submitted to it at the Settlement Hearing and otherwise; and it appearing that notice of the Settlement Hearing substantially in the form approved by the Court was mailed to all Class Members who or which could be identified with reasonable effort, and that a summary notice of the Settlement Hearing substantially in the form approved by the Court was published in the *Wall Street Journal* and was transmitted over the *PR Newswire* pursuant to the specifications of the Court; and the Court

having considered and determined the fairness and reasonableness of the attorneys' fees and Litigation Expenses requested;

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated January 13, 2023 (the "Stipulation") and all capitalized terms not otherwise defined in this Order shall have the same meaning as they have in the Stipulation.

2. The Court has jurisdiction to enter this Order and over the subject matter of the Action and all parties to the Action, including all Class Members.

3. Notice of Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses was given to all Class Members who could be identified with reasonable effort. The form and method of notifying the Class of the motion for an award of attorneys' fees and Litigation Expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, *et seq*., as amended, and all other applicable laws and rules; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all persons and entities entitled thereto.

4. Plaintiff's Counsel are hereby awarded attorneys' fees in the amount of 25% of the Settlement Fund, net of total Court-awarded Litigation Expenses, which

sum the Court finds to be fair and reasonable. Plaintiff's Counsel are also hereby awarded $691,551.66 in payment of Litigation Expenses to be paid from the Settlement Fund, which sum the Court finds to be fair and reasonable. Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiff's Counsel in a manner which it, in good faith, believes reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.

5. In making this award of attorneys' fees and payment of Litigation Expenses to be paid from the Settlement Fund, the Court has considered and found that:

(a) The Settlement has created a fund of $60,000,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Plaintiff's Counsel;

(b) The fee sought has been reviewed and approved as reasonable by Lead Plaintiff, which is a sophisticated institutional investor that closely supervised, monitored, and actively participated in the prosecution and settlement of the Action;

(c) Over 221,000 copies of the Notice were mailed to potential Class Members and nominees stating that Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund and for

3

payment of Litigation Expenses in an amount not to exceed $1,000,000, and there were no objections to the requested attorneys' fees and expenses;

(d)     Plaintiff's Counsel conducted the litigation and achieved the Settlement with skill, perseverance, and diligent advocacy;

(e)     The Action raised a number of complex issues and involved substantial risks;

(f)     If Lead Counsel had not achieved the Settlement there would remain a significant risk that Lead Plaintiff and the other Class Members may have recovered significantly less, or nothing at all, from Defendants;

(g)     Plaintiff's Counsel devoted over 27,900 hours to the Action, with a lodestar value of approximately $14,605,900, to achieve the Settlement;

(h)     Plaintiff's Counsel at all times litigated this Action on a fully contingent basis to achieve the Settlement; and

(i)     The amount of attorneys' fees awarded and expenses to be paid from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

6.     The Court further finds that the above-stated award of Litigation Expenses (*supra* paragraph 4) to be paid from the Settlement Fund to Plaintiff's Counsel in payment of Litigation Expenses is fair and reasonable, and that the

4

Litigation Expenses are reasonable in amount, and were incurred for costs and expenses that were of a type customarily reimbursed in cases of this type.

7.      Lead Plaintiff Public Employees' Retirement System of Mississippi is hereby awarded $32,450.00 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Class.

8.      Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

9.      Exclusive jurisdiction is hereby retained over the Parties and the Class Members for all matters relating to this Action, including the administration, interpretation, effectuation, or enforcement of the Stipulation and this Order.

10.      In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

11.      There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

So Ordered this 31st Day of May, 2023.

_____
Victoria Marie Calvert
United States District Judge

5

# EXHIBIT 9JJ

FILED

2024 Jan-17 PM 04:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **SHEET METAL WORKERS LOCAL 19 PENSION FUND, individually and on behalf of all others similarly situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**PROASSURANCE CORPORATION, et al.,**<br><br>Defendants. | }<br>}<br>}<br>}<br>}<br>}<br>}<br>}  **Case No.:  2:20-cv-00856-RDP**<br>}<br>}<br>}<br>}<br>}<br>}<br>} |

**ORDER AWARDING ATTORNEYS' FEES AND EXPENSES**

This matter is before the court on Lead Plaintiffs Central Laborers' Pension Fund and Plymouth County Retirement Association's ("Lead Plaintiffs" or "Class Representatives") Motion for an Award of Attorneys' Fees and Expenses. (Doc. # 167).

On August 25, 2023, the court granted preliminary approval to the proposed class action settlement set forth in the Settlement Agreement. (Doc. # 162). The court also approved the procedure for giving Class Notice to the members of the Class and set a Final Approval Hearing to take place on January 17, 2024. (*Id.*).

On January 17, 2024, after notice, this court held a Final Approval Hearing to consider: (1) whether the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate; (2) whether a judgment should be entered dismissing the Class Members' Released Claims on the merits and with prejudice; and (3) whether and in what amount to award attorneys' fees and expenses to Class Counsel.

The court has reviewed both Lead Plaintiffs' Motion for an Award of Attorneys' Fees and Expenses (Doc. # 167), the Memorandum of Law in Support of the Motion (Doc. # 168), and Lead Plaintiffs' Notice of Non-Opposition and Reply in Further Support (Doc. # 169). Based on the papers filed with the court and the presentations made to the court by the Parties and other interested persons at the Final Approval Hearing, it is hereby **ORDERED** as follows:

1.      This Order incorporates by reference the definitions in the Stipulation of Settlement, dated June 22, 2023 (Doc. # 157) (the "Stipulation"), and all capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2.      The court has jurisdiction to enter this Order and over the subject matter of the Litigation and over all parties to the Litigation, including all Settlement Class Members.

3.      Pursuant to and in compliance with the court's August 25, 2023 Memorandum Opinion and Order Preliminarily Approving Settlement and Directing Notice to the Class (Doc. # 162), Rule 23 of the Federal Rules of Civil Procedure, and all other applicable laws and rules, this court hereby finds and concludes that due and adequate notice was directed to persons and entities who are Settlement Class Members, advising them of the motion requesting attorneys' fees and litigation expenses and of their right to object thereto, and a full and fair opportunity was accorded to persons and entities who are Settlement Class Members to be heard with respect to the attorneys' fees and expenses request.  There have been no objections to the attorneys' fees and expenses request.

4.      The court hereby **AWARDS** Lead Counsel attorneys' fees in the amount of 33% of the Settlement Amount, plus expenses in the amount of $1,240,844.77, together with the interest earned on both amounts for the same time period and at the same rate as that earned on the Settlement Fund until paid.  The court finds that the amount of fees awarded is appropriate and is

2

fair and reasonable under the "percentage-of-recovery" method. The majority of common fund fee awards fall between 20% to 30% of the fund. *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991). Of course, this benchmark percentage may be adjusted in accordance with the unique circumstances of each case. *Id.* at 775. Below, the court explains why an upward adjustment to 33% is warranted here. Additionally, the court notes counsel devoted over 27,200 hours to this case. (Doc. # 165-1 ¶ 91). The requested fee award of 33% of $28,000,000 (*i.e.*, $9,240,000) amounts to a very reasonable effective hourly rate of approximately $340.

5. Pursuant to binding precedent established in *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244,1260-61 (11th Cir. 2020), Central Laborers' Pension Fund's request of $9,760.25 and Plymouth County Retirement Association's request of $8,281.05 as reimbursements of costs and expenses directly related to their representation of the Settlement Class is **DENIED.**

6. The awarded attorneys' fees and expenses and interest earned thereon shall immediately be paid to Lead Counsel from the Settlement Fund upon entry of this Order, subject to the terms, conditions, and obligations of the Stipulation, which are incorporated herein.

7. In making this award of attorneys' fees and expenses to be paid from the Settlement Fund, the court has analyzed the factors considered within the Eleventh Circuit and found that:

(a) The Settlement has created a fund of $28,000,000 in cash that has been placed into escrow pursuant to the terms of the Stipulation, and Settlement Class Members who submit acceptable Proofs of Claim will benefit from the Settlement that occurred through the efforts of Lead Counsel;

(b) The fee sought has been reviewed and approved by Lead Plaintiffs, sophisticated institutional investors that oversaw the Litigation and have a substantial interest in ensuring that any attorneys' fees paid are duly earned and not excessive;

(c)     The amount of attorneys' fees is consistent with awards in similar cases and supported by public policy;

(d)     Lead Counsel conducted the Litigation and achieved the Settlement with skill, perseverance, and diligent advocacy, and with considerable challenges from formidable opposition;

(e)     Lead Counsel expended substantial time and effort prosecuting the Litigation on behalf of the Settlement Class;

(f)     The Litigation raised a number of complex factual and legal issues, and, in the absence of Settlement, would involve further lengthy proceedings with uncertain resolution if the case were to proceed to trial;

(g)     Lead Counsel initiated and pursued the Litigation on a contingent basis, having received no compensation during the Litigation, and any fee amount has been contingent on the result achieved;

(h)     The efforts of Lead Counsel resulted in an all-cash settlement at a stage in the proceedings that will permit Settlement Class Members to benefit from the recovery without further delay or expense;

(i)     No objections to the attorneys' fees and expenses requested by Lead Counsel have been received; and

(j)     The amount of expenses awarded is fair and reasonable and these expenses were necessary for the prosecution and settlement of the Litigation.

8.     The fees and expenses shall be allocated among Lead Plaintiffs' Counsel in a manner which, in Lead Counsel's good-faith judgment, reflects each such counsel's contribution to the institution, prosecution, and resolution of the Litigation.

9.      Any appeal or any challenge affecting the court's approval regarding any attorneys' fees and expenses shall in no way disturb or affect the finality of the Order and Final Judgment entered with respect to the Settlement.

10.      The court retains exclusive jurisdiction over the parties and Settlement Class Members for all matters relating to this Litigation, including the administration, interpretation, effectuation, or enforcement of the Stipulation and this Order.

11.      In the event the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

      **DONE** and **ORDERED** this January 17, 2024.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

# EXHIBIT 9KK

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

TEAMSTERS LOCAL 456 PENSION
FUND, et al.,

        Plaintiffs,

vs.

UNIVERSAL HEALTH SERVICES,
INC., et al.,

        Defendants.

Case No. 2:17-cv-02817-JHS

**CLASS ACTION**

## ORDER AWARDING ATTORNEYS' FEES AND REIMBURSING LITIGATION EXPENSES

WHEREAS, this matter came on for hearing on July 15, 2021 (the "Settlement Hearing") on Lead Plaintiffs' request for attorneys' fees and litigation expenses. The Court having considered all matters submitted to it at the Settlement Hearing and otherwise; and it appearing that notice of the Settlement Hearing substantially in the form approved by the Court was mailed to all Settlement Class Members who or which could be identified with reasonable effort, and that a summary notice of the hearing substantially in the form approved by the Court was published in *Investor's Business Daily* and was transmitted over *the PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and reimbursement of litigation expenses requested,

NOW, THEREFORE IT IS HEREBY ORDERED THAT:

1. This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement, dated February 23, 2021 (ECF No. 76) (the "Stipulation"), and all capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

1

2. The Court has jurisdiction to enter this Order and over the subject matter of the Action and all parties to the Action, including all Settlement Class Members.

3. Notice of Lead Plaintiffs' request for attorneys' fees and reimbursement of litigation expenses was given to all Settlement Class Members who or which could be identified with reasonable effort. The form and method of notifying the Settlement Class of the request for attorneys' fees and reimbursement of litigation expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-4(a)(7)), due process, and all other applicable laws and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4. Lead Plaintiffs' Counsel are hereby awarded attorneys' fees in the amount of one-third of the Settlement Fund and $178,287.99 in reimbursement of litigation expenses (which fees and expenses shall be paid from the Settlement Fund), which sums the Court finds to be fair and reasonable. Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which it, in good faith, believes reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.

5. In making this award of attorneys' fees and reimbursement of litigation expenses to be paid from the Settlement Fund, the Court has considered and found that:

      a) The Settlement has created a Settlement Fund of $17,500,000 that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Settlement Class Members who submit acceptable Proofs of Claim will benefit from the Settlement that occurred because of the efforts of Lead Counsel;

b)      The fee sought has been reviewed and approved by Lead Plaintiffs, sophisticated institutional investors that oversaw the Action and have a substantial interest in ensuring that any attorneys' fees paid are duly earned and not excessive;

c)      Lead Counsel have conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy, and with considerable challenges from formidable opposition;

d)      The Action involves complex factual and legal issues;

e)      Had Lead Counsel not achieved the Settlement, there would remain a significant risk that Lead Plaintiffs and the other members of the Settlement Class may have recovered less or nothing from the Defendants;

f)      Lead Counsel pursued the Action on a contingent basis, having received no compensation during the Action, and any fee amount has been contingent on the result achieved;

g)      Public policy concerns favor the award of reasonable attorneys' fees and expenses in securities class action litigation;

h)      Plaintiffs' Counsel devoted over 3,900 hours, with a lodestar value of over $2.63 million, to achieve the Settlement; and

i)      The amounts of attorneys' fees and expenses reimbursed from the Settlement Fund are fair and reasonable and consistent with awards in similar cases in this District, the Third Circuit and nationwide.

6.      In accordance with 15 U.S.C. § 78u-4(a)(4), the Court hereby awards Lead Plaintiffs reimbursement for their reasonable costs and expenses directly incurred in representing

3

the Class during the prosecution of this Action in the amount of $3,374.40, which shall be paid from the Settlement Fund.

7.      Any appeal or any challenged affecting this Court's approval regarding attorneys' fees and reimbursing litigation expenses shall in no way disturb or affect the finality of the Judgment and shall not affect or delay the Effective Date of the Settlement.

8.      Exclusive jurisdiction is hereby retained over the parties and the Settlement Class Members for all matter relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

9.      In the event the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

10.     There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this 15th  day of July, 2021.

/s/Joel H. Slomsky, J.
The Honorable Joel H. Slomsky
United States District Judge